UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL BLESSING on behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>Defendant. | No. 09 CV 10035 (HB)<br><br>Hon. Harold Baer, U.S.D.J.<br>ECF CASE |

### STIPULATION AND [PROPOSED] ORDER REGARDING ESI DISCOVERY AND ESI-RELATED PRIVILEGE ISSUES

Pursuant to the Pretrial Scheduling Order entered by the Court on March 4, 2010 [Dkt. No. 25], plaintiff Carl Blessing and defendant Sirius XM Radio Inc. ("Sirius XM"), by and through their counsel, submit this Joint Stipulation and Order setting out the understandings they have reached regarding discovery of electronically stored information ("ESI") and ESI-related privilege issues in the above-captioned action (the "Action").

### I. GENERAL PROVISIONS

A.   The parties will prepare their production documents, to the extent reasonably practicable, in accordance with the specifications outlined in the "Technical Specifications for Production" attached as Exhibit A. To the extent that production of any documents in accordance with the formats specified in Exhibit A is not reasonably practicable, the parties shall meet and confer in accordance with the procedure set out in the Advisory Committee Notes to the 2006 Amendments to Rule 34 to identify a reasonable, alternative format in which the documents may be produced.

B.  The parties will mutually seek to reduce the time, expense, and other burdens associated with discovery of ESI in the Action, including the management of any ESI-related privilege issues. To that end, they shall meet and confer regarding: (a) the specific custodians or sources from which ESI may be produced in the Action; (b) the search terms that may be used to identify responsive ESI for production in the Action; (c) the relevance, burden, and need for the production of any ESI created on or before the date on which the merger of Sirius XM's predecessor entities closed, with the exception of ESI included in submissions made by Sirius XM's predecessor entities in connection with the Regulatory Inquiries, as that term is defined in plaintiff's First Request for Production of Documents; and (d) other ESI-related issues that the parties reasonably believe may be worthwhile to discuss.

C.  Before filing any motion with the Court regarding ESI, the parties shall meet and confer in a good faith attempt to resolve any ESI-related disputes.

D.  Nothing in this Stipulation will affect in any way a producing party's right to seek reimbursement for document production costs.

## II. PROCESSING OF NON PARTY DOCUMENTS

A.  This Stipulation will cover joint processing of non party documents and specifications for production of non party documents.

B.  Unless otherwise agreed among the parties, the party that first issues a non party subpoena to a particular non party (the "First Party") will be responsible for: (1) taking reasonable steps to negotiate such that the non party's production shall be processed in accordance with the specifications in this Stipulation; and (2) distributing non party productions subject to this Agreement no later than two (2) business days of receiving the production (and in any event at least three days prior to any depositions of such non party or any present or former

employee of such non party) to: James Sabella, Todd Geremia, and Brian Grube at the addresses listed in their respective signature block to this Stipulation.

    C.    If a non party production is not Bates stamped, the First Party will provide unique prefixes and numbers to the vendor and will notify all parties of the Bates range and production.

    D.    To the extent that a non party is making only identical productions in response to all subpoenas, to the extent practicable, that non party shall be instructed by the parties to the Action to make that one production to the First Party. After receipt of the production, the First Party shall undertake reasonable efforts to comply with Section III.B, above.

    E.    To the extent that a non party is making distinct productions in response to different subpoenas, that non party will be instructed to make each distinct production to the party issuing the subpoena. The party in receipt of such distinct production shall undertake reasonable efforts to comply with Section III.B, above.

### III. PRIVILEGE

    A.    Consistent with Rule 502 of the Federal Rules of Evidence, the inadvertent production of any ESI to any party or non party in the Action, including any documents that previously may have been inadvertently produced in connection with the Regulatory Inquiries, as that term is defined in plaintiff's First Request for Production of Documents, or to another governmental agency in connection with the merger of Sirius XM's predecessors entities, shall not be asserted as a basis for the waiver of any privilege that would otherwise attach to such documents. The procedure for handling the inadvertent production of privileged materials specified in the Protective Order shall govern the inadvertent production of ESI containing information protected by the attorney-client privilege, work product doctrine, or another privilege or immunity.

B.  The parties will meet and confer, as may be appropriate, to identify means to reduce the burden of logging documents and ESI in any privilege log that may be produced in the Action.

Date: 3/18/10

SO ORDERED.

_____
Honorable Harold Baer
United States District Judge

| Date: March 15, 2010 | Respectfully submitted: |
|---|---|
| | *Counsel for Carl Blessing* <br><br><br> /s/ James J. Sabella (w/ permission by TRG) <br> Jay W. Eisenhofer <br> James J. Sabella <br> Shelly L. Friedland <br> GRANT & EISENHOFER P.A. <br> 485 Lexington Avenue <br> New York, New York 10017 <br> jeisenhofer@gelaw.com <br> jsabella@gelaw.com <br> sfriedland@gelaw.com <br><br> Reuben Guttman <br> GRANT & EISENHOFER P.A. <br> 1920 L. Street N.W., Suite 400 <br> Washington, D.C. 20036 <br> rguttman@gelaw.com <br><br> Edward S. Cook <br> Christopher B. Hall <br> P. Andrew Lampros <br> COOK, HALL & LAMPROS, LLP <br> Promenade Two, Suite 3700 <br> 1230 Peachtree Street, N.E. <br> Atlanta, Georgia 30309 <br> ecook@cookhall.com <br><br> *Counsel for Defendant Sirius XM Radio Inc.* <br><br> /s/ Todd R. Geremia <br> John M. Majoras (admitted *pro hac vice*) <br> JONES DAY <br> 51 Louisiana Avenue, N.W. <br> Washington, DC 20001-2113 <br> (202) 879-3939 <br> jmmajoras@jonesday.com |

|  | Thomas Demitrack<br>Brian K. Grube<br>JONES DAY<br>North Point<br>901 Lakeside Avenue<br>Cleveland, Ohio 44114-1190<br>(216) 586-3939<br>tdemitrack@jonesday.com<br><br>Todd R. Geremia (TG-4454)<br>JONES DAY<br>222 East 41st Street<br>New York, New York 10017-6702<br>(212) 326-3939<br>trgeremia@jonesday.com |
|---|---|

# EXHIBIT A

## Technical Specifications for Production

PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

For documents that have originated in paper format, the following specifications should be used for their production.

- Images should be produced as single page TIFF group IV format imaged at 300dpi.

- Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

- Media may be delivered on CDs, DVDs or External USB hard drives. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

- Each delivery should be accompanied by an IPRO image cross reference file (.lfp) that contains document breaks.

- A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

    Field Separator: "|"
    Quote Character: "~"
    Multi-Entry Delimiter: ";"

- To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.

- A Summation text cross reference load file (.lst) should also be included with the production delivery.

PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS

Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

For standard documents, emails, and presentations originating in electronic form, documents should be produced as tiff images using the same specifications above with the following exceptions:

- Provide a delimited text file (using the delimiters detailed above) containing the following extracted metadata fields, or their reasonable proxies:

    Beginning Production Number
    Ending Production Number
    Beginning Attachment Range
    Ending Attachment Range
    Custodian
    Original Location Path
    Email Folder Path
    Document Type
    Author
    File Name
    File Size
    MD5 Hash
    Date Last Modified
    Date Created
    Date Last Accessed
    Date Sent
    Date Received
    Recipients
    Copyees
    Blind Copyees
    Email Subject
    Path to Native File

    The producing party shall inform the requesting party if a reasonable proxy is provided in lieu of any of the above extracted metadata fields.

- Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above similar to paper documents.

- All spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The original file name should be prepended with the document bates number. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. The parties agree to work out a future protocol governing the use and format of documents produced pursuant to this paragraph at trial, depositions or hearings (such as converting to tiff images in accordance with the above protocol).

- Notwithstanding the language of Federal Rule of Civil Procedure 34, upon review the requesting party may ask for certain other documents and\or databases that were initially produced in their petrified (tiff or pdf) format to be produced in their native format in the event that the petrified version is not reasonably usable. If this is the case, the requesting party will submit a list of bates numbers identifying the documents. Thereafter, the parties will meet and confer, and the producing party may object to the requesting party's request on any reasonable basis. If and to the extent the producing

party agrees to the requesting party's request, the documents should be produced in their unaltered native format with an accompanying text delimited text file (using the delimiters above) that contains the following fields:

> Beginning Production Number
> Ending Production Number
> Beginning Attachment Range
> Ending Attachment Range
> Path to Native File
> MD5 Hash Value

PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA

Generally, databases responsive to a party's document request should be produced in a mutually agreeable data exchange format. Upon discovery of a responsive database, the producing party will meet and confer with the requesting party regarding the data to be produced, if any, and the form(s) of production thereof, to the extent the database cannot be produced consistent with the specifications outlined above. As part of the meet and confer process, the producing party will provide the following information, to the extent reasonably available, to the requesting party:

Database Name
Type of Database
Software Platform
Software Version
Business Purpose
Users
Size in Records
Size in Gigabytes
A List of Standard Reports
Database Owner or Administrator's Name
Field List
Field Definitions (including field type, size and use)