**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |
|---|---|
| CARL BLESSING on behalf of Himself and All Others Similarly Situated, | ) ) ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| SIRIUS XM RADIO INC., | ) |
|  | ) |
| Defendant. | ) |

No. 1:09-cv-10035-HB
ECF CASE

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
(202) 879-3939

Thomas Demitrack
Brian K. Grube
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
(216) 586-3939

Todd R. Geremia (TG-4454)
JONES DAY
222 East 41st Street
New York, New York  10017-6702
(212) 326-3939

_Attorneys for Defendant,_
_Sirius XM Radio Inc._

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ...................................................................................................................... 3

        A.    Procedural History ................................................................................. 3

        B.    Pertinent Background from the Complaint ............................................. 4

ARGUMENT ........................................................................................................................... 6

   I.    THE ELEVEN PLAINTIFFS JOINED AFTER THE COURT-ORDERED DEADLINE FOR JOINING NEW PARTIES SHOULD BE DISMISSED ......... 6

   II.    PLAINTIFFS DO NOT HAVE STANDING TO BRING CLAIMS FOR VIOLATION OF CONSUMER PROTECTION STATUTES IN STATES WHERE THEY DO NOT RESIDE ..................................................................... 8

   III.    IN ANY EVENT, PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR VIOLATION OF SECTION 349 OF NEW YORK'S GENERAL BUSINESS LAW ............................................................................................ 11

   IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE CALIFORNIA CONSUMER REMEDIES ACT, AND MAY NOT SEEK DAMAGES UNDER CALIFORNIA LAW ............................................................................ 14

        A.    Plaintiffs Have Failed To State A Claim Under The California Consumer Legal Remedies Act ...................................................... 15

        B.    Plaintiffs' Claim For Damages Under The CLRA Should Be Dismissed Because They Failed To Give Timely Notice, As Required By The Statute ........................................................................ 16

   V.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MASSACHUSETTS CONSUMER PROTECTION ACT ................................. 19

   VI.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT ....................................................................................................... 20

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alex. Brown & Sons, Inc. v. Marine Midland Banks, Inc.*,
No. 96 Civ. 2549, 1997 WL 97837 (S.D.N.Y. Mar. 6, 1997) ....................................................1

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
436 F.3d 82 (2d Cir. 2006)...........................................................................................................8

*Ball v. Wal-Mart, Inc.*,
102 F. Supp. 2d 44 (D. Mass. 2000) ..........................................................................................19

*Buckland v. Threshold Enters., Ltd.*,
66 Cal. Rptr. 3d 543 (Cal. Ct. App. 2007) .................................................................................14

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007)............................................................................17, 18, 19

*Christaldi v. SEPTA*,
No. CIV.A. 97-1653, 1997 WL 364444 (E.D. Pa. June 20, 1997) ..............................................7

*Davis v. Chase Bank U.S.A., N.A.*,
650 F. Supp. 2d 1073 (C.D. Cal. 2009) .....................................................................................17

*Deitz v. Comcast Corp.*,
No. C 06-06352 WHA, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ......................................18

*Doe v. Blum*,
729 F.2d 186 (2d Cir. 1984)..........................................................................................................9

*Entrialgo v. Twin City Dodge*,
333 N.E.2d 202 (Mass. 1975) .....................................................................................................19

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F. 3d 410 (6th Cir. 1998) .......................................................................................................9

*Gortat v. Capala Bros., Inc.*,
257 F.R.D. 353 (E.D.N.Y. 2009) ..................................................................................................1

*Goshen v. Mutual Life Ins. Co. of New York*,
746 N.Y.S.2d 858, 863 (2002) ........................................................................................11, 12, 13

*Harding v. Naseman*,
No. 07 Civ. 8767(RPP), 2009 WL 1953041 (S.D.N.Y. July 8, 2009)........................................22

*Harris v. Provident Life & Acc. Ins. Co.*,
310 F.3d 73 (2d Cir. 2002)..........................................................................................................23

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...................................................................10

*In re Flonase Antitrust Litig.*,
    610 F. Supp. 2d 409 (E.D. Penn. 2009) ...............................................................9, 10

*In re Flonase Antitrust Litig.*,
    ___ F. Supp. 2d ___, 2010 WL 234858 (E.D. Pa. Jan. 21, 2010)............................20

*In re Potash Antitrust Litig.*,
    __ F. Supp. 2d ___, 2009 WL 3583107 (N.D. Ill. Nov. 3, 2009) ...........................10

*In re Salomon Analyst Level 3 Litig.*,
    350 F. Supp. 2d 477 (S.D.N.Y. 2004)........................................................................8

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ...................................................................10

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Penn. 2009)...........................................................................10

*Interpharm, Inc. v. Wells Fargo Bank, N.A.*,
    No. 08 Civ. 11365(RJH), 2010 WL 1257300 (S.D.N.Y. Mar. 31, 2010)...............18

*Jacobs Private Equity, LLC v. 450 Park LLC*,
    803 N.Y.S.2d 14 (1st Dep't 2005) ...........................................................................23

*Kanamaru v. Holyoke Mut. Ins. Co.*,
    892 N.E.2d 759 (Mass. App. Ct. 2008) ...................................................................19

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005).....................................................................17

*Leider v. Ralfe*,
    387 F. Supp. 2d 283 (S.D.N.Y. 2005).......................................................................14

*Lewis v. Casey*,
    518 U.S. 343 (1996)...............................................................................................8, 9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................................................8

*Mattson v. Bristol-Myers Squibb Co.*,
    No. 07-908 (FLW), 2009 WL 5216966 (D.N.J. Dec. 30, 2009)..............................17

*McMahon v. Digital Equipment Corp.*,
    944 F. Supp. 70 (D. Mass. 1996) .............................................................................19

*Nat'l Market Share, Inc. v. Sterling Nat'l Bank*,
   392 F.3d 520 (2d Cir. 2004)..............................................................................21

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)............................................................................................9

*Outboard Marine Corp. v. Superior Court*,
   124 Cal. Rptr. 852 (Cal. App. 3d Dist. 1975) ........................................................18

*Parks v. Dick's Sporting Goods, Inc.*,
   No. 05-CV-6590, 2006 WL 1704477 (W.D.N.Y. June 15, 2006).........................10

*Pentair Water Treatment (OH) Co. v. Continental Ins. Co.*,
   No. 08 Civ. 3604, 2009 WL 1119409 (S.D.N.Y. Apr. 26, 2009)..........................14

*Prado-Steiman ex. rel Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ...........................................................................9

*Prusack v. State*,
   117 A.D.2d 729 (2d Dep't 1986) .........................................................................21

*Raines v. Byrd*,
   521 U.S. 811 (1997)............................................................................................8

*Ricciuti v. N.Y.C. Transit Auth.*,
   No. 90 Civ. 2823, 1991 WL 221110 (S.D.N.Y. Oct. 3, 1991) .............................1

*Rodriguez v. It's Just Lunch Int'l*,
   No. 07 Civ. 9227, 2009 WL 399728 (S.D.N.Y. Feb. 17, 2009),
   *report and recommendation adopted*, 2009 WL 666435 (S.D.N.Y. Mar. 12, 2009) .............14

*Rosen v. Tenn. Comm'r of Finance & Admin.*,
   288 F.3d 918 (6th Cir. 2002) ...............................................................................9

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976)..............................................................................................9

*Smith v. Lawyers Title Ins. Corp.*,
   No. 07-12124, 2009 WL 514210 (E.D. Mich. Mar. 2, 2009) ................................10

*Spencer v. Kemna*,
   523 U.S. 1 (1998)................................................................................................8

*TD Waterhouse Investor Services, Inc. v. Integrated Fund Services*,
   No. 01 Civ. 8986, 2003 WL 42013 (S.D.N.Y. Jan. 6, 2003) (Baer, J.)...................22

*Temple v. Circuit City Stores, Inc.*,
   Nos. 06 CV 5303, 06 CV 5304, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007)...................10

*Triton Partners LLC v. Prudential Secs. Inc.*,
   752 N.Y.S.2d 870 (1st Dep't 2003) ................................................................23

*Utility Consumers' Action Network v. Sprint Solutions, Inc.*,
   No. C07-CV-2231-W (RJB), 2008 WL 1946859 (S.D. Cal. Apr. 25, 2008) ..........18

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) ...........................................................17

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................................9

*Weiss v. TD Waterhouse*,
   45 A.D.3d 763, 847 N.Y.S.2d 94 (2d Dep't 2007) ...........................................22

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007) .............................................................................9

*Zimmerman v. HBO Affiliate Group*,
   834 F.2d 1163 (3d Cir. 1987) ...........................................................................9

## RULES AND STATUTES

Federal Rule of Civil Procedure 6 ..................................................................6, 7

Federal Rule of Civil Procedure 12 ...............................................................1, 18

Cal. Civ. Code §§ 1750 *et seq.* ..................................................................15, 25

Cal. Civ. Code § 1770 ................................................................................15, 16

Cal. Civ. Code § 1782(a) .......................................................................16, 17, 19

Mass. Gen. L. ch. 93A .............................................................................19, 25

N.Y. Gen. Bus. Law § 349(a) .......................................................................*passim*

## PRELIMINARY STATEMENT

Carl Blessing, the lead plaintiff in this antitrust action, is a resident of Florida who subscribes in Florida to the satellite radio service offered by Sirius XM Radio Inc. ("Sirius XM"). Plaintiffs claim that the alleged conduct underlying their federal antitrust and breach of contract claims against Sirius XM also violates the consumer protection acts of forty-two States. At the appropriate time, Sirius XM will show the Court that plaintiffs' antitrust claims are meritless. Under well-settled law, however, plaintiffs lack standing to assert violations of consumer protection acts in States where they do not reside and did not purchase Sirius XM's satellite radio service. Those claims, and plaintiffs' claim for breach of contract, should be dismissed now.[1]

That plaintiffs purport to assert their consumer protection act claims on behalf of a nationwide class does not change the outcome. It is black-letter law that a plaintiff must show that he has standing to assert *each claim* alleged in a complaint—on a claim-by-claim basis—and he cannot acquire the requisite standing by asserting a claim on behalf of absent class members who allegedly would have standing to pursue it where he does not. Applying that black-letter rule, courts have regularly *dismissed* putative class action claims asserted under the laws of States where a named plaintiff does not reside. That principle similarly requires dismissal for lack of standing of all the consumer protection claims asserted here, with the exception of claims under the laws of the States where properly joined plaintiffs reside and subscribe to Sirius XM's service (California, Florida, Illinois, Maine, Massachusetts, Michigan, New Hampshire, New

---

[1] This motion postpones the date for Sirius XM to file an answer until fourteen days after the resolution of the motion. *See* Fed. R. Civ. P. 12(a)(4)(A); *see also Gortat v. Capala Bros., Inc.,* 257 F.R.D. 353, 366 (E.D.N.Y. 2009); *Alex. Brown & Sons, Inc. v. Marine Midland Banks, Inc.*, No. 96 Civ. 2549, 1997 WL 97837, at *6-7 (S.D.N.Y. Mar. 6, 1997); *Ricciuti v. N.Y.C. Transit Auth.*, No. 90 Civ. 2823, 1991 WL 221110, at *2 (S.D.N.Y. Oct. 3, 1991).

Jersey, and Pennsylvania).  In an attempt to mitigate this problem, on May 3, 2010, plaintiffs' counsel added eleven named plaintiffs in their second amended complaint.  However, because plaintiffs' counsel added these new plaintiffs *after* this Court's May 1, 2010 deadline for doing so, these new plaintiffs were not properly joined and they and their claims should be dismissed.

Even apart from the standing requirements in Article III, plaintiffs' claim under Section 349 of New York's General Business Law should be dismissed on the alternative ground that the statute applies only to conduct that occurs *in New York*.  It is not enough that the defendant operates its principal place of business in New York, as the Complaint alleges.  The allegedly deceptive conduct at issue must occur in New York, as the New York Court of Appeals has made clear, and here it did not.  Moreover, plaintiffs' claim under California's Consumer Legal Remedies Act should be dismissed because plaintiffs (i) have not alleged conduct that falls within the ambit of this statute, and (ii) failed to provide a statutorily required notice to Sirius XM prior to commencing this action.  The consumer protection claim under Massachusetts law likewise should be dismissed because plaintiffs failed to provide a requisite notice to Sirius XM prior to filing this suit.

Finally, plaintiffs' breach of contract claim should be dismissed because (i) there was no breach, as the contract expressly stated that Sirius XM could change the Royalty Fee at any time; and (ii) plaintiffs did not sustain any damages on this claim because, as the Complaint expressly acknowledges, the Royalty Fee was no greater than the amount stated in the agreement.

The Court should, in short, enforce its Scheduling Order and streamline this case by dismissing state law claims that are meritless and that plaintiffs do not, as a matter of law, have standing to assert.

## BACKGROUND

### A.    Procedural History

On March 17, 2010, this Court consolidated this antitrust case with *Scerbo v. Sirius XM Radio Inc.*, No. 1:09-cv-10209-HB (S.D.N.Y.), *Cronin v. Sirius XM Radio Inc.*, No. 1:09-cv-10468-HB (S.D.N.Y.), *Bonsignore v. Sirius XM Radio Inc.*, No. 1:10-cv-00526-HB (S.D.N.Y.), and *Balaguera v. Sirius XM Radio Inc.*, No. 1:10-cv-01058-HB (S.D.N.Y.).  Prior to the consolidation order, on February 25, 2010, Sirius XM moved to dismiss the Complaints in the *Blessing*, *Bonsignore*, and *Cronin* actions.  (Doc. Nos. 21-22).  The principal basis for those motions was that plaintiffs lack standing to sue under the consumer protection laws of states where they do not reside.  (*Id.*)

On March 4, 2010, the parties appeared before the Court for a status conference.  At that conference, the Court indicated that it would order consolidation of this case with all of the above-listed actions and also issued a Pretrial Scheduling Order that allowed for plaintiffs to file a Consolidated Amended Complaint.  (Doc. No. 25).  The Pretrial Scheduling Order was direct and clear on the deadline for joining additional parties, stating:  "No additional parties may be joined after May 1, 2010."  (*Id.* ¶ 2).  In accordance with that Order, and in an attempt to mitigate their standing problem, plaintiffs' counsel filed a Consolidated Amended Complaint on March 22, 2010, which joined the five plaintiffs from the pre-existing actions and added eight new plaintiffs.  (Doc. No. 32).

On April 12, 2010, and also in accordance with the Pretrial Scheduling Order, Sirius XM filed a motion to dismiss the Consolidated Amended Complaint.  (Doc. Nos. 37-39).  Plaintiffs did not respond to this motion, but instead filed a Second Consolidated Amended Class Action Complaint (the "Complaint" or "Second Amended Complaint") on May 3, 2010, which plaintiffs sent to Sirius XM's counsel by e-mail the next day.  (Doc. No. 46).  As reflected in a redline that

plaintiffs' counsel generated, the principal changes in the Second Amended Complaint over the Amended Complaint are to try to add eleven more new plaintiffs residing in eight different States, which, if the Court permits plaintiffs to do after the Court-ordered deadline for joining additional parties, would bring the total named plaintiffs in this case to twenty-four individuals residing in seventeen different States.  *See* accompanying Declaration of Todd R. Geremia ("Geremia Decl.") Ex. C.

### B.   Pertinent Background from the Complaint

The Complaint alleges that, on July 28, 2008, Sirius Satellite Radio Inc. ("Sirius") and XM Satellite Holdings Inc. ("XM") merged to form Sirius XM.  (Compl. ¶ 3).  Sirius XM provides satellite digital audio radio service, or what the Complaint refers to as "SDARS," in the United States.  (*Id.* ¶ 2).  Plaintiffs purport to bring this action on behalf of a nationwide class of all parties to an agreement with Sirius and XM for the provision of satellite radio services from July 28, 2008 to the present.  (*Id.* ¶ 269).

Plaintiffs allege that Sirius and XM made commitments to the Federal Communications Commission that, if they were permitted to transfer their licenses as part of their merger, the combined company would abide by certain pricing commitments, offer new programming, and provide other services to enhance consumer welfare.  (*Id.* ¶¶ 63-70).  According to the Complaint, however, Sirius XM has "evaded the price restrictions it offered and it has only marginally expanded the variety of choices available to subscribers."  (*Id.* ¶ 71.)

Plaintiffs allege that Sirius XM acquired monopoly power as a result of the merger and supposedly "abused its monopoly power."  (*Id.* ¶ 3).  As putative support for this allegation, the Complaint points to an alleged $2 increase in a monthly charge for an additional radio provided to multi-radio subscribers, a $3 monthly charge for Internet access in certain circumstances, a purportedly "excessive" royalty fee for music, and increased "administrative fees."  (*Id.* ¶¶ 6,

142).  The Complaint acknowledges that the FCC permitted Sirius XM to pass through costs incurred by Sirius XM as a result of statutorily or contractually required royalty fees paid by Sirius XM to musicians, record companies, and music publishers since the filing of the merger application.  (*Id.* ¶ 132).  According to the Complaint, however, Sirius XM purportedly charged consumers a royalty fee that exceeds the actual royalty fees paid by Sirius XM during the relevant period.  (*Id.* ¶ 133).  The Musical Works Royalty Rates upon which plaintiffs rely for this conclusion are based on plaintiffs' "information and belief."  (*Id.* ¶ 140, Table 2 & n.3).

The Complaint asserts, on behalf of a putative nationwide class, separate claims for damages allegedly caused by an unlawful acquisition and maintenance of monopoly power under Section 7 of the Clayton Act and Section 2 of the Sherman Act.  (*Id.* ¶¶ 280-99).  The Complaint further claims that, by allegedly overbilling consumers for the royalty fee, Sirius XM has breached its customer agreements with plaintiffs, which are governed by New York law.  (*Id.* ¶¶ 300-07).  Finally, plaintiffs assert separate claims under the consumer protection laws of forty-two States.

The named plaintiffs are residents of seventeen States who subscribe to Sirius XM's satellite radio service in those States (*id.* ¶¶ 17-39), and the Complaint asserts separate claims under the consumer protection laws of sixteen of those States:  Arizona, California, Florida, Illinois, Kansas, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, and Washington.  (*Id.* ¶¶ 310-440).[2]  However, for seven of these states—Arizona, Kansas, Maryland, New York, North Carolina, Ohio, and Washington—the only resident, named plaintiffs are those who were joined *after* this Court's May 1, 2010 deadline for adding new parties.  Plaintiffs further assert claims under the consumer

---

[2] Plaintiff David Salyer is a resident of South Carolina (Compl. ¶ 27), but plaintiffs do not assert a claim under the laws of that State.

protection laws of *twenty-six* other States (*id.* ¶ 442)—without alleging any basis for why they should be permitted to press consumer protection act claims under the laws of jurisdictions where they do not reside and did not purchase Sirius XM's service.

## ARGUMENT

## I.   THE ELEVEN PLAINTIFFS JOINED AFTER THE COURT-ORDERED DEADLINE FOR JOINING NEW PARTIES SHOULD BE DISMISSED

The eleven new named plaintiffs who were added to this action after this Court's May 1, 2010 deadline for joining new parties—Scott Byrd, Glenn Demott, Melissa Fast, James Hewitt, Ronald William Kader, Greg Lucas, Janel and Kevin Stanfield, Todd Stave, Paola Tomassini, and Edward Leyba—should be dismissed.

The Pretrial Scheduling Order states:  "No additional parties may be joined after May 1, 2010."  (Doc. No. 25 ¶ 2).  Plaintiffs' counsel apparently believed that they were entitled to extend this deadline to May 3 because the Court-ordered deadline fell on a Saturday.  But when a Court order states that something must be submitted by no later than May 1, 2010, that means exactly what it says, and a party cannot *sua sponte* adjust that deadline without prior leave of the Court.  To be sure, when computing a time period stated in days pursuant to Federal Rule of Civil Procedure 6(a), the final day of, for example, a ten-day period is moved to the following Monday if it falls on a weekend.  However, as the Advisory Committee Notes explain, the Rules are quite clear that this procedure does *not* apply when a deadline is a fixed date set by Court order—as it was here:

> The time-computation provisions of subdivision (a) apply only when a time period must be computed.  They do not apply when a fixed time to act is set.  The amendments thus carry forward the approach taken in *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1016 (6th Cir. 2005) (holding that Civil Rule 6(a) "does not apply to situations where the court has established a specific calendar day as a deadline"), and reject the contrary holding of *In re American Healthcare Management, Inc.*, 900 F.2d 827, 832 (5th Cir. 1990)

> (holding that Bankruptcy Rule 9006(a) governs treatment of date-certain deadline set by court order).  If, for example, the date for filing is "no later than November 1, 2007," subdivision (a) does not govern.  But if a filing is required to be made "within 10 days" or "within 72 hours," subdivision (a) describes how that deadline is computed.

Fed. R. Civ. P. 6 Advisory Committee Notes, 2009 Amendments; *see also* Fed. R. Civ. P. 6(a)(1) (noting that this provision applies "[w]hen the period is stated in days"); *accord Christaldi v. SEPTA*, No. CIV.A. 97-1653, 1997 WL 364444, at *1 (E.D. Pa. June 20, 1997).

There is also no basis for retroactively adjusting the Court-ordered deadline for joining additional parties in this action.  Plaintiffs have known about the threshold standing defect in this action for *months*.  As noted above, Sirius XM filed motions to dismiss in this and two other actions (now consolidated with this one) on February 25, 2010, and the principal basis for those motions was that plaintiffs lacked standing to assert the consumer protection laws of States where they do not reside.  Plaintiffs were thus on specific notice of the standing defect in their complaints since at least as early as February, and the Court has already afforded plaintiffs ample opportunity to remedy that defect by allowing them to submit the Consolidated Amended Complaint, and then to add additional named plaintiffs by no later than May 1, 2010.  Plaintiffs added eight other named plaintiffs *before* the Court-ordered deadline for joining new parties, but their Second Amended Complaint attempts to add eleven more parties *after* the deadline.

The Court should enforce its Scheduling Order and dismiss from this action the eleven new plaintiffs named in the Second Amended Complaint.  Discovery in this case will already be complicated enough with thirteen named plaintiffs; plaintiffs' counsel should not be permitted to add eleven more to it in violation of the Court-ordered deadline for joining new parties.

## II.   PLAINTIFFS DO NOT HAVE STANDING TO BRING CLAIMS FOR VIOLATION OF CONSUMER PROTECTION STATUTES IN STATES WHERE THEY DO NOT RESIDE

The claims for violations of the consumer protection acts under the laws of all States other than California, Florida, Illinois, Maine, Massachusetts, Michigan, New Hampshire, New Jersey, and Pennsylvania should also be dismissed.  The properly joined plaintiffs in this action do not have standing to assert violations of the consumer protection law of States where they do not reside.  And, because plaintiffs do not have standing in their individual capacities to assert such claims, they also lack standing to assert them on behalf of a putative class of consumers residing in those other States.

In determining whether a plaintiff has standing to bring a claim under Article III of the Constitution, the focus is on "whether the plaintiff is the proper party to bring this suit."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  It is the "burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  *Spencer v. Kemna*, 523 U.S. 1, 11 (1998) (internal quotation marks omitted).  To satisfy Article III's standing requirement, a plaintiff must show (1) an injury in fact; (2) a causal connection between the injury and the allegedly unlawful conduct; and (3) a likelihood that the injury will be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006).

Two related principles require the dismissal of plaintiffs' claims under the consumer protection laws of States where they do not reside.  First, a plaintiff must show standing for *each claim* that he asserts.  *See Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."); *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) (in a class action, "the selection of lead plaintiffs does not remove the basic requirement

that at least one *named* plaintiff must have standing to pursue each claim alleged").[3]  Second, a

plaintiff may not acquire standing by asserting a claim on behalf of other putative class members

who allegedly would have standing to assert it.  As the Supreme Court has held,

> That a suit may be a class action . . . adds nothing to the question
> of standing, for even named plaintiffs who represent a class "must
> allege and show that they personally have been injured, not that
> injury has been suffered by other, unidentified members of the
> class to which they belong and which they purport to represent."

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422

U.S. 490, 502 (1975)); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (same); *see also Doe v. Blum*,

729 F.2d 186, 190 n.4 (2d Cir. 1984) (same).[4]  Accordingly, "[i]t is not enough that a named

plaintiff can establish a case or controversy between himself and the defendant by virtue of

having standing as to one of many claims he wishes to assert.  Rather, each claim must be

analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named

plaintiff has suffered the injury that gives rise to that claim."  *Prado-Steiman ex. rel Prado v.

Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (internal quotation marks omitted).

    The Complaint in this action reflects a recent trend where plaintiffs' counsel have been

attempting to assert—on behalf of putative classes comprised of residents of multiple States—

violations of antitrust or consumer protection laws in States where the named plaintiffs do not

---

[3] *See also Rosen v. Tenn. Comm'r of Finance & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002) ("It is black-letter law that standing is a claim-by-claim issue."); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 414 (E.D. Penn. 2009) ("[T]o be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim.") (quoting *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir. 1987)).

[4] *Accord O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) ("The initial inquiry . . . is whether the lead plaintiff individually has standing, not whether or not other class members have standing."); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F. 3d 410, 423 (6th Cir. 1998) ("[I]ndividual standing is a prerequisite for all actions, including class actions.").

reside.  Courts, however, have regularly dismissed such claims for lack of Article III standing.[5]

The Court should do the same here, for the reasons stated above.  That plaintiffs seek to press

claims under these other States' laws on behalf of "[a]ll persons or entities who reside in the

United States" and subscribe to Sirius XM's satellite radio service (Compl. ¶ 269) does not solve

plaintiffs' Article III standing deficiency.  The named plaintiffs in these consolidated cases must

show that they *personally* have standing to assert each claim in the Complaint.  Here, the

properly named plaintiffs in the Complaint have standing to assert consumer protection act

claims only under the laws of the sixteen States where they reside, and not the laws of the other

twenty-six States alleged in the Complaint.  *See supra* note 5.

---

[5] *See Temple v. Circuit City Stores, Inc.*, Nos. 06 CV 5303, 06 CV 5304, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) ("Here, the plaintiffs allege no injury within any state other than Tennessee [where they are 'citizens and residents'].  Such injuries, if they occurred, were suffered by other people.  The plaintiffs therefore have no standing to bring claims for injuries under the laws of the non-Tennessee states, and I therefore dismiss those claims for lack of subject matter jurisdiction."); *In re Potash Antitrust Litig.*, __ F. Supp. 2d ___, 2009 WL 3583107, at *10 (N.D. Ill. Nov. 3, 2009) (dismissing antitrust and consumer protection act claims under the laws of States where plaintiffs do not reside); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 156-58 (E.D. Penn. 2009) (holding that employee benefit plans have standing to bring claims for violation of state antitrust and consumer protection act laws in States where their members reside, but lack standing to bring such claims under the laws of States where their members do not reside); *Smith v. Lawyers Title Ins. Corp.*, No. 07-12124, 2009 WL 514210, at *2-3 (E.D. Mich. Mar. 2, 2009) (dismissing claims by Michigan resident under consumer protection act laws of Arizona, Colorado, Maryland, Minnesota, Missouri, New Jersey, Tennessee, and Washington); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007) (dismissing antitrust claims asserted under the law of twenty-four States on the ground that "none of the named plaintiffs reside in or are alleged to have personally purchased" the product at issue in any of those states); *see also In re Flonase Antitrust Litig.*, 610 F. Supp. 2d at 415-19 (invoking an inference that plaintiffs alleged injury in the States where they reside and dismissing their claims under the applicable state law because plaintiffs failed to state a claim under these statutes); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (holding that plaintiffs lack standing to assert antitrust violations under the laws of States where they did not reside or purchase product at issue); *Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590, 2006 WL 1704477, at *3 (W.D.N.Y. June 15, 2006) (dismissing unfair labor practice claims under laws of States where plaintiff did not work for defendant).

The Court should therefore dismiss all of the consumer protection act claims asserted in the Complaint, other than those where properly named plaintiffs (*i.e.*, those joined as of May 1, 2010) were residents.  Accordingly, all of the consumer protection act claims, except those under the laws of California, Florida, Illinois, Maine, Massachusetts, Michigan, New Hampshire, New Jersey, and Pennsylvania, should be dismissed on the ground that plaintiffs lack standing to assert these claims.  (The consumer protection act claims under the laws of Arizona, Kansas, Maryland, New York, North Carolina, Ohio, and Washington should be dismissed because the only plaintiffs who could conceivably have standing to assert them were improperly joined as parties after the Court-ordered deadline for joining additional parties.)

## III.   IN ANY EVENT, PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR VIOLATION OF SECTION 349 OF NEW YORK'S GENERAL BUSINESS LAW

Although no properly joined plaintiff resides in New York, plaintiffs still plead a claim for violation of Section 349 of New York's General Business Law.  *See* Compl. ¶¶ 398-404.  But they have failed to state a Section 349 claim under New York law.

Section 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a).  In *Goshen v. Mutual Life Ins. Co. of New York*, the Court of Appeals made clear that this provision "require[s] that the consumer be deceived in New York." 746 N.Y.S.2d 858, 863 (2002).  The Court reasoned that the Legislature's use of the phrase "*in this state*" in Section 349 "unambiguously evinces a legislative intent to address commercial misconduct occurring in New York," and that "[t]o apply the statute to out-of-state transactions . . . would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349." *Id.* at 863-64.  The Court of Appeals further emphasized that the analysis under this

statute "does not turn on the residency of the parties" and, in particular, that the statute "was not intended to police the out-of-state transactions of New York companies."  *Id.* at 864; *see also id.* ("As both the text of the statute and the history suggest, the intent is to protect consumers in their transactions that take place in New York State.").

Under the rule laid down in *Goshen*, plaintiffs do not have a claim against Sirius XM for a violation of Section 349.  The only plaintiff who resides in New York, Scott Byrd, was improperly joined in this action as shown, *supra*, in Part I.  Further, even if Mr. Byrd were timely joined as a plaintiff, the Complaint does not allege any misleading conduct as to him.  Rather, the Complaint alleges only that Byrd's Sirius XM subscription will be renewed for $142.45 after the Second Amended Complaint was filed, he will be charged a Music Royalty Fee, and he "will suffer damages imminently due to Sirius XM's increased prices and illegal conduct."  Compl. ¶¶ 186-87.  None of these alleged facts describes any conduct that *misled* Mr. Byrd, though. While the Complaint includes a conclusory allegation that "Byrd and Class members residing in New York were deceived by Defendant's misrepresentations in New York," *id.* ¶ 402, there is no *factual allegation* to support this conclusory assertion.  And, indeed, it is hard to imagine how Mr. Byrd can properly allege deception because his subscription renewal was to allegedly occur *after* the filing of the Complaint, which outlines all of Sirius XM's supposed misrepresentations. Thus, assuming that Mr. Byrd actually renewed as he alleges he will, he necessarily did so with full knowledge of the facts alleged in the Complaint—and therefore cannot claim that he was "deceived" as required to state a claim under Section 349.

As to the other plaintiffs, the Complaint alleges only that they are residents of States other than New York who subscribe to Sirius XM's satellite radio service in those States.  Like the out-of-state plaintiffs in *Goshen*, such allegations do not state a claim under Section 349.  It

is not enough to allege that Sirius XM has its principal place of business in New York.  (Compl. ¶ 16).  In *Goshen* itself, one of the defendants, the Mutual Life Insurance Company of New York, had "extensive ties to New York and conduct[ed] business in the state"; and the other defendant, the Bell Atlantic Corporation, had a principal place of business in New York. *Goshen*, 746 N.Y.S.2d at 861-62.  The complaints in *Goshen* also alleged that the insurance company "conceived and orchestrated in New York" a deceptive scheme and that the telephone company made actionable misrepresentations on its website.  *See id.* at 862, 864.  Despite all of these allegations, the Court of Appeals held that the plaintiff there could not state a Section 349 claim against the New York-based insurance company because—just like all of the timely joined plaintiffs here—he had purchased the insurance policy at issue in Florida, not in New York.  *See id.* at 864 (noting that plaintiff "purchased his policy and paid his premiums in Florida," and so "[p]lainly, for purposes of section 349, any deception took place in Florida, not in New York").  Similarly, the Court held that the "[o]ut-of-state plaintiffs" in the action against Bell Atlantic "cannot allege that they were deceived in New York.  Thus, their complaint does not state any cognizable cause of action."  *Id.*

Here, too, the Complaint makes clear that the challenged transactions occurred in other States and it does not allege that any timely joined plaintiffs were deceived *in New York*.  The Complaint alleges that Sirius XM made certain representations on its website, *see* Compl. ¶¶ 150-53, 382, but, as in *Goshen*, even those allegations are not sufficient to establish that a New York-based defendant engaged in deceptive conduct in New York.  *See Goshen*, 746 N.Y.S.2d at 862, 864 (holding that "[o]ut-of-state plaintiffs . . . cannot allege they were deceived in New York," notwithstanding purported misrepresentations on a website operated by a defendant with a principal place of business in New York).

On this separate ground—even aside from plaintiffs' lack of Article III standing to assert a consumer protection act claim under New York law—the claim under Section 349 of New York's General Business Law should be dismissed. *See, e.g.*, *Pentair Water Treatment (OH) Co. v. Continental Ins. Co.*, No. 08 Civ. 3604, 2009 WL 1119409, at *3-4 (S.D.N.Y. Apr. 26, 2009) (dismissing claim under Section 349 against defendant that had its principal place of business in New York; plaintiffs "do not allege that they were solicited by Defendants in New York . . . , that they ever met with Defendants in New York . . ., that they purchased the Policy in New York, or that they ever corresponded with Defendants in New York concerning their purchase"); *Rodriguez v. It's Just Lunch Int'l*, No. 07 Civ. 9227, 2009 WL 399728 (S.D.N.Y. Feb. 17, 2009), *report and recommendation adopted*, 2009 WL 666435 (S.D.N.Y. Mar. 12, 2009) (dismissing Section 349 claim because the complaint did not "indicate a plaintiff was victimized by a deceptive act(s) that took place within New York").[6]

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE CALIFORNIA CONSUMER REMEDIES ACT, AND MAY NOT SEEK DAMAGES UNDER CALIFORNIA LAW

Plaintiffs have also failed to state a claim under California's Consumer Legal Remedies Act because their allegations are insufficient to show a violation of this statute. Plaintiffs also cannot obtain a damages remedy because the other provisions of California law that plaintiffs invoke (*see* Compl. ¶¶ 326-37) do not authorize damages of any kind—compensatory, treble, or other punitive awards—or even a claim for attorney's fees. *See, e.g.*, *Buckland v. Threshold*

---

[6] In *Leider v. Ralfe*, 387 F. Supp. 2d 283 (S.D.N.Y. 2005), this Court denied a motion to dismiss a Section 349 claim where the defendant argued that the plaintiffs had failed to allege deception in New York. But in *Leider*, unlike here, the plaintiffs had alleged they were deceived in connection with diamonds purchased *in Manhattan*, and they also limited their proposed class to persons who had made purchases in New York State. *See id.* at 294 & n.11 (noting that "plaintiffs purchased diamonds and diamond jewelry in New York City and incurred damages there" and that "plaintiffs have limited their proposed § 349 class to persons who made their purchases in New York State").

*Enters., Ltd.*, 66 Cal. Rptr. 3d 543, 558 (Cal. Ct. App. 2007) ("[L]ike the UCL [Unfair Competition Law], remedies for individuals under the FAL [False Advertising Law] are limited to restitution and injunctive relief, and *recovery of damages is not authorized*.") (emphasis added).

### A.    Plaintiffs Have Failed To State A Claim Under The California Consumer Legal Remedies Act

Plaintiffs have failed to state a claim under the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*  The CLRA is limited to very specific types of transactions, and none of them is properly alleged in the Complaint here.  Plaintiffs plead this claim in a wholly conclusory fashion, simply by listing sections of the Act that Sirius XM supposedly violated.  (Compl. ¶ 319).  However, the facts alleged do not support a violation of any of the cited sections.

First, Plaintiffs claim that Sirius XM violated the Act by "[r]epresenting that goods or services have . . . characteristics, . . . uses [or] benefits . . . which they do not have."  (Compl. ¶ 319 (quoting Cal. Civ. Code § 1770(a)(5))).  Yet plaintiffs do not identify any "characteristics," "uses," or "benefits" that allegedly were misrepresented.  Plaintiffs point to the alleged misrepresentation of the Royalty Fee, but this fee is just that—a fee—not a characteristic, use, or benefit of Sirius XM's service.

Second, plaintiffs claim that Sirius XM violated the Act by "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."  (*Id.* ¶ 319 (quoting Cal. Civ. Code § 1770(a)(7))).  Once again, however, the Royalty Fee has nothing to do with the "standard, quality, or grade" of the satellite radio service.

Third, plaintiffs claim that Sirius XM violated the Act by "[a]dvertising goods or services with intent not to sell them as advertised."  (*Id.* ¶ 319 (quoting Cal. Civ. Code § 1770(a)(9))).

Plaintiffs, however, do not identify any *advertisement* relied upon by the only three California named plaintiffs:  Bonsignore, Dremak, and Hewitt (who was not timely joined).  (*Id.* ¶¶ 176-79, 192-96, 201-05).  Rather, plaintiffs claim only that these three plaintiffs relied on the "terms of their contracts," not any advertisements.  (*Id.* ¶ 321).

Fourth, plaintiffs claim that Sirius XM violated the Act by "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."  (*Id.* ¶ 319 (quoting Cal. Civ. Code § 1770(a)(14))).  The alleged misrepresentation regarding the Royalty Fee, however, did not claim that the transaction involved any "rights, remedies, or obligations."

Fifth, plaintiffs claim that Sirius XM violated the Act by "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."  (*Id.* ¶ 319 (quoting Cal. Civ. Code § 1770(a)(16))).  But plaintiffs do not point to any representation that fits this criteria.

Finally, plaintiffs claim that Sirius XM violated the Act by "[i]nserting an unconscionable provision in the contract."  (*Id.* ¶ 319 (quoting Cal. Civ. Code § 1770(a)(19))).  But plaintiffs fail to identify which provision is unconscionable, let alone explain why.

In sum, because plaintiffs have not alleged a misrepresentation that is actionable pursuant to the CLRA, this claim should be dismissed.

### B.     Plaintiffs' Claim For Damages Under The CLRA Should Be Dismissed Because They Failed To Give Timely Notice, As Required By The Statute

Even assuming that plaintiffs' claim under the CLRA did not have these fatal defects, plaintiffs would not have a claim for damages under this statute because they failed to comply with a statutorily required notice provision.  Section 1782(a) of the Act provides:

> *Thirty days or more prior to the commencement of an action for damages* pursuant to this title, the consumer shall do the following:

> (1) Notify the person alleged to have employed or committed
> methods, acts, or practices declared unlawful by Section 1770 of
> the particular alleged violations of Section 1770.
>
> (2) Demand that the person correct, repair, replace, or otherwise
> rectify the goods or services alleged to be in violation of Section
> 1770.
>
> The notice shall be in writing and shall be sent by certified or
> registered mail, return receipt requested, to the place where the
> transaction occurred or to the person's principal place of business
> within California.

Cal. Civ. Code § 1782(a) (emphasis added).  That is, *prior to* commencing any action for damages, a consumer "shall" notify the person alleged to have committed an unlawful practice and demand that the person correct or otherwise rectify it.  *Id.*  This notice must be sent "[t]hirty days or more prior to the commencement of an action for damages."  *Id.*  Failure to comply with this procedure is fatal to a request for damages pursuant to the Act, and requires dismissal of a damage claim *with prejudice*.  *See Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009) (dismissing claim for damages with prejudice due to plaintiff's failure to provide statutorily required notice and noting that "compliance with [this] notice requirement is 'necessary to state a claim'" and that "these procedural requirements are strictly adhered to by dismissing a claim with prejudice").[7]  This result is consistent with the mandatory "shall"

---

[7] *See, e.g.*, *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) ("Because Plaintiffs failed to provide notice to Defendants pursuant to § 1782(a), their claim for damages under the CLRA must be dismissed with prejudice."); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007) ("Plaintiff claimed damages without giving Defendants the statutorily required opportunity for settlement. . . . Plaintiff's claim for damages under the CLRA must be dismissed with prejudice."); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) ("Plaintiff's actions do not constitute sufficient 'notice' under § 1782 of the CLRA, and this Court . . . thus GRANTS Defendant's Motion to Dismiss the several causes of action under the CLRA, with prejudice.") (footnote omitted; emphasis in original); *see also Mattson v. Bristol-Myers Squibb Co.*, No. 07-908 (FLW), 2009 WL 5216966, at *7 (D.N.J. Dec. 30, 2009) ("Having surveyed the decisions of California state and federal courts in this context, the Court is constrained by prior case law and must strictly enforce the

language of the statute, and with the California Court of Appeal's admonition that the statute must be construed strictly. *See Outboard Marine Corp. v. Superior Court*, 124 Cal. Rptr. 852, 858-59 (Cal. App. 3d Dist. 1975) ("The clear intent of the act is to provide and facilitate pre-complaint settlements of consumer actions . . . .  This clear purpose may only be accomplished by a literal application of the notice provisions.").

Plaintiffs allege that they complied with the notice requirement by making a demand on Sirius XM (Compl. ¶ 323), but this demand was not made thirty days prior to commencing this action—as required by the statute—even though from the outset of when this action was first filed in December 2009 plaintiffs have *claimed* damages pursuant to the CLRA and other statutes.  (Doc. No. 1 ¶ 177-78).  Plaintiffs' first letter purporting to be the statutorily required notice to Sirius XM was not sent until March 22, 2010, however, the *same day* they filed the Consolidated Amended Complaint and more than *three months* after this action was commenced. *See* Geremia Decl. Ex. A; *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, No. 08 Civ. 11365(RJH), 2010 WL 1257300, at *5 (S.D.N.Y. Mar. 31, 2010) ("In resolving a Rule 12(b)(6) motion to dismiss, the Court may consider documents attached to the complaint, incorporated in it by reference, or otherwise explicitly referenced in it.").

While plaintiffs have since amended their complaint once again, this new amendment does not change the analysis.  The same situation occurred in *Cattie*:  "Plaintiff first claimed for damages, then gave notice, then amended her complaint, more than thirty days after giving notice."  504 F. Supp. 2d at 950.  The court dismissed the damage claim under the CLRA and reasoned that "[p]ermitting Plaintiff to seek damages first and then later, in the midst of a lawsuit,

---

(continued…)

notice provision of § 1782."); *but see Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 WL 3782902, at *6 (N.D. Cal. Dec. 21, 2006).

give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement."  *Id.*; *see also Utility Consumers' Action Network v. Sprint Solutions, Inc.*, No. C07-CV-2231-W (RJB), 2008 WL 1946859, at *3 (S.D. Cal. Apr. 25, 2008) ("The prefiling notice serves to *avoid* litigation, not to put additional pressure on a defendant during the course of litigation.").  Where, as here, a demand is untimely, "Plaintiff cannot cure this deficiency by amendment."  *Cattie*, 504 F. Supp. 2d at 950.

Plaintiffs thus cannot use an amendment to cure their failure to comply with the notice requirement set forth in Section 1782(a) of the CLRA.  For this separate reason, their CLRA claim should be dismissed.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MASSACHUSETTS CONSUMER PROTECTION ACT

Plaintiffs assert a claim under the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A (Compl. ¶¶ 370-78), but they also failed to comply with the statutorily required notice provision for this statute.

The pertinent provision states:  "At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."  Mass. Gen. L. ch. 93A § 9(3).  A 30-day "demand letter" is "a prerequisite to bringing a suit under the Consumer Protection Act."  *Entrialgo v. Twin City Dodge*, 333 N.E.2d 202 (Mass. 1975).  "Not only must such a letter be sent, but a plaintiff must also plead that he has complied with this requirement as a prerequisite to suit."  *Kanamaru v. Holyoke Mut. Ins. Co.*, 892 N.E.2d 759, 768 (Mass. App. Ct. 2008).  "[A] failure" to do so "is fatal on a motion to dismiss."  *McMahon v. Digital Equipment Corp.*, 944 F. Supp. 70, 77 (D.

Mass. 1996); *see also Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 54 (D. Mass. 2000) ("Such a letter is an absolute prerequisite to an action asserted under G.L. c. 93A, § 9.").

Plaintiffs plainly have failed to meet the thirty-day notice requirement here. As with their claim under California law, plaintiffs allege that they made a demand in accordance with the statute, but this demand was not made until March 22, 2010. (Compl. ¶ 377). *See also* Geremia Decl. Ex. B. Even assuming for the sake of argument that the filing of the Consolidated Amended Complaint, rather than the original Complaint, is the proper point of reference—and it is not—plaintiffs' demand is clearly untimely since it occurred on the same day as (rather than thirty days *before*) the filing. *See In re Flonase Antitrust Litig.*, ___ F. Supp. 2d ___, 2010 WL 234858, at *10 (E.D. Pa. Jan. 21, 2010) ("The fact that plaintiff did thereafter send a letter to Defendant on July 20, 2009, nearly two months after filing the [Second Amended Complaint], cannot save plaintiff's claim.").

One again, that plaintiffs amended their complaint a second time on May 3, 2010 is irrelevant because the statute starts the thirty-day period based on "the filing of any such action," not the date of the last amended complaint. If the rule were otherwise, a plaintiff could almost always defeat the statute simply by amendment, thereby undermining the purpose of the pre-suit demand requirement. Plaintiffs' claim under the Massachusetts Consumer Protection Act should therefore be dismissed.

## VI.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT

Plaintiffs also assert a claim for breach of contract. Their theory is that Sirius XM breached its Customer Agreements "[b]y overbilling the subscribers for the Royalty Fee and providing false and deceptive information about the billing statements." Compl. ¶ 306. Specifically, they point to one section of the Customer Agreement, which states that customers "will be charged a U.S. Music Royalty Fee" and "[f]or further details on how this fee is

calculated see FAQs" on Sirius XM websites.  *Id.* ¶ 151; *see also id.* ¶ 304.  These websites, in turn, state that "100% of the U.S. Music Royalty Fee will be used to offset payments from Sirius and XM to the music industry" and that "[a]ll subscribers who receive a given package containing music pay the same fee."  *Id.* ¶ 153.  According to plaintiffs, Sirius breached its Customer Agreements because "the Royalty Fee charged by Sirius XM is much greater than the actual royalty fee cost increases incurred by Sirius XM" and "not all subscribers receiving more than incidental music content pay the same fee."  *Id.* ¶¶ 155-56.  However, plaintiffs ignore crucial provisions of the Agreement and websites which show that plaintiffs have no claim for breach of contract as a matter of law.

*First*, the Customer Agreement states unequivocally—in the same section plaintiffs rely upon—that the U.S. Music Royalty Fee is "subject to change without notice."  Compl. Ex. A, Part F, § 8 ("Fees: We will charge you one or more of the following fees, all of which are subject to change without notice: … U.S. Music Royalty Fee.").  In analyzing a similar provision, the New York Appellate Division has recognized that there could be no breach of contract.  *See Prusack v. State*, 117 A.D.2d 729 (2d Dep't 1986).  Specifically, the case concerned a tuition increase, where "specific disclaimers were included in the bulletins provided to claimants"— which "became a part of the parties' contract"—"to the effect that the tuition charges were subject to change."  *Id.* at 730.  Based on the "subject to change" provision, "the State was not contractually obligated to adhere to the initial $6,000 charge," and "[t]herefore, no breach of contract occurred."  *Id.*  Likewise, here, the provision stating that the Royalty Fee is "subject to change without notice" means that Sirius XM did *not* breach the Customer Agreement by allegedly charging a Royalty Fee that was different from what plaintiffs say they expected.

*Second*, even assuming that the Royalty Fee was "greater than the actual royalty fee cost increases incurred by Sirius XM," Compl. ¶ 155, plaintiffs cannot properly allege the requisite element of damages on their breach of contract claim. *See Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("To establish a *prima facie* case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach.").  This is because the amount of the Royalty Fee was *exactly as stated in the Agreement*.  Specifically, the Complaint acknowledges that the website stated:  "The fee is $1.98 a month on our base $12.95 subscriptions and $.97 for base plans that are eligible for a second radio discount. Your actual fee may vary depending upon the Package and Plan term you choose."  Compl. ¶ 153.  The Complaint does not allege that any plaintiff paid more than $1.98 per month for the Royalty Fee on a base plan, or more than $.97 per month for the Royalty Fee on a second radio discount.  *See, e.g.*, *id.* ¶ 163 (plaintiff Blessing charged $1.98 Royalty Fee); *id.* ¶ 167 (same for plaintiff Scerbo).  To the contrary, plaintiffs admit that there was no plan where *anyone* was charged more than $1.98.  *See* Compl. ¶ 135, tbl. 1.  Since no plaintiff actually paid more than was stated in the Customer Agreement and the website, no plaintiff suffered any damages—regardless of whether the amount was calculated in a manner different from what plaintiffs say they expected.  *See, e.g.*, *Harding v. Naseman*, No. 07 Civ. 8767(RPP), 2009 WL 1953041, at *28 (S.D.N.Y. July 8, 2009) ("'[T]o satisfy the damages element of a cause of action for breach of contract, the pleadings must allege that the breach directly and proximately caused plaintiff's injury.") (quoting *Weiss v. TD Waterhouse*, 45 A.D.3d 763, 764, 847 N.Y.S.2d 94 (2d Dep't 2007)).  Simply put, the reasons why a seller sets a certain price are irrelevant to a breach of contract claim where, as here, a customer has expressly *agreed* to pay that price.  *Cf. TD Waterhouse Investor Services, Inc. v.*

*Integrated Fund Services*, No. 01 Civ. 8986, 2003 WL 42013, at *3 (S.D.N.Y. Jan. 6, 2003) (Baer, J.) (holding that there were no damages for breach of contract, where—despite defendant's error in calculation—plaintiff ended up receiving the same fee it would otherwise have received).

*Third*, plaintiffs' claim that "not all subscribers receiving more than incidental music content pay the same fee," Compl. ¶ 156, is similarly deficient.  Here again, because the fee was no greater than that listed on the website, there can be no damages from any "pay the same fee" claim for breach.  In any event, the website did *not* state that "all subscribers" receiving more than incidental music content would pay the same fee, but rather that "[a]ll subscribers who receive a *given package* containing music pay the same fee."  *Id.* ¶ 153 (emphasis added).  And there is no allegation that plaintiffs who received the same, given package paid different fees.  Thus, there is simply no basis for the claim that Sirius XM breached the Customer Agreement by charging different fees for different plans.

Finally, plaintiff cannot salvage their deficient claim for breach of contract by invoking the covenant of good faith and fair dealing.  New York courts consistently dismiss such "claims" where, as here, they are duplicative of a deficient claim for breach of contract.  *See, e.g.*, *Jacobs Private Equity, LLC v. 450 Park LLC*, 803 N.Y.S.2d 14, 15 (1st Dep't 2005) ("The cause of action for breach of the implied covenant of good faith and fair dealing was properly dismissed as duplicative of the insufficient breach of contract claim."); *Triton Partners LLC v. Prudential Secs. Inc.*, 752 N.Y.S.2d 870, 870 (1st Dep't 2003) ("The breach of the covenant of good faith and fair dealing claim was properly dismissed since it was merely a substitute for a nonviable breach of contract claim.").  As the Second Circuit has explained, "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the

implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (internal quotation marks omitted).

Here, the same alleged conduct that underlies the breach of contract claim also serves as the alleged predicate for the assertion that Sirius XM breached the covenant of good faith and fair dealing.  Plaintiffs do not identify *any* conduct, separate from the supposed breach of contract, that constitutes a breach of the implied covenant of good faith and fair dealing.  *See* Compl. ¶¶ 300-07.  Indeed, the Complaint's only mention of "good faith" is that such a requirement exists in every contract.  *See id.* ¶ 305.  However, this proposition does not change that plaintiffs' "claim" for breach of the covenant of good faith and fair dealing is duplicative of their breach of contract claim, which should be dismissed for all of the reasons stated above.

## CONCLUSION

Sirius XM respectfully requests that the Court grant this motion and (i) dismiss from this lawsuit all of the plaintiffs who were untimely joined (Scott Byrd, Glenn Demott, Melissa Fast, James Hewitt, Ronald William Kader, Greg Lucas, Janel and Kevin Stanfield, Todd Stave, Paola Tomassini, and Edward Leyba); (ii) dismiss for lack of standing all of the claims asserted under Count IV of the Complaint, for breach of consumer protection statutes, with respect to States other than California, Florida, Illinois, Maine, Massachusetts, Michigan, New Hampshire, New Jersey, and Pennsylvania; (iii) dismiss plaintiffs' claim under Section 349 of New York's General Business Law; (iv) dismiss plaintiffs' claim under California's Consumer Legal Remedies Act (Cal. Civil Code § 1750 *et seq.*); (v) dismiss plaintiffs' claim under the Massachusetts Consumer Protection Act (Mass Gen. L. ch. 93A); and (vi) dismiss Count III of the Complaint, plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

Dated:  May 18, 2010                              Respectfully submitted,

                                                 John M. Majoras
                                                 JONES DAY
                                                 51 Louisiana Avenue, N.W.
                                                 Washington, DC  20001-2113
                                                 (202) 879-3939

                                                 Thomas Demitrack
                                                 Brian K. Grube
                                                 JONES DAY
                                                 North Point
                                                 901 Lakeside Avenue
                                                 Cleveland, Ohio  44114-1190
                                                 (216) 586-3939

Todd R. Geremia (TG-4454)
JONES DAY
222 East 41st Street
New York, New York 10017-6702
(212) 326-3939

*Attorneys for Defendant,*
*Sirius XM Radio Inc.*