UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL BLESSING, EDWARD A. SCERBO, JOHN CRONIN, CHARLES BONSIGNORE, BRIAN BALAGUERA, SCOTT BYRD, GLENN DEMOTT, ANDREW DREMAK, MELISSA FAST, JAMES HEWITT, TODD HILL, CURTIS JONES, RONALD WILLIAM KADER, EDWARD LEYBA, GREG LUCAS, JOSHUA NATHAN, JAMES SACCHETTA, DAVID SALYER, SUSIE STANAJ, JANEL and KEVIN STANFIELD, PAUL STASIUKEVICIUS, TODD STAVE, and PAOLA TOMASSINI, on Behalf of Themselves and All Others Similarly Situated, | No. 09-cv-10035 (HB) |
| Plaintiffs, | |
| -against- | |
| SIRIUS XM RADIO INC., | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: 646-722-8500
Fax: 646-722-8501

**MILBERG LLP**
One Pennsylvania Plaza
New York, NY 10119
Tel.: 212-594-5300
Fax.: 212-868-1229

**COOK, HALL & LAMPROS, LLP**
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel.: 404 876-8100
Fax: 404 876-3477

*Interim Class Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.      THE COURT EXPRESSLY AUTHORIZED PLAINTIFFS TO JOIN THE ELEVEN
        PLAINTIFFS ADDED IN THE SECOND AMENDED COMPLAINT ........................... 4

II.     NAMED PLAINTIFFS HAVE STANDING TO ASSERT ALL OF THE STATE LAW
        CLAIMS .................................................................................................................... 5

        A.      Named Plaintiffs Have Standing To Represent Class Members From Other States
                For Claims Brought Under Those Other States' Law ............................................ 5

                1.      Article III Does Not Require A Named Plaintiff From Each State ............ 5

                2.      Looking Beyond The Named Plaintiffs In Determining Standing Is
                        Consistent With The Provisions And Purpose Of CAFA ........................... 8

        B.      Courts Typically Defer Consideration of Defendant's Standing Argument Until
                Class Certification ................................................................................................ 10

III.    PLAINTIFFS CAN ASSERT A CLAIM UNDER NEW YORK'S CONSUMER
        PROTECTION LAW ................................................................................................ 11

IV.     PLAINTIFFS STATE A CLAIM UNDER THE CALIFORNIA CONSUMERS LEGAL
        REMEDIES ACT AND MAY SEEK DAMAGES FOR THESE VIOLATIONS .......... 13

        A.      Plaintiffs State A Claim For Violation Of The CLRA ........................................ 13

        B.      Plaintiffs Complied With CLRA's Notification Requirement .............................. 16

V.      PLAINTIFFS STATE A CLAIM UNDER THE MASSACHUSETTS CONSUMER
        PROTECTION ACT ................................................................................................. 18

VI.     PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT ............................. 20

        A.      Plaintiffs' Breach of Contract Claims Should Not Be Dismissed ........................ 20

                1.      Plaintiffs Properly Allege Breach of Contract .......................................... 20

                2.      Plaintiffs Properly Allege Damages In The Form Of Overcharge .......... 21

**B.**     Plaintiffs' Breach of Implied Covenant of Good Faith And Fair Dealing Should Not Be Dismissed ................................................................................................... 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
　521 U.S. 591 (1997).................................................................................................9, 10

*Arista Records LLC v. Lime Group LLC,*
　532 F.Supp. 2d 556 (S.D.N.Y. 2007).....................................................................13

*Aron v. U-Haul Company of California,*
　143 Cal. App. 4th 796 (Cal. Ct. App. 2006) ................................................... 13-14

*Ashcroft v. Iqbal,*
　129 S. Ct. 1937 (2009)..............................................................................................13

*Ball v. Wal-Mart, Inc.,*
　102 F. Supp. 2d 44 (D. Mass. 2000) .......................................................................20

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007)...................................................................................................13

*Boykin v. KeyCorp.,*
　521 F.3d 202 (2d Cir. 2008)......................................................................................13

*Cassese v. Washington Mutual, Inc.,*
　255 F.R.D. 89 (E.D.N.Y. 2008)..................................................................................5

*Citi Management Group, Ltd. v. Highbridge House Ogden, LLC,*
　45 A.D.3d 487, 847 N.Y.S.2d 33 (1st Dep't 2007) ...............................................25

*Clark v. McDonald's Corp.,*
　213 F.R.D. 198 (D.N.J. 2003)...................................................................................11

*Cohen v. J.P. Morgan Chase & Co.,*
　608 F. Supp. 2d 330 (E.D.N.Y. 2009) .....................................................................12

*Colgan v. Leatherman Tool Group, Inc.,*
　135 Cal. App. 4th 663 (Cal. Ct. App. 2006) ..........................................................15

*Deitz v. Comcast Corp.,*
　No. 06-cv-06352, 2006 U.S. Dist. LEXIS 94333 (N.D. Cal. Dec. 21, 2006).........18

*Dialcom, LLC v. AT&T Corp.,*
　20 Misc. 3d 1111(A), 2008 WL 2581876 (Sup. Ct. Kings Co. June 17, 2008) ......24

*Doe v. Blum,*
　729 F.2d 186 (2d Cir. 1984)........................................................................................6

*Entrialgo v. Twin City Dodge, Inc.*,
  333 N.E.2d 202 (Mass. 1975) ................................................................20

*Fallick v. Nationwide Mutual Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ............................................................6, 11

*Fantozzi v. Axsys Technologies, Inc.*,
  07-cv-02667, 2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008) ......................25

*Galindo v. Financo Fin., Inc.*,
  No. 07-cv-03991, 2008 U.S. Dist. LEXIS 82773 (N.D. Cal. Oct. 3, 2008) ............................18

*Hale v. Sharp Healthcare*,
  D054637, 2010 Cal. App. LEXIS 530 (Cal. Ct. App. Apr. 19, 2010)................................14, 15

*Harding v. Naseman*,
  07-cv-8767 (RPP), 2009 WL 1953041 (S.D.N.Y. July 8, 2009)...........................................24

*Horne v. Harley Davidson, Inc.*,
  660 F. Supp. 2d 1152 (C.D. Cal. 2009) ................................................14, 15

*Hoving v. Transnation Title Ins. Co.*,
  545 F. Supp. 2d 662 (E.D. Mich. 2008)................................................11

*In re Buspirone Patent Litig.*,
  185 F. Supp. 2d 363 (S.D.N.Y. 2002)................................................6, 11

*In re Ditropan XL Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................................................9

*In re Flonase Antitrust Litig.*,
  610 F. Supp. 2d 409 (E.D. Pa. 2009) ................................................7, 9

*In re Flonase Antitrust Litig.*,
  No. 08-cv-3301, 2010 WL 234858 (E.D. Pa. Jan. 21, 2010)................................7, 20

*In re Grand Theft Auto Video Game Consumer Litig.*,
  No. 06-md-1739, 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) ......................................10-11

*In re Hypodermic Prods. Antitrust Litig.*,
  No. 05-cv-1602, 2007 U.S. Dist. LEXIS 47438 (D.N.J. June 29, 2007)................................11

*In re K-Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.J. 2004) ................................................11

*In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*,
  588 F. Supp. 2d 1111 (C.D. Cal. 2008) ................................................17

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    252 F.R.D. 83 (D. Mass. 2008)..................................................................................9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    263 F. Supp. 2d 172 (D. Mass. 2003) ....................................................................11

*In re Potash Antitrust Litig.*,
    No. 08-cv-06910, 2009 WL 3583107 (N.D. Ill. Nov. 3, 2009) ...............................9

*In re Relafen Antitrust Litig.*,
    221 F.R.D. 260 (D. Mass. 2004).....................................................................5, 9, 11

*In re Salomon Analyst Level 3 Litig.*,
    350 F. Supp. 2d 477 (S.D.N.Y. 2004).....................................................................7

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06-cv-5173, 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ..............5

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ...................................................................9

*In re Universal Service Fund Telephone Billing Practices Litig.*,
    02-MD-1468-JWL, 2008 WL 3850695 (D. Kan. Aug. 15, 2008)..........................22

*In re Universal Service Fund Telephone Billing Practices Litig.*,
    02-MD-1468-JWL, 2009 WL 435111 (D. Kan. Feb. 20, 2009)..............................23

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009)...............................................................................9

*Int'l Audiotext Network, Inc. v. AT&T Co.*,
    62 F.3d 69 (2d Cir. 1995) .......................................................................................19

*Jacobs v. Yamaha Motor Corp., USA.*,
    649 N.E.2d 758 (Mass. 1995) .................................................................................19

*Jefferson v. Chase Home Fin.*,
    No. 06-cv-6510, 2008 U.S. Dist. LEXIS 101031 (N.D. Cal. Apr. 29, 2008).........15

*Kanamaru v. Holyoke Mutual Ins. Co.*,
    892 N.E. 2d 759 (Mass. App. Ct. 2008) ................................................................20

*Keilholtz v. Lennox Hearth Prods., Inc.*,
    No. 08-cv-00836, 2009 U.S. Dist. LEXIS 81108 (N.D. Cal. Sept. 8, 2009).........18

*Kenford Co., Inc. v. County of Erie*,
    73 N.Y.2d 312, 537 N.E.2d 176 (N.Y. 1989)........................................................21

*Kennedy v. Natural Balance Pet Foods, Inc.*,
No. 07-cv-1082, 2007 U.S. Dist. LEXIS 57766 (S. D. Cal. Aug. 8, 2007) ......................17, 18

*Kuhl v. Guitar Center Stores, Inc.*,
No. 07-cv-214, 2008 WL 656049 (N.D. Ill. Mar. 5, 2008) ....................................................11

*Marshall v. Priceline.com Inc.*,
C.A. No. 05C-02-195 WCC, 2006 WL 3175318 (Del. Super. Oct. 31, 2006) .................23, 24

*Matter of Riconda*,
290 N.Y.2d 733, 738 (1997) ..................................................................................................22

*McMahon v. Digital Equipment Corporation*,
944 F. Supp. 70 (D. Mass. 1996) ...........................................................................................20

*Montefiore Medical Center v. Crest Plaza LLC*,
2009 WL 1675994 (Sup. Ct. Westchester Co. June 16, 2009) ...............................................22

*Morgan v. AT&T Wireless Servs., Inc.*,
177 Cal. App. 4th 1235 (Cal. Ct. App. 2009) ...................................................................17, 18

*Mowbray v. Waste Mgmt. Holdings, Inc.*,
189 F.R.D. 194 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000).....................................5

*Nagel v. Twin Labs., Inc.*,
109 Cal. App. 4th 39 (Cal. Ct. App. 2003) .............................................................................15

*Nat'l Market Share, Inc. v. Sterling Nat'l Bank*,
392 F.3d 520 (2d Cir. 2004).....................................................................................................24

*Negrin v. Norwest Mortgage, Inc.*,
263 A.D.2d 39, 700 N.Y.S.2d 184 (2d Dep't 1999) ...............................................................12

*New York v. Feldman*,
210 F. Supp. 2d 294 (S.D.N.Y. 2002)......................................................................................12

*O'Shea v. Littleton*,
414 U.S. 488 (1974), *vacated sub nom. Spomer v. Littleton*, 414 U.S. 514 (1974).................6

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)..................................................................................................................10

*Parks v. Dick's Sporting Goods Inc.*,
05-cv- 6590, 2006 WL 1704477 (W.D.N.Y. June 15, 2006) ...................................................9

*Payton v. County of Kane*,
308 F.3d 673 (7th Cir. 2002) ...................................................................................................11

*Pella Corp. v. Saltzman,*
   No. 09-8025, 2010 WL 1994653 (7th Cir. May 20, 2010) .................................................... 2, 5

*Prado-Steiman ex rel. Prado v. Bush,*
   221 F.3d 1266 (11th Cir. 2000) ................................................................................................. 7

*Prusack v. State,*
   117 A.D.2d 729 (2d Dep't 1986) ............................................................................................. 21

*Rosen v. Tenn. Comm'r of Fin. & Admin.,*
   288 F.3d 918 (6th Cir. 2002) ..................................................................................................... 6

*Saltzman v. Pella Corp.,*
   257 F.R.D. 471 (N.D. Ill. 2009), *aff'd,* 2010 WL 1994653 (7th Cir. May 20, 2010) ............. 11

*Sheet Metal Workers Nat'l Health Fund v. Amgen Inc.,*
   No. 07-cv-5295, 2008 U.S. Dist. LEXIS 62181 (D.N.J. Aug. 13, 2008) ................................ 10

*Simon v. E. Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976) ..................................................................................................................... 6

*Smith v. Lawyers Title Ins. Corp.,*
   414 U.S. 514 (1974) ................................................................................................................... 9

*Spomer v. Littleton,*
   07-cv-12124, 2009 WL 514210 (E.D. Mich. Mar. 2, 2009) ...................................................... 6

*Steinberg v. Nationwide Mut. Ins. Co.,*
   224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................................................. 5

*Steiner v. Apple Computer, Inc.,*
   556 F. Supp. 2d 1016 (N.D. Cal. 2008) ................................................................................... 16

*Stutman v. Chemical Bank,*
   95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000) ............................................................................ 11-12

*Tarpey v. Crescent Ridge Dairy, Inc.,*
   713 N.E.2d 975 (Mass. App. Ct. 1999) ................................................................................... 20

*TD Waterhouse Investor Services, Inc. v. Integrated Fund Services, Inc.,*
   01-cv-8986, 2003 WL 42013 (S.D.N.Y. Jan. 6, 2003) ............................................................ 23

*Teller v. Bill Hayes, Ltd.,*
   213 A.D. 2d 141, 630 N.Y.S. 2d 769 (2d Dep't 1995) ............................................................ 12

*Temple v. Circuit City Stores,*
   06-cv-5303, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007) ...................................................... 9

*Truta v. Avis Rent A Car System, Inc.*,
193 Cal. App. 3d 802 (Cal. Ct. App. 1987) ................................................................16

*Wang v. Massey Chevrolet*,
97 Cal. App. 4th 856 (Cal. Ct. App. 2002) .................................................................14

*Warma Witter Kreisler, Inc. v. Samsung Elecs.*,
No. 08-cv-5380, 2009 U.S. Dist. LEXIS 112773 (D.N.J. Dec. 3. 2009)................................11

*Warth v. Seldin*,
422 U.S. 490 (1975)....................................................................................................7

*York v. Sullivan*,
338 N.E.2d 341 (Mass. 1975) ..............................................................................19, 20

*Zimmerman v. HBO Affiliate Group*,
834 F.2d 1163 (3d Cir. 1987)...................................................................................7

**STATUTES AND RULES**

28 U.S.C. § 1332 ..........................................................................................................8

28 U.S.C. § 1332(d) ......................................................................................................8

28 U.S.C. § 1452 ..........................................................................................................8

28 U.S.C. § 1453 ..........................................................................................................8

Class Action Fairness Act of 2005 ..................................................................... *passim*

Pub. L. No. 109-2, 119 Stat. 4 ......................................................................................8

Pub. L. No. 109-2, §2(b)...............................................................................................9

Pub. L. No. 109-2, § 4(a)(2)(A).....................................................................................8

Pub. L. No. 109-2, § 4(a)(6)..........................................................................................8

Pub. L. No. 109-2, § 5 ...................................................................................................8

Fed. R. Civ. P. 6(d) .......................................................................................................5

Fed. R. Civ. P. 12(b)(6).................................................................................................13

Fed. R. Civ. P. 15(a)(1)(B) ...........................................................................................5

Fed. R. Civ. P. 23(a)(3).................................................................................................10

Fed. R. Civ. P. 23(a)(4).................................................................................................10

Fed. R. Civ. P. 23(b) ...................................................................................................10

Fed. R. Civ. P. 23(b)(3)................................................................................................8

Cal. Civ. Code § 1770(a) ...................................................................................... *passim*

Cal. Civ. Code § 1782(a) .......................................................................................16, 17

Cal. Civ. Code § 1782(d) ...........................................................................................17

Mass. Gen. Laws ch. 93A, § 9(3)..........................................................................19, 20

N.Y. C.P.L.R. 3014 ....................................................................................................25

N.Y. Gen. Bus. Law § 349(h) ...................................................................................12

N.Y. Gen. Bus. Law § 349 .....................................................................................1, 11

## Miscellaneous

S. Rep. No. 109-14 (2005) reprinted in 2005 U.S.C.C.A.N. 3, 2005 WL 627977 .....................8, 9

## PRELIMINARY STATEMENT

Defendant Sirius XM Radio Inc.'s ("Sirius XM," the "Company," or "Defendant") motion to dismiss does not challenge any aspect of Plaintiffs' antitrust claims nor does it challenge any of Plaintiffs' consumer protection claims brought under the laws of Florida, Illinois, Michigan, Maine, New Hampshire, New Jersey, or Pennsylvania.  The only challenge is to limited portions of Plaintiffs' Second Consolidated Amended Complaint (the "Second Amended Complaint").

Substantively, Defendant is largely silent as to Plaintiffs' consumer fraud claims, including that Sirius XM misrepresents its royalty surcharge as merely a "pass-through" of its increased royalty expense when it actually charges customers much more than the increased royalty expense – thus converting the so-called royalty "pass-through" into a profit center. However, Defendant incorrectly attempts to impose a reliance requirement for consumer protection claims brought pursuant to New York General Business Law § 349 where there is none.  Defendant also argues, with no legal support, that Plaintiffs' allegations do not support a claim under California's Consumers Legal Remedies Act (the "CLRA").  This attack is meritless.  As shown below, Defendant has violated the plain language of the statute and numerous courts have upheld CLRA claims in similar cases involving misrepresentations regarding the nature or amount of fees imposed on consumers.

Defendant's various standing and procedural arguments are similarly meritless. Defendant first argues that the Court should dismiss each of the Plaintiffs added in the Second Amended Complaint because they were purportedly joined after a Court-ordered Saturday deadline – but the Court explicitly recognized Plaintiffs' "right to amend" to add additional Plaintiffs in an order dated May 3, 2010 (Docket No. 45).  The Court has already ruled on this issue and Defendant raises no new argument that warrants reconsideration of the Court's ruling.

Defendant next argues that the named Plaintiffs cannot bring state consumer protection claims under the law of states where the named Plaintiffs do not reside.  However, as demonstrated below, there is ample authority allowing plaintiffs to represent absent class members residing in states other than their own.  This result is consistent with both Article III and the Class Action Fairness Act of 2005 ("CAFA"), which created federal diversity jurisdiction for multi-state class actions based on ***unnamed*** plaintiffs' residences and damages.[1]  Moreover, the issue is properly deferred to the class certification stage.

Defendant's efforts to dismiss Plaintiffs' CLRA claim for damages and the claim under the Massachusetts consumer protection statute for lack of proper notice also fail.  Plaintiffs' claim for CLRA damages – which Plaintiffs now assert in the Second Amended Complaint, more than 30 days after giving the requisite notice – is procedurally proper.  With respect to the Massachusetts claim, even if the demand requirement applies in this case, which it does not, the 30-day period has been met and, in any event, is not jurisdictional.

Finally, Defendant's arguments regarding Plaintiffs' claims of breach of contract and implied covenant of good faith and fair dealing are meritless.  Plaintiffs allege that Defendant has breached key provisions of the governing subscriber contract that define the royalty fee and explain its calculation.  The Court cannot – as Defendant suggests – simply ignore these allegations and provisions.  For the same reason, Plaintiffs' claim for breach of implied covenant of good faith and fair dealing is properly pled in the alternative.

For these reasons, Defendant's motion to dismiss should be denied.

---

[1] Indeed, the Seventh Circuit recently affirmed certification of six state subclasses for consumer fraud claims, where two of the states did not have corresponding class representatives.  *See Pella Corp. v. Saltzman*, No. 09-8025, 2010 WL 1994653, at *5 (7th Cir. May 20, 2010).

## STATEMENT OF FACTS

Sirius XM, the only provider of satellite digital audio radio services ("SDARS") in the United States, has a monopoly that was created when Sirius Satellite Radio Inc. ("Sirius") merged with XM Satellite Holdings Inc. ("XM") in 2008.  ¶ 3.[2]  The company that resulted from this merger, Sirius XM, has abused the resultant monopoly power by raising prices to supra-competitive levels, in part by imposing additional fees.  ¶ 3.

Plaintiffs will not restate here all of the price increases and abuses of monopoly power by Sirius XM since the merger.  Defendant's motion does not address this illegal conduct and the resulting illegal and unconscionable charges.  Rather, Defendant's motion narrowly focuses on the price increase imposed in the form of a U.S. Music Royalty Fee (the "Royalty Fee"), which is the subject of Plaintiffs' breach of contract and consumer protection claims.

Effective July 29, 2009, Sirius XM began to charge the Royalty Fee.  The Company uniformly represents to subscribers in its contracts, billing statements, on its website, and through its customer service representatives that the Royalty Fee is merely a pass-through of the *increase* in royalty costs for payments to the music industry between 2007 and 2009, during the period when the proposed merger of Sirius and XM was pending.  ¶¶ 104-105.  Plaintiffs allege that although the *increase* in the *rate* used to calculate Sirius XM's royalty payments is estimated to be 3%, the Royalty Fees the Company charges are far higher, ranging from 10% to 28%.  ¶ 142.  Additionally, if the Royalty Fee were a straightforward pass-through of its increased royalty costs, all subscribers (other than those choosing plans with little or no music) would pay the same *rate*.  ¶ 135-36.  Sirius XM is deceiving its subscribers by portraying the Royalty Fee as a cost pass-through, when in fact, Sirius XM charges Royalty Fees that far exceed

---

[2] Citations to the Second Consolidated Amended Class Action Complaint are indicated as ¶ ___.

its costs and these fees provide substantial revenue for the Company.  Indeed, the money earned

from this fee is included as part of "Other Revenue" on the Company's financial statements.

¶ 133.

Based on this deceptive conduct, Plaintiffs allege a breach of contract and violations of

the consumer protection laws.

**ARGUMENT**

**I.      THE COURT EXPRESSLY AUTHORIZED PLAINTIFFS TO JOIN THE
        ELEVEN PLAINTIFFS ADDED IN THE SECOND AMENDED COMPLAINT**

On March 22, 2010, Plaintiffs filed an initial Consolidated Amended Complaint (the

"Amended Complaint"), consolidating the claims of the original five plaintiffs who had filed

separate class actions, and adding several additional named plaintiffs.  Defendant filed its motion

to dismiss the Amended Complaint on April 12, 2010, seeking to dismiss only some of the state

consumer protection claims but not the antitrust or breach of contract claims.  On April 29, 2010,

Plaintiffs informed the Court of their intent to file an amended complaint on May 3, 2010, to

address some of the issues Defendant had raised in the April 12, 2010 motion to dismiss.  In

particular, Plaintiffs noted that they planned to add additional plaintiffs and that, pursuant to the

Scheduling Order, the deadline for doing so was Saturday, May 1, 2010.  On the following

Monday, May 3, 2010, the Court directed Plaintiffs to file their amended complaint– adding the

additional eleven Plaintiffs.[3]  Plaintiffs filed the Second Amended Complaint that day.

Despite the May 3, 2010 Order, Defendant urges the Court to dismiss the eleven

Plaintiffs added in the Second Amended Complaint because they were added two days after

---

[3] *See* Order dated May 3, 2010 (Docket No. 45).

Saturday, May 1, 2010.  *See* Def. Mem. at 2.[4]  The Court has, however, already rejected this argument.[5]

## II.    NAMED PLAINTIFFS HAVE STANDING TO ASSERT ALL OF THE STATE LAW CLAIMS

### A.    NAMED PLAINTIFFS HAVE STANDING TO REPRESENT CLASS MEMBERS FROM OTHER STATES FOR CLAIMS BROUGHT UNDER THOSE OTHER STATES' LAW

Contrary to Defendant's protestations, there is nothing novel in Plaintiffs asserting claims on behalf of class members who reside in states where no named plaintiff currently resides.[6]

Indeed, CAFA contemplates precisely such a scenario.

### 1.    Article III Does Not Require A Named Plaintiff From Each State

Defendant cites a number of cases that supposedly stand for the proposition that a class action plaintiff can never have Article III standing to assert state law claims on behalf of absent class members from other states.  But the authority Defendant cites does not stand for such a bright-line rule.  Rather, as explained in a case on which Defendant relies:

---

[4] References to the Defendant's Memorandum of Law in support of the motion to dismiss are indicated as "Def. Mem. at __."

[5] *See supra* n.3.  Moreover, Fed. R. Civ. P. 15(a)(1)(B) grants Plaintiffs the right to amend their complaint until 21 days after service of Defendant's motion to dismiss.  Defendant filed its motion to dismiss on April 12, 2010 by ECF; therefore, Plaintiffs had until May 6, 2010 to file their Second Amended Complaint (April 12, 2010 + 21 days + 3 days for ECF service).  Fed. R. Civ. P. 15(a)(1)(B); Fed. R. Civ. P. 6(d).

[6] Courts in this District and elsewhere have certified multi-state class actions in circumstances such as this, thereby indicating that the named plaintiffs had standing to represent class members from other states for claims governed by those other states' laws.  Notably, the Seventh Circuit just affirmed the decision in *Saltzman*, where the district court had deferred the question of standing and certified classes for plaintiffs in six states, with named plaintiffs from only two states.  *See Saltzman*, 2010 WL 1994653, at *1; *see also Cassese v. Washington Mutual, Inc.*, 255 F.R.D. 89, 97-98 (E.D.N.Y. 2008) (certifying nationwide class of borrowers for consumer protection claims represented by named plaintiffs from three states); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-cv-5173, 2008 U.S. Dist. LEXIS 36093, at *39, 41-42 (S.D.N.Y. May 1, 2008) (certifying settlement class for purchasers "across the country" asserting state consumer protection claims from 45 states with class representatives from 18 states); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 81 (E.D.N.Y. 2004) (certifying class of policyholders from 47 states with one named plaintiff, for breach of contract claims to be decided under each state's common law); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 280-87 (D. Mass. 2004) (certifying class for claims under laws of 4 states with lead plaintiffs from 2 states); *see also Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 199 (D. Mass. 1999), *aff'd*, 208 F.3d 288 (1st Cir. 2000) (variations in state law did not preclude certification of class represented by single plaintiff from state which was not one of the 10 states whose laws would apply to class members' claims).

> [S]tanding imports justiciability: whether the plaintiff has made out a case or controversy **between himself and the defendant** within the meaning of Article III. This is the threshold question in every federal case, determining the power of the court to entertain the suit.
>
> * * *
>
> [O]nce an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice. . . . [W]hether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 . . .

*Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 422-23 (6th Cir. 1998) (internal citations and quotations omitted).  Thus, "once a potential . . . class representative establishes his individual standing to sue . . . there is no additional constitutional standing requirement related to his suitability to represent the putative class. . ."  162 F.3d at 424.[7]

Several cases Defendant cites are inapposite because in those cases, the named plaintiff did not have standing on her own to bring the relevant claims and therefore the court's jurisdiction over the entire case was at issue.  The question of whether the plaintiff had standing to assert a claim on behalf of a different group of plaintiffs (who would also be class members) did not arise.  *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976) (named plaintiffs' injuries could not be "fairly…traced" to the defendant's conduct); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974), *vacated sub nom. Spomer v. Littleton*, 414 U.S. 514 (1974) (named plaintiff lacked standing because harm was too speculative); *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002) (named plaintiff lacked standing to bring new claims because could not show they were or would be harmed by rule at issue); *Doe v. Blum*, 729 F.2d 186, 189

---

[7] *See also In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) ("[t]here is no question that this Court has jurisdiction over each of the lawsuits and that each of the named plaintiffs has standing to bring at least some claims.  Moreover, when a class action raises common issues of conduct that would establish liability under a number of different States' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute.").

(2d Cir. 1984) (named plaintiffs did not allege requisite type of injury); *see also Warth v. Seldin,* 422 U.S. 490, 507 (1975) (plaintiffs lacked standing because they could not show an actionable causal relationship between the challenged zoning practices and their alleged injury.); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir. 1987) (named plaintiff did not have statutory standing under RICO because did not possess requisite type of injury).

Additionally, subsequent developments in *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409 (E.D. Pa. 2009) ("*Flonase I*"), a case Defendant cites, actually support Plaintiffs' position. In that case, the court dismissed the complaint because plaintiffs lacked standing under **their home states'** laws.  The court did not address the question of whether those plaintiffs could assert claims on behalf of class members from other states.  *See Id.* at 419.  However, after the plaintiffs amended their complaint to include additional named plaintiffs and assert claims in additional states, the court deferred until class certification consideration of whether the named plaintiffs could represent purchasers for claims asserted under various other states' laws because "class certification is logically antecedent to a determination of the standing of proposed class members in certain states."  *In re Flonase Antitrust Litig.*, No. 08-cv-3301, 2010 WL 234858, at *4 (E.D. Pa. Jan. 21, 2010) ("*Flonase II*").  Thus, the *Flonase* court took the approach advocated by Plaintiffs here.  *See infra* Section II.B.[8]

---

[8] Several other cases Defendant relies upon hold only that to assert claims on behalf of a class, the named plaintiff's claim must be substantively similar to the claims of the absent class members she seeks to represent.  For example, in *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 497 (S.D.N.Y. 2004), the court considered the nature of the legal theory and underlying facts, as well as the type of injury suffered to determine which class claims the named plaintiffs could assert.  Ultimately, the court ruled that the named bondholder plaintiffs (who purchased one class of security) could assert claims on behalf of purchasers of three classes of debt securities because purchasers of all classes of the relevant securities had suffered the same substantive injury.  *Id.*; *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1281 (11th Cir. 2000) (10 claims could be grouped into categories depending on the nature of the alleged conduct and type of injury).

### 2.      Looking Beyond The Named Plaintiffs In Determining Standing Is Consistent With The Provisions And Purpose Of CAFA

Defendant's suggestion that a named plaintiff is required for each state is problematic in light of the fact that Plaintiffs here assert jurisdiction under 28 U.S.C. § 1332(d), as amended by CAFA.  Pub. L. No. 109-2, 119 Stat. 4.[9]  One of CAFA's key provisions amended the statute governing diversity jurisdiction to allow class actions with plaintiffs from multiple states to sue in federal court as long as "***any member of a class*** of plaintiffs is a citizen of a State different from any defendant." Pub. L. No. 109-2, § 4(a)(2)(A) (amending 28 U.S.C. § 1332) (emphasis added),[10] and "the claims of the ***individual class members shall be aggregated*** to determine whether the amount in controversy exceeds the sum or value of $5,000,000." Pub. L. No. 109-2, § 4(a)(6) (emphasis added).  Thus, when determining whether the court can exercise jurisdiction under the diversity statute, the court looks to the ***entire*** proposed class, not just the named plaintiffs.[11]  By the same logic, when jurisdiction is based on CAFA, if absent class members' residence is a factor that allows a defendant to bring a class action ***into*** federal court, the residency of those same absent class members should be considered in analyzing which claims

---

[9] *See* ¶¶ 13, 15.

[10] The statute also allows a defendant to remove a case brought in state court if the same conditions are met.  Pub. L. No. 109-2, § 5 (amending 28 U.S.C. § 1452 by adding § 1453).

[11] As noted in the CAFA legislative history, "**in a variety of contexts over the years, federal court[s] have treated unnamed class members as parties to class actions**.  For example: . . . [when] consider[ing] whether federal diversity jurisdiction existed over a purported Rule 23(b)(3) class that had not been certified, . . . [t]he Supreme Court [held] . . . that in determining whether the amount-in-controversy prerequisite for diversity jurisdiction is satisfied, a trial court is obliged to look at whether each purported claimant, even if unnamed, meets the $75,000 jurisdictional amount requirement. . . . Earlier, the Supreme Court ruled that . . . the filing of a class action immediately tolls the statute of limitations as to all unnamed class members.  In short, all unnamed class members are treated as parties – treated as if they had filed the litigation themselves."  Thus, "[t]he enactment of the 'minimal diversity' provisions of [CAFA] would be merely another such practical determination . . . that for purposes of the 'minimal diversity' jurisdictional inquiry established by the legislation, unnamed class members . . . shall be considered 'parties.'" S. Rep. No. 109-14 at 69-70 (2005) reprinted in 2005 U.S.C.C.A.N. 3, 2005 WL 627977 (the "Senate Report") (emphasis added).

*stay* in federal court.[12]  Moreover, prohibiting named plaintiffs from asserting claims on behalf of class members in other states undermines the purpose of CAFA, which was enacted to "provide[] for Federal court consideration of interstate cases of national importance under diversity jurisdiction."  Pub. L. No. 109-2, §2(b).  Prohibiting named plaintiffs from representing class members in other states, thereby requiring separate cases for each state, would bring back the problems CAFA was enacted to solve:  similar, overlapping actions in multiple courts, with no way to coordinate the cases, leading to tremendous redundancy (and possibly conflicting outcomes) caused by multiple judges in different courts adjudicating the same issues.[13]  The most efficient and manageable way to achieve the goal of federalizing national class actions brought under the laws of several states is by allowing the named plaintiffs to sue on behalf of residents of other states.[14]

---

[12] The cases Defendant cites where courts did not allow named plaintiffs to bring claims on behalf of class members in other states, Def. Mem. at 9-10 n.5, do not address why the standing of absent class members cannot be considered in a multi-state class action, even though *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009);  *Flonase I*; *In re Potash Antitrust Litig.*, No. 08-cv-06910, 2009 WL 3583107 (N.D. Ill. Nov. 3, 2009); *Smith v. Lawyers Title Ins. Corp.*, 07-cv-12124, 2009 WL 514210 (E.D. Mich. Mar. 2, 2009); *Temple v. Circuit City Stores*, 06-cv-5303, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007); and *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007), were also brought pursuant to CAFA, and *Parks v. Dick's Sporting Goods Inc.*, 05-cv-6590, 2006 WL 1704477 (W.D.N.Y. June 15, 2006) could have been, as it was filed in November 2005, after CAFA was enacted.  Nor do these cases address the policy implications of their holdings in light of the purpose of CAFA.  Defendant also cites *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001), which was brought prior to the passage of CAFA, and therefore is not instructive as to how a case brought pursuant to CAFA should be handled.

[13] As the legislative history indicates, Congress viewed CAFA as a solution to the problem that federal courts had not been able to "assert jurisdiction over claims encompassing large-scale, interstate class actions involving thousands of plaintiffs from multiple states, . . . ***the laws of several states***, and hundreds of millions of dollars"  S. Rep. No. 109-14 at 9 (emphasis added); *see also* S. Rep. No. 109-14 at 12 (problems with prior system included the fact that "expensive . . . copy-cat cases force defendants to litigate the same case in multiple jurisdictions"); 20-21; 72.  Nor would 42 separate cases in 42 federal courts (which would be required here, where the antitrust claims would dictate that the cases be filed in federal court) solve the problem.  As noted by the court in *In re Pharmaceutical Industry Average Wholesale Price Litig.*, a *single* national class action is superior to "dividing up this monster case, certifying thirty-plus separate class actions and forcing the same . . . defendants, expert and fact witnesses and multiple courts to try this case over thirty times in states that have substantially similar standards.  A national class action will save substantial judicial and party resources."  252 F.R.D. at 107.

[14] *Cf. In re Relafen*, 221 F.R.D. at 269 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-17 (1997) (alteration in original) (approach suggested by Defendant here "would require class counsel to identify representatives from each state involved in a multistate class action, would render class actions considerably more

*(Cont'd)*

9

### B.     COURTS TYPICALLY DEFER CONSIDERATION OF DEFENDANT'S STANDING ARGUMENT UNTIL CLASS CERTIFICATION

The Court need not decide now whether the named plaintiffs have standing to allege state consumer protection claims under the laws of states where they do not reside.  Numerous courts have deferred consideration of this issue to the class certification stage, to address this issue at the same time that the court is analyzing the adequacy and typicality requirements under Rule 23(a)(3) and 23(a)(4), and the predominance requirement under Rule 23(b).  At that point, the Court can assess the ability of the named plaintiffs to represent class members from other states.

This approach is consistent with the Supreme Court's guidance in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999), where the Court held that where class certification is "logically antecedent" to the issue of standing, the standing question should be deferred until class certification is considered.  *See also Amchem Prods., Inc.*, 521 U.S. at 612.  Based on this language, several courts – including two in this District (not cited by Defendants) – have deferred the question of whether named plaintiffs from a limited number of states have standing to represent a class from a larger group of states because

> the question of Article III standing to bring each state  . . . claim arises precisely because [the named plaintiff] seeks to prosecute the state claims on behalf of a class, whose members would have suffered an injury in the states whose . . . statutes are asserted in the Complaint.  If the Court decides that class certification is not warranted, then [the defendant]'s challenge to [the named plaintiff]'s ability to pursue certain state law claims may be moot.

*Sheet Metal Workers Nat'l Health Fund v. Amgen Inc.*, No. 07-cv-5295, 2008 U.S. Dist. LEXIS 62181, at *30 (D.N.J. Aug. 13, 2008); *see also In re Grand Theft Auto Video Game Consumer*

---

cumbersome to initiate, and in turn, less effective in overcoming a lack of incentives to prosecute individual rights and in 'achiev[ing] economies of time, effort, and expense.'" ).

*Litig.*, No. 06-md-1739, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006) (same); *In re*

*Buspirone*, 185 F. Supp. 2d at 377 (same).[15]

## III.   PLAINTIFFS CAN ASSERT A CLAIM UNDER NEW YORK'S CONSUMER PROTECTION LAW

Defendant argues that Plaintiff Scott Byrd cannot assert a claim under New York's

consumer protection statute, N.Y. Gen. Bus. Law § 349, because he renewed his subscription

after he filed the lawsuit and therefore was aware of the alleged deception.[16]  This argument

ignores the fact that "reliance is not an element of a section 349 claim."  *Stutman v. Chemical*

---

[15] *See also Warma Witter Kreisler, Inc. v. Samsung Elecs.*, No. 08-cv-5380, 2009 U.S. Dist. LEXIS 112773, at *6 (D.N.J. Dec. 3. 2009) (deferring standing question to class certification because issue would be moot if no class was certified with members from states where no named plaintiffs resided); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill 2009), *aff'd*, 2010 WL 1994653 (7th Cir. 2010) ("the standing inquiry… is limited to an assessment of whether or not the ***individual named*** Plaintiffs have [met Article III standing requirements]" so deferring question to class certification) (emphasis added); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 668 (E.D. Mich. 2008) (same); *Kuhl v. Guitar Center Stores, Inc.*, No. 07-cv-214, 2008 WL 656049, at *3 (N.D. Ill. Mar. 5, 2008) ("[b]efore any class is certified, the class claims are conjectural.  It is only through a determination of typicality of claims across the various state statutes that the court will know whether standing is appropriate for all the claims asserted.  Therefore, the issue of class certification is 'logically antecedent' to the issue of standing. . . ."); *In re Hypodermic Prods. Antitrust Litig.*, No. 05-cv-1602, 2007 U.S. Dist. LEXIS 47438, at *56 (D.N.J. June 29, 2007) (deferring issue to class certification); *In re Relafen*, 221 F.R.D. at 268-69 & n.7 (same); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (same).  Courts have applied similar logic to defer until class certification consideration of whether a named plaintiff could sue on behalf of (a) class members purchasing different products from the same defendant, *see, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 193-94 (D. Mass. 2003) (deferring until class certification issue of whether plaintiff who purchased one drug from one company can represent others who purchased different drugs from same company); (b) class members with claims against other defendants (besides the defendant who allegedly harmed the named plaintiff) engaging in allegedly similar conduct, *see, e.g., Payton v. County of Kane*, 308 F.3d 673, 680-81 (7th Cir. 2002) (where question was standing of two named plaintiffs to sue counties other than counties that imprisoned them, court held that class certification analysis was required first, to determine if those two plaintiffs could adequately represent putative class members in other counties, by examining whether claims were typical, etc.); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204-05 (D.N.J. 2003) (deferring until class certification issue of whether named plaintiff could sue on behalf of class members who had experienced discrimination at branches of restaurant that he had not visited or in states he had not visited); and (c) class members who were beneficiaries of related benefit plans, *see, e.g., Fallick*, 162 F.3d at 422 (plaintiff in one ERISA plan can represent participants in other plans if conduct addressed general practices affecting all plans).

[16] Defendant first suggests that Scott Byrd – one of the Plaintiffs added in the May 3, 2010 Second Amended Complaint – should be dismissed altogether.  As discussed above, this Court explicitly authorized Plaintiffs to add Scott Byrd's claims to the Second Amended Complaint.  *See supra* at Section I.

*Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 896 (N.Y. 2000).[17]  Thus, whether Byrd relied on the alleged misrepresentations is legally irrelevant.

Further, Defendant's argument illustrates the Hobson's choice that Sirius and XM subscribers such as Byrd have faced when confronted with the recent price increases, including the Royalty Fee.  Sirius XM has a monopoly on satellite radio service, leaving Byrd with no other option than to purchase Sirius XM's services if he wanted to continue enjoying satellite radio.  No alternative provider exists.  This disparity in power is relevant for the § 349 claim.  *See Negrin v. Norwest Mortgage, Inc.*, 263 A.D.2d 39, 49, 700 N.Y.S.2d 184, 193 (2d Dep't 1999) ("The plaintiff was at Norwest's mercy.  If she wanted her mortgage satisfied to enable her to sell her condominium, the plaintiff had no choice but to pay [the disputed mortgage fees for services not actually provided]. . . . [T]he typical act of consumer fraud involves an individual consumer who falls victim to a commercial entity which enjoys a 'disparity of bargaining power.'") (quoting *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995)); *see also Cohen v. J.P. Morgan Chase & Co.*, 608 F. Supp. 2d 330, 349 (E.D.N.Y. 2009) ("[T]he general rule that consumer fraud claims cannot be predicated on fully disclosed facts does not apply when one party has exploited a disparity of bargaining power.") (citation omitted).

Even if the Court does not find Byrd to have stated a damages claim, he is still able to pursue his claim for injunctive relief.  *See* N.Y. Gen. Bus. Law § 349(h).  As with all the other named Plaintiffs who are seeking injunctive relief, whether Byrd was aware of the deception is

---

[17] "As indicated by the statute's 'expansive' language, section 349 was intended to be broadly applicable, extending far beyond the reach of common law fraud."  *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (collecting cases).

irrelevant.  Indeed, it would be impossible to seek injunctive relief for allegedly deceptive practices *without* being aware of the alleged deception.

## IV.   PLAINTIFFS STATE A CLAIM UNDER THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT AND MAY SEEK DAMAGES FOR THESE VIOLATIONS

### A.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE CLRA

California's CLRA prohibits unfair or deceptive acts "in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Defendant incorrectly argues that Plaintiffs have not alleged facts that would constitute a violation of the CLRA, but Plaintiffs allege all that is required, given that on a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiffs' favor.  *Boykin v. KeyCorp.*, 521 F.3d 521 F.3d 202, 214 (2d Cir. 2008); *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (Court should not dismiss the complaint if Plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face."); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (claims are facially plausible when Plaintiffs plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")[18]

Courts have repeatedly upheld CLRA claims involving misrepresentations regarding the nature or amount of fees or prices, *i.e.*, misconduct alleged here.  In *Aron v. U-Haul Company of*

---

[18] Plaintiffs allege that (1) they are "consumers" who (2) purchased SDARS –"goods" and/or "services" within the meaning of the Act; (3) Sirius XM makes uniform misrepresentations to consumers, both orally and in writing, that the Royalty Fee is merely a pass-through of its increased royalty costs when Sirius XM actually charges consumers much more than its increased royalty costs; (4) Sirius XM "had exclusive knowledge that the Royalty Fee charged to consumers exceeded its actual increased royalty fee costs;" (5) Plaintiffs paid the Royalty Fee in reliance on Sirius XM's Royalty Fee misrepresentations; and (6) Plaintiffs suffered injury in fact and lost money and property due to Sirius XM's deceptive and misleading conduct.  ¶¶ 308, 316-25.

*California*, 143 Cal. App. 4th 796 (Cal. Ct. App. 2006), for example, the plaintiffs challenged a truck rental company's representations regarding its fueling fees as misleading because the flat-rate and per-gallon fees for fuel imposed on consumers were not actually used by the company to refuel its trucks.  *Aron*, 143 Cal. App. 4th at 806-07.  The court held that these allegations stated a claim under § 1770(a)(5), which prohibits representations that goods or services have characteristics, uses or benefits they do not have.  The court reasoned that the defendant's fueling fee misrepresentations would be misleading to a reasonable consumer because the "fueling fee" imposed on consumers was not actually imposed to refuel trucks, even though the defendant made no explicit representation that it was going to use the "fueling fee" to refuel its trucks.  *Id.* Here, Sirius XM explicitly tells consumers that the purpose of the Royalty Fee is merely to offset the increase in its royalty payments to the music industry when, in reality, the Royalty Fee far exceeds Sirius XM's increased royalty costs and is used to provide substantial revenue to Sirius XM.  *See, e.g.*, ¶¶ 132-160, 308, 319-20.  Under these facts, Plaintiffs have clearly stated a CLRA violation.[19]  This result is consistent with the directive that the CLRA be liberally construed.  *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (Cal. Ct. App. 2002).

While Defendant argues that the Royalty Fee is not actionable under the CLRA because it is purportedly "just" a "fee," it ignores the misleading quality of its representations.  Def. Mem. at 15.  As demonstrated above, misleading ***characterizations*** about the amount or nature of a

---

[19] *See also Hale v. Sharp Healthcare*, D054637, 2010 Cal. App. LEXIS 530, at *3, *13-15 (Cal. Ct. App. Apr. 19, 2010) (where plaintiffs challenged hospital's representations that it would charge uninsured patients its "regular rates" when the hospital actually charged uninsured patients at rates that far exceeded the hospital's regular rates, court upheld each of the plaintiffs' CLRA claims under three of the CLRA subsections that Plaintiffs cite here: §§ 1770(a)(5), (9), and (16)); *Horne v. Harley Davidson, Inc.*, 660 F. Supp. 2d 1152, 1155-56, 1159-60 (C.D. Cal. 2009) (upholding claims under CLRA §§ 1770 (a)(5), (9), (14), and (16), where the defendant misrepresented that the amount the plaintiffs paid for a motorcycle service contract would cover the cost of all repairs except the deductible, when the cost of repairs under the plan actually far exceeded the deductible).

fee – as opposed to the mere imposition of a fee – are clearly actionable under the sections of the that CLRA Plaintiffs cite.

Defendant's other arguments as to why Plaintiffs purportedly do not state a CLRA claim are also meritless. First, Plaintiffs have sufficiently identified an "advertisement" within the meaning of § 1770(a)(9). Courts broadly construe "advertising" under the California consumer protection laws, including § 1770(a)(9), to mean practically anything that the seller allows consumers to view.[20] Plaintiffs allege that Sirius XM has made public representations regarding the Royalty Fee on its website, in subscriber contracts, and in subscriber billing statements. ¶¶ 149-60, 308. These materials constitute "advertising" under § 1770(a)(9). *See, e.g.*, *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 52 (Cal. Ct. App. 2003) (claim viable where based on product labels and website stating that product was "standardized for 6% ephedrine" when actual amount of ephedrine varied dramatically); *Jefferson*, 2008 U.S. Dist. LEXIS 101031, at **43-49.

Second, Defendant cannot credibly argue that its Royalty Fee misrepresentations do not involve any "rights, remedies, or obligations" under § 1770(a)(14). By incorporating the Royalty Fee misrepresentations in subscribers' contracts and billing statements, Sirius XM is "obligating" consumers to pay increased and unlawful prices for SDARS.

Third, Plaintiffs have clearly stated a claim under § 1770(a)(16) by alleging that Sirius XM represents that its SDARS "has been supplied in accordance with a previous representation" – that the Royalty Fee is merely a pass-through of Sirius XM's ***increased*** royalty costs – "when it has not." *See Hale*, 2010 Cal. App. LEXIS 530, at **13-15; *Horne*, 660 F. Supp. 2d at 1155-56, 1159.

---

[20] *See, e.g.*, *Jefferson v. Chase Home Fin.*, No. 06-cv-6510, 2008 U.S. Dist. LEXIS 101031, at **43-49 (N.D. Cal. Apr. 29, 2008) (misrepresentations in monthly loan statement coupons actionable under CLRA § 1770(a)(9)); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 672 (Cal. Ct. App. 2006) (product labels on tools were deceptive "advertisements" under False Advertising Law, Cal. Civ. Code § 1750, *et seq*., and CLRA).

Finally, the Royalty Fee is unconscionable under § 1770(a)(19).  It is procedurally unconscionable because: (a) individual subscribers have no meaningful opportunity to negotiate the Royalty Fee term if they want to purchase SDARS; and (b) the fact that the Royalty Fee far exceeds Sirius XM's increased royalty costs is in the exclusive knowledge of Sirius XM.  ¶ 149-54.  *See Truta v. Avis Rent A Car System, Inc.*, 193 Cal. App. 3d 802, 819 (Cal. Ct. App. 1987) (the procedural element involves "oppression," which results in a lack of meaningful negotiation and choice caused by unequal bargaining power, and "surprise," which involves the extent to which the term is hidden from one of the parties); *Steiner v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016, 1026 (N.D. Cal. 2008) (lack of market alternatives for the iPhone demonstrates procedural unconscionability).  The Royalty Fee is substantively unconscionable because the Royalty Fee exceeds by approximately 7%-24% what Sirius XM should be charging if it were actually passing through only its increased royalty costs.  ¶¶ 132-148, 308.  *See Truta*, 193 Cal. App. 3d at 820-21 (it was error to dismiss unconscionability claim where plaintiffs alleged that fee was too high).

In sum, Plaintiffs have sufficiently stated a claim under the CLRA.

### B.   PLAINTIFFS COMPLIED WITH CLRA'S NOTIFICATION REQUIREMENT

Defendant's argument regarding an alleged procedural defect in Plaintiffs' claim for damages under the CLRA is fundamentally wrong.  Each of the California Plaintiffs – James Hewitt, Andrew Dremak, and Charles Bonsignore – has satisfied the CLRA's notice requirement.  Their claims for damages should not be dismissed.

The Second Amended Complaint includes, for the first time, a CLRA claim on behalf of Plaintiff James Hewitt.  On March 30, 2010 – more than 30 days before he commenced an action for damages against Defendant under the CLRA – Plaintiff Hewitt provided Sirius XM with the requisite notice under § 1782(a).  *See* Sabella Decl., Ex. A. After waiting more than 30 days

16

without receiving any response from Defendant, Plaintiff Hewitt filed the Second Amended Complaint, including a CLRA claim for damages and other relief as expressly authorized by § 1782(a).  Plaintiff Hewitt's CLRA notice to Sirius XM followed the letter of §  1782(a); therefore, he has properly asserted a claim for damages.

Plaintiffs Dremak and Bonsignore have also satisfied the CLRA notice requirement, albeit in a different way.  Section 1782(d) expressly authorizes consumers to file suit for injunctive relief (including restitution and disgorgement) without advance notice, to give notice of intent to add a claim for damages, and to amend thirty days after notice.  *See* Cal. Civ. Code § 1782(d) ("An action for injunctive relief . . . may be commenced without compliance with subdivision (a). Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages.").[21]  That is precisely what Plaintiffs Dremak and Bonsignore did here.

Plaintiffs' Complaint included CLRA claims on behalf of Plaintiffs Dremak and Bonsignore for injunctive relief, restitution and disgorgement – but ***not damages***.[22]  Plaintiffs Dremak and Bonsignore were not required to give Defendant notice 30 days before filing the Amended Complaint because the Amended Complaint did not include a claim for damages under the CLRA.  *See In re Mattel*, 588 F. Supp. 2d at 1119-20 (improper notice not fatal because restitution and disgorgement claims are not claims for "'damages' for the purposes of the CLRA"); *see also Kennedy v. Natural Balance Pet Foods, Inc.*, No. 07-cv-1082, 2007 U.S. Dist. LEXIS 57766, at **8-9 (S.D. Cal. Aug. 8, 2007), *aff'd,* 2010 U.S. App. LEXIS 248 (9th Cir. Jan.

---

[21] *See also In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d 1111, 1119-20 (C.D. Cal. 2008); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1260 (Cal. Ct. App. 2009).
[22] *See* Amended Complaint ¶ 270 ("Pursuant to Cal. Civ. Code § 1782(d), Plaintiffs and the Class seek a Court order enjoining the above-described wrongful acts and practices of Sirius XM and for restitution and disgorgement.")

6, 2010) (rule of statutory construction requires holding that claims for restitution under CLRA do not require pre-suit notice under § 1782(a) which specifically requires advance notice only in actions for "damages").

On March 22, 2010, the day Plaintiffs filed their Amended Complaint, Plaintiffs Bonsignore and Dremak notified Sirius XM of their CLRA claims for injunctive relief, restitution and disgorgement and of their intent to **add** claims for damages if Sirius XM did not rectify its CLRA violations within 30 days of receiving notice.  ¶¶ 323-24.  *See also* Sabella Decl., Ex. B.  Receiving no response from Sirius XM, on May 3, 2010 – more than 30 days after giving notice of their claims – Plaintiffs filed the Second Amended Complaint to add a claim for damages under the CLRA. *See* ¶ 325.

In sum, Plaintiffs have fully satisfied their procedural obligations under the CLRA and their claim for damages under the CLRA should stand.[23]

## V.  PLAINTIFFS STATE A CLAIM UNDER THE MASSACHUSETTS CONSUMER PROTECTION ACT

Defendant's sole argument with respect to Plaintiffs' claims under the Massachusetts Consumer Protection Act is that Plaintiffs supposedly failed to wait 30 days following issuance

---

[23] To the extent Plaintiff Charles Bonsignore initially asserted a claim for damages without giving the requisite 30-day advance notice, Bonsignore's error was remedied by the filing of the Amended Complaint.  Courts routinely hold that lack of proper notice for CLRA damage claims may be remedied in an amended filing.  *See, e.g. Keilholtz v. Lennox Hearth Prods., Inc.*, No. 08-cv-00836, 2009 U.S. Dist. LEXIS 81108, at **6-8 (N.D. Cal. Sept. 8, 2009) (providing plaintiffs at least two opportunities to provide proper notice after filing complaint for damages under CLRA); *Kennedy*, 2007 U.S. Dist. LEXIS 57766, at *8 (dismissing CLRA damage claim without prejudice).  Dismissing CLRA damage claims with prejudice simply for lack of proper notice is widely disfavored and viewed as a "draconian" sanction.  *See Galindo v. Financo Fin., Inc.*, No. 07-cv-03991, 2008 U.S. Dist. LEXIS 82773, at *14 (N.D. Cal. Oct. 3, 2008) (dismissal of CLRA damage claim without prejudice for lack of pre-suit notice, because dismissal with prejudice is a "draconian sanction"); *Deitz v. Comcast Corp.*, No. 06-cv-06352, 2006 U.S. Dist. LEXIS 94333, at *16 (N.D. Cal. Dec. 21, 2006) (same).  Moreover, a dismissal with prejudice for improper CLRA notice is unnecessary to satisfy the purpose of the section, which permits defendants to avoid liability if they cure or indicate an intent to cure the wrongs within the notice period.  *See Morgan*, 177 Cal. App. 4th at 1261.  Further, even if Plaintiff Bonsignore's CLRA damage claim is dismissed with prejudice, Plaintiffs Hewitt and Dremak have clearly asserted procedurally proper damage claims under the CLRA; they each waited at least 30 days after providing notice before bringing a claim for damages under the CLRA.  *See* Sabella Decl., Exs. A and B.

of a demand letter before filing suit, a purported procedural prerequisite.  Defendant ignores the

fact that, pursuant to the statute, demand is unnecessary under the facts alleged in this case.

Defendant also fails to recognize that Massachusetts's 30-day waiting period is not jurisdictional.

Finally, Defendant wholly ignores the fact that 30 days did in fact pass between Plaintiffs' March

22, 2010 demand letter and the filing of the Second Amended Complaint.

In his March 22, 2010 demand letter to Sirius XM, which is an integral part of the

Complaint,[24] Plaintiff Paul Stasiukevicius alleged that "Sirius XM does not maintain a place of

business or keep assets within the Commonwealth of Massachusetts and therefore demand is not

required pursuant to Chapter 93A, Section 9."  Sabella Decl., Ex. C.  Massachusetts law is clear

that demand is unnecessary in such a situation.   MASS. GEN. LAWS ch. 93A, § 9(3) ("[t]he

demand requirements of this paragraph shall not apply if . . . the prospective respondent does not

maintain a place of business or does not keep assets within the commonwealth").[25]  Accordingly,

demand is not necessary in this case.  Defendant's opposition ignores these allegations[26] and the

conclusion that follows – that Plaintiffs are not required to comply with the demand provisions.

Even if demand were otherwise required by the terms of MASS. GEN. LAWS ch. 93A,

failure to comply with the 30-day waiting period is "not jurisdictional."  *York v. Sullivan*, 338

N.E.2d 341, 346-47 (Mass. 1975) (finding demand letter sufficient, acknowledging that

"[d]emand before suit is often a fruitless ceremony," and holding that defendants had waived any

---

[24] In deciding a motion to dismiss, the Court may consider any document which is "integral" to the Complaint, without converting the proceeding to one for summary judgment.  *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (allowing plaintiff to rely, in opposition to a motion to dismiss, upon an agreement not formally incorporated into the complaint by reference, where the complaint "relie[d] heavily upon [the agreement's] terms and effect.").

[25] *See Jacobs v. Yamaha Motor Corp., USA.*, 649 N.E. 2d 758, 763-64 (Mass. 1995) ("[a]gainst Yamaha, which had no place of business or assets in the Commonwealth, no demand was necessary under G.L. c. 93A.").

[26] Defendant also ignores the allegations in the Second Amended Complaint that Plaintiff Paul Stasiukevicius did not concede that demand was required.  ¶ 377.

argument concerning the thirty-day waiting period).  Further, in cases where the 30-day requirement is not met, dismissal would not "ordinarily bar a suit brought after the thirty days ha[ve] run."  *Tarpey v. Crescent Ridge Dairy, Inc.,* 713 N.E.2d 975, 983 (Mass. App. Ct. 1999) (citing *York v. Sullivan*).[27]  Consequently, as 30 days **has passed** between the March 22, 2010 demand letter and the filing of the Second Amended Complaint on May 3, 2010, there is simply no viable argument that any demand requirement was not met.

## VI.   PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT

### A.   PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD NOT BE DISMISSED

Defendant argues that Plaintiffs fail to allege a breach of the contract or recoverable damages.[28]  Defendant is wrong on both points.

#### 1.   Plaintiffs Properly Allege Breach of Contract

Plaintiffs allege that Sirius XM has breached its Customer Agreements by (1) charging Royalty Fees that are greater than the amounts permitted under the Customer Agreement, ¶¶ 153 (subpar. 4), 155, 306-07, and (2) charging Royalty Fees that are not calculated as stated.  *See* ¶¶ 153 (subpar. 11), 157, 306-07.

Defendant asserts that Plaintiffs cannot maintain a breach of contract claim relating to the Royalty Fee because the Customer Agreement states that the fees are subject to change without notice.  But Plaintiffs do not allege that Defendant has breached the Customer Agreement by adding the Royalty Fee or that the Royalty Fee has changed in any way.  Instead, Plaintiffs assert

---

[27] None of the cases cited by Defendant hold otherwise.  In *Ball v. Wal-Mart, Incorporated.*, 102 F. Supp. 2d 44, 54 (D. Mass. 2000), *McMahon v. Digital Equipment Corp.*, 944 F. Supp. 70, 77 (D. Mass. 1996),  *Flonase II*, at *10, and *Kanamaru v. Holyoke Mutual Ins. Co.*, 892 N.E.2d 759, 768 (Mass. App. Ct. 2008), unlike here, the plaintiffs entirely failed to plead that a Chapter 93A demand letter had been sent prior to instituting an action.  In *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975), which was decided before and discussed in *York v. Sullivan*, the issue was not the 30-day waiting period, but whether the demand letter was sufficiently specific with respect to certain deceptive practices alleged.

[28] Although the pending motion is the **third** time Defendant has had the opportunity to seek dismissal of Plaintiffs' claims, *see* Docket Nos. 21 and 37, it is the **first** time it has raised issues with respect to the breach of contract claim.

that Defendant has breached the terms of the Customer Agreement that define and set the calculation parameters of the Royalty Fee.[29]

### 2. Plaintiffs Properly Allege Damages In The Form Of Overcharge

Defendant also errs in arguing that Plaintiffs do not allege damages from the alleged breach of contract. Plaintiffs allege that Defendant's breaches of the Customer Agreement have caused Sirius XM subscribers to be overcharged. *See* ¶¶ 151-57, 306-07. The amount of overcharges Plaintiffs have paid as a result of Defendant's improper Royalty Fee calculation is a proper measure of breach of contract damages. *See Kenford Co., Inc. v. County of Erie*, 73 N.Y.2d 312, 537 N.E.2d 176, 178-79 (N.Y. 1989) ("nonbreaching party may recover general damages which are the natural and probable consequence of the breach").

Defendant argues that the Customer Agreement's definition of the Royalty Fee and explanation of its method of calculation are irrelevant and cannot support a damage claim because the Royalty Fee charged to Sirius XM's customers does not exceed the $1.98 listed fee for base subscriptions and the $.97 fee for additional radios.[30] This position would make the

---

[29] The only case cited by Defendant purporting to support its position is *Prusack v. State,* 117 A.D.2d 729, 730 (2d Dep't 1986), which is easily distinguishable. In *Prusack,* students sued a school for increasing the tuition it charged incoming students, alleging that the increase was a breach of contract. The court dismissed the breach of contract claim because the original contract stated that the tuition amount was subject to change without notice. As such, the contract permitted the increase in tuition. *Id.* Here, where no **change** is alleged, *Prusack* simply does not apply. Moreover, *Prusack* does not stand for the broad proposition that a claimant may not succeed on a breach of contract claim where the contract is subject to change without notice. Defendant cites no case supporting such a broad proposition.

[30] Defendant's reliance on the **amount** of the Royalty Fee disclosed in the Customer Agreement is misleading since Plaintiffs' allegations address the **percentage** being charged. For example, the Royalty Fee for the Sirius A La Carte plan is $1.98, which represents 28% of the monthly $6.99 subscription price, whereas the $1.98 Royalty Fee for the basic plan is only 15% of the base price. Moreover, the Customer Agreement only provides the dollar amount of the Royalty Fee for the basic packages offered by Sirius and XM. ¶ 153, subpar. 6. The Customer Agreement expressly states that "[y]our actual fee may vary depending upon the Package and Plan term you choose." ¶ 153. The Customer Agreement does not identify the amounts for non-basic subscriptions such as XM Everything Family Friendly (which has a $1.83 Royalty Fee) or XM Mostly Music (which has a $1.53 Royalty Fee). *See* ¶ 153, subpar. 6; *see also* ¶ 135. The only information in the Customer Agreement provided to subscribers of these packages is the information in the Customer Agreement defining the Royalty Fee and explaining how it is calculated. These definition and calculation provisions clearly are relevant.

Royalty Fee definition and explanatory provisions as to its calculation superfluous and without meaning. Under New York law, however, this Court must give meaning to every provision of the Customer Agreement, and therefore cannot simply ignore those sections defining the Royalty Fee and explaining its method of calculation. *See Montefiore Medical Center v. Crest Plaza LLC*, 2009 WL 1675994, at *11 (Sup. Ct. Westchester Co. June 16, 2009) ("The rules of construction of contracts require [the court] to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect.").[31]

Defendant's assertions are similar to the arguments raised by AT&T, which were rejected by the court in *In re Universal Service Fund Telephone Billing Practices Litig.*, 02-MD-1468, 2008 WL 3850695, at *7 (D. Kan. Aug. 15, 2008) ("*Universal Service Fund I*"). In that case, the AT&T customer agreements stated that customers would be charged a Universal Connectivity Charge ("UCC"), which was defined as "a monthly charge . . . to recover amounts AT&T must pay into . . . the Universal Service Fund (USF)." *Id.* at *6. The customer agreement also provided that the UCC charges were calculated as a specific percentage of the customers' phone service charges. *Id.* at *1. It was undisputed that the percentage identified in the customer agreement as the basis for calculating the UCC charge correctly identified the actual amounts AT&T charged the customers. *Id.* The plaintiff sued AT&T for breach of contract on the grounds that the UCC actually charged was more than AT&T was required to pay to the USF, *id.* at *8, much like the Royalty Fee actually charged is allegedly more than the mere cost increases identified in the Customer Agreement. *Id.* In its motion for summary judgment, AT&T argued

---

[31] *See also Montefiore*, 2009 WL 1675994, at *11 ("a court should read 'the entirety of the agreement in the context of the parties' relationship,' rather than isolating distinct provisions out of an entire agreement.") (quoting *Matter of Riconda*, 90 N.Y.2d 733, 738 (1997)).

that it could not be liable for a breach of contract because the customer agreement identified the actual percentage of the UCC charge.  The court rejected this argument and, applying New York law, found that AT&T would be liable for breach of contract if the amounts charged to the customers exceeded the amounts that AT&T was required to pay to the USF program.  *Id*. at *7[32]; *see also Marshall v. Priceline.com Inc.*, C.A. No. 05C-02-195 WCC, 2006 WL 3175318, at **3-6 (Del. Super. Oct. 31, 2006) (where plaintiffs alleged that Priceline charged taxes that exceeded the taxes Priceline was required to remit, court denied motion to dismiss, rejecting Priceline's argument that it had not breached the contract because the amounts of the taxes charged were disclosed in the customer agreement, accepting plaintiffs' theory that the taxes charged – even if the amount was disclosed – breached the contract because they were inflated beyond the actual taxes paid).

Defendant cites only one case, *TD Waterhouse Investor Services, Inc. v. Integrated Fund Services, Inc*., 01-cv-8986, 2003 WL 42013 (S.D.N.Y. Jan. 6, 2003) (Baer, J.), to support the assertion that the contractual provisions identifying, defining and setting the method of calculation of a fee cannot provide a basis for claiming damages.  *TD Waterhouse,* however, is distinguishable, in part because it was decided after a bench trial, not a motion to dismiss.  In that case, where the plaintiff alleged that the defendant's breach of contract caused the plaintiff to lose out on fees it could have charged to its customers, the court found that the plaintiff would have waived those fees anyway.  *Id.* at **10-11.  The case has no relevance to whether a plaintiff

---

[32] After a jury returned a judgment against AT&T on the breach of contract claim, AT&T moved for judgment notwithstanding the verdict on the same grounds that were denied in *In re Universal Service Fund I*.  The court again rejected AT&T's argument "that the contract required only that AT&T charge the specific UCC percentage rate provided at the end of the CSG . . . and reaffirm[ed] its prior ruling that the contract unambiguously required that AT&T impose UCC charges only at a rate necessary to recover amounts AT&T was required to pay into the federal USF program.  *In re Universal Service Fund Telephone Billing Practices Litig*., No. 02-MD-1468, 2009 WL 435111, at *3 (D. Kan Feb. 20, 2009) ("*Universal Service Fund II*").

can claim damages based on the failure of a defendant to calculate a fee based on contractual representations as to how that fee is calculated.[33]

### B. PLAINTIFFS' BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD NOT BE DISMISSED

Defendant has breached the implied covenant of good faith and fair dealing by intentionally charging consumers more than it would if the Royalty Fee were actually calculated as required by the terms of the Customer Agreement – as a mere pass-through of Defendant's increased music royalty costs.  *See* ¶¶ 151, 306-07.  Defendant's breach of the implied covenant has thus deprived Plaintiffs of the benefits of receiving their satellite radio services at prices and terms as explained in the Customer Agreement.  *See Dialcom, LLC v. AT&T Corp.*, 20 Misc. 3d 1111(A), 2008 WL 2581876, at *9 (Sup. Ct. Kings Co. June 17, 2008) (table) (breach of implied covenant of good faith and fair dealing claims are proper when they allege defendant's conduct sought to withhold contractual benefits from plaintiff).  As such, Defendant's motion to dismiss this claim should be denied.  *See also Priceline.com Inc.*, 2006 WL 3175318, at *4 (denying motion to dismiss good faith and fair dealing claims where defendant allegedly overcharged plaintiffs for taxes on hotel rooms); *Dialcom*, 2008 WL 2581876, at *9 ("[a] determination of bad faith or willful or negligent disregard of the rights of the other party is generally a question of fact").

The fact that Defendant's same conduct also gives rise to Plaintiffs' breach of contract claims does not require dismissal of its claim regarding Defendant's breach of the implied covenant of good faith and fair dealing.  Plaintiffs may bring these claims in the alternative.

---

[33] The other two cases cited in Defendant's Memorandum on this issue are not applicable other than restating basic rules of contract law.  Neither *Harding v. Naseman*, 07-cv-8767, 2009 WL 1953041, at *28 (S.D.N.Y. July 8, 2009), which involved damages relating to the breach of a confidentiality clause, nor *Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004), which involved claims by a corporation that sued its bank for failure to provide financing, are relevant here.

*Fantozzi v. Axsys Technologies, Inc.*, 07-cv-02667, 2008 WL 4866054, at **7-8 (S.D.N.Y. Nov.

6, 2008) (claimants may bring breach of contract and implied covenant of good faith and fear

dealing claims in the alternative so long as the claimant argues the theories in the alternative and

does not recover on both theories at the same time); *see also Citi Management Group, Ltd. v.

Highbridge House Ogden, LLC*, 45 A.D.3d 487, 847 N.Y.S.2d 33, 34 (1st Dep't 2007) (such

claims may be pled in the alternative); N.Y. C.P.L.R. 3014.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.

Dated:  June 4, 2010

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

___/s/ James J. Sabella _
Jay W. Eisenhofer
Richard S. Schiffrin
James J. Sabella
Shelly L. Friedland
485 Lexington Avenue
New York, NY 10017
Tel.:  646-722-8500
Fax:  646-722-8501

- and -

Mary S. Thomas (admitted *pro hac vice*)
1201 N. Market Street
Wilmington, DE 19801
Tel.: 302-622-7000

- and -

Reuben Guttman
1920 L Street, N.W.
Suite 400
Washington, DC  20036
Tel.:  202-386-9500

**MILBERG LLP**
Herman Cahn
Peter Safirstein
Anne Fornecker
One Pennsylvania Plaza
New York, NY 10119
Tel.:  212-594-5300
Fax.:  212-868-1229

Paul F. Novak
Milberg LLP
One Kennedy Square
777 Woodward Avenue
Suite 890
Detroit, MI 48826
Tel.:  313-309-1760

Nicole Duckett
Milberg LLP
300 S. Grand Avenue, 39th Floor
Los Angeles, CA 90071
Tel.:  213-617-1200
Fax:  213-617-1975

**COOK, HALL & LAMPROS, LLP**
Edward S. Cook
Christopher B. Hall
P. Andrew Lampros
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.:  404 876-8100
Fax:  404 876-3477

*Attorneys For Plaintiffs Carl Blessing, Charles Bonsignore,*
*Andrew Dremak, Curtis Jones, James Sacchetta, David Salyer,*
*Susie Stanaj, and Paul Stasiukevicius, and Interim Class Counsel*

**ABBEY SPANIER RODD & ABRAMS, LLP**
Jill Abrams
Natalie Marcus
212 East 39th Street
New York, NY 10016
Tel.:  212-889-3700
Fax:  212-684-5191

**SHAHEEN & GORDON, P.A.**
Christine Craig
140 Washington Street
Dover, NH 03821
Tel.:  603-749-5000
Fax:  603-749-1838

*Attorneys for Plaintiff John Cronin and Todd Hill*

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Tel.:  201-567-7377
Fax:  201-567-7337

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Shane T. Rowley
369 Lexington Avenue
New York, NY 10017
Tel.:  212-983-9330
Fax:  212-983-9331

*Attorneys for Plaintiff Edward A. Scerbo*

**FREED & WEISS LLC**
Jeffrey A. Leon
Eric D. Freed
111 West Washington Street
Suite 1331
Chicago, IL 60602
Tel.:  312-220-0000

**CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN**
James E. Cecchi
Lindsey Taylor
5 Becker Farm Road
Roseland, NJ 07068
Tel.:  973-994-1700
Fax:  973-994-1744

**SEEGER WEISS LLP**
Stephen A. Weiss
James A. O'Brien, III
One William Street
New York, NY 10004
Tel.:  888-584-0411

**LAYTIN VERNER LLP**
Jeffrey L. Laytin
Richard B. Verner
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Tel.:  212-631-8695
Fax:  212-273-4306

*Additional Counsel for Plaintiffs*

**SCOTT+SCOTT LLP**
Joseph P. Guglielmo
500 Fifth Avenue
New York, NY 10110
Tel.:  212-223-6444

  - and -

Christopher M. Burke
600 B Street, Suite 1500
San Diego, CA 92101
Tel.:  619-233-4565

**LEOPOLD~KUVIN, P.A.**
William C. Wright
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel.:  561-935-4801

**BERGER & MONTAGUE, P.C.**
Merrill G. Davidoff
Michael Dell'Angelo
1622 Locust Street
Philadelphia, PA 19103
Tel.:  215-875-3000

*Attorneys for Plaintiff Brian Balaguera*

**BLOOD HURST & O'REARDON LLP**
Timothy G. Blood
Thomas P. O'Reardon, II
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619-338-1100
Facsimile: 619-338-1101

**ADEMI & O'REILLY, LLP**
Shpetim Ademi
Guri Ademi
David J. Syrios
3620 East Layton Ave.
Cudahy, WI 53110
Tel.: 866-264-3995
Fax: 414-482-8001

*Additional Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 4, 2010 the attached **Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Declaration of James J. Sabella in Support of Lead Plaintiffs' Motion in Opposition to Defendants' Motion to Dismiss** was filed electronically. Notice of this filing will be electronically mailed to all parties registered with the Court's electronic filing system.

<u>/s/ James J. Sabella</u>
James J. Sabella