UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARL BLESSING, EDWARD A. SCERBO,
JOHN CRONIN, CHARLES BONSIGNORE,
BRIAN BALAGUERA, SCOTT BYRD,
GLENN DEMOTT, ANDREW DREMAK,
MELISSA FAST, JAMES HEWITT, TODD
HILL, CURTIS JONES, RONALD WILLIAM
KADER, EDWARD LEYBA, GREG LUCAS,
JOSHUA NATHAN, JAMES SACCHETTA,
DAVID SALYER, SUSIE STANAJ, JANEL
and KEVIN STANFIELD, PAUL
STASIUKEVICIUS, TODD STAVE, and
PAOLA TOMASSINI, on Behalf of
Themselves and All Others Similarly Situated,

    Plaintiffs,

    -against-

SIRIUS XM RADIO INC.,

    Defendant

No. 09-cv-10035 (HB)

ECF CASE

---

### ANSWER AND DEFENSES OF DEFENDANT SIRIUS XM RADIO INC. TO PLAINTIFFS' SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Defendant Sirius XM Radio Inc. ("Sirius XM"), by and through its attorneys, submits its

Answer and Defenses in response to the plaintiffs' Second Consolidated Amended Class Action

Complaint (the "Complaint").

### FIRST DEFENSE

Sirius XM answers each numbered paragraph of the Complaint with a like-numbered

paragraph as follows:

1.      Avers that paragraph 1 of the Complaint states conclusions of law to which no

response is required; but to the extent a response may be required, admits that plaintiffs purport

to bring this action under the federal antitrust laws, state consumer protection statutes, and state

common law, and seek injunctive relief and money damages, and denies plaintiffs are entitled to such relief as well as the remaining allegations in paragraph 1 of the Complaint.

2.      Admits and avers that, prior to the merger: Sirius and XM were the only two companies licensed by the U.S. Federal Communications Commission (FCC) to transmit SDARS in the United States, Sirius never had raised its base monthly subscription fee, and XM had raised its base monthly subscription fee only once; and denies the remaining allegations in paragraph 2 of the Complaint.

3.      Admits and avers that, prior to the merger, Sirius and XM were the only two companies licensed by the FCC to transmit SDARS in the United States, and that, on or about July 28, 2008, a subsidiary of Sirius Satellite Radio Inc. was merged with and into XM Satellite Radio Holdings.  Sirius XM denies the remaining allegations in paragraph 3 of the Complaint.

4.      Admits and avers that, in connection with their applications for regulatory approval of their merger, Sirius and XM stated that efficiencies resulting from the merger would likely result in lower prices and more programming choices for their subscribers, and that Sirius XM in fact has achieved substantial cost savings as a result of the merger that have benefited both the company and its subscribers.  Sirius XM denies the remaining allegations in paragraph 4 of the Complaint.

5.      Admits that Sirius XM increased certain rates in 2009 (see Response to ¶ 6 below) and earned more total revenue in 2009 than in 2008; avers that the documents referenced or quoted in paragraph 5 of the Complaint speak for themselves; and denies the remaining allegations in paragraph 5 of the Complaint.

6.      Admits and avers that, on or about March 11, 2009, Sirius XM (1) increased the price of its discounted second radio subscription plan from $6.99 to $8.99 per month, with the

change for subscribers under long-term plans not becoming effective until those subscribers' next renewal; and (2) began offering its new 128 Kbps online services called "Premium SIRIUS Internet Radio" and "Premium XM Radio Online" to existing subscribers for an additional $2.99 per month, and ceased offering its free 32 and 64 Kbps online streaming services to existing subscribers upon renewal of their plans, except for those subscribers who entered into a new plan as part of a promotion in order to continue to receive free streaming.  Sirius XM further admits and avers that effective July 29, 2009, it added a U.S. Music Royalty Fee to certain subscriber invoices.  The U.S. Music Royalty Fee is $1.98 per month on the base $12.95 subscriptions and $0.97 for base plans that are eligible for a second radio discount.  Sirius XM also admits and avers that, after the merger, certain administrative fees have been changed.  Sirius XM denies the remaining allegations in paragraph 6 of the Complaint.

7.     Avers that Sirius XM lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 7 of the Complaint.

8.     Admits and avers that the document referenced or quoted in paragraph 8 of the Complaint speaks for itself; and denies the remaining allegations in paragraph 8.

9.     Admits and avers that the document referenced or quoted in paragraph 9 of the Complaint speaks for itself; and denies the remaining allegations in paragraph 9 of the Complaint.

10.     Admits that Sirius XM has rationalized certain Sirius and XM channels since the merger, retiring some while adding others; avers that Sirius XM lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10 of the Complaint respecting the purported preferences of each individual Sirius XM subscriber; and denies the remaining allegations in paragraph 10 of the Complaint.

11. Admits that the Sirius and XM SDARS networks continue to exist and broadcast satellite radio to Sirius and XM subscribers; and denies the remaining allegations in paragraph 11 of the Complaint.

12. Admits that plaintiffs purport to bring claims under the federal antitrust laws, state consumer protection statutes; avers that the Court's November 17, 2010 Opinion and Order (Dkt. No. 74) dismissed plaintiffs' state law claims for breach of contract; and denies the remaining allegations in paragraph 12 of the Complaint.

13. Avers that paragraph 13 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, admits that certain named plaintiffs are citizens of states of which Sirius XM is not a citizen and denies the remaining allegations in paragraph 13 of the Complaint.

14. Avers that paragraph 14 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, admits that plaintiffs purport to bring this action under the referenced statutes and state common law seeking the specified relief for their alleged injuries, and denies the remaining allegations in paragraph 14 of the Complaint.

15. Avers that paragraph 15 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, admits the Court has jurisdiction over plaintiffs' claims.

16. Admits that Sirius XM transacts business, and has its principal place of business, in this District; and does not contest that venue is proper in this District.

17. Admits and avers that Mr. Blessing is a resident of Florida and that, as of May 3, 2010, he was a Sirius subscriber.

18.     Admits and avers that Mr. Scerbo is a resident of New Jersey and that, as of May 3, 2010, he was an XM subscriber.

19.     Admits and avers that Mr. Cronin is a resident of New Hampshire and that, as of May 3, 2010, he was a Sirius subscriber.

20.     Admits and avers that Mr. Bonsignore is a resident of California and that, as of May 3, 2010, he was an XM subscriber.

21.     Admits and avers that Mr. Balaguera is a resident of Florida and that, as of May 3, 2010, he was an XM subscriber.

22.     Admits and avers that Mr. Byrd is a resident of New York and that, as of May 3, 2010, he was an XM subscriber.

23.     Admits and avers that Mr. Demott is a resident of Ohio and that, as of May 3, 2010, he was a Sirius subscriber.

24.     Admits and avers that Mr. Dremak is a resident of California and that, as of May 3, 2010, he was a Sirius subscriber.

25.     Admits and avers that Ms. Fast is a resident of Maryland and that, as of May 3, 2010, she was a Sirius subscriber.

26.     Admits and avers that Mr. Hewitt is a resident of California and that, as of May 3, 2010, he was a Sirius subscriber.

27.     Admits and avers that Mr. Hill is a resident of Maine and that, as of May 3, 2010, he was a Sirius subscriber.

28.     Admits and avers that Mr. Jones is a resident of Florida and that, as of May 3, 2010, he was a Sirius subscriber.

29.     Admits and avers that Mr. Kader is a resident of North Carolina and that, as of May 3, 2010, he was an XM subscriber.

30.     Admits and avers that Mr. Leyba is a resident of Arizona and that, as of May 3, 2010, he was an XM subscriber.

31.     Admits and avers that Mr. Lucas is a resident of Washington and that, as of May 3, 2010, he was a Sirius subscriber.

32.     Admits and avers that Mr. Nathan is a resident of Illinois and that, as of May 3, 2010, he was an XM subscriber.

33.     Admits and avers that Mr. Sacchetta is a resident of Pennsylvania and that, as of May 3, 2010, he was a Sirius subscriber.

34.     Admits and avers that Mr. Salyer is a resident of South Carolina and that, as of May 3, 2010, he was an XM subscriber.

35.     Admits and avers that Ms. Stanaj is a resident of Michigan and that, as of May 3, 2010, she was a Sirius subscriber.

36.     Admits and avers that Ms. Stanfield is resident of Kansas and that, as of May 3, 2010, she was an XM subscriber.  Sirius XM is without knowledge or information sufficient to form a belief as to the truth of the allegation of Mr. Stanfield's residence and denies that, as of May 3, 2010, Mr. Stanfield subscribed to either Sirius or XM.

37.     Admits and avers that Mr. Stasiukevicius is a resident of Massachusetts and that, as of May 3, 2010, he was an XM subscriber.

38.     Admits and avers that Mr. Stave is a resident of Maryland and that, as of May 3, 2010, he was a Sirius subscriber.

39.     Admits avers that Ms. Tomassini is a resident of Arizona and that, as of May 3, 2010, she was an XM subscriber.

40.     Avers that Sirius XM lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 40 of the Complaint.

41.     Admits and avers that Sirius XM is a Delaware corporation with its principal place of business at 1221 Avenue of the Americas, 36th Floor, New York, New York, and that it was created by merging a subsidiary of Sirius with and into XM.  Sirius XM further admits and avers that it broadcasts a variety of content (much of the musical content of which is commercial free) over different platforms, including satellites and the internet.  Sirius XM denies the remaining allegations in paragraph 41 of the Complaint.

42.     Admits the allegations in paragraph 42, except denies that Sirius was merged with XM to form Sirius XM.  (See Responses to ¶¶ 3 and 41 above.)

43.     Admits the allegations in paragraph 43, except denies that XM was merged with Sirius to form Sirius XM.  (See Responses to ¶¶ 3 and 41 above.)

44.     Avers that paragraph 44 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies that Sirius XM, Sirius, and XM have engaged in any unfair methods of competition and otherwise admits the allegations in paragraph 44 of the Complaint.

45.     Avers that paragraph 45 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies that Sirius XM, Sirius, and XM are directly liable to Plaintiffs and the proposed Class; and otherwise admits the allegations in paragraph 45 of the Complaint.

46.     Admits the allegations in paragraph 46 of the Complaint.

47.     Admits and avers that, prior to the merger:  (1) Sirius and XM were the only two companies licensed by the FCC to transmit SDARS in the United States; (2) each company spent more than a billion dollars to, among other things, (a) develop and upgrade their networks; (b) design chipsets and radios capable of receiving its service; (c) subsidize the cost of such chipsets and radios to encourage their distribution; (d) develop subscriber-based management systems and other information technology; (e) market its brand; and (f) create programming for subscribers; and (3) Sirius and XM competed against one another, as well as against many other existing and emerging audio and audio-visual entertainment delivery platforms and providers of content that are available for use in the home, over the internet, and in automobiles, including without limitation AM and FM radio, iPods and other MP3 players, CD players, HD radio, online radio stations, and platforms such as Pandora and Slacker that can be accessed through a computer or through a wireless smart phone.  Sirius XM denies the remaining allegations in paragraph 47 of the Complaint.

48.     Admits the allegations in paragraph 48 of the Complaint.

49.     Admits the allegations in paragraph 49 of the Complaint.

50.     Admits the allegations in paragraph 50 of the Complaint.

51.     Admits the allegations in paragraph 51 of the Complaint.

52.     Admits and avers that, prior to the merger, Sirius and XM competed against one another, as well as against many other existing and emerging audio and audio-visual entertainment delivery platforms and providers of content that are available for use in the home, over the internet, and in automobiles, including without limitation AM and FM radio, iPods and other MP3 players, CD players, HD radio, online radio stations, and platforms such as Pandora

and Slacker that can be accessed through a computer or through a wireless smart phone.  Sirius XM denies the remaining allegations in paragraph 52 of the Complaint.

53.     Admits and avers that, before the merger, Sirius and XM entered into agreements with a number of content providers and offered a number of commercial free music channels; and denies the remaining allegations in paragraph 53 of the Complaint.  (See also Response to ¶ 47 above.)

54.     Admits and avers that, before the merger, Sirius and XM invested in the development and promotion of a variety of Sirius- and XM-compatible radios, receivers, and other devices; and denies the remaining allegations in paragraph 54 of the Complaint.

55.     Admits and avers that, before the merger, Sirius never raised its $12.95 base monthly subscription fee, and XM raised its base monthly subscription fee only once, from $9.99 to $12.95, in April 2005; and denies the remaining allegations in paragraph 55 of the Complaint.

56.     Admits and avers that, before the merger, Sirius never raised its $12.95 base monthly subscription fee, and XM raised its base monthly subscription fee only once, from $9.99 to $12.95, in April 2005.  Sirius XM further avers that the document referenced in paragraph 56 of the Complaint, which purports to quote Mr. Karmazin, speaks for itself.  Sirius XM denies the remaining allegations in paragraph 56 of the Complaint.

57.     Admits and avers that, in 2004, XM signed an exclusive, eleven-year, $650 million agreement with Major League Baseball; and denies the remaining allegations in paragraph 57 of the Complaint.

58.     Denies the allegations in paragraph 58 of the Complaint.

59.     Admits that Sirius XM is the only company currently licensed by the FCC to transmit SDARS in the United States; and denies the remaining allegations in paragraph 59 of the Complaint.

60.     Avers that paragraph 60 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies the allegations in paragraph 60 of the Complaint.

61.     Admits the allegations in paragraph 61 of the Complaint.

62.     Admits and avers that, on July 25, 2008, the FCC adopted a Memorandum Opinion and Order and Report and Order (FCC Order) in connection with its approval of the merger (available at <http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-08-178A1.pdf>); and denies the remaining allegations in paragraph 62 of the Complaint.

63.     Admits and avers that Sirius and XM offered to make certain voluntary commitments in connection with the FCC's review of the merger to further demonstrate that the merger was in the public interest, the terms of which voluntary commitments the FCC specified and incorporated into the FCC Order as conditions for approving the merger; and denies the remaining allegations in paragraph 63 of the Complaint.

64.     Admits and avers that Sirius and XM represented to the FCC that the merger would likely produce efficiencies that would benefit subscribers; that David Frear currently is Sirius XM's Executive Vice President and Chief Financial Officer and that before the merger he held the same position at Sirius; and that Mr. Frear executed an affidavit that was appended as Exhibit D to, and submitted to the FCC on July 24, 2007 with, Sirius's and XM's Joint Opposition to Petitions to Deny and Reply Comments, MB Dkt. No. 07-57, which speaks for

itself and includes the text excerpted in paragraph 64; and denies the remaining allegations in paragraph 64 of the Complaint.

65.    Admits and avers that Sirius's and XM's Consolidated Application for Authority to Transfer of Control filed with the FCC on March 20,2007 speaks for itself and contains the statement quoted in paragraph 65 of the Complaint; and denies the remaining allegations in paragraph 65 of the Complaint.

66.    Admits and avers that, pursuant to the voluntary commitments that Sirius and XM offered to the FCC and the FCC incorporated into the FCC Order, Sirius and XM agreed not to raise the retail price for the combined company's basic $12.95 per month subscription packages, the a la carte programming packages described in paragraph 1 of the June 13, 2008 voluntary commitment letter appended to the FCC Order, or the new programming packages described in paragraphs 2, 3, and 4 of the June 13, 2008 voluntary commitment letter appended to the FCC Order, except for a pass through of certain cost increases as set forth therein, for thirty-six months after approval of the merger; and denies the remaining allegations of paragraph 66 of the Complaint.

67.    Admits and avers that Sirius's and XM's Joint Opposition to Petitions to Deny and Reply Comments, MB Dkt. No. 07-57, filed with the FCC on or about July 24, 2007, speaks for itself and contains the statement quoted in paragraph 67 of the Complaint; and denies the remaining allegations in paragraph 67 of the Complaint.

68.    Admits and avers that Sirius and XM offered to make the voluntary commitments incorporated into the FCC Order in order to further demonstrate to the FCC that the merger was in the public interest, and that the passages paragraph 68 of the Complaint purports to quote

appear in context in the FCC Order and speak for the themselves; and denies the remaining allegations in paragraph 68 of the Complaint.

69.     Admits and avers that Sirius and XM, as part of the voluntary commitments offered by Sirius and XM and incorporated by the FCC into the FCC Order approving the merger, committed to providing the a la carte services specified in paragraph 1 of the 6/13/2008 voluntary commitment letter appended to the FCC Order to the combined company's customers; admits and avers that any subscriber can obtain "a la carte" service; and further admits that, in this and other ways, the combined entity has improved the range of available options to subscribers.

70.     Admits and avers that the portion of the FCC order quoted in paragraph 70 of the Complaint speaks for itself and that the FCC approved the merger and that the FCC Order incorporated the voluntary commitments offered by Sirius and XM as a condition for approval of the merger; and denies the remaining allegations of paragraph 70 of the Complaint.

71.     Denies the allegations in paragraph 71 of the Complaint.

72.     Admits and avers that to the extent paragraph 72 purports to quote a transcript of Mr. Karmazin's statements during an earning call, the transcript speaks for itself; and denies the remaining allegations in paragraph 72 of the Complaint.

73.     Denies the allegations in paragraph 73 of the Complaint.

74.     Admits and avers that Sirius XM sells its satellite radio services throughout the United States and that a license from the FCC is required to transmit SDARS in the United States; and denies the remaining allegations in paragraph 74 of the Complaint.

75.     Admits and avers that Sirius and XM subscribers, among others, can access music, news, and other audio entertainment through a variety of other platforms, including

terrestrial (AM/FM) radio, portable music players (such as iPods and MP3 players), and the internet; and denies the remaining allegations in paragraph 75 of the Complaint.

76.     Denies the allegations in paragraph 76 of the Complaint.

77.     Avers that Sirius XM lacks knowledge or information sufficient to form a belief about whether the "Sirius XM customer base" has the uniform belief alleged in paragraph 77 of the Complaint and denies the remaining allegations in paragraph 77 of the Complaint.

78.     Admits and avers that there are numerous possible reasons why a Sirius XM subscriber may have chosen to purchase satellite radio service and that SDARS provides certain benefits that may be relevant to some subscribers, but avers that Sirius XM lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 78 of the Complaint respecting whether all customers have chosen to purchase satellite radio for some or all of the reasons alleged in paragraph 78 of the Complaint.

79.     Denies the allegations in paragraph 79 of the Complaint.

80.     Admits the first sentence in paragraph 80 of the Complaint; and denies the remaining allegations in paragraph 80 of the Complaint.

81.     Admits and avers that some of the non-music programming content that Sirius XM broadcasts is produced live and available only on Sirius XM; and denies the remaining allegations in paragraph 81.

82.     Denies the allegations in paragraph 82 of the Complaint.

83.     Admits and avers that internet access generally is required to obtain streaming internet radio content (although streaming content may be stored and so a live internet connection is not required to access such content) and that one way in which automobile drivers

may listen to internet radio in their cars is by connecting a smart-phone to an auxiliary jack; and denies the remaining allegations in paragraph 83 of the Complaint.

84.     Denies the allegations in paragraph 84 of the Complaint.

85.     Denies the allegations in paragraph 85 of the Complaint.

86.     Admits and avers that the development of an SDARS network requires substantial investments and that transmission of satellite radio in the United States requires a license from the FCC; and denies the remaining allegations in paragraph 86 of the Complaint.  (See also Response to ¶ 90 below.).

87.     Admits and avers that the development of an SDARS broadcasting network requires substantial investments, and that, before the merger, Sirius and XM each invested more than $5 billion to: (1) develop and upgrade their networks; (2) design chipsets and radios capable of receiving their service; (3) subsidize the cost of such chipsets and radios to encourage their distribution; (4) develop subscriber-based management systems and other information technology; (5) market their brands; and (6) create programming for subscribers; and denies the remaining allegations in paragraph 87 of the Complaint.

88.     Admits and avers that Sirius and XM successfully bid for their satellite broadcasting licenses in an FCC auction in April 1997, and that Sirius and XM began broadcasting in February 2002 and September 2001, respectively; and denies the remaining allegations in paragraph 88 of the Complaint.

89.     Admits and avers that, before the merger, Sirius and XM were the only two companies licensed by the FCC to transmit SDARS over spectrum in the "S" band; and denies the remaining allegations in paragraph 89 of the Complaint.

90. Admits and avers that the FCC Order includes the quote excerpted in paragraph 90 of the Complaint; and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 90 of the Complaint.

91. Avers that Sirius XM lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 91 of the Complaint.

92. Admits and avers that, on or about March 11, 2009, Sirius XM increased the level of its discounted second radio subscription plan from $6.99 to $8.99 per month, with the change for subscribers under long-term plans not becoming effective until those subscribers' next renewal, and began offering its new 128 Kbps online services called "Premium SIRIUS Internet Radio" and "Premium XM Radio Online" to existing subscribers for an additional $2.99 per month, and ceased offering its free 32 and 64 Kbps online streaming services to existing subscribers upon renewal of their plans, except for those subscribers who entered into a new plan as part of a promotion in order to continue to receive free streaming; and denies the remaining allegations in paragraph 92 of the Complaint.

93. Admits the allegations in paragraph 93 of the Complaint.

94. Denies the allegations in paragraph 94 of the Complaint.

95. Admits and avers that, on or about March 11, 2009, Sirius XM increased the level of its discounted second radio subscription plan from $6.99 to $8.99 per month, with the change for subscribers under long-term plans not becoming effective until those subscribers' next renewal; and denies the remaining allegations in paragraph 95 of the Complaint.

96. Admits and avers that the February 25, 2010 Sirius XM press release referenced in the last sentence in paragraph 96 of the Complaint contains the statement: "Total ARPU for the three months ended December 31, 2009 was $10.92, compared to $10.65 for the three

months ended December 31, 2008.  The increase was driven mainly by the sale of 'Best of'

programming and increased rates on the company's multi-subscription and Internet packages,

partially offset by a decline in net advertising revenue per average subscriber."; and denies the

remaining allegations in paragraph 96 of the Complaint.

97.     Admits and avers that: (1) before March 11, 2009, XM gave subscribers to its

basic $12.95 subscription package the "XM Radio Online" service at speeds between 32 Kbps

and 64 Kbps for no additional charge, and Sirius offered its "SIRIUS Internet Radio" service at a

speed of 32 Kbps to subscribers to its basic programming package for no additional charge, plus

the option to purchase SIRIUS Internet Radio at a speed of 128 Kbps for $2.99 per month; and

(2) effective March 11, 2009, Sirius XM (a) began offering to subscribers to its basic

subscription packages, for $2.99 per month, its new online services, "Premium SIRIUS Internet

Radio" and "Premium XM Radio Online," which provide 128 Kbps service, a larger number of

online channels, and the ability to access satellite radio through an iPhone application and other

wireless devices, and (b) ceased offering its 32 and 64 Kbps online streaming services to existing

subscribers upon renewal of their plans, except for those subscribers who entered into a new plan

as part of a promotion in order to continue to receive free streaming; and denies the remaining

allegations in paragraph 97 of the Complaint.

98.     Admits and avers that, before the merger, Sirius and XM did not discuss any plans

for their respective internet offerings with the FCC in connection with the merger proceedings;

and denies the remaining allegations in paragraph 98 of the Complaint.

99.     Denies the allegations in paragraph 99 of the Complaint.

100.    Admits and avers that, both before and after the merger, Sirius and XM charged

various administrative fees assessed to subscribers at various times, and that the XM Customer

Agreement posted online at <http://www.xmradio.com/serviceterms> currently specifies a cancellation fee; and denies the remaining allegations in paragraph 100 of the Complaint.

101.    Admits and avers that, both before and after the merger, Sirius and XM charged various administrative fees assessed to subscribers at various times, and that the XM Customer Agreement posted online at <http://www.xmradio.com/serviceterms> currently specifies a transfer fee; and denies the remaining allegations in paragraph 101 of the Complaint.

102.    Denies the allegations in paragraph 102 of the Complaint.

103.    Admits and avers that, both before and after the merger, Sirius and XM charged subscribers various activation fees at various times, and that the XM Customer Agreement posted online at <http://www.xmradio.com/serviceterms> and the Sirius Terms and Conditions posted online at <http://www.sirius.com/serviceterms> currently specify activation fees; and denies the remaining allegations in paragraph 103 of the Complaint.

104.    Denies the allegations in paragraph 104 of the Complaint.

105.    Denies the allegations in paragraph 105 of the Complaint.

106.    Avers that paragraph 106 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies the allegations in paragraph 106 of the Complaint.

107.    Avers that, to the extent paragraph 107 of the Complaint purports to quote a portion of the FCC Order, that document speaks for itself; and denies the remaining allegations in paragraph 107.

108.    Denies the allegations in paragraph 108 of the Complaint.

109.    Avers that to the extent paragraph 109 of the Complaint purports to quote a statement made by Mr. Meyer during Sirius XM's first quarter 2009 earnings call, the referenced

transcript speaks for itself; and denies the remaining allegations in paragraph 109 of the Complaint.

110.    Avers that to the extent paragraph 110 of the Complaint purports to quote a statement made by Mr. Karmazin during Sirius XM's first quarter 2009 earnings call, the referenced transcript speaks for itself; and denies the remaining allegations in paragraph 110 of the Complaint.

111.    Avers that to the extent paragraph 111 of the Complaint purports to quote a statement made by Mr. Karmazin during Sirius XM's second quarter 2009 earnings call, the referenced transcript speaks for itself; and denies the remaining allegations in paragraph 111 of the Complaint.

112.    Admits and avers that, on or about August 6, 2009, Sirius XM reported that it ended the second quarter 2009 with 18,413,435 total subscribers, down 185,999 from the end of the first quarter 2009; and (2) net advertising revenue on an unaudited pro forma basis for the three months ended June 30, 2009 was $12.6 million, as compared to $18.8 million for the three months ended June 30, 2008; and denies the remaining allegations in paragraph 112 of the Complaint.

113.    Admits and avers that, on or about November 5, 2009, Sirius XM reported that: (1) it ended the third quarter 2009 with 18,515,730 total subscribers, an increase of 102,295 total subscribers from the end of the second quarter 2009; and (2) total revenue on an unaudited pro forma basis for the three months ended September 30, 2009 was $629.6 million, as compared to $607.8 million for the three months ended June 30, 2009; and denies the remaining allegations in paragraph 113 of the Complaint.

114.    Admits and avers that page 39 of Sirius XM's 10-Q report for the third quarter 2009 contains the statement:  "The increase in revenue [for the three months ended September 30, 2009 and 2008] was due mainly to increased rates on multi-subscription packages, revenues earned on internet packages, the introduction of the U.S. Music Royalty Fee and the sale of 'Best of' programming."

115.    Admits and avers that Sirius XM reported, on or about August 6, 2009, that pro forma self-pay month customer churn was 2.0% in the second quarter 2009, down from 2.2% in the first quarter 2009; and avers that to the extent paragraph 115 of the Complaint purports to quote a statement made by Mr. Frear during Sirius XM's second quarter 2009 earnings call, the referenced transcript speaks for itself.

116.    Admits and avers that, on or about February 25, 2010, Sirius XM reported that: (1) total revenue on an unaudited pro forma basis for the three months ended December 31, 2009 was $683.8 million, as compared to $644.1 million for the three months ended December 31, 2008; (2) total subscribers increased (net additions) by 257,028 in the fourth quarter 2009; and (3) average revenue per subscriber (ARPU) on an unaudited pro forma basis for the fourth quarter 2009 was $10.92, as compared to $10.65 for the fourth quarter 2008; admits and avers that the U.S. Music Royalty Fee was not included in Sirius XM's reported ARPU before the first quarter of 2010; and denies the remaining allegations in paragraph 116 of the Complaint.

117.    Avers that to the extent paragraph 117 of the Complaint purports to quote a statement made by Mr. Karmazin during Sirius XM's fourth quarter 2009 earnings call, the referenced transcript speaks for itself; and denies the remaining allegations in paragraph 117 of the Complaint.

118.     Avers that the analyst report that paragraph 118 of the Complaint purports to quote speaks for itself; and denies the remaining allegations in paragraph 118 of the Complaint.

119.     Admits and avers that, as a result of the merger, Sirius XM has realized significant cost savings, including but not limited to those referenced in paragraph 119 of the Complaint; and denies the remaining allegations in paragraph 119 of the Complaint.

120.     Denies the allegations in paragraph 120 of the Complaint.

121.     Denies the allegations in paragraph 121 of the Complaint.

122.     Admits and avers that Sirius XM to date has launched its a la carte programming packages only on the Sirius platform; denies that its a la carte package is available only to Sirius subscribers; and denies the remaining allegations in paragraph 122 of the Complaint.

123.     Admits and avers that satellite radios capable of supporting a la carte programming were not available before the merger, that Starmate 5 and Stratus 6 are two after-market satellite radios capable of supporting a la carte programming, and that automotive manufacturers have not chosen to install Starmate 5 or Stratus 6 as OEM equipment; and denies the remaining allegations in paragraph 123 of the Complaint.

124.     Denies the allegations in paragraph 124 of the Complaint.

125.     Admits and avers that a la carte packages are subject to the voluntary commitment incorporated into the FCC Order, that Sirius XM has complied with the voluntary commitments, that Sirius XM charges a U.S. Music Royalty Fee on a la carte packages as it is permitted by the FCC Order to do, and denies the remaining allegations in paragraph 125 of the Complaint.

126.     Admits and avers that the basic a la carte package: (1) allows subscribers to pick 50 channels for $6.99/month and to add additional channels for an extra $.25/month; and (2) does not currently include live games, races, or Howard Stern, although those programs are

included in other a la carte packages, including "A La Carte + Howard Stern" for $12.95/month,

"A La Carte + Sports" starting at $11.99/month, "A La Carte + Howard Stern + Sports" for

$12.95/month, and "A La Carte Gold," which allows subscribers to choose 100 channels from

SIRIUS' full channel lineup and certain XM channels; and denies the remaining allegations in

paragraph 126 of the Complaint.

    127.    Admits and avers that, both before and after the merger, Sirius and XM and Sirius

XM added and removed channels from their lineups; and denies the remaining allegations in

paragraph 127 of the Complaint.

    128.

        (a)    Denies the allegations in paragraph 128(a) of the Complaint.

        (b)    Avers that, both before and after the merger, XM offered Metropolitan

                Opera Radio, and that the programming previously available on the XM

                channel "Vox" was incorporated into the XM channel "Metropolitan

                Opera Radio"; and denies the remaining allegations in paragraph 128(b) of

                the Complaint.

        (c)    Avers that the programming previously available on XM's and Sirius's

                punk rock channels has been incorporated into the XM channel Faction;

                and denies the remaining allegations in paragraph 128(c) of the

                Complaint.

        (d)    Avers that XM offered two channels featuring alternative rock that were

                named Fred and Lucy and that XM now offers "First Wave"; and denies

                the remaining allegations in paragraph 128(d) of the Complaint.

129.     Admits and avers that some former XM programming staff and deejays do not work for Sirius XM, and that the newspaper story paragraph 129 of the Complaint purports to quote speaks for itself; and denies the remaining allegations in paragraph 129 of the Complaint.

130.     Admits and avers that, at the time Sirius and XM agreed to merge, NBA and college sports play-by-play programming were available to Sirius subscribers as Sirius channels and today NBA and college sports play-by-play programming are available to Sirius subscribers as Best of XM channels; and denies the remaining allegations in paragraph 130 of the Complaint.

131.     Denies the allegations in paragraph 131 of the Complaint.

132.     Admits and avers that (1) Sirius and XM offered, and the FCC incorporated into the FCC Order, a number of voluntary commitments that limit Sirius XM's ability to increase the base price of specific service plans for three years after the merger; (2) the voluntary commitments incorporated into the FCC Order provide that Sirius XM may "pass through cost increases incurred since the filing of the combined company's FCC merger application as a result of statutorily or contractually required payments to the music, recording and publishing industries for the performance of musical works and sound recordings or for device recording fees," (3) effective July 29, 2009, and in accordance with the voluntary commitment incorporated into the FCC Order, Sirius XM began adding a U.S. Music Royalty Fee to certain subscriber invoices; and (4) Sirius XM represents to its subscribers that the U.S. Music Royalty Fee is consistent with its commitment not to raise the base price of specific service plans for three years after the merger; and denies the remaining allegations in paragraph 132 of the Complaint.

133.     Denies the allegations in paragraph 133 of the Complaint.

134.    Avers that Sirius XM lacks knowledge or information sufficient to form a belief about the truth of the first sentence in paragraph 134 of the Complaint; and denies the remaining allegations in paragraph 134 of the Complaint.

135.    Avers that (1) the U.S. Music Royalty Fee is $1.98 per month on Sirius XM's basic $12.95 subscriptions and certain other subscriptions plans and $.97 per month for base plans that are eligible for a second radio discount; (2) for some other packages, the U.S. Music Royalty Fee is less than $1.98 per month; and (3) certain other subscription packages, such as the "News, Sports and Talk" package, that contain little music are not subject to the U.S. Music Royalty Fee at all; and denies the remaining allegations in paragraph 135 of the Complaint.

136.    Denies the allegations in paragraph 136 of the Complaint.

137.    Avers that sentences 1-4 of paragraph 137 of the Complaint state conclusions of law to which no response is required, but to the extent a response may be required, avers that the referenced statutes speak for themselves; and, as to sentence 5 of paragraph 137 of the Complaint, avers that copyrights to sound recordings generally are held by large record companies and copyrights to musical works generally are held by songwriters and music publishers.

138.    Admits and avers that, before the merger, Sirius and XM paid royalties to certain organizations representing owners of copyrights in musical works under contracts that contained similar formulas for the calculation of royalties that used "Gross Revenue," as the term was defined in the agreements, as a component of the calculation; and denies the remaining allegations in paragraph 138 of the Complaint.

139.    Denies the conclusion drawn in the last sentence of paragraph 139 of the Complaint and avers that the Final Rule and Order issued by the Copyright Royalty Board

(CRB) on or about January 24, 2008 (see *Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, 73 Fed. Reg. 4080-01 (Jan. 24, 2008) (final rule and order), *aff'd in part and rev'd in part in SoundExchange, Inc. v. Librarian of Congress*, 571 F.3d 1220 (D.C. Cir. 2009)) set the statutory license rates payable by Sirius and XM for broadcasting sound recordings over their SDARS networks to residential subscribers at 6.0 percent and 6.5 percent of Gross Revenues, as defined in the final rule, retroactively for 2007 and 2008 and prospectively for 2009, respectively; and denies the remaining allegations in paragraph 139 of the Complaint.

140.     Denies the allegations in paragraph 140 of the Complaint.

141.     Denies the allegations in paragraph 141 of the Complaint.

142.     Denies the allegations in paragraph 142 of the Complaint.

143.     Admits and avers that the statutory and contractual licenses under which Sirius XM pays royalties for SDARS broadcasts contain specific definitions of the term "Gross Revenue" and that Sirius XM uses the specified definitions in the calculation of royalties due under those licenses; and denies the remaining allegations in paragraph 143 of the Complaint.

144.     Admits and avers that the statutory and contractual licenses under which Sirius XM pays royalties for SDARS broadcasts contain specific definitions of the term "Gross Revenue" and that Sirius XM uses the specified definitions in the calculation of royalties due under those licenses; and denies the remaining allegations in paragraph 144 of the Complaint.

145.     Denies the allegations in paragraph 145 of the Complaint.

146.     Admits and avers that the statutory and contractual licenses under which Sirius XM pays royalties for SDARS broadcasts contain specific definitions of the term "Gross Revenue," that Sirius XM uses the specified definitions in the calculation of royalties due under

those licenses, and that Sirius XM reported approximately $47.2 million in net advertising revenue as part of its unaudited actual results of operations for the year ending December 31, 2008; and denies the remaining allegations in paragraph 146 of the Complaint.

147.    Denies the allegations in paragraph 147 of the Complaint.

148.    Denies the allegations in paragraph 148 of the Complaint.

149.    Admits and avers that (1) the voluntary commitments incorporated into the FCC Order provide that Sirius XM may "pass through cost increases incurred since the filing of the combined company's FCC merger application as a result of statutorily or contractually required payments to the music, recording and publishing industries for the performance of musical works and sound recordings or for device recording fees," (2) the U.S. Music Royalty Fee complies with Sirius XM's obligations under the FCC Order, and (3) Sirius XM states, in the FAQs pages on the Sirius and XM websites, that the U.S. Music Royalty Fee is a pass through of the "increases in our costs attributable to statutorily or contractually required payments to the music, recording and publishing industries for the performance of musical works and sound recordings or for device recording fees since March 20, 2007, the date on which we applied to the FCC to approve the merger," and that the U.S. Music Royalty Fee is "consistent with our commitment not to raise the base price of specific service plans for three years after the merger."

150.    Admits and avers that Sirius and XM invoices mailed to subscribers contain the text excerpted in paragraph 150 of the Complaint.

151.    Admits and avers that the Sirius and XM customer agreements contain the text excerpted in paragraph 151 of the Complaint.

152.    Denies the allegations in paragraph 152 of the Complaint.

153.    Admits and avers that the FAQ pages respecting the U.S. Music Royalty Fee contain the text excerpted in paragraph 153 of the Complaint; and denies the remaining allegations of paragraph 153 of the Complaint.

154.    Admits and avers that Sirius XM has instructed its customer service representatives to inform subscribers who ask if the fee will change that the Copyright Royalty Board sets the fees that Sirius XM is required to pay and that Sirius XM expects this fee to increase by one half of one percent per year between 2009 and 2012; and denies the remaining allegations of paragraph 154 of the Complaint.

155.    Denies the allegations in paragraph 155 of the Complaint.

156.    Denies the allegations in paragraph 156 of the Complaint.

157.    Denies the allegations in paragraph 157 of the Complaint.

158.    Denies the allegations in paragraph 158 of the Complaint.

159.    Denies the allegations in paragraph 159 of the Complaint.

160.    Denies the allegations in paragraph 160 of the Complaint.

161.    Admits and avers that Mr. Blessing is a resident of Florida and that, as of May 3, 2010, he was a Sirius subscriber and that he was a Sirius subscriber prior to the merger.  Sirius XM further admits and avers that, between January 2006 and May 3, 2010, Mr. Blessing has had as many as three Sirius subscriptions during certain periods of time.  Sirius XM avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Blessing's having purchased radios for family members.  Sirius XM denies the remaining allegations in paragraph 161 of the Complaint.

162.    Admits and avers that Mr. Blessing's primary account is a Sirius Everything subscription plan with a base price of $12.95 per month.  Sirius XM also admits and avers that

Mr. Blessing renewed two additional subscriptions for one year each on or about March 25, 2009 and June 25, 2009, respectively, and is billed $8.99 per month for these subscriptions.

163.     Admits and avers that Mr. Blessing subscribes to a Sirius Everything plan for $12.95 on a monthly basis, and that on or about August 28, 2009, Sirius XM began charging Mr. Blessing the U.S. Music Royalty Fee of $1.98 per month on this monthly plan.

164.     Admits and avers that, between August 28, 2009 and May 3, 2010, Mr. Blessing has paid the U.S. Music Royalty Fee each month he has renewed his primary account.

165.     Denies the allegations in paragraph 165 of the Complaint.

166.     Admits and avers that Mr. Scerbo is a New Jersey resident and that, as of May 3, 2010, he was XM subscriber and that he was a XM subscriber prior to the merger.

167.     Admits and avers that, between March 2009 and May 3, 2010, Mr. Scerbo subscribed to an XM Everything subscription plan and paid $38.85, exclusive of taxes and fees, on a quarterly basis.  Sirius XM further admits that, between September 2009 and May 3, 2010, Mr. Scerbo was charged and paid the U.S. Music Royalty Fee of $5.94 (or $1.98 per month for three months) each time he renewed his subscription on a quarterly basis.

168.     Admits and avers that, between September 4, 2009 and May 3, 2010, Mr. Scerbo paid the U.S. Music Royalty Fee each time he renewed his quarterly subscription.

169.     Denies the allegations in paragraph 169 of the Complaint.

170.     Admits and avers that Mr. Cronin is a New Hampshire resident and that, as of May 3, 2010, he was a Sirius subscriber and that he was a Sirius subscriber prior to the merger.

171.     Admits and avers that, between May 2009 and May 3, 2010, Mr. Cronin subscribed to a Sirius Everything plan with a base price of $12.95 per month.

172.     Admits and avers that, between June 2009 and May 3, 2010, Mr. Cronin subscribed to and paid for Sirius's premium high speed internet service at a cost of $2.99 per month.

173.     Admits the allegations in paragraph 173 of the Complaint.

174.     Admits and avers that, between August 2009 and May 3, 2010, Mr. Cronin paid the U.S. Music Royalty Fee each time he renewed his subscription.

175.     Denies the allegations in paragraph 175 of the Complaint.

176.     Admits and avers that Mr. Bonsignore is a California resident and that, as of May 3, 2010, he was an XM subscriber and that he was an XM subscriber prior to the merger.

177.     Denies the allegations in paragraph 177 of the Complaint.

178.     Denies the allegations in paragraph 178 of the Complaint.

179.     Denies the allegations in paragraph 179 of the Complaint.

180.     Admits and avers that Mr. Balaguera is a Florida resident.  Sirius XM further admits and avers that Mr. Balaguera had a free trial subscription to XM prior to the merger and, in May 2009 when his free trial subscription expired, he became an XM subscriber.  Sirius XM also admits and avers that, as of May 3, 2010, Mr. Balaguera was an XM subscriber.

181.     Admits and avers that, between May 2009 and May 3, 2010, Mr. Balaguera renewed his XM subscription on a monthly basis.  Sirius XM denies the remaining allegations in paragraph 181 of the Complaint.

182.     Denies the allegations in paragraph 182 of the Complaint.

183.     Denies the allegations in paragraph 183 of the Complaint.

184.     Admits and avers that Mr. Byrd is a New York resident and that, as of May 3, 2010, he was an XM subscriber and that he was an XM subscriber prior to the merger.

185.    Admits the allegations in paragraph 185 of the Complaint.

186.    Admits the allegations in paragraph 186 of the Complaint.

187.    Denies the allegations in paragraph 187 of the Complaint.

188.    Admits and avers that Mr. Demott is an Ohio resident and that, as of May 3, 2010, he was a Sirius subscriber and that he was a Sirius subscriber prior to the merger.

189.    Admits and avers that Mr. Demott has been a Sirius subscriber since March 2007 and has authorized Sirius to automatically charge his credit card for his subscription fee.  Sirius XM denies that Mr. Demott's wife has been a subscriber since March 2007.

190.    Admits the allegations in paragraph 190 of the Complaint.

191.    Denies the allegations in paragraph 191 of the Complaint.

192.    Admits and avers that Mr. Dremak is a California resident and that, as of May 3, 2010, he was a Sirius subscriber and that he was a Sirius subscriber prior to the merger.

193.    Admits and avers that, between March 2005 and May 3, 2010, Mr. Dremak subscribed to a Sirius Everything plan on a quarterly basis and paid a base price of $12.95 per month.

194.    Admits and avers that, between September 23, 2009 and May 3, 2010, Mr. Dremak was charged and paid the U.S. Music Royalty Fee of $5.94 per quarter (or $1.98 per month) each time he renewed his quarterly subscription.

195.    Admits and avers that, beginning on or about March 23, 2009, Mr. Dremak was charged and paid $2.99 per month for Sirius's premium high speed internet service.  Sirius XM avers that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 195 of the Complaint.

196.    Denies the allegations in paragraph 196 of the Complaint.

197.     Admits and avers that Ms. Fast is a Maryland resident and that, as of May 3, 2010, she was a Sirius subscriber and that she was a Sirius subscriber prior to the merger.

198.     Admits and avers that, between April 2009 and May 3, 2010, Ms. Fast subscribed to a Sirius Mostly Music plan and renewed her subscription on a monthly basis.  Sirius XM further admits and avers that, on or about April 17, 2009, Ms. Fast subscribed to an annual Sirius Everything plan.

199.     Admits and avers that, between August 2009 and May 3, 2010, Ms. Fast paid the U.S. Music Royalty Fee ($1.53 per month) each time she renewed her Mostly Music subscription plan.

200.     Denies the allegations in paragraph 200 of the Complaint.

201.     Admits and avers that Mr. Hewitt is a California resident and that, as of May 3, 2010, he was a Sirius subscriber and that he was a Sirius subscriber prior to the merger.

202.     Admits the allegations in paragraph 202 of the Complaint.

203.     Admits and avers that, on or about January 1, 2010, Mr. Hewitt paid the U.S. Music Royalty Fee ($21.79) when he renewed his subscription for an additional year.

204.     Admits and avers that, between March 2009 and May 2010, Mr. Hewitt was charged and paid Sirius's premium high speed internet service fee of $2.99 per month; and that prior to March 2009, Sirius offered 32 Kbps internet access to certain subscribers and that there was no charge for this access.

205.     Denies the allegations in paragraph 205 of the Complaint.

206.     Admits and avers that Mr. Hill is a Maine resident and that, as of May 3, 2010, he was a Sirius subscriber and that he was a Sirius subscriber prior to the merger.

207.     Admits and avers that, between January 2008 and May 3, 2010, Mr. Hill had two satellite radios each with Sirius Everything plans and that his brother pays $8.99 per month for the second radio.

208.     Denies that Mr. Hill first subscribed to Sirius in 2007 and that he pays for the second radio; and admits the remaining allegations in paragraph 208 of the Complaint.

209.     Admits and avers that, on or about January 20, 2010, Mr. Hill changed his payment schedule for his radio from an annual payment plan to a quarterly payment plan.  Sirius XM further admits and avers that, after he switched to a quarterly payment plan in January 2010 for his radio, the base rate was $12.95 per month or $38.85 per quarter.

210.     Admits and avers that, between April 2009 and May 3, 2010, Mr. Hill was charged $8.99 per month each time he renewed his brother's radio.  Sirius XM further admits and avers that, between October 8, 2009 and May 3, 2010, Mr. Hill was charged the $2.19 per quarter (or $0.97 per month) U.S. Music Royalty Fee each time he renewed his brother's radio; and denies that Mr. Hill paid these fees.

211.     Admits and avers that, between January 2010 and May 3, 2010, Mr. Hill was charged and paid a $5.15 per quarter (or $1.98 per month) U.S. Music Royalty Fee each time he renewed his radio.

212.     Admits and avers that, before he renewed his radio in January 2010, Mr. Hill received free internet access to programming as part of his subscription.

213.     Denies the allegations in paragraph 213 of the Complaint.

214.     Denies the allegations in paragraph 214 of the Complaint.

215.     Admits and avers that Mr. Jones is a Florida resident and that, as of May 3, 2010, he was a Sirius subscriber and that he was a Sirius subscriber prior to the merger.

216.    Admits and avers that, between December 2008 and May 3, 2010, Mr. Jones subscribed to a Sirius Everything subscription plan and that, on or about December 27, 2009, Mr. Jones paid the U.S. Music Royalty Fee when he renewed his annual subscription to this plan at that time.  Sirius XM denies that Mr. Jones purchased a Sirius Everything Plus the Best of XM subscription plan.

217.    Denies that Mr. Jones purchased a Sirius Everything Plus Best of XM subscription plan, and that play-by-play broadcasts of SEC football games were eliminated from Sirius; and avers that Sirius XM is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 217 of the Complaint.

218.    Admits and avers that, on or about December 27, 2009, Mr. Jones paid $21.79 for the U.S. Music Royalty Fee when he renewed his annual subscription.

219.    Denies the allegations in paragraph 219.

220.    Admits and avers that Mr. Kader is a North Carolina resident.  Sirius XM further admits and avers that Mr. Kader had a free trial subscription to XM prior to the merger and, in October 2008 when his free trial subscription expired, he became an XM subscriber.  Sirius XM also admits and avers that, as of May 3, 2010, Mr. Kader was an XM subscriber.

221.    Admits the allegations in paragraph 221 of the Complaint.

222.    Admits and avers that, in November 2009, Mr. Kader received a free three-month XM trial subscription when he purchased a new Toyota and that, in January 2010 after the trial subscription expired, he subscribed for one year to a XM Everything plan.

223.    Denies the allegations in paragraph 223 of the Complaint.

224.    Admits and avers that Mr. Lucas is a Washington resident and that, as of May 3, 2010, he was a Sirius subscriber.

225.    Admits and avers that, on or about May 30, 2009, Mr. Lucas subscribed for one year to a Sirius Everything plan.

226.    Avers that, on or about June 2, 2010, Mr. Lucas renewed his Sirius Everything subscription for one year, using a promotional offer in which he received three months free, and was charged $17.83 (or $1.98 per month) for the U.S. Music Royalty Fee for the nine paid months of the subscription.

227.    Denies the allegations in paragraph 227 of the Complaint.

228.    Admits and avers that Mr. Nathan is an Illinois resident and that, as of May 3, 2010, he was an XM subscriber and that he has been an XM subscriber since 2004.

229.    Admits and avers that Mr. Nathan has two XM Everything subscription plans and that he receives a multi-receiver discount rate on the second subscription.  Sirius XM further admits and avers that, beginning in February 2010, Mr. Nathan subscribed to XM's premium streaming internet service.

230.    Admits and avers that, on or about February 10, 2010, Mr. Nathan renewed his primary subscription plan for two years for $245.00 and paid the $56.81 fee for a two year XM high-speed internet subscription.

231.    Admits and avers that, on or about February 11, 2010, Mr. Nathan renewed his second subscription plan for two years and received a multi-receiver discount.

232.    Admits and avers that, on or about February 10, 2010, Mr. Nathan subscribed for two years to XM's premium internet service and paid $56.81 for this service.  Sirius XM further admits and avers that, prior to February 10, 2010, Mr. Nathan did not receive XM's premium internet service, but did receive free internet access to XM.

233.    Admits and avers that, when Mr. Nathan renewed his second subscription plan in February 2010, the discounted multi-receiver price was $8.99 per month.

234.    Admits and avers that, at the time Mr. Nathan renewed his primary and second radio subscription plans in February 2010, he was charged and paid the U.S. Music Royalty Fee on each two-year subscription.

235.    Denies the allegations in paragraph 235 of the Complaint.

236.    Admits and avers that Mr. Sacchetta is a Pennsylvania resident and that, as of May 3, 2010, he was a Sirius subscriber and that he was a Sirius subscriber prior to the merger.

237.    Admits and avers that Mr. Sacchetta has three Sirius Everything subscription plans and that he receives a multi-radio discount on the subscription plans for his second and third radios.  Sirius XM further admits and avers that, as of May 3, 2010, two of the plans are two-year subscriptions and the third is a one-year subscription.  Sirius XM also admits and avers that, when Mr. Sacchetta renewed his primary plan for two years in December 2009, he was charged and paid the U.S. Music Royalty Fee.  Sirius XM further admits and avers that, when Mr. Sacchetta renewed the subscription plans on his second and third radios in April 2009 and May 2009, respectively, the discounted multi-radio price was $8.99 per month.

238.    Denies the allegations in paragraph 238 of the Complaint.

239.    Denies the allegations in paragraph 239 of the Complaint.

240.    Admits and avers that Mr. Salyer is a South Carolina resident and that, as of May 3, 2010, he was an XM subscriber and that he was an XM subscriber prior to the merger.

241.    Admits and avers that, in July 2007, Mr. Sayler purchased a four-year subscription plan.

242.    Avers that, after the merger, the XM channel previously known as "XM Comedy" was renamed "Raw Dog Comedy," the XM channel previously known as "The System" was retired, but its programming was moved to the XM Channel currently known as "Electronic Area," and the XM Channel previously known as "Soul Street" was renamed "SoulTown"; and denies the remaining allegations in paragraph 242 of the Complaint.

243.    Avers that Sirius XM is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 243 of the Complaint.

244.    Denies the allegations in paragraph 244 of the Complaint.

245.    Admits and avers that Ms. Stanaj is a Michigan resident and that, as of May 3, 2010, she was a Sirius subscriber and that she was a Sirius subscriber prior to the merger.

246.    Admits and avers that, on or about July 24, 2008 and February 11, 2010, Ms. Stanaj renewed her Sirius Everything subscription plan for 18 months and that the base rate for each renewal was $213.66.

247.    Avers that Sirius XM is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 247 of the Complaint.

248.    Admits and avers that, on or about February 11, 2010, Ms. Stanaj paid $32.69 for the U.S. Music Royalty Fee when she renewed her Sirius Everything subscription plan for 18 months.

249.    Denies the allegations in paragraph 249 of the Complaint.

250.    Admits and avers that Ms. Stanfield is a Kansas resident and that, as of May 3, 2010, she was an XM subscriber.  Sirius XM further admits and avers that Ms. Stanfield started a free trial subscription with XM on or about July 30, 2008 and a second free trial subscription with XM on or about November 24, 2008.  Sirius XM also admits and avers that Ms. Stanfield

subscribed to an XM Everything plan on or about January 30, 2009 for her primary radio and, on or about February 24, 2009, for her second radio.  Sirius XM avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegation respecting Mr. Stanfield's residence and denies that, as of May 3, 2010, Mr. Stanfield subscribed to XM.

251.    Admits and avers that Ms. Stanfield has two XM Everything subscription plans and that, as of May 3, 2010, she paid a base rate of $38.85 for her primary radio and a base rate of $26.97 for her second radio each time she renewed those subscription plans; denies the remaining allegations of paragraph 251 of the Complaint.

252.    Admits and avers that, between August 1, 2009 and May 3, 2010, Ms. Stanfield was charged and paid the U.S. Music Royalty Fee each time she renewed her subscriptions; and denies the remaining allegations of paragraph 252 of the Complaint.

253.    Denies the allegations in paragraph 253 of the Complaint.

254.    Admits and avers that Mr. Stasiukevicius is a Massachusetts resident and that, as of May 3, 2010, he was an XM subscriber and that he was an XM subscriber prior to the merger.

255.    Admits and avers that Mr. Stasiukevicius has three subscription plans with XM (two XM Everything Plus Best of Sirius plans and one XM Everything plan), which, as of May 3, 2010, all have been renewed on an annual basis.  Sirius XM further admits and avers that Mr. Stasiukevicius is charged for only 11 months of service on each plan.  Sirius XM also admits and avers that, on or about August 18, 2009, Mr. Stasiukevicius was charged and paid the U.S. Music Royalty Fee on his XM Everything plan and that, on or about March 10, 2010, he was charged and paid the U.S. Music Royalty Fee on one of his XM Everything Plus the Best of Sirius plans when he renewed his subscriptions for those two plans for another year.

256.    Admits and avers that when Mr. Stasiukevicius renewed his two multi-radio annual subscription plans in April 2009 and August 2009, the discounted multi-radio base price on each subscription was $8.99 per month.

257.    Admits and avers that, on or about August 18, 2009, Mr. Stasiukevicius was charged and paid the U.S. Music Royalty Fee of $.97 per month (a total of $10.68 for 11 months) when he renewed his second annual multi-radio subscription plan.

258.    Admits and avers that, on or about March 10, 2010, Mr. Stasiukevicius was charged and paid the U.S. Music Royalty Fee of $1.98 per month (a total of $21.79 for 11 months) when he renewed his primary subscription plan.

259.    Admits the allegations in paragraph 259 of the Complaint.

260.    Denies the allegations in paragraph 260 of the Complaint.

261.    Admits and avers that Mr. Stave is a Maryland resident and that, as of May 3, 2010, he was a Sirius subscriber and that he was a Sirius subscriber prior to the merger.

262.    Admits and avers that Mr. Stave subscribed to Sirius in October 2005 and added a second radio subscription in December 2006.  Sirius XM further admits and avers that, as of May 3, 2010, Mr. Stave has two Sirius Everything subscription plans and that the base rate for a primary Sirius Everything plan is $12.95 per month.  Sirius XM avers that it is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 262.

263.    Admits the allegations in paragraph 263 of the Complaint.

264.    Denies the allegations in paragraph 264 of the Complaint.

265.    Admits and avers that Ms. Tomassini and Mr. Leyba are Arizona residents and that, as of May 3, 2010, they were XM subscribers and that they were XM subscribers prior to

the merger. Sirius XM avers that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 265 of the Complaint.

266.     Admits and avers that, during certain time periods between 2005 and May 3, 2010, Mr. Leyba had two XM subscriptions and that Ms. Tomassini had one XM subscription. Sirius XM further admits and avers that Ms. Tomassini has subscribed to a XM Everything plan with the XM traffic navigation service. Sirius XM also admits and avers that Mr. Leyba has subscribed to the XM Everything plan.

267.     Denies that Ms. Tomassini renews her XM subscription on a monthly basis. Sirius XM admits and avers that, between August 2009 and May 3, 2010, Mr. Leyba renewed an XM Everything plan on a monthly basis and paid a base rate of $12.95 and a U.S. Music Royalty Fee of $1.98 each time he renewed this subscription.

268.     Denies the allegations in paragraph 268 of the Complaint.

269.     Admits that plaintiffs purport to bring this action as a class action under Federal Rule of Civil Procedure 23, denies that this action may be maintained as a class action, and otherwise denies the allegations in paragraph 269 of the Complaint.

270.     Admit that the persons alleged in paragraph 270 of the Complaint should be excluded from any Class in this action, and denies that this action may be maintained as a class action.

271.     Denies the allegations of paragraph 271 of the Complaint.

272.     Denies the allegations of paragraph 272 of the Complaint.

273.     Admits the second sentence of paragraph 273 of the Complaint; avers that the first sentence of paragraph 273 states conclusions of law to which no response is required; but to the

extent a response may be required, denies the allegations in the first sentence of paragraph 273; and denies the remaining allegations in paragraph 273.

274.    Avers that paragraph 274 of the Complaint, including all subparagraphs, state conclusions of law to which no response is required; but to the extent a response may be required, denies the allegations in paragraph 274, including all subparagraphs.

275.    Denies the allegations of paragraph 275 of the Complaint.

276.    Denies the allegations of paragraph 276 of the Complaint.

277.    Denies the allegations of paragraph 277 of the Complaint.

278.    Denies the allegations of paragraph 278 of the Complaint.

279.    Denies the allegations of paragraph 279 of the Complaint.

280.    Sirius XM repeats and realleges its responses to paragraphs 1-279 of the Complaint as if fully set forth herein.

281.    Denies the allegations of paragraph 281 of the Complaint.

282.    Admits and avers that the merger of a subsidiary of Sirius Satellite Radio Inc. with and into XM Satellite Radio Holdings on or about July 28, 2008 was a stock acquisition; and denies the remaining allegations in paragraph 282 of the Complaint.

283.    Denies the allegations of paragraph 283 of the Complaint.

284.    Denies the allegations of paragraph 284 of the Complaint.

285.    Denies the allegations of paragraph 285 of the Complaint.

286.    Denies the allegations of paragraph 286 of the Complaint.

287.    Denies the allegations of paragraph 287 of the Complaint.

288.    Sirius XM repeats and realleges its responses to paragraphs 1-287 of the Complaint as if fully set forth herein.

289.    Denies the allegations in paragraph 289 of the Complaint.

290.    Denies the allegations of paragraph 290 of the Complaint.

291.    Denies the allegations of paragraph 291 of the Complaint.

292.    Denies the allegations of paragraph 292 of the Complaint.

293.    Denies the allegations of paragraph 293 of the Complaint.

294.    Denies the allegations of paragraph 294 of the Complaint.

295.    Denies the allegations of paragraph 295 of the Complaint.

296.    Denies the allegations of paragraph 296 of the Complaint.

297.    Denies the allegations of paragraph 297 of the Complaint.

298.    Denies the allegations of paragraph 298 of the Complaint.

299.    Denies the allegations of paragraph 299 of the Complaint.

300.    Sirius XM repeats and realleges its responses to paragraphs 1-299 of the Complaint as if fully set forth herein.

301.    No response to paragraph 301 of the Complaint is required in light of the Court's November 17, 2010 Opinion & Order [Dkt. No. 74] dismissing Count III.

302.    No response to paragraph 302 of the Complaint is required in light of the Court's November 17, 2010 Opinion & Order [Dkt. No. 74] dismissing Count III.

303.    No response to paragraph 303 of the Complaint is required in light of the Court's November 17, 2010 Opinion & Order [Dkt. No. 74] dismissing Count III.

304.    No response to paragraph 304 of the Complaint is required in light of the Court's November 17, 2010 Opinion & Order [Dkt. No. 74] dismissing Count III.

305.    No response to paragraph 305 of the Complaint is required in light of the Court's November 17, 2010 Opinion & Order [Dkt. No. 74] dismissing Count III.

306.    No response to paragraph 306 of the Complaint is required in light of the Court's November 17, 2010 Opinion & Order [Dkt. No. 74] dismissing Count III.

307.    No response to paragraph 307 of the Complaint is required in light of the Court's November 17, 2010 Opinion & Order [Dkt. No. 74] dismissing Count III.

308.    Sirius XM repeats and realleges its responses to paragraphs 1-307 of the Complaint as if fully set forth herein.

309.    Denies the allegations of paragraph 309 of the Complaint.

310.    Denies the allegations in paragraph 310 of the Complaint.

311.    Avers that paragraph 311 of the Complaint states a conclusion of law to which no response is required; but to the extent a response may be required, denies the allegations in paragraph 311 of the Complaint.

312.    Denies the allegations of paragraph 312 of the Complaint.

313.    Denies the allegations of paragraph 313 of the Complaint.

314.    Avers that Sirius XM is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 314 of the Complaint.

315.    Denies the allegations in paragraph 315 of the Complaint.

316.    Denies the allegations in paragraph 316 of the Complaint.

317.    Avers that paragraph 317 of the Complaint states a conclusion of law to which no response is required.

318.    Avers that paragraph 318 of the Complaint states a conclusion of law to which no response is required; but to the extent a response may be required, denies that SDARS sold by Sirius XM are "goods" and denies that all putative members of the Class who paid the subject charges in California are "consumers."

319.    Denies the allegations of paragraph 319 of the Complaint.

320.    Denies the allegations in paragraph 320 of the Complaint.

321.    Denies the allegations in paragraph 321 of the Complaint.

322.    Denies the allegations in paragraph 322 of the Complaint.

323.    Admits that plaintiffs Dremak, Bonsignore, and Hewitt purported to provide notice pursuant to § 1782 of the CLRA; but denies that such notice was timely or sufficient.

324.    Denies that Sirius XM was required to respond to plaintiffs' defective and untimely notice and otherwise denies the allegations in paragraph 324 of the Complaint.

325.    Admits that plaintiffs purport to seek the alleged relief referenced in paragraph 325 of the Complaint; but denies that plaintiffs are entitled to any such relief.

326.    Denies the allegations in paragraph 326 of the Complaint.

327.    Denies the allegations in paragraph 327 of the Complaint.

328.    Denies the allegations of paragraph 328 of the Complaint.

329.    Avers that paragraph 329 of the Complaint states conclusions of law to which no response is required.

330.    Denies the allegations in paragraph 330 of the Complaint.

331.    Denies the allegations in paragraph 331 of the Complaint.

332.    Denies the allegations in paragraph 332 of the Complaint.

333.    Avers that paragraph 333 of the Complaint states conclusions of law to which no response is required.

334.    Denies the allegations in paragraph 334 of the Complaint.

335.    Denies the allegations in paragraph 335 of the Complaint.

336.    Denies the allegations in paragraph 336 of the Complaint.

337.     Admits that plaintiffs seek the relief referenced in paragraph 337 of the Complaint; but denies that plaintiffs are entitled to such relief.

338.     Denies the allegations of paragraph 338 of the Complaint.

339.     Avers that paragraph 339 of the Complaint states conclusions of law to which no response is required.

340.     Denies the allegations of paragraph 340 of the Complaint.

341.     Denies the allegations of paragraph 341 of the Complaint.

342.     Denies the allegations of paragraph 342 of the Complaint.

343.     Denies the allegations of paragraph 343 of the Complaint.

344.     Denies the allegations of paragraph 344 of the Complaint.

345.     Denies the allegations of paragraph 345 of the Complaint.

346.     Denies the allegations of paragraph 346 of the Complaint.

347.     Denies the allegations of paragraph 347 of the Complaint.

348.     Denies the allegations of paragraph 348 of the Complaint.

349.     Avers that paragraph 349 of the Complaint states conclusions of law to which no response is required.

350.     Avers that paragraph 349 of the Complaint states conclusions of law to which no response is required.

351.     Avers that paragraph 351 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies the allegations in paragraph 351 of the Complaint.

352.    Avers that paragraph 352 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies that all Kansas residents of the putative Class are "consumers" engaged in "consumer transactions."

353.    Denies the allegations of paragraph 353 of the Complaint.

354.    Denies the allegations of paragraph 354 of the Complaint.

355.    Avers that paragraph 355 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies that all Maine residents of the putative Class are "Persons."

356.    Avers that paragraph 356 of the Complaint state conclusions of law to which no response is required.

357.    Avers that paragraph 357 of the Complaint states conclusions of law to which no response is required.

358.    Denies the allegations of paragraphs 358 of the Complaint.

359.    Denies the allegations of paragraph 359 of the Complaint.

360.    Denies the allegations of paragraph 360 of the Complaint.

361.    Admits that Mr. Hill made a written demand for relief on or about March 23, 2010, and denies that Mr. Hill is entitled to any relief.

362.    Admits that Sirius XM did not respond to Mr. Hill's demand letter, denies that any response was required, and denies the remaining allegations of paragraph 362 of the Complaint.

363.    Denies the allegations in paragraph 363 of the Complaint.

364.     Avers that paragraph 364 of the Complaint states a legal conclusion to which no response is required; but to the extent a response may be required, denies that all Maryland residents of the putative Class are "consumers."

365.     Avers that paragraph 365 of the Complaint states conclusions of law to which no response is required.

366.     Denies the allegations of paragraphs 366 of the Complaint.

367.     Denies the allegations of paragraphs 367 of the Complaint.

368.     Avers that Sirius XM is without knowledge or information sufficient to form a belief about the truth of the allegations in the last sentence in paragraph 368 of the Complaint; and denies the remaining allegations in paragraph 368 of the Complaint.

369.     Denies the allegations of paragraphs 369 of the Complaint.

370.     Avers that paragraphs 370 of the Complaint states conclusions of law as to which no response is required.

371.     Denies the allegations of paragraph 371 of the Complaint.

372.     Denies the allegations of paragraph 372 of the Complaint.

373.     Denies the allegations of paragraph 373 of the Complaint.

374.     Denies the allegations of paragraph 374 of the Complaint.

375.     Denies the allegations of paragraph 375 of the Complaint.

376.     Denies the allegations of paragraph 376 of the Complaint.

377.     Admits that on March 22, 2010, plaintiff Stasiukevicius purported to provide notice under Massachusetts General Laws, ch. 93A, Section 9; but denies that such notice was timely or sufficient.

378.    Denies that Sirius XM was required to respond to plaintiffs' defective and untimely notice and otherwise denies the allegations in paragraph 378 of the Complaint.

379.    Denies the allegations of paragraph 379 of the Complaint.

380.    Denies the allegations of paragraph 380 of the Complaint.

381.    Denies the allegations of paragraph 381 of the Complaint.

382.    Denies the allegations of paragraph 382 of the Complaint.

383.    Denies the allegations of paragraph 383 of the Complaint.

384.    Avers that Sirius XM is without knowledge or information sufficient to form a belief about the truth of the allegations in the last sentence in paragraph 384 of the Complaint; and denies the remaining allegations in paragraph 384.

385.    Denies the allegations of paragraph 385 of the Complaint.

386.    Denies the allegations of paragraph 386 of the Complaint.

387.    Avers that paragraph 387 of the Complaint state conclusions of law to which no response is required; but to the extent a response may be required, denies that all members of the putative Class in New Hampshire are "persons."

388.    Avers that paragraph 388 of the Complaint state conclusions of law to which no response is required.

389.    Avers that paragraph 389 of the Complaint states conclusions of law to which no response is required.

390.    Denies the allegations of paragraph 390 of the Complaint.

391.    Denies the allegations of paragraph 391 of the Complaint.

392.    Denies the allegations of paragraph 392 of the Complaint.

393.    Denies the allegations of paragraph 393 of the Complaint.

394.    Avers that paragraph 394 of the Complaint states conclusions of law to which no response is required.

395.    Denies the allegations of paragraph 395 of the Complaint.

396.    Denies the allegations of paragraph 396 of the Complaint.

397.    Denies the allegations of paragraph 397 of the Complaint.

398.    Denies the allegations of paragraph 398 of the Complaint.

399.    Denies the allegations of paragraph 399 of the Complaint.

400.    Denies the allegations of paragraph 400 of the Complaint.

401.    Denies the allegations of paragraph 401 of the Complaint.

402.    Denies the allegations of paragraph 402 of the Complaint.

403.    Denies the allegations of paragraph 403 of the Complaint.

404.    Denies the allegations of paragraph 404 of the Complaint.

405.    Denies the allegations of paragraph 405 of the Complaint.

406.    Avers that paragraph 406 of the Complaint states conclusions of law to which no response is required.

407.    Denies the allegations of paragraph 407 of the Complaint.

408.    Denies the allegations of paragraph 408 of the Complaint.

409.    Avers that Sirius XM is without knowledge or information sufficient to form a belief about the truth of the allegations in the last sentence in paragraph 409 of the Complaint, and denies the remaining allegations in paragraph 409 of the Complaint.

410.    Denies the allegations of paragraph 410 of the Complaint.

411.    Denies the allegations of paragraph 411 of the Complaint.

412.    Avers that paragraph 412 of the Complaint states conclusions of law to which no response is required.

413.    Avers that paragraph 413 of the Complaint states conclusions of law to which no response is required.

414.    Avers that paragraph 414 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies the allegations in paragraph 414 of the Complaint.

415.    Avers that paragraph 415 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies that all members of the putative Class resident in Ohio are "consumers" who engaged in "consumer transactions."

416.    Denies the allegations of paragraph 416 of the Complaint.

417.    Denies the allegations of paragraph 417 of the Complaint.

418.    Denies the allegations of paragraph 418 of the Complaint.

419.    Denies the allegations of paragraph 419 of the Complaint.

420.    Denies the allegations of paragraph 420 of the Complaint.

421.    Avers that paragraph 421 of the Complaint states conclusions of law as to which no response is required.

422.    Avers that paragraph 422 of the Complaint states conclusions of law as to which no response is required.

423.    Avers that paragraph 423 of the Complaint states conclusions of law as to which no response is required.

424.    Denies the allegations of paragraph 424 of the Complaint.

425.    Denies the allegations of paragraph 425 of the Complaint.

426.     Avers that paragraph 426 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies that all putative members of the Class resident in Pennsylvania are "Persons."

427.     Denies the allegations of paragraph 427 of the Complaint.

428.     Avers that Sirius XM is without knowledge or information sufficient to form a belief about the truth of the allegations in the last sentence in paragraph 428 of the Complaint, and denies the remaining allegations in paragraph 428 of the Complaint.

429.     Denies the allegations of paragraph 429 of the Complaint.

430.     Denies the allegations of paragraph 430 of the Complaint.

431.     Denies the allegations of paragraph 431 of the Complaint.

432.     Denies the allegations of paragraph 432 of the Complaint.

433.     Denies the allegations of paragraph 433 of the Complaint.

434.     Denies the allegations of paragraph 434 of the Complaint.

435.     Avers that paragraph 435 of the Complaint states conclusions of law to which no response is required; but to the extent a response may be required, denies that all Washington residents of the putative Class are "Persons."

436.     Denies the allegations of paragraph 436 of the Complaint.

437.     Denies the allegations of paragraph 437 of the Complaint.

438.     Denies the allegations of paragraph 438 of the Complaint.

439.     Denies the allegations of paragraph 439 of the Complaint.

440.     Denies the allegations of paragraph 440 of the Complaint.

441.     Denies the allegations of paragraph 441 of the Complaint.

442.     Denies the allegations of paragraph 442 of the Complaint.

443.    Denies the allegations of paragraph 443 of the Complaint.

444.    Denies the allegations of paragraph 444 of the Complaint.

445.    Denies the allegations of paragraph 445 of the Complaint.

446.    Denies the allegations of paragraph 446 of the Complaint.

*       *       *

Sirius XM denies each and every allegation not admitted herein, denies all allegations contained in the titles and headings throughout the Complaint and in the lettered paragraphs under the heading "Prayer for Relief," and denies that plaintiffs are entitled to any judgment or relief of any kind.

Without assuming any burden of proof that it would not otherwise bear, Sirius XM also asserts the following additional defenses:

## SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the filed rate doctrine as a result of the FCC's acceptance and approval of Sirius' and XM's voluntary commitments in approving the merger and the FCC's approval of the combined company (Sirius XM) passing through certain cost increases incurred since the filing of the merger application. *See* Memorandum Opinion and Order and Report and Order, FCC 08-178, MB Docket No. 07-57, at 47-48 (July 25, 2008), available at <http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-08-178A1.pdf>.

## THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, because plaintiffs lack standing to bring or maintain this action.

*       *       *

Sirius XM reserves the right to assert additional defenses that become available during this action.

## PRAYER FOR RELIEF

WHEREFORE, Sirius XM respectfully requests that the Court:

(a)     Enter judgment against plaintiffs and in favor of Sirius XM;

(b)     Dismiss the Complaint in its entirety with prejudice;

(c)     Decline to award the relief requested in the Complaint;

(d)     Award Sirius XM its costs and attorney's fees incurred in the defense of this

action; and

(e)     Grant any further and different relief deemed necessary and reasonable in this

matter.

Dated:  December 1, 2010                    Respectfully submitted,


                                             /s/ Todd R. Geremia
                                            John M. Majoras
                                            JONES DAY
                                            51 Louisiana Avenue, N.W.
                                            Washington, DC  20001-2113
                                            (202) 879-3939


                                            Thomas Demitrack
                                            Brian K. Grube
                                            JONES DAY
                                            North Point
                                            901 Lakeside Avenue
                                            Cleveland, Ohio  44114-1190
                                            (216) 586-3939


                                            Todd R. Geremia (TG-4454)
                                            JONES DAY
                                            222 East 41st Street
                                            New York, New York 10017-6702
                                            (212) 326-3939


                                            *Counsel for Defendant Sirius XM Radio Inc.*