UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARL BLESSING ET AL.,                                    :
                                                                        :
      Plaintiffs,                                           :
                                                                        :      09 CV 10035 (HB)
         - against -                                       :
                                                                        :      OPINION &
SIRIUS XM RADIO INC.,                                 :      ORDER
                                                                        :
      Defendant.                                           :
------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

        This case involves a proposed class action based on the plaintiffs' purchase of satellite digital audio radio services ("SDARS") – commonly known as "satellite radio" – from the defendant in various locations throughout the United States. Plaintiffs claim that the July 28, 2008 merger of Sirius Satellite Radio, Inc. with XM Satellite Holdings, Inc. created a monopoly in the surviving company, Defendant Sirius XM Radio Inc. ("Defendant" or "Sirius XM"), and that Defendant has abused its monopoly power in violation of federal anti-trust laws. Plaintiffs also claim that Defendant deceived its customers in violation of state consumer protection laws. The plaintiffs now move to certify four classes under Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. The plaintiffs also move to be appointed as Class Representative, and to have Grant & Eisenhofer P.A., Milberg LLP, and Cook, Hall & Lampros, LLP as Class Counsel. For the following reasons, the plaintiffs' motion for class certification is GRANTED in part and DENIED in part.

## FACTUAL AND PROCEDURAL BACKGROUND

        On July 28, 2008, the only two providers of SDARS in the U.S., Sirius Satellite Radio, Inc. and XM Satellite Holdings, Inc. merged to form Defendant. The result of the merger has effectively eliminated Defendant's competition within the U.S. SDARS market. After the merger Defendant made upward adjustments to its pricing with respect to various services including: (i) increase in the monthly charge per additional radio for multi-radio subscribers from $6.99 per month to $8.99; (ii) initiating a $2.99 monthly fee for internet streaming; (iii) charging a "U.S. Music Royalty Fee" (the "Royalty Fee") between 10% and 28%; and (iv) increases in various administrative fees. Plaintiffs allege that these price increases are the result of Defendant's abuse of monopoly power, whereas Defendant alleges that the price increases simply reflect increases in the Defendant's costs and the higher quality of service provided.

        Plaintiffs filed several class action lawsuits against Sirius XM, which were joined in a consolidated amended complaint filed March 22, 2010. On May 3, 2010, Plaintiffs filed the Second Consolidated Amended Class Action Complaint ("SCAC"), which added eleven new plaintiffs. Plaintiffs allege four counts: (1) unlawful acquisition of monopoly power in violation of Clayton Act §

1

7; (2) unlawful acquisition of monopoly power in violation of Sherman Act § 2; (3) breach of contract and breach of implied covenant of good faith and fair dealing; and (4) breach of state consumer protection statutes.

On July 30, 2010, Plaintiffs moved to certify the following four classes[1]:

INJUNCTIVE RELIEF CLASS. All persons or entities who reside in the United States and who contracted with Sirius Satellite Radio, Inc., XM Satellite Radio Holdings, Inc., Sirius XM Radio Inc. or their affiliated entities for the provision of satellite digital audio radio services during the relevant period of July 28, 2008 through the present.[2]

FEDERAL ANTITRUST DAMAGE CLASS. All persons or entities who reside in the United States and who contracted with Sirius Satellite Radio, Inc., XM Satellite Radio Holdings, Inc., Sirius XM Radio Inc. or their affiliated entities for the provision of satellite digital audio radio services who, during the relevant period of July 29, 2008 through the present: (1) paid the U.S. Music Royalty Fee; (2) own and activated additional radios ("multi-radio subscribers") and paid the increased monthly charge of $8.99 per additional radio; or (3) did not pay to access the content available on the 32 bkps or 64 bkps connections on the Internet but are now paying the Internet access monthly charge of $2.99.[3]

BREACH OF CONTRACT CLASS. All persons or entities who reside in the United States and who contracted with Sirius Satellite Radio, Inc., XM Satellite Radio Holdings, Inc., Sirius XM Radio Inc. or their affiliated entities for the provision of satellite digital audio radio services who paid the U.S. Music Royalty Fee, during the relevant period of July 29, 2009 through the present.[4]

CONSUMER PROTECTION CLASS. All persons or entities who reside in Arizona, California, Florida, Illinois, Kansas, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, and Washington and who contracted with Sirius Satellite Radio, Inc., XM Satellite Radio Holdings, Inc., Sirius XM Radio Inc. or their affiliated entities for the provision of satellite digital audio radio services who paid the U.S. Music Royalty Fee, during the relevant period of July 29, 2009 through the present.[5]

(Pl. Notice of Motion for Class Cert. at 1-3.) On November 17, 2010, this Court dismissed Count 3 of the SCAC, rendering the motion to certify the Breach of Contract Class moot. The motion to certify the remaining three classes remains before this Court.

---

[1] Excluded from each Rule 23(b) class are: (1) all persons or entities that make a timely election to be excluded from the proposed Class; (2) Sirius XM and its legal representatives, officers, directors, assignees and successors; (3) governmental entities; and (4) the judges to whom this case is assigned and any immediate family members thereof.
[2] Plaintiffs move to certify the Injunctive Relief Class under Fed. R Civ. P. 23(b)(2).
[3] Plaintiffs move to certify the Federal Antitrust Damage Class under Fed. R Civ. P. 23(b)(3) for federal antitrust violations of Section 7 of the Clayton Act and Section 2 of the Sherman Act.
[4] Plaintiffs move to certify the Breach of Contract Class under Fed. R. Civ. P. 23(b)(3).
[5] Plaintiffs move to certify the Consumer Protection Class under Fed. R. Civ. P. 23(b)(3).

## DISCUSSION

### A. Legal Standard for Class Certification

To qualify for class certification, plaintiffs must prove by a preponderance of the evidence that the putative class meets the four threshold requirements of Rule 23(a) and must also establish that the class is maintainable under at least one of the subsections of Rule 23(b).  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  Courts must engage in a "rigorous analysis" to determine whether the Rule 23 requirements have been met.  *In re Initial Public Offerings Sec. Litig.*, 472 F.3d 24, 33 (2d Cir. 2006).  District courts may rely on affidavits, documents, and testimony to determine whether the Rule 23 requirements have been met.  *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 93 (S.D.N.Y. 2010) (citing *Bombardier*, 546 F.3d at 204).  During this determination, the resolution of any factual dispute is made only for the purposes of the class certification phase, and is not binding on the court with respect to the merits of the case.  *Id.* at n.17 (citing *In re IPO*, 471 F.3d at 41).

### B. Rule 23(a) Requirements

To qualify for class certification, plaintiffs must first prove four elements by a preponderance of the evidence: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation.  Fed. R. Civ. P. 23(a).  Rule 23 also contains an "implicit requirement that the proposed class be precise, objective and presently ascertainable."  *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006).  I will address these elements in turn.

#### 1. *Numerosity*

Rule 23(a)(1) requires that the "class [be] so numerous that joinder of all members is impracticable," (Fed. R. Civ. P. 23(a)(1)) or would be "inconvenient or difficult."  *J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 272 (S.D.N.Y. 2007).  In the Second Circuit a proposed class of 40 members presumptively satisfies numerosity.  *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde* Park, 47 F.3d 473, 483 (2d Cir. 1995).  Here, plaintiffs have demonstrated that as of March 31, 2010, Sirius XM had 18,944,199 subscribers, and that substantially all subscribers are members of the putative classes.  It would be highly inconvenient and nearly impossible to join this many individuals; hence, plaintiffs have established numerosity.

#### 2. *Commonality*

Rule 23(a)(2) requires that there must be "questions of law or fact common to the class."  Fed R. Civ. P. 23(a)(2).  "[T]he critical inquiry is whether the common questions are at the core of the cause of action alleged."  *Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003).  Even one common question may be sufficient to satisfy Rule 23(a)(2).  *Spagnola*, 264 F.R.D. at 93.

Plaintiffs raise several common questions of law and fact with respect to the Federal Antitrust Damage Class and Injunctive Relief Class, meeting the Rule 23(a) requirement.  The list includes defining the relevant product market and determining the impact of the merger on competition.  (Pl.

3

Mem. at 6.) These issues turn on an analysis of Defendant's actions without regard to an impact on any individual plaintiff, and as such are common questions among the putative classes.

Plaintiffs have also met the commonality requirement for the Consumer Protection Class. Plaintiffs raise two relevant questions in their brief: (1) "[w]hether, by providing false and deceptive information concerning the Royalty Fee, Sirius XM … violated various state consumer protection laws;" and (2) "[w]hether class members are entitled to damages as a result of … consumer protection statutory violations." (Pl. Mem. at 6.) The issue of whether Defendant's actions constitute false and deceptive information is a common question, not particular to any individual plaintiff. Although the issue of whether Defendant's actions were in violation of various state statutes depends on the language of the individual statutes, there are common questions of law among the statutes, sufficient to meet the commonality requirement.

3. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The thrust of the rule is that the class representative must have the "incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (internal quotation marks and citation omitted); *see also Spagnola*, 264 F.R.D. at 93 (Typicality requires that plaintiffs "prove that each member's claims arise from the same course of events and that each class member makes similar legal arguments to prove liability.") (citing *Steinberg*, 224 F.R.D. at 72); *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). The typicality requirement helps ensure that "the class representative is not subject to a unique defense which could potentially become the focus of the litigation." *Steinberg*, 224 F.R.D. at 72.

Plaintiffs have shown that the claims of the Federal Antitrust Damage Class and Injunctive Relief Class will be typical among all plaintiffs, namely violations of the antitrust statutes as a result of the merger. Defendant argues that the claims are not typical, largely because of differences between the circumstances of individual plaintiffs. Defendant points to the fact that some individuals have benefited from the merger because they prefer the new subscription packages offered post-merger. (Def. Mem. at 21.) However, individual subjective preferences with regard to post merger services is not an element of the cause of action that plaintiffs must prove. The plaintiffs will need to prove the same elements to establish a cause of action regardless of which plaintiff serves as class representative.

Plaintiffs have also shown that the claims urged by the Consumer Protection Class will be typical because the claims arise from the Defendant's allegedly deceptive calculation of Royalty Fees and all result in an ascertainable economic injury. Defendant argues that plaintiffs will be subject to individualized defenses because they will need to show reliance pursuant to some of the consumer protection statutes. (Def. Mem. at 23.) While the demonstration of reliance may in some instances

4

pose a problem under Rule 23(b)(3), the underlying course of events and legal theories involved are sufficiently typical between all members of the class for purposes of Rule 23(a)(3).

    4.  *Adequacy of Representation*

To show that absent class members are adequately represented, plaintiffs must prove that "the representative parties will fairly and adequately protect the interests of the class." *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 345 (S.D.N.Y. 2010); Fed. R. Civ. P. 23(a)(4).  A district court must inquire whether "1) plaintiff's interests are antagonistic to the interest[s] of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."[6]  *In re Flag Telecomm. Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  The purpose of the adequacy requirement is "to ferret out potential conflicts between representatives and other class members." *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 141 (S.D.N.Y. 2006) (emphasis and citation omitted).  "To defeat a motion for class certification, the conflict must be fundamental. *See in re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001), *abrogated on other grounds by*, *In re IPO*, 471 F.3d 24 (2d Cir. 2006).

Plaintiffs have shown that each class member has an interest in challenging the price increases imposed since the merger and preventing Defendant from further raising prices in the future. Defendant argues several conflicts exist between class members, none of which this Court finds to be fundamental.  Defendant argues that there are conflicts among class members because not all class members purchased the same packages nor value the services in the same way.  (Def. Mem. at 21.) This argument is unpersuasive because the subjective value of services purchased does not sufficiently raise a fundamental conflict with respect to whether the plaintiffs have an interest in reducing their costs.  Next, Defendant argues that "customers of a given subscription package will benefit from proving that the price of *their* post-merger subscription package increased more than for other subscribers." (Def. Mem. at 21.)  This argument is also unpersuasive because for plaintiffs to prevail, it may not be necessary that some class members experienced more significant price increases than others, but rather that any price increases were the result of post-merger abuses of monopoly power. Defendant also argues that subscribers in urban areas and rural areas will pose conflicting arguments with respect to  market power.  While of concern because plaintiffs from different geographic regions may depend on different litigation strategies, it is in the interest of all plaintiffs to seek to define the relative market narrowly and regardless of any individual's origin.  Therefore, none of the potential conflicts are so fundamental that the class representatives will be unable to fairly and adequately represent the class.

    5.  *Ascertainability*

In addition to the explicit requirements of Rule 23(a), courts have identified an implicit criteria in class certification motions that the "[c]lass membership must be readily identifiable such that a court

---

[6] Defendant's make no challenge to the qualification, experience and ability of the attorneys here.

5

can determine who is in the class and bound by its ruling without having to engage in numerous fact-intensive inquiries. *Spagnola*, 264 F.R.D. at 97 (citation omitted). A court need not ascertain the class members prior to certification, but the class members must be ascertainable at some stage of the proceeding. *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004). Here, plaintiffs have identified the class members as those who paid for specific services within a certain geographic region and after a certain date. This Court expects that such criteria will be sufficient to identify class members without numerous fact-intensive inquiries.

### C. Rule 23(b)(2) Requirements

Plaintiffs seek to certify the Injunctive Relief Class under Rule 23(b)(2). Under Rule 23(b), a class action may be maintained if in addition to meeting the requirements of 23(a), "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed R. Civ. P. 23(b)(2). The Second Circuit has held that 23(b)(2) certification may be allowed if (1) "the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed," and (2) "class treatment would be efficient and manageable." *Robinson v. Metro-North Commuter R. R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001) (internal quotation marks and citation omitted). In order to determine whether injunctive or declaratory relief is predominate, a district court should be comfortable with a finding that "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both *reasonably necessary and appropriate* were the plaintiffs to succeed on the merits." *Id* (emphasis added). Injunctive relief is reasonably necessary when the plaintiff succeeds on the merits but legal remedies are inadequate. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959).

Plaintiffs have not met their burden to show that the value of injunctive relief sought predominates over that of damages for purposes of class certification. Plaintiffs seek restitution, compensatory damages, treble damages, punitive damages and interest, as well as injunctive relief. (SCAC at 91-92.) It is reasonable to assume that all plaintiffs value damages as a remedy. It is less clear whether all plaintiffs value injunctive relief. Despite plaintiffs' assertion that a prohibition of future price increases or divestiture of the merged entity would be a meaningful remedy (Pl. Mem. at 19.), plaintiffs have not demonstrated that the value of an injunction is the predominant relief sought. At least one plaintiff has stated that he does not wish to seek divestiture if he is paid all damages to which he is entitled. (Nathan Dep. Aug. 5, 2010, at 116:10-16.) Absent a greater showing, this Court will not presume that all plaintiffs seek divestiture of the merged entity or an injunctive prescription over future prices, let alone value such relief more than damages. Furthermore, certifying this class for injunctive relief is not reasonably necessary because an injunction asserted by an individual plaintiff for a prohibition of future price increases or divestiture of the merged entity would have essentially the same impact on Defendant as an injunction asserted by a certified class, a concept more or less agreed

to in oral argument.  *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 261 (1972) ("the fact is that one injunction is as effective as 100, and, concomitantly, that 100 injunctions are no more effective than one").  Therefore, plaintiffs have failed to meet their burden to show that the value of injunctive relief sought predominates, and the motion to certify the Injunctive Relief Class is denied.

### D. Rule 23(b)(3) Requirements

Plaintiffs seek to certify the Federal Antitrust Damage Class and Consumer Protection Class under Rule 23(b)(3).  A class action is maintainable under Rule 23(b)(3) when "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Thus, to be certified as a Rule 23(b)(3) class, Plaintiffs bear the burden to prove two elements: predominance and superiority.

1. *Predominance*

The predominance inquiry serves to assess whether a class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  Common questions of law and fact predominate when issues applicable to the class as a whole are subject to generalized proof and predominate over issues that are subject to individualized proof.  *See Cordes & Co. Fin. Servs. Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007); *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001), *abrogated on other grounds by*, *In re IPO*, 471 F.3d 24 (2d Cir. 2006).  "This requirement is more demanding than the commonality requirement under Rule 23(a); thus a court must deny certification where individual issues of fact abound."  *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 100, 309 (S.D.N.Y. 2010); *see also In re MTBE*, 209 F.R.D. at 349.

    a.  Federal Antitrust Damage Class

With respect to the Federal Antitrust Damages Class, the primary issues involved are (1) whether there is a violation of federal antitrust law; (2) injury and causation; and (3) damages.  *See Cordes & Co. Fin. Servs. Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007).  Pursuant to Rule 23(b)(3), plaintiffs must demonstrate that they will prove each of these three elements by relying predominantly on class-wide proof.  *See In re Visa Check/MasterMoney*, 192 F.R.D. 68, 87 & n.20 (E.D.N.Y.), *aff'd*, 280 F.3d 124 (2d Cir. 2001).

     i.  Antitrust Violation

A violation of Clayton § 7 occurs when the effect of a merger "may be substantially to lessen competition, or to tend to create a monopoly."  *United States v. E.I. Du Pont de Nemours & Co.*, 353 U.S. 586, 595 (1957) (citation omitted).  Similarly, a violation of Sherman § 2 occurs when a person monopolizes or attempts to monopolize through "willful acquisition or maintenance of [monopoly] power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *Heerwagen v. Clear Channel Communications*, 435 F.3d 219, 226 (S.D.N.Y. 2006) (citation omitted).  Determining whether a plaintiff has violated either Clayton § 7 or

Sherman § 2 turns, in part, on the definition of the relevant market and whether the defendant's conduct with respect to that market was anticompetitive. *See, e.g.*, *Heerwagen*, 435 F.3d at 227-30. The relevant market includes a relevant product market and a relevant geographic market. *See Heerwagen,* 435 F.3d at 227.

Courts have held that defining the relevant product market in an antitrust lawsuit may be susceptible to class-wide proof because the definition affects all members of the putative class. *See, e.g.*, *In re Visa Check/MasterMoney*, 192 F.R.D. 68, 87 & n.20 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124 (2d Cir. 2001); *Jennings Oil Co. v. Mobil Oil Corp.*, 80 F.R.D. 124, 130 (S.D.N.Y. 1978). These determinations often involve fact intensive inquiries into the commercial realities faced by consumers to determine market definition, but such proof is not necessarily specific to each individual. *See, e.g., Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."); *In re Live Concert Antitrust Litigation*, 247 F.R.D. 98, 127 (C.D. Cal. 2007) ("when calculating the cross-elasticity of demand, economists examine the aggregate demand of consumers as represented by a demand curve rather than the purchasing decisions of an individual consumer").

Plaintiffs allege that in proving that the relevant market is SDARS, they will rely on documentary evidence concerning Defendant's product characteristics, consumer purchase data and Defendant's ability to sustain profits through price increases, none of which varies by individual class member. (Pl. Mem. at 10.) Plaintiffs also allege that in proving Defendant's anticompetitive conduct they will rely on the increase in market concentration, Defendant's post-merger price increases, and Defendant's plans to further increase prices in the future, none of which requires individualize proof. (Pl. Mem. at 11-12.) Defendant's have offered no proof to counter plaintiffs' use of class-wide proof in determining the relevant product market, and plaintiffs' assertions appear sufficient to meet their burden that issues involving class-wide proof predominate. Defendant's primary dispute lies with the proof required to establish the relevant geographic market.

Courts generally determine the relevant geographic market based on the "area of effective competition," that is "how far consumers will go to obtain the product or its substitute in response to a given price increase and how likely it is that a price increase for the product in a particular location will induce outside suppliers to enter that market and increase supply-side competition in that location." *Heerwagen,* 435 F.3d at 227. "In other words, the geographic market encompasses the geographic area to which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition." *Id.* at 228 (internal quotation marks and citation omitted).

Defendant's contend that to determine the relevant market the Court will require individualized proof and that here the alternatives available to plaintiffs will vary depending on the geographic location of each individual consumer. Defendant argues that subscribers in rural areas may have fewer

terrestrial radio stations available to them as a competitive alternative to satellite radio.[7] (Def. Mem. at 10-12.)

However, as plaintiffs point out, one would expect that if there were a meaningful difference in market power between regions, then prices for satellite radio would vary in different regions. In this case, the prices did not vary between urban and rural areas, either before or after the merger. (Pl. Reply at 3.) Although there may be a number of reasons why the providers of satellite radio deliberately maintained consistent prices despite varying degrees of competition in different geographical regions, Defendant has not presented those reasons to the Court. Even assuming *arguendo* that the presumed greater number of alternatives to satellite radio available to consumers in urban areas causes shifts in Defendant's market power depending on the region, Defendant has not provided any evidence to show that these shifts are significant or complex enough such that this issue will predominate over the issues that plaintiffs contend will be subject to generalized proof. Therefore, plaintiffs have met their burden to demonstrate that they can establish market power predominantly through class-wide proof.

### ii. Injury, Causation and Damages

In antitrust cases, a plaintiff must prove that it suffered an injury resulting from the alleged violation and that it was the type of injury that the antitrust laws were designed to prevent, i.e., an injury caused by the defendant's anticompetitive conduct. *See Cordes*, 502 F.3d at 106 (citation omitted); *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. at 115. At the class certification stage a plaintiff must also prove that it suffered some damage as a result from the injury; however, "that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification." *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. at 115-16 (citing *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008) (partially abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008))); *see also Spencer v. Hartford Financial Services Group, Inc.*, 256 F.R.D. 284, 305 (D. Conn. 2009) (citations omitted) ("The court's inquiry at the class certification stage is limited to determining whether, if individual damages will vary, there is nevertheless a possible and reasonable means of computing damages on a class-wide basis, for example by using a formula or statistical analysis.").

Plaintiffs allege that they will prove injury and causation using evidence of Defendant's uniform price increases including the multi-radio price increase, Royalty Fee, and Internet access charge. (Pl. Mem at 13.) Plaintiffs also allege they will prove damages through the use of expert testimony that will demonstrate a common formula to reasonably calculate damages for any class member. (Pl. Mem. at 16-17.)

---

[7] Although this argument may be deemed moot if the relevant product market is limited to SDARS because Defendant is the only provider of SDARS in any U.S. location, the definition of the relevant product market remains in debate at the present time and the "district court is not permitted to conduct a preliminary inquiry into the merits of plaintiff's case at the class certification stage." *Heerwagen*, 435 F.3d at 231. Thus, this Court must still determine at this stage whether issues of class-wide proof with respect to the relevant geographic market are likely to predominate.

Defendant makes three arguments, none of which this Court finds convincing.  First, Defendant argues that although its pricing changes may have been uniform, they affect members of the putative class differently because not all members subscribed to the same services, and thus individual proof would be required to show actual injury.  (Def. Mem. at 5.)  This Court finds no reason why this issue cannot be easily resolved by a simple formula, which plaintiffs opine will be presented through their expert.  Second, Defendant argues that proving the price increases would not have occurred but for the merger discounts other causes of price increases.  (Def. Mem. at 6-7.)  This argument has nothing to do with class-wide proof.  Third, Defendant argues that proving that the increases do not reflect enhanced levels of services requires individualized proof of the increased benefits to individual consumers.  (Def. Mem. at 7-9.)  Although the Defendant may assert a defense that the price increases reflected service enhancements, Defendant fails to persuade this Court why such a defense should turn on the subjective value of individual users.  Therefore, plaintiffs have met their burden that proving injury, causation and damages can be accomplished through class-wide proof.

          b.  Consumer Protection Class

Plaintiffs seek to certify a single consumer protection class comprised of consumers in 16 states under 20 consumer protection statutes.[8]  Courts have certified classes involving statutes from multiple states.  *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 96, 108 (D. Mass. 2008) (certifying one Medigap class under the laws of 24 different consumer protection statutes); *but see Lewis Tree Service, Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 237 (S.D.N.Y. 2002) (denying class certification where plaintiff's common law fraud claims would require analysis of the substantive law of every state).  Courts routinely deny class certification where "individual questions concerning the substantive laws of other states would overwhelm any potential common issues."  *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004) (collecting cases).

While all the statutes relied on by the plaintiffs require a deceptive act, the statutes vary with respect to whether they require intent to deceive and reliance on the deception.  For example, Arizona and New Jersey require that the deceptive act comes "… with intent that others rely upon such concealment, suppression or omission …" A.R.S. § 44-1522 (2010); N.J. Stat. § 56:8-2 (2010).  Similarly, Kansas requires that defendants have a requisite level of knowledge or willfulness with respect to various elements in the rule.  K.S.A. § 50-626 (2009).  Contrariwise, Florida, Maine, and Massachusetts simply prohibit, *inter alia*, unfair methods of competition, and the statutes make no mention of intent.  Fla. Stat. §501.204 (2010); 5 M.R.S. § 207 (2009); ALM GL ch. 93A, § 2 (2010).  Pennsylvania requires a showing of "justifiable reliance by the party defrauded upon the misrepresentation," *Piper v. Am. Nat'l Life Ins. Co.*, 228 F. Supp. 2d 553, 560 (M.D. Pa. 2002), whereas New York and Illinois do not.  *See Hershey Foods Corp. v. Voortman Cookies Ltd.*, 367 F. Supp. 2d 596, 600 n.2 (S.D.N.Y. 2005) ("a showing of reliance is not necessary to maintain a § 349

---

[8] Plaintiffs move in the alternative to certify subclasses for each of the 16 states for which plaintiffs assert a consumer protection claim.

claim"); *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 805 (2d Dist. 1993) ("[a] plaintiff alleging Consumer Fraud Act violations does not have to show actual reliance on the deceptive acts").[9]

Without cataloguing the differences in the laws of each statute, suffice it to say Defendant argues persuasively that the varying legal standards between these statutes should preclude certification. Put another way, there are enough uncommon issues of law among the state statutes that individual issues would predominate such that certifying one class under all state laws is improper.[10]

Defendant also argues that those statutes that require reliance necessarily require evidence subject to individualized proof that each member of the putative class relied on the website explanation in order to prove liability. Plaintiffs argue that the requirement of reliance under various state statutes does not defeat predominance for the proposed class because reliance is either irrelevant or presumed.

Courts have often held that reliance on a misrepresentation requires individualized proof. *See, e.g.*, *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008) ("Individualized proof is needed to overcome the possibility that a member of the purported class purchased [light cigarettes] for some reason other than the belief that [light cigarettes] were a healthier alternative-for example, if a [light cigarette] smoker was unaware of that representation, preferred the taste of [light cigarettes], or chose [light cigarettes] as an expression of personal style."); *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) ("a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed").

Plaintiffs argue that reliance is irrelevant here because subscribers were contractually bound to rely on Defendant's implementation of the Royalty Fees. (Pl. Mem. at 22.) Plaintiffs rely heavily on *In re Pharmaceutical Industry Average Wholesale Price Litigation*, where the U.S. District Court for the District of Massachusetts certified a class under the laws of 24 different consumer protection statutes. 252 F.R.D. 83, 108 (D. Mass. 2008) ("*AWP*"). In *AWP*, the plaintiffs alleged that pharmaceutical manufacturers grossly inflated the prices of branded physician-administered drugs by misstating the Average Wholesale Prices of these drugs in industry publications. *Id.* at 85-86. The court explained that the requirement that a plaintiff prove reliance did not preclude certification because third party payors were required by contract to pay all or part of a Medicare beneficiary's co-payment, which is statutorily based on the Average Wholesale Prices published in industry publications. *Id.* at 96-97. In the instant case, the Royalty Fees that Defendant charges to its customers are not governed by statute. Unlike in AWP, where third party payors were "required, by contract, to rely on the [Average Wholesale Prices] in reimbursing for the co-payments made by Medicare beneficiaries" (*id.* at 97), here satellite radio subscribers are not required by contract to rely

---

[9] In addition, although many states require "that the deceptive act relate[] to a material fact," *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 805 (2d Dist. 1993), the standards of materiality are not entirely consistent among the states.
[10] Plaintiff's alternative request to certify classes based on individual laws would likely alleviate this particular concern as each statute raises the same issues of law for all claims brought under that statute.

11

on the website explanation of how the Royalty Fees are calculated. Satellite radio subscribers may choose whether to renew or in some cases cancel their subscriptions if they do not wish to pay the Royalty Fee, but third party payors may not elect to stop covering their beneficiaries. Therefore, the issue of whether subscribers relied on the website explanation of Royalty Fees when determining whether to continue their subscriptions is necessary to the issue of whether to certify the class.

Plaintiffs also argue that reliance may be presumed on a class-wide basis because the misrepresentation is material or "the material nondisclosure is part of a common course of conduct." (Pl. Rely Mem. at 4.) (citing *Markocki v. Old Republic Nat. Title Ins. Co.*, 254 F.R.D. 242, 251 (E. D. Pa. 2008). In *Markocki v. Old Republic Nat. Title Ins. Co.*, the Eastern District of Pennsylvania certified a class action lawsuit where a plaintiff, a homeowner, sought relief from predatory lending practices against her title insurance company, which she alleged, among other counts, violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 254 F.R.D. 242, 245-46 (E. D. Pa. 2008). The court explained that "'[t]he presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate over questions affecting individual members.'" *Id.* at 251 (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985). Reliance may be presumed class-wide "when the material nondisclosure is part of a common course of conduct." *Id.* (citing *Hoxworth*, 980 F.2d at 924).[11] The court held that allegations that the defendant "provided no training or oversight to its title agents to assure that borrowers were charged the proper rates" supports allegations of an industry-wide practice, and "every consumer reasonably, and justifiably, expects the title insurer, the party with expertise and knowledge of the applicable rates, to charge the rate required by the Rate Manual and Pennsylvania law." *Id.* Despite plaintiff's argument, reliance in the instant case may not be presumed. It does not seem to be a reasonable assumption that subscribers of satellite radio place the same degree of reliance on the reasoning behind a price increase listed on the provider's website as do homeowners on their broker charging them the correct fee. Although it may be the case that the explanation of the Royalty Fee was material to decision of whether to continue the satellite radio subscription for *some* subscribers, this Court cannot find that the website explanation was necessarily material to a reasonable subscriber such as to hold that reliance shall be presumed.[12] Therefore, for at least the statutes that require reliance or other elements that are necessarily predicated on issues requiring individualized proof, such issues would predominate. *See McLaughlin*, 522 F.3d at 223; *Moore*, 306 F.3d at 1253.

---

[11] In stating this proposition, *Hoxworth* cited to *Affiliated Ute Citizens of Utah v. U. S.*, 406 U.S. 128, (1972). In that case the U.S. Supreme Court states, "[u]nder the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Id.* at 153-54 (citation omitted).

[12] Stated another way, following the chain of cases that gave rise to the rule relied on in *Markocki*, this Court cannot say that a reasonable subscriber of satellite radio might consider Defendant's explanation for its price increases listed on its website to be important in the decision of whether or not to maintain a subscription.

*Superiority*

To determine whether class treatment is the superior form of adjudication, a court may consider (1) the interest of the class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation already commenced by or against class members; (3) the desirability of concentrating the litigation in a particular forum; and (4) difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3). Class treatment is particularly appropriate where it allows large groups of claimants to bundle together common claims that would be too small to pursue individually. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 617 (1997); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004) (noting that class treatment is appropriate in "negative value cases," where the individual interest of each class member's interest in the litigation is less than the cost to maintain an individual action). When proving individual circumstances are relevant to success on the merits, class treatment is less likely to be superior to individual adjudication.

    a. Federal Antitrust Damage Class

Proceeding as a class action lawsuit in the antitrust portion of the dispute is the superior method of adjudication. Individuals have little interest in maintaining separate actions given that individual damages are relatively small compared to the costs of prosecuting an antitrust case. Concentrating antitrust litigation in this forum is desirable because Sirius XM is headquartered in New York, and it would be inefficient for many courts to hear, and for the Defendant to be subject to litigating, the same issues arising under the same facts and circumstances. The class action should be manageable because the issues to be litigated predominantly concern the Defendant's actions without regard to the subjective value of any individual plaintiff.

    b. Consumer Protection Class

Proceeding as a class action lawsuit for the consumer protection portion of the dispute is not the superior method of adjudication. Unlike the antitrust claims brought under federal law, there is less desirability to concentrate the state law claims in one forum. Additionally, managing the class action would pose problems where jurors would be required to analyze individual factors under several statutes with significant differences in each statute. Certifying distinct classes for each state under which plaintiffs have brought a claim would not alleviate the difficulties that the Court and jurors would face in managing the lawsuit.

The laws that require a showing of individual reliance present additional problems. Individuals have an interest in controlling the litigation where some may have terminated their subscriptions in light of the Royalty Fee and others have not. Moreover, it would be nearly impossible for jurors to determine whether each class member actually relied on Defendant's website explanation for the Royalty Fee when determining whether to continue the subscription. Therefore, given the relevant individual factors necessary to demonstrate violations of the consumer protection statutes, including

those statutes that require a showing of reliance and those that do not, proceeding as a class action is not the superior method of adjudication.

### E. Rule 23(g) Requirements

Rule 23(g) provides the test for appointing class counsel, and Defendant does not contest plaintiff's assertion that it is satisfied. In certifying class counsel, a court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g). "The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

On March 17, 2010, this Court appointed Grant & Eisenhofer P.A., Milberg LLP, and Cook, Hall & Lampros, LLP as Interim Class Counsel. Plaintiffs contend that these firms have extensive relevant and complimentary expertise in antitrust, class action and consumer protection litigation, and that they would coordinate and supervise the prosecution of the consolidated litigation. Defendant does not dispute these contentions. In consideration of other matter pertinent to counsel's ability to fairly and adequately represent the class, and in accordance with my previous opinions on this score, Grant & Eisenhofer P.A., Milberg LLP, and Cook, Hall & Lampros, LLP should ensure that the lawyers staffed on the case fairly reflect the class composition in terms of relevant race and gender metrics. *See In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y. 2007).

### CONCLUSION

For the foregoing reasons, the motion for class certification is GRANTED as to the federal antitrust class, and DENIED as to the injunctive relief class and consumer protection class, and DENIED as moot as to the breach of contract class. Plaintiffs are appointed Class Representative, and Grant & Eisenhofer P.A., Milberg LLP, and Cook, Hall & Lampros, LLP is appointed Class Counsel. The Clerk of the Court is instructed to close this motion.

SO ORDERED.

New York, New York
March 29, 2011

HAROLD BAER, JR.

United States District Judge

14