**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARL BLESSING, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                                                  Plaintiffs,<br><br>          -against-<br><br>SIRIUS XM RADIO INC.,<br><br>                                                  Defendant. | No. 09-cv-10035 (HB)(RLE) |

**DECLARATION OF SHELLY L. FRIEDLAND IN SUPPORT OF**
**(1) PLAINTIFFS' MOTION FOR FINAL APPROVAL**
**OF PROPOSED SETTLEMENT AND**
**(2) CLASS COUNSEL'S APPLICATION FOR AN**
**AWARD OF ATTORNEYS' FEES AND EXPENSES**

SHELLY L. FRIEDLAND hereby declares under penalty of perjury as follows:

1.        I am an associate with Grant & Eisenhofer P.A. ("Grant & Eisenhofer"), Co-Class

Counsel.  I make this declaration in support of Plaintiffs' motion for final approval of proposed

settlement resolving all claims of the Class, and Class Counsel's application for an award of

attorneys' fees and expenses.

2.        Attached hereto are copies of all objections received through July 14, 2011:

|     |                         |
|-----|-------------------------|
| 1.  | Paul & Cindi Armstrong  |
| 2.  | Vicki Bankhardt         |
| 3.  | Joe Beckner             |
| 4.  | Robert M. Berndsen      |
| 5.  | Lee Bishop              |
| 6.  | Richard Bleess          |
| 7.  | Ronnie Booher           |
| 8.  | Joel Broida             |
| 9.  | Dave Bruno              |
| 10. | Donald Y. Cain          |
| 11. | Cloyd E. Childers       |
| 12. | William L. Cockrell     |

1

13.    John Coon
14.    Monty Delluomo
15.    John D'Onofrio
16.    Mr. Dorsey
17.    Huey Edmondson
18.    Gary Fodor
19.    Kenneth W. Gannaway
20.    Gregory A. Gleason
21.    David T. Hamilton
22.    Thomas Himinez
23.    John Johnson
24.    David Jones
25.    Thomas P. Kelly, III
26.    Larry D. Kier
27.    Philip Kusnetz
28.    Marcia and Jack Lipari
29.    Jennifer Majewski
30.    Peggy and James Martin
31.    Vladimir Mikhelson
32.    Jeannine Miller
33.    Justin P. Nichols
34.    John Paseka
35.    Jeff Pasquino
36.    John Pavlica, Jr.
37.    Scott Phillips
38.    Linda L. Stavros
39.    Anthony P. Stone
40.    Douglas E. Strong
41.    Brian and Sharon Studt
42.    Kenneth Taylor
43.    Lange M. Thomas
44.    Bryan Tomlin
45.    Jerry A. Ugone
46.    Charlene Washington
47.    Oliver Watson
48.    David R. Wiedwald
49.    Janice Woolery


Done at New York, New York this 15th day of July, 2011.

_____ /s/ Shelly L. Friedland _____
Shelly L. Friedland

# EXHIBIT 1

1

*From the Desk of:*

Paul & Cindi Armstrong
4393 West Hilltop Lane
Franklin WI 53132-8242
Ph. (414) 835-0395

May 31, 2011

| Class Counsel | Court Clerk |
|---|---|
| James J. Sabella, Esq.<br>GRANT & EISENHOFER,<br>P.A.<br>485 Lexington Avenue<br>New York, NY 10017 | Clerk of the United States<br>District Court for the Southern<br>District of New York<br>500 Pearl Street<br>New York, NY 10007-1312 |

RE: proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB

To whom it may concern,

I object to the settlement. My basic rational is that if we have been overcharged it should come back as a reimbursement or credit for new services in addition to the sustaining of current prices. As it stands, it benefits the company far more than the individual subscriber. It is perceived as a rather contrived way of keeping subscribers for Sirius XM as well as benefiting lawyers involved. I will be cancelling my subscription if this order goes through.

Signed,

Paul Armstrong

2

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

June 23, 2011

An objection to the proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB.

They make it very hard to cancel your services with Sirius, and then they call you for a long time to try to get you to come back. There is no way that many disgruntled people will deal with them at all ever again, and these are the people who should be compensated, not the ones that are hanging in there with them. I called the attorney general and reported their practices and it should be on file in Oregon.

Thank you for your time,
Vicki Bankhardt
940 Blaine Street
Woodburn, OR 97071
503-981-0239
Vickie L. Bankhardt



*Joe Beckner*
*105 Challenge Court, Foster City, CA 94404*
*Telephone: 650-573-5676 • e-mail: jbeckner@covad.net*

May 31, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Regarding: Proposed Settlement in Blessing v. Sirius XM Radio Inc.,
Civil Action No 09-CV-10035 HB

I object to this settlement because I think that the $13 million attorney fees are
excessive.

Regards,

Joe Beckner

4

May 26, 2011

*Blessing* vs. Sirius XM Radio, Inc.

Civil Action No. 09-CV-10035-HB

To Whom It May Concern:

As an XM subscriber since December, 2005, I object to the proposed settlement for the following reasons:

- The proposed time frame of December 31, 2011 for keeping the subscription cost at or below current rates is too short.
- The proposed settlement does not require Sirius XM to eliminate the $2.99 Internet access charge for any period of time.
- The proposed settlement does not require Sirius XM to eliminate the $1.98 U.S. Music Royalty Fee for any period of time.

I request the court consider the following changes to the settlement:

- Extend the time frame for keeping the subscription cost at or below current rates thru December 31, 2012.
- Require Sirius XM to eliminate the $2.99 Internet access charge thru December 31, 2012.
- Require Sirius XM to eliminate the $1.98 U.S. Music Royalty Fee thru December 31, 2012.

Thank You for your consideration.

Robert M. Berndsen

15519 Hickox Blvd.

Middleburg Hts, Ohio 44130

216-526-0560



Blessings v. Sirius XM Radio Inc., Civil Action No. 09-CV-10035 HB

To Whom It May Concern:

My name is Lee Bishop and I was a subscriber of XM Satellite Radio from early 2003 (approx Feb. ) until mid 2010. I'm stating in this letter that I do no agree with the proposed settlement between Sirius XM and Class Counsel in Blessings v. Sirius XM Radio Inc., Civil Action No. 09-CV-10035 HB.

When I started the units were expensive and we customers had to invest into the equipment in order to listen to the service. So, in real cost it would have been somewhere around $400 with car installation. And the subscription fee was $9.99 a month.

With my XM subscription I was granted one receiver ID for a unit and online streaming service through the internet that I could listen to while inside of my home due to my radio receiver being installed in my vehicle.

And over the next few years the rate eventually went up to $12 a month. But when Sirius took over the company they hiked up the rates again and before I stopped my service I was being billed $15 a month.

On top of that Sirius took away our online streaming ability unless we paid an additional $3 a month. So, that would have brought my overall cost to almost $20 a month. And why? Because they could do it.

After the Securities Exchange Commission (SEC) granted them permission to merge it created a monopoly in the satellite radio communications industry. Sirius lied to the SEC and the public by telling them that it would allow them to keep costs low and offer listeners a broader range of material for their subscriptions. Well, first off, it didn't keep costs low. They raised the rates. And then they cut back services in favor of Sirius' programming (ie: additional charges for things like online radio).

That disallowed us consumers from making a decision on which service we wanted to subscribe. There was no longer any free market competition to actually keep costs low with the services. They were granted free reign to do what they pleased.

When I called XM to first complain about my online services being taken away and the rates being raised, I was told by one of XM's staffers that after the merger they were forced to adopt Sirius' policies and with that they had to raise the rate and charge additional money for the online service because that's what Sirius was doing with their service.

How is that not a monopoly? They can now charge whatever they like to us customers and we have no recourse other than to stop the service that we had originally signed up for through another company that had a lower cost and a better service.

Lee Bishop   2611 College Ave. # 39  Conway, AR 72034

Blessings v. Sirius XM Radio Inc., Civil Action No. 09-CV-10035 HB

And now we read that this class-action lawsuit has done absolutely nothing. Instead of standing up for what is right, the attorneys have decided to "settle" to having Sirius pay them $13 million dollars to drop the suit.

I'm sorry, I may be from Arkansas, but that reeks of a shakedown. This class-action lawsuit was supposed to support the consumer base for having been taken advantage of by a monopoly but instead struck a deal that will ONLY benefit the attorneys involved in the lawsuit for a nice personal bonus of $13 million dollars.

Does that sound like justice? Is that what our legal system is based on? Is it based on justice and doing what is right or is it based on a payday for those involved in order to make this all just go away?

And what do the consumers get from this? A promise that Sirius won't raise the price of their service for the next six months? The privilege of not being charged a reactivation fee of their service for coming back to a higher price and less value? A free month of online radio streaming that used to be included in the service? That is missing the whole point.

There should be no additional charge for online streaming of radio through their web site or wireless applications. The cost should not be raised constantly. And Sirius shouldn't have been allowed to monopolize the industry. It would be better to have just allowed both companies foreclose.

We consumers shouldn't suffer for the very poor decisions made by the radio executives of a company that we didn't subscribe to. Sirius XM should be run just like any other company, with responsibility and accountability. Paying a radio host, Howard Stern, $500 million dollars for a five-year contract is not a good business investment. That was the sort of bad management that Sirius Radio had. XM Radio didn't make the decision.

So, why is it that the XM Radio subscribers have to pay for their errors by having our rates doubled? It's a company that we didn't support but now controls the market thanks to the SEC.

I do not agree with the terms of this agreement reached between Sirius XM and the class-action attorneys. It does nothing for the loyal customers of the former XM Radio. We were wronged and taken for a ride. And this venture only benefits the attorneys. This business venture of Sirius is anti-competitive and took away consumer choices. Our only choices left were to either pay $20 a month for a service we signed up for $9.99 or cancel the service all together.

Thank you for your time.

-Lee Bishop, former XM Radio subscriber for seven years.

Lee Bishop  2611 College Ave. # 39  Conway, AR 72034



This is a frivolous lawsuit.

If I think the rate(s) are too high for my satellite radio services I will disconnect the service.

The only ones making money here are the attorneys. They are taking up court time that could be use to settle legitimate cases. The attorneys and anyone else involved here should be ashamed of themselves. These are what I call Ambulance chasers, Scum bags. This case should be thrown out and let the ones who brought up these unfounded charges pay all their own expenses.

Richard Bleess
38067 S. Eagle Lake Rd.
Battle Lake, Mn. 56515

*Richard Bleess*   6-14-2011

218  864  0571

---

## If You Subscribed to Sirius, XM, or Sirius XM Radio
### You Could Get Benefits From a Class Action Settlement

Read this message carefully. Records show you subscribed to Sirius XM Radio. We are sending this notice to tell you about the proposed Settlement of a class action that may affect your legal rights. There is a class action lawsuit against Sirius XM concerning the July 29, 2008 merger that created Sirius XM. The lawsuit claims this merger violated federal antitrust laws and that Sirius XM raised its prices as a result of the merger. Sirius XM denies it did anything wrong.

**Who's Included?** You are included in the Class if you were a Sirius, XM, or Sirius XM subscriber anytime from July 29, 2008 to July 5, 2011 and you paid: (1) the U.S. Music Royalty Fee; or (2) a monthly multi-radio charge of $8.99; or (3) a $2.99 monthly Internet access charge if you previously did not pay to access Sirius XM's content over the Internet.

**What Does the Settlement Provide?** Under this proposed Settlement, Sirius XM has agreed it will not raise the price of its base subscription plan and certain other prices through the end of 2011. Additionally, subscribers with long term plans (excluding lifetime subscriptions) will be permitted to retain their plans at current rates before December 31, 2011. After approval of the Settlement, former subscribers will also be permitted to either (a) reconnect their satellite radio without paying a reactivation fee and receive one month of service at no cost; or (b) receive one month of Sirius XM Internet streaming service at no cost. The estimated value of the Settlement is $180 million. The Settlement does not provide for cash payments to the Class.

**How to Get Benefits?** Current subscribers scheduled to renew before December 31, 2011 do not need to do anything. Current subscribers who are scheduled to renew after December 31, 2011 and who want to restart their long term plan at current rates as well as former subscribers who want to reconnect service or receive streaming service should go to www.sirius.com/ssn/blessingsinteraction.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself from it. The deadline to exclude yourself is July 5, 2011. If you do not exclude yourself, you will release all claims against Sirius XM concerning any conduct arising out of, based on, or relating to the merger that created Sirius XM. If you stay in the Settlement Class, you may object to it by July 11, 2011. The detailed notice, available at the website or by calling the toll-free number, tells you how to exclude yourself or object. The Court will hold a hearing on August 8, 2011, to consider whether to approve the Settlement and a request by Class Counsel for attorneys' fees and costs up to $13 million, plus interest. You may appear at the hearing, but you don't have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing, but you don't have to.

For more information about the Settlement:   www.SatelliteRadioSuit.com   1-800-760-6247



Ronnie Booher
126 Castle Rd
Dalton, GA 30720
706-463-2465


Regarding:
Civil Action No 09-CV-10035
Blessing v. Sirius XM / Radio Inc.

There needs to be another objection added to this case.

I recently bought a new car with Sirius XM.  After a short time I sold that car and tried to transfer my life-time subscription to another vehicle with Sirius XM radio.  They told me that I could not transfer it from one radio to another.  The subscription had to stay with the original car that I bought.  I have transferred with XM Radio and have never had a problem, except a small $15 transfer fee.

Sirius XM Radio has proven to be a very dishonorable company.

I hope something can be done regarding this.

Regards,

Ronnie Booher





*Stephen B. Morris, APC*

*Morris and Associates*
*444 W. "C" Street, Suite 300*
*San Diego, CA 92101*
*Phone: (619) 239.1300*
*Fax: (619) 234.3672*
*morris@sandiegolegal.com*

June 28, 2011

James J. Sabella, Esq.
Grant & Eisenhofer, P.A.
485 Lexington Ave.
New York, NY 10017

Clerk of the United States
District Court for the Southern
District of New York
500 Pearl Street
New York, NY 10001-1312

> *Re:* **Blessing v Sirius XM Radio Inc.,**
> ***Civil Action No. 09-CV-10035***

Dear Sirs:

    I write on behalf of my client Joel Broida to object to the settlement in the above-referenced matter. The basis for the objection is that the scope of the release proposed in the settlement is overly broad, extending well beyond the issues in the *Blessings* case. And, in particular, as presently drafted, the settlement release would wipe out the claims being pursued by Mr. Broida against this same defendant in the United States District Court for the Southern District of California. A copy of the action entitled *Broida v Sirius XM Radio* is enclosed.

    I respectfully request an opportunity to be heard at the Fairness hearing scheduled for August 8, 2011. This letter shall thus serve as my Notice of Intention to Appear in *Blessing v Sirius XM Radio Inc.*, Civil Action No. 09-CV-10035 HB.

               Sincerely,

               Stephen B. Morris

Encl.

Stephen B. Morris (SB# 126192)
**MORRIS and ASSOCIATES**
444 West C Street, Suite 300
San Diego, California 92101
Tel: (619) 239-1300
Fax: (619) 234-3672

FILED

2011 JUN -3 PM 1: 34

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

JOEL BROIDA, an individual, on
behalf of himself, and on behalf of all
persons similarly situated,

                Plaintiff,

vs.

SIRIUS XM RADIO, INC.

                Defendant.

CASE NO. **11CV1219 LAB RBB**

**COMPLAINT FOR:**

1. **Breach of Contract**
2. **Unfair Business Practices**
3. **False Advertising**

**CLASS ACTION**

## I.   The Parties

1.   Plaintiff Joel Broida (Broida) is a citizen of Colorado and an individual customer of Defendant Sirius XM Radio, Inc. (Sirius XM), the successor in interest to Sirius Satellite Radio, Inc.(Sirius).

2.   Defendant Sirius XM is a Delaware Corporation with its principal place of business at 1221 Avenue of the Americas, 36th Floor, New York, New York. Sirius Satellite Radio, Inc. (Sirius) is a former Delaware corporation that merged on July 28, 2008 with XM Satellite Holdings, Inc. (XM), thereby forming Sirius XM.

## II.   Jurisdiction and Venue

3.   This action is a class action involving thousands of persons, a member of the plaintiff's class is a citizen of a state different from Defendant, and the

1  amount in controversy, in the aggregate, exceeds the sum of $5,000,000, exclusive

2  of interest and costs.

3      4.      The jurisdiction of this Court is based upon 28 U.S.C. 1331, 1332 (d)

4  and the Class Action Fairness Act.

5      5.      Venue is proper as defendant transacts business in this District and

6  throughout the United States.

7

8  **III.  Common Facts**

9      6.      Sirius XM is in the business of providing internet radio services.  In

10  connection therewith, Sirius XM bills its customers a monthly internet connectivity

11  charge, among other charges, and collects state and local taxes for and on behalf of

12  taxing authorities, based on the amounts collected.

13     7.      On or about, May 26, 2010, Plaintiff Broida purchased a two-year

14  "Family Friendly" Plan in reliance upon advertised rates offered by Sirius XM.

15  Specifically, Sirius XM advertised that persons purchasing a twenty four (24)

16  month plan would pay for only 19 months, i.e. receive "5 months free."  At the time

17  of this advertisement, Sirius XM charged $11.95 per month.  The two-year plan

18  should, therefor, have cost $227.05.  Instead, Sirius XM charged plaintiff and its

19  other customers $249.99 for the 24-month plan.

20

21  **IV.  The Internet Tax Fairness Act**

22     8.      In 1996 the United States Congress passed, and the President approved,

23  the Internet Tax Fairness Act (the "ITFA").  The ITFA, 47 U.S.C. § 151 (1998) as

24  amended, bars state and local government from imposing fees and taxes on internet

25  access.  "No State or political subdivision thereof shall impose any of the following

26  taxes during the period beginning November 1, 2003, and ending November 1,

27  2014: ...  (1) Taxes on Internet access."

28     9.      Under the Internet Tax Fairness Act the phrase "internet access" means

---

Broida v. Sirius XM                          2                            Complaint

1   "a service that enables users to connect to the Internet to access content,

2   information, or other services offered over the Internet;  (B) includes the purchase,

3   use or sale of telecommunications by a provider of a service described in

4   subparagraph (A) to the extent such telecommunications are purchased, used or

5   sold.-- (I) to provide such service; or (ii) to otherwise enable users to access

6   content, information or other services offered over the Internet[.]"

7   　　　10.   Despite the prohibition on taxation of internet access enacted by the

8   Internet Tax Fairness Act, Sirius XM charged, and continues to charge, their

9   customers fees and taxes based upon, in part, the cost of internet access.

10

11   **V.   Class allegations**

12   　　　11.   This action is thus brought, and may properly be maintained, as a class

13   action pursuant to the provisions of California Code of Civil Procedure Section 382

14   and Civil Code Section 1781(a) and Fed.R.Civ.P. 23.  Plaintiff brings this action on

15   behalf of himself and on behalf of a Class of all others similarly situated who,

16   within four (4) years prior to the date of filing of this action, entered into a contract

17   with Sirius XM for internet radio services.

18   　　　12.   The Class of persons for whose benefit this case is brought consists of

19   (1) all Sirius XM customers, past and present, who contracted for internet radio

20   services and were charged fees and/or taxes based upon the cost of internet access

21   and/or (2) all Sirius XM customers who purchased the 24 month Family Friendly

22   Plan and who paid more than $227.05 for that service at the time when Sirius

23   charged $11.95 per month and advertised such purchasers would receive "5 months

24   free."

25   　　　13.   Plaintiff's claims are typical of the claims of the Class because he and

26   all members of the putative Class have sustained damages as a result of (1) paying

27   fees and taxes based upon the cost for internet access and/or (2) signing up for a 24

28   month plan based upon the advertised promise of receiving "5 months free."

14.    There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including but not limited to the following:

- whether Sirius XM charged Plaintiff and the Class fees and taxes based upon the cost of internet access in violation of the Internet Tax Fairness Act;

- whether Sirius XM's actions violated California law;

- whether Sirius has been unjustly enriched by its retention of a portion of the tax;

- whether Sirius XM should be enjoined from collecting fees and taxes based upon the cost of internet access;

- whether Sirius XM should be required to seek a refund of the fees and taxes paid by its customers and to return any refund to Plaintiff and the members of the Class.

- whether Sirius XM falsely advertised the benefits of its 24 month Family Friendly Plan.

15.    All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

16.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has no claims antagonistic to those of the Class. Plaintiff has retained competent and experienced counsel in complex class action litigation. Counsel is committed to the vigorous prosecution of this action.

17.    The prosecution of separate actions by the Plaintiff and individual members of the Class against Sirius XM could create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

18.    A class action is superior to other methods for the fair and efficient adjudication of this controversy since the Class is so numerous that joinder of all members in a single action would be impracticable and the repetitive testimony of

1   each Class member at trial would be unnecessary and an inefficient use of judicial

2   resources. Since the practices engaged in are common to all members of the Class,

3   judicial economy would not be served by multiple actions with duplicative and

4   repetitive testimony. Furthermore, as the monetary injury suffered by individual

5   Class members may be relatively small, the expense and burden of individual

6   litigation would make it impossible for members of the Class to individually

7   redress the wrongs done to them.

8      19.     The expense and burden of litigation would substantially impair the

9   ability of the Class members to pursue individual cases to protect their rights. In

10   the absence of a class action, Sirius XM will retain the benefits of its wrongdoing

11   and will continue to collect fees and taxes improperly.

12      20.     The identification of the individual Class members may be effectuated

13   by reference to Defendant's records.

14      21.     Plaintiff is aware of no difficulty which will be encountered in the

15   management of this litigation which would preclude its maintenance as a class

16   action.

17

18   **VI.**   **Causes of Action**

19                  **FIRST CAUSE OF ACTION**

20                   **(Breach of Contract)**

21      22.     Plaintiff realleges and incorporates by reference paragraphs 1 through

22   21 inclusive, of this Complaint, as though set forth in full herein.

23      23.     Sirius XM and Plaintiff entered into a written contract.

24      24.     The written contract is a form contract used by Sirius XM with all its

25   customers similarly situated to Plaintiff.

26      25.     The contract between Sirius XM and Plaintiff permits Sirius XM to

27   charge for its services including internet access on a monthly basis and permits it to

28   charge Plaintiff for all applicable and legally due federal, state and local fees and/or

1 | taxes.

2     26.    The contract does not permit Sirius XM to charge for fees and taxes

3 that may not be calculated or billed based upon the cost of internet access.

4 Nevertheless, Plaintiff has been required to pay these unlawful charges.

5     27.    Despite the prohibition on state and local fees and taxes imposed by the

6 Internet Tax Fairness Act, Sirius XM charged Plaintiff fees and/or taxes based

7 upon the cost of his internet access.

8     28.    Furthermore, and with respect to those customers who purchased the

9 Family Friendly 24-month Plan, and who signed up for the plan at the time Sirius

10 XM advertised that it offered "5 months free," Sirius XM breached said contract by

11 charging those customers, including plaintiff, a higher than advertised rate. That is

12 to say, Sirius XM induced customers to enter into a contract based upon a material

13 mistake of fact, i.e. the price of the 24-month Family Friendly Plan.

14     29.    In doing the acts complained of herein, Sirius XM breached its

15 contractual obligations to Plaintiff and the putative Class causing him and the class

16 damages in an amount to be proven at the time of trial.

17

18                    **SECOND CAUSE OF ACTION**

19               **(Violation of Consumer Protection laws )**

20     30.    Plaintiff realleges and incorporates by reference paragraphs 1 through

21 29 inclusive, of this Complaint, as though set forth in full herein.

22     31.    In failing to inform the Plaintiffs and the Class that it intended to

23 charge them fees and taxes that were not due, and in collecting charges that are

24 unlawful, deceptive and/or unfair, and to the extent Sirius advertised programs at

25 rates not delivered, Sirius XM violated California Business and Professions Code

26 § 17200, as well as the applicable consumer protection laws of each of the other

27 states.

28     32.    In doing the acts complained of herein, Sirius XM has caused loss of

---

Case 3:11-cv-01215-LAB -RBB   Document 1   Filed 06/03/11   Page 7 of 10

1   money to Plaintiff and the members of the class in an amount to be proven at the

2   time of trial.

3

4   ### THIRD CAUSE OF ACTION

5   ### (False Advertising)

6   33.   Plaintiff realleges and incorporates by reference paragraphs 1 through

7   32 inclusive, of this Complaint, as though set forth in full herein.

8   34.   Sirius XM at all pertinent times herein intended to cause Plaintiff and

9   those similarly situated to rely upon its advertising materials and to induce them to

10   enter into contracts with Sirius XM based upon those materials. Said erroneous

11   advertising materials were uniform. By advertising that plan participants in the 24

12   month Family Friendly Plan would receive "5 months free," while simultaneously

13   charging those plan participants for more than 19 months, Sirius XM

14   misrepresented the true extent of its charges to Plaintiff and the class, collected

15   excessive charges, and damaged Plaintiff and the class in an amount to be proven at

16   the time of trial, all in violation of California Business and Professions Code

17   section 17500 and the applicable false advertising statutes of each of the states.

18   35.   At all times herein, Plaintiff and the class reasonably relied upon the

19   advertising materials generated by Sirius XM.

20

21   ### PRAYER

22   **WHEREFORE**, Plaintiff prays for relief as follows:

23

24   ### ON THE FIRST CAUSE OF ACTION

25   1.   For money damages;

26   2.   For attorney and paralegal fees;

27   3.   For prejudgment interest as allowed by law;

28   4.   For costs of suit incurred herein; and

---

Broida v. Sirius XM                    7                    Complaint

5. For such other relief as the Court deems just and proper.

## ON THE SECOND CAUSE OF ACTION

1. For disgorgement by Defendant of all amounts that have been obtained in connection with any of the deceptive, unfair and/or unlawful business practices alleged herein;

2. For restitution according to proof;

3. For attorney and paralegal fees;

4. For prejudgment interest as allowed by law;

5. For costs of suit incurred herein; and

6. For such other relief as the Court deems just and proper.

## ON THE THIRD CAUSE OF ACTION

1. For disgorgement by Defendant of all amounts that have been obtained in connection with any of the deceptive, unfair and/or unlawful business practices alleged herein;

2. For restitution according to proof;

3. For attorney and paralegal fees;

4. For prejudgment interest as allowed by law;

5. For costs of suit incurred herein; and

6. For such other relief as the Court deems just and proper.

Dated:   June 1, 2011                    MORRIS AND ASSOCIATES

                              by:   _Stephen Morris_
                                    Stephen B. Morris
                                    Attorney for Plaintiff

Broida v. Sirius XM                      8                           Complaint

9

1306 Cloquet Ave. PMB 208
Cloquet, MN 55720
May 27, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Sirs:

There is a gross injustice being done in the case of

**Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB.**

I get a month free and the attorneys get **$13 million** PLUS interest PLUS fees and expenses?

Greedy attorneys who milk the legal system is just one of the reasons that products and services are so expensive. The attorney's settlement is grossly excessive.

I am NOT objecting to the small "settlement" that I may get nor am I requesting a reply.

Sincerely,

Dave Bruno
218 380-1052

10

Donald Y. Cain
46011 Gold Place Road
St. Amant, LA 70774
July 5, 2011

Clerk of the United States District Court
   for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

James J. Sabella, Esq.
GRANT & EISENHOFER, P. A.
485 Lexington Avenue
New York, NY 10017

Subject: Proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No. 09-CV-10035 HB

Please be advised that, in response to an e-mail dated May 26, 2011 received as a current SiriusXM subscriber and member of the Class in the subject action, I am adamantly opposed to, and object to, the subject proposed settlement for the following reasons.

1.  The proposed settlement does not address, nor does it afford the Court an opportunity to address, the fundamental question of whether the merger of XM Satellite Radio and Sirius Satellite Radio is a violation of United States antitrust laws, or not.  After just a cursory review of the current United States antitrust laws, it is clear that this merger has, in fact, created a monopoly, in the field of satellite radio audio commercial broadcasting, without regulatory oversight in the all important areas of service rates, and service quality.  I believe that the Federal Trade Commission and/or the Department of Justice should have initiated action to block this merger in 2008, on this basis alone, as I believe this is a clear violation of current United States antitrust law.  I also understand that congressional hearings were held on the subject of this merger prior to its conclusion, and apparently our congressional representatives also condoned this merger, to the disservice of their constituents who were Sirius or XM subscribers at the time, as well as their constituents who would become SiriusXM subscribers.  Apparently these congressional hearings and their results were not well-publicized at the time, so few subscribers had an opportunity to voice their opinions to their congressional representatives.

2.  The proposed settlement does not provide adequate legal or financial remedy to either past, present, or future subscribers to SiriusXM's services with regard to service rates or service quality.  This one-time proposed financial settlement, once the legal fees are deducted, and spread over the many millions of SiriusXM subscribers over the limited subscription times, is just token compensation to the individual subscriber, and provides no protection against future exorbitant, unjustified rate increases, or future degradation of programming and other quality

Clerk of the United States District Court for the Southern District of New York, et al

of service measurements. Even in my relatively short time as a subscriber, SiriusXM has demonstrated a propensity to increase their effective rates by any means possible, either through add-on fees such as the U. S. Music Royalty Fee and a charge for their internet feed (which once was included with the satellite feed subscription), or degradation of service such as eliminating the lifetime subscription service or reducing audio quality. SiriusXM has also demonstrated a propensity to ignore subscriber complaints regarding audio quality or arbitrary programming changes. SiriusXM customer service representatives appear to have a standard script that is followed with every subscriber complaint, which rarely, if ever, results in satisfactory resolution of a complaint. SiriusXM would surely argue that if you don't like their service or rates, then just terminate their service; however, that would be very similar, with the state of radio broadcasting today, to other monopolies such as electric utilities or telephone companies telling you the same thing. Fortunately, there is regulatory oversight over such monopolies -- SiriusXM has no such oversight. It has been my observation that, as the quantity and quality of terrestrial radio stations continues to decline in the United States, larger and larger geographical areas of rural, and perhaps even some urban, areas of North America have declining reliable access to any terrestrial radio station, much less any terrestrial radio stations with high quality programming. Based on that observation, SiriusXM satellite radio broadcasting will continue to enjoy the growth they have experienced over the past few years, but subscribers deserve protection from future unjustified rate increases, and future degradation of service. There is no open market competition to provide market pressure to keep rates fair, and service quality high.

3.   From their own 2010 Annual Report, SiriusXM acknowledges that they have agreements, with every major automobile manufacturer that markets automobiles in the United States, to provide satellite radio broadcast services to appropriate radio receivers installed in these manufacturer's vehicles. SiriusXM has quite literally "cornered the market" on satellite radio commercial broadcasting services in North America. This is still further evidence of their monopoly.

4.   SiriusXM is a very large company with a gross revenue of $2.82 Billion in 2010, according to their annual report. This proposed settlement is estimated have a value of $180 Million to the Class, but is based on "not increasing rates as planned", and providing certain short term rate "perks" to existing and former subscribers – no cash is involved. This appears to be a lot of "smoke and mirrors", and I fear the Class Representatives are being misled by plaintiffs' attorneys in recommending acceptance of this settlement. It would appear that the only significant financial benefit of this proposed settlement would accrue to SiriusXM, and plaintiff's attorneys.

5.   Like electric power generation, transmission, and distribution, and other utilities, satellite radio broadcasting is believed to be very capital intensive and competitive infrastructure would be duplicative, and perhaps this industry deserves to be monopolistic, but if so, it also deserves regulatory oversight for the protection of its subscribers. Otherwise, the only other fair action is to bring free market competition back into play through dissolution of SiriusXM into its two original separate companies to help insure fair rates, and quality service through

Clerk of the United States District Court for the Southern District of New York, et al

       competition. Because of the continuing degradation of terrestrial radio
       broadcasting in the United States, SiriusXM may have already grown itself into
       the role of a public utility. To some extent, this is evidenced by the fact that
       SiriusXM participates in the Federal Emergency Alert System, and as such, has an
       important, essential role in homeland security for the United States.

6.  SiriusXM's satellite broadcast technology most certainly stems from satellite
       technology development that was funded by US taxpayers over past years. While
       the exact details of SiriusXM's satellite infrastructure are not known, it is
       pertinent to this case to know if any of SiriusXM's satellites, from manufacture to
       orbital insertion, were subsidized in any way by the US government, and by
       implication US taxpayers. If so, isn't it time for US taxpayers to receive some
       return on that investment?

I trust that the Court will give due consideration to my objection to the proposed
settlement, before a ruling is issued.

Sincerely,

Donald Y. Cain

11

June 18, 2011


Clerk of the United States
District Court for the Southern
District of New York
500 Pearl Street
New York, NY 10007-1312

Dear Sir:

I object to the proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-
10035 HB.

The notice of he proposed settlement indicates that XM Radio will only be required to provide
customers or former customers with XM Radio service in various forms. That gives XM Radio a
cheap way out and does nothing for former customers that don't want XM Radio's service.

It took me over 6 months to stop my XM Radio service because of their methods and I certainly
would not want to go through that again.

Cloyd E. Childers
103 Franklin Street
South Point, OH 45680-9698

Phone: (740)377-2725    e-mail: cloydc@localnet.com

# 12

# *William L .Cockrell*

2107 Shadowbriar Dr, Houston, TX  77077
291-293-0842 Office - 281-667-3240 Fax
bill@billcockrell.com

May 25, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Clerk of the United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

I wish to add comments regarding the class action suit against SiriusXM.  I was not for
the merger in the beginning as I felt the end user would lose with services costing more.
This is truly what happened

My main issue is that I have cars with both Sirius and XM radios and have to pay the
base charge for each service before my other cars are added.  Since they are now
combined why can't I have a combined bill for all cars on Sirius and XM?  This cost an
extra $48 per year.  The free internet listening went away and now is charged at $2.99 per
month for an additional $36 per year times how many listening stations.

Another issue I had was that I purchased one of the portable units sold by XM and it did
not work well at all.  When I tried to cancel the service I was told that I had a 2 year
contract and had to pay for the full term.  I moved the account to another vehicle that was
added.  Later I sold a car that had Sirius and was told the same that the contract had to be
honored even though I no longer owned the vehicle.

Now because they are the only one with this service they can do almost anything they
want to do.  Maybe a part of this suit should be to sell off one of the services

Very truly yours

William L Cockrell

13

6/4/2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Re: Settlement in Blessing v. Sirius XM Radio Inc.,

Civil Action No 09-CV-10035 HB

Dear Sir:

I object to the settlement because the settlement statement I received indicates
that in part the settlement is based on "a monthly multi-radio charge of $8.99".
(Underline added.) I've paid more than that for a single radio. Attached are
copies of three of my last four statements, which reflect an effective monthly rate
of $11.87.

Please note that while I do own more than one Sirius or XM radio, I have not
activated an additional unit. This is because when I've periodically called to do
so, I've been advised that discounts for multi-units are not given/available, but
may be available at some future point in time.

In light of the above, the proposed settlement does not appear to be based on
reality; and does not appear to address / correct the situation going forward.

Respectfully,

*John Coon*

John Coon
8530 Amelia Dr
Charlotte, NC 28218
704-405-7723

cc: Clerk of the United States District
Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

# EVERYTHING WORTH LISTENING TO IS ON 

Date: November 8, 2010
Account No: 1-3282231183

**GET THE MOST OUT OF YOUR XM**

> **TELL US WHAT YOU LIKE**
> We'll send you timely updates about the programming that interests you.
> www.xmradio.com/whatilike

J. Coon
8530 Amelia Dr
Charlotte, NC 28212-9013

> **FIND CHANNELS YOU LOVE**
> Hear commercial-free music from nearly every genre, plus artist-dedicated channels and more. Find channels that play your favorites.
> www.xmradio.com/artistsearch

Dear J. Coon:

Thank you for being a loyal XM Radio listener. We hope you're enjoying all the great programming on XM. With over 170 channels, we bring you more of what you love – the most commercial-free music, plus your favorite sports, news, talk, comedy and entertainment.

> **CATCH THE MOST SPORTS COVERAGE**
> Every MLB® and NHL® game, NBA coverage, the PGA TOUR® Network and more. To get the NFL and NASCAR®, add The Best of SIRIUS to your subscription.
> www.xmradio.com/sirius

This is a reminder that your subscription will renew on December 25, 2010. To make sure that you have the best listening experience and enjoy XM uninterrupted, you are enrolled in our convenient automatic-renewal program. The VISA credit/debit card you provided will be charged the rate shown below, or *the then-current rate* based on your Plan and billing date. If you have more than one radio on your account, and they are on recurring annual or longer-term plans, we'll send you a similar reminder before those renew too, and your card will be charged for each subscription at *the then-current rate*. And, as always, if you wish to cancel, you can do so at any time. Just call Listener Care at 1-888-963-4324. To review your complete XM Customer Agreement, visit xmradio.com. The details of your recurring subscription are:

> **SEE WHAT'S ON**
> Need a schedule for your favorite program? Find it at
> www.xmradio.com/onxm

Radio ID: 97179000?
U.S. Music Royalty Fee: $21.79
Package: XM Everything

Plan: 1 Year
Subscription Fee*: $142.45

**MANAGE YOUR ACCOUNT**

Save up to 25%** with an Annual Savings Plan! Find the plan that's right for you, and call Listener Care at 1-888-963-4324 to switch today.

> To change your plan, upgrade your programming package, make a payment, or update your address, call XM Listener Care or visit
> www.xmradio.com/listenercare

|  |  |  |  |  |
|---|---|---|---|---|
| 1-Year Savings | $142.45 | $11.87/month | $12.95 | 8% |
| 2-Year Savings | $245.00 | $10.21/month | $65.80 | 21% |
| 3-Year Savings | $349.00 | $9.70/month | $117.20 | 25% |

Great News – Add The Best of SIRIUS to any XM Radio and enjoy 2 channels of Howard Stern, the NFL, NASCAR®, Martha Stewart and more for less than $4 a month. Call Listener Care today and get up to 9 months of XM Everything and The Best of SIRIUS FREE!**

> Emergency Alert System – XM Radio informs listeners about emergencies in a variety of ways. XM provides nationwide alerts from the Emergency Alert System (EAS) on all of its 170 channels and regional emergency alert/situational awareness information on its Emergency Alert Channel (XM 247). State and local emergency alert messages and information specific to 22 major metropolitan markets are provided on XM's 12 Instant Traffic, Weather & Alert channels (XM 210 - 222). XM does not provide state and local emergency alert messages on any of its other channels.

Thanks for listening.

## The XM Team

PS: We've enclosed an XM channel lineup card for you. You can always find the latest channel lineup and other programming information at xmradio.com/onxm.

\* Other fees and taxes will apply, and details above may not reflect recent account activity.

\*\* As compared to $12.95 monthly rate. Get (or savings equivalent of 3 free months when you sign up for a recurring 2-Year Annual Savings Plan, or the savings equivalent of 9 free months when you sign up for a recurring 3-Year Annual Savings Plan with this special offer.

© 2010 SIRIUS XM Radio Inc. SIRIUS, XM, and all related marks and logos are trademarks of SIRIUS XM Radio Inc. All other marks, channel names and logos are the property of their respective owners. All rights reserved.

60701

**xmradio.com**



BEYOND AM. BEYOND FM; XM.

# IMPORTANT INFORMATION

Date: November 13, 2009
Account No: 1-3282231163



## XM GIVES YOU MORE OF WHAT YOU LOVE

)) **Commercial-Free Music**

)) **More Sports**

)) **More Comedy**

)) **More News and Talk**

)) **Get all the details at xmradio.com/onxm**

J. Coon
8530 Amelia Dr
Charlotte, NC 28212-9013

Dear J. Coon:

Thank you for being a valued listener of XM Radio, and letting us entertain you at home, at work, in the car and on the go. We hope you're pleased with the unparalleled listening experience of XM's 170 different channels, delivering commercial-free music, unmatched sports coverage, news, talk, comedy and entertainment to suit every taste. Everything Worth Listening to Is Now on XM.

We want to provide you with a friendly reminder that your subscription will renew on 12/25/2009. To give you the best XM experience, we will provide you with continuous service through our auto-renewal program. With auto-renewal, you authorize that the VISA credit/debit card you provided will be charged the rate shown below, *or the then-current rate* based on your plan and billing date. In the future, when it's time to renew your subscription, we will notify you and charge your credit/debit card *the then-current rate* for your next subscription unless you call to cancel, which you can do at any time by calling Listener Care at 1-877-228-9058.

Your renewal plan is:
Radio ID: 9717900G                         Package: XM Everything
U.S. Music Royalty Fee*: $21.79
Subscription Plan: 1 Year Savings Plan @ $142.45 - a savings of 8%!*

Save up to 25%* with an Annual Savings Plan! Find the plan that's right for you, and call XM Listener Care at 1-877-228-9058 to switch today.

| Plan | Summary | Monthly Rate | Total Savings | Save % |
|------|---------|--------------|---------------|--------|
| 1-Year Savings | $142.45 | $11.87/month | $12.95 | 8% |
| 2-Year Savings | $245.00 | $10.21/month | $65.80 | 21% |
| 3-Year Savings | $349.00 | $9.70/month | $117.20 | 25% |

Great News - Get 2 channels of Howard Stern, the NFL, NASCAR® and Martha Stewart for less than $4 a month when you add The Best of SIRIUS to your existing XM radio and plan. Call XM Listener Care today and get up to 9 months of XM Everything and The Best of SIRIUS FREE!**

Thanks again. We appreciate your business.

## The XM Team

**PS: XM keeps getting better, with great new channels and programs. Check out your enclosed channel lineup card, and visit xmradio.com/onxm for more details.**

## MANAGE YOUR ACCOUNT

)) **Contact Listener Care:**
To change your plan, upgrade your programming package, make a payment, or update your address, call 1-877-228-9058, or visit xmradio.com/listenercare.

* As compared to $12.95 monthly rate. Other taxes and fees will apply. Package with music channels are charged a "U.S. Music Royalty Fee" per paid month of the Plan term. The typical fee is $1.98/month on prepaid subscriptions and $.97/month if eligible for multiple radio account. The fees will vary depending upon your Package and Plan term. For additional details, see our online FAQs at xmradio.com/usmusicroyalty.

** Get the value of 3 free months when you sign up for a 2-Year Annual Savings Plan with this special offer and the value of 9 free months when you sign up for a 3-Year Annual Savings Plan with this special offer.

00401

tear & save



BEYOND AM. BEYOND FM. XM.

# IMPORTANT INFORMATION

Date: November 19, 2007
Account No: 1-3282231163
Radio ID: 9717900G



## FIND NEW FAVORITES

J Coon
8530 Amelia Dr.
Charlotte, NC 28212-9013

Dear J Coon:

Thank you for being a valued member of the XM Nation®. And for giving us the opportunity to entertain you at home, at work, in the car and on the go.

We wanted to provide you with a friendly reminder that your subscription is set to automatically renew on 12/25/2007. Your renewal plan is:

**One-Year Plan @ $142.45 — a savings of 8%!**

If you'd like to save even more, here is a selection of plans to choose from. Remember—there are no obligations, so why not take advantage of the best savings possible.

| Plan | Amount | Effective Monthly | Total Savings | Savings |
|------|--------|-------------------|---------------|---------|
| Quarterly Plan | $38.85 | $12.95/month | $0.00 | 0% |
| 1-Year Plan | $142.45 | $11.87/month | $12.95 | 8% |
| 2-Year Plan | $271.95 | $11.33/month | $38.85 | 13% |
| 3-Year Plan | $359.64 | $9.99/month | $106.56 | 23% |

Because you're on an automatic credit/debit payment plan, we'll bill the same card you previously paid with—you don't have to do a thing. We just wanted to let you know that your card will be charged/debited within the next several weeks. However, if you'd like to use a different card or take advantage of greater savings plan, please contact XM Listener Care at 800-XM-RADIO.

Thanks again. We appreciate your business.

Sincerely,

**The XM Team**

P.S. We've included an updated channel line-up plus tips for finding new channels (to the right). We hope you'll use them to continue to get the most out of your service.

*As compared to $12.95 monthly rate. Taxes not included. Terms of XM's Customer Agreement apply.

### )) XM Exclusives:
Enjoy original shows and exclusive music series only available on XM, including Artist Confidential, Oprah & Friends™, Bob & Tom, and many more.
*www.xmradio.com/onlyonxm*

### )) This Week On XM:
Programming highlights and featured artists you can look forward to on XM.
*programming.xmradio.com*

### )) Listen Online For Free:
Listen online anywhere you have an internet connection at no extra charge—it's included with your subscription! And feel free to share your online log-in with friends and family too.
*xmro.xmradio.com*

### )) Find an Artist:
Find out what XM channels are your favorite artists or talk personalities.
*www.xmradio.com/artistsearch*

### )) Helpful Tip:
Once you've found your favorite channels, program them right into your radio using the preset buttons.

## MANAGE YOUR ACCOUNT

### )) Contact Listener Care:
To change your plan, get answers to billing questions, receive technical assistance or cancel service, contact us at 800-XM-RADIO (800-967-2346).

### )) Manage Your Account Online:
Update your personal information, add an addition to radio, make a payment and much more.
*store.xmradio.com*

tear & save

1-C

# 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL BLESSING, et al. on Behalf of                     )
Themselves and All Others Similarly situated,   )
                                                                       )
                              Plaintiffs,                        )
                                                                       )
vs.                                                                   )          No. 09-cv-10035 (HB)(RLE)
                                                                       )
SIRIUS XM RADIO, INC.,                                  )
                                                                       )
                              Defendant.                       )

## OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT

Class member Monty Delluomo ("Delluomo" or the "Objector") submits this
Objection ("Objection") to the Proposed Class Action Settlement in the above-captioned
class action (the "Class Action") filed against Sirius XM Radio, Inc. ("Sirius XM" or the
"Company"). Objector hereby gives notice of his intent to appear at the fairness hearing
scheduled for August 8, 2011 at 10:00am before the Honorable Harold Baer, Jr. to
present his objections.

I.      **The Objector.**

Objector Delluomo was a subscriber to Sirius satellite radio during the Class
Period. As such, Objector is a member of the proposed Class in this action.

II.     **The Settlement Should Not Be Approved.**

The Second Circuit has identified the following nine factors for the courts to
consider in determining whether to approve a class action settlement:

        (1) the complexity, expense and likely duration of the litigation;

        (2) the reaction of the class to the settlement;

        (3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Bezio v. General Electric Co.*, 655 F.Supp.2d 162, 166 (N.D.N.Y. 2009) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005)). In addition to the above factors, "[a] court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.2005).

As described below, the proposed settlement is not fair, reasonable or in the best interest of all those who will be affected by it for the reason that the relief offered in the settlement is inadequate and the attorney's fees requested by Plaintiffs' Counsel is excessive.

### a. The Settlement is not Fair or Reasonable or in the Best Interests of the Class.

The settlement offers the following relief:

1) Sirius XM will not raise its current rates until December 31, 2011;

2) Subscribers with long term plans can lock into current rates by renewing their subscriptions before December 31, 2011; and

3) Former subscribers can either reconnect without paying a reactivation fee and receive one month of basic service for free, or they can receive one month of

2

Sirius XM will impose the additional $2.00 per month price increase.

Additionally, it appears that this restriction only applies to the "Select", "Select Family Friendly", "Mostly Music", "News Sports and Talk" and "A La Carte" subscription packages. Sirius XM also offers "Premier", "All Access" and "Sirius XM All-In-One" packages. Presumably, this restriction does not apply to these packages, and so class members who subscribe to these packages receive nothing.

### ii. The Notice is vague

The Settlements contains purported relief to Class Members with long-term subscription plans. Those Class Members who are subscribers in long-term plans can lock in their current rates if the renew their subscriptions before December 31, 2011. However, the definition of a long-term plan is not defines, and is therefore unclear. Sirius has Quarterly, 1 Year, 2 Year and 3 Year plans. The Plans allow you to lock in a monthly fee for a set period of time. The Notice does not advise which of these plans constitute a "long term" plan, so Class Members do not know, based solely on this Notice, if they are entitled to this benefit. Or, due to the vagueness of the Notice, a Class Member may not realize that he is entitled to this "relief" and thus may not seek to lock in his rate.

### iii. The Settlement is a coupon settlement that provides no benefit.

In order to receive the benefit of locking in a lower price for a long term subscription, Class Members will need to renew their subscriptions, presumably locking themselves into another one, two or three years of service. If a customer is nearing the end of her term, and does not wish to renew, she receives no benefit at all. Similarly, Class members who do not have a long term plan receive nothing except five months

4

before their rates are raised.

People who have cancelled their subscriptions or failed to renew them can re-subscribe with no reactivation fee and receive either one free month of service, or can receive one free month of internet streamlining.   This presumes that individuals who have cancelled their service will wish to re-subscribe and pay the same rates they were paying when they cancelled, with the prospect of a $2.00 per month increase in five months. Additionally, for individuals who chose the option to receive one month of free internet streaming, Sirius XM already allows people who are not subscribers to receive 30 days of internet streaming free. Therefore, these individuals are not receiving anything that any new subscriber would receive. After the one free month, subscribers are charged $12.95 per month, for either monthly service.

The relief provided in this settlement is nothing more than a coupon settlement. Coupon settlements have been widely criticized as only providing illusory benefits to class members. There are many Class Members who will never update their subscription plan to lock in their current rate. Many more will never renew their subscriptions. This relief is therefore worth less than cash. *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("Our confidence in the fairness of the settlement is further undermined by the agreement's bias toward compensating class members with pre-paid Letter Express envelopes instead of cash. Pre-paid envelopes, like coupons, are a form of in-kind compensation."). The Court should treat the approval of a coupon settlement in a different way in that it "is to 'consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the settlement.'" *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d

5

1052, 1073 (C.D. Cal. 2010) (citing S.Rep. No. 109–14, at 31, *as reprinted in* 2005 U.S.C.C.A.N. 3, 31). The Plaintiffs have offered no evidence regarding the real monetary value of the settlement, and the likelihood that Class Members will either renew or reactivate their subscriptions. Determining the potential reactivation rate is especially important because "coupon settlements pose a particular risk of unfairness and unreasonableness because of the increased possibility that the benefits afforded to class members will never be realized, since class members are provided with a future discount on a product or service with which they were previously dissatisfied." *Radosti v. Envision EMI, LLC,* 717 F. Supp. 2d 37, 55 (D.D.C. 2010).

**III.    The Proposed Attorneys' Fees Are Excessive**

In considering awards of attorneys' fees and expenses in class action litigation, both the lodestar and the percentage of the fund methods are available to the Court. *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000). Under either method, the Court should be guided by the following criteria: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citing *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.,* 724 F.Supp. 160, 163 (S.D.N.Y. 1989)).

Application of the foregoing factors indicates that the requested fees and expenses are not fair or reasonable. Accordingly, the Court should not approve the agreed-upon amount of fees and expenses.

"[T]he starting point for [a] Court's determination of a just and adequate fee to be paid to class plaintiffs' counsel ... is the number of hours expended in prosecution of the

6

litigation, or the lodestar." *Union Carbide*, 724 F. Supp. at 163.  A "lodestar" calculation involves multiplying the number of hours expended by a reasonable hourly rate for each attorney's time. In using a lodestar calculation for determining fees, courts often multiply the lodestar amount by a risk premium factor (or "multiplier") based on the risk of recovery and other considerations, to arrive at a reasonable fee.  *See, e.g., Blum v. Stenson*, 465 U.S. 886 (1984).

Additionally, no common benefit fund has been established for the class, but the Plaintiffs claim that the estimated value to the Class is $180 million. This number is provided with little to no evidence to support it. The Plaintiffs' attorneys are seeking fees and expenses of up to $13 million. Therefore, the estimated percentage of the fund is 7.2%. None of the Class members will actually be receiving any cash, while the Plaintiffs attorneys will be receiving a nice payday.

Here, Plaintiff's Counsel have not disclosed the amount of time spent in this action. Thus, Objector cannot calculate the size of Plaintiff's Counsel's multiplier to determine whether it is reasonable. Further, because this is a coupon settlement, the estimated value to the Class should be based on the value of the coupons actually redeemed (i.e. the number of subscribers renewing their long term plans prior to December 31, 2011 or the number of previous subscribers renewing their subscriptions or using the free month of internet streaming). *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 266 (E.D.N.Y. 2009) ("Under CAFA, any fund against which attorney fees are measured or assessed that is based on the underlying value of coupons may only include those coupons that are redeemed.") Therefore, the estimated value of $180 million is grossly inflated, and Plaintiffs attorneys should provide evidence

as to the anticipated redemption rate so that their fee may be more properly compared to the value of the Settlement.

Dated:  July 8, 2011

Respectfully submitted,

Monty Delluomo
5617 North Classen
Oklahoma City, OK 73118
Telephone:  (405) 843-0400
Facsimile:  (405) 843-5005

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2011 I filed the foregoing document with the Clerk of Courts using the CM/ECF system which will send email notification of such filing to all counsel of record as reflected on the attached service roster. The foregoing document was also served via U.S. Mail, with postage prepaid thereon, to the following:

James J. Sabella, Esq.
Grant & Eisenhofer, P.A.
485 Lexington Avenue
New York, NY 10017

Monty Delluomo

9

# 15

July 5, 2011
**Objection to the Settlement (Blessing v. Sirius XM Radio)**

I am a current subscriber of Sirius XM Radio, having recently renewed my three-year subscription in April, 2011. The three-year subscription rate in the April, 2011 statement was almost 25% higher than my previous 3 year rate back in April of 2008. This new rate included a new entry of $43.36 for a U.S. Music Royalty Fee. I was appalled and outraged at such an increase – especially in these times of relatively low inflation (under 2%). When I talked to a representative, his attitude was "that's the rate; take it or leave it".

I do not like the settlement because it simply does nothing for me. I see no direct benefit to me in this settlement! If the merger of 2008 violated anti-trust laws and resulted in Sirius XM raising its prices, then I believe my three-year rate of April, 2011 is illegally high. Yet the settlement does nothing to reduce my illegally high subscription rate over the next three years. Is the $43.36 charge for the U.S. Music Royalty Fee legal? The initial E-Mail that I received seemed to indicate this fee was not lawful.

The fact that Sirius XM has agreed not to raise prices through the end of 2011 seemingly has no impact on the high cost of my three year subscription which began in March, 2011.

As evidence of the outrageous price increase by Sirius XM, I have submitted copies of the invoices for both of my three-year subscriptions. Note the new charge for a U.S. Music Royalty Fee on the 2011 billing.

John D'Onofrio

**John D'Onofrio**
**25105 Rubin**
**Warren, MI 48089**
**586-756-0173**



**PAYMENT NOTICE**

JOHN DONOFRIO
Page 1 of 1
Account Number: 1-305173236

JOHN DONOFRIO
25105 RUBIN RD
WARREN MI 48089-4660

| ACCOUNT NUMBER: | ONLINE USERNAME: | INVOICE NUMBER: | DUE DATE: |
|---|---|---|---|

**AMOUNT DUE:** $446.81

## ACCOUNT SUMMARY

| Description | Amount |
|---|---|
| XM Service | $401.45 |
| Radio Service Fees | $43.36 |
| Current Charges Subtotal | $444.81 |
| Invoice Fee | $2.00 |
| **Total Amount Due** | $446.81 |

### Service Detail for Radio ID Z5RY208T

| Date | Description | Charge |
|---|---|---|
| 03/22/11-03/22/14 | XM Everything 3 Year | $401.45 |
| 03/22/11-03/22/14 | U.S. Music Royalty Fee | $43.36 |
| | Total Current Charges | $444.81 |

*Renewed April 20, 2011. 3 Yr Term.*

## GET THE MOST OUT OF XM

- **Tell us what you like**
  Tell us your listening preferences and we'll send you timely email alerts about the programming that interests you.
  Visit xmradio.com/whatIlike

- **What's on?**
  Make xmradio.com/onxm your source for all the programming information you need. Channel lineups, game schedules, news about upcoming interviews and performances, even live clips – it's all here.

- **Special deals on our most popular radios**
  Add an additional radio to your account and listen to XM Radio almost anywhere – in your car, home, office or on the go. For special subscriber radio deals, visit xmradio.com/shop.

### SAVE $10

Switch to automatic credit card payment, and we'll credit **$10 to your XM account.** It's convenient, safe and easy – and you can save $10. Switch today!

Call Listener Care at **1-866-964-6668.**

## XCITING NEWS For John Donofrio



**ONE MONTH FREE!**

Switch to automatic credit card billing and get one month of XM service free!*

Call today and get set up in minutes: 1-866-553-5425
It's like getting paid to make your life easier!

*One-time credit of $12.95 will be issued to your account. Account must be in good standing.

Page 1 of 1

Statement Date: 03/23/2008

**XM Account Number:**
1-305173236

Due Date: 04/12/2008

| Amount Due | $359.63 |
|---|---|

### ACCOUNT SUMMARY FOR BILLING PERIOD 02/26/2008 - 03/23/2008

| Date | Description | Amount |
|---|---|---|
| | Previous Balance | $0.00 |
| | Payments | $0.00 |
| 03/23/2008 | XM Service | $359.64 |
| 03/23/2008 | Adjustments/Credit | -$0.01 |
| 03/23/2008 | Subtotal | $359.63 |
| | **Total Amount Due Upon Receipt** | **$359.63** |

### Service Detail For Radio ID Z5RY208T

**Acura TL 2004**

| Date | Description | Charges | Discounts/Promotions | Amount |
|---|---|---|---|---|
| 03/22/08 - 03/22/11 | XM Service - 3 Years | $359.64 | $0.00 | $359.64 |
| | Total Current Charges | $359.64 | $0.00 | $359.64 |

*CHECK SENT APRIL 1, 2008*

*RENEWAL FOR 3 YEARS!*

**XM 2**

**XM 130**

**XM 141**

**Listen Free Online**

**WAYS TO PAY**

> Online @ www.xmradio.com
> Call 1-800-XM RADIO
> Mail your check & stub below

> Simple. Fast. Convenient.
  Pay by Credit/Debit Card!

16

James J. Sabella, Esq.
GRANT & EISENHOFER,P.A.
485 Lexington Avenue
New York, NY 10017

Clerk of the United States
District Court for the Southern
District of New York
500 Pearl Street
New York, NY 10007-1312 . ...

*Blessing v. Sirius XM Radio Inc.*, Civil
Action No 09-CV-10035 HB.

June 1, 2011

I do *not* agree with the settlement, so many people have been outright lied to and

Mislead by Customer Service Reps of Sirius XM, so many have different subscription

Plans, while others have been given "special deals" only available at that moment in any

Attempt to make them happy and stop complaining, there is no way

This settlement would begin to make everyone whole, they violated a agreement they

Made with the FCC a branch of the Federal Government, and they lied to their

Subscribers.

Internet and BBB have thousands of complaints filed against Sirius XM, this settlement

Would be more like a prize to them, they need to pay, need to hurt for what they have

Done and safeguards need to be put in place to make sure it doesn't happen again.

Millions have been over charged, their credit cards charged *after* they have canceled
service resulting in many hours to get it corrected, most just give up and move on, not
once but many times, plans have been sold.

Money collected but then not honored, example: 5 Customer Service Reps told me I
Could pay $534.61 for a 'lifetime subscription' which *included* Internet and I phone, 5
Months later they told me no, can't honor the internet and phone portion, that is an
Additional cost of $2.99, when I questioned it, they just blocked my access to it, the only
Reason why I even agreed to the 'lifetime' was because they keep turning off my
service every time it renewed on the 6th of the month, "the card on file is no good, but
yet I gave them the same card number and it would go thru.

Any settlement should include all present and former customers since the merger date
With "lifetime subscriptions" should include what we had before, internet and phone
Access for the "lifetime" of the person.

Specific terms,regulations,rules, plans, knowledagble and effiecient customer service
need to be adopted by Sirius XM and posted on
Their  website, Sirius XM should not be allowed to make any changes for the term of the
Chosen plan.

To this date Sirius XM still promotes 100% "Commerical Free Music" when in fact
Several channels are not.

Sirius XM has no credibility.

Sirius XM will continue to face Class Action Lawsuits, they are doing nothing to stop

them.

From: M. Dorsey Dr's
To: [redacted]
Subject: User Feedback from siriusxm.com [Incident: 110528-001584]
Date: Tuesday, Mar 15, 2011 03:56:07 AM

Recently you requested personal assistance from SIRIUS XM.

Below is a summary of your request and our response.

**Subject**
User Feedback from siriusxm.com

**Discussion Thread**
**Response Via Email (SiriusXM Customer Care)**                     05/10/2011 12:56 AM

Dear Mr. Dorsey,

Thank you for contacting SiriusXM regarding your Online Account Management. Please accept our sincere apology for the inconvenience that this issue may have caused you.

We can provide you with your username and you can go to http://care.siriusxm.com to obtain your password; just click on the Forgot Your Password link and enter your username. You may reset your password after entering the necessary account information.

Your username for Online Account Management is: [redacted]

The Log In button will be grayed out until you enter your password.

We are committed to providing you with the best in listener care. You can also manage your account online 24/7, by clicking here https://care.siriusxm.com/logon_user_action.

If we can be of further assistance, please feel free to reply to this email.

Thank you,

Candy
SiriusXM Email Listener Care Team
1-866-635-2349

**Customer By Email**                                           05/14/2011 07:42 AM
NO, what you did was DEACTIVATE my internet/iphone, changed my log in passwords and locked me out of signing into my account to make any future changes,
You people suck, the worst customer service of all time, it will catch up with you and when it does it will be costly.

We hope you are enjoying SiriusXM's 100% commercial-free music and entertainment programming. We are committed to providing you with the best in listener care. If you have any questions, feel free to reply to this email.And you can always manage your account online 24/7 by clicking Http://www.siriusxm.com/

The above statement is a JOKE, none of it is true.

**Response Via Email (Hazelle)**                                  05/14/2011 05:07 AM

Thank you for being a loyal SiriusXM customer and taking the time to contact Listener Care regarding your Free Internet Radio. We are glad you have taken this time to contact us for more information. We certainly recognize the way you feel about this. Let alone the inconvenience it has caused you, on behalf of SiriusXM we hope that you accept our earnest apologies.

[redacted]

We hope you are enjoying SiriusXM's 100% commercial-free music and entertainment programming. We are committed to providing you with the best in listener care. If you have any questions, feel free to reply to this email.And you can always manage your account online 24/7 by clicking http://www.siriusxm.com/

Thank you,

Hazelle
SiriusXM Email Listener Care Team
1-866-635-2349

**Customer By Email**                                            05/08/2011 08:02 AM
I signed up for XM Everything with Internet/Iphone "Lifetime"
that is what 4 different Customer Service Reps told me, if they
lied or didnt know what there were talking about is Sirius XM problem

View Complaint Message                                                    Page 1 of 2

Overview | Complaint | Messages | Action | History |                     

**WHAT DO I DO NEXT?**

The business failed to respond either to you or the Better Business Bureau, and so the BBB has closed the complaint.

**PICK YOUR NEXT STEP:**

There is nothing for you to do on this complaint right now.

## The business has not replied, so the BBB has closed this complaint.

| | |
|---|---|
| **Sent Via:** | Email (ODR) |
| **From:** |  Better Business Bureau Serving Metropolitan New York |
| **To:** | |
| **To Email:** | |
| **Subject:** | The business has not replied, so the BBB has closed this complaint |
| **Date Sent:** | 6/4/2011 4:15:53 AM |
| **Attachments:** | |

Click here for printer friendly version 🖶



Washington , DC, 20002

This is in reference to your complaint against Sirius XM Radio. Your complaint was assigned

Your BBB has tried to present your complaint to Sirius XM Radio in an attempt to resolve this matter to your mutual satisfaction. Unfortunately, despite our efforts, we have received no response to your complaint. We attempted to contact Sirius XM Radio through written correspondence twice on your behalf, but we must now close this matter in our files. This does not minimize the importance of your concerns, nor is it any reflection on the validity of your dispute.

You may now want to pursue this matter through an alternative resource. To view a list of agencies you may wish to contact for additional assistance, please visit: **http://www.newyork.bbb.org/outsideresources**.

Your BBB helps settle many marketplace disputes between consumers and businesses, but please understand that we are not an enforcement agency and we cannot compel a business to settle your complaint in a particular way, nor can we compel them to respond. BBB mediation is a voluntary process requiring the good faith and willing participation of both parties to a dispute.

The firm's failure to respond to your complaint will be reflected in its BBB record. A firm's rating will be affected by its failure to answer even one complaint. Your experience may, therefore, alert other inquirers seeking information through the BBB.

Please feel free to contact us with any further questions.

# 17

Settlement Objection to Blessing v Sirius XM Radio Inc, Civil Action No 09-CV-10035HB

Good Afternoon!

As a class member in the case Blessing vs. Sirius XM Radio Inc., I Huey Edmondson, wish to state my objection to the proposed settlement. While I do believe this settlement may satisfy the majority of subscribers, there are still a great deal of us who are still being overcharged by Sirius and XM INDEPENDENTLY of each other... which really baffles me since this company continues to insist that they have fully merged!

Please reference the highlighted portion below to understand what I am talking about:

## From Page 5 – SiriusXM Customer Agreement
## http://www.siriusxm.com/pdf/siriusxm_customeragreement_eng.pdf

**3. Multiple Receivers:** Each Subscription to the Satellite Radio Service is tied to one Receiver. If you want the Satellite Radio Service on multiple Receivers, you must purchase a separate Subscription for each Receiver although all of your Subscriptions may be combined on a single account, grouped according to whether they are with Sirius or XM. Such additional subscriptions on any single Sirius or XM account may be eligible for reduced rates which may be offered by us from time to time and a per Receiver activation fee may apply. For illustration purposes, one radio on a Sirius account and one radio on an XM account will not be eligible for reduced rates but two radios on an XM account may be eligible for reduced rates.

How does this affect me? Short and simple - I had a car with a Sirius radio in it, then my wife bought a Ford Edge which came with Sirius in it, so multiple radio discount available. Wow, this is great!

So in August 2009, I buy a new Chevy Camaro, which is standard with XM radio, but no problem right? These companies have been merged for years, so I am of course expecting my multiuser discount – BUT there is no multi-user discount available because one is now XM?? WHAT? Same company right??? NOPE! They are not the same company. Not when it comes to billing (ripping off) customers.

It gets better. So I call the XM customer service, which tells me to go to month to the month billing format since it will be "any time now" that I will be able get reduced rate on second radio.. well that was nearly two years ago. So not only am I not getting multi-user discount.. I have been paying monthly instead of quarterly/yearly where I could have saved even more money on my second full price subscription!!!

This whole merger has been a fiasco with no oversight whatsoever! I have told Sirius/XM that both accounts will be cancelled in August if I don't get a reduced rate for having two radios. The representative made no effort to explain, remedy or offer any deal whatsoever on my accounts. They seemed content to let customers of 8 years just walk away. But that is how you can treat your customers when the only competition you have is yourself. You're not a monopoly after all!??

**I do hope that you will add a provision to the settlement that forces Sirius XM to allow subscribers with radio's with "each others name on it" to qualify.. since you know.. it is the same company and all!!**

Huey Edmondson
25966 Winterwood Dr.
Madison, AL 35756
256-508-0743

18

Gary Fodor
154 S. Aberdeen Dr.
Munford, TN 38058
901-874-9410

To Whom It Concerns:

I hereby give notice that I object to the proposed Settlement in *Blessing v. Sirius XM Radio Inc.*, Civil Action No 09-CV-10035 HB.

The settlement doesn't go far enough. All music royalty fees, subscription price increases and Internet access charges should be refunded to current and former subscribers from the period of the merger start or from when the price increases became effective.

The settlement offer of allowing former subscribers who cancelled their Sirius XM service between July 29, 2009 and July 5, 2011 to reconnect their satellite radio without paying a reactivation fee and receive one month of basic satellite radio service at no cost, or receive one month of Sirius XM Internet streaming service at no cost is minimal compared to the overall damages caused by the merger and price hikes that followed (even though subscribers were lead to believe no prices changes would occur, nor royalty fee or Internet charges).

In addition, the offers should be together, not 'or' and the timeline for the waiver of price increases for all plans should be extended for 2 years (from settlement approval date).

Sincerely,

Gary Fodor

# 19

James J. Sabella, Esq.
Grant & Eisenhofer P.A.
485 Lexington Ave.
New York, NY 10017

Clerk of the United States District Court
for the Southern District of New York
500 Pearl Street
New York, NY 10017-1312

Re: Blessing v. Sirius XM Radio, Inc.
Civil Action No. 09-CV-10035 HB

July 7, 2011

Gentlemen:

I am writing to object to the terms of settlement in the "Blessing v. Sirius XM Radio,
Inc." suit. I do not believe the settlement terms are fair to subscribers of the former XM
Radio. I am a member of the class having subscribed to XM Radio since July 9, 2009.

The settlement proposal states that subscribers can continue their current plan at existing
rates for one more term. This simply postpones an additional price increase Sirius XM
plans to impose. This does not do anything to rectify the fact that Sirius raised prices in
spite of the merger agreement. Listeners who were harmed by these increases should be
given a refund of the charges or some other compensation to offset their damages. Sirius
XM is just offering to postpone increases until the end of this year and ignoring the fact
that prices were increased in violation of the merger agreement. Where is the fairness in
doing something wrong, agreeing to continue to do the same wrong for a little while
longer then doing an even greater amount of the same wrong in the future?

Specifically, in my case, I had the music royalty fee imposed on my account and had my
access to internet streaming radio taken away. There was an offer to reinstate internet
access if I paid an additional fee. Both of these actions represent a direct fee increase that
was not to have taken place under the merger agreement. I feel it is only minimally fair
to require Sirius XM to refund the royalty fees and any internet streaming access fees
collected. For those, such as myself, who lost access to internet radio by not paying the
fee; we should have monetary compensation for this loss of service.

The merged Sirius XM has, in my opinion, flagrantly violated the merger terms by:

- Imposing the music royalty fees;
- Imposing a fee for the internet radio service that had been previously included for no
  additional charge;
- Lowering discounts given for term plans and eliminating the lifetime subscription
  option for renewals during the supposed price freeze period;

Page 2
Re: Blessing v. Sirius XM Radio, Inc.
Civil Action No. 09-CV-10035 HB

- Running advertisements during its broadcasts when Sirius XM had promised
  "commercial free radio" thereby reducing the amount of content broadcast to
  listeners;
- Reducing the quality of broadcast content such as last years Christmas Eve broadcast of
  a radio program from, I think, the 1940's instead of a more recent blend of Christmas
  music. This was in spite of charging royalty fees for music still subject to royalty
  payments.
- Imposing a monthly fee for access through Napster-XM to stored song libraries on
  Satellite – MP3 radios where access had previously been free;
- Reducing the sound quality of broadcasts, apparently by using higher compression of
  the digital transmissions.

In summary, this settlement seems to only benefit Sirius XM and the attorneys involved.
Sirius XM should be required to refund charges made in violation of the merger
agreement and to compensate subscribers for loss of functionality or services that
subscribers gave up in order to avoid paying more. These were, in effect, really just
hidden price increases.

Sincerely,

Kenneth W. Gannaway
2328 Wittstock Dr.
Charlotte, NC 20210
704-554-7667

20

Gregory A. Gleason
7919 Trails End
Fogelsville, PA 18051-1531

June 14, 2011

James J. Sabella, Esq.

**GRANT & EISENHOFER, P.A.**
485 Lexington Avenue
New York, NY 10017

Subject:   Settlement in Blessing v. Sirius XM Radio Inc.,
Civil Action No 09-CV-10035 HB

Dear Sir:

I wish to remain a Class Member in this suit, however, I object to the provisions of the proposed Settlement on the grounds that as an XM subscriber who already paid for renewal of my 3-Year Service Plan on 8 March 2011, I gain *nothing* of benefit from the Settlement as described which offers a service extension only to those who are scheduled to renew by 31 December 2011.

An EXTENSION OF THE SERVICE PERIOD or CASH REFUND should be granted to those who have *already paid* these increased fees.

Sincerely,

Gregory A. Gleason

(610) 694-8240 (days)
Gsgared@ptd.net

**XM ACCOUNT:**   1-5705083393

cc:   Clerk of the United States District Court
for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

# 21

**David T. Hamilton**
**43 Campana Lane**
**Hot Springs Village, AR 71909**

June 3, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Clerk of the United States District
Court for the Southern District of
New York
500 Pearl Street
New York, NY 10007-1312

Parties Noted Above;

While I do not take exception to the parameters that are included in the Civil Action No. 09-CV-10035 HB, I do take exception to the <u>incompleteness of the parameters</u> that were identified in the Class Action.

I became a subscriber to Sirius in ~April of 2005 in a car purchased from the Chrysler Corporation. In Dec. 2008, I purchased a vehicle from GM (as second car), which necessitated the purchase of a subscription from XM (not by my choice, but by virtue of "exclusive" agreements XM and Sirius had negotiated with auto manufacturers). Subsequent dealings with Sirius/XM organization have been quite frustrating:

1. I have spent many hours on the phone with Sirius/XM suggesting that there should be a special discount for two radios within a family subscribing to their services. On only one occasion was I able to negotiate a slightly lower price for XM after I threatened cancellation of their services. Their excuse has always been that "they haven't gotten around to consolidating the accounting systems, so they are unable to handle such a request". I have a great deal of difficulty believing that 1) it takes that long to consolidate the service accounts and 2) that the person on the phone who can access both accounts simultaneously cannot "deal with" this request. Clearly, the combination of the two companies was not to the benefit of the consumer!

2. After reading your Civil Action parameters indicating that there is a "second radio" option for only $8.99/mo. (of which I was never advised), it would seem clear that Sirius/XM was misleading me to assure the highest rate per account.

3. Finally, I have been extremely frustrated by their periodic and arbitrary switching out of the programming I listen to (Escape), for programming of special music of a religious nature (usually related to the Jewish faith). I have absolutely no problem with the Jewish faith, its music, nor the desire of Sirius/XM to provide them with music pertinent to their special "seasons". However, I take significant issue with the loss of programming for an <u>unadvertised, "regiously" specific</u> alternative, when it deprives me of the only program option that I use network.

Sincerely,

*David J. Hamilton*

David T. Hamilton (Sirius 233538496, XM 1-808033912)

22

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK


IN THE MATTER OF:           )      Case No.: 09-CV-10035 (HB)
                                    )

CARL BLESSING, ET AL.        )
                                    )    **OBJECTION TO CLASS SETTLEMENT**

            Plaintiff,     )
                                    )

   vs.                         )
                                    )

SIRIUS XM RADIO INC.,      )
                                    )

           Defendant     )
_____)


        THOMAS HIMINEZ, a member of the aforementioned Class Action, makes the following objections to the proposed settlement in the above listed case:

        1.   Settlement is inequitable to Class Members with regards to Defendant, and

        2.   Settlement is inequitable to Class Members with regards to Plaintiff's Attorneys.

<center>**Class Member Qualification**</center>

        Thomas Himinez has been a continuous subscriber to Sirus/XM (previously Sirus) since August 2009.  His customer identification is 1-10637588943.  Prior to that, he was a subscriber to XM Radio, though he is unable to remember the dates; however, it was for a continuous period ending in August 2009 and beginning sometime in 2008.  He lives as 3310B Fifteen Mile Creek Road, Kettle Falls, WA  99141, and his phone number is 509-732-4179.


<center>Objection to Class Settlement - 1</center>

1      In the Opinion and Order of 29 March 2011, Class status was

2  granted to those who were subscribers to DEFENDANT'S service during the

3  relevant period of "July 29, 2008 through [29 March 2011]: (1) paid the U.S.

4  Music Royalty Fee; (2) own and activated additional radios ("multi-radio

5  subscribers"; and paid the increased monthly charge of $8.99 per additional

6  radio; or (3) did not pay to access the content available on the 32 kbps or

7  64 kbps connections on the Internet but are now paying the Internet access

8  monthly charge of $2.99."[1]

9

10   **1. Settlement Is Inequitable To Class Members With Regards to Defendant.**

11

12      As alleged in the Second Consolidated Amended Class Action

13  Complaint, DEFENDANT Sirius/XM realized increased profitability due to its

14  price increases.[2]  This profitability was realized in dollars.[3]  The

15  PLAINTIFFS further allege specific monetary damages due to the alleged

16  practices by DEFENDANT.[4]  Yet according to the proposed Settlement, DEFENDANT

17  shall make no monetary restitution to the PLAINTIFFS.  Instead, DEFENDANT

18  have agreed to make an intangible restitution of a subscription rate freeze

19  for less than six months.[5]

20      It is my position that such an agreement is inequitable on its

21  face.  While PLAINTIFFS were harmed monetarily, PLAINTIFFS enjoy no relief

22

23  [1] Case 1:09-cv-10035-HB -RLE Document 85, page 2

    [2] "At the February 25, 2010, fourth quarter earnings call, Sirius XM CFO David Frear made clear that the price

24  increases imposed since the merger have allowed Sirius XM to *increase profitability*, despite the challenging

    economic climate" *(emphasis added)* – Second Consolidated Amended Class Action Complaint, page 4, Item 8

25  [3] "Revenues for the quarter were $684 million" - ibid

    [4] Second Consolidated Amended Class Action Complaint, Section VII inclusive.

    [5] Settlement Agreement, Section 2, subsection a.f.

1  from the proposed Settlement.  Instead, PLAINTIFFS are only granted a short
2  term promise that further increases in subscription rates will be postponed,
3  rates that 1) even if in the planning stage, it is dubious to believe were
4  ever going to be executed due to the economic climate, and 2) cost savings
5  are hypothetical at best.

6        Indeed, PLAINTIFFS were harmed not only by actual increased costs
7  associated with their subscriptions to DEFENDANT'S service, but are further
8  harmed by a loss of interest that such funds would have generated in savings
9  accounts, stocks, bonds, or other such income generating activities that such
10 funds may have been placed had it not been spent on DEFENDANT'S service.

11       It is therefore inequitable that no financial penalty be assessed
12 against DEFENDANT when financial harm has been inflicted against PLAINTIFFS.

13

14  **2. Settlement is inequitable to Class Members with regards to Plaintiff's**
15                                **Attorneys**

16

17       The current Settlement proposal would give relief to PLAINTIFFS
18 only though theoretical savings by preventing DEFENDANT from raising prices
19 for less than six months.  No funds would change hands.  Yet attorneys for
20 the PLAINTIFF seek to be enriched monetarily.  I claim that this is
21 inequitable and goes against the Supreme Court ruling in *Boeing Co. v. Van*
22 *Gemert, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980)* in which
23 the Court recognised that "litigant or lawyer who recovers a *common fund* for
24 the benefit of persons other than himself or his client is entitled to a
25 reasonable attorney's fee *from the fund* as a whole. *(emphasis added)*"

                        Objection to Class Settlement – 3

1    In the proposed Settlement, the attorneys are in fact not
2  receiving their fees from the "common fund", but rather a different fund.
3  PLAINTIFFS are receiving compensation from a theoretical fund which is
4  distributed through a cap of subscription rates (non-subscribers are granted
5  a free one month subscription). Attorneys for the PLAINTIFF are receiving
6  compensation from a different fund which is hard money. These are two
7  separate funds which goes against the Supreme Court ruling.
8    To be equitable and in line with *Boeing Co. v. Van Gemert*,
9  PLAINTIFFS must be compensated by monetary reimbursement, or attorneys for
10 PLAINTIFF must be compensated via free subscriptions to Sirius/XM at the
11 value of their reasonable costs and fees.

12

13

14                              Respectfully submitted,



15

16                              Thomas Himinez
                                33103 Fifteen Mile Creek Road
17                              Kettle Falls, WA  99141
                                Tel: 509-732-4179

18                              Dated this ± July 2011

19

20

21

22

23

24

25


                    Objection to Class Settlement - 4

23

June 14, 2011

To:

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Re: Blessing v. Sirius XM Radio Inc.

Dear Sir,

I object, no, I strenuously object to the proposed settlement in Blessing v. Sirius XM Radio Inc., Civil
Action No 09-CV-10035 HB. I have been an XM subscriber since their inception. In fact I have two radio
ID's, one in my vehicle and one for the house. I pay SiriusXM roughly $21 each and every month to
listen to the radio. If I understand this correctly, I get to go one more year at the current rate and then
watch the rates increase. I no longer listen online because they want to charge for that and I have all ready
paid this ridiculous Music Royalty Fee once. So really I get nothing from this law suit, two years from
now SiriusXM will have made back their $193 million, and the lawyers get to split thirteen million
dollars. That seems fair!!!

Sincerely,

John Johnson
629 Ellen Ave
Royal Oak, MI 48073
248.577.8187

June 14, 2011,
     James J. Sabella Esq.

     I want to object to the proposed settlement for the Class Action against Sirius/XM. My objection has to do with there is not a provision for us that opted not to continue the internet service when Sirius/XM merged and then and only then started charging for the internet service. I refused to pay for the internet service once they started charging extra for it. There whole argument before the FCC was they would not up their rates yet they have gone up each year starting in 2008 besides adding the charge for internet. I want to interject here that I complained to Sirius more than once about this and they never had the courtesy to call me back or e-mail about my concerns. Their Customer Service really is almost non-existent. I think subscribers like myself should get a credit toward future bills in the amount of $2.99 per month for the months we did not add on this service.

                                Sincerely,

                                David Jones
                                4420 S. 199th East Ave.
                                Broken Arrow, OK 74014-1429

     cc: Clerk of the United States District Court for the Southern District of New York

24

25

# KELLY LAW OFFICES LLC
### 3000 ATRIUM WAY - SUITE 291
### MT. LAUREL, NEW JERSEY 08054
### (609) 261-6105 (FAX)
### (609) 261-6100
### WWW.TPKELLY.COM

Thomas P. Kelly Jr., JD/CFP®*  
Thomas P. Kelly III, JD/MBA**

*Admitted in NJ  
**Admitted in NJ, PA, NY, DC

June 9th 2011

**Via Regular Mail**  
James J. Sabella, Esq.  
Grant & Eisenhofer, P.A.  
485 Lexington Avenue  
New York, NY 10017

Re:   Blessing v. Sirus XM Radio Inc., Docket No. 1:09-cv-10035-HB  
      Request for Exclusion & Objection to Proposed Settlement

Mr. Sabella,

Please accept this letter as my objection to the proposed settlement and as my request to be excluded from the putative class of plaintiffs in the above-captioned matter.

I note from the proposed terms of settlement that former subscribers who no longer wish to patronize the offending defendant corporation would not benefit from its terms in any way. As a former subscriber who has no interest in again becoming a customer of the defendant, I disagree with, and object to, any representation that the proposed settlement would benefit class members who are similarly situated. Additionally, I note that while the defendant has not agreed to disgorge itself of any ill-gotten profits and only stands to benefit financially from a continued (or increased) customer base resulting from approval of the proposed settlement terms.

Finally, and perhaps most importantly, a request for counsel fees of up to $13 million (per the notice of ~~settlement~~) without some actual benefit enjoyed by *all* class members, would be the very sort of thing that serves as fodder for criticism of class action attorneys. Accordingly, the court should not approve any settlement that fails to provide redress for the violations alleged and should not approve a request for counsel fees for the agreement proposed as it would benefit the attorneys to the exclusion of class members.

Thank you for providing the Court with notice of my position and request.

Very truly yours,

Thomas P. Kelly III

Cc:   Clerk of the Court

## WILLS • TRUSTS • ESTATES • LEGACY PLANNING

# 26

Larry D. Kier
16428 CR 356-8
Buena Vista, CO 81211
(719) 395-1993
ldkier@q.com

June 20, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Clerk of the United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Ref: *Proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB*

Dear Mr. Sabella and United States District Court Clerk:

I am writing to strongly protest the proposed settlement with Sirius XM Radio that is referenced above.

I have been an XM and Sirius XM subscriber since 2004 and I paid an extra monthly subscription charge ($1.98 or $1.40) for a digital music royalty fee since August, 2009.

On my own initiative I questioned whether this fee increase met the terms of the FCC order allowing the merger of Sirius and XM. Beginning in September 2009 I inquired about this issue with the FCC and subsequently through my U.S. Congressional Representative beginning in October, 2009. Subsequent communications have indicated that the FCC claims to be conducting an investigation of this and other issues but to date I have not been provided with any results of the investigation.

The claimed settlement benefit indicates that Sirius XM has agreed to forego a possible $2/month premium increase from July 28, 2011 to December 31, 2011. By my mathematics that's only about 5 months while as of August, 2011 I will have been paying an extra $1.98 per month through 2010 and an extra $1.40 per month since then. If this extra $1.98/$1.40 fee did indeed violate the terms of the FCC merger order then this settlement would result in Sirius XM being allowed to keep two years of improper $1.40-$1.98 per month charges from millions of subscribers in exchange for five months of not raising their prices. It seems like they will even be continuing to charge the extra music royalty fee per month charge during this period but please let me know if this is not correct.

With all respect to the attorneys and the court I do not believe that the proposed settlement is fair or just to the subscribers. It benefits the attorneys with $13 million in cash but the

subscribers who paid this fee will receive no absolutely no direct reimbursement for the music royalty fee increase that they may have been charged in violation of the merger agreement. Sirius XM simply agrees not to increase prices for a few months until December 31, 2011 as well as providing some other benefits that essentially amount to a marketing program. It seems like the primary settlement beneficiaries aren't the subscribers who may have been improperly overcharged a total of hundreds of millions of dollars over the last two years but the attorneys and Sirius XM Radio. That seems like a pretty ridiculous and unjust proposition if you are a subscriber.

I would please appreciate clarification of being a participant in the settlement might affect the ability of subscribers to be reimbursed if the FCC investigation finds that the music royalty fee increase was improper and the FCC pursues separate litigation?  Will those who did not exclude themselves as participants in this settlement be excluded from any cash reimbursement if that is awarded separately as a result of FCC action?

I would also please like to know whether this protest has any chance of really being considered or whether this is just a *pro forma* exercise and the only practical and effectual way to protest the settlement is to exclude one's self from participation in the settlement. I guess that whether I receive any prompt acknowledgement to this letter will help answer that question.

My contact information is above.

Thanks for your time and attention.

Sincerely yours,

Larry D. Kier

27

87 Orchard Street
Plainview, NY 11803
June 22, 2011

RE:   BLESSING V. SIRIUS XM RADIO INC.
      CIVIL ACTION NO.:  09-CV-10035 HB

OBJECTION TO PROPOSED SETTLEMENT

James J. Sabella, Esq.
Grant & Eisenhoffer, P.A.
485 Lexington Avenue
New York, NY 10017

Clerk of the United States
District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Dear Sir or Madam:

I am writing to respectfully OBJECT to the proposed settlement in this matter, and the possible attorney fee in connection thereto.

I have been a Sirius/XM subscriber since 2004. The radio in my 2004 Honda Accord contained an XM receiver. The radio in my 2010 Honda Accord contains an XM receiver. I pay to receive XM channels in a yearly subscription.

The basis of my OBJECTION is as follows. The benefit to the consumer (or those in the class action group of Plaintiffs) in the proposed settlement is NOMINAL (if anything). The proposed settlement states that Sirius SM Radio will not raise rates for the base subscription plan or certain other charges for one year. It is unclear how much the company (Defendant) would have raised prices in the absence of this suit. It is also unclear if they would have raised prices at all in this difficult economy.

On the other hand, the potential benefit to the attorneys is seemingly astronomical – up to thirteen million dollars plus interest. To me this seems absurd, and I must therefore respectfully OBJECT.

Sincerely,

Philip Kusnetz
(516) 637-1108

28

June 16, 2011

Jack J. Lipari, Esq.
7 Orchard Road
Egg Harbor Township, NJ   08234
(609) 926-8947 (home)
(609) 233-5784 (cell)

Clerk of the United States District Court
for the Southern District of New York
500 Pearl Street
New York, NY   10007-1312

James J. Sabella, Esq.
Grant and Eisenhofer, P.A.
485 Lexington Avenue
New York, NY   10017        Re: Blessing v. Sirius XM Radio Inc.,
                                 Civil Action No 09-CV-10035 HB
                                 Objection to proposed settlement

Dear Clerk and Counsel:

On behalf of my wife, Marcia Lipari, I am writing to state her objection to the proposed settlement of the above class action. My wife ordered the product, but we both used it and paid for it out of joint funds. Thus, I consider myself to be equally affected.

Our objection centers on the failure of the proposed resolution to require Sirius to pay money back to consumers. Some of their dealing appeared to be very lax, and even underhanded, causing people not to want to deal with them any more. They struck me at times as so. We had a hard time getting straight and clear answers from people, were kept on the phone waiting, and, at least one time, when we asked to speak to a supervisor, were kept on the phone longer, and eventually just disconnected.

On one date, we tried to access Sirius via computer, and were not allowed to do so. It appeared they intended to charge a fee, despite the fact that they were not allowed to do so. When we called, we were kept waiting a long time, and then someone said that we still had the service, and, mysteriously, we were able to get on the next time without having to pay a fee. What kind of settlement is it when people who do not want anything to do with Sirius anymore are given just the option of reconnecting for a free month. It scarcely would be worth the hassle. Plus, in our case, the matter is aggravated by the fact that we were not able to have a technical issue adequately addressed by phone. Thus, even with the reconnection, the service likely would be subpar. The only money involved in the settlement goes to lawyers. Nothing against lawyers, to be sure. However, in my opinion, in a situation such as this, where a company tried to change the rules sneakily in midstream, there also should be some payment to unhappy and aggrieved consumers.

Accordingly, please note out objection along these lines.

Very truly yours,

Marcia and Jack Lipari

# 29

0435 South Sagre Avenue, #2
Chicago, Illinois 60058
P: 312-772-2007
B 312-268-6572
JenniferMajewski@gmail.com
www.jenniermajewski.com

June 3, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Clerk of the United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

*re: Objection to Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB*

To Whom It May Concern:

I object to the proposed settlement in Blessing v. Sirius XM Radio inc., Civil Action No 09-CV-10035 HB. The only compensation offered in the proposed settlement is essentially a discount on further services. But for consumers like myself, that have been damaged by Sirius XM Radio and have additional problems with Sirius XM Radio that are not addressed by the instant lawsuit, the proposed settlement provides no relief.

Sirius XM Radio has made other misrepresentations and overcharged me in the past and therefore I was forced to terminate my service. (Attached hereto are my personal notes from my prior dispute with Sirius XM Radio). I do not believe they are a reputable company and therefore do not wish to reactivate my service even at a discount. Thus, I will not receive any compensation under the terms of the settlement. There should be some monetary compensation for consumers that do not wish to continue or reactivate service.

If you have any questions or concerns please feel free to contact me.

Sincerely,

Jennifer Majewski

XM Radio Complaint

- 20100611 Submitted this online - A month or two ago I received a call from a customer service rep offering me a promotional package... one year of XM Radio, nav traffic and weather for $77. I specifically confirmed that it concluded navtraffic... she said it did, so I agreed and was charged for the package. I recently stopped receiving the navtraffic. I called this morning to find out what was wrong... I was on hold for 25+ minutes, explained my problem to a rep, and was promptly hung up on. This afternoon I called back and was informed that my navtraffic service had expired... I told the rep that that was an error, I had purchased navtraffic as part of a package. He said that it wasn't on my account and so he need to transfer me to an account representative. I was placed on hold for another 20-25 minutes. When my call was finally answered it was by a man in the cancellations department, not an account representative. I again explained the problem and he told me that there was nothing he could do, that I didn't have navtraffic. I said that these calls are recorded and requested that they pull the recording of the original call with their saleswoman offering me the radio and nav traffic package. He said that he could but it would take a week. I said that's fine, please do, but I would also like to speak to a supervisor. He said fine and put me on hold. I few minutes later he came back on the line, said that he was sorry for the wait but his supervisor was aware of the problem and he was going to transfer me to her right then. I was place on hold for ~20 more minutes and then Monique Daley got on the phone. I explained the issue to her and the first thing she told me was that I was only on hold for 3 minutes... I told her that was simply not true... for one thing, I was looking at my cell phone call timer and I had been on the call for over an hour at that point. Regardless, she said I didn't have navtraffic and they couldn't "give it to me". I said that I wasn't asking that they "give" me anything, that I had paid for a service and would like to receive what I had paid for. She said she couldn't do that. I again requested that they pull the recording of the original call. She said that would take 24-72 hours. I said please do that and asked if she personally would call me back after reviewing the recording. She said no, that her supervisor Marcine Demnif would personally call me back. I'm very frustrated with the excessive wait times and not receiving what I paid for. I hope that this issue is resolved within 72 hours after the recording is reviewed.
- After receiving no response from XM, I disputed the charge on my AMEX credit card and after investigating, AMEX reversed the charge.
- 20100830 - Got invoice after credit from AMEX... called to dispute the charge... they agreed to credit the "amount due" and zero my account out... they said I will not be billed anymore for anything else. (Spoke to a woman).

30

June 20, 2011

James J. Sabella, Esq.                          Clerk of the United States District Court for the
GRANT & EISENHOFER, P.A.                        Southern District of New York
485 Lexington Avenue                            500 Pearl Street
New York, NY 10017                              New York, NY 10007-1312

Dear Mr. Sabella and Court Clerk,

We object to the object to the proposed Settlement in *Blessing v. Sirius XM Radio Inc.*, Civil Action
No 09-CV-10035 HB.

My husband and I have XM/Sirius in two autos and don't understand and therefore object to the
exclusion of lifetime subscription holders from this lawsuit. My husband had a three year XM
radio plan in his car that included free internet radio access before he switched to a lifetime
subscription in December 2010 that excluded the internet; I purchased a lifetime Sirius
subscription for my new car in August 2010 and had to pay $76.50 in royalties. Both of these
events would be qualifying if it wasn't for the exclusion for lifetime subscribers.

Please include subscribers with lifetime subscriptions in this lawsuit, it makes no sense to do
otherwise.

Sincerely,

Peggy Martin

James Martin
2905 Aspen Meadows Ct
Reno, NV 89519-7322

# 31

Vladimir Mikhelson
607 Dunsten Cir.
Northbrook, IL 60062
847-656-8612

XM Account #1-105292980

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Dear James J. Sabella, Esq.:

Please let me bring the objection to the proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB.

The proposed Settlement unfairly excludes Lifetime Subscriptions.

As the Lifetime XM Everything subscription was offered along with other subscriptions like XM NavTraffic Premium 5 year Service (where the aforementioned offering is now discontinued in favor of the more expensive XM NavTraffic with XM Everything with maximum term of 3 years), I believe that this substitution constitutes another hidden price increase in violation of the price restriction imposed upon Sirius XM by the Federal Communications Commission.

I subscribed to the following services for my radio ID BYDBQ0H4 on 02/05/2009:
1. $239.40 – XM NavTraffic Premium 5 year Service (02/01/2009 through 02/01/2014);
2. $399.99 – Lifetime XM Everything

In early 2011 I discovered that NavTraffic stopped working. XM representative stated that the service was deactivated but never was able to identify the reason. After several escalations the issue was resolved by offering me the XM Select with XM NavTraffic® (3 Year Plan) for $445.90 as the only available comparable option (Question Reference #110505-002965, Invoice X-188730262, date: 05/05/2011 ).

I do believe I was entitled to the services and subscription terms being restored as per my original contract.

Sincerely,

Vladimir Mikhelson

06/22/2011

32

June 20, 2011

Clerk of the United States
District Court for the Southern
District of New York
500 Pearl Street
New York, NY 10007-1312

James J. Sabella, Esq.
Grant & Eisenhofer, P.A.
485 Lexington Ave.
New York, NY 10017

RE:     Objection to Settlement in Blessing v. Sirius XM Radio Inc.
        Civil Action No. 09-CV-10035 HB

To Whom It May Concern:

       I received a notice in the mail that I am in a class action settlement involving Sirius XM Radio.
The Notice informs me that I can object to the settlement and list the reasons that I object to it.

       After reading the Notice, I understand that the lawsuit was filed against Sirius XM Radio for
raising its prices as a result of the merger of Sirius and XM Radio. The Notice also seems to place
emphasis on the price increase occurring as a result of adding a U.S. Music Royalty Fee. I notice that a
U.S. Music Royalty Fee was added to my annual bill beginning in 2010. I am a current subscriber and
have paid this U.S. Music Royalty Fee for two years now. Consequently, my annual bill was increased as
a result of this merger.

       In reading further information regarding this lawsuit, I understand that I am included in a class of
individuals that have claimed a violation of federal anti-trust laws, for which I am entitled to damages and
treble damages. Instead, these claims are now being settled for nothing in exchange for Sirius XM
Radio's promise not to increase its already increased fees, which I have paid for two years. For this result
that only favors Sirius XM Radio, my class lawyers have sold me out for a $13,000,000 fee that,
curiously, is being paid directly to them by the culprit in this matter, Sirius XM Radio.

       I object to the dismissal of the class claims for nothing. I object to the class attorneys being paid
$13,000,000 by Sirius XM Radio for selling out the class claims for nothing. A fairer solution would
have been to settle the class claims for $13,000,000, which Sirius XM Radio apparently has readily
available for settlement, and class counsel be awarded 25% of the $13,000,000 for their fee. Isn't that the
way normal litigation is handled: the attorneys representing me and others like me actually get us a
recovery and take their fee as a percentage of the recovery achieved?

                                                Sincerely,

                                                Jeannine Miller

                                                Jeannine Miller
                                                P.O. Box 67
                                                Torrington, WY 82240
                                                Ph. 307-534-6970

### If You Subscribed to Sirius, XM, or Sirius XM Radio
### You Could Get Benefits From a Class Action Settlement

Read this message carefully. Records show you subscribed to Sirius XM Radio. We are sending this notice to tell you about the proposed Settlement of a class action that may affect your legal rights. There is a class action lawsuit against Sirius XM concerning the July 29, 2008 merger that created Sirius XM. The lawsuit claims this merger violated federal antitrust laws and that Sirius XM raised its prices as a result of the merger. Sirius XM denies it did anything wrong.

**Who's Included?** You are included in the Class if you were a Sirius, XM, or Sirius XM subscriber anytime from July 29, 2008 to July 5, 2011 and you paid: (1) the U.S. Music Royalty Fee; or (2) a monthly multi-radio charge of $8.99; or (3) a $2.99 monthly Internet access charge if you previously did not pay to access Sirius XM's content over the Internet.

**What Does the Settlement Provide?** Under this proposed Settlement, Sirius XM has agreed it will not raise the price of its basic subscription plan and certain other prices through the end of 2011. Additionally, subscribers with long term plans (excluding lifetime subscriptions) will be permitted to restart their plan at current rates before December 31, 2011. After approval of the Settlement, former subscribers will also be permitted to either (a) reconnect their satellite radio without paying a reactivation fee and receive one month of service at no cost; or (b) receive one month of Sirius XM Internet streaming service at no cost. The estimated value of the Settlement is $180 million. The Settlement does not provide for cash payments to the Class.

**How to Get Benefits?** Current subscribers scheduled to renew before December 31, 2011 do not need to do anything. Current subscribers who are scheduled to renew after December 31, 2011 and who want to restart their long term plan at current rates as well as former subscribers who want to reconnect service or receive streaming service should go to www.siriusxm.com/blessingclassaction.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself from it. The deadline to exclude yourself is July 5, 2011. If you do not exclude yourself, you will release all claims against Sirius XM concerning any conduct arising out of, based on, or relating to the merger that created Sirius XM. If you stay in the Settlement Class, you may object to it by July 11, 2011. The detailed notice, available at the website or by calling the toll-free number, tells you how to exclude yourself or object. The Court will hold a hearing on August 8, 2011, to consider whether to approve the Settlement and a request by Class Counsel for attorneys' fees and costs up to $13 million, plus interest. You may appear at the hearing, but you don't have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing, but you don't have to.

**For more information about the Settlement:**   www.SatelliteRadioSuit.com   1-800-760-6247

33

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL BLESSING, EDWARD A. SCERBO, et al., On Behalf of Themselves and All Those Similarly Situated. ) ) ) ) | No. 09-CV-10035 (HB) |
| Plaintiffs, ) ) ) | |
| v. ) ) ) | |
| SIRIUS XM RADIO, INC., ) ) | |
| Defendant. ) ) ) | |

## JUSTIN P. NICHOLS' OBJECTION TO PROPOSED SETTLEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

      Comes now JUSTIN P. NICHOLS ("Objector"), a class member, and makes and files

this objection to the proposed settlement preliminarily approved by the Court on May 19, 2011

("Proposed Settlement"), in the above captioned cause, and will show:

**1. The Proposed Settlement does little, if anything, to remedy the anti-trust violations alleged in Plaintiff's Second Amended Complaint.**

      The nexus of the plaintiffs' claims is that the defendant, Sirius XM Radio, Inc. ("Sirius

XM") unlawfully acquired a monopoly in violation of the Clayton and Sherman Acts.[1] If this is

true, the Proposed Settlement only delays the final acquisition of such a monopoly until the

beginning of 2012, and provides no substantive relief for consumers for more than six months.

---

[1] See *Plaintiffs' Second Amended Complaint*, Causes of Action, Counts I and II, p. 59-61. Document 46.

**2. The Proposed Settlement does not offer any substantial relief to consumers, and the class would be better served by a trial on the merits or additional settlement terms.**

Although the defendant has denied liability, the Proposed Settlement does little more than extend the period during which the defendant may not raise its prices by a mere six months; a remedy which could have easily been achieved through proceedings before the Federal Communications Commission. If, in fact, the plaintiff's allegations are true, the anti-trust violations of the defendant would warrant significantly greater relief than the Proposed Settlement provides. It's in the interest of all class members that the substantive allegations raised by plaintiff's be tried on the merits, or alternatively, any settlement would relate to fully remediating the alleged monopoly gained, or to be gained, by Sirius XM.

**3. The proposed fees to be paid to class counsel are extremely excessive.**

Under the Proposed Settlement, class counsel would receive some $13 million in attorney fees, while subscribers of Sirius XM would be saved -- at most -- a few dollars over the next six months, after which Sirius XM will almost certainly increase its prices as it intended to do in July 2011. The Proposed Settlement agreement compensates class counsel vastly disproportionately to any temporary benefit gained by class members, and only delays (for a short time) the effective monopoly of the satellite radio market by Sirius XM. $13 million in attorney fees for such miniscule relief for consumers is hardly warranted in this case, and would be better spent giving meaningful relief to consumers and class members.

**WHEREFORE,** Objector prays that the Court reject the Proposed Settlement and order the parties to develop additional settlement terms or try the case on the merits.

Respectfully submitted,

Dated: May 25, 2011

JUSTIN P. NICHOLS, Objector
1637 San Francisco Street
San Antonio, Texas 78201
(972) 312-0911 phone
(800) 761-5782 facsimile
Justin@justinnichols.net

## CERTIFICATE OF SERVICE

I, Justin P. Nichols, certify that a true and correct copy of the foregoing instrument was served upon the plaintiffs and defendant, by and through their attorneys of record, in accordance with the Federal Rules of Civil Procedure, on this 25th day of May, 2011.

JUSTIN P. NICHOLS

John M. Majoras, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

James J. Sebelia, Esq.
Grant & Eisenhofer, P.A.
485 Lexington Avenue
New York, New York 10017

34

John Paseka
12 Westwind Drive
Norwalk, Ohio 44857
June 20th, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, PA
485 Lexington Avenue
New York, NY 10017

Reference: **Objection to Proposed Settlement in Blessing V. Sirius Radio Inc.**
**(Civil Action No 09-CV-10035 HB)**

Dear Mr. Sabella:

I am responding to the letter I received in regards to the class action settlement in the matter of Sirius Radio, commencing on July 29th, 2008. As a result of the increase in cost , several phone calls had been made with  continuous phone conversations I had with representatives from Sirius to question the cost increase. After repeated conversations resulting in stress and confusion, I could no longer deal with this company. Finally on 05-13-10, I cancelled my subscription with it expiring on 10-05-10.

According to the settlement I would be entitled one month free service/subscription to the Sirius Radio. I feel that due to all of the anxiety and stress I and several others endured during the course of the increase, instead of one month of free service, it should be free service during the time of the customer's subscription or cash value of the increase for that period. The cash value or free service should be the choice of the customer in all fairness.   I had been a customer since 2006. My account number was 1510667189 and if needed my phone number is 419-668-5463.

Thank You,
John Paseka
John Paseka

35

Jeff Pasquino
2128 Soundings Crescent CT
Suffolk, VA 23435
(757) 483-2394
May 27, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Dear Mr. Sabella:

This letter is to notify you that I object to the Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB, as a Class Member. I object the proposed Settlement because it does not adequately compensate class members.

As a former subscriber, the current settlement only provides one month free of internet access despite the fact that I paid the "music royalty fee" on two accounts for more than a year. A fair settlement would be a full refund of "music royalty fees" to all subscribers in a form a check or money order and an admission of guilt. The Settlement should specifically state that XM Sirius did violate Federal Antitrust Laws by creating the "music royalty fee" in an attempt to circumvent the FCC restrictions and condition of the merger. By XM Sirius failing to admit and the court failing to recognize the violation of Federal Antitrust Laws, nothing prevents them from creating yet another form of increase by another name to circumvent this class action suit. Therefore, as currently written this Settlement will mainly benefit you and your law firm at the expense of the people that were actually affected by XM Sirius' violation of Federal Antitrust Laws. It neither compensates the affected class nor serves as a deterrent to XM Sirius or any other business from repeating this process.

Furthermore, it is equally obvious that neither you nor the court is really interested in providing justice for the class by how difficult, tedious, and time consuming the requirements are to opt out or object to the Settlement. For that, you, and the Court for allowing it to happen, should be ashamed.

Sincerely,

Jeff Pasquino

36

## OBJECTION TO CLASS ACTION SETTLEMENT
### Blessing v. Sirius XM Radio Inc.
### Civil Action No 09-CV-10035 HB.
### Filed by Class Action Member John Pavlica, Jr. -- July 10, 2011

John Pavlica, Jr.
3638 Elmhurst Rd.
Toledo, OH 43613
419-691-6684 x127
July 10, 2011

As a continuous XM Satellite Radio subscriber from December 25, 2004 thru my cancellation of March 2, 2011, I respectfully submit objections to the Class Action Settlement after the sad state of the merger of XM Satellite Radio and Sirius Satellite Radio, as I have previously outlined for the Federal Communications Commission (FCC) in MB Docket 07-57. As an original XM subscriber, this monopolistic merger of July 28, 2008 has been nothing short of a disaster for XM customers with this forced marriage and without a competitive Satellite Radio outlet available, I feel that there should have been a "grandfather clause" for XM customers prior to so-called merger (take-over of XM) with Sirius to maintain pricing and services. I wish to remain a member of the class action lawsuit, and file my objections as listed below.

I object to the class action settlement based upon my comments on the following four items:
**COMMENT ONE**: Increased Pricing
**COMMENT TWO**: Loss of Free Online Access
**COMMENT THREE**: Excessive Royalty Fees.
**COMMENT FOUR**: FREE 'set-aside' minority channels are no longer free per original merger agreement made between the FCC and Sirius/XM.

#### COMMENT ONE:
I thought that in order to permit this satellite radio 'monopoly, Sirius made an "agreement" with the FCC NOT to increase prices or reduce services for three years after the merger. It is my opinion that Mr. Mel Karmazin made 'untruths' to the FCC, the DOJ and Congress regarding not raising pricing as a result of the merger of July 28, 2008.
While the "Base Price" has technically remained the same $12.95, there has been a reduction in what you get for that same 'base price'. As a pre-monopoly XM customer, I paid $6.99 per month for my 2nd and 3rd XM radios, which I had from approximately March 2006 until March 2009. By the time my March 2009 bill arrived, **I was being charged $8.99 per month for each additional radio (which I subsequently cancelled these two extra radios) as an ADDITIONAL $2.00 per month per additional radio is a price increase in my opinion.** Shame on you Mr. Mel Karmazin, that is a price increase and not in the spirit of the merger that you agreed to with the FCC. I can provide my invoice from March 25, 2007 clearly showing the $6.99 charge for my two additional radios, if you require such documentation.

**COMMENT TWO:**

Sirius made an "agreement" with the FCC NOT to increase prices or reduce services for three years after the merger. It is my opinion that Mr. Mel Karmazin made 'untruths' to the FCC, the DOJ and Congress regarding not raising pricing as a result of the merger of July 28, 2008.
While the "Base Price" has technically remained the same $12.95, there has been another reduction in what you get for that same 'base price'. **As a pre-monopoly XM customer, I received unlimited free Internet "XM Online" Internet streaming at no additional cost** (ever since XM changed from $9.99 a month to their $12.95 rate). **On March 11, 2009. The merged company shut-off my free online access and instituted a $2.99 per month fee.** Shame on you again Mr. Mel Karmazin, that loss of an included service and a $2.99 per month fee is indeed a price increase and not in the spirit of the merger that you agreed to with the FCC. I feel that I am owed free "XM Online" Internet streaming as long as I have an XM subscription, as that was a part of my subscription package. You owe me two YEARS of free online service just to 'catch-up'.

**COMMENT THREE:**

Regarding the "U.S. Music Royalty Fee" -- that is a specific percentage agreed upon with music organizations – however, it appears that we – the XM Sirius customers – are being billed far in excess of the actual percentage required. It is my opinion that Sirius is trying to "back-bill" us for royalties previously paid as part of our subscriptions? If so, how long will they be allowed to bill us in excess of the actual royalty fee that they pass-on? If SiriusXM is billing us 7.5% or 8% of our bill while the actual royalty fee is only 6%, then they are profiting by overcharging on the royalty fee. This needs to be examined further by an independent auditor and restitution should be made to the subscribers.

**COMMENT FOUR:**

In my opinion, I consider this an outright boldfaced lie from the Sirius/FCC agreement: the lack of totally free minority 'set-aside' channels.
Correct me if I'm wrong, but the original intent of this agreement between the FCC and Sirius/XM is that ANYBODY could hear these minority set-aside channels on any XM or Sirius radio WITHOUT a subscription? Am I not correct that totally-free channels on any radio was the original agreement with FCC in order to approve the monopoly merger? So if your subscription ran out, or you simply bought a radio without a subscription, you could hear these channels for free? Then WHY has the FCC backed-down on this agreement with a subsequent ruling? And don't tell this engineer that it was for technical reasons either. All XM satellite radios are capable of remote individual channel selection, as has been proved over and over again during their "free previews"; like-wise, Sirius radios with A La Carte capability could also offer these channels to all NON-SUBSCRIBERS. This is a farce that Sirius should be allowed to back-out of offering these channels for free to anyone with an XM or appropriate Sirius radio. In addition, it has taken 3 years, and 3 years later there is now just now one NONE of these channels on the air. In a related note: all XM radios ever sold have "A La Carte" capability, but Sirius does not offer that new 'package' to any XM customers, only owners of two or three select Sirius radios. Why are not ALL XM radios available for a much lower-priced "A La Carte" programming package?

In summary, the monopoly merger of XM Satellite Radio with Sirius Satellite Radio has been a horrible experience for XM customers and a huge mistake on behalf of the FCC as promises made between Sirius/XM and the FCC (in order to approve the monopoly) have been violated as outlined in my COMMENTS.

In my opinion, XM customers (prior to the monopoly merger) are owed their free online access, the same pricing for extra radios, a royalty rate that is a clean exact 'pass-thru' rate, and reasonable audio quality and similar program prior to the merger. As of today, XM customers have had the short straw on all accounts. XM customers prior to the merger should have been "Grandfathered" for all pricing and services prior to the take-over by Sirius on July 28, 2008.

After being an XM customer since December 26, 2004, I cancelled my XM (XM/Sirius) service, effective March 2, 2February 28, 2011, as I am tired of what I consider to be a **continuous reduction in Satellite Radio services from the merged company** (no free online, a higher cost for the radios, not to mention the firing of XM music staff, reduction if quantity of music played, reduction in audio quality, lack of a FREE Emergency Alert Channel (247) after the merger and lying about free access to the 'set-aside' channels).

I wish to remain in the class action lawsuit, but also want my objections heard in United States District Court in New York prior to a decision on the class action lawsuit and new considerations made for all of my four comments made above.

Please contact me if you require addition paperwork to verify my claims and opinions.

Respectfully submitted,

John Pavlica, Jr.
July 10, 2011

CC: Clerk of US District Court. S.D. of NY

37

June 3, 2011

| James J. Sabella | Clerk of the United States District Court |
| Grant & Eisenhofer, P.A. | for the Southern District of New York |
| 485 Lexington Avenue | 500 Pearl Street |
| New York, NY 10017 | New York, NY 10007-1312 |

**RE: Proposed Settlement in Blessing v. Sirius XM Radio Inc.,**
**Civil Action No 09-CV-10035 HB**

Dear Grant & Eisenhofer, P.A.:

I am writing to object to the proposed settlement in the case stated above. I argue that the settlement is not fair to class members and unfairly inflates the monetary compensation of class counsel and representatives. Secondly, the suit does not address the issue of abolishing the charges that were generated as a result of the merger, as stated in the original lawsuit. The proposed settlement only allows for one month of free service, no reactivation fee (which SiriusXM has never charged in the first place), or one month of internet streaming at no cost. Yet, class counsel can get up to $13 million in compensation for attorneys fees. I would suggest that fair compensation for class counsel stand at a maximum of $1.5 million US dollars, to be divided equally between class counsel. In addition, class representatives should not receive more than $10,000 US dollars each.

If the amount of compensation for class counsel would be more than $1.5 million USD, or more than $10,000 USD for class representatives, I would suggest that counsel renegotiate or the court approve the settlement in the following: SiriusXM shall remove and abolish all royalty fees for a minimum period of ten (10) years, allow 3 months of free service to all current and former subscribers **and** allow free internet streaming to all current and former subscribers for a minimum period of six (6) months.

I hope that the Court and Class Counsel hear my objection and consider it appropriately. Thank you.

Sincerely,

Scott Phillips
PO Box 6706
Fullerton, CA 92834
714-523-4705

38

To:    James J. Sabella, Esq.
     GRANT & EISENHOFER, P.A.
     485 Lexington Ave.
     New York, NY 10017

     &

     Clerk of the United States District Court for the Southern District of New York
     500 Pearl Street
     New York, NY 10007-1312

Subject:  Objection to Blessing v Sirius XM Radio Inc., Civil Action No. 09-CV-10035HB

Date:   June 10, 2011

From:   Linda Stavros

     108 Biddle Drive
     Exton PA 19341-1739
     610-363-7896

I object to the Proposed Subject Settlement because I believe the settlement provides no benefit to me as a consumer. I regularly get offered 5 months of free service from Sirius XM. Even with the stipulation that you sign up for a year's service to get those 5 free months, I still believe it is a better deal to me as the consumer than what the proposed settlement is offering.

Furthermore, I have spoken with a couple people who have told me that when you call and speak with one of their agents, you can negotiate even better deals. The lawyers in this case are getting $13 Million, and the people that were wronged are getting basically nothing.

I don't believe this Settlement is fair, and I object to it.

Linda L. Stavros:   *Linda L. Stavros*

# 39

xm merger suit objections dated July 2nd 2011

To;
James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Mr. Sabella,

Here are the reasons I object this settlement! I feel that it does nothing to correct the wrong of these two companies merging!

I don't agree to this settlement because I believe the merger should've never went through in the first place!

As subscribers we chose the service we wanted at the time of buying our radios!

When these companies decided to merge they basiclly took away our rights as consumers from us and also the freedom of choice to decide what type of programming options we have!

I personally think media mergers like this is a bad idea in general simply for the fact it puts a monopoly on our media choices as consumers!

This is the whole reason why I'm excluding myself from this suit!

I hope the courts will atleast grant my opinion as part of the record so that it will help sway future mergers like this one!

I believe we ought to go back to the old days when it was hard for companies to buy out their competition!

The only evidence I can offer to my claim is the fact that when one man or company controls the flow of media all lose because it takes away a choice that one can make when being objective and coming to ones own conclusion!

The merger itself is proof of this! in 2004 when I first subscribed to XM Radio I carefully read the programming details of each company and chose between the one i thought I'd like the best!

Now that choice has been taken away from me plus we now only have ONE satellite radio option!

Page 1

xm merger suit objections dated July 2nd 2011

I thank you for your time!

From:

Mr. Anthony P. Stone
1231 Glenwood Drive
Dalton, GA 30721-2616 USA
706.229.0558

**40**

Douglas E. Strong
PO Box 115
Fernwood, ID 83830-0115
208-245-3026
June 7, 2011

James J. Sabella, Esq
Grant & Eisenhoffer, P.A.
485 Lexington Avenue
New York, NY 10017

Dear Sir:

I object to the proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No. 09-CV-10035 HB.

I believe that the merger of a subsidiary of Sirius Satellite Radio Inc. with XM Satellite Radio Holdings Inc did violate federal antitrust laws and that the proposed settlement offers little relief to the subscribers. In fact, if the court approves the settlement and grants the request for attorneys' fees and costs of up to $13 million, this will only result in even higher fees charged to subscribers like myself.

It appears to me that the proposed settlement will only enrich lawyers at the expense of subscribers. I did not ask to become a part of this action, but I would much prefer a decision on whether antitrust laws were violated or not, and let each side pay their own legal fees.

Sincerely,

Douglas E. Strong

# 41

*Brian and Sharon Studt*
*25766 Oak Haven Court*
*West Harrison, IN 47060*
*(513) 470-0855 or (513) 919-1872*

June 14, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Clerk of the United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

REF:  Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB

I am in receipt of the postcard regarding the Class Action Settlement with Sirius XM Radio.  I
understand I can voice an objection as a FORMER subscriber.  The only objection I have is I
don't agree with the following:

> *Sirius XM has agreed to allow former subscribers who cancelled their Sirius XM*
> *service between July 29, 2009 and July 5, 2011 to (a) reconnect their satellite*
> *radio without paying a reactivation fee and receive one month of basic satellite*
> *radio service at no cost; or (b) receive one month of Sirius XM Internet streaming*
> *service at no cost.   To get these benefits former subscribers should go to*
> *www.siriusxm.com/blessingclassaction after approval of the Settlement.*

The reason I don't think this is a fair settlement to former subscribers is due to the fact that the
reason they are being sued is the exact same reason I cancelled my service with them.  Why
would I want to reactivate my radios?  When my rates got raised and I called and asked why, I
was told it was due to U.S. Music Royalty fees.  When asked what these were exactly, the
customer rep at XM could not answer my question so I cancelled my services.  I was not going to
pay an extra fee that could not be explained to me.

I think former subscribers like me have reasons as to why they are "former subscribers" so why
would we want to "reactivate" our service with them?  There should be some kind of cash
settlement offered to the people that do not wish to go back to using their services and being a
customer …these are the reasons we left as a customer in the first place !

Sincerely,

Brian and Sharon Studt

42

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Mr. Sabella,

I officially object to the proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-
10035 HB. I am a class member, as I have been a Sirius subscriber since 2006 and therefore have paid
the U.S. Music Royalty Fee and have lost the ability to listen online due to the initiation of a monthly fee
for that service.

That said, the reason I object is not because I want a different settlement. I object because I find the
entire lawsuit to be frivolous. I feel that Sirius is a cost-effective option for listening to music and other
forms of entertainment. It is certainly not a monopoly. I can still listen to comparable entertainment via
broadcast radio, cds, and various online services even in the car thanks to smartphones, etc. I pay for
Sirius because I feel the entertainment options and quality they offer are worth the cost. I do not agree
that the merger affected me in any negative manner.

Regards,

Kenneth Taylor
836 SW High Ave
Topeka, KS 66606
785-430-7316

# 43

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL BLESSING, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) 09 CV 10035 (HB) |
| | ) |
| SIRIUS XM RADIO INC., | ) |
| | ) |
| Defendant. | ) |

### OBJECTION OF LANGE M. THOMAS
### AND NOTICE OF INTENTION TO APPEAR

NOW COMES Lange M. Thomas, 4713 Oakshire Drive, Houston, TX 77027,

telephone number 832-347-8179, and objects to the proposed settlement of this class

action and the request for attorney's fees. Mr. Thomas subscribed to Sirius SM between

July 29, 2008 and July 5, 2011, and received a mailed notice of this settlement. Mr.

Thomas intends to appear and argue at the fairness hearing scheduled for August 8, 2011

through his undersigned counsel.

### I.     The Notice in This Case Fails to Comply With FRCP 23(h).

Most Class members have no access to Class Counsel's fee motion, and the

Notice provides them with no information about how a copy might be obtained or when it

would be filed, even though that information was known at the time the notices were

mailed out. The notice procedure followed in this case seems designed to prevent class

members from making any timely or informed fee objections.

Fed. R. Civ. P. 23(h) provides:

(1) *Motion for Award of Attorney Fees*. A claim for an award of attorney fees
and nontaxable costs must be made by motion under Rule 54(d)(2), subject to
the provisions of this subdivision, at a time set by the court. Notice of the

motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) *Objections to Motion.* A class member, or a party from whom payment is sought, may object to the motion.

(3) *Hearing and Findings.* The court may hold a hearing and must find the facts and state its conclusions of law on the motion under Rule 52(a).

This rule requires reasonable service of *"the motion"* on all class members. *In re: Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-994 (9th Cir. 2010).

> The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed.... The plain text of the rule requires that any class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed. In this case, although notice of the motion was provided to the class, class members were deprived of an adequate opportunity to object to the motion itself because, by the time they were served with the motion, the time within which they were required to file their objections had already expired.

*Id.*

Because Class Counsel did not file their motion until fee objections were due, and never directed reasonable notice of their fee motion to all class members, this Court is without authority to approve any fee until and unless Rule 23(h) is complied with.

## II.    The Non-Monetary Settlement Is Inadequate, and The $13 Million That Sirius Is Willing To Pay To Rid Itself of this Lawsuit Should Be Considered Property of the Class.

The value of the proposed settlement is entirely dependent upon the number of current subscribers who elect to renew their memberships before January 2012, and the number of former subscribers who elect to reactivate their memberships during that time. Furthermore, the value of the settlement is dependent upon proof that Sirius had resolved to raise its monthly rates by $2 per month beginning on July 28, 2011. No proof of this

2

has been submitted or filed, and the notice states merely that Sirius "contemplated" such a change. Therefore, the benefits offered by the proposed settlement are of dubious value, since Sirius may have determined not to raise its monthly rates at the current time because such a move would have caused it to lose a large number of customers in the current economic climate.

This case, clearly, has not created a common fund, and the attorney's fees will not be paid out of a common fund. Therefore, this case is not governed by the equitable considerations that have led courts to permit an award of an attorney's fee that includes a multiplier in common fund cases. *See e.g. Alyeska v. Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-59 (1975) (noting that attorney's fees were paid "from the fund," which changed basis of fee from statute to equity).

Class Counsel have not provided a principled basis for treating this antitrust class action differently from *Perdue v. Kenny A.*, 2010 U.S. LEXIS 3481 (April 21, 2010). As Class Counsel concede, this settlement creates no "pot of money," and any attempts to value the settlement are inherently unreliable. Why would the Court even try to engage in such a speculative valuation process, when the law is clear that the Court has discretion to use the lodestar method, which the Supreme Court has recently held is the presumptively reasonable fee for all but the most rare and exceptional cases? *See Perdue v. Kenny A.*, 2010 U.S. LEXIS 3481 (April 21, 2010).

The use of the lodestar method is mandatory in this non-monetary settlement. The lodestar should not be enhanced by any multiplier, or by a very modest one, based upon recent Supreme Court caselaw, since this is hardly a rare or extraordinary result. As

3

this is an 09 case, the requested fee of $13 million undoubtedly far exceeds class counsel's reasonable lodestar.

III.     **Agreeing Upon A Fee That Exceeds Defendant's Potential Liability Is Problematic and Suspect.**

Class Counsel may argue that their fee request is justified by Rule 23(h)'s reference to "agreement of the parties." It is axiomatic, however, that a court has a duty to scrutinize attorney's fees regardless of their source, and regardless of whether they are to be paid separately by the defendant or taken from a common fund. "A district court is not bound by an agreement of the parties with regard to fees... The court must scrutinize the agreed-to fees ... and not merely ratify a pre-arranged compact." *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). *Accord, Rosenbaum v. Macallister*, 64 F.3d 1439, 1442 (10th Cir. 1995) (objector may appeal award of attorney's fees "even when the defendant agrees to the amount of the fees in the settlement agreement"); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 (9th Cir. 1999)(court's duty to scrutinize fee agreement exists independently of any objection). A court "is not bound by the agreement of the parties as to the amount of attorney's fees" and must not merely "ratify a pre-arranged compact." *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980).

If a court must scrutinize an agreed-upon fee, it must have some standard against which to measure the fee, independent of the agreement. Here, that standard is federal statutory fee-shifting jurisprudence. As the Ninth Circuit held in *Staton v. Boeing, supra*,

> The assumption in scrutinizing a class action settlement agreement must be, and always has been, that the members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high. If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits

4

provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.

327 F.3d at 964.

Here, the Defendant has agreed to pay Class Counsel a fee that is greater than Class Counsel could receive were it to win this case at trial, or to petition the court for fees as a prevailing party in the absence of an agreement. One must question why the Defendant, with knowledge of the governing fee standards set forth above, would agree to overcompensate Class Counsel on fees.

20 law professors with expertise in the area of legal ethics have gone on record to condemn the practice whereby a plaintiff's attorney directly negotiates his or fee with a defendant, and asserted that to do so is both a breach of the attorney's fiduciary duty and a violation of professional ethics. *See* September 17, 2007 letter to ABA Ethics Counsel attached hereto as *Exhibit A*. The law professors further contend that any amount not awarded to class counsel as attorney's fees becomes the property of the class, and should not revert to the defendant. *Id.*

Mr. Thomas contends that the Sirius' agreement to overcompensate Class Counsel in this case came at the expense of the class members. The $13 million that Sirius has agreed to pay Class Counsel should be treated as the common fund for the benefit of the class, and Class Counsel should receive no more than their lodestar. The remainder should be paid to class members.

**IV.     The Settlement Must Be Valued Based Upon Subscriptions Renewed or
         Reactivated.**

The law is clear that, if this Court were to attempt to treat this settlement as a

common fund and to place a value on it, the value must be determined based upon

benefits actually claimed or received by class members. That means that the value of the

proposed settlement cannot be known until December 31, 2013, when the number of

current customers who renewed their subscriptions, and the number of former subscribers

who reactivated their subscriptions, is known.

Managing Class Action Litigation: A Pocket Guide for Judges (2009), published

by the Federal Judicial Center in order to provide guidance to federal judges presiding

over class action litigation, clearly makes the point that, when valuing settlements for

purposes of a percentage of the fund fee calculation, federal courts should base the fee on

the value of benefits actually claimed:

### A. Evaluating monetary and nonmonetary results achieved

The 2003 Committee Note to Rule 23(h) gives the following guidance for
determining attorney fees based on the creation of a monetary fund for the
common benefit of the class: the "fundamental focus is the result actually
achieved for class members."
In cases involving monetary benefits, do not be misled by party valuations
of the settlement that presume a 100% claims rate by class members. Insist
on actual information on claims filed to determine the benefit to class
members and use that information both to place a value on the settlement
and to award attorney fees, as the district judge did in *Sylvester v. CIGNA
Corp.*, 369 F. Supp. 2d 34, 50–53 (D. Me. 2005). That value—plus the
value of any nonmonetary relief—serves as the starting point for applying
the percentage-of-value method in determining appropriate attorney fees
(discussed below).

Likewise, in cases in which the benefit to the class is nonmonetary
(coupons, discounts, warrants, and the like), determining the actual value
to the class requires looking beyond the face value of nonmonetary or
contingent benefits. **Redemption data or other evidence of class use is**

6

essential. In some cases, particularly settlements involving injunctive or declaratory relief, you might use expert valuations based on reliable, objective standards. In other cases, perhaps a majority, the only reliable test of the benefit to the class will be evidence of class members' use or redemption of the coupons, warrants, or other nonmonetary scrip. *See* MCL 4th § 21.71; *see also* Class Action Fairness Act, 28 U.S.C. § 1712(a) (2008) (coupon settlements). **In such cases, it is especially important to link the amount of any attorney fees with the actual benefit to the class.**

A direct way to ensure that you have sufficient information to determine attorney fees in cases with nonmonetary benefits is simply to hold back the portion of any attorney fee awards that is linked with coupons, discounts, or other nonmonetary benefits until after the redemption period has ended and the value of the benefits can be established by calculating class members' actual use. For example, the court expressly reserved the determination of any attorney fees to be paid to plaintiffs' counsel until after the parties had provided the court with information concerning the distribution of benefits in *Strong v. BellSouth Telecommunications, Inc.*, 173 F.R.D. 167 (W.D. La. 1997), *aff'd*, 137 F.3d 844, 848 (5th Cir. 1998). Note that redemption of a coupon does not automatically mean the member received a benefit. If similar discounts are provided to consumers outside of the class, the benefit to the class might be less than the face amount of the coupon—or perhaps no benefit at all.

To align plaintiff counsel's interests with those of the class, to discourage the use of a reversion clause, and to negate the effect of a clear sailing agreement, consider linking the award of attorney fees to the value of the funds distributed to the class or the coupons redeemed by the class (see section V.B, below).

Pocket Guide at pp. 17-18 and 28-29 (emphasis added).

Therefore, no value can be placed upon this settlement until December 31, 2011,

at which time the value of the settlement benefits can be estimated based upon the

number of subscriptions that are either renewed or reactivated over the next six months.

Class Counsel state in their Memorandum in support of preliminary approval that, if 25%

of former subscribers reconnect and get one free month of service, the value would be

$25 million. But a 25% take rate would be astonishing and virtually unheard of in class

actions, where typical take rates are between 1 and 5%. *See Sylvester v. CIGNA Corp.*,

7

369 F. Supp. 2d 34, 50–53 (D. Me. 2005).  It is far more likely that the value of this

benefit for former subscribers will be in the $1 million range.

## CONCLUSION

For the foregoing reasons, this Court should deny approval to the proposed

Settlement, and deny Class Counsel any fee award until proper notice is mailed to the

class, and in any event not award an attorney's fee in excess of Class Counsel's

reasonable lodestar.

Lange M. Thomas,
By his attorneys,

Eric S. Horowitz
ZANE and RUDOFSKY
The Starrett Lehigh Building
Suite 1315
601 West 26th Street
New York, New York 10001
(212) 245-2222

John J. Pentz, *pro hac vice* application forthcoming
2 Clock Tower Place, Suite 440
Maynard, MA 01754
Ph: (978) 461-1548
Fax: (978) 405-5161
Clasaxn@earthlink.net

8

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served via first class U.S.

mail on the following counsel on July 11, 2011:

James J. Sabella, Esq.
Grant & Eisenhofer, PA
485 Lexington Ave.
New York, NY 10017

John J. Pentz

2

44

June 1, 2011

Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB

In response to the proposed settlement of Blessing v. Sirius XM Radio I vehemently object to this settlement. By my calculations Sirius XM has raise their prices by over 50% since the acquisition/merger has taken place. A single year moratorium on price increases and the lack of a true price reduction is not nearly enough to justify a settlement. In my opinion the only people winning in this case are the legal firms who should be representing the plaintiffs/publics best interest.

I would only consider a settlement if it were a multiyear price increase moratorium and a much more substantial credit on past payments.

Respectfully,

Bryan Tomlin
Account # 1-4591749645
301 N. School Street
Mt Prospect, Il 60056
(847) 749-3699

45

June 30, 2011

HONORABLE HAROLD BAER, Jr.
UNITED STATES DISTRICT JUDGE
District Court for the Southern District of New York
500 Pearl Street
New York, NY 1007-1312
#1 7009 2820 0000 9065 5463

JAMES J. SABELLA, ESQ.
GRANT & EISENHOFER,
P.A.
485 Lexington Avenue
New York, NY 10017
#2. 7009 2820 0000 9065 5463

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL BLESSING, et al.,
on Behalf of Themselves and All Others Similarly Situated,
Plaintiffs,

-against-

SIRIUS XM RADIO INC.,
Defendant.

---

Sent CERTIFIED / RETURN RECEIPT REQUESTED  # SEE ABOVE *1 *2

**RE:    Objection to Class Settlement regarding above**

**The Honorable Court of New York/Esquire Sabello,**

I am formerly lodging an objection to the settlement by means of my rights as listed as one of the many Class individuals contained in the above case.

The reasons for such an objection, and generally speaking at first, followed by a detail are as follows;

> Concern that "former" customers who had cancelled their subscriptions with the Defendant, for any number of reasons, are securing better restitution, than individuals like myself. Individuals whom have chosen to remain with the Defendant, sustaining more harm, by having Out of Pocket Expense.

Continued....

CARL BLESSING, et al.,
on Behalf of Themselves and All Others Similarly Situated
Plaintiffs,

-against-

SIRIUS XM RADIO INC.,
Defendant.

Here is an example that I will posit for your consideration (Out of Pocket Expenses), referred to
as OOPE);

- Renewal of the current membership occurs on March/2011
- Settlement agreement allows for retention of current membership fees for up to one year,
  as long as a request for extending the current membership occurs before 12/31/11
  (undetermined amount of money, as rates are subjects to increase at Sirius's discretion)
- Current membership cost is $290.42 for two accounts (see attachment #01), which should
  only be $241.34 based on the agreement sent prior to renewal and enclosed as attachment
  #02 – LOSS of $49.08 *ATTCH. #5*
- This renewal will allow for a savings of $2.00 for the remainder of 2011 and any renewal
  time from March 2012 through March 2013, as a result of bullet 2 above – OOPE of
  $10/ea for remainder of 2011, and $24/ea for the next subscription period of 2012 for a
  total of $68
- Finally additional radio fees of $8.99 were never an option for a current membership in
  any of my discussion with Sirius. I was told a whole new subscription had to have been
  ordered, which was. Had these fees been made available, one full subscription could
  have been reduced to by $115.28 in 2010, $126(aprx) in 2011. Had this been the case, I
  should have saved a total of apprx 241.00. OOPE being $241.

Simple Mathematics equate the total savings above (OOPE) for this situation to be
$358.00 for staying with the company.

In comparison, the same person whom had cancelled their subscription and are eligible
for this settlement, would have saved the years subscription fee for two radios for the
2010 renewal period of $303.51. In addition when resigning up they will have saved the
$30 re-activation fee for a total OOPE of 333.51, plus one month off the yearly
subscription fee. In a comparable situation, two radios would equate to approximately
$25. Their total OOPE is now the same at the above example of approximately $358.

The stark difference is my situations makes me out the money, and the comparable person who dropped the subscription is not, plus they get to get back in with no loss to Sirius. How is Sirius paying a penalty for their behavior after the merge?

Submitted for your consideration,

Jerry A. Pigone, Sirius Customer
661 Newbury street
Springfield, MA 01104



*ATT.#1*

# (((SiriusXM)))

## Statement: 03/22/2011

| Gerald Ugone<br>861 NEWBURY ST<br>SPRINGFIELD, MA<br>01104-1146 | Account Number<br>107396502035 | Username<br>DAHOSSPLAYA@AOL.COM | Invoice Number<br>884025853 | Due Date<br>03/22/2011 |
|---|---|---|---|---|
| **Amount Due** | **$290.42** | | | |

## Account Summary

| Description | Amount |
|---|---|
| Previous Balance | -$1.02 |
| SiriusXM Service | $263.04 |
| Radio Service Fees | $28.40 |
| **Current Charges Subtotal** | **$291.44** |
| **Total** | **$290.42** |

## Service Details for Radio ID 027529574812

| Date | Description* | Charge |
|---|---|---|
| 03/22/2011-02/22/2012 | Sirius Select 1 Year | $131.52 |
| 03/22/2011-02/22/2012 | U.S. Music Royalty Fee | $14.20 |
| | **Total Current Charges** | **$145.72** |

*In May, 2011, the names of many Sirius and XM packages were changed. When viewing your current and past online statements, you will see the updated package names displayed.

## Service Details for Radio ID 032979780157

| Date | Description* | Charge |
|---|---|---|
| 03/22/2011-02/22/2012 | Sirius Select 1 Year | $131.52 |
| 03/22/2011-02/22/2012 | U.S. Music Royalty Fee | $14.20 |

*1  28.40*
*2  28.40*

**Total Current Charges**                          **$145.72**

*In May, 2011, the names of many Sirius and XM packages were changed. When viewing your current and past online statements, you will see the updated package names displayed.

* Please refer to the SiriusXM Customer Agreement (http://www.siriusxm.com/customeragreement) for full details regarding our fees.

**AN.#2**

**(((SiriusXM)))**

Statement:  03/21/2011

| Gerald Ugone | Account Number | Username | Invoice Number |
|---|---|---|---|
| 681 NEWBURY ST<br>SPRINGFIELD, MA<br>01104-1145 | 107396502036 | DAHOSSPLAYA@AOL.COM | 383205536 |

## Account Summary

| Description | Amount |
|---|---|
| Previous Balance | $257.40 |
| SiriusXM Service | -$268.42 |
| Current Charges Subtotal | -$268.42 |
| Total | -$1.02 |

## Service Details for Radio ID 032979780157

| Date | Description* | Charge |
|---|---|---|
| 03/21/2011-02/22/2012 | Previous Subscription Credit | -$111.86 |
| | **Total Current Charges** | -$111.86 |

*In May, 2011, the names of many Sirius and XM packages were changed. When viewing your current and past online statements, you will see the updated package names displayed.

## Service Details for Radio ID 027529574812

| Date | Description* | Charge |
|---|---|---|
| 03/21/2011-02/22/2012 | Previous Subscription Credit | -$156.56 |
| | **Total Current Charges** | -$156.56 |

*In May, 2011, the names of many Sirius and XM packages were changed. When viewing your current and past online statements, you will see the updated package names displayed.

* Please refer to the SiriusXM Customer Agreement (http://www.siriusxm.com/customeragreement) for full details regarding our fees.

Print Billing Details                                                                 Page 1 of 2

(((SiriusXM)))                                                        ATT. #3

**Statement:** 02/22/2011

| Gerald Ugona<br>881 NEWBURY ST<br>SPRINGFIELD, MA<br>01104-1145 | Account Number<br>107396502035 | Username<br>DAHOSSPLAYA@AOL.COM | Invoice Number<br>858292039 | Due Date<br>02/22/2011 |
|---|---|---|---|---|
| | **Amount Due** | **$267.40** | | |

## Account Summary

| Description | Amount |
|---|---|
| Previous Balance | $0.00 |
| SiriusXM Service | $241.34 |
| Radio Service Fees | $26.06 |
| Current Charges Subtotal | $267.40 |
| Total | $267.40 |

## Service Details for Radio ID 027529574812

| Date | Description* | Charge |
|---|---|---|
| 02/22/2011-02/22/2012 | Sirius Select 1 Year | $142.45 |
| 02/22/2011-02/22/2012 | U.S. Music Royalty Fee | $15.38 |
| | **Total Current Charges** | **$157.83** |

*In May, 2011, the names of many Sirius and XM packages were changed. When viewing your current and past online statements, you will see the updated package names displayed.

## Service Details for Radio ID 032979780157

| Date | Description* | Charge |
|---|---|---|
| 02/22/2011-02/22/2012 | Sirius Select 1 Year | $98.89 |
| 02/22/2011-02/22/2012 | U.S. Music Royalty Fee | $10.68 |

1 26.06
2 26.06
3 —

Print Billing Details

**Total Current Charges**      **$109.57**

^In May, 2011, the names of many Sirius and XM packages were changed. When viewing your current and past online statements, you will see the updated package names displayed.

\* Please refer to the SiriusXM Customer Agreement (http://www.siriusxm.com/customeragreement) for full details regarding our fees.

# ((( SiriusXM )))



## Statement: 02/22/2010

| Gerald Ugone<br>681 NEWBURY ST<br>SPRINGFIELD, MA<br>01104-1145 | Account Number<br>107396602035 | Username<br>DAHOSSPLAYA@AOL.COM | Invoice Number<br>690642022 |
|---|---|---|---|

## Account Summary

| Description | Amount |
|---|---|
| Previous Balance | -$179.24 |
| SiriusXM Service | $142.45 |
| Radio Service Fees | $36.79 / |
| Current Charges Subtotal | $179.24 |
| Total | $0.00 |

## Service Details for Radio ID 027529574812

| Date | Description* | Charge |
|---|---|---|
| 02/22/2010-02/22/2011 | Sirius Select 1 Year | $142.45 |
| 02/22/2010-02/22/2011 | U.S. Music Royalty Fee | $21.79 2 |
| 02/22/2010-02/22/2010 | Activation Fee | $15.00 3 |
| | **Total Current Charges** | **$179.24** |

*In May, 2011, the names of many Sirius and XM packages were changed. When viewing your current and past online statements, you will see the updated package names displayed.

* Please refer to the SiriusXM Customer Agreement (http://www.siriusxm.com/customeragreement) for full details regarding our fees.

*1  62.44*
*2  32.44*
*3  29.99*

# (((SiriusXM)))

## Statement: 02/23/2010

| Gerald Ugone<br>661 NEWBURY ST<br>SPRINGFIELD, MA<br>01104-1145 | Account Number<br>107396502035 | Username<br>DAHOSSPLAYA@AOL.COM | Invoice Number<br>691340823 | Due Date<br>02/23/2010 |
|---|---|---|---|---|
| | **Amount Due**   $124.27 | | | |

### Account Summary

| Description | Amount |
|---|---|
| **Previous Balance** | $0.00 |
| SiriusXM Service | $98.62 |
| Radio Service Fees | $25.65 |
| **Current Charges Subtotal** | **$124.27** |
| **Total** | **$124.27** |

### Service Details for Radio ID 032979780157

| Date | Description* | Charge |
|---|---|---|
| 08/22/2013-08/22/2013 | Activation Fee | $0.01 |
| 02/23/2010-02/22/2011 | Sirius Select 1 Year | $98.62 |
| 02/23/2010-02/22/2011 | U.S. Music Royalty Fee | $10.65 |
| 02/23/2010-02/23/2010 | Activation Fee | $14.99 |
| | **Total Current Charges** | **$124.27** |

*In May, 2011, the names of many Sirius and XM packages were changed. When viewing your current and past online statements, you will see the updated package names displayed.

\* Please refer to the SiriusXM Customer Agreement (http://www.siriusxm.com/customeragreement) for full details regarding our fees.

## Thank you for being a loyal Sirius listener

Dear Gerald,

We appreciate loyal listeners like you, and we hope you're pleased with all the great programming on Sirius. With over 130 channels, we bring you more of what you love - the most commercial-free music, plus sports, news, talk and comedy. For the latest programming information, schedules and more, visit sirius.com/whatsonsirius.

To make sure you have the best listening experience and enjoy Sirius uninterrupted, you're automatically enrolled in our convenient **automatic renewal** program. The credit/debit card you provided will be charged the rates shown below, *or the then-current rates,* based on your Plans and billing dates. If you have more than one radio on your account on annual or longer-term plans, we'll send you a similar reminder before those renew too, and your credit/debit card will be charged for each subscription at *the then-current rate.* And as always, if you wish to cancel, you can do so at any time. Just call Listener Care at 1-866-635-2342. To view your complete Sirius Terms and Conditions, visit sirius.com. The details of your recurring subscriptions are:

ESN#: 032979780157
Plan: Annual
Bill Date: 02/22/11
Subscription Fee*:$98.89
Music Royalty Fee**: $10.68
Package: Sirius Everything

ESN#: 027529574812
Plan: Annual
Bill Date: 02/22/11
Subscription Fee*:$142.45
Music Royalty Fee**: $15.38
Package: Sirius Everything

Account # 10739650203
Credit Card: Visa
Last 4 Digits: 7763

If there is anything we can do to enhance your experience with Sirius Satellite Radio, please do not hesitate to contact us at sirius.com or at 1-866-635-2342.

Thanks for listening.

The Sirius Team

\* Other fees and taxes will apply, and details above may not reflect recent account activity.
\*\* Radio subscriptions that include music channels will be charged a "U.S. Music Royalty Fee" per paid month on your Plan term. For details, see sirius.com/usmusicroyalty.

## Make The Most Of Your

### Sirius.com has it all for you
Make sirius.com your one-stop shop for all th
and account information you need to get the
Sirius subscription.

- **Get programming news custom-m**
  Tell us your listening preferences at
  **sirius.com/whatilike**, and we'll send you
  about the Sirius music, sports, events an
  you care about.

- **Channel news, lineups, schedules a**
  Visit **sirius.com/whatsonsirius**, and you
  information to help you locate the progra
  matters to you. Game schedules, news a
  interviews and performances, channel lis
  clips - it's all here.

- **Special deals for Sirius subscriber**
  Need an additional radio to listen to Sirid
  home, office, backyard or on the go? Vis
  **sirius.com/suboffer** to see special deals

- **Manage your account**
  Click the My Account tab at the top of sir
  to our online e-care site. You can make a
  change your programming package or up
  information.

**Emergency Alert System.** Sirius Radio provic
alerts from the Emergency Alert System (EAS)
channels. State and local emergency alert mess
information specific to 20 major metropolitan n
provided on Sirius' 11 Instant Traffic, Weather &
(Sirius 148 - 158). Sirius does not provide state a
emergency alert messages on any of its other c



SIRIUS
SATELLITE RADIO

PO Box 11783
South Hackensack, NJ 07606

Everything Worth
Listening To
IS ON Sirius

IMPORTANT SUBSCRIBER
INFORMATION INSIDE

Gerald Ugone
661 Newbury St
Springfield, MA 01104-1145

PRESORTED
FIRST CLASS
US POSTAGE
PAID
SIRIUS

46

June 8, 2011

Mr. James J. Sabella, Esq.
Grant & Eisenhofer, P.A.
485 Lexington Avenue
New York, NY 10017

Dear Mr. Sabella:

I object to the proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil
Action No. 09-CV-10035 HB because I tried to purchase another lifetime
subscription (as I already have two), and SIRUS has doubled the price. From the
beginning, I read that the prices that XM offered the public would not change
because Sirius acquired them. However, I knew it would be just a matter of time.
**I strongly object and only hope that the Judge consider this.**

Also, the attached message that I sent to SIRUS via email in January of this year
is indication that they are not going to be fair.

If you have any questions, I can be reached at (202) 316-0996.

Sincerely,

Charlene Washington
14 Jefferson Street NE
Washington, DC 20011

Attachment

cc: Clerk of the United States District Court
        for the Southern District of New York

January 25, 2011

Your representatives and managers need more training. My brother-in-law
gave me his radio. My sister and I called on January 19 and spoke to a
representative to try to get a lifetime subscription. The representative said
no problem. She looked up my record and said "I can give you this radio
lifetime subscription at the same rate that you paid for your other lifetime
subscription. I said "well, thank you." She said no problem. However,
when I gave her the number of the radio, she said that the previous owner
(my brother-in-law) had not cancelled the radio. I told her that he had
cancelled his service. She said that even though he cancelled his service, he
still needed to cancel the radio. I tried calling him while she was on the
phone, but he was seeing a patient. She told me to call back when my
brother-in-law had a chance to cancel the radio. I asked her could she make
a note in the system as to what she had told me. She said that she was in fact
already doing that. I asked her to read to me what she was placing in the
system. She did and it read that I would call back to get a lifetime
subscription for a radio at the discounted price of $365.67. On January 21, I
called back and talked with a representative. I informed her that there
should be a note in the system about me adding a radio on to my account.
She said that no notes where entered into the system since December. She
asked me to hold while she looked into another system. She came back to
the phone and said that she had no note in the system and that she would
have to charge me $499.99 plus tax and fees, which would amount to
approximately $600 something depending on the state taxes. I asked to
speak to a manager; she said no problem and placed me on hold. After
holding on about 10-15 minutes (no problem because she told me that I
would have to hold on until she found someone), CJ (manager) came to the
phone. I explained my situation, she said that there was nothing she could
do, and she apologized that the previous representative that I talked with
gave me misinformation. After talking several minutes, she said the only
thing she could possibly do was to waive the royalty fees and taxes and give
me the radio for $499.99. I asked for the corporate office number, which I
called. A lady switched me to the Chief of Staff's office. However, the
Chief of Staff was not available so her assistant took my information and
number and the reason I was calling and said that someone would definitely
call me back. Well this was on January 20. Almost a week ago. I have not
heard from anyone. I am going to try one more time tomorrow to call the
corporate office to get some resolution.

June 8, 2011

Clerk of the United States District Court
    for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Dear Sir/Madame:

I object to the proposed Settlement in Blessing v. Sirius XM Radio Inc., Civil
Action No. 09-CV-10035 HB because I tried to purchase another lifetime
subscription (as I already have two), and SIRUS has doubled the price. From the
beginning, I read that the prices that XM offered the public would not change
because Sirius acquired them. However, I knew it would be just a matter of time.
**I strongly object and only hope that the Judge consider this.**

Also, the attached message that I sent to SIRUS via email in January of this year
is indication that they are not going to be fair.

If you have any questions, I can be reached at (202) 316-0996.

Sincerely,

Charlene Washington
14 Jefferson Street NE
Washington, DC 20011

Attachment

cc:  Mr. James J. Sabella, Esq.
     Grant & Eisenhofer, P.A.

47

3101 N. Pinewood Street
Orange, CA 92865-1223
June 11, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Re:  *Blessing v. Sirius XM Radio Inc.*

Dear Mr. Sabella:

I have been an XM radio subscriber continuously from August, 2007 through the present time, so I have an interest in this case. I object to this whole lawsuit, which I consider frivolous and unjustified. The claimant is using a claim of antitrust violation which I strongly believed is contrived to benefit the claimant and the tort lawyers bringing this case against XM Sirius radio. I have enjoyed my subscription and feared the financial condition of XM at the time of merger would drive it out of business. I am thankful for the merger, so I could continue my enjoyment of this useful service.

I would thank you for considering my reasons for objecting to this lawsuit.

Sincerely,

Oliver Watson

48

To:     James J. Sabella, Esq.
        GRANT & EISENHOFER, P.A.
        485 Lexington Avenue
        New York, NY 10017

        Clerk of the United States District Court for the Southern District of New York
        500 Pearl Street
        New York, NY 10007-1312

Fr:     David Wiedwald
        7126 Brightwaters Court
        Liberty Township OH 45011
        513-777-9433

Dt:     May 30, 2011

Re:     SiriusXM Radio Class Action Lawsuit Objection(Civil Action No 09-CV-10035 HB)

On May 28, 2011 I received an email advising of the proposed Sirius XM Radio Class
Action settlement. While I find merit to the lawsuit as prices have been adjusted contrary
to what was originally discussed, I object to the proposed Settlement in Blessing v. Sirius
XM Radio Inc., Civil Action No 09-CV-10035 HB. I had previously called Sirius when a
bill was received itemizing the new "music royalty fee". When pressed if this was a price
increase in disguise since it had never been charged before (and contrary to the original
XM / Sirius agreement that prices would not increase), the agent could not provide a
response. Seriously, no response at all was provided. With regard to the proposed
settlement, I find no meaningful economic benefit is provided to any current subscriber.
Increasing the period where prices will not increase by five months is not economically
meaningful. Unfortunately, the only real economic benefit seems to be for the attorneys
working the case who are being paid for generating no real result. I find this rather
disturbing. Ultimately, this settlement needs to be reworked to provide cash
consideration to the class.

Thank you for considering the above.

Sincerely

David R Wiedwald

**49**

6-16-11

I Janice Woolery am objecting &
wish to be part of the lawsuit & with
Sirius Radio, and believe fully in the
lawsuit being held against them, and
Support the lawsuit 100% nobody
Should mislead or cheat anyone. Want
lawsuit to continue on my side and move forward
ps Thank you          Thank you.
for the information   Janice Woolery
and please keep me
updated as the lawsuit
moves forward
my email is
        dolphin4@ sbcglobal.net

            wishing you good luck &
            hoping you get them good
            for ripping people off.