UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL BLESSING, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                                    Plaintiffs,<br><br>   -against-<br><br>SIRIUS XM RADIO INC.,<br><br>                                    Defendant. | No. 09-cv-10035 (HB)(RLE) |

**DECLARATION OF SHANNON R. WHEATMAN, PH.D. ON IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PLAN**

1.   I am a Vice President of Kinsella Media, LLC ("KM"), an advertising and notification firm in Washington, D.C. specializing in the design and implementation of class action and bankruptcy notification programs. Together with Rust Consulting, Inc. ("Rust"), KM is the Notice Administrator for this action. My business address is 2120 L Street NW, Suite 860, Washington, D.C. 20037. My telephone number is (202) 686-4111. The facts in this declaration are based on information provided to me by my colleagues, Class Counsel, and Rust.

2.   I was asked by Class Counsel in this action to design the Notices and Notice Plan to inform Class Members about their rights in the litigation. The Court approved the Notices and Notice Plan that was set forth in more detail in the "Declaration of Shannon R. Wheatman, Ph.D., on Adequacy of Notices and Proposed Settlement Notice Program" dated May 13, 2011, and the accompanying exhibits. In that Declaration and my attached C.V., I detailed my class action notice experience, my leadership in the form and content of class action notice, and my publications on class action notice and due process. I also provided my educational and professional experience relating to notice of class actions and my qualifications to render opinions on the overall adequacy of notice programs.

**SUMMARY OF CONCLUSIONS**

3. The Court-approved Notice Program we designed and implemented for this case achieved each of the planned objectives:

    a. Each element of the Notice Program approved by the Court has been implemented.

    b. The Notice Program, as implemented, reached approximately 97.4% of potential Class Members through Direct Notice and Publication Notice.

    c. Not reflected in the calculable reach figures is a Settlement website administered by Rust, which also provided information about the Settlement to Class Members and a copy of the Long Form Notice.

    d. The Court-approved Notices were noticeable, clear, simple, substantive, and informative. No significant or required information was missing.

4. In my view, the Notice Program, as approved by the Court and administered by the Notice Administrator, provided the best notice practicable under the circumstances of this case, and satisfied due process.

5. The details of the Notice Plan and the basis for my opinion on its adequacy, as well as on the adequacy of the Notice Plan as implemented, are outlined below.

**NOTICE PLAN IMPLEMENTATION**

*Individual Notice*

6. In developing the Notice Program, it was first determined that a comprehensive list of potential Class Members and their email or postal mailing addresses was available from the Defendant, and that it would be reasonable to implement an individual notification effort to reach them.

7. Starting on May 23, 2011, a total of 9,162,286 E-Mail Notices and 6,078,359 Postcard Notices were successfully sent to potential Class Members, using data provided by the Defendant.

8. Before sending the Postcard Notices to the list of addresses provided by the Defendant, these addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"). Any mail that was returned with a forwarding address was re-mailed to the new address indicated by USPS. Any mail that was returned without a forwarding address was further checked through an additional third-party source and re-mailed if a new address was found.

9. As of July 10, 2011, only 439,641 mailings/emailings, or 2.8% of the notices sent directly to Class Members, remain un-delivered. Therefore, overall, the E-Mail Notice and Postcard Notice reached approximately 97.2% of the potential Class.

*Paid Media*

10. To supplement direct notice to Class Members via email or mail, KM provided Class Members with additional opportunities to receive notice through publication of a summary notice in two national newspapers, as follows:

   a) A 1/6th page ad in *USA Today* on Thursday, May 26, 2011.
   b) A 1/6th page ad in *The Wall Street Journal* on Tuesday, May 31, 2011.
   c) A 1/6th page ad in *USA Today* on Thursday, June 2, 2011.

*Online Media*

11. On May 23, 2011, a Settlement website, www.SatelliteRadioSuit.com, went live. By logging on to this website, Class Members could obtain additional information about the Settlement, including a copy of the Settlement Agreement and the Long Form Notice. The Long Form Notice is available on the website in English and Spanish.

12. The website address was prominently displayed in all Notice materials.

13. As of July 8, 2011, there have been 146,808 visits to the website.

*Toll Free Number*

14. On May 23, 2011, the toll-free number, set-up and hosted by Rust, became

operational. By calling this number, Class Members were able to hear answers to frequently asked questions and also to request a Long Form Notice.

15. As of July 10, 2011, the toll-free number has handled 46,830 calls.

### *Exclusions*

16. As of July 10, 2011, 979 potential Class Members have made timely requests to be excluded from the Class.

### **PERFORMANCE AND DESIGN OF NOTICE PROGRAM**

17. ***Objectives were met.*** The primary objective of the Settlement Notice effort in this case was to effectively reach the greatest practicable number of Class Members with a "noticeable" Notice of the Settlement, and provide Class Members with every reasonable opportunity to understand that their legal rights are affected, and that they have a right to be heard and to object to and request exclusion from the settlement. This objective was successful.

18. ***The Notice reached Class Members effectively.*** Our calculations indicate that direct notice in combination with the supplemental media program (*i.e.*, publication of the notice in *USA Today* and *The Wall Street Journal*) reached an estimated 97.4% of potential Class Members. In addition, although not included in the reach percentage above, the Settlement website further enhanced coverage among the Class. In my experience, this reach percentage exceeds that achieved in many other court-approved notice programs. Based on our calculations, I can confidently state that the Class was adequately reached with notice of the Settlement.

19. ***Plenty of time and opportunity to react to the Notice.*** The Notices were initially sent on May 23, 2011, which allowed plenty of time for Class Members to see the Notice and respond accordingly before the July 5, 2011 exclusion and July 11, 2011 objection deadlines.[1] With 43 days from the initial Notice until the exclusion deadline, 49 days until the objection deadline, and 77 days until the fairness hearing, Class Members were allotted more than

---

[1] The exclusion and objection deadlines were subsequently extended to July 14, 2011 and July 19, 2011, respectively.

adequate time to act on their rights.

20. ***Notices were designed to increase noticeability and comprehension.*** The Court-approved Notices were designed to bring the Notices to the attention of Class Members. Because recipients of email and mail are accustomed to receiving junk mail that they may be inclined to discard unopened, the notices were designed to bring the Notices to the attention of Class Members by, for example, including bold and informative headlines. Once people "noticed" the Notices, it was critical that they could understand the contents of the notice. To this end, the Court-approved Summary Notices (Postcard, Email, and Publication Notices) were clearly worded with simple, plain language text to encourage readership and comprehension. They also directed readers to the case website and the toll-free number for more information.

21. In fact, the design of the Court-approved Long Form Notice embodied the previously mentioned illustrative "model" notices that I have developed in collaboration with the Federal Judicial Center.

    a. The Long Form Notice that was available to Class Members through the case website and by request through the toll-free number included a large, bold headline that captured attention and immediately alerted even casual readers that they should read the Notice and explained why it is important.

    b. The Long Form Notice contained a prominent focus on the options that Class Members have, using a straightforward table design, and included details about the Settlement, such as who is affected, and Class Members' rights. A table of contents, categorized into logical sections, organized the information for Class Members, while a question and answer format made it easy to find answers to common questions by breaking the information into simple headings and brief paragraphs.

## CONCLUSIONS

22. Notice of the Settlement in this case reached over 97% of Class Members. Many courts have determined that a 75 or 80 percent "reach" is more than adequate in analogous cases.

Here, we were able to exceed that. This "reach" indicates that the mailed notice campaign was highly successful in providing direct notice to potential Class Members.

23. In addition, although not included in the reach percentage above, the website provided information about the Settlement to Class Members and made available to Class Members a copy of the Long Form Notice.

24. In preparing the Court-ordered Notices in the *Sirius* case, we have employed communications methods that are well-established in our field, and we have eschewed the idea of producing lengthy, legalistic notice documents. We have taken to heart the high standards embodied in the Advisory Committee's notes accompanying the amendments to Federal Rule of Civil Procedure 23(c)(2). We have focused on a primary judicial concern about notice today—effective communication of information about the class action. As expressed in the Advisory Committee's notes accompanying the 2003 amendments to Rule 23:

> *The direction that class-certification notice be couched in plain, easily understood language is a reminder of the need to work unremittingly at the difficult task of communicating with class members.*

25. We have provided evidence demonstrating that the notice effort reached a large number of Class Members, and we have prepared Court-approved Summary and Long Form Notices that adequately informed Class Members of the class action, properly described their rights, and clearly conformed to the high standards for modern notice programs. We designed and implemented a notice program for this Settlement that has been approved by the Court and more than adequately informed Class Members of this case and the proposed Settlement.

26. The Court-approved notice program meets the express requirements of Rule 23 of the Federal Rules of Civil Procedure and, as implemented by the Notice Administrator, has provided members of the Class the best notice practicable under the circumstances, including individual notice to all members who could be identified through reasonable effort.

27. The Court-approved notice program also comports with the guidance for effective

notice articulated in the latest edition of the *Manual for Complex Litigation, Fourth*.

I declare under penalty of perjury that the foregoing is true and correct.

<u>/s/ Shannon R. Wheatman</u>
Shannon R. Wheatman

Executed in Washington, D.C. this 15th day of July 2011.
