UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**CORRECTED- July 18 2011**

| | |
|---|---|
| CARL BLESSING, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>    -against-<br><br>SIRIUS XM RADIO INC.,<br><br>                  Defendant. | No. 09-cv-10035 (HB)(RLE) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' COUNSEL'S APPLICATION FOR AN AWARD
<u>OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES</u>**


**GRANT & EISENHOFFER P.A**.
485 Lexington Avenue
New York, NY  10017
Tel.:  646-722-8500
Fax:  646-722-8501

**MILBERG LLP**
One Penn Plaza
New York, NY  10119
Tel.:  212-594-5300
Fax:  212-868-1229

**COOK, HALL & LAMPROS, LLP**
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, GA  30309
Tel.:  404-876-8100
Fax:  404-876-3477

*Class Counsel*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ............................................................................................... 1

DESCRIPTION OF THE LITIGATION .................................................................. 3

    A.    NATURE OF THE CASE ......................................................................... 3

    B.    THE COURSE OF THE LITIGATION ........................................................ 3

ARGUMENT .................................................................................................... 4

I.     THE REQUEST FOR ATTORNEYS' FEES SHOULD BE APPROVED ...................... 4

    A.    THE REQUEST IS REASONABLE UNDER THE PERCENTAGE METHOD ........ 7

    B.    THE REQUEST IS REASONABLE UNDER THE LODESTAR METHOD ............ 9

    C.    THE REQUEST IS REASONABLE UNDER THE *GOLDBERGER* CRITERIA ..... 13

          1.    The Time And Labor Expended By Counsel ............................ 13

          2.    The Risk Of The Litigation .................................................... 15

          3.    The Magnitude And Complexity Of The Litigation .................. 18

          4.    The Requested Fee In Relation To The Settlements ................. 18

          5.    The Quality Of The Representation ......................................... 19

          6.    Public Policy Considerations ................................................. 20

    D.    THE OBJECTIONS SUBMITTED BY CLASS MEMBERS SHOULD BE OVERRULED ....... 21

II.    PLAINTIFF' COUNSEL'S LITIGATION EXPENSES SHOULD BE REIMBURSED ................................................................................... 23

CONCLUSION ................................................................................................. 24

## TABLE OF AUTHORITIES

Page

**CASES**

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
No. 10-cv-1853, 2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011)................................................12

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2008)................................................10, 11

*Castagna v. Madison Square Garden*,
No. 09-cv-10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ................................................12

*Chin v. RCN Corp.*,
No. 08-cv-7349, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ................................................12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................15

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................*passim*

*Edmonds v. United States*,
658 F. Supp. 1126 (D.S.C. 1987)................................................19

*Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*,
573 F. Supp. 2d 205 (D.D.C. 2008)................................................23

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)................................................10

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................5, 6, 7, 13

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
No. 03-md-1529, 2006 WL 3378705................................................10, 17

*In re AOL Time Warner ERISA Litig.*,
No. 02-cv-8853, 2007 WL 4225486 (S.D.N.Y. Nov. 28, 2007)................................................22

*In re Bisys Sec. Litig.*,
No. 04-cv-3840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007)................................................5, 10

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)................................................6, 10, 12

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
No. 98-cv-4318 (HB), 2001 WL 709262 (S.D.N.Y. June 22, 2001)................................................9, 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................11

*In re Gilat Satellite Networks, Ltd.*,
   No. 02-cv-1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ..........................................12

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................24

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)............................................................................11, 21

*In re Insurance Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009)...............................................................................................11

*In re Linerboard Antitrust Litig.*,
   No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ..............................................17

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96-cv-1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)..................................5, 9, 23

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04-cv-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................*passim*

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................11, 12, 19, 23

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02-md-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) .........................................13, 24

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................11, 15

*In re Portal Software, Inc. Sec. Litig.*,
   No. 03-cv-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...........................................11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997)..................................................................................10, 17

*In re Remeron Direct Purchaser Antitrust Litig.*,
   No. 03-cv-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ................................................11

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   461 F. Supp. 2d 383 (D. Md. 2006)................................................................................21, 22

*In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices & Prods.*
   *Liab. Litig.*, No. 09-md-2102, 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) ..............8, 11, 23

*In re Stock Exchanges Options Trading Antitrust Litig.*,
    No. 09-cv-962, 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ............................................13

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................................12

*In re Tyson Foods Inc.*,
    No. 08-cv-1982, 2010 WL 1924012 (D. Md. May 11, 2010)............................................7, 23

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989)........................................................................................10

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. MDL 1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................................15, 24

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..........................................................................15, 20, 24

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
    No. 06-cv-225, 2010 WL 786513 (D. Nev. Mar. 8, 2010) .....................................................22

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)...........................................................................5, 11, 20

*Johnson v. City of New York*,
    No. 08-cv-3673, 2010 WL 5818290 (E.D.N.Y. Dec. 13, 2010) ..............................................6

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998)....................................................................................................10

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
    487 F.2d 161 (3d Cir. 1973)....................................................................................................10

*Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*,
    No. 03-cv-4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009).....................................................11

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y. 2006) .........................................................................................6, 18

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)......................................................................................................6

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).................................................................................................................10

*Olsen v. County of Nassau*,
    No. 05-cv-3623, 2010 WL 376642 (E.D.N.Y. Jan. 26, 2010).................................................11

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)..................................................................................20

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................16

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999)......................................................................5

*Schneider v. Citicorp Mortgage, Inc.*,
  324 F. Supp. 2d 372 (E.D.N.Y. 2004) ......................................6, 21, 22, 23

*Simmons v. N.Y. City Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009)....................................................................11

*Taubenfeld v. AON Corp.*,
  415 F.3d 597 (7th Cir. 2005) ...................................................................22

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) ..............................................................7, 8

*United Handicapped Fed'n v. Andre*,
  622 F.2d 342 (8th Cir. 1980) .....................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)............................................................5, 10, 20

*Weseley v. Spear, Leeds & Kellogg*,
  711 F. Supp. 713 (E.D.N.Y. 1989) ..........................................................15

**STATUTES AND RULES**

Fed. R. Civ. P. 23(h) ....................................................................................22

Fed. R. Civ. P. 30(b)(6)...................................................................................9

New York General Business Law § 349.............................................................7

Class Counsel respectfully submit this memorandum of law together with the accompanying Declaration of James J. Sabella, dated July 15, 2011 ("Sabella Decl."), in support of their motion for an award of attorneys' fees and expenses,

## INTRODUCTION

By Order dated May 19, 2011, this Court granted preliminary approval of the settlement reached between Plaintiffs and Defendant Sirius XM Radio Inc. ("Defendant" or "Sirius XM") to settle this antitrust class action (the "Action") through a combination of provisions that collectively are estimated to provide benefits to Class Members worth at least $180 million. These benefits are as follows:

a.   The base prices for monthly, quarterly, semi-annual, annual and other long term subscriptions (but excluding lifetime subscriptions) will remain at or below their current rates through December 31, 2011.

b.   The price for subscriptions (beyond the initial subscription) purchased by multi-radio subscribers will remain at or below the current rate through December 31, 2011.

c.   The price for Internet streaming for subscribers with basic subscriptions will remain at or below $2.99 per month through December 31, 2011.

d.   Defendant will not increase the subscription prices for its "Best of" packages (now known as "premier" packages) prior to December 31, 2011.

e.   The U.S. Music Royalty Fee (the "Royalty Fee") will remain at or below its current rate through December 31, 2011.

f.   Subscribers will, irrespective of whether their subscription plans come up for renewal prior to December 31, 2011, be permitted to renew their subscriptions prior to December 31, 2011 at the rates currently in effect and be able to subscribe, at the rates existing through December 31, 2011, to a monthly, quarterly, semi-annual, annual or other then-existing long term subscription plans (but excluding lifetime subscriptions) which will keep their rates at then-existing subscription levels through the entire period of their new subscription term.

g.   Defendant will permit former subscribers who terminated their Sirius XM service between July 29, 2009 and the deadline for requesting exclusion from the Class to either (a) reconnect their satellite radio without paying a reactivation fee and

1

receive one month of basic satellite radio service at no cost; or (b) receive Sirius XM Internet streaming service for one month at no cost.

Additionally, effective December 6, 2010 – midway through the litigation – Sirius XM reduced the Royalty Fee on the basic subscription plan from $1.98 per month to $1.40 per month. Internal Sirius XM documents created before the litigation commenced indicated that Sirius XM planed to reduce the Royalty Fee in ***August 2011***. The reduction of $0.58 per month reduced what Sirius XM subscribers had to pay since December 2010 by approximately $56 million. While we understand that Sirius XM takes the position that this reduction in the Royalty Fee had nothing to do with the litigation and did not benefit the subscribers, we submit that this reduction in the Royalty Fee should be factored into the Court's consideration of Plaintiffs' counsel's requested fee.

Defendant Sirius XM is paying all of the costs of class notice. In addition, Sirius XM has agreed to pay to Plaintiffs' counsel, subject to the Court's approval, up to $13 million for Plaintiffs' counsel's fees and expenses.

In light of the substantial benefit conferred on the Class, Plaintiffs' counsel now seek the Court's approval of $13 million for attorneys' fees and expenses. As this money will be paid directly by Sirius XM, and will not reduce what the Class is receiving under the Settlement, it does not diminish the recovery for the Class. An award of this amount would represent just over 7% of the $180 million estimated benefit obtained for Class members, which is far below the percentage typically awarded to class counsel in similar settlements. If the Court concludes that the litigation was a factor in the December 2010 reduction in the Royalty Fee and that such reduction benefitted subscribers by $56 million, the total value of the Settlement is $236 million, rendering the $13 million requested award only 5.5 % of the total.

The requested amount is substantially less than the time and expenses that Plaintiffs' counsel have spent on this case. At their regular billing rates, Plaintiffs' counsel's time charges on this case amount to $17,384,638.50, and their expenses amount to $3,231,244.24. Thus, the fee request actually amounts to a substantial discount to their normal hourly rates, which further supports the position that the requested $13 million award for fees and expenses is reasonable, and should be approved.

## DESCRIPTION OF THE LITIGATION

### A.    NATURE OF THE CASE

This case arises out of the merger between Sirius Satellite Radio Inc. and XM Satellite Radio Holdings Inc. that created Sirius XM. The Second Amended Complaint alleged that this merger violated the federal antitrust laws because it lessened competition, created a monopoly, and led to increased prices for satellite radio services sold by Sirius XM. In particular, the Complaint alleged that after the merger Defendant increased its prices with respect to various services including: (i) an increase in the monthly charge per additional radio for multi-radio subscribers from $6.99 per month to $8.99; (ii) a $2.99 monthly fee for Internet streaming; and (iii) the Royalty Fee, which for most subscribers was set at $1.98 per month. The Complaint also alleged claims for breach of contract and for violation of state consumer protection laws. Plaintiffs sought damages and injunctive relief.

### B.    THE COURSE OF THE LITIGATION

This is not a case where a settlement was agreed to in the early stages of the litigation. To the contrary, this was a bitterly contested litigation that was prosecuted all the way to virtually the eve of trial. The details of the work performed by Plaintiffs' counsel in litigating this case are more fully set forth in the accompanying Sabella Declaration. In brief summary, by the time the Settlement was agreed to, the case had involved:

3

- Extensive factual and legal research to enable the drafting of the original complaints, the First Amended Complaint and the Second Amended Complaint

- The review by Plaintiffs' counsel of 1.3 million documents produced by Sirius XM and non-parties

- 18 fact depositions

- 6 expert depositions

- Preparation of numerous submissions to Magistrate Judge Ellis concerning discovery disputes, and argument thereon before Judge Ellis

- Briefing of Defendant's motion to dismiss

- Briefing and oral argument of Plaintiffs' motion for class certification

- Briefing and oral argument of Defendant's motion for summary judgment

- Exchange of motions in limine

- Preparation of the exhibit list, witness list, deposition designations, proposed stipulations of fact and law, opening statement, and other trial documents

After intensive and protracted settlement discussions, the Settlement Agreement was entered into on May 12, 2011.

## ARGUMENT

## I.   THE REQUEST FOR ATTORNEYS' FEES SHOULD BE APPROVED

The undersigned submit that an award of $13 million for attorneys' fees and expenses, to be paid directly by Sirius XM and not out of money that would otherwise go to the Class, is fair and reasonable in this action.

While this case does not involve a common fund created for the benefit of the Class, the standards used in common fund cases to determine whether attorneys' fees are reasonable are nonetheless instructive.  *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243-45 (E.D.N.Y. 2010).  In common fund cases, courts traditionally have used two methods to evaluate the reasonableness of fee requests: (1) the percentage method, which awards attorneys' fees as a percentage of the benefit created for the class; and (2) the lodestar approach, which involves multiplying the number of hours expended by counsel by the hourly rate normally charged for

similar work by attorneys of comparable skill and experience and then enhancing the resulting

lodestar figure by an appropriate multiplier to reflect litigation risk, the complexity of the issues,

the contingent nature of the engagement, the skill of the attorneys, and other factors. *Savoie v.

Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  The Second Circuit has held that district courts

may use either the percentage method or the lodestar method, although the trend is toward the

percentage method.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005);

*see also In re Bisys Sec. Litig.*, No. 04-cv-3840, 2007 WL 2049726, at *2 (S.D.N.Y. July 16,

2007).[1]  Even when not used as the primary means to determine an appropriate fee, "[t]he

lodestar method remains highly useful … as a 'cross-check' to further ensure reasonableness."

*Bisys*, 2007 WL 2049726, at *2; *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d

Cir. 2000).[2]

Regardless of whether a court applies the percentage method or the lodestar method, its

ultimate task is to ensure that the fees awarded are "reasonable" under the circumstances.

*Goldberger*, 209 F.3d at 47.  The determination of "reasonableness" is within the Court's

discretion.  *Goldberger*, 209 F.3d at 47; *WorldCom*, 388 F. Supp. 2d at 355.  The Second Circuit

has instructed that, in the exercise of such discretion:

> [D]istrict courts should continue to be guided by the traditional criteria in
> determining a reasonable common fund fee, including: "(1) the time and labor
> expended by counsel; (2) the magnitude and complexities of the litigation; (3) the
> risk of the litigation ... ; (4) the quality of representation; (5) the requested fee in
> relation to the settlement; and (6) public policy considerations."

*Goldberger*, 209 F.3d at 50 (citation omitted).

---

[1] Additionally , "the percentage approach most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model." *In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262, 2002 WL 31663577, at *26 (S.D.N.Y.  Nov. 26, 2002).

[2] "Where the lodestar fee is used as 'a mere cross-check' to the percentage method of  determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (quoting *Goldberger*, 209 F.3d at 50).

Moreover, the Second Circuit has recognized that "market rates, where available, are the ideal proxy for [class counsel's] compensation." *Id.* at 52.  Thus, the court should "approximate the reasonable fee that a competitive market would bear." *Johnson v. City of New York*, No. 08-cv-3673, 2010 WL 5818290, at *4 (E.D.N.Y. Dec. 13, 2010) (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 420 (2d Cir. 2010); *see also McDaniel,* 595 F.3d at 422 (district court's focus should be "on mimicking a market"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (court's "primary goal when awarding fees is to approximate the prevailing market rate for counsel's services").

Further, where, as here, Defendant is paying the attorneys' fees directly, "'money paid to the attorneys is entirely independent of money awarded to the class, [and] the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.'" *Dupler*, 705 F. Supp. 2d at 243 (quoting *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)).  Indeed, if the Court were to deny the requested award for fees and expenses, in whole or in part, none of the $13 million that SXM has agreed to pay Plaintiffs' counsel would be paid to the Class.  The money would just revert to Sirius XM.  Thus, barring Plaintiffs' counsel from receiving the requested attorneys' fees would simply benefit Sirius XM, without any offsetting gain to the Class.  Here as in *Schneider v. Citicorp Mortgage, Inc.*, 324 F. Supp. 2d 372, 379 (E.D.N.Y. 2004), "denial of fees earned by plaintiffs' counsel . . . would accrue only to the benefit of defendants."

Additionally, Plaintiffs' counsel's fee was agreed to only after the parties agreed upon the terms of the Settlement, further minimizing the risk of a conflict between the interests of the attorneys and those of the Class.  Sabella Decl. ¶ 55.  *See Dupler*, 705 F. Supp. 2d at 243; *Schneider*, 324 F. Supp. 2d at 378 (noting with approval that attorneys' fee and expense amount

6

were separately negotiated and funded from settlement); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 71 (S.D.N.Y. 2003) (Baer, J.) (fact that fees were negotiated separately from settlement weighed in favor of approval).[3]

For the reasons set forth below, Plaintiffs' counsel submit that the requested award of fees and expenses is reasonable under both the percentage and lodestar methods, and when viewed in light of the *Goldberger* factors.

## A.   THE REQUEST IS REASONABLE UNDER THE PERCENTAGE METHOD

The requested fees and expenses of $13 million amount to approximately 7% of the approximately $180 million value of the price freeze that is part of the Settlement here.[4]  This relatively small percentage supports approval.

Instructive is *Dupler v. Costco Wholesale Corp.*, a recent case where the settlement also did not involve payment of money to the class.  There, the plaintiffs challenged the membership renewal practices of Costco, which operates retail warehouse stores where only members can shop.  The plaintiffs alleged that Costo's practice of backdating members' renewals, which effectively shortened the term of the renewed membership, violated the terms of the customer agreements, was a deceptive trade practice in violation of New York General Business Law § 349, and resulted in Costo's unjust enrichment.  *Dupler*, 705 F. Supp. 2d at 235.  Under the terms of the settlement, class members would receive additional months of Costco membership at no charge.  This settlement did not provide class members with monetary relief but did provide economic value, estimated at approximately $38.8 million.  *Id.* at 241.  The attorneys

---

[3] *See also In re Tyson Foods Inc.*, No. 08-cv-1982, 2010 WL 1924012, at *4 (D. Md. May 11, 2010) (same)

[4] The $180 million estimated value does not include a component for former subscribers who will take advantage of the offer of a free month's service.  There are approximately 6 million former subscribers in the Class.  If only 10% of them were to take advantage of this aspect of the settlement, the additional value would be over $16 million.  *See* Langenfeld Decl. ¶ 7.

requested a fee award of $5,380,000, which was to be paid directly by the defendant.  The court

then evaluated whether the requested fee was appropriate as a percentage of the value of the

settlement, *i.e.*, whether the $5,380,000 as a percentage of the settlement worth $38.8 million

represented a reasonable fee.  The court concluded that a fee that was equivalent to at most 14%

of the "direct economic benefit to the class," was comparable to fees awarded as a percentage of

a common fund.  The fact that it would have been reasonable in a common fund case provided

strong support for the conclusion that it was reasonable where the defendant was paying the

attorneys directly.  *Id.* at 243-44.

   Numerous other cases that also did not involve the payment of money to the class support

the reasonableness of the fee request here.  *See, e.g., In re Sony Corp. SXRD Rear Projection*

*Television Mktg., Sales Practices & Prods. Liab. Litig.*, No. 09-md-2102, 2010 WL 3422722, at

*8-9 (S.D.N.Y. Aug. 24, 2010) (where settlement was combination of warranty extensions,

product replacements, and refunds, and defendant valued settlement at $7 million, court

approved fee equivalent to 8.8% of total value); *McBean*, 233 F.R.D. at 393 (where plaintiffs

were prisoners suing regarding strip search policy, each class members would receive fixed

dollar amount and attorneys were paid separately, not from common fund, and fees at

approximately 18% of total payout to the class were deemed reasonable); *Thompson*, 216 F.R.D.

at 71 (where plaintiffs received cash or life insurance benefit, depending on policy purchased,

and no common fund was created, court determined that fee equivalent to 15.6% of total

estimated value of settlement was reasonable).

   Further, in December 2010 Sirius XM reduced the Royalty Fee from $1.98 to $1.40,

which Plaintiffs' expert estimates has reduced what subscribers had to pay in this period by

approximately $56 million.  *See* Langenfeld Decl. ¶ 8.  Sirius XM documents created before the

litigation show that the Company planned to reduce the Royalty Fee in or about ***August 2011***.
*See* Sabella Decl. ¶ 79.  Then, in October 2010, in the midst of a Rule 30(b)(6) deposition
addressing the topic, Sirius XM disclosed that it would reduce the Royalty Fee in ***December
2010***. *Id*.  Plaintiffs believe that the Court can take this reduction into account in evaluating the
fee request.[5]  It should be noted, however, that Sirius XM contends that its decision to reduce the
Royalty Fee in December 2010 was not influenced in any way by the litigation and does not
provide a net benefit to subscribers.

Even without the $56 million factored into the value provided to the Class, Plaintiffs'
counsel's request of an award of less than 10% would be well within the range of fees deemed
reasonable by courts in this Circuit in common fund cases.  *See*, *e.g.*, *Lloyd's Am. Trust Fund*,
2002 WL 31663577, at \*26 (awarding fee equivalent to 28% of settlement value and collecting
common fund cases with awards of 1/3 or 33%); *In re Dreyfus Aggressive Growth Mut. Fund
Litig.*, No. 98-cv-4318 (HB), 2001 WL 709262, at \*6 (S.D.N.Y. June 22, 2001) (reducing fee
from requested 30% to 15% and collecting common fund cases with fees ranging from 4% to
30%).  Adding in the $56 million attributable to the reduction in the Royalty Fee, bringing the
total value to $236 million, the requested fee would be only 5.5% of the value of the Settlement.[6]

### B.   THE REQUEST IS REASONABLE UNDER THE LODESTAR METHOD

Application of the lodestar method confirms the reasonableness of Plaintiffs' counsel's
request.  The lodestar, or the presumptively reasonable fee, is comprised of the number of hours
devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel.

---

[5] *See United Handicapped Fed'n v. Andre*, 622 F.2d 342, 347 (8th Cir. 1980) (the "chronological sequence of events
is an important factor in determining whether or not it can be inferred that the defendants guided their actions in
response to plaintiffs' lawsuit").  Even if Plaintiffs' suit was not the only or even primary cause of Defendant's price
reduction, if the suit was "in part a catalyst which prompted the defendant to take action," Plaintiffs may be credited
with playing a role in the outcome.  *United Handicapped Fed'n*, 622 F.2d at 346-47.

[6] The foregoing does not even take into account the value of the free service former subscribers will obtain.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997). Courts then adjust that lodestar figure (typically by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the results obtained, and the quality of the attorneys' work. *See*, *e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973).

Plaintiffs' counsel collectively expended more than 37,000 hours of professional time on the prosecution of this litigation (excluding time spent on the instant fee and expense application) on a fully contingent fee basis. *See* Sabella Decl. ¶ 80.[7] Plaintiffs' counsel's total lodestar, derived by multiplying these hours by each firm's current hourly rates[8] for its attorneys, paralegals, and other professional staff, amounts to $17,384,638.50. *See* Sabella Decl. ¶ 80. Deducting from the requested $13,000,000 the $3,231,244.24 in out-of-pocket expenses that Plaintiffs' counsel has incurred leaves a fee award of $9,768,755.76, which amounts to only 56% of the lodestar. Given that courts frequently award fees equal to a *multiple* of class counsel's lodestar in complex class actions,[9] a fee representing such a large *discount* to counsel's lodestar

---

[7] The calculation of the lodestar excludes time spent by Plaintiffs' counsel in preparing a response to Sirius XM's motion to dismiss the First Amended Complaint. When the Court granted Plaintiffs leave to file their Second Amended Complaint, which mooted that motion to dismiss, the Court stated, with respect to Plaintiffs' brief in opposition to that motion to dismiss: "I will not read this unnecessary expensive piece of scholarship and hopefully you won't bill for it." Plaintiffs' counsel has heeded that instruction and excluded all time spent on that brief.

[8] The Supreme Court and Second Circuit have both approved the use of current rates, rather than historic rates, in *the* lodestar calculation. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). Using current rates helps "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (citation omitted).

[9] *See*, *e.g.*, *Wal-Mart Stores*, 396 F.3d at 123 (multiplier of 3.5 times lodestar of $62,940,045.84 held reasonable); *Bisys*, 2007 WL 2049726, at *3 ("The reasonableness of the 30% [fee] is also confirmed by the resultant lodestar multiplier of 2.99 …. Such a multiplier falls well within the parameters set in this district and elsewhere.") (citations omitted); *Comverse Tech.*, 2010 WL 2653354, at *5 (awarding 2.78 times lodestar, noting that "[w]here … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03-md-1529, 2006 WL 3378705, at **2-3 (S.D.N.Y. Nov. 16, 2009), *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008) (multiplier of 2.89 times lodestar of $33,686,468);

*(Cont'd)*

is clearly reasonable. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (fact that counsel sought only 87.6% of their lodestar "strongly suggests that the requested fee is reasonable"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) (fact that requested fee was less than lodestar was indication of reasonableness); *Sony*, 2010 WL 3422722, at *9 (same); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144, 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009) (approving fees where "not only are Lead Counsel not receiving a premium on their lodestar, their fee request amounts to a deep discount from their lodestar"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (there is "no real danger of overcompensation" where fractional multiplier is sought).[10]

Lest there be any question about the reasonableness of the hourly rates used in calculating Plaintiffs' counsel's lodestar, pursuant to the "forum rule" reasonable hourly rates are those normally charged for similar work by attorneys of comparable skill and experience in the district where the court sits. *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009); *Arbor Hill*, 522 F.3d at 190-91; *Olsen v. County of Nassau*, No. 05-cv-3623, 2010 WL 376642, at *3 (E.D.N.Y. Jan. 26, 2010). Plaintiffs' counsel's hourly rates range from $250 to $795 for attorneys. *See* Sabella Decl. ¶ 80. These rates are in line with those charged by firms practicing

---

*WorldCom*, 388 F. Supp. 2d at 354 (awarding multiplier of 4 times lodestar of $83,183,238.70); *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-cv-0085, 2005 WL 3008808, at *17 (D.N.J. Nov. 9, 2005) (collecting cases, noting that multiplier of 1.8 is on the "low end of the spectrum"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar of $36,191,751, noting that multipliers between 3 and 4.5 are common).

[10] *See also In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 284-85 (3d Cir. 2009) (lodestar cross-check confirmed reasonableness of fee request, where requested fee was "only a fraction of the work that they billed"); *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, No. 03-cv-4372, 2009 WL 4730185, at *9 (D.N.J. Dec. 4, 2009) (lodestar cross-check supported reasonableness of fee when lodestar "multiplier" was less than one); *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) (noting that "multipliers are frequently greater than one and often on the order of two to four," and finding that a "negative" multiplier of 0.83 "suggests that the percentage-based amount is reasonable and fair").

in New York City on both sides of the caption in complex class actions, and with the hourly rates that have been applied under the lodestar method in other recent cases. *See, e.g.*, *National Law Journal* samplings of law firm billing rates in 2008, 2009 and 2010 (listing a number of law firms in New York City and other major metropolitan areas with billing rates comparable to Plaintiffs' counsel's), Sabella Decl. ¶ 81;[11] *Castagna v. Madison Square Garden*, No. 09-cv-10211, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (fees were reasonable under a lodestar analysis where the hourly rates ranged from $250 to $600); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10-cv-1853, 2011 WL 1002439, at *6 (S.D.N.Y. Mar. 16, 2011) (finding hourly rates reasonable and approving award where hourly rates were: $761 for senior partner; $616 for partner; $392 for an associate; and $312 for an associate awaiting admission); *Chin v. RCN Corp.*, No. 08-cv-7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); *Comverse Tech.*, 2010 WL 2653354, at *4 (hourly rates from $125 to $880 were "not extraordinary for top New York law firms"); *Marsh ERISA Litig.*, 265 F.R.D. at 146 (court was "satisfied that the lodestar [was] reasonable" where the rates ranged from $125 for administrative personnel to $775 for senior lawyers); *Telik,* 576 F. Supp. 2d at 589-90 (noting that hourly rates of $700-$750 for partners and $300-$550 for associates were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work); *In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510, 2007 WL 2743675, at *17 (E.D.N.Y. Sept. 18, 2007)

---

[11] Among the responding New York law firms that are not involved in this litigation are Chadbourne & Parke, with partner rates of $390-$995 and associate rates of $110-$625; Curtis, Mallet-Prevost, Colt & Mosle, with partner rates of $675-$785 and associate rates of $290-$575; Greenberg Traurig, with partner rates of $355-$875 and associate rates of $200-$610; Kelley Drye & Warren, with partner rates of $465-$900 and associate rates of $275-$565; Nixon Peabody, with partner rates of $375-$905 and associate rates of $195-$580; and Schulte Roth & Zabel, with partner rates of $735-$895 and associate rates of $275-$690.  As one court has noted, "[p]erhaps the best indicator of the 'market rate' in the New York area for plaintiffs' counsel in . . . class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008).

(attorney rates from $325 to $725 were "not out of line with the rates of major law firms engaged in this type of litigation"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-md-1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (hourly rates of $650-$850 for partners and $515 for senior associate were "not inordinate for top-caliber New York law firms"); *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 09-cv-962, 2006 WL 3498590 at *10 (S.D.N.Y. Dec. 4, 2006) (finding that rates ranging from $100 to $675 were reasonable).

### C.    THE REQUEST IS REASONABLE UNDER THE *GOLDBERGER* CRITERIA

As noted above, the Second Circuit has stated that whether the Court uses the percentage method or the lodestar approach, it should continue to consider the following traditional criteria: (1) the time and labor expended by counsel; (2) the risks of the litigation; (3) the magnitude and complexity of the litigation; (4) the requested fee in relation to the settlement; (5) the quality of representation; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50.  "In applying these criteria, a Court essentially makes … a qualitative assessment of a fair legal fee under all the circumstances of the case."  *Marsh & McLennan*, 2009 WL 5178546, at *15 (citation and internal quotation omitted).  An analysis of these factors further demonstrates that Plaintiffs' counsel's fee request is reasonable.

### 1.    The Time And Labor Expended By Counsel

The many hours expended by Plaintiffs' counsel, which resulted in the highly favorable Settlement, are plainly reasonable in view of the work performed in this complex antitrust action. It is generally not possible to segregate time spent only in connection with the antitrust claims against Defendant from time spent on the breach of contract claims that were dismissed or the consumer fraud claims for which summary judgment was granted in Defendant's favor, since so much time – such as time spent reviewing documents and taking depositions – related to all then-

pending claims.  *See* Sabella Decl. ¶ 80.  While Plaintiffs' counsel's efforts are detailed more

extensively in the Sabella Declaration, they included, among other things:

- an extensive investigation of the issues involved in this case, both before and after filing the original complaint, *see* Sabella Decl. ¶¶ 6-11;

- research and briefing in opposition to the motion to dismiss, *see id.* ¶ 15;

- preparation and service of extensive discovery demands on Defendant and subpoenas on third-parties, *see id.* ¶¶ 18, 21, 23;

- responding to discovery requests from Defendant, *see id.* ¶ 21;

- reviewing and analyzing over 1.3 million documents produced in discovery by Defendants and third parties, *see id.* ¶ 24;

- numerous submissions to Magistrate Judge Ellis concerning discovery disputes, and oral argument thereon, *see id.* ¶ 22;

- retaining experts on issues including class certification, antitrust liability (encompassing both market definition and but-for pricing), and damages, and working extensively with those experts in connection with the preparation of their reports and rebuttal reports, *see id.* ¶¶ 29-30;

- taking or defending 18 fact depositions, *see id.* ¶¶ 25-26;

- taking or defending 6 expert depositions, *see id.* ¶¶ 30, 32;

- researching and briefing Lead Plaintiffs' motion for class certification, and oral argument thereon, *see id.* ¶¶ 33-34;

- research and briefing in response to SXM's motion for summary judgment, and oral argument thereon, *see id.* ¶¶ 36-38;

- preparation of motions in limine, *see id.* ¶ 44;

- preparation of the trial documents, *see id.* ¶ 41-43, 45-49;

- preparing for trial, *see id.* ¶ 40;

- negotiating the terms of the Settlement, *see id.* ¶¶ 50-52; and

- preparing settlement agreements and supporting documents, including notices, publication notices, and proposed preliminary and final approval orders, *see id.* ¶¶ 53.

Throughout the life of this case, Plaintiffs' counsel have made every effort to operate as

efficiently as possible and to avoid unnecessary duplication.

14

The significant time and effort devoted to this case by Plaintiffs' counsel, and their commitment to the efficient management of the litigation, support approval of the requested award.

### 2.    The Risk Of The Litigation

An evaluation of the risks undertaken by Plaintiffs' counsel in prosecuting this action also supports the reasonableness of their fee request.  As this Court stated in *Dreyfus*, 2001 WL 709262, at *6, "[c]ontingency risk is the principal, though not exclusive factor courts should consider in their determination of attorneys fees."

The Second Circuit has recognized that "despite the most vigorous and competent of efforts, success is never guaranteed."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974).  Even if a case survives a motion to dismiss, as this case did, "[t]here is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery."  *In re Veeco Instruments Inc. Sec. Litig.*, No. MDL 1695, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) (citing numerous cases were jury verdicts were overturned).  Moreover, in antitrust class-actions in particular, "[t]he risks of establishing liability and damages at trial, and of maintaining the Class throughout the trial . . . militate in favor of approval [of settlement]."  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003); *see also NASDAQ*, 187 F.R.D. at 476 ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (antitrust class actions "are notoriously complex, protracted, and bitterly fought.").

This case presented risks and uncertainties far beyond those typically encountered, which made it far from certain that any recovery, let alone the substantial Settlement benefits, would be

achieved.  First, this was not a case where there had been a government indictment or consent decree, which would have clearly indicated a likelihood of establishing liability.  To the contrary, at least two government agencies had carefully examined the situation and decided ***not*** to try to block the merger.  Plaintiffs thus faced the challenge of convincing the jury that the merger was anticompetitive, despite the fact that the DOJ chose not to block the merger and the FCC approved the license transfer necessary to effectuate the merger.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (noting that plaintiffs' case was more difficult than other antitrust cases because "no government coattails for the class to ride" as factor favoring approval of the settlement).

Additionally, the Court dismissed Plaintiffs' breach of contract claims and granted summary judgment as to Plaintiffs' consumer protection claims, which Class Counsel deemed easier to prove than the antitrust claims that were left, which involve far more difficulties and complexities.

To prevail on the antitrust claims, Plaintiffs had to demonstrate that the relevant market is that for satellite radio, despite the fact that the landscape for audio technology has continued to evolve since the merger was approved in 2008, with various new technology options continuing to emerge as potential competitive threats to Sirius XM.  While Plaintiffs believe that the relevant antitrust market remains that for satellite radio, Sirius XM would have argued to the jury that there is sufficient competition from Internet radio, car stereos with AM/FM radio and other audio options (MP3 players/iPods, smart phones, Internet radios) seamlessly integrated into the dashboard interface, and HD radio to sufficiently constrain Sirius XM's incentive to increase prices, making this suit unnecessary.

Demonstrating damages regarding the Music Royalty Fee was complicated with respect to the antitrust claims, because Plaintiffs' experts conceded that even absent the merger, Sirius and XM may have added *some* royalty surcharge in light of the significant increase in royalty costs between 2006 and 2007.  Internal XM documents dated prior to the merger showed plans for a possible royalty fee of as much as $1.50 per month per radio or $2.00 per account, and such a fee could have been imposed a year earlier than the Royalty Fee.  To the extent that XM had proceeded with such a plan, Sirius may have followed.  *See In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *12 (E.D. Pa. June 2, 2004) (plaintiffs faced arguments that defendants faced increases in costs of inputs at "unprecedented rates").

The existence of these numerous litigation risks weighs in favor of approval of the requested fee because "[s]uccess, at least of the magnitude of the settlements at issue, was very far from assured."  *Adelphia*, 2006 WL 3378705, at *2.

Plaintiffs' counsel undertook this case on a wholly contingent fee basis, knowing the litigation could last for years and would require the expenditure of tens of thousands of attorney hours and millions of dollars in expenses, with no guarantee of compensation.  "In numerous class actions . . . plaintiffs' counsel have expended thousands of hours and advanced significant out-of-pocket expenses and received no remuneration whatsoever."  *Marsh & McLennan*, 2009 WL 5178546, at *18 (citing examples of cases dismissed).  Nonetheless, Plaintiffs' counsel committed significant resources to the vigorous prosecution of this litigation and Plaintiffs' counsel has not yet received any compensation.  "Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."  *Prudential*, 985 F. Supp. at 417.

17

Despite all of the risks assumed by Plaintiffs' counsel, no premium is being sought to compensate them for those risks.  Instead, Plaintiffs' counsel seek fees that are a fraction of their total lodestar.  This request is inherently reasonable when considered in light of the risks undertaken.

### 3.    The Magnitude And Complexity Of The Litigation

The requested fee award is also reasonable in light of the magnitude and complexity of the litigation.  In the space of barely a year, Plaintiffs' counsel reviewed over 350,000 documents; briefed numerous complicated motions, including class certification and summary judgment; took and defended numerous fact and expert depositions; and got the case ready for trial.

The issues involved in the antitrust claims were anything but routine, nor were Plaintiffs piggy-backing on a government investigation, as is the case in many antitrust class actions. There have been very few class actions challenging a merger after the fact, particularly one that was cleared in advance by two federal agencies.  Further, the shifting landscape, both in terms of the underlying royalty cost structure as well as evolution of competing technology, made it difficult to analyze how Sirius and XM would have behaved absent the merger.  The role of the FCC further complicated the analysis, with the FCC-imposed price cap acting as an artificial price restraint.  In addition, the economic downturn further complicated the analysis of but-for pricing.  In short, the award Plaintiffs' counsel seeks is reasonable given their ability to litigate such a massive case in a short time, and in light of the novel and complex issues raised.

### 4.    The Requested Fee In Relation To The Settlements

In *Costco*, the court held that "the fact that the requested fee is comparable to fees that courts have found reasonable . . . weighs in favor of the fee's reasonableness."  705 F. Supp. 2d 244; *see also McBean*, 233 F.R.D. at 393 (approving attorneys' fees equal to 18% of the amount

received by the class, the court held that in a settlement that did not create a common fund, "the fact that the award here is lower than many awards actually taken from a common fund . . . is further evidence of its reasonableness."). As discussed above, the proposed award represents 7% of the value of the Settlement. This amount is well within the range of fees awarded by courts in this Circuit in similarly-sized class actions (*see supra* p.9).

### 5.   The Quality Of The Representation

The quality of the representation and the standing of Plaintiffs' counsel also support the reasonableness of the requested fee. "[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). The Court has observed first-hand in this case the skills and abilities of Class Counsel. The firms representing Plaintiffs in this case have national reputations in the area of complex class action litigation, and Plaintiffs' counsel brought their skills to bear here in reaching a favorable Settlement on behalf of the Class.

The high quality of the opposition that Plaintiffs' counsel faced is a further testament to the quality of Plaintiffs' counsel's representation. Defendant is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in this case it supports approval of the requested fee. *See, e.g., Marsh & McLennan*, 2009 WL 5178546, at *19 (reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations"); *Marsh ERISA Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

### 6.    Public Policy Considerations

The Supreme Court has long recognized that meritorious private actions to enforce

federal antitrust laws are an essential supplement to criminal prosecutions and civil enforcement

actions.  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("private suits provide a significant

supplement to the limited resources available to the Department of Justice for enforcing the

antitrust laws and deterring violations").  In furtherance of this important public policy, courts

should award fees that are sufficient to encourage plaintiffs' counsel to bring antitrust class

actions that supplement the efforts of the government regulators.  *See Wal-Mart Stores,* 396 F.3d

at 122 ("it is especially important to provide appropriate incentives to attorneys pursuing

antitrust actions because public policy relies on private sector enforcement of the antitrust

laws."); *WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiff's counsel

who are able to take a case to trial, and who defendants understand are able and willing to do so,

it is necessary to provide appropriate financial incentives.").

Approval of the requested fees and expenses would be fully consistent with these

important public policy considerations.  As stated in *Visa Check/Mastermoney*, 297 F. Supp. 2d

at 524:

> [P]ublic policy considerations support a substantial fee award.  Although Lead
> Counsel's . . . Settlements have produced significant and lasting benefits for
> America's merchants and consumers.  The fee awarded must be reasonable, but
> they must also serve as an inducement for lawyers to make similar efforts in the
> future.

### D.    THE OBJECTIONS SUBMITTED BY CLASS MEMBERS SHOULD BE OVERRULED[12]

The foregoing discussion disposes of the objections that a few Class members have

---

[12] For the Court's convenience, a chart listing each objection received through July 14, 2011 is attached hereto as
Exhibit A.  Copies of the objections are attached to the Declaration of Shelly Friedland.

submitted,[13] asserting that the requested fee is excessive.  As shown above, by any standard the fee is fair and reasonable.

Additionally, it should be noted that these objections appear to overlook that under the Settlement, Plaintiffs' counsel is not being compensated out of funds that would otherwise go to the Class.  The payment of fees and expenses is a separate obligation of Sirius XM in addition to the consideration going to the Class under the Settlement, and the amount of such payment of fees and expenses was not agreed on until all of the other substantive terms of the Settlement were in place.  If the Court were to deny the requested award for fees and expenses, in whole or in part, none of the $13 million that Sirius XM has agreed to pay Plaintiffs' counsel would be paid to the Class.  The money would just revert to Sirius XM.  Thus, barring Plaintiffs' counsel from receiving the requested attorneys' fees would actually have the result of benefitting Sirius XM, without any offsetting gain to the Class.  As noted above, "denial of fees earned by plaintiffs' counsel . . . would accrue only to the benefit of defendants."  *Schneider*, 324 F. Supp. 2d at 379.

One objection, submitted by Lange M. Thomas, raises somewhat different issues from the other objections.  Mr. Thomas is represented on his objection by John J. Pentz, a lawyer who has been described as "a professional and generally unsuccessful objector."  *In re Royal Ahold N.V. Sec. & ERISA Litig*., 461 F. Supp. 2d 383, 386 (D. Md. 2006).  A LEXIS search shows that he has represented objectors in some 92 cases, often filing "canned objections."  *In re Initial Pub. Offering Sec. Litig*., 671 F. Supp. 2d 467, 497 n.219 (S.D.N.Y. 2009).  Mr. Pentz has been heavily criticized for making "counterproductive" and "irrelevant or simply incorrect"

---

[13] The deadline for objections has not yet passed.  After the deadline, Plaintiffs will file additional papers responding to additional objections, if any, that are received.

objections.  *In re AOL Time Warner ERISA Litig.*, No. 02-cv-8853, 2007 WL 4225486, at *3 (S.D.N.Y. Nov. 28, 2007).[14]  The same is true of his objection here.

First, the Thomas objection asserts that Class Counsel's fee application violates Fed. R. Civ. P. 23(h) because "Class counsel did not file their motion until fee objections were due." Thomas Obj. at 2.  This is false.  The motion is being filed on July 15.  Pursuant to the Court's June 6, 2011 Order, the deadline for objections is July 19.

Second, the Thomas objection asserts that "the lodestar method is mandatory in this non-monetary settlement," Thomas obj. at 3, and that "the requested fee of $13 million undoubtedly far exceeds class counsel's reasonable lodestar."  *Id.* at 3-4.  This is false.  As discussed above, the lodestar far exceeds the requested fee.

Third, the Thomas objection asserts that "'[a] district court is not bound by an agreement of the parties with regard to fees.'"  *Id.* at 4.  Class Counsel does not disagree, and the Settlement Agreement makes the fee subject to Court approval.

Fourth, the Thomas objection states that a group of law professors believe that "any amount not awarded to class counsel as attorney's fees becomes the property of the class, and should not revert to the defendant."  *Id.* at 5.  As noted above, the law is to the contrary.  *See Schneider*, 324 F. Supp. 2d at 379.

Fifth, the Thomas objection contends that it was improper for Class Counsel to negotiate a fee amount with Defendant.  The law professors' letter on which this argument is based, however, was premised on concerns irrelevant to the situation at bar.  Contrary to the situation

---

[14] *See also Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (faulting Mr. Pentz for putting forth "conclusory assertions" in his objections); *In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 06-cv-225, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (noting that Mr. Pentz has a "documented history" of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing the appeals when he and his clients were compensated by counsel for the settling class); *Royal Ahold*, 461 F. Supp. 2d at 386 (noting that Mr. Pentz's objection was "not well reasoned and was not helpful").

discussed by the law professors, at bar the fee is subject to court approval; the Settlement is not

contingent on the Court approving the fee request, see Settlement Agreement ¶ 9; and the parties

did not agree on the fee until all of the substantive provisions of the Settlement were already

agreed to, *see* Sabella Decl. ¶ 55.  The law professors' concerns are inapplicable here.

The Thomas objection, and all of the other objections, should be overruled.

## II.    PLAINTIFF' COUNSEL'S LITIGATION EXPENSES SHOULD BE REIMBURSED

It is well established that counsel who create a common fund are entitled to

reimbursement of all reasonable litigation-related expenses that they advanced for the class.  *See*,

*e.g.*, *Marsh ERISA Litig.*, 265 F.R.D. at 150.  Similarly, where the attorneys' fees are being paid

directly, not from a common fund, the litigation expenses are routinely reimbursed, either as a

separate item, *see*, *e.g.*, *Schneider*, 324 F. Supp. 2d at 379 (approving payments expenses that

were necessary and reasonable); or as part of the fee award, *see*, *e.g.*, *Sony*, 2010 WL 3422722,

at *8-9 (approving flat payment covering fees and expenses); *Lloyds's Am. Trust Fund*, 2002 WL

31663577, at *26 (same).[15]

Plaintiffs' counsel have incurred out-of-pocket expenses totaling $3,231,244.24.  *See*

Sabella Decl. ¶ 82.   The expenses fall into the following categories:

---

[15] *See also Tyson Foods Inc.*, 2010 WL 1924012, at *4  (same); *Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*, 573 F. Supp. 2d 205, 215 & n.11 (D.D.C. 2008) (same).

| | |
|---|---|
| Expert witnesses | $2,442,482.94 |
| Computerized research | $111,555.94 |
| Document management services | $312,955.50 |
| Photocopying | $110,764.53 |
| Court reporting and transcription services | $54,786.82 |
| Travel/local transportation/working meals | $163,730.89 |
| Filing fees | $2,785.01 |
| Service fees | $1,868.08 |
| Telephone/fax | $5,419.53 |
| Postage/express mail/hand delivery | $5,438.26 |
| Miscellaneous | $19,455.74 |
| **TOTAL** | **$3,231,244.24** |

*Id.* All of the expenses were reasonable and necessary to the prosecution of this litigation, and are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement.  *See id.* ¶ 83.[16]

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs' counsel respectfully request that the Court approve the application for attorneys' fees and expenses in the amount of $13,000,000.

---

[16] *See Visa Check/Mastermoney*, 297 F. Supp. 2d at 525 (awarding costs and expenses for experts, consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses); *Marsh & McLennan*, 2009 WL 5178546, at *20 (awarding expenses for, *inter alia*, electronic document hosting, expert fees, legal research, photocopying, deposition expenses, and travel); *Merrill Lynch & Co.,* 2007 WL 313474, at *24 (awarding expenses incurred for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); *Veeco*, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (items such as filing fees, travel, investigative and expert witness fees, legal research, and document production and review are typical expenses for which "the paying, arms' length market reimburses attorneys") (internal quotations omitted).

Dated:  July 15, 2011

**GRANT & EISENHOFER P.A.**

/s/ James J. Sabella
Jay W. Eisenhofer
Richard S. Schiffrin
James J. Sabella
Shelly L. Friedland
485 Lexington Avenue
New York, NY  10017
Tel.:  646-722-8500
Fax:  646-722-8501
          and
Mary S. Thomas
1201 N. Market Street
Wilmington, DE  19801
Tel.: 302-622-7000
          and
Reuben Guttman
1920 L Street, N.W., Suite 400
Washington, DC  20036
Tel.:  202-386-9500

Respectfully submitted,

**MILBERG LLP**

/s/ Paul F. Novak
Herman Cahn
Peter Safirstein
Anne Fornecker
One Penn Plaza
New York, NY  10119
Tel.:  212-594-5300
Fax:  212-868-1229
          and
Paul F. Novak
One Kennedy Square
777 Woodward Avenue, Suite 890
Detroit, MI  48826
Tel.:  313-309-1760
          and
Nicole Duckett
300 S. Grand Avenue, 39th Floor
Los Angeles, CA  90071
Tel.:  213-617-1200

**COOK, HALL & LAMPROS, LLP**

/s/ Christopher B. Hall
Edward S. Cook
Christopher B. Hall
P. Andrew Lampros
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel.:  404 876-8100
Fax:   404 876-3477

*Class Counsel*

**ABBEY SPANIER RODD & ABRAMS, LLP**
Jill Abrams
Natalie Marcus
212 East 39th Street
New York, NY  10016
Tel.:  212-889-3700

**SHAHEEN & GORDON, P.A.**
Christine Craig
140 Washington Street
Dover, NH  03821
Tel.:  603-749-5000

*Attorneys for Plaintiff John Cronin and Todd Hill*

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
560 Sylvan Avenue
Englewood Cliffs, NJ  07632
Tel.:  201-567-7377

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Shane T. Rowley
369 Lexington Avenue
New York, NY  10017
Tel.:  212-983-9330

*Attorneys for Plaintiff Edward A. Scerbo*

**SCOTT+SCOTT LLP**
Joseph P. Guglielmo
500 Fifth Avenue
New York, NY  10110
Tel.:  212-223-6444
           and
Christopher M. Burke
600 B Street, Suite 1500
San Diego, CA 92101
Tel.:  619-233-4565

**FREED & WEISS LLC**
Jeffrey A. Leon
Eric D. Freed
111 West Washington Street, Suite 1331
Chicago, IL  60602
Tel.:  312-220-0000

**CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN**
James E. Cecchi
Lindsey Taylor
5 Becker Farm Road
Roseland, NJ  07068
Tel.:  973-994-1700

**SEEGER WEISS LLP**
Stephen A. Weiss
James A. O'Brien, III
One William Street
New York, NY 1 0004
Tel.:  888-584-0411

**LAYTIN VERNER LLP**
Jeffrey L. Laytin
Richard B. Verner
One Pennsylvania Plaza, 48th Floor
New York, NY  10119
Tel.:  212-631-8695

*Additional Counsel for Plaintiffs*

**BLOOD HURST & O'REARDON LLP**
Timothy G. Blood
Thomas J. O'Reardon, II
600 B Street, Suite 1550
San Diego, CA  92101
Tel.:  619-338-1100

**THE WRIGHT LAW OFFICE, P.A.**
William C. Wright
301 Clematis Street, Suite 3000
West Palm Beach, FL  33401
Tel.:  561-514-0904

**ADEMI & O'REILLY, LLP**
Shpetim Ademi
Guri Ademi
David J. Syrios
3620 East Layton Avenue
Cudahy, WI  53110
Tel.:  866-264-3995

*Additional Counsel for Plaintiffs*

**BERGER & MONTAGUE, P.C.**
Merrill G. Davidoff
Michael Dell'Angelo
1622 Locust Street
Philadelphia, PA  19103
Tel.:  215-875-3000

**LEXINGTON LAW GROUP**
Howard Hirsch
503 Divisadero Street
San Francisco, CA  94117
Tel.:  415-913-7800

*Attorneys for Plaintiff James Hewitt*

*Attorneys for Plaintiff Brian Balaguera*