UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

ARL BLESSING, et al., on Behalf of Themselves and
All Others Similarly Situated

                        Plaintiffs,

  -against-


SIRIUS XM RADIO INC.

                        Defendant.

------------------------------------------------------------------x

Civil Action

09 CV 10035 (HB)(RLE)


# MEMORANDUM OF LAW IN OPPOSITION TO THE PRELIMINARILY APPROVED PROPOSED CLASS SETTLEMENT ON BEHALF OF CLASS MEMBERS AND OBJECTORS JASON HAWKINS, SHEILA MASSIE AND JOHN SULLIVAN

ERLANGER LAW FIRM PLLC
Attorneys for Class Members and Objectors
Jason Hawkins, Sheila Massie, and John Sullivan
122 East 42 Street, Suite 518
New York, New York 10168

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      POINT I.

      THE PRELIMINARILY APPROVED CLASS SETTLEMENT
      MUST NOT BE GRANTED FINAL APPROVAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

           A.      The Preliminarily Approved Settlement
                   Provides A Huge Benefit to Sirius but
                   No Monetary Benefit to the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

           B.      The Proposed Settlement Includes Injunctive
                   Despite This Court's Previously Declining
                   to Certify an Injunctive Relief Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           C.      The Proposed Settlement Appears to
                   Contain an Improper Negative Option. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      POINT II.

      A $13 MILLION ATTORNEYS' FEE BASED
      ON A DUBIOUS SELF-SERVING CLASS
      BENEFIT VALUATION IS GROSSLY EXCESSIVE. . . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# **TABLE OF AUTHORITIES**

CASES

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005)....................... 6


FEDERAL RULES

FRCP 23............................................................ 6


OTHER AUTHORITIES

M*anaging Class Action Litigation: A Pocket Guide for Judges,* Rothstein, Barbara J., & Willging, Thomas E., (3d ed., Federal Judicial Center 2010) ............................ 2-5

**PRELIMINARY STATEMENT**

This brief is submitted on behalf of class members and objectors Jason Hawkins, Sheila Massie, and John Sullivan ("the Objectors"). They object to the parties' application for final approval of the proposed class settlement, preliminarily approved by the Court by Order entered May 19, 2011. They also object to class counsel's application for attorneys' fees.

**STATEMENT OF FACTS**

As set forth in the accompanying 7/19/11 Declaration of Robert K. Erlanger.

**LEGAL ARGUMENT**

**POINT I.**

**THE PRELIMINARILY APPROVED CLASS SETTLEMENT
MUST NOT BE GRANTED FINAL APPROVAL**

A.   The Preliminarily Approved Settlement
     Provides A Huge Benefit to Sirius but
     No Monetary Benefit to the Class

Most troublesome is that the value of plaintiffs' actual damages claims are not addressed by the proposed settlement. While the parties have valued the proposed settlement's benefit to the class of at least $200 million, 7/15/11 Lagenfeld Declaration, entirely missing from their expert's analysis is the actual cash benefit that Sirius pocketed over the last three years as the result of its illegal price increase. To fairly value the proposed settlement, the past and present cash benefit to Sirius must be weighed against the alleged future cash but non-monetary benefit to class members.

By its illegal conduct, Sirius received a massive three-year cash infusion of past and present dollars. In return, for keeping the case and not being subject to massive antitrust statute penalties, it only offers a non-monetary settlement to class by foregoing alleged future dollars

1

by: (1) not raising the base pricing for all subscribers for the next five months; (2) offering to maintain the base pricing on the first go around of renewal subscriptions; and (3) offering "expired" subscribers a free month of radio or internet service and waiver of the reactivation fee. The non-monetary proposed settlement is nothing more than disguised discounting, which if accepted by class members, would provide an even further benefit to Sirius by increasing its revenue base.

The Class Action Pocket Guide for Judges advises the judiciary that non-monetary class benefits, such as discounting and the like, must be valued on <u>objective</u> standards that go beyond the purported face value of the benefits:

> **B. Monetary results achieved for class**
>
> [I]n cases in which the benefit to the class is non-monetary (coupons, discounts, warrants, injunctions and the like), determining the actual value to the class requires looking beyond the face value of nonmonetary or contingent benefits. Redemption data or other evidence of class use is essential. In some cases, particularly settlements involving injunctive or declaratory relief, you might use expert valuations based on reliable, objective standards. In other cases, perhaps a majority, the only reliable test of benefit to the class will be evidence of class members' use or redemption of the coupons, warrants, or other non-monetary scrip.

M*anaging Class Action Litigation: A Pocket Guide for Judges,* Rothstein, Barbara J., & Willging, Thomas E., (3d ed., Federal Judicial Center 2010) at 34 ("Pocket Guide").

To be clear, Sirius is not establishing a cash class settlement fund. Nor is Sirius separating itself from present cash in its pockets. Sirius is allowing current subscribers to continue at the current base price until December, <u>i.e.</u>, it is generously allowing its subscribers to pay the illegal base price. Sirius is also offering a non-monetary discount to subscribers who re-subscribe by allowing them to pay the same illegal base price through the next subscription

period. Finally, Sirius is attempting to lure in former subscribers by offering them a waiver of the reactivation fee and one month's free radio or internet service, in addition to paying the illegal base price through the new subscription period.

The last minute July 15, 2011 submissions by the parties supporting an alleged settlement value of at least $200 million, should be viewed with suspicion. Sirius's allegations as to what it was "planning" to charge subscribers, is first, based on an alleged loss of future (not present) dollars. Second, it is a subjective value based on hypothetical future charges. And third, the subjective valuation was surely inflated to support the parties' application for final approval of the proposed settlement.

Finally, this Court should not be persuaded to approve the proposed settlement because of the low small percentage of opt-outs and objectors relative to the large class membership. Class counsel in class actions predictably and routinely cite to such disparity to support the dubious proposition that class members have approved a proposed settlement:

> The typical class action settlement notice will most likely yield an apathetic response, and few objectors or opt-outs. Two empirical studies in the past decade (including one conducted by the FJC) found that about one in a thousand (0.1%) class members opted out of a proposed settlement [citations omitted].
> Counsel may argue that a low percentage of opt-outs demonstrates class members' agreement with the settlement, but in some types of cases that argument seems misplaced. Opt-out rates vary according to the type of case and the amount of the individual recovery. Class members are considerably more likely to opt out of mass tort, employment, and commercial litigation, where individual recoveries are generally higher, and less likely to opt out of consumer cases, where individual recoveries are generally lower and individual litigation less viable.

Pocket Guide at 31. Here, there is no individual subscriber recovery at all.

**B.     The Proposed Settlement Includes Injunctive
        Despite This Court's Previously Declining
        to Certify an Injunctive Relief Class**

Essentially, the proposed settlement as to base subscriber prices is a self-imposed injunction. In determining whether to approve a settlement involving injunctive relief, the Court should ask how much is the injunction worth to the class, and what is the dollar value that the relief might yield. Pocket Guide at 21-22.

Because of the limited scope of the injunctive relief, nothing prevents Sirius from raising its rates at the beginning of 2012 to a level greater than that previously contemplated to make up for any lost revenue over the five-month period. Because the proposed settlement does nothing to restrain Sirius from the conduct complained starting in 2012, there is no value of the injunctive relief to the class. By providing only injunctive relief for a short period of time, the settlement offers no relief for the alleged overpayments that have already been made. For these reasons alone, the proposed settlement should be rejected.

On or about March 29, 2011 this Court specifically granted class certification for a federal antitrust class for damages under FRCP 23(b)(3), but denied class certification for an injunctive relief class under FRCP 23(b)(2). In denying plaintiffs' motion with regard to the injunctive relief class, this Court stated:

> Plaintiffs have not met their burden to show that the value of
> injunctive relief sought predominates over that of damages for
> purposes of class certification. Plaintiffs seek restitution,
> compensatory damages, treble damages, punitive damages and
> interest, as well as injunctive relief. It is reasonable to assume that
> all plaintiffs value damages as a remedy. It is less clear whether
> all plaintiffs value injunctive relief. Despite plaintiffs' assertion
> that a prohibition of future price increases or divestiture of the
> merged entity would be a meaningful remedy, plaintiffs have not
> demonstrated that the value of an injunction is the predominant
> relief sought. At least one plaintiff has stated that he does not wish

> to seek divestiture if he is paid all damages to which he is entitled. Absent a greater showing, this Court will not presume that all plaintiffs seek divestiture of the merged entity or an injunctive prescription over future prices, let alone value such relief more than damages.

Opinion and Order dated March 29, 2011 at 6 (citations omitted).

Yet the only relief being offered in the present settlement is appropriate only to an FRCP 23(b)(2) action, and thus the settlement must be rejected. Further, this Court has previously ruled that there is no showing that injunctive relief is either the preferable or predominant relief sought. This Court should not allow the parties to frustrate the Court's previous Order by approving this settlement.

**C.    The Proposed Settlement Appears to
        Contain an Improper Negative Option**

A "negative option" is another "hot button" indicator of a proposed settlement that may indicate potential unfairness to class members. Pocket Guide at 17-18. Judges are advised that the negative option is another variant of the coupon settlement

> Watch out for a variant of the coupon settlement – the negative option, which is a gift or benefit that requires the recipient to take affirmative action to cancel it before a continuing obligation to pay arises. The FTC has aptly termed the negative option a 'promotional gimmick.'

Pocket Guide at 18.

The proposed settlement offers former subscribers one month of basic satellite radio service or streaming internet service at no cost. Class Notice at 6. There are no provisions in the proposed settlement, however, for the former subscribers to automatically cancel a subscription after the free month, should they so desire. This option thus appears to be a negative option, forcing them to take affirmative action to keep from being further billed for Sirius radio services,

5

which they had already cancelled

As previously stated, the former subscriber deal, as well as the deal to subscription renewals, clearly benefit Sirius by increasing its revenue base and provide no monetary benefit to class members. Absent a provision that specifically requires Sirius to affirmatively terminate the subscriptions for those former subscribers who only wish a free month, the Court should not approve this specific provision of the proposed settlement.

### POINT II.

### A $13 MILLION ATTORNEYS' FEE BASED ON A DUBIOUS SELF-SERVING CLASS BENEFIT VALUATION IS GROSSLY EXCESSIVE

First, FRCP 23(h)(1) requires notice of a motion for attorneys' fees "must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Class counsel did not file their papers in support of their attorneys' fees until Friday, July 15, 2011, at the beginning of a summer weekend. This gave objectors only two days to respond; this kind of notice and response time is not allowed under any court rule (short of an emergency order to show cause) and therefore, cannot be deemed served in a reasonable manner.

Second, as previously noted, because there has been no valuation to Sirius's benefit from its illegal conduct, the true benefit to the class has not been demonstrated, and therefore class counsel's contributions cannot be properly evaluated.

Third, while class counsel is seeking a percentage of the value of the alleged benefit conferred on the class, a method that has been approved by the Second Circuit, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005), it is based on a subjective self-serving projection of a cash value savings, not an actual cash fund deposited in an account for the benefit of class members.

The Objectors propose that an independent expert be appointed to evaluate the value of the non-monetary benefit. Based on that evaluation, the Court will be in a superior position to approve attorneys' fees based on a percent of the proposed settlement's value.

Alternatively, in the case of non-monetary compensation, the Pocket Guide recommends that the court hold back the attorneys' fees linked with the discounts or other non-monetary benefits until after the benefits "can be established by calculating class members' actual use" Pocket Guide at 34.

The Court could order that one-half the requested attorneys' fee be placed in an escrow account until Sirius can report how class member subscribers actually renewed their subscriptions at the current base rate. From that point, class counsel may revisit the issue to determine whether Sirius's predicted revenue "loss" is a reality. If it is, class counsel will be entitled to the fee in escrow, and if not, only a portion of the fee; the fee balance could be distributed as a small credit to all Sirius subscribers.

## CONCLUSION

For the foregoing reasons, Class Members and Objectors Jason Hawkins, Sheila Massie, and John Sullivan respectfully request that the parties' request for final approval of the proposed settlement be denied, class counsel's request for attorneys' fees be denied, and that they be granted such other and further relief as may be deemed just and proper.

Dated: New York, New York
      July 19, 2011

                              ERLANGER LAW FIRM PLLC
                              Attorneys for Class Members and Objectors
                              Jason Hawkins, Sheila Massie, and John Sullivan

                              By: s/ Robert K. Erlanger
                                  Robert K. Erlanger (RE-0886)

                              122 East 42 Street, Suite 518
                              New York, New York 10168
                              (212) 686-8045
                              rke@erlangerlaw.com