# EXHIBIT 12

Project on Fair Representation

PROJECT ON
# FAIR REPRESENTATION

HOME | LEARN MORE | CURRENT LITIGATION | PUBLICATIONS | CONTACT US





Welcome to the Project on Fair Representation!

**Plaintiffs' Brief in**
**Lepak v. City of Irving, Texas (PDF)**

**APPELLANTS' REPLY BRIEF (PDF)**

Founded in 2005, we are a not-for-profit legal defense fund designed to support litigation that challenges racial and ethnic classifications and preferences in state and federal courts. We are supported by DonorsTrust, a 501 (c) (3) public charity.

The mission of the Project on Fair Representation (POFR) is to facilitate *pro bono* legal representation to political subdivisions and individuals that wish to challenge government distinctions and preferences made on the basis of race and ethnicity. For the next few years, POFR will devote all of its efforts to influencing jurisprudence, public policy, and public attitudes regarding race and ethnicity in four arenas:

*Voting:* Reforming those provisions of the Voting Rights Act and other laws that encourage and mandate the creation of racially gerrymandered voting districts.

*Education:* Ending the use of race-based affirmative action in college admissions and K-12 student assignments, as well as racial considerations in awarding scholarships, fellowships, and academic enrichment programs.

Project on Fair Representation

*Contracting:* Challenging in the courts municipal, state, and federal programs that award fixed percentages of contracts to individuals and firms based upon race, gender, and ethnicity.

*Employment:* Representing individuals who have been victims of racial discrimination in hiring, firing, and promotion.

# EXHIBIT 13

UNITED STATES DISTRICT COURT     RECEIVED NOV 3 0 2009
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X   MDL No. 1409
In Re                                                    M 21-95
                                                       :

CURRENCY CONVERSION FEE              :
ANTITRUST LITIGATION                 :

-------------------------------------------------------------------X   **NOTICE OF APPEAL**

THOMAS CARDER, JUDY SARGEANT, DYLAN L.     :
WHISENHUNT and GLORIA E. WHISENHUNT

      Plaintiffs in coordinated action-Appellants,     :

                       v.                                  :

ROBERT ROSS, RANDAL WACHSMUTH,        :
CAMILLE LAPLACA-POST, MICHAEL H. OSHRY,
CHERIE R. DONALD, ANDREA KUN, HERVE      :
SENEQUIER, LESLIE COOPER, BYRON
BALBACH, JR., JEANNE H. BALBACH,        :
WOODROW CLARK, PAMELA MEYERSON,
DAVID SHRIEVE, TARA RADO, ANTHONY      :
RALPHS, KAYTA GEORGE, DAVID ULTAN,
SHANNON MATTINGLY, TIMOR NUSRATTY,    :
and JEFFREY ZAKEM, on behalf of themselves
and all others similarly situated,             :

          Plaintiffs-Appellees,             :

VISA U.S.A INC., VISA INTERNATIONAL SERVICE   :
ASSOCIATION, MASTERCARD INTERNATIONAL
INCORPORATED, MASTERCARD INCORPORATED,   :
MASTERCARD INTERNATIONAL, LLC, CITIGROUP
INC., CITIBANK (SOUTH DAKOTA) N.A.,       :
UNIVERSAL BANK, N.A., UNIVERSAL FINANCIAL
CORP., CITICORP DINERS CLUB INC., BANK OF   :
AMERICA CORPORATION, BANK OF AMERICA,
N.A., JPMORGAN CHASE & CO., CHASE BANK    :
USA, N.A., JPMORGAN CHASE BANK, N.A.,
WASHINGTON MUTUAL BANK, NEW AMERICAN   :
CAPITAL, INC., HSBC FINANCE CORPORATION,
HSBC BANK NEVADA, N.A., HOUSEHOLD      :
INTERNATIONAL, INC., HOUSEHOLD BANK (SB)
N.A., MBNA AMERICA N.A. and MBNA AMERICA   :

        Defendants-Appellees.

1

Objectors Thomas Carder, Judy Sargeant, Dylan L. Whisenhunt and Gloria E. Whisenhunt hereby appeal to the United States Court of Appeals for the Second Circuit from the Order of this Court, dated and filed October 22, 2009 and the final judgment, filed November 4, 2009, which gives final approval of the class action settlement in this cause.

Dated: November 18, 2009

Respectfully submitted,

By

Charles M. Thompson
Attorney for Objectors/Appellants
5615 Canongate Lane
Birmingham, Alabama 35242
Tel 205-995-0068
Fax 205-995-0078
cmtlaw@aol.com

R. Stephen Griffis
Attorney for Objectors/Appellants
2100 Riverhaven, Suite 1
Hoover, Alabama 35244
Tel 205-402-7476
Fax 205-402-7292
rsglaw@bellsouth.net

**Counsel to be Served:**

George A. Cumming, Jr., Esquire
MORGAN, LEWIS & BOCKIUS LLP
One Market Street, Spear Tower
San Francisco, CA 94105

David F. Graham, Esq.
Eric H. Grush, Esq.
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

Charles E. Buffon, Esq.
Robert D. Wick, Esq.
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004

Daniel H. Squire, Esq.
Christopher R. Lipsett, Esq.
WILMER CUTLER PICKERING HALE
and DORR, LLP
2445 M. Street, N.W.
Washington, DC 20037

Peter E. Greene, Esq.
Cyrus Amir-Mokri, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER
& FLOM, LLP
Four Times Square
New York, NY 10036

Mark P. Ladner, Esq.
William R. Wade-Gery, Esq.
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, NY 10104

Edward D. Rogers, Esq.
BALLARD, SPAHR, ANDREWS &
INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Edward C. Fitzpatrick, Esq.
Randall A. Hack, Esq.
LOCKE LORD BISSELL &
LIDDELL LLP
111 South Wacker Drive
Chicago, IL 60606

Jay N. Fastow, Esq.
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, NY 10019

Brian P. Brosnahan, Esq.
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
101 California Street, Suite 2050
San Francisco, CA 94111

Dennis Stewart, Esq.
HULETT HARPER STEWART, LLP
525 B. Street, Suite 760
San Diego, CA 92101

Allen H. Steyer, Esq.
STEYER LOWENTHAL
BOODROOKAS ALVAREZ & SMITH
LLP
One California Street, Third Floor
San Francisco, CA 94111

Merrill G. Davidoff, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6305

Bonny E. Sweeney
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Thomas F. Schrag, Esq.
James S. Baum, Esq.
Michael L. Schrag, Esq.
SCHRAG & BAUM, P.C.
280 Panoramic Way
Berkeley, CA 94704

John J. Pentz, Esq.
CLASS ACTION FAIRNESS GROUP
2 Clock Tower Place, Suite 260G
Maynard, MA 01754

Edward Siegel, Esq.
27600 Chagrin Boulevard, #340
Cleveland, OH 44122

R. Stephen Griffis, Esq.
R. STEPHEN GRIFFIS, P.C.
2100 Riverhaven Drive, Suite 1
Hoover, AL 35244

Edward W. Cochran, Esq.
LAW OFFICE OF EDWARD W.
COCHRAN
20030 Marchmont Road
Shaker Heights, OH 44122

Frank H. Tomlinson, Esq.
15 North 21st Street, Suite 302
Birmingham, AL 35203

BISHOP & ASSOCIATES, PSC
6520 Glenridge Park, Suite 6
Louisville, KY 40222

Kenneth E. Nelson, Esq.
NELSON LAW FIRM, P.C.
2900 City Center Square
1100 Main Street
Kansas City, MO 64105

Paul S. Rothstein, Esq.
626 N.E. First Street
Gainesville, FL 32601

J. Scott Kessinger, Esq.
7304 Michigan Avenue
St. Louis, MO 63111

N. Albert Bacharach, Jr., P.A.
115 Northeast 6th Avenue
Gainesville, FL 32601

4

# EXHIBIT 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

THE AMERICAN MEDICAL ASSOCIATION et al.

                                 Plaintiffs,

      -against-

UNITED HEALTHCARE CORPORATION et al.,

                             Defendants.
-------------------------------------------------------------------x

Civil Action

Master File No.

00 CIV 2800 (LMM)(GWG)

**MEMORANDUM OF LAW IN SUPPORT OF THE OBJECTIONS
OF CLASS MEMBERS AND OBJECTORS
RICHARD NEITZEL, MARC RISSE AND LAURA FORTMAN
TO THE PRELIMINARILY APPROVED CLASS SETTLEMENT**

**ERLANGER LAW FIRM PLLC**
Attorneys for Class Members and Objectors
Richard Neitzel, Marc Risse and Laura Fortman
122 East 42 Street, Suite 519
New York, New York 10011-6903
(212) 686-8045

## TABLE OF CONTENTS

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I.

THE PRELIMINARILY APPROVED CLASS SETTLEMENT
MUST NOT BE APPROVED BY THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1.   The Interests of the Subscribers and Providers Conflict . . . . . . . . . . . . . . . . . . . . 1

2.   Class A Subscribers are Unfairly Treated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

3.   Ten Percent of the Fund's Value is More Than
     Adequate Compensation to Class Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4.   Continued Operation of the Ingenix Database is Unfair . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

i

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Boucher v. Syracuse University,* 164 F.3d 113 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261 (S.D. Ohio 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Branch v. F.D.I.C.,* No. Civ. A. 91-CV-13270, 1998 WL 151249
(D. Mass. March 24, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331 (4th Cir. 1998) .. . . . . . . . . . . . . 2

*Bussie v. Allamerica Fin'l Corp.,* No. Civ. A. 97-40204, 1999 WL 342042 (D. Mass. May 19,
1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Dynegy, Inc., Sec. Litig.,* No. H-02-1571 (S.D. Tex. July 8, 2005).. . . . . . . . . . . . . . . . . . . 5

*In re Austrian and German Bank Holocaust,* 317 F.3d 91 (2d Cir. 2003). . . . . . . . . . . . . . . . . . 1

*In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . 5

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir.
1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Raytheon Co. Sec. Litig.,* No. 99-12142 (PBS) (D. Mass. Dec. 6, 2004). . . . . . . . . . . . . . . 5

*In re Waste Management Inc., Sec. Litig.,* No. H-99-2183 (S.D. Tex. 2003) . . . . . . . . . . . . . . . . 5

*Local 56, United Food & Comm'l Workers Union v. Campbell Soup Co.,* 954 F.Supp. 1000
(D.N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072 (2d Cir. 1995) . . . . . . . . . . . . . . . . 1

*Petrovic v. Amaco Oil Company,* 200 F.3d 1140 (8th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ramah Navajo Chapter v. Babbitt,* 50 F.Supp.2d 1091 (D.N.M.1999) . . . . . . . . . . . . . . . . . . . . 5

*Sylvester v. CIGNA Corp.,* 369 F. Supp. 2d 34, 50-53 (D. Me. 2005).. . . . . . . . . . . . . . . . . . . . . 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005).. . . . . . . . . . . . . . . . 6

**OTHER AUTHORITIES**

*Managing Class Action Litigation: A Pocket Guide for Judges*" Rothstein, Barbara J, &
Willging, Thomas E., (2d ed., Federal Judicial Center 2009) . . . . . . . . . . . . . . . . . . . . . . . . 4, 6-8

Notice of Proposed Settlement.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3- 4, 7, 9

## STATEMENT OF FACTS

As set forth in the accompanying Declaration of Robert K. Erlanger.

## LEGAL ARGUMENT

### POINT I.

### THE PRELIMINARILY APPROVED CLASS SETTLEMENT
### MUST NOT BE APPROVED BY THE COURT

**1.**     **The Interests of the Subscribers and Providers Conflict**

The Court must create a subclass for Subscribers and appoint separate counsel.

"In some circumstances a court itself might well have an obligation on its own motion,
especially when called upon to approve a class action settlement, to designate a subclass and
assure proper representation for the subclass or to take other appropriate steps to lessen if not
eliminate the potential for a conflict among class members. *In re Austrian and German Bank
Holocaust,* 317 F.3d 91, 104 (2d Cir. 2003)(citing *Maywalt v. Parker & Parsley Petroleum Co.,*
67 F.3d 1072, 1078 (2d Cir. 1995)("The ultimate responsibility to ensure that the interests of
class members are not subordinated to the interests of either the class representatives or class
counsel rests with the district court").

The Second Circuit has held that a court can created subclasses to curtail, or avoid the
appearance of conflict.  The Court reviewed insurance plans and noted some were part of a self-
insured plan; "[i]n our view, this conflict among the Plans does not represent a simple
disagreement over potential differences in the computation of damages, since the relationship of
the Plans to Medco and its effect on each Plan goes to the very heart of the litigation. While we
do not here decide whether the self-funded Plans in fact suffered greater injury, we think it proper

1

to allow them to raise their claims as part of a separate subclass. The Self-Funded Plans dispute any recovery to the insured or capitated Plans, yet none of the class representatives is part of an exclusively self-funded plan that could adequately advance this position. Because the antagonistic interests apparent in the class should be adequately and independently represented, we remand to the District Court for certification of a subclass encompassing the self-funded plans in order to better protect their claims in this litigation." *Central States Southeast v. Merck-Medco,* 504 F.3d 229, 246 (2d Cir. 2007)(citing *Amchem Prods. v. Windsor,* 521 U.S. 591, 604, 626 (1997) (holding that in a class action, including both claimants who already had incurred an asbestos-related injury and claimants who merely had been exposed to asbestos, adequacy was not established because "the interests of those within the single class are not aligned [as] for the currently injured, the critical goal is generous immediate payments [but for the] exposure-only plaintiffs [, there is an interest] in ensuring an ample, inflation-protected fund for the future"); *Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 338, 340 (4th Cir. 1998) (class certification was improper because "plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts" when there are "manifest conflicts of interest" in their claimed recovery); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 801 (3d Cir. 1995)(class certification improper because the named plaintiffs "had no incentive to maximize the recovery" of the other class members in light of the disparity in settlement benefits).

Class Counsel cannot represent both Subscribers and Providers.  Either new counsel is appointed for the Subscribers, or the class should not be certified.  A district court must reconsider a ruling certifying a class, for instance, if a subsequent development creates a conflict

2

of interest that prevents the representative party from fairly and adequately protecting the

interests of all of the class members. *Petrovic v. Amaco Oil Company*, 200 F.3d 1140, 1145 (8th

Cir. 1999); *Boucher v. Syracuse University*, 164 F.3d 113, 118-19 (2d Cir. 1999).

**2.      Class A Subscribers are Unfairly Treated**

Subscribers who elect to file their claims through Group A are barred or prohibited from

submitting claims under Groups B and C, despite the fact that only Group A claims are subject to

a pro rata pay out if the number of claims exceeds the $50 million cap.

> If you elect to be a Group A Claimant you may *not* elect to be
> included in Groups B or C even if you satisfy the conditions for
> inclusion in such group(s). However, if you elect to make a Group
> B or C claim you will receive a Recognized Loss of not less than
> what you would have received had you made a Group A claim."
> and "If valid claims under Group A require a distribution of more
> than $50,000,000.00 the recognized loss of Group A claims will be
> paid on a pro rata basis up to a cap of 50 Million in total for all
> Group A Claims, except as specified below.

Notice of Proposed Settlement, "Subscriber Options" at 5.

The result could be that Group A would receive far less than the $50.00 per year (of

membership to the health plan) as represented by Class Counsel.

Subscribers who elect to file their claims through Group A are barred or prohibited from

submitting claims under Groups B and C, despite the fact that only Group A claims are subject to

a pro rata pay out if the number of claims exceeds the $50 million cap.

> If you elect to be a Group A Claimant you may *not* elect to be
> included in Groups B or C even if you satisfy the conditions for
> inclusion in such group(s). However, if you elect to make a Group
> B or C claim you will receive a Recognized Loss of not less than
> what you would have received had you made a Group A claim."
> and "If valid claims under Group A require a distribution of more
> than $50,000,000.00 the recognized loss of Group A claims will be

paid on a pro rata basis up to a cap of 50 Million in total for all
Group A Claims, except as specified below.

Notice of Proposed Settlement, "Subscriber Options" at 5.

The result could be that Group A would receive far less than the $50.00 per year (of

membership to the health plan) as represented by Class Counsel.

Because Group B and Group C Subscriber can only prove their claims through

documentation, with no documents to be provided by defendants prior to 2002, it is highly

unlikely that they can substantiate pre-2002 claims.  Pre-2002 Subscribers, who cannot

substantiate their claims, will become, in fact, Group A Subscribers with a limited fund.

The Court's ". . .appraisal of the settlement should focus on the value actually distributed

to the class-based on the number and percentage of class members who have filed a claim."

Pocket Guide, at 14, sec. 5. Appraisal of Settlement.  Accordingly, attorneys' fees should not be

awarded until the Court reviews the claims data, and understands the number of class members

who have filed claims.

The courts are advised that such disparities are evidence of an unfair settlement:

> . . .strict eligibility requirements and claims procedures often
> discourage class claims and might reduce the total amount paid in
> class members, making the stated value of the settlement fund
> illusory.  Because there is no clear standard for predicting class
> response rates, consider calculating any attorney fee award as a
> percentage of the amount of the settlement fund that has already
> been distributed to the claimants-even if that means deferring final
> determination of all or part of the fee award until the claims
> process is complete.

*Managing Class Action Litigation: A Pocket Guide for Judges*" Rothstein, Barbara J, &

Willging, Thomas E., (2d ed., Federal Judicial Center 2009) at 14, section 5, Appraisal of

4

Settlement ("Pocket Guide").

3.   **Ten Percent of the Fund's Value is More Than**
     **Adequate Compensation to Class Counsel**

The attorneys' fees requested by Class Counsel from the $350 million fund are excessive,

constituting up to 25% of the value of the fund, or $87.5 million, without interest or expenses.

Such a result should not be approved by this Court, and is not in step with current jurisprudence.

*In re Waste Management Inc., Sec. Litig.,* No. H-99-2183 (S.D. Tex. 2003) ($457 Million Fund;

awarded fees of 7.9%); *In Re Raytheon Co. Sec. Litig.,* No. 99-12142 (PBS) (D. Mass. Dec. 6,

2004)($460 Million Fund; 9% of fund is recovered as fees); *In re Cendant Corp. PRIDES Litig.,*

243 F.3d 722 (3d Cir. 2001)($298 Million Dollar Fund; 7.8% awarded as attorney's fees); *In re*

*Dynegy, Inc., Sec. Litig.,* No. H-02-1571 (S.D. Tex. July 8, 2005)($474 Million Dollar Fund; fee

award is 8.725%); *Bussie v. Allamerica Fin'l Corp.,* No. Civ. A. 97-40204, 1999 WL 342042 (D.

Mass. May 19, 1999) ($108 Million Dollar Fund; fees awarded are 7.1%); *Ramah Navajo*

*Chapter v. Babbitt,* 50 F.Supp.2d 1091 (D.N.M.1999) ($76 Million Dollar Fund; 11% awarded

as attorney's fees); *Branch v. F.D.I.C.,* No. Civ. A. 91-CV-13270, 1998 WL 151249 (D. Mass.

March 24, 1998) ($75 Million Dollar Fund- 8.6% attorney's fee); *Local 56, United Food &*

*Comm'l Workers Union v. Campbell Soup Co.,* 954 F.Supp. 1000 (D.N.J. 1997) (115 Million

Dollar Fund; awarded 2.8%); *Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261 (S.D. Ohio 1996)($103

Million Dollar Fund- fees awarded of 10%).

Group A Subscribers, mostly likely the largest group of claimants, are limited to $50

million (or less if the class is over-subscribed) while Class Counsel would pull down

approximately $87.5 million in fees off the top.  Because of the serious potential dilution to the

Group A Subscribers, either this Court should not award any attorneys' fees or only a percentage of fees, with the balance held in the fund, until claims data is returned to the Court showing the number of Subscribers who submitted claims in each of the Groups. Only after clams data is provided to this Court and an analysis of the number of class members who participate can a proper determination of the appropriate fee be fashioned for Class Counsel.

The Pocket Guide encourages judicial review of claims data before awarding attorneys' fees:

> In cases involving monetary benefits, do not be misled by party valuations of the settlement that presume a 100% claims rate by class members. Insist on actual information on claims filed to determine the benefit to class members and use that information both to place a value on the settlement and to award attorney fees, as the district djudge did in *Sylvester v. CIGNA Corp., 369 F. Supp. 2d 34, 50-53 (D. Me. 2005).* That value- plus the value of any nonmonetary relief – serves as the starting point for applying the percentage-of-value method in determining appropriate attorney's fees.

Pocket Guide at 28.

The Second Circuit has embraced the percentage-of-value method.. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005). As Class Counsel is well aware of the percentage-of-value method having it applied in *Walmart* after they had objected to the amount of attorneys' fees in that case. According to Second Circuit panel in *Wal-Mart,* "the trend in this Circuit is toward the percentage method, which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Id. at 122.

This Court should require presentation and review of the claims data, before determining

6

the percentage of the attorney's fees.

Compensating Class Counsel in the amount of 10% of the total fund, would be more than adequate compensation and fair to the class members.

**4.      Continued Operation of the Ingenix Database is Unfair**

The proposed settlement is further unfair because it continues to permit defendants to continue to operate the Ingenix database for an unlimited period of time, until third party reaches agreement with the Office of the (New York) Attorney General (OAG) for implementation of such new database.  Thus, claims for out of network will continue to be evaluated in an unlawful manner ("Consistent with the terms of the OAG Assurance of Discontinuance, the Company shall agree to contribute Fifty Million Dollars ($50,000,000) toward the funding of the development and implementation of the New Database. Other terms concerning the creation, funding, operation, management, and control of the New Database shall be contained in the OAG Assurance of Discontinuance, and shall be specified further in a separate agreement to be entered into between the OAG and the School." Notice of Proposed Settlement Agreement, p. 14, Section 4.2.

The Pocket Guide advises the judiciary that:

> In cases in which the benefit to the class is non-monetary (coupons, discounts, warrants and the like), determining the actual value to the class requires looking beyond the face value of nonmonetary or contingent benefits.  Redemption data, or evidence of class use is essential.  In some cases, particularly settlements involving injunctive or declaratory relief, you might use expert valuations based on reliable, objective standards.  In other cases, perhaps the majority, the only reliable test of the benefit to the class will be evidence of class members' use or redemption of the coupons, warrants, or other non-monetary scrip. . . In such cases, it is especially important to link the amount of any attorney fees with

7

the actual benefit to the class.

Pocket Guide at 29, par. 1.

Here, Class Counsel makes no representations concerning when the newly developed

database will be utilized, nor do they contemplate the number of subscribers who cannot benefit

from this new database because they have a different insurance carrier now.

Because the new database is a "benefit" that is not within Class Counsel's control, this

Court should certainly reduce the amount of attorney's fees by at least $50 million, since that is

the amount paid to a third party to create and maintain this new database, that will not be realized

by any of the class members. In the alternative, until this Court determines the value this new

database has for the class members, it should withhold a percentage of the attorney's fees until

the value of the new data base can be determined  "by calculating class members' actual use."

*See* Pocket Guide at 29, par. 2.

The new "database" that Class Counsel represents that defendants will use to

establish the basis for the rates of various services are non-compulsory, and not required to be

followed by defendants. This provides no benefit to subscribers:

> Further, nothing in this Settlement Agreement shall be construed to
> limit the authority of the Company or any sponsor of any health
> care benefit plan or arrangement administered by the Company: (a)
> to adopt, amend, change, or terminate any Benchmarking Standard
> used or to be used in any employee benefit plan or arrangement; (b)
> to use any particular Benchmarking Standard such as "usual and
> customary" or "prevailing," or to use a Benchmarking Standard not
> based on provider charge databases; or (c) to the extent the
> Company uses the New Database in making Out-Or-Network
> benefit determinations, to choose the percentile of any New
> Database as satisfying any health care benefit plan's Benchmarking
> Standard, including, but not limited to, "reasonable and
> customary," "usual, customary and reasonable," or "usual and

8

> prevailing." Furthermore, to the extent the Company uses the New
> Database in making Out-Of-Network benefit determinations,
> nothing in this Section shall be construed to require the Company
> to use modules or any aspect of the New Database as satisfying any
> health care benefit plan's Benchmarking Standard, including, but
> not limited to, "reasonable and customary," "usual, customary and
> reasonable," or "usual and prevailing," when the Company did not
> use the corresponding modules or other corresponding aspect of
> the Ingenix Database at the time of entering into this Settlement
> Agreement.

Notice of Proposed Settlement Agreement, section 4.4- Benchmarking Standards.

This "remedy" has no value, based upon the release language quoted above, and the "new

database" should not be considered in calculating the attorney's fees. Judges are advised that

"hot button indicators include any remedy to which you cannot confidently assign a cash value."

Pocket Guide at 16. Here, the "new database" has zero value, and based on the release language

quoted above, defendants are not obligated or bound to use the new database, and appear free to

go about their business without utilizing such system to avoid future problems.

## CONCLUSION

Class Members and Objectors Richard Neitzel, Marc Risse & Laura Fortman, personally

and on behalf of her minor child, respectfully ask that the Court to reject the Preliminarily

Approved Class Settlement and: (1) appoint separate class counsel for the Subscribers; (2) defer

its ruling on the application for Class Counsel's attorneys' fees until it has reviewed actual claims

data showing the benefit that Class Counsel has actually provided to the Class; (3) not assign a

cash benefit, or value to the "new database," or in the alternative withhold $50 million in

attorney fees until such time that it can determine the number of class members who benefit from

such database, in what amount, and then is able to assign such benefit a cash value; (4) deny the

attorney's fee application for 25% of the Settlement Fund as excessive, and instead award a 10%

fee; (5) deny Class Counsel's application for attorneys' fees based upon the new database that the

Company is allegedly involved in creating with the OAG and School; (6) and the difference

between the attorneys' fees sought and granted to Group A Subscribers; and (7) for such further

and other relief this Court deems just and proper.

Dated: July 27, 2010
      New York, New York

                                        ERLANGER LAW FIRM PLLC
                                        Attorneys for Plaintiff

                                        By: s/ Robert K. Erlanger
                                            Robert K. Erlanger (RE-0886)

                                        122 East 42 Street, Suite 519
                                        New York, New York 10168
                                        (212) 686-8045
                                        rke@erlangerlaw.com

# EXHIBIT 15

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP INC. SECURITIES LITIGATION | MASTER FILE NO. 04 CIV. 8141 (JES) |

### KAREN MICHAELS'
### OBJECTION TO PROPOSED SETTLEMENT;
### OBJECTION TO CLASS CERTIFICATION;
### OBJECTION TO APPLICATION FOR ATTORNEY FEES AND EXPENSES
### NOTICE OF INTENTION TO APPEAR; AND
### REQUEST TO SPEAK AT THE HEARING

To The Honorable John E. Sprizzo:

Comes Now Karen Michaels ("Objector"), and files these Objections to the Proposed Settlement, Objections to Class Certification, Objections to Application for Attorney Fees and Expenses, and Notice of Intent to Appear and Request to Speak at the Hearing, and would show as follows:

### 1. Identification of Objector

Under penalty of perjury of the laws of the United States, I declare that:

I received the notice in this case sometime after approximately December 19, 2008. The notice was addressed as follows:

> 104026
> Claimant ID No. 26089249
> KAREN J MICHAELS
> ROLLOVER IRA
> P.O. BOX 9677
> TYLER, TX 75711-2677

That is my correct address. My telephone number is 903-534-0440. I acquired a VALIC Tax Sheltered Annuity Acct #8695884 on or about December 1, 2002 as part of my divorce. I understand that AIG acquired VALIC. I rolled my AIG securities over to a UBS account in or about January 2004. I am unable to determine the exact date or price of the securities because, despite diligent effort, I have been unable to obtain the requisite documents either from my files or my broker. However, upon information and belief the specific date and price of the sale are in the records of AIG.

Signed: _Karen Michaels_
Karen Michaels

Objector objects to any requirements that she provide more detail regarding her ownership of covered securities for the following reasons.

**Page 1**

First, the preliminary approval order, p. 7, provides that objections "must contain proof of purchases of AIG Securities during the Class Period and price(s) paid." Yet the class is defined as persons who purchased *or otherwise acquired* AIG Securities. Objector acquired the securities; she did not purchase them. Thus, the requirement does not apply to her.

Second, the requirement for dates and prices to prove standing constitutes a denial of due process. A member of the class will have her rights determined by the proposed judgment whether or not they know the information requested. If they are unable to obtain any part of the information, then they will be included in the judgment but denied the right to be heard and object. Thus, it would be a denial of due process to deny Objector standing to object simply because she does not know the prices of the AIG securities.

Third, the severe time constraints placed on Objector, as described below, made the request for any additional information unreasonable.

Finally, the settling parties apparently already know that Objector is a member of the class, or have access to information necessary to make that determination. They sent her notice and assigned her a Claimant ID number. If they needed any additional information, they could obtain it from AIG's records. Thus, they already have sufficient information to determine whether Objector is in the class, or can obtain it from AIG's records, so placing this additional burden on objector is not reasonable.

## 2. Notice of Intention to Appear

Counsel Jeffrey L. Weinstein, subject to permission by the Court, and Objector's local counsel intend to appear on behalf of Objector at the hearing.

## 3. Request to Speak at the Hearing

Objector requests that her Counsel be allowed to appear at the final approval hearing to talk about these objections and to otherwise participate in the final approval hearing.

## 4. Objections to Certification of the Settlement Class

Objector objects to the certification of the settlement class for the following reasons.

### 4.1 Notice

Notice to Objector, and perhaps other class members, was inadequate and does not appear to have been made within the deadlines set by the Court. Objector has had the PO Box to which the notice was sent for eight or nine years, and believes that is the address in AIG's records.

Objector did not receive the notice in the mail until sometime less than two weeks before the deadline for exclusions and objections, two months after the notice was supposed to be sent.

First, it does not appear that the settling parties complied with the Court's notice requirements. The Preliminary Approval Order, p. 4, requires notice to be mailed by October 20, 2008. Given the date of receipt by Objector, it is clear that the settling parties did not mail the notice to her on or before October 20, as required by the Court.

Second, Objector objects to the insufficient time in which she was given to review the settlement and determine whether to participate in the settlement, exclude herself, or object. The Court's Preliminary Order correctly provides for at least two months between notice and the deadlines for filing an objection or exclusion. Yet, Objector received less than two weeks. That is insufficient time to review the settlement and evaluate her options. Making matters worse, the notice was received during the holiday season, significantly limiting Objector's opportunity to obtain necessary documents and obtain legal counsel to advise her on the settlement.

Objector respectfully requests that the Court postpone the fairness hearing and allow Objector sufficient time to analyze the settlement and either object, exclude herself, or withdraw her objection. Moreover, the Court should determine whether the late notice to Objector was an isolated event. If it was not, then the parties, at their expense not to be taken from the settlement fund, should send out a new notice to the class members with new deadlines.

Given the time constraints placed on Objector, she and her counsel have had insufficient time to review and analyze the proposed settlement and request for attorneys' fees and expenses. Thus, Objector reserves the right to amend, add to, or withdraw these objections upon further analysis.

**4.2   Class definition**

Rule 23 and due process require that the class definition be precise, objective and presently ascertainable. Manual For Complex Litigation 4th, p. 270. The order defining the class must avoid terms that depend on resolution of the merits. *Id.* To determine if an individual is a class member, a court must be able to do so by reference to the class definition and without inquiry into any sort of fact-finding on the merits of the case. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974). The class definition here is not precise, objective or presently ascertainable, includes terms that depend on the resolution of the merits, and requires an inquiry as to the facts regarding whether each potential class member was "damaged."

Here the Settlement Agreement defines the class as:

> "Settlement Class" means, for purposes of this Agreement only, all persons who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive (the "Class Period"), ..., *and who were damaged thereby* ...

Settlement Agreement p. 10, emphasis added. The settlement does not appear to define what "damages" a potential class member must have suffered to be in the class, or how such a determination would be made. The allegation of damages was a central element needed to prove Plaintiff's cause of action and this definition appears to require that very analysis.

Because the class definition here (1) does not provide a precise, objective and presently ascertainable way to identify class members, (2) requires a "mini trial" to determine whether a particular person was "damaged" and, therefore, is in the class, and (3) requires the Court to address the central issue of liability, the class definition is not appropriate and the Court should not certify the class.

## 5. Objections to the Approval of the Settlement

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, for the following reasons.

### 5.1 Inadequate notice

The settling parties failed to provide adequate notice to Objector and possibly other class members, as set out above. Thus, Objector reserves the right, if the Court grants a new deadline for objections, to raise additional objections to the settlement.

### 5.2 Payment of attorneys' fees

The settlement illegally provides that the attorney's get paid during any appeal of a judgment approving the settlement, even when the class has received no payments.

> Immediately after the Court enters an order approving the Attorneys' Fees and Expenses Award, Lead Plaintiff's counsel may withdraw the Court-awarded attorneys' fees and expenses from the Cash Settlement Account …

Settlement Agreement p. 19. That provision conflicts with the Private Securities Litigation Reform Act, which provides:

> Restrictions on payment of attorneys' fees and expenses
> Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest *actually paid to the class*.

15 USCA § 77z-1 §6 (emphasis added). "Actually paid" means actually paid, not a judgment ordering payment in the future. Moreover, the original payment of the $92 million to the cash settlement account does not apply because it was not paid "to the class." The money was paid to a cash settlement account, in the Court's custody, so it was not paid "to the class:"

Page 4

"Cash Settlement Account" means a segregated interest-bearing escrow account established pursuant to the terms of an escrow agreement to be entered into by Lead Plaintiff and PwC. The Cash Settlement Account shall be maintained as a Qualified Settlement Fund, as defined in Section I below, *All monies in the Cash Settlement Account, including all interest accruing thereon, shall be deemed to be in the custody of the Court and will remain subject to the jurisdiction of the Court until such time as they are paid out* as (i) Notice and Administrative Expenses, (ii) Attorneys' Fees and Expenses Award, (iii) payment to the Lead Plaintiff of its reasonable costs and expenses (including lost wages), to the extent approved by the Court, (iv) Tax Expenses on the Cash Settlement Account or (v) distributions to Authorized Claimants after the Effective Date of this Agreement.

Settlement Agreement p. 5-6 (emphasis added). The provision even refers to the later pay out to the class, so the payment into the settlement fund does not constitute payment to the class. Thus, the Court cannot approve the Settlement Agreement because approval would violate 15 USCA § 77z-1 §6.

**5.3 Denial of appeal rights**

The parties ask the Court to strip the Court of Appeals of its statutory jurisdiction by approving a settlement that would prevent any appeal of the Court's final decision on a class member's claim:

If a dispute concerning a claim cannot be otherwise resolved, Lead Plaintiff's counsel shall thereafter present the request for review to the Court for summary resolution, *without any right of appeal or review.*

Settlement Agreement p. 16 (emphasis added). When the Court enters final decision on a class member's individual claim, the class member has the statutory right to appeal that decision to the Court of Appeals. 28 U.S.C.A. § 1291. The Court lacks the authority to approve a settlement that takes that right away.

**5.4 Changes to the Plan of Allocation**

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because it allows the Court to amend the Plan of Allocation without notice to class members: "The Court also reserves the right to modify the Plan of Allocation without further notice to Class Members." Final Notice, p. 8. The parties attempt to avoid the obvious due process problems with that by claiming at page 13 of the settlement agreement that the Plan of Allocation is not a part of the settlement. The provision that allows changes to the Plan of Allocation without notice to class members denies due process and renders the settlement unfair, unreasonable, and inadequate.

Page 5

As a matter of law, the plan of allocation of the settlement proceeds is a material term to a class action settlement. A settlement that gives preferential treatment to some class members at the expense of others is not fair, reasonable, or adequate. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-628 (1997). Thus, to determine whether the settlement is fair, reasonable, or adequate, the Court must consider the plan of allocation as a material part of the settlement. The plan of allocation is so important, the Manual for Complex Litigation 4th lists it as the first item for consideration:

> Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate. *Fairness calls for a comparative analysis of the treatment of class members vis-à-vis each other* ...

Manual For Complex Litigation 4th, §21.62, p. 315 (emphasis added).

This rule of law makes sense. For example, assume a class member reviews the settlement and the proposed plan of allocation and determines he will receive $1000 under the settlement, so decides to participate. But if the Court later amends the Plan of Allocation, without notice, and the class member will now receive a lesser amount, he will have waived his right to object or exclude himself and will not have any opportunity to be heard on the Court's decision to cut his recovery. That is inherently unfair and a denial of due process.

Just as the Court lacks the authority to alter other parts of the Settlement, without notice to the Class, so too the Court cannot alter the Plan of Allocation, one of the most important aspects of the settlement. Thus, the Court cannot approve the settlement with this provision included.

## 5.5 Claims determinations based on equitable grounds

According to the Notice, "The Court has reserved jurisdiction to allow, disallow or adjust on equitable grounds the Claim of any Class Member." Final Notice, p. 8. Yet there is no provision in the settlement, and no notice to class members, as to what equitable grounds will be used.

Thus, class members have no way of knowing what arguments may be used to deny their claim even though they are otherwise entitled to recovery under the settlement. For instance, a class member could opt to be included in the settlement, assuming he is entitled to recovery, but later, after the deadline passes for objecting or opting out, find out that the Court will deny valid claims based on laches. That would effectively change the terms of the settlement after the time for objecting or opting out had passed.

On the other hand, those class members that are unable to technically qualify for a payment, despite being in the class, do not know what arguments they could make to obtain payment any way. A lawyer who knows what the notice means when it says "equitable grounds" may be able to make an argument to obtain payment, but a lay person may have no clue as to what "equitable grounds" may be or which the Court might be willing to entertain. Basing payments on hidden criteria that are not disclosed to class members is unfair and inadequate.

Page 6

**5.6 The parties failed to meet their burden of proof that the total settlement to the class would be fair, reasonable, or adequate.**

Objector objects to the settlement because the parties have failed to meet their burden to prove that the amount of the settlement is fair, reasonable, and adequate. The burden of proof is on the settlement parties, not objectors:

> At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.'

MANUAL FOR COMPLEX LITIGATION 4th, §21.634, p. 322.

**6. Objection to Class Counsel's request for attorneys' fees and expenses**

Objector objects to Class Counsels' request for attorneys' fees and expenses. Based on the lack of adequate notice, set out above, Objector has not had sufficient time to evaluate the fee request. For instance, the $6 million in expenses appears to be excessive, but given the untimely notice, Objector was denied the opportunity to review the alleged support for that request in time to determine whether to object to all or some parts of that request. Objector requests that the Court postpone the January 20, 2009 hearing to allow class members adequate time to review the fee and expense requests.

Wherefore, Objector prays that the Court disapprove the proposed settlement, application for attorneys' fees, and application for incentive awards, and grant Objector such other and further relief as to which she may be entitled.

_____

ROBERT E. MARGULIES, ESQ.

MARGULIES WIND
A Professional Corporation
Harborside Plaza 10
3 Second Street — Suite 1201
Jersey City, NJ 07311
201-333-0400
201-333-1110-fax

JEFFREY L. WEINSTEIN
JEFFREY L. WEINSTEIN, P.C.
Texas State Bar No. 21096450
518 East Tyler Street
Athens, TX 75751
903/677-5333
903/677-3657 — facsimile
*Subject to Court Approval Pro Hac Vice*

**ATTORNEYS FOR OBJECTOR**

Page 8

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM W. MCGEE, on behalf of himself
and all others similarly situated,
Plaintiff

v.

CONTINENTAL TIRE NORTH AMERICA,
INC.
Defendant.

Civil Action No. 2:06-CV-06234
(GEB) (CCC)

## CHARLES GREGORY AND NANCY GREEN'S OBJECTION TO PROPOSED SETTLEMENT; OBJECTION TO CLASS CERTIFICATION; NOTICE OF INTENTION TO APPEAR; AND REQUEST TO SPEAK AT THE HEARING

To The Honorable District Judge:

Come Now Charles Gregory and Nancy Green ("Objectors"), and file these Objections to the Proposed Settlement and Certification, and Notice of Intent to Appear and Request to Speak at the Hearing, and would show as follows:

**1. Party Status**

Objectors are members of the settlement class. Objectors' relevant information is as follows:

| | |
|---|---|
| Name: | Charles Gregory |
| Address | 101 Wildflower Lane Teague, TX 75860 |
| Telephone: | 254/625-0807 |
| Tire model: | P225/60R 18 99H |

Signature:   *Charl. M. Greg*   Dated: *8/28/08*
          Charles Gregory

| | |
|---|---|
| Name: | Nancy Green |
| Address | 503 Chase, Athens TX 75751 |
| Telephone: | 903/677-9488 |
| Tire model: | P225/60R 18 99H |

Signature:   *Nancy Green*   Dated: *8/29/08*
          Nancy Green

**Objection – Page 1**

Objector hereby asserts status as a party to this proceeding under the U.S. Supreme Court's opinion in *Devlin v. Scardelletti,* 536 U.S. 1 (2002). Objector asserts the rights as a party for all purposes, including, but not limited to, the right to: object to the settlement, receive notice of all hearings, receive copies of all filings by the Settling Parties, participate as a party at all hearings and conferences with the Court in this case, and appeal any decision approving the settlement, award of attorneys' fees, or award of incentive awards.

### 2.   Notice of Intention to Appear

Counsel Jeffrey L. Weinstein, subject to permission by the Court, and Robert Margulies intend to appear on behalf of objector at the hearing.

### 3.   Request to Speak at the Hearing

Objector requests that Counsel be allowed to appear at the final approval hearing to talk about these objections and to otherwise participate in the final approval hearing.

### 4.   Objections to Certification of the Settlement Class

The requirements of Rule 23 are not met, so the Court should not certify the proposed class or approve the proposed settlement. Courts across the country have held that a nationwide breach of warranty class cannot be certified. *See e.g., Cole v. General Motors Corp.* 484 F.3d 717 (5th Cir. 2007); *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012 (7th Cir. 2002); *In re Grand Theft Auto Video Game Consumer Litigation,* 2008 WL 2971526 (S.D. N.Y. 2008); *Walsh v. Ford Motor Co.,* 130 F.R.D. 260 (D. D.C.1990)(Variations among states' laws concerning scope and application of warranty claims demonstrated that common issues of law did not exist, precluding certification of class under Magnuson-Moss Warranty Act in action by automobile owners who sought monetary compensation for cost of repairing allegedly defective automatic transmissions).

Courts in this district agree that nationwide breach of warranty classes should not be certified. *See, e.g. Chin v. Chrysler Corp.,* 182 F.R.D. 448 (D. N.J. 1998). As one judge held in a holding that is applies equally to this case:

> [T]he finding that class-wide issues do not predominate over issues involving only individual plaintiffs results from the following three conclusions reached by the court: 1) even the basic question of whether plaintiffs' ignition switches [or in this case, tires] are defective will depend on facts particular to each individual plaintiff; 2) issues such as privity, reliance, and defendants' affirmative defenses may not be adjudicated on a class-wide basis; and 3) the court is compelled to apply the law of each plaintiff's home state to that plaintiff's claims, and thus class-wide disposition of the claims would essentially be impossible.

*In Re Ford Motor Co. Ignition Switch Products Liability Litigation,* 174 F.R.D. 332, 342 (D. N.J. 1997). All of those problems and more exist here.

In a recent decision in Illinois, the District Court provided a thorough and well-reasoned explanation for denying class certification to nationwide Magnuson Moss Act breach of warranty claims like this one:

> The Magnuson-Moss Act allows a consumer "who is damaged by the failure of a supplier, warrantor, or service contractor, to comply with any obligation under ... a written warranty ... [to] bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). "Magnuson-Moss is strictly a warranty statute based in contract law. When Congress passed the Act, it incorporated [Uniform Commercial Code ("UCC") ]-based State warranty law and not State tort law." *Walsh v. Ford Motor Co.*, 588 F.Supp. 1513, 1527 (D.D.C.1984) (citing H.R.Rep. No. 93-1107 (1973), *reprinted in* 1974 U.S.C.C.A.N. 7702). *See also Sharpe v. General Motors Corp.*, 198 Ga.App. 313, 401 S.E.2d 328, 330-31 (1991) (the Magnuson-Moss Act "relates to *damages*, not liability, and provides for consumers' recovery of costs and attorney's fees in successful actions for breaches of warranty *under state law.* " )(emphasis in original). Simply put, "state warranty law lies at the base of all warranty claims under Magnuson-Moss." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C.Cir.1986).

*In re General Motors Corp. Dex-Cool Products Liability Litigation*, 241 F.R.D. 305, 315 (S.D. Ill. 2007). The Court there denied certification of the nationwide class due to the vast differences in states' warranty laws:

> It appears that a large number of states in the proposed class, possibly a majority, hold that reliance is not an element of an express warranty claim. ... However, it appears also that a significant number of other states in the proposed class require specific reliance on a seller's statements as a condition of recovery. ... Finally, it appears that a small minority of the states in the class, including Illinois, follow a third approach to reliance, holding that a seller's affirmations and promises relating to goods create a rebuttable presumption of reliance by a buyer.

*Id.* at 320.

An issue not discussed in any case Objector could find is the problem of identifying which class members are covered by the Magnuson-Moss Act. The act only applies to "consumers" as defined by the statute. 15 USCA § 2310(1). Determining which class members meet that definition would require the participation of every class member.

Even if a class were certified, the Court would need to appoint separate representatives for the varying groups with conflicting interests. If significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass. MANUAL FOR COMPLEX LITIGATION 4th, §21.23, p. 272. Moreover, the Court cannot certify the settlement class if the Class Counsel and named Plaintiffs are not adequate representatives of the interests of class members:

One or more members of a class may sue or be sued as representative parties on behalf of all *only if* ... (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23 (a)(4) (emphasis added).

Settlement is not a cure-all: "[The] other specifications of [Rule 23]-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). These include the requirement that the class representatives' claims be typical of those of the class and that the representatives will adequately protect the class's interests. FED. R. CIV. P. 23(a)(3), (4). Where there are significant differences among subgroups within the class, "the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *Amchem*, 521 U.S. at 627. *Amchem* held that the fact that the parties are settling does not erase the need to have separate representatives for all the subgroups in the class:

> The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected. Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency. In another asbestos class action, the Second Circuit spoke precisely to this point: "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 982 F.2d 721, 742-743 (1992), modified on reh'g sub nom. *In re Findley*, 993 F.2d 7 (1993).

*Id.*

The Seventh Circuit has held that separate class representatives must be appointed, even in a settlement class, when the laws of the states differ. *Smith v. Sprint Communications Co.*, 387 F.3d 612, 614-15 (7th Cir.2004). That court went on to point out that if the underlying litigation class cannot be certified, as it could not here, then the class representatives have a very difficult showing that they can adequately represent the interests of the class:

> The nationwide class plaintiffs thus entered negotiations in what the *Amchem* court describes as a "disarmed" state, unable to "use the threat of litigation to press for a better offer," *Amchem*, 521 U.S. at 621, 117 S.Ct. 2231-not a good position from which to represent the interests of parties that do wield such a threat.

*Id.* at 614. Similarly here, even though this is a settlement class, the Court should not certify the class because (1) separate subclass representatives should have been appointed and (2) the fact that the underlying litigation class could not be certified created a very week bargaining position and prevented the class representatives from adequately representing the class members' interests.

The specific issues that preclude certification and/or require separate class representatives are as follows:

**4.1 Breach v. no breach.** All causes of action alleged by Plaintiff in this case are based on a breach of warranty. To determine whether there is a breach of warranty and a cause of action for a specific class member, an individual investigation of that class member's tires or paperwork would be necessary. For instance, under 15 U.S.C.A. § 2310 (d)(1) a class member only has a claim if he or she "is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." That determination requires individual class member participation. In addition, there is a conflict of interests between class members who have and have not suffered premature wear on their tires.

**4.2 Separate state warranty laws regarding reliance.** As the courts above note, the applicable state warranty laws for class members will differ as to the need for reliance and any presumptions regarding reliance. Thus, for some states individual class member participation would be required. Moreover, separate representatives should have been appointed to account for these differences because class members in some states have stronger claims than class members in other states. Interestingly, Plaintiffs appear to agree with this point because their Amended Complaint, Doc. 34 at 19, sought to create a New Jersey subclass, showing that class members in some states have stronger claims than class members in other states.

**4.3 Different strengths and weaknesses regarding statutes of limitations.** First, there are there different statutes of limitations across states that would apply to separate class members. Second, differences in implementation exist for class members within any individual state. For instance, if a two year statute of limitations applied in a state, class members who failed to satisfy that requirement would be in a worse position than those that did satisfy the requirement. Determining whether the statute of limitations was met would involve individual class member participation. Moreover, separate representatives should have been appointed to represent the conflicting interests between those class members who do not have statute of limitations problems and those that do.

**4.4 Class members in privity and those that are not.** Laws of the states differ as to the rights of consumers not in privity with the Defendant. Courts have declined class certification, at least in part, because of variations in state law regarding privity of contract. *See, e.g., Chin v. Chrysler Corp.,* 182 F.R.D. 448, 460 (D. N.J. 1998)(noting that plaintiffs failed to show that state law differences regarding vertical privity did

not pose manageability problems). The proposed class here includes variations in privity: (1) consumers who purchased the tires with a car, (2) consumers who purchased the tires directly, and (3) consumers who purchased the tires used (the class includes persons who "purchased or received Eligible Tires to replace other tires," which would include second-hand purchasers).

4.5 **Class members who are and are not "consumers" under the Act.** Under the Magnuson-Moss Act, only "consumers," as defined by the statute, have a cause of action. 15 USCA § 2310(1). Determining which class members meet that definition would require individual class member participation. Moreover, there is a conflict between class members who do and do not meet that requirement, so separate class representatives should have been appointed for those two groups.

## 5. Objections to the Approval of the Settlement

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement for the following reasons.

### 5.1 The settlement fails to take into account the strengths and weaknesses of the claims of different subgroups within the class.

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because it fails to take into account the significant differences between the claims of various subgroups, as discussed above. For instance, class members with and without a statute of limitations problem receive the same amount under the settlement. The problems with certification set out above should have been taken into account in dividing up the relief for the class.

### 5.2 The settlement gives money to persons not protected by the Magnuson-Moss Act

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because it reduces the money paid to class members who have a cognizable claim under the Magnuson-Moss Act – those who meet the statute's definition of "consumer" – by allowing class members that have no cognizable claim – those who do not meet the statute's definition of "consumer" – to share in the settlement proceeds. Under the Magnuson-Moss Act, only "consumers," as defined by the statute, have a cause of action. 15 USCA § 2310(1). The statute defines consumers as follows:

The term "consumer" means a *buyer (other than for purposes of resale)* of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

15 USCA § 2310(3)(emphasis added). The class here is defined as:

Objection – Page 6

> The Class shall consist of all persons or entities that purchased *or received* Eligible Tires as part of an automobile purchase or lease transaction and/or purchased *or received* Eligible Tires to replace other tires, including, but not limited to, Eligible Tires, between January 1, 2003 [and July 14, 2008].

Preliminary Approval Order, Doc. 48 (emphasis added). The settlement and the claim form do not place any limits on a class member's right to receive payment from the settlement fund. Thus, the following class members are entitled to share in the settlement proceeds, despite not being "consumers" under the Act:

- Resellers. Resellers clearly meet the class definition, but are not covered by the Act.
- Persons who received the tires but did not purchase the tires. The settlement definition shows that there is a difference between persons who "purchased" the tires (and are therefore buyers and consumers under the Act) and those who "received" the tires (who, logically under the definition, did not "purchase" the tires so are not buyers and not consumers under the Act).

Moreover, the settlement could be read to allow a chain like Discount Tire Company to share in the proceeds. The company appears to fit the class definition – an entity that purchased eligible tires during the relevant period to replace other tires (the company purchases tires to replace tires in their inventory that are sold). Thus, the company could make a claim and take a large part of the settlement fund, despite not being a consumer under the Act.

Whether or not this problem is as widespread as the Discount Tire Company example shows, the fact is that the settlement permits class members with no cognizable claim under the Act to share in the settlement proceeds. That is not fair, reasonable, or adequate. The Court should disapprove the settlement.

### 5.3 Denial of due process in the claims process

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because the claims process, wherein the claims administrator has final say over claims, would deny class members due process. The claims process set up under the settlement provides:

> The Administrator's determination of a Claim is final and may not be appealed by anyone.

Settlement Agreement p. 12, para. 4. Appointing a third party to make the final determination on claims, without any appeal right to the Court, would deny class members' due process rights. *Smith v. Sprint Communications Co.*, 387 F.3d 612, 614 (7th Cir.2004)(overturning a class action settlement that provided that law professors would make determinations regarding claims); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 185 (2nd Cir.1987) (disallowing the administration of class funds by independent foundation without judicial oversight).

### 5.4 Objection to cy pres

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, because it provides that residual monies may be paid to third parties rather than class members who make claims. The Court would abuse its discretion if it were to approve a settlement that gives settlement money to third parties when that money could be paid to class members.

> If, after the full distribution of funds from the Escrow Account, there are any funds remaining and the Escrow Account has paid out less than $5 million ..., the Parties may either: (a) return to the Court with a recommendation for their distribution as part of a *cy pres* award; or (b) upon mutual written agreement of the Parties and to the extent that the amount expended from the Escrow Account does not exceed $5 million, agree to extend the period in which Claims are submitted to the Claims Process and paid from the Escrow Account.

Settlement Agreement p. 14. First, there is no provision for the situation where there is money left over even after extending the claim period. Second, and more importantly, giving left over money to a third party rather than class members who made claims, would be an abuse of discretion. This abuse of class action settlements, where money due to class members is instead given to third parties, has garnered national attention. A story in the *New York Times* first reported on the abuse. *Doling Out Other People's Money, New York Times*, November 26, 2007. According to Samuel Issacharoff, a nationally-recognized class action expert and law professor at New York University, these provisions are "an invitation to wild corruption of the judicial process." *Id.* The *Washington Post* followed that article with an editorial calling for an end to the practice: "In all but the rarest of circumstances, those funds should be made available to individual plaintiffs and not to outside organizations -- no matter how worthy." *When Judges Get Generous: A better way to donate surpluses from class-action awards, Washington Post*, December 17, 2007, A20.

Not only are these provisions bad public policy, they fail to satisfy the applicable legal requirements for approving settlements. The Second Circuit has strongly hinted that a district court would abuse its discretion in approving a settlement of an antitrust claim by not giving unclaimed funds to class members who did file claims, rather than to third party charities. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2nd Cir. 2007). That is the very issue here: whether the court has the discretion to approve a *cy pres* settlement in an antitrust case when the money could, instead, be paid to class members who did make a claim.

Indeed the American Law Institute (ALI) is in the process of adopting a prohibition against this very type of provision in class action settlements. ALI is preparing its "Principles of the Law of Aggregate Litigation," and its Discussion Draft No. 2, dated April 6, 2007, would clearly prohibit these abuses:

> § 3.07 Cy Pres Settlements
>
> ... (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively

provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable;

*Id.* § 3.07 (b), at 237-238. Of course, in this case the extra money could easily be given to claimants for no additional costs. The ALI draft reasons:

> Assuming that class members can be reasonably identified and that direct distributions make economic sense, funds may remain because some class members could not be identified or chose not to file claims. Under this Section, assuming that further distributions to the previously identified class members would be economically viable, that approach is preferable to cy pres distributions.

*Id.* at 239. Even if giving this money to claimants would over compensate them, the ALI draft finds that that would be preferable to giving the money to third parties:

> [T]his Section takes the view that distributions to class members better approximate the goals of the substantive laws than distributions to third parties that were not directly injured by the defendant's conduct.

*Id.* Although the ALI has not finally adopted that document, the reasoning is sound and this Court can and should stop this class action abuse now by disapproving that provision of the settlement.

## 5.5   The parties failed to meet their burden of proof that the total settlement to the class would be fair, reasonable, or adequate.

Objectors object to the settlement because the parties have failed to meet their burden to prove that the amount of the settlement is fair, reasonable, and adequate. The burden of proof is on the settlement parties, not objectors:

> At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.' [979]
>
> 979. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995));

MANUAL FOR COMPLEX LITIGATION 4th, §21.634, p. 322. There is no or insufficient evidence to support the finding that the settlement is fair, reasonable, and adequate.

## 6.   Reservation of right to raise further objections

The settling parties have not filed their motions, briefs, or materials in support of the settlement or application for attorney's fees and will not do so by the time objections are due. Therefore,

Objectors hereby reserve the right to make additional objections to the settlement and application for attorney's fees in response to those filings.

Wherefore, Objectors pray that the Court disapprove the proposed settlement and certification, and grant Objectors such other and further relief as to which Objectors may be entitled.

Respectfully submitted,

_____
ROBERT E. MARGULIES, ESQ.
New Jersey State Bar No. REM-0499

MARGULIES WIND
A Professional Corporation
Harborside Plaza 10
3 Second Street – Suite 1201
Jersey City, NJ 07311
201-333-0400
201-333-1110-fax

JEFFREY L. WEINSTEIN
JEFFREY L. WEINSTEIN, P.C.
Texas State Bar No. 21096450
518 East Tyler Street
Athens, TX  75751
903/677-5333
903/677-3657 – facsimile
*Subject to Court Approval Pro Hac Vice*

**ATTORNEYS FOR OBJECTOR**

## CERTIFICATE OF SERVICE

A copy of the foregoing Objection to Proposed Settlement etc. was on this 2ND day of September, 2008, delivered to the following:

*Via ECF Filing*
Clerk of the Court
**United States District Court**
Clarkson S. Fisher Building and U.S. Courthouse
402 East State Street
Room 2020
Trenton, NJ 08608

*Via ECF Filing*
Cary L. Flitter
**Lundy, Flitter, Beldecos & Berger, P.C.**
450 N. Narberth Avenue
Narberth, PA 19072

*Via ECF Filing*
John P. Hooper
**Reed Smith LLP**
599 Lexington Avenue
New York, NY 10022

_____
Robert E. Margulies, Esq.

**Objection – Page 11**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION | Civil Action No. 1:07-cv-02867-NLH-AMD |

### OBJECTION TO PROPOSED SETTLEMENT;
### OBJECTION TO CLASS CERTIFICATION;
### NOTICE OF INTENTION TO APPEAR; AND
### REQUEST TO SPEAK AT THE HEARING
### OF OBJECTORS JIM W. JOHNSON AND DUSTIN TURNER

To The Honorable District Judge and Magistrate:

Comes Now Jim W. Johnson and Dustin Turner, ("Objectors"), and file these Objections to the Proposed Settlement and Certification, and Notice of Intent to Appear and Request to Speak at the Hearing, and would show as follows:

### 1. Party Status

Objectors are members of the settlement class.

| Name: | Jim W. Johnson | Name: | Dustin Turner |
|---|---|---|---|
| Address | 111 North Shore Drive | Address | P.O. 912 |
| Telephone: | Kerens, Texas 75144 | Telephone: | Kemp, Texas 75143 |

Signature: _Jim W Johnson_     Signature: _Dustin Turner_
      Jim Johnson                           Dustin Turner

Objectors hereby assert status as a party to this proceeding under the U.S. Supreme Court's opinion in *Devlin v. Scardelletti*, 536 U.S. 1 (2002). Objectors assert the rights as a party for all purposes, including, but not limited to, the right to: object to the settlement, receive notice of all hearings, receive copies of all filings by the Settling Parties, participate as a party at all hearings and conferences with the Court in this case, and appeal any decision approving the settlement, award of attorneys' fees, or award of incentive awards.

### 2. Notice of Intention to Appear

Counsel Jeffrey L. Weinstein, subject to permission by the Court, and Robert Margulies intend to appear on behalf of objectors at the hearing.

### 3. Request to Speak at the Hearing

Objectors request that Counsel be allowed to appear at the final approval hearing to talk about these objections and to otherwise participate in the final approval hearing.

### 4. Objections to Certification of the Settlement Class

The requirements of Rule 23 are not met, so the Court should not certify the proposed class or approve the proposed settlement. Courts across the country have held that a nationwide breach of warranty class cannot be certified. *See e.g., Cole v. General Motors Corp.* 484 F.3d 717 (5th Cir. 2007); *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012 (7th Cir. 2002); *In re Grand Theft Auto Video Game Consumer Litigation,* 2008, WL 2971526 (S.D. N.Y. 2008); *Walsh v. Ford Motor Co.,* 130 F.R.D. 260 (D. D.C.1990)(Variations among states' laws concerning scope and application of warranty claims demonstrated that common issues of law did not exist, precluding certification of class under Magnuson-Moss Warranty Act in action by automobile owners who sought monetary compensation for cost of repairing allegedly defective automatic transmissions).

Courts in this district agree that nationwide breach of warranty classes should not be certified. *See, e.g. Chin v. Chrysler Corp.,* 182 F.R.D. 448 (D. N.J. 1998). As one judge held in a holding that is applies equally to this case:

> [T]he finding that class-wide issues do not predominate over issues involving only individual plaintiffs results from the following three conclusions reached by the court: 1) even the basic question of whether plaintiffs' ignition switches are defective will depend on facts particular to each individual plaintiff; 2) issues such as privity, reliance, and defendants' affirmative defenses may not be adjudicated on a class-wide basis; and 3) the court is compelled to apply the law of each plaintiff's home state to that plaintiff's claims, and thus class-wide disposition of the claims would essentially be impossible.

*In Re Ford Motor Co. Ignition Switch Products Liability Litigation,* 174 F.R.D. 332, 342 (D. N.J. 1997). All of those problems and more exist here.

In a recent decision in Illinois, the District Court provided a thorough and well-reasoned explanation for denying class certification to nationwide breach of warranty claims like this one. *In re General Motors Corp. Dex-Cool Products Liability Litigation,* 241 F.R.D. 305, 315 (S.D. Ill. 2007). The Court there denied certification of the nationwide class due to the vast differences in states' warranty laws:

> It appears that a large number of states in the proposed class, possibly a majority, hold that reliance is not an element of an express warranty claim. ... However, it appears also that a significant number of other states in the proposed class require specific reliance on a seller's statements as a condition of recovery. ... Finally, it appears that a small minority of the states in the class, including Illinois, follow a

third approach to reliance, holding that a seller's affirmations and promises relating to goods create a rebuttable presumption of reliance by a buyer.

*Id.* at 320. That same problem exists here.

Even if a class were certified, the Court would need to appoint separate representatives for the varying groups with conflicting interests. If significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass. MANUAL FOR COMPLEX LITIGATION 4th, §21.23, p. 272. Moreover, the Court cannot certify the settlement class if the Class Counsel and named Plaintiffs are not adequate representatives of the interests of class members:

> One or more members of a class may sue or be sued as representative parties on behalf of all *only if* ... (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23 (a)(4) (emphasis added).

Settlement is not a cure-all: "[The] other specifications of [Rule 23]-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). These include the requirement that the class representatives' claims be typical of those of the class and that the representatives will adequately protect the class's interests. FED. R. CIV. P. 23(a)(3), (4). Where there are significant differences among subgroups within the class, "the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *Amchem*, 521 U.S. at 627. *Amchem* clearly stated that the fact that the parties are settling does not erase the need to have separate representatives for all the subgroups in the class:

> The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected. Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency. In another asbestos class action, the Second Circuit spoke precisely to this point: "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 982 F.2d 721, 742-743 (1992), modified on reh'g sub nom. *In re Findley*, 993 F.2d 7 (1993).

*Id.*

**Objection – Page 3**

The Seventh Circuit has held that separate class representatives must be appointed, even in a settlement class, when the laws of the states differ. *Smith v. Sprint Communications Co.*, 387 F.3d 612, 614-15 (7th Cir.2004). That court went on to point out that if the underlying litigation class cannot be certified, as it could not here, then the class representatives have a very difficult showing that they can adequately represent the interests of the class:

> The nationwide class plaintiffs thus entered negotiations in what the *Amchem* court describes as a "disarmed" state, unable to "use the threat of litigation to press for a better offer," *Amchem*, 521 U.S. at 621, 117 S.Ct. 2231-not a good position from which to represent the interests of parties that do wield such a threat.

*Id.* at 614. Similarly here, even though this is a settlement class, the Court should not certify the class because (1) separate subclass representatives should have been appointed and (2) the fact that the underlying litigation class could not be certified created a very week bargaining position and prevented the class representatives from adequately representing the class members' interests.

The specific issues that preclude certification and/or require separate class representatives are as follows:

**4.1 Negligence claims.**   Individual class member participation is required to prove a negligence claim because the class member would need to prove damages. Similarly, separate subclasses should have been created to represent the interests of those class members who suffered damages and those that did not.

**4.2 Breach v. no breach.**   To determine whether there is a breach of warranty and a cause of action for a specific class member, an individual investigation of that class member's tires or paperwork would be necessary. In addition, there is a conflict of interests between class members who have and have not suffered damages.

**4.3 Separate state warranty laws regarding reliance.**   As the courts above note, the applicable state warranty laws for class members will differ as to the need for reliance and any presumptions regarding reliance. Thus, for some states individual class member participation would be required. Moreover, separate representatives should have been appointed to account for these differences because class members in some states have stronger claims than class members in other states.

**4.4 Class members in privity and those that are not.**   Laws of the states differ as to the rights of consumers not in privity with the Defendant. Courts have declined class certification, at least in part, because of variations in state law regarding privity of contract. *See, e.g., Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D. N.J. 1998)(noting that plaintiffs failed to show that state law differences regarding vertical privity did not pose manageability problems). The proposed class here includes variations in privity – some Defendants sold the pet food directly to the class members and other Defendants are manufactures that are higher in the vertical distribution chain.

### 5.  Objections to the Approval of the Settlement

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement for the following reasons.

### 5.1 The settlement fails to take into account the strengths and weaknesses of the claims of different subgroups within the class.

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because it fails to take into account the significant differences between the claims of various subgroups, as discussed above.  The problems with certification set out above should have been taken into account in dividing up the relief for the class.

For instance, the amounts allocated for the healthy pet screenings and refunds are grossly inadequate.  Refunds are limited to $250,000, a mere 1% of the total settlement fund.  This is completely inadequate for a nationwide class of millions of consumers.  Assume there are 10 million class members:  each would get a mere 2.5 cent refund.  The $400,000 allocated to healthy pet screenings is even more outrageous:  class members who incurred vet bills solely because of the tainted products, bills that probably exceed $50 each and even more, get less than 2% of the total settlement, or 4 cents apiece under the 10 million class member assumption.  Class members with healthy pet screening and refund claims were not adequately represented.

### 5.2 Denial of due process in the claims process

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because the claims process, wherein the claims administrator has final say over claims, would deny class members due process.  The claims process set up under the settlement provides:

> All decisions of the Claims Administrator shall be final, binding and not subject to appeal.

Settlement Agreement p. 34.  Appointing a third party to make the final determination on claims, without any appeal right to the Court, would deny class members' due process rights.  *Smith v. Sprint Communications Co.*, 387 F.3d 612, 614 (7th Cir.2004)(overturning a class action settlement that provided that law professors would make determinations regarding claims); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 185 (2nd Cir.1987) (disallowing the administration of class funds by independent foundation without judicial oversight).

### 5.3 Objection to cy pres

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, because it provides that residual monies may be paid to third parties rather than class members

who make claims. The Court would abuse its discretion if it were to approve a settlement that gives settlement money to third parties when that money could be paid to class members.

> At such time as all valid Claims properly payable pursuant to the provisions of this Settlement Agreement, are paid in full from the Settlement Fund by the Claims Administrator, the Claims Administrator shall remit the balance, if any, of the Settlement Fund the charities specified on Schedule 1,

Settlement Agreement p. 45. Giving left over money to a third party rather than class members who made claims, would be an abuse of discretion. This abuse of class action settlements, where money due to class members is instead given to third parties, has garnered national attention. A story in the *New York Times* first reported on the abuse. *Doling Out Other People's Money, New York Times*, November 26, 2007. According to Samuel Issacharoff, a nationally-recognized class action expert and law professor at New York University, these provisions are "an invitation to wild corruption of the judicial process." *Id.* The *Washington Post* followed that article with an editorial calling for an end to the practice: "In all but the rarest of circumstances, those funds should be made available to individual plaintiffs and not to outside organizations -- no matter how worthy." *When Judges Get Generous: A better way to donate surpluses from class-action awards, Washington Post*, December 17, 2007, A20.

Not only are these provisions bad public policy, they fail to satisfy the applicable legal requirements for approving settlements. The Second Circuit has strongly hinted that a district court would abuse its discretion in approving a settlement of an antitrust claim by not giving unclaimed funds to class members who did file claims, rather than to third party charities. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2nd Cir. 2007). That is the very issue here: whether the court has the discretion to approve a *cy pres* settlement in an antitrust case when the money could, instead, be paid to class members who did make a claim.

Indeed the American Law Institute (ALI) is in the process of adopting a prohibition against this very type of provision in class action settlements. ALI is preparing its "Principles of the Law of Aggregate Litigation," and its Discussion Draft No. 2, dated April 6, 2007, would clearly prohibit these abuses:

> § 3.07 Cy Pres Settlements
>
> ... (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable ...

*Id.* § 3.07 (b), at 237-238. Of course, in this case the extra money could easily be given to claimants for no additional costs by simply changing the disbursement formula to eliminate the cap and send one larger check to claimants. The ALI draft reasons:

> Assuming that class members can be reasonably identified and that direct distributions make economic sense, funds may remain because some class

members could not be identified or chose not to file claims. Under this Section, assuming that further distributions to the previously identified class members would be economically viable, that approach is preferable to cy pres distributions.

*Id.* at 239. Even if giving this money to claimants would over compensate them, the ALI draft finds that that would be preferable to giving the money to third parties:

[T]his Section takes the view that distributions to class members better approximate the goals of the substantive laws than distributions to third parties that were not directly injured by the defendant's conduct.

*Id.* Although the ALI has not finally adopted that document, the reasoning is sound and this Court can and should stop this class action abuse now by disapproving that provision of the settlement.

**5.4   The parties failed to meet their burden of proof that the total settlement to the class would be fair, reasonable, or adequate.**

Objectors object to the settlement because the parties have failed to meet their burden to prove that the amount of the settlement is fair, reasonable, and adequate. The burden of proof is on the settlement parties, not objectors:

At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.' [979]

979. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995));

MANUAL FOR COMPLEX LITIGATION 4th, §21.634, p. 322. There is no or insufficient evidence to support the finding that the settlement is fair, reasonable, and adequate.

**6.   Reservation of right to raise further objections**

The settling parties have not filed their motions, briefs, or materials in support of the settlement and certification and will not do so by the time objections are due. Therefore, Objectors hereby reserve the right to make additional objections to the settlement and application for attorney's fees in response to those filings.

Wherefore, Objectors pray that the Court disapprove the proposed settlement and certification, and grant Objectors such other and further relief as to which Objectors may be entitled.

Case 1:09-cv-10035-HB -RLE   Document 150-2   Filed 08/03/11   Page 51 of 65
Case 1:07-cv-02867-NLH -AMD   Document 250-1   Filed 10/03/08   Page 11 of 62 PageID: 4364
Case 1:07-cv-02867-NLH-AMD   Document 190   Filed 09/02/2008   Page 8 of 9

Respectfully submitted,

_____
ROBERT E. MARGULIES, ESQ.
New Jersey State Bar No. REM-0499

MARGULIES WIND
A Professional Corporation
Harborside Plaza 10
3 Second Street -- Suite 1201
Jersey City, NJ 07311
201-333-0400
201-333-1110-fax

JEFFREY L. WEINSTEIN
JEFFREY L. WEINSTEIN, P.C.
Texas State Bar No. 21096450
518 East Tyler Street
Athens, TX  75751
903/677-5333
903/677-3657 — facsimile
*Subject to Court Approval Pro Hac Vice*

**ATTORNEYS FOR OBJECTOR**

Objection – Page 8

## CERTIFICATE OF SERVICE

A copy of the foregoing Objection to Proposed Settlement etc. was on this 2nd day of September, 2008, delivered to the following, as well as filing through ECF.

*Via ECF Filing*
Clerk of the Court
**United States District Court**
Mitchell H. Cohen Bldg. U.S. Courthouse
4th and Cooper Streets, Room 1050
Camden NJ 08101

*Via ECF Filing*
Kenneth A. Wexler
WEXLER TORISEVA WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603

*Via ECF Filing*
Craig A. Hoover, Esq.
HOGAN & HARTSON LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004-1109

_____
Robert E. Margulies, Esq.

# EXHIBIT 16

Case 1:09-cv-10035-HB -RLE   Document 150-2   Filed 08/03/11   Page 54 of 65



Email [                    ] [Submit]

Our Services    FAQs    About Us    Traffic Tips & Resources    DMV Points    Traffic Articles    Contact Us    Traffic Ticket Tip Sheet

🍁 Canadian Residents        Out of State Residents        En Español        Truck Tickets        Search our site [          ]

## New York Traffic Ticket Lawyer - Weiss & Associates, PC

Getting a New York speeding ticket or traffic ticket is never fun, but contesting it does not have to be complicated. In fact, our goal is to making fighting it as easy as possible.

Reduce the hassle and stress associated with fighting a New York traffic ticket. Our staff will explain in plain English the process and will be honest about your prospects. Eliminate the need to wait on a DMV line or waste time in traffic court ... hire us instead. At the end of the day, you'll see it's no big deal!

Should your case need to go to court, a New York traffic lawyer will vigorously defend you anywhere in New York State, including at the NYC Traffic Violations Bureau. Whether it is a speeding ticket, red light ticket, license suspension or any other NYS moving violation, you do not have to be inconvenienced. Let a New York traffic attorney appear on your behalf instead and make the whole experience no big deal. Our flat fee means no surprises for you and our experienced team of New York traffic lawyers really know how to fight your New York traffic ticket.

Read how Weiss & Associates, PC has helped motorists, such as yourself, or click here now for a free consultation, or just call us at 888 RED LIGHT® (or 888-733-5444). Or stop by our **brand new** Manhattan office at 440 Park Avenue So, 3rd Floor, NY, NY 10016.

**ATTORNEY ADVERTISING**

**Share this page**

3       [ Like ]    3 likes. Sign Up to see what your friends like.



### TRAFFIC LAW NEWS    more

Cell Phone Tickets To Carry Points »
Cell phone tickets will soon carry 2 points.

FAQs About Drunk Driving Program (DDP) »
New article posted about the New York Drunk Driving Program.

### LATEST BLOG POST    more

888 Red Light's Worst Traffic Court Judge Award
There are ten Traffic Violation Bureaus (TVB) in New York State (seven in New York City) adjudicating almost 800,000 cases per year and raising over $40,000,000 million in fines and surcharges for ...

### TESTIMONIALS    more

"You guys did a great job and, if I ever get another ticket, you will handle it."

**Joseph D. (NYC)**

"My son hired Matt to defend against 2 alleged speeding violations. In both cases, Matt's team was successful in getting the fines and points reduced. Would certainly use his services again in the event I give my son back the keys".

**Morris S (NYC)**


What are the benefits of our services?


Want to read about some of our successes?

---

ANYWHERE IN NEW YORK STATE CLICK HERE OR CALL (888) RED LIGHT FOR YOUR FREE CONSULTATION

### HIRE US NOW

Location  [Select          ▼]
Violation [Select          ▼]
☐ Commercial Driver's License (CDL)?


GO

### ONLINE DRIVER SAFETY CLASS



### FOLLOW US


Check out our Blog Confessions of a Traffic Lawyer


facebook


follow us on twitter

### TRAFFIC TIPS    more

Tip #5: Avoiding Tickets: Do not pass a police officer. Seems obvious but ...

## GET OUR NEWSLETTER

Enter email address



Truck ticket?



Frequently Asked Questions

[ Back to top ]



Site Map > Contact Us > Privacy Policy / Terms of Use Website by XO Global
© Copyright 2011. All Rights Reserved. Attorney Advertising.

Albany County Traffic Lawyer  Allegany County Traffic Lawyer  Bronx County Traffic Lawyer  Broome County Traffic Lawyer  Cattaraugus County Traffic Lawyer  Cayuga County Traffic Lawyer  Chautauqua County Traffic Lawyer  Chemung County Traffic Lawyer  Chenango County Traffic Lawyer  Clinton County Traffic Lawyer  Columbia County Traffic Lawyer  Cortland County Traffic Lawyer  Delaware County Traffic Lawyer  Dutchess County Traffic Lawyer  Erie County Traffic Lawyer  Essex County Traffic Lawyer  Franklin County Traffic Lawyer  Fulton County Traffic Lawyer  Genesee County Traffic Lawyer  Greene County Traffic Lawyer  Hamilton County Traffic Lawyer  Herkimer County Traffic Lawyer  Jefferson County Traffic Lawyer  Kings County Traffic Lawyer  Lewis County Traffic Lawyer  Livingston County Traffic Lawyer  Madison County Traffic Lawyer  Monroe County Traffic Lawyer  Montgomery County Traffic Lawyer  Nassau County Traffic Lawyer  New York County Traffic Lawyer  Niagara County Traffic Lawyer  Oneida County Traffic Lawyer  Onondaga County Traffic Lawyer  Ontario County Traffic Lawyer  Orange County Traffic Lawyer  Orleans County Traffic Lawyer  Oswego County Traffic Lawyer  Otsego County Traffic Lawyer  Putnam County Traffic Lawyer  Queens County Traffic Lawyer  Rensselaer County Traffic Lawyer  Richmond County Traffic Lawyer  Rockland County Traffic Lawyer  Saratoga County Traffic Lawyer  Schenectady County Traffic Lawyer  Schoharie County Traffic Lawyer  Schuyler County Traffic Lawyer  Seneca County Traffic Lawyer  St Lawrence County Traffic Lawyer  Steuben County Traffic Lawyer  Suffolk County Traffic Lawyer  Sullivan County Traffic Lawyer  Tioga County Traffic Lawyer  Tompkins County Traffic Lawyer  Ulster County Traffic Lawyer  Warren County Traffic Lawyer  Washington County Traffic Lawyer  Wayne County Traffic Lawyer  Westchester County Traffic Lawyer  Wyoming County Traffic Lawyer  Yates County Traffic Lawyer

# EXHIBIT 17

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLRB HANSON INDUSTRIES, LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated, | No. 09-17380 |
| Plaintiffs-Appellees, | APPELLEE'S MOTION TO DISMISS APPEAL |
| v. | |
| WEISS & ASSOCIATES, PC, | |
| Objector-Appellant, | |
| v. | |
| GOOGLE, INC., | |
| Defendant-Appellee. | |

## I.    <u>INTRODUCTION</u>

On October 14, 2009, Appellant Weiss & Associates, PC, filed a Notice of Appeal of the district court's Final Judgment and its Order Approving Award of Attorney's Fees and Expenses, and Class Representative Incentive Compensation Award, both entered on September 14, 2009.  No other Class Member filed a Notice of Appeal.  This sole appeal relates to an objection filed by Matthew Weiss,

an attorney and seasoned objector to class action settlements.[1]  The appeal will

delay the distribution of a substantial settlement to Class Members in a case that

has been pending for over four years.

This appeal should be dismissed because Appellant Weiss & Associates, PC,

did not file a proper and timely objection in the district court.  Failing to file an

objection with the district court waived Appellant's right to appeal the district

court's Final Judgment and Order Approving Award of Attorneys' Fees and

Expenses, and Class Representative Incentive Compensation Award.   On this

basis, Appellees seek dismissal of the appeal.

---

[1]  Mr. Weiss testified that his law firm retained two Florida attorneys, Paul Rothstein and Albert Bacharach, to represent him in objecting to this class action settlement.  *See* Matthew Weiss Dep. 23:3–14, Aug. 6, 2009 (district court Docket No. 343-1, attached hereto as Exhibit 1).  He further testified he has worked together with both attorneys in objecting to class action settlements and that he has objected to "roughly ten" class action settlements.  *Id.* at 25:23 – 26:22.

Messrs. Rothstein and Bacharach are also seasoned class action objectors.  They have filed objections to other class action settlements with attorney Steve Miller (who also filed an objection with the district court on behalf of two Class Members in this action, but did not file a Notice of Appeal), and on at least one occasion they received a fee for dismissing an appeal of a class action settlement without any modification to the settlement.  *See* Decl. of Lester L. Levy in Supp. of Pls.' Mot. for Final Approval of Class Action Certification and Settlement; Pls.' Mot. for Award of Att'ys' Fees and Expenses and Class Representative Incentive Compensation Award; and Pls.' Resp. to Class Member Objections ¶ 98 & Exs. B–C (district court Docket No. 343, attached hereto as Exhibit 2, with Exhibits B and C thereto).

## II.   **PROCEDURAL BACKGROUND**

On May 12, 2009, the district court issued an Order Certifying Settlement Class and Granting Preliminary Approval of Class Action Settlement ("Order Granting Preliminary Approval") (district court Docket No. 319, attached hereto as Exhibit 3).  In that Order, the Court stated that <u>all objections</u> must be delivered to counsel and filed on or before July 14, 2009, and that <u>all objections</u> must contain <u>proof</u> that the objector was a Class Member:

> [N]o Class Member shall be heard or entitled to contest the approval of terms and conditions of the proposed Settlement, the Order and Final Judgment to be entered approving the same, the Plan of Allocation, or the Fee and Expense Application, unless **on or before July 14, 2009**, that Class Member has served by hand or by first-class mail written objections and copies of all briefs or other papers (**which must contain proof of the dates that the person was an AdWords Advertiser**) upon Representative Plaintiffs' Counsel . . . and upon counsel for Google . . . and has filed said objections, papers and briefs, showing due proof of service upon Representative Plaintiffs' Counsel and counsel for Google with the Clerk of the Court.

*Id.* at ¶ 11 (emphases added); *see also id.* at 13 of Ex. 1 thereto ("Any such objection shall include all briefs and other papers to be considered by the Court, and must include the name and address of the person and the dates that the person was an AdWords Advertiser . . . .").  The Court further stated that any objector who did not abide by the above would be deemed to have waived the objection:

> Any Member of the Class who does not object in the manner provided **shall be deemed to have waived any such objection, and shall forever be foreclosed from making any objection** to the fairness, adequacy or reasonableness of the proposed Settlement, the Final

> Judgment to be entered approving the Settlement, the Plan of
> Allocation, or the Fee and Expense Application.

*Id.* at ¶ 12 (emphasis added).

On July 14, 2009, Matthew Weiss filed objections to the proposed
settlement. *See* Prelim. Objections to Proposed Settlement and Notice of Intent to
Appear at Fairness Hr'g ("Weiss Objection") (district court Docket No. 329,
attached hereto as Exhibit 4). Although the objection provides an AdWords
account number and address for Mr. Weiss, it provides no proof or specificity of
the dates that Mr. Weiss was an AdWords Advertiser, as required by the Order
Granting Preliminary Approval (indeed, no such proof exists because, as set forth
below, Mr. Weiss was never an AdWords Advertiser). Indeed, Mr. Weiss's
objection is not supported by any declaration or evidence whatsoever, and contains
only a general averment by Mr. Weiss's attorney that Mr. Weiss became an
AdWords Advertiser at some point during the class period ("between June 1, 2005
and February 28, 2009, inclusive"). *See id.* at 2.

The following day, Mr. Weiss's attorney filed a Notice of New Address,
again listing his client as "Objector Matthew Weiss." *See* district court Docket No.
332, at 1 (attached hereto as Exhibit 5).

Mr. Weiss subsequently admitted that he is <u>not</u> a member of the Class at all
and had no standing to object to the Settlement. He testified in his individual
capacity at a deposition taken by Representative Plaintiffs' Counsel on August 6,

2009, and admitted that although he was not an AdWords advertiser, he personally had a fee arrangement with the attorneys representing him that entitled him to receive "25% of any legal fee that is given as a result of our objection and any enhancements." *See* Matthew Weiss Dep. 3:24–4:4, 34:11–17 (district court Docket No. 343-1, attached hereto as Exhibit 1).

Mr. Weiss's attorney Richard Abend attempted to cure the standing deficiency in the Weiss Objection by proclaiming during Mr. Weiss's deposition that "the name was incorrectly placed" on the objection, and that the objection "should have read 'Weiss & Associates, P.C.,' not 'Matthew Weiss' individually." *Id.* at 3:12–18. Later that same day, Mr. Weiss's attorney of record Alan Sherwood filed a Notice of Scrivener's Errors, which purports to (1) change the name of the purported objector from "Matthew Weiss" to "Weiss & Associates, PC," and (2) add a new AdWords Account number. *See* district court Docket No. 335, at 1–2 (attached hereto as Exhibit 6). Neither Mr. Weiss nor his law firm requested permission from the Court to file a late objection; nor did they request or obtain the Court's permission to substitute Weiss & Associates, PC, as the objector.

Representative Plaintiffs' counsel responded to the Weiss Objection, arguing that the "untimely attempt to substitute a new objector should be denied." Pls.' Resp. to Class Member Objections 9 (district court Docket No. 341, attached

hereto as Exhibit 7). The Court permitted counsel representing Mr. Weiss and his law firm to speak at the settlement hearing and overruled the objection. Final J. 1 (district court Docket No. 346, attached hereto as Exhibit 8).

## III.   ARGUMENT

Weiss & Associates, PC, did not file a timely and proper objection and therefore has no "power to appeal." *Devlin v. Scardelletti*, 536 U.S. 1, 11, 122 S. Ct. 2005, 2011, 153 L. Ed. 2d 27 (2002) ("[T]he power to appeal is limited to those nonnamed class members who have objected during the fairness hearing."). The attempt to substitute Weiss & Associates, PC, as the objector was invalid on two grounds. First, the objection by Weiss & Associates, PC, was untimely because the entity attempted to substitute itself as a new objector long after the July 14, 2009 deadline for submitting written objections. Second, Weiss & Associates, PC, did not provide in its untimely written objection the requisite proof of the dates that it was an AdWords advertiser. The district court did not waive any of these requirements for Weiss & Associates, PC; nor did it issue an order permitting Weiss & Associates, PC, to be substituted as the objector or otherwise hold that the requirements for submitting objections set forth in the district court's Order Granting Preliminary Approval were waived as to Weiss & Associates, PC.

Having failed to file a proper, timely objection with the district court, Appellant has waived its right to appeal the district court's Final Judgment and

Order Approving Award of Attorneys' Fees and Expenses, and Class
Representative Incentive Compensation Award. *See id.* at 13 (stating that an
untimely objection "implicates basic concerns about waiver and should be easily
addressable by a court of appeals"); *Glass v. UBS Fin. Servs., Inc.*, Nos. 07-15278
& 07-15309, 2009 WL 1360920, at *3 (9th Cir. May 14, 2009) (affirming district
court's denial of class member D'Aria's motion to intervene, stating: "In order to
challenge the fairness of the settlement or the reasonableness of class counsel's
fees, D'Aria must either submit a timely objection to the settlement or be granted
leave to intervene."); *see also In re Plastics Additives Antitrust Litig.*, No. 08-3358,
2009 WL 405522, at *1 (3d Cir. Feb. 19, 2009) ("For an unnamed class member to
have standing to appeal a decision in a class action, he or she must have properly
raised objections to that decision during the pendency of the litigation.") (citing
*Devlin*, 536 U.S. at 8–9, 122 S. Ct. 2005, 153 L. Ed. 2d 27); *In re Integra Realty
Resources, Inc.*, 354 F.3d 1246, 1257 (10th Cir. 2004) (holding that class members
who neither objected nor sought to intervene in the district court had no right to
appeal settlement, stating: "*Devlin* reinforces the proposition that an unnamed class
member who does not opt out and desires to appeal a class settlement must at least
object in the district court"). Accordingly, Weiss & Associates, PC, has no basis
for appealing the district court's order, and its appeal should be dismissed.

## IV.    **CONCLUSION**

For all of the foregoing reasons, the appeal submitted by Weiss & Associates, PC, should be dismissed.  A professional class action objector that failed to file a proper and timely objection with the district court should not be permitted to delay distributions to the Class Members.  Distribution from the $20 million settlement fund should proceed as ordered by the district court, without further delay.

Dated:  October 28, 2009.          Respectfully submitted,

LESTER L. LEVY
MICHELE FRIED RAPHAEL
WOLF POPPER LLP
845 Third Avenue
New York, NY  10022
Telephone:  (212) 759-4600
Facsimile:  (212) 486-2093
E-Mail:  llevy@wolfpopper.com
E-Mail:  mraphael@wolfpopper.com

MARC M. SELTZER (CSB #54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
E-Mail:  mseltzer@susmangodfrey.com

STEPHEN D. SUSMAN (TXB #19521000)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
E-Mail:  ssusman@susmangodfrey.com

RACHEL S. BLACK (WSBA #32204)
DANIEL J. SHIH (WSBA #37999)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
E-Mail:  rblack@susmangodfrey.com
E-Mail:  dshih@susmangodfrey.com


By     */s/ Rachel S. Black*
Rachel S. Black
Attorneys for Plaintiffs-Appellees