# EXHIBIT 1

CHRISTOPHER BATMAN
7414 LAKE MICALA DR.
CORPUS CHRISTI, TEXAS  78413
Telephone: (361) 548-8712


July 19, 2011


Clerk of the United States
District Court for the Southern
District of New York
500 Pearl Street
New York, NY  10007-1312


RE:   *Blessing v. Sirius XM Radio Inc., Civil Action No 09-CV-10035 HB*

My name, address, telephone number are as follows:

Christopher Batman
7414 Lake Micala Dr.
Corpus Christi, Texas  78413

I am a class member according to the class definition.   My Sirius XM account number is 106094863036.

I object to the proposed settlement.   I ask that this objection be considered and decided by the Court at the fairness hearing.

This lawsuit claimed Sirius XM charged anti-competitive prices to the class.   The proposed settlement is not fair, adequate and reasonable because it does nothing to compensate for the anticompetitive prices charged in the past and because the settlement consideration is completely illusory.   This so-called $180 million settlement does not provide for any cash payments to the class.   According to the settlement, Sirius XM "contemplated" raising its prices going forward, and now the only reason it is not doing so is because of this settlement.   These are the same prices that were alleged to be anti-competitive in the first place.   Locking in anti-competitive pricing does not create $180 million in value just because Sirius XM is willing to say it "contemplated" raising prices even higher.   Now class counsel is trying to take credit for the money "theoretically" saved because Sirius XM will now not raise its prices beyond what has already been alleged to be anti-competitive.   Moreover, the settlement does nothing for the class members who no longer want Sirius XM.   It also does not appear current and former subscribers have separate counsel or clearly separate sub-classes, and objection is made to the extent those procedures are not followed.

Attorneys' fees sought are excessive under either a lodestar or percentage of recovery analysis. The settlement consideration is completely illusory. The Objection is made on these bases, and I ask that the Court not approve the proposed settlement.

Sincerely,

Christopher Batman

cc:     James J. Sabella, Esq.
        GRANT & EISENHOFER, P.A.
        485 Lexington Avenue
        New York, NY 10017
        *Class Counsel*

# EXHIBIT 2

Charles M. Thompson
Charles M. Thompson, PC
5615 Canongate Lane
Birmingham, AL 35242
Ph: 205-995-0068
Fax: 205-995-0078
Email: cmtlaw@aol.com

Attorney for Objector:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Carl Blessing, Individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br>Sirius XM Radio, Inc.<br><br><br>Defendant. | CASE No : 09 – CV- 10035 HB (S.D.N.Y.)<br><br>OBJECTION TO PROPOSED SETTLEMENT, NOTICE OF APPEARANCE AND INTENT TO BE HEARD<br><br>Date:     August 8, 2011<br>Time:     10:00 a.m.<br>Judge:    Harold Baer, Jr. |

COMES   Tom   Carder   ("Objecting   Class   Member)   by   his

counsel  of  record,  Charles  M.  Thompson,  and  does  file  this

his  Objection  to  the  proposed  settlement  and  allege  in

support thereof as follows:

## INTRODUCTION

1.   The critical and helpful role of objectors in class litigation has been discussed in detail in case law and by learned commentators.   As has been documented repeatedly in case law, the objective of the fairness hearing is to protect the interests of absent class members – not the named parties and their counsel in the case.   While the law normally requires notice of a lawsuit and an opportunity for hearing before any person may be bound by a court's judgment, applicable law clearly provides however that in class actions the judgment ". . . whether or not favorable to the class, shall . . . be binding upon all those whom the Court finds to be members of the class."   Regardless, the United States Supreme Court has made it clear that due process requires in all class action settlements that objecting Class Members be given sufficient standing so as to participate at the fairness hearing, *Phillips Petroleum Co. v. Shutts, et al,* 472 U.S. 797, 105 S. Ct. 2965 (1985).

2.   As noted in *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677, 680-81 (7th Cir. 1987), in a class action, the absentee members of the class may not have even learned of the case until a tentative settlement

has been struck on their behalf by the defendant and class counsel.  When notice of a proposed settlement and notice of the class action are sent simultaneously, the absent class members may perceive it as a *fait accompli*.  The potential for conflict of interest under these circumstances is substantial and to some extent unavoidable.  For these reasons, the role of the objecting class member is critical in assisting the Court in ensuring the fairness of the settlement, even if the objectors are only few in number.

## CLASS COUNSELS' FEES

3.   Your Objector opposes the Attorneys' fees to class counsel (see below).  In the present case, class members are getting miniscule "benefits" at best, with some getting nothing, while class counsel expects to reap millions. Addressing this situation, during the last decade, legal scholars have expressed growing concern about the conflicts that may arise between the class and its counsel:  "These attorneys are not subject to monitoring by their putative clients, they operate largely according to their own self interests, subject only to whatever constraints might be imposed by bar discipline, judicial oversight, and their own sense of ethics and fiduciary responsibilities."  Johnathan

R. Macey & Geoffrey P. Miller, The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation, 58 U.CHI.L.REV. 1, 7-8 n.4(1991); see also John C. Coffee, Jr., Rethinking the Class Action, 62 IND.L.J. 625, 628-29 (1987) (listing several factors that have contributed to "entrepreneurial" class action litigation, including the relatively low cost of filing dubious class action suits, the large amounts Defendants are willing to pay in fees to settle these suits and the incentive for class counsel to invest little time or effort in protecting the absent class members), John C. Coffee, Jr., The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action, 54 U.CHI.L.REV. 877, 878, 878-79 (1987) (outlining proposed rule changes that would "manipulate the incentives that the law holds out so as to motivate" class counsel to defend the absent class members as they would any other client).   Kenneth W. Dam, Class Actions: Efficiency, Compensation, Deterrence, and Conflict of Interest, 4 J.LEGAL STUD. 47, 61 (1975) (coining the phrase "lawyer-entrepreneur" in reference to class counsel).

   4.   Judge Posner, in his Richard A. Posner, An Economic

<u>Analysis of Law</u>, at 570 (4th ed. 1992), noted:

> [T]he absence of a real client impairs the
> incentive of the lawyer for the class to
> press the suit to a successful conclusion.
> His earnings from the suit are determined
> by the legal fee he receives rather than
> the size of the judgment.  No one has an
> economic stake in the size of the judgment
> except the defendant, who has an interest
> in minimizing it.  The lawyer for the
> class will be tempted to offer to settle
> with defendant for a small judgment and a
> large legal fee, and such an offer will be
> attractive to the defendant, provided the
> sum of the two figures is less than the
> defendant's net expected loss from going
> to trial.  Although the judge must approve
> the settlement, the lawyers largely
> control his access to the information-
> about the merits of the claim, the amount
> of work done by the lawyer for the class,
> the likely damages if the case goes to
> trial, etc. – that is vital to determining
> the reasonableness of the settlement.

### **OBJECTORS' ROLE**

5. The potential for abuse of the class action procedure points out the importance of the trial court's obligation, with the assistance of objecting class members, to determine that the protective requirements of Rule 23 are met when it approves a class action settlement.  While the court generally plays a relatively detached role in most civil proceedings, in a class action the court is the guardian of the class interest.  *Weinberger v. Kendrick*, 698

F.2d 61, 69 n. (2d Cir. 1982), cert. denied, 464 U.S. 818, 104 S. Ct. 77, 78 L.Ed. 2d 89 (1983); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 216, 223 (2d Cir.), cert. denied, 484 U.S. 926, 108 S. Ct. 289, 98 L. Ed. 2d 249 (1987); *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 225 (5th Cir. 1981), cert. denied, 456 U.S. 998, 102 S. Ct. 2283, 73 L. 2d 1294 (1982); *Piambino v. Bailey,* 610 F.2d 1306, 1327 (5th Cir.), cert. denied, 449 U.S. 1011, 101 S. Ct. 568, 66 L. Ed. 2d 469 (1980); 2 NEWBERG & CONTE, § 11.41, at 11-93 to 11-94,   The trial court therefore bears the burden under Rule 23 to police the proceedings to minimize conflicts of interest and, primarily, to protect absent class members:

> The drafters designed the procedural requirements of (class action law) . . . , so that the court can assure, to the greatest extent possible, that the actions are prosecuted on behalf of the actual class members in a way that makes it fair to bind their interest.   The rule thus represents a measured response to the issues of how the due process rights of absentee interests can be protected and how absentees' represented status can be reconciled with a litigation system premised on traditional bipolar litigation.

*In re General Motors Corp.,* 55 F.3d at 785.

6.    In simplest terms, the critical role of the Court, joined by objectors, with regard to class settlement review is to act as guardian for absent class members in assuring the settlement is fair, adequate and reasonable.  If in fact the settlement is fair, adequate and reasonable in all aspects, the Court, the Defendants and class counsel should welcome the presence of class members who did not participate in the discovery and settlement procedures in their role of further assuring the settlement meets the criteria of applicable law.

7.    Typically, however, class counsel and the Defendants do everything possible to minimize the role of any would-be objector.  Class counsel and Defendants' counsel must be aware that most individuals in a class settlement cannot afford and will not go to the effort to seek legal counsel even if they are greatly dissatisfied with the proposed settlement.  Through these procedures class counsel and Defendants' counsel can totally control the settlement hearing and virtually exclude the Court from hearing class members about any matters that the court might need to consider from the standpoint of the average consumer.

8.    The role of objectors therefore in class actions is

critical in assuring that the proposed settlement is fair, adequate and reasonable, and even allowing Objectors' counsel to do additional discovery serves only to benefit the Court in its rigorous analysis. *Castano v. American Tobacco Co.*, 84 F.3d 734. To do otherwise would only benefit the very types of abuses that concern the preeminent legal scholars cited herein who have presented learned studies with regard to the unavoidable conflict of interest between class counsel and absentee members of the class.

9. Furthermore, "when a Court evaluates the settlement of a class action brought on behalf of the individual shareholders or consumers, it should be reluctant to rely heavily on the lack of opposition by alleged class members. Such parties typically do not have the time, money or knowledge to safeguard their interests by presenting evidence or advancing arguments objecting to the settlement." *In re General Motors Corp. Engine Interchange Litigation*, 591 F.2d 1106, at 1137 (1979). In the present case, it is expected that the proponents of the settlement will argue that there are relatively few Objectors. This is immaterial. Most class members do the typical thing when they receive a Class Action Notice – they either do not understand the notice or

ignore it.   This is especially true in settlements like the present with class members getting nothing.   The Court is urged not to consider the few Objectors to subject settlement as being supportive that the settlement should be approved as it is presently submitted.

## NO REAL CLASS BENEFIT

10.   The specific faulty terms in the present case cannot coexist with applicable law mandating that the proposed settlement is neither fair, adequate nor reasonable.

11.   The subject settlement is an obvious negotiation of a case to make it go away rather than to be fair to class members.   The undersigned files this Objection on behalf of the class member Tom Carder who has had XM service continually since 2006. Specifically this Objector states:

a) Current subscribers get *de minimis* benefits; i.e.,no rate increase for the rest of 2011 and no increase by renewing their agreement.   This is a benefit that all providers of services would like.   Netflix is offering such a promotion and no class settlement is involved. Additionally, Defendants get former subscribers back by waiving reactivation fees and giving one month free service. While giving this so called benefits to class

members, Sirius XM is presently giving free satellite radios to non-class members just for renewing for one year.   Class members thus are getting no class action benefit worthy of a class action settlement, while the class attorneys are getting a whopping $13 million.

b) This is essentially a class action coupon settlement. Many service providers are offering "bargains" like the Defendants are now offering just to increase market share; e.g. Blockbuster, Netflix, AT&T, Verizon, T-Mobile, cable networks and Direct TV.

c) Coupon settlements, or settlements that are mere marketing promotions, have been roundly criticized by the courts, legal commentators and consumer groups for their lack of value to class members, leaving only class counsel and class representatives with any real benefits from the settlement. *E.g.*, *G.M. Trucks*, 55 F.3d 768, 803 (3rd Cir. 1995) ("The settlement arguably did not maximize the class members' interests. Every owner received a coupon whose value could only be realized by purchasing a new truck. The fact that the settlement involves only non-cash relief, which is recognized as a prime indicator of suspect settlement,

increases our sense that the class' interests were not adequately vindicated."); CACF § 2 [Congressional Findings] ("Class members often receive little or no benefit from class actions  and are sometimes harmed, such as where counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value and unjustified awards are made to certain plaintiff's at the expense of other class members.") 118 STAT. 5.

d) No attorneys' fees should be awarded until the actual value of the benefit to Class Members is determined. The Federal Class Action Fairness act (CAFA) requires that the Court make a determination after the redemption period as to the "actual value" of the benefit to the class and thereafter base any attorneys' fees on a percentage of such value. 28 U.S.C. § 1712. Moreover, value is not necessarily the face value of the vouchers redeemed, but should be discounted for the benefit to the Defendant in utilizing a coupon to promote its services and products. *G.M. Trucks*, at 808.

e) Even though Class Counsel asserts that the settlement has a value of $180,000,000.00, there is no cash fund and all benefits to Class Members are equivalent to similar marketing promotions that benefit Defendant more than Class Members. Based on the nominal actual benefit to Class Members, the $13,000,000.00 claimed attorneys' fees (which will not be contested by the Defendant under the "clear sailing" provision contained in the Settlement Agreement) are totally unjustified and excessive. Furthermore, at a minimum, the Court is required to hold a separate hearing with regard to attorneys' fees after a complete determination can be made as to the number of Class Members that received the benefit of the purported settlement consideration and what the actual value of such benefit is after taking into consideration the marketing benefit to Defendant in light of the fact that similar marketing techniques are used as incentives for customer retention and/or to "win back" former customers. The Court must be give extra scrutiny to the attorneys' fee request, not only for the reason stated above, but also due to the fact that the Settlement Agreement specifically provides that even if

the case is appealed, Class Counsel will be entitled to access to 100% of the fee award while the appeal is pending. This is strong evidence that the settlement is driven almost exclusively by Class Counsel's desire to be paid a large cash fee while Class Members receive no cash and only an illusory minimal market-driven discount.

12. The total value of the settlement is not even determined. The settling parties have apparently just pulled an astronomical $180,000,000 out of thin air. A settlement cannot be approved unless a total value is presented and proved. Objectors contend that the value of the settlement cannot be fairly determined until all benefits have been distributed to the class. For that reason, no attorney fees should be awarded until a value is ascertained based upon what the class actually receives, and any final award of attorney fees should be based on the actual value of benefits received by class members, not some imagined purported maximum value supposedly available to class members. *In re Compact Disc Litigation,* 292 F. Supp. 2d 184 (D. Me. 2003).

13. Your Objectors adopt any other bona fide objections

by other class members.

14.   Hence, for all the forgoing reasons, this Objector respectfully submits that the terms of the Proposed Settlement are unfair, unjust, unreasonable and inadequate to the absent class members.

15.   None of the settling parties or their attorneys are to contact this class member.   Said class member is represented by counsel and contacting said class member is a breach of ethics.   The undersigned hereby serves notice that he expects to attend the hearing and present the position of your Objector.   Said presentation should take no longer than 30 minutes.

## CONCLUSION

**WHEREFORE**,   having   demonstrated   the   unfairness, inadequacy and unreasonableness of the Proposed Settlement, this   Objector   requests   appropriate   general   relief   as follows:

1.   That the Court not approve the settlement as proposed.

2.   That the attorneys' fees requested be denied.

3.   That the Court at a minimum delay final approval of any attorneys fees until the claims process is complete and

then only allow such attorneys fees as are fair and reasonable under the circumstances.

4.   That the Court enter such other further Orders as may be necessary and just, so as to effect substantial justice in this cause between the parties and the absent Class Members.

Dated:    July 18, 2011      Respectfully Submitted,


                              By:
                                  /s/ Charles M. Thompson
                                  Charles M. Thompson

### CERTIFICATE OF SERVICE

 I hereby certify that a copy of the above and foregoing has been served upon all counsel of record via CM/ECF AND Certified U.S. mail, postage prepaid on this the 18th day of July, 2011 to:

**Court Clerk**
Clerk of the United States
District Court for the Southern
District of New York
500 Pearl Street
New York, NY 10007-1312

**Class Counsel**
James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

/s/ Charles M. Thompson
Charles M. Thompson

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL BLESSING, et al. on Behalf of Themselves
And All Others Similarly Situated,

                                        Plaintiffs,

                                                                    No. 09-cv-10035 (HB)

v.

SIRIUS XM RADIO INC.

                                        Defendant.

## OBJECTIONS TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT FAIRNESS HEARING

COMES NOW, Objectors Steven Crutchfield, Scott D. Krueger, Asset Strategies, Inc.,

Charles B. Zuravin, and Jennifer Deachin (the Crutchfield Objectors), by and through their

undersigned counsel of record, and hereby file these Preliminary Objections to the Proposed

Settlement of Sirius XM Radio Inc. Settlement, give notice of their intent to appear at the

fairness hearing, and in support of their objections state as follows:

### PROOF OF CLASS MEMBERSHIP

Stephen Crutchfield, 2144 U.S. Highway 278 West, Cullman, Alabama 35057, (256)

734-4553, referred by Frank H. Tomlinson, an Alabama attorney, is the owner of an XM radio

and is a member of the Class.  Scott D. Krueger, 2750 Northwest 43rd Street, Suite 201,

Gainesville, Florida 32606, (352) 376-3090 referred by N. Albert Bacharach, Jr., a Florida

attorney, is the owner of an XM radio and is a member of the Class. Asset Strategies Inc., 80

West Avon Road, Avon, CT 06001, (860) 6731040 is the owner of an XM radio and is a member

of the Class, Charles B. Zuravin, 6634 Oakmont Way, West Palm Beach, 33412 (561) 775-1840

1

referred by C. Herbert Offer, a Florida attorney, is the owner of an XM radio and is a member of the Class, and Jennifer Deachin, 4932 SW 19th St., Gainesville, FL 32608, (352) 283-8865 referred by Paul S. Rothstein, a Florida attorney, is the owner of an XM radio and is a member of the Class.

### NOTICE OF INTENT TO APPEAR

The Crutchfield Objectors hereby give notice that they intend to appear, by undersigned counsel, at the Fairness Hearing that is presently scheduled to be held at 10:00 a.m. on Monday, August 8, 2011, before the Honorable Harold Baer, Jr., U.S. District Judge, in Courtroom 23B at the United States District Court for the Southern District of New York, located at 500 Pearl Street, New York, New York 10007-1312. The Crutchfield Objectors intend to offer documents into evidence and call witnesses in support of their objections.

### OBJECTIONS

The proposed Settlement is unfair, inadequate, and unreasonable for the following reasons:

1.　　After this Court indicated its willingness to certify this matter as a Federal Antitrust Damage class, a settlement was entered into by the parties.  The proposed settlement appears to have no correlation to the damages to the class resulting from the Defendant's antitrust violations, much less triple damages, and only provides the class with a "six month extension" of current prices, in-kind benefit.

2.　　Since the FCC approved the merger of XM Radio and Sirius, the Defendant has had a monopoly in the provision of Satellite Digital Audio Radio Service (SDARS), as there is no other competition in the SDARS market.

3.　　Although this Court found that injunctive relief on a class-wide basis was not

2

predominate under Rule 23(b)(2), the relief afforded by the settlement is, in practice, injunctive

relief, not money damages, i.e. if this court ordered the Defendant not to effectuate a price

increase until next year, that would be injunctive relief.

4.       The parties to the settlement opine that the injunctive relief is worth at least $180

million to the class.  Even assuming the purposed injunctive relief has finite monetary value, that

value is not the money damages Defendant owes the class members. The antitrust laws envision

a defendant paying money damages that are a multiple of their ill-gotten gain.  As this Court

noted:

> Plaintiffs also allege that in proving Defendant's anticompetitive conduct they
> will rely on the increase in market concentration, Defendant's post-merger
> price increases, and Defendant's plans to further increase prices in the future,
> none of which requires individualize proof.

Doc. 85 at 8.

5.       Assuming the current price of service is the result of defendant's monopolistic

practices, the class will continue to pay the artificial inflated price during the proposed six month

price freeze. Therefore, not only is the defendant is not paying damages to the class; they are

only agreeing, for a limited time only, to not increase the damages that the members of the class

suffer on a monthly basis.

6.       It is clear that there is no correlation between a six month moratorium of price

increases, supposedly worth $180 million, to the amount of damages this class might ultimately

prove if the case were to go to trial.  As stated in *Malcolm v. Marathon Oil Co.*, 642 F.2d 845

(11th Cir. 1981):

> The antitrust plaintiff's burden of proving the amount of damages is lighter
> than the burden of proving injury in fact. See *Story Parchment Co. v. Paterson
> Parchment Paper Co.*, 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544
> (1931); *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 23-24 (5th

> Cir. 1974). Often the nature of the violation makes calculation of damages
> difficult. "In such (a) case, while the damages may not be determined by mere
> speculation, it will be enough if the evidence show(s) the extent of the
> damages as a matter of just and reasonable inference, although the result be
> only approximate." *Story Parchment Co. v. Paterson Parchment Paper Co.*,
> 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931). The amount of
> damage may be shown by just and reasonable inference with juries voting
> upon the probable and inferential as well as upon direct and positive proof.
> *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 23-24 (5th Cir.
> 1974); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, 66 S.Ct. 574,
> 579, 90 L.Ed. 652 (1946). In fact, given proof of the fact of damage, proof of
> losses which border on the speculative is allowed in order to facilitate the
> policy of the antitrust laws. *Ford Motor Co. v. Webster's Auto Sales, Inc.*, 361
> F.2d 874, 887 (1st Cir. 1966); *Hobart Brothers Co. v. Malcolm T. Gilliland,
> Inc.*, 471 F.2d 894, 903 (5th Cir. 1973). And estimates may be based on
> assumptions so long as the assumptions rest on adequate bases. *Terrell v.
> Household Goods Carriers' Bureau*, 494 F.2d 16, 24 (5th Cir. 1974); *Hobart
> Brothers Co. v. Malcolm T. Gilliland, Inc.*,471 F.2d 894, 902 (5th Cir. 1973).
> The estimate of the amount of damages may even suffer from minor
> imperfections. Id. at 903.

The point being that maybe since the damages are a multiple of the damage caused by the

defendant's price of service, the class would be better off trying this case than settling for a six

month price freeze.  An antitrust verdict for money damages is worth substantially more than

what this settlement is offering each of the class members.

     7.    Nothing has been submitted to substantiate the defendant's estimation that this

price freeze has an "estimated" value of $180 million.  Objectors have sought the information

from the Defendant's counsel but at this time have not received a response.  (See Exhibit "A"

attached hereto.)  Without this information neither Objectors, nor the Court, can assess "the

range of reasonableness of the settlement fund in light of the best possible recovery." *D'Amato v.

Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

     8.    The proposed settlement resembles and shares many of the characteristics of a

Coupon Settlement including the fact that the proposed settlement provides for large cash

4

attorney fees and little or no actual value to class members. As the National Association of Consumer Advocates, Standards and Guidelines for Litigation and Settling Consumer Class Actions (2d ed.2006), 255 F.R.D. 215, 235 states, "[T]he considered view today is that unless a coupon settlement provides increased benefits to class members and possesses certain safeguards, they should generally be avoided. . ." .

9.    Instead of a cash payout, the proposed settlement offers class members an in-kind benefit of continued membership without a price increase for six months. Or, for class members who are no longer subscribers, because they cancelled their Sirius XM service between July 29, 2009 and July 5, 2011, the opportunity to re-up their Sirius XM service; and, to either reconnect their satellite radio without paying a reactivation fee and receive one month of basic satellite radio service at no cost, or receive one month of Sirius XM Internet streaming service at no cost. Such in-kind compensation is generally calls for careful scrutiny, i.e. scrutiny of both the proposed in-kind benefit and scrutiny of the value of the in-kind benefit. In any event, the dollar amount ascribed to the benefit does not represent its actual cost to the Defendant and like most in-kind benefits can be used by the Defendant for advertising purposes such as encouraging class members to continue service during the price freeze period.

10.    The attorney's fees request in this case is $13 million. However, under the authority of Fed.R.Civ.P. 23(h)(1), no motion has been made for said fees and directed to the class members.

11.    A)    Although the attorney fees are to be paid separate and apart from the in-kind benefits paid to the class, the fees must be reviewed as a part of the overall settlement because in all cases the total of money damages plus attorney fees is what the Defendant is willing to pay *out of pocket* to resolve the litigation. In that light the $13 million represents

5

100% of the cash settlement as opposed to 6.7% of the overall claimed in-kind <u>settlement value</u>, which, as objected to above consists of a price freeze on defendant's monopolistic pricing and other in-kind benefits, not actual damages paid to class members.

       B)    Like a coupon published in Parade magazine, the price freeze is not properly a class benefit from which attorney fees can be calculated. There is a subclass of Class members, who are no longer subscribers. They will receive no benefit other than the opportunity to become defendant's customer once again. Furthermore, since everyone else in the United States who is not a member of the class will receive the same price freeze benefit from the defendant, that in-kind "benefit" is not a benefit to the class.[1]

       C)    In any event if the court elects to pay attorney's fees on a percentage basis, that number should be cross-checked by examining the lodestar of class counsel. To date no lodestar has been submitted for class members to review.

    12.    The Crutchfield Objectors hereby incorporate and adopt any and all other properly-filed objections not inconsistent with the foregoing.

    WHEREFORE, Objector respectfully requests that this Court sustain these Objections and enter such Orders as are necessary and just to adjudicate these Objections so as to alleviate the inherent unfairness, inadequacy and unreasonableness of the proposed Settlement.

                   Respectfully submitted,

                   /s/ Matthew J. Weiss
                   Matthew J. Weiss
                   Weiss & Associates, P.C.
                   440 Park Avenue South
                   3rd Floor
                   New York, NY 10016

---

[1]    One can almost see the advertising campaign regarding how the price of service will not increase until 2012, and then here comes the "Netflix" increase.

212-683-7373
212-726-0135 fax
mjweiss@weissandassociatespc.com

ATTORNEY FOR STEVEN CRUTCHFIELD, SCOTT D.
KRUEGER, ASSET STRATEGIES, INC., CHARLES B.
ZURAVIN, AND JENNIFER DEACHIN

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing OBJECTIONS TO PROPOSED
SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT FAIRNESS HEARING was
served via Notice of Electronic Filing on this the 18th day of July, 2011, to all attorneys of
record., and a copy was mailed to:

James J. Sabella
Grant & Eisenhofer, P.A.
485 Lexington Avenue
New York, New York 10017

/s/  Matthew J. Weiss

# EXHIBIT "A"

# FRANK H. TOMLINSON

ATTORNEY AT LAW

———————

15 NORTH 21st STREET

SUITE 302

BIRMINGHAM, ALABAMA 35203-4103

E-mail Address: htomlinson@bellsouth.net

July 13, 2011

TELEPHONE: (205) 326-6626
FACSIMILE: (205) 328-2889

**Via E-mail and U.S. Mail:**
Todd R. Geremia, Esq.
Jones Day (NYC)
222 East 41st Street
New York, NY 10017

Brian Keith Grube, Esq.
Jones Day (Cleveland)
901 Lakeside Avenue
Cleveland, OH 44114

> RE:   **Blessing v. Sirus XM Radio, Inc.**
>       **U.S. Dist. Ct. S.D.N.Y. 09-CV-10035**

Gentlemen:

I represent several class members in the Sirus XM Radio settlement. In trying to evaluate the settlement's reasonableness and fairness, I read in Plaintiffs' Memorandum of Law in Support (Doc. 95), the following statement, "Defendant estimates that the value to the Class of not implementing this rate increases between the period of August 1, 2011 through December 31, 2011 is at least $180 million."

In reviewing materials submitted, I cannot find any report of an economist or any expert who has submitted that estimation and the basis for it. I would ask that you forward me a copy of such materials in order to better understand where this number originated and so that my expert can review.

A prompt response would be greatly appreciated.

Very truly yours,

Frank H. Tomlinson

FHGT/sah

*Index No.* 09-cv-10035 (HB)   *Year 20*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CARL BLESSING, et al. on Behalf of Themselves
And All Others Similarly Situated,

                                    Plaintiffs,

                v.

SIRIUS XM RADIO INC.

                                    Defendant.

## OBJECTIONS TO PROPOSED SETTLEMENT AND
## NOTICE OF INTENT TO APPEAR

### WEISS & ASSOCIATES, P.C.
### ATTORNEYS AT LAW

*Attorneys for*

   **Objectors**

440 PARK AVENUE SOUTH, 3RD FLOOR
NEW YORK, NEW YORK 10016

(212) 683-7373

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: **July 18, 2011**                    Signature _____

                                    Print Signer's Name   **Matthew J. Weiss, Esq.**

*Service of a copy of the within*                    *is hereby admitted.*

   Dated:

                                    *Attorney(s) for*

**PLEASE TAKE NOTICE**

☐ NOTICE OF ENTRY

   *that the within is a (certified) true copy of a* _____                    20
   *entered in the office of the clerk of the within named Court on*

☐ NOTICE OF SETTLEMENT

   *that an Order of which the within is a true copy will be presented for settlement to the*
   *Hon.* _____ *one of the judges of the within named Court,*
   *at* _____
   on _____                    20 _____ , at _____ M.

   Dated:

                                    WEISS & ASSOCIATES, P.C.
                                    ATTORNEYS AT LAW

                                    *Attorneys for*
                                    440 PARK AVENUE SOUTH, 3RD FLOOR
                                    NEW YORK, NEW YORK 10016

To:

# EXHIBIT 4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CARL BLESSING, et al. on Behalf of<br>Themselves and All Others Similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 09-cv-10035 (HB)(RLE) |
| SIRIUS XM RADIO, INC., | ) ) | |
| Defendant. | ) ) | |

### <u>OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT</u>

Class member Monty Delluomo ("Delluomo" or the "Objector") submits this Objection ("Objection") to the Proposed Class Action Settlement in the above-captioned class action (the "Class Action") filed against Sirius XM Radio, Inc. ("Sirius XM" or the "Company"). Objector hereby gives notice of his intent to appear at the fairness hearing scheduled for August 8, 2011 at 10:00am before the Honorable Harold Baer, Jr. to present his objections.

**I.     The Objector.**

Objector Delluomo was a subscriber to Sirius satellite radio during the Class Period. As such, Objector is a member of the proposed Class in this action.

**II.     The Settlement Should Not Be Approved.**

The Second Circuit has identified the following nine factors for the courts to consider in determining whether to approve a class action settlement:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Bezio v. General Electric Co.,* 655 F.Supp.2d 162, 166 (N.D.N.Y. 2009) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 117 (2d Cir. 2005)).   In addition to the above factors, "[a] court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir.2005).

As described below, the proposed settlement is not fair, reasonable or in the best interest of all those who will be affected by it for the reason that the relief offered in the settlement is inadequate and the attorney's fees requested by Plaintiffs' Counsel is excessive.

### a. The Settlement is not Fair or Reasonable or in the Best Interests of the Class.

The settlement offers the following relief:

1) Sirius XM will not raise its current rates until December 31, 2011;

2) Subscribers with long term plans can lock into current rates by renewing their subscriptions before December 31, 2011; and

3) Former subscribers can either reconnect without paying a reactivation fee and receive one month of basic service for free, or they can receive one month of

Sirius XM will impose the additional $2.00 per month price increase.

Additionally, it appears that this restriction only applies to the "Select", "Select Family Friendly", "Mostly Music", "News Sports and Talk" and "A La Carte" subscription packages. Sirius XM also offers "Premier", "All Access" and "Sirius XM All-In-One" packages. Presumably, this restriction does not apply to these packages, and so class members who subscribe to these packages receive nothing.

### ii.  The Notice is vague

The Settlements contains purported relief to Class Members with long-term subscription plans. Those Class Members who are subscribers in long-term plans can lock in their current rates if the renew their subscriptions before December 31, 2011. However, the definition of a long-term plan is not defines, and is therefore unclear. Sirius has Quarterly, 1 Year, 2 Year and 3 Year plans. The Plans allow you to lock in a monthly fee for a set period of time. The Notice does not advise which of these plans constitute a "long term" plan, so Class Members do not know, based solely on this Notice, if they are entitled to this benefit. Or, due to the vagueness of the Notice, a Class Member may not realize that he is entitled to this "relief" and thus may not seek to lock in his rate.

### iii.  The Settlement is a coupon settlement that provides no benefit.

In order to receive the benefit of locking in a lower price for a long term subscription, Class Members will need to renew their subscriptions, presumably locking themselves into another one, two or three years of service. If a customer is nearing the end of her term, and does not wish to renew, she receives no benefit at all. Similarly, Class members who do not have a long term plan receive nothing except five months

before their rates are raised.

People who have cancelled their subscriptions or failed to renew them can re-subscribe with no reactivation fee and receive either one free month of service, or can receive one free month of internet streamlining.  This presumes that individuals who have cancelled their service will wish to re-subscribe and pay the same rates they were paying when they cancelled, with the prospect of a $2.00 per month increase in five months. Additionally, for individuals who chose the option to receive one month of free internet streaming, **Sirius XM already allows people who are not subscribers to receive 30 days of internet streaming free.** Therefore, these individuals are not receiving anything that any new subscriber would receive. After the one free month, subscribers are charged $12.95 per month, for either monthly service.

The relief provided in this settlement is nothing more than a coupon settlement. Coupon settlements have been widely criticized as only providing illusory benefits to class members. There are many Class Members who will never update their subscription plan to lock in their current rate. Many more will never renew their subscriptions. This relief is therefore worth less than cash. *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("Our confidence in the fairness of the settlement is further undermined by the agreement's bias toward compensating class members with pre-paid Letter Express envelopes instead of cash. Pre-paid envelopes, like coupons, are a form of in-kind compensation."). The Court should treat the approval of a coupon settlement in a different way in that it "is to 'consider, among other things, the real monetary value and likely utilization rate of the coupons provided by the settlement.'" *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d

1052, 1073 (C.D. Cal. 2010) (citing S.Rep. No. 109–14, at 31, *as reprinted in* 2005 U.S.C.C.A.N. 3, 31). The Plaintiffs have offered no evidence regarding the real monetary value of the settlement, and the likelihood that Class Members will either renew or reactivate their subscriptions. Determining the potential reactivation rate is especially important because "coupon settlements pose a particular risk of unfairness and unreasonableness because of the increased possibility that the benefits afforded to class members will never be realized, since class members are provided with a future discount on a product or service with which they were previously dissatisfied." *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 55 (D.D.C. 2010).

## III.   The Proposed Attorneys' Fees Are Excessive

In considering awards of attorneys' fees and expenses in class action litigation, both the lodestar and the percentage of the fund methods are available to the Court. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Under either method, the Court should be guided by the following criteria: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citing *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F.Supp. 160, 163 (S.D.N.Y. 1989)).

Application of the foregoing factors indicates that the requested fees and expenses are not fair or reasonable. Accordingly, the Court should not approve the agreed-upon amount of fees and expenses.

"[T]he starting point for [a] Court's determination of a just and adequate fee to be paid to class plaintiffs' counsel ... is the number of hours expended in prosecution of the

6

litigation, or the lodestar." *Union Carbide*, 724 F. Supp. at 163. A "lodestar" calculation involves multiplying the number of hours expended by a reasonable hourly rate for each attorney's time. In using a lodestar calculation for determining fees, courts often multiply the lodestar amount by a risk premium factor (or "multiplier") based on the risk of recovery and other considerations, to arrive at a reasonable fee. *See, e.g., Blum v. Stenson*, 465 U.S. 886 (1984).

Additionally, no common benefit fund has been established for the class, but the Plaintiffs claim that the estimated value to the Class is $180 million. This number is provided with little to no evidence to support it. The Plaintiffs' attorneys are seeking fees and expenses of up to $13 million. Therefore, the estimated percentage of the fund is 7.2%. None of the Class members will actually be receiving any cash, while the Plaintiffs attorneys will be receiving a nice payday.

Here, Plaintiff's Counsel have not disclosed the amount of time spent in this action. Thus, Objector cannot calculate the size of Plaintiff's Counsel's multiplier to determine whether it is reasonable. Further, because this is a coupon settlement, the estimated value to the Class should be based on the value of the coupons actually redeemed (i.e. the number of subscribers renewing their long term plans prior to December 31, 2011 or the number of previous subscribers renewing their subscriptions or using the free month of internet streaming). *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 266 (E.D.N.Y. 2009) ("Under CAFA, any fund against which attorney fees are measured or assessed that is based on the underlying value of coupons may only include those coupons that are redeemed.") Therefore, the estimated value of $180 million is grossly inflated, and Plaintiffs attorneys should provide evidence

as to the anticipated redemption rate so that their fee may be more properly compared to the value of the Settlement.

Dated:  July 8, 2011

Respectfully submitted,

Monty Delluomo
5617 North Classen
Oklahoma City, OK 73118
Telephone:  (405) 843-0400
Facsimile:  (405) 843-5005

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2011 I filed the foregoing document with the Clerk of Courts using the CM/ECF system which will send email notification of such filing to all counsel of record as reflected on the attached service roster.  The foregoing document was also served via U.S. Mail, with postage prepaid thereon, to the following:

James J. Sabella, Esq.
Grant & Eisenhofer, P.A.
485 Lexington Avenue
New York, NY  10017

Monty Delluomo