# EXHIBIT 5

332 Gribbel Road
Wyncote, PA 19095
215-704-4893

July 19, 2011

James J. Sabella, Esq.
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Clerk of the United States
District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

RE:   **Proposed settlement in Blessing v. Sirius XM Radio Inc.,**
      **Civil Action No 09-CV-10035 HB**

Dear Clerk and Mr. Sabella:

I am a class member in the above action. Based on what I have been presented and read, I object to the proposed settlement for at least the following reasons.

First, Sirius' agreement to not raise its pricing for a mere five months longer than it wanted before being sued does not seem a significant victory for the class.

Second, Sirius' agreement to give former subscribers a choice of one month of basic service or one month of internet listening does not seem a significant victory for the class. Based on my understanding of Sirius' pricing this agreement broken out per person translates to a nominal sum. In addition, this presumes that former subscribers still have all required equipment to make use of the one month of basic service.

Third, the above purported benefits seem even less significant when compared to the alleged duration and substance of Sirius' misconduct.

Fourth, I did not see any provision that would convert unexercised benefits into cash value for subsequent distribution to the class members.

Sincerely,

Gregory S. Gerson

# EXHIBIT 6

1

2

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

3

4    CARL BLESSING, et al, on Behalf of                Master File No.:
     Themselves and All Others Similarly              09 Civ. 10035 (HB)(RLE)
5    Situated,

6                           Plaintiffs,

7        -against-

8

9    SIRIUS XM RADIO INC.

10                          Defendant.

11

12

13

14   **SHAREHOLDER PLAINTIFF BRIAN GOE, NOTICE OF INTENTION TO**
15   **APPEAR AT THE FAIRNESS HEARING AND OBJECTIONS TO**
     **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
16   **PROPOSED SETTLEMENT:**

17

18       Brian Goe, respectfully submits this Motion and Memorandum of Law in
19   Opposition to this Court's Approval of the Settlement.

20       Brian Goe is/was a **consumer** and member of the defined Class, in that he has

21   been a subscriber of Sirius Satellite Radio since October of 2003.  In addition to being

22   a subscriber of Sirius XM Satellite Radio services, Mr. Goe is a shareholder of Sirius

23   XM, at this time.

24

25

26

27

28

**INTRODUCTION :**

This case arises out of a merger between the nation's only two satellite radio providers Sirius Satellite Radio, and XM Satellite Radio. In July of 2008, Sirius XM completed the merger, thereby lessening competition and creating a satellite radio monopoly. In violation of federal and state anti-trust laws the newly formed monopoly illegally raised prices for services to their **consumers**. These increased prices were forced upon consumers in multiple ways, including: a $2.00 per month increase for multiple radio service, a $2.99 per month charge for streaming internet service and an increase in the Music Royalty fees. Sirius XM management has engaged in antitrust misconduct, which has/will cost the Corporation millions of dollars in connection with this litigation. These costs are in addition to the 13 million dollars in attorneys' fees and the cost to notify the 22 million subscribers included in the "class".

This is a consumer case brought forth on behalf and for consumers of Sirius XM Satellite Radio **only** and **not** on behalf of **shareholders** or any other group.

**I.    SUMMARY OF ARGUMENT:**

This is a consumer class action case brought forth on behalf of Sirius XM Satellite Radio consumers only. The gravemen of this case is anti-trust violations. These violations led to illegal increases in monthly subscription fees, imposed on Sirius XM Satellite Radio **consumers.** This case has nothing to do with shareholders of Sirius XM or the claims they hold, but this settlement stipulation seeks to release those claims without consideration with its overly broad language. In light of the aforementioned, this is a unique situation where there is overlap between consumers and shareholders of Sirius XM, in that many of Sirius XM's 22 million consumers are shareholders. In fact, Sirius XM has over 1 million "individual" shareholders, making it the most of any

1   NASD listed company. Defendants are not entitled to this overly broad release as it

2   falls outside of the boundaries of the pleading in this case. Plaintiffs in this case have

3   made no claims on behalf of shareholders nor is it clear that they have standing to do

4   so. The following term "**all persons or entities**' is overly broad and would include all

5   shareholders that subscribed to satellite radio during the defined period outlined below.

6   It could be argued that it would release their shareholder claims without consideration.

7

8   *Class is defined in relevant part as follows:*

9   *FEDERAL ANTITRUST DAMAGE CLASS. **All persons or***

10   ***entities** who reside in the United States and who contracted with*
    ***Sirius Satellite Radio Inc., XM Satellite Radio Holdings Inc.,***

11   *Sirius XM Radio Inc., or their affiliated entities, for the provision*
    *of satellite digital audio radio services who, during the relevant*

12   *period of July 29, 2008 through the deadline for requesting*
    *exclusion from the Class: (1) paid the U.S. Music Royalty Fee; (2)*

13   *own and activated additional radios ("multi-radio subscribers") and*

14   *paid the increased monthly charge of $8.99 per additional radio; or*
    *(3) did not pay to access the content available on the 32 bkps or 64*

15   *bkps connections on the Internet but are now paying the Internet*
    *access monthly charge of $2.99.*

16

17

18   It is my belief that the defendants are attempting to extinguish shareholder

19   claims with this settlement. They will argue *RES JUDICATA* in all current and future

20   cases, which include any claims related to the merger in any way.

21   These parties should not be allowed to extinguish valuable shareholder claims

22   in which they lack grounds, and standing to do so. Shareholder claims have nothing to

23   do with this consumer anti-trust case and are unrelated. Mr. Goe, with respect, informs

24   this court of several pending actions against Sirius XM which would be unduly

25   prejudiced or estopped all together if this court were to approve this settlement as

26   submitted.

27   Currently there are at least five cases, two Federal and three State, filed in New

28   York that plead Derivative and Direct claims including Derivative claims filed on

behalf of Sirius XM against the Board of Directors for their involvement in the very anti-trust issues alleged in this case. In fact, the two federal cases (*Goe v Amble 1:11-CV-03506-JSR*) and (*Shenk v Amble 1:11-CV-02943-JSR*) were submitted to this court, and your honor determined that the cases were **not related**. Mr. Goe is the party to one of the state actions (*Goe v Amble index # 650606/2011*) in which direct and derivative claims are plead.   Sirius XM's own Howard Stern is plaintiff in another state claim (*One Twelve Inc v Sirius XM 650762/2011*) for breach of contract issues relating to the merger of Sirius XM. It is possible, that without this courts guidance in restricting/narrowing   the   breadth   of   this   settlement   stipulation   all   of   the aforementioned cases could unjustly fall victim to this overly broad release.

## II. THIS HONORABLE COURT SHOULD NOT APPROVE THE SETTLEMENT BECAUSE IT IS OVERLY BROAD, PLAINTIFFS LACK STANDING TO RELEASE SHAREHOLDER CLAIMS AND THERE IS NO CONSIDERATION FOR SHAREHOLDERS

### The Release Is Too Broad:

This Court must not approve the Stipulation of Settlement because the Release is overly broad. Many courts have not approved class action settlements where it was determined that the language in the Release is too broad. *See UniSuper Ltd. V. News Corporation, 2006 WL 1550809 (Del. Ch. May 31, 2006)*. In UniSuper Ltd, the Chancery Court required the plaintiffs to modify a release that was too broad in connection with the settlement of a class action.   The Chancery Court held the following: that the release extended to claims not part of the operative core facts; the release purported to extend to future claims; the plaintiffs should be judicially estopped from asserting that the operative facts of the case include the merits of the decision to extend the poison pill because the plaintiffs have expressly stated otherwise; the

release bound non-voting shareholders forcing them to give up claims in return for benefits they do not share.  The Court reasoned that the Release was overly broad and ran aground of the standard set forth by the Delaware Supreme Court.

Here, plaintiffs allege in their complaint extremely specific claims for violations of anti-trust laws on behalf of **consumers**. The proposed release grants the defendants too much relief in relation to the allegations pled in the Complaint. This relief falls outside of the boundaries of their pleadings. *See National Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 19 (2d Cir.1981)

On appeal, the court reversed and remanded the trial court's decision to approve the settlement. It held that under *Fed. R. Civ. P. 23(a)(2)*, representative plaintiffs who held no un-liquidated contracts could not represent class members with respect to claims on un-liquidated contracts. As a result, representative plaintiffs had no authority to release claims based on un-liquidated contracts. The court held that the trial court's reason for approving the settlement, that it was fair to the class as a whole, was unreasonable because it imposed an uncompensated sacrifice on appellant.

In the second circuit ruling, the three judge panel found *inter alia*:

*We likewise find no force in the court's first ground for approval. Lack of objection by the great majority of claimants means little when the point of objection is limited to a few whose interests [**19] are being sacrificed for the benefit of the majority. It means even less when, as here, the notice of settlement did not adequately apprise class members who also held claims in respect of un-liquidated contracts that these too were being placed on the block although these class members were to receive nothing in return.*

*Plaintiffs were thus empowered to represent members of the class solely with respect to the contracts in which all members of the class had a common interest: contracts liquidated between April 13 and May 7. It is essential to understand the*

*consequences of this limitation. If the case [*18] had proceeded to trial and a judgment had been entered in favor of the defendants, that judgment would have barred all members of the class who had not opted out from bringing any claim based on contracts they liquidated. Such a judgment would not have barred members of the class from bringing any other claim they might be able to assert against the defendants, including claims based on contracts un-liquidated at the close of trading on May 7.*

*If a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either. It goes without saying that any claims based on the May 1976 contracts were, in the first instance, subject to the control of the individuals who owned the contracts. Under the circumstances here being considered, the named plaintiffs were authorized to represent [**24] other members of the class solely with respect to liquidated contracts. They were never authorized to represent such members with respect to un-liquidated contracts. Having received authority to represent class members solely with respect to liquidated contracts, plaintiffs had no power to release any claims based on any other contracts.⁷ We have not the slightest doubt that approval of the settlement would have been improper in these circumstances. The most fundamental principles underlying class actions limit the powers of the representative parties to the claims they possess in common with other members of the class.*

At the heart of the Second Circuit's ruling in *National Super Spuds* was the Court's concern that a class representative who does not share common interests with all other class members would "endeavor[] to obtain a better Proposed Settlement by sacrificing the claims of others at no cost" by throwing the others' claims "to the winds." *National Super Spuds*, 660 F.2d at 19 n.10 & 17 n.6.

If this Court approves this Release as defined in Section 8.0 of the Stipulation of Settlement, the Class members that are shareholders will forever release the defendants for any potential claim relating to the merger, in particular, those claims that fall outside the scope of plaintiffs 'representative powers" and boundaries of their pleadings.   Accordingly, this Honorable Court cannot approve the released claims as currently set forth in the Stipulation of Settlement.

*Section 8* of the Stipulation of Settlement defines the released claims in relevant part as follows:

In addition to the effect of any Order and Final Judgment entered in accordance with this Settlement, upon this Settlement becoming final, Plaintiffs and any Class Members who have not timely excluded themselves from this action (collectively, the "Releasing Parties"), **whether or not they object to the Settlement**, shall release and forever discharge Defendant, *its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns (collectively, the "Released Parties") from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, whether class, individual or otherwise in nature, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasing Party ever had, now has or hereafter can, shall or may have, arising out of, based on or relating to the merger that formed Sirius XM Radio Inc., including, without limitation, claims which have been asserted or could have been asserted in this action which arise under, are based on, or relate to any federal or state antitrust, unfair competition, unfair practices, consumer protection, misrepresentation, or other law or regulation, or common law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C § 1 et seq., and the Clayton Antitrust Act, 15 U.S.C. § 12 et seq. Plaintiffs shall further release the Released Parties from any claim arising out of, based on, or related to all conduct alleged or that could have been alleged in the Second Consolidated Amended Class Action Complaint and all previous Complaints filed in this action. Each Releasing Party hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the claims released herein.*

### III. Plaintiff's Lack Standing To Release Shareholder Claims:

The named plaintiffs suing on behalf of consumers lack standing to sue on behalf of shareholders. Not only do these "representative" plaintiffs lack standing, but their interests are also antagonistic to other members of the Settlement Class, whose rights and interests are not protected even if they exercise their right to opt out. In addition to lacking standing, such plaintiffs are inadequate to act as representatives for, and their claims are not typical of those available to, Sirius XM shareholders.

A representative plaintiff may have standing to assert one type of claim against a defendant, yet lack standing to assert other types of claims against the same defendant. *See, e.g., Ackerman v. Oryx Communications, Inc.*, 609 F. Supp. 363, 376 (S.D.N.Y.1984)

Therefore, if a plaintiff does not have standing to assert certain claims, he most certainly does not have the right to extinguish said claims in which he lacks standing to bring forth in the first place.

The Court should reject the Proposed Settlement because absent class members were not adequately represented, and the process leading to the settlement was procedurally unfair.  The Proposed Settlement should be rejected because the due process rights of absent plaintiffs have not been adequately protected.  Because the Proposed Settlement would impair the rights of ***all*** absent plaintiffs, including those who opt out of the class, all absent plaintiffs have a right to object and be heard. Instead, the settlement notice told recipients that they could not object to the Proposed Settlement if they requested exclusion.

IV.    **CONCLUSION:**

For all of the reasons set forth herein, and in the testimony to be submitted at the Settlement hearing Brian Goe respectfully requests that the Court deny final approval of the Proposed Settlement.


Dated: July 17, 2011                                          Respectfully submitted,



                                                              Brian David Goe

# EXHIBIT 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CARL BLESSING, et al, on Behalf of
Themselves and All Others Similarly
Situated,

               Plaintiffs,

-against-

SIRIUS XM RADIO INC.

               Defendant.

Master File No.:
09 Civ. 10035 (HB)(RLE)

**SHAREHOLDER PLAINTIFF MICHAEL HARTLEIB'S NOTICE OF
INTENTION TO APPEAR AT THE FAIRNESS HEARING, AND
OBJECTIONS TO PROPOSED SETTLEMENT AND AWARD OF
ATTORNEYS' FEES**

## PRELIMINARY STATEMENT

Michael Hartleib, respectfully submits this Notice of Intention to Appear at the
Fairness Hearing and a Memorandum of Law in Opposition to the Motion for this
Court's Approval of the Settlement and for Plaintiffs' counsels request for an award of
attorneys' fees (the "Objection"). This memorandum constitutes an objection to the
Settlement on the grounds that: (1)  the release which the parties seek to have
approved is overbroad and may release claims which were not raised in the present
action ("Action"), and are being litigated on behalf of Sirius XM Radio ("Sirius XM")

shareholders in other actions.[1] (2) the Named Plaintiffs did not have standing to release shareholder claims and (3) there is no consideration provided for in the Settlement to support the release of shareholder claims.  Moreover, by way of this objection, I further object to Plaintiffs' Counsel's request for an award of Attorneys' Fees (the "Attorneys' Fees Request"), given that I informed Plaintiffs' counsel of the issues of the over breadth of the Release and the potential that the Release in this Settlement could release valuable shareholder claims without consideration, and Plaintiffs' counsel failed to take adequate steps to rectify the Release language, as further described below.

I am a **consumer** and member of the defined Class, in that I have been a subscriber of Sirius Satellite Radio since October of 2003.  I therefore have standing to file this objection.  I currently own multiple radios and have two active subscriptions. In addition to being a subscriber of Sirius XM Satellite Radio services, I am also a shareholder of Sirius XM, who presently owns 30,000 shares of Sirius XM Satellite Radio, Inc. *(See Copy of Mr. Hartleib's Ameritrade Account Statement attached herein as Exhibit "A").*

This case arises out of a merger between the nation's only two satellite radio providers, Sirius Satellite Radio ("Sirius") and XM Satellite Radio ("XM"). In July of

---

[1] There are several pending actions against Sirius XM which would be unduly prejudiced or completely released if the Court approves the Release attendant to this Settlement.  There are at least five cases, two Federal and three State, filed in New York that plead Derivative and Direct shareholder claims arising from the merger of Sirius Radio and XM (the "Merger"). In fact, the two federal cases (*Goe v Amble 1:11-CV-03506-JSR*) and (*Shenk v Amble 1:11-CV-02943-JSR*) were submitted to the Court, and the Court determined that the cases were ***not related***. I am a party to one of the state actions (*Goe v Amble index # 650606/2011*) in which direct and derivative claims are plead.  Sirius XM's own Howard Stern is plaintiff in another state claim (*One Twelve Inc v Sirius XM 650762/2011*) for breach of contract issues relating to the merger of Sirius XM (the "Shareholder Actions").

2008, Sirius and XM completed the merger (resulting in Sirius XM) creating a company which decreased competition and created a satellite radio monopoly. In violation of federal and state anti-trust laws, the newly formed company used its monopoly power to illegally raise prices for its services. Consumers paid higher prices in multiple ways, including: a $2.00 per month increase for multiple radio service, a $2.99 per month charge for streaming internet service and an increase in the Music Royalty fees. By raising prices among other things, Sirius XM management used its monopoly power to violate antitrust laws, costing the Corporation millions of dollars. As a result of this Action, Sirius XM will not only be forced to pay monies because of these violations, but will have to pay an additional $13 million dollars in attorneys' fees and has had to pay the cost to notify the 22 million subscribers included in the "class".

This is an antitrust class action brought on behalf of consumers who were injured by the monopoly power wielded by Sirius XM. This action is **not** brought on behalf of shareholders or any other group arising from the Sirius/XM Merger.

I.     **SUMMARY OF OBJECTION:**

This case has nothing to do with shareholders of Sirius XM or the claims they hold. Nonetheless, the release language, which the parties to the Action seek to have the Court approve, contains language, which could extinguish the claims of Sirius XM shareholders, which are pending in Shareholder Actions.   Of course, this extinguishment would be without consideration.

The language in the Release states:

(collectively, the "Releasing Parties"), **whether or not they object to the Settlement**, shall release and forever discharge Defendant, *its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors,*

3

*successors and assigns  (collectively, the "Released Parties") **from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, whether class, individual or otherwise in nature, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasing Party ever had, now has or hereafter can, shall or may have, arising out of, based on or relating to the merger that formed Sirius XM Radio Inc.***

This overbroad language could easily be read and used by Defendants to eliminate claims asserted by Sirius XM shareholders asserted in the Shareholder Actions.

With at least five active shareholder cases pending in New York alone, most of which are addressing claims involving details of the merger of Sirius XM. These claims include both Direct and Derivative claims. The Derivative claims seek to recover damages on behalf of Sirius XM for a myriad of issues, not the least of which is the cost of the this antitrust case.

This is a unique situation where there is overlap between consumers and shareholders of Sirius XM, as many of Sirius XM's 22 million consumers are also shareholders of the Company. In fact, Sirius XM has over 1 million "individual" shareholders, making it the most of any NASD listed company.

The language cited above could easily be read as eliminating the rights of those shareholders to proceed with certain shareholder claims, especially because it seeks to eliminate and release all claims arising from the merger of Sirius and XM.

Defendants are not entitled to this overly broad release as it falls outside of the scope of this Action. The named Plaintiffs in this Action have made no claims on behalf of shareholders nor is it clear that they have standing to do so. I spoke with counsel for both parties on several occasions to express concerns as to the breadth of the proposed Release, and suggested that counsel amend the Stipulation to more

4

narrowly define the "class" and ensure any/all shareholder claims would not be unduly prejudiced or judicially estopped altogether.   Specifically, the term "**all persons or entities'** is overly broad and would include all shareholders that subscribed to satellite radio during the defined period outlined below. Further , the release does not contain a carve out to ensure that no claims on behalf of shareholders arising from the Merger would not be released. It would thus release shareholder claims without consideration.

*Class is defined in relevant part as follows:*

*FEDERAL ANTITRUST DAMAGE CLASS. **All persons or entities who reside in the United States and who contracted with Sirius Satellite Radio Inc., XM Satellite Radio Holdings Inc.,** Sirius XM Radio Inc., or their affiliated entities, for the provision of satellite digital audio radio services who, during the relevant period of July 29, 2008 through the deadline for requesting exclusion from the Class: (1) paid the U.S. Music Royalty Fee; (2) own and activated additional radios ("multi-radio subscribers") and paid the increased monthly charge of $8.99 per additional radio; or (3) did not pay to access the content available on the 32 bkps or 64 bkps connections on the Internet but are now paying the Internet access monthly charge of $2.99.*

Although my efforts failed, on June 15, 2011, I had a phone conversation with lead plaintiff counsel, James Sabella in which Mr. Sabella said that more than one named plaintiff in this case had to be withdrawn prior to the announcement of the settlement stipulation because they owned Sirius stock. Mr. Sabella stated that he did not want a named plaintiff in the anti-trust case to be a shareholder as it could blur the line, complicate things and create issues such as those raised here, that the antitrust settlement would also be eliminating shareholder claims. Although Mr. Sabella felt it necessary to remove named plaintiffs that were shareholders, and is therefore aware of the conflicts that this release creates for shareholders', none of the counsel have taken steps to ensure a carve out of the claims unique to shareholders presently being litigated in the Derivative Actions. Mr.Sabella further admitted that he did not believe

Sirius XM was entitled to the broad release presently being requested, but did not take sufficient steps to ensure that such claims were not released. It is unclear why plaintiff counsel was unwilling to amend the overly broad reach of the Settlement language given their clear understanding of the potential conflicts with shareholders claims.

The following day, I called defendants' counsel Todd Geremia to express concerns as to the breadth of the release and to find out if it was the defendant's intention to release shareholder claims in the settlement stipulation. Geremia answered, *"That issue is not for this court to decide, and that he believed they [Defendants] were entitled to this broad release and that the second circuit case law was clear"*. Based on his answer, it is my belief that the defendants are attempting to extinguish and release pending shareholder claims arising from the Merger with this Settlement. That would be in accordance with Mr. Geremia's comment; he is leaving it up to other courts, including those courts before which the Shareholder Claims are pending, to determine the scope of the release. There is little doubt that Defendants intend to take their ambiguous release and argue that any shareholder claims arising from the Merger have been extinguished by the Settlement presently before the Court despite the fact that this is an antitrust class action. Further, there is little doubt that Defendants intend to claim the that this release will have a RES *JUDICATA* in all current and future shareholder cases, including shareholder claims related to the merger. *(See Declaration of Michael Hartleib attached herein as exhibit ("B")*

These parties should not be allowed to extinguish valuable shareholder claims. Shareholder claims have nothing to do with this consumer anti-trust case and are unrelated. I respectfully request that the Court deny approval of the Settlement given the potential deleterious impact of the overbroad Release, and that the Court further not approve Attorney Fee Request until issues with the Release are rectified.

**ARGUMENT**

## II. THE COURT SHOULD NOT APPROVE THE SETTLEMENT

**The Release Is Over Broad:**

This Court should not approve the Settlement because the Release is overly broad and may extinguish claims having nothing to do with this Action. Courts routinely deny approval of class action settlements where the language in the release is too broad. *See UniSuper Ltd. V. News Corporation, 2006 WL 1550809 (Del. Ch. May 31, 2006)"(UniSuper)"*. In *UniSuper* for instance, the Chancery Court required the plaintiffs to modify a release that was too broad in connection with the settlement of a class action. The Chancery Court did so because the release extended to claims that were not part of the operative core facts; and the release purported to extend to future claims. The Court reasoned that the Release was overly broad and conflicted with the standard set forth by the Delaware Supreme Court.

Here, plaintiffs allege in their complaint extremely specific claims for violations of anti-trust laws on behalf of consumers. The proposed release grants the defendants relief beyond the core antitrust facts alleged in the Complaint. This relief falls outside of the boundaries of their pleadings as no shareholder claims are made.

It could be argued that if this Court approves this Release as defined in *Section 8.0* of the Stipulation of Settlement, the Class members that are shareholders will forever release the defendants for any potential claim relating to the merger, in particular, those claims that fall outside of the operative core facts, the scope of plaintiffs 'representative powers" and boundaries of their pleadings. Accordingly, the Court should not approve the released claims as currently set forth in the Stipulation of Settlement.[2]

---

[2] *Section 8* of the Stipulation of Settlement defines the released claims in relevant part as follows:

**B. Plaintiff Lacks Standing To Release Shareholder Claims:**

The named plaintiffs suing on behalf of consumers are not shareholders and therefore lack standing to sue on behalf of shareholders. Not only do these "representative" plaintiffs lack standing, but their interests are also antagonistic to other members of the Settlement Class, whose rights and interests are not protected even if they exercise their right to opt out. In addition to lacking standing, such plaintiffs are inadequate to act as representatives for, and their claims are not typical of those available to, Sirius XM shareholders.

---

In addition to the effect of any Order and Final Judgment entered in accordance with this Settlement, upon this Settlement becoming final, Plaintiffs and any Class Members who have not timely excluded themselves from this action (collectively, the "Releasing Parties"), **whether or not they object to the Settlement**, shall release and forever discharge Defendant, *its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns (collectively, the "Released Parties") from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, whether class, individual or otherwise in nature, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasing Party ever had, now has or hereafter can, shall or may have, arising out of, based on or relating to the merger that formed Sirius XM Radio Inc., including, without limitation, claims which have been asserted or could have been asserted in this action which arise under, are based on, or relate to any federal or state antitrust, unfair competition, unfair practices, consumer protection, misrepresentation, or other law or regulation, or common law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C § 1 et seq., and the Clayton Antitrust Act, 15 U.S.C. § 12 et seq. Plaintiffs shall further release the Released Parties from any claim arising out of, based on, or related to all conduct alleged or that could have been alleged in the Second Consolidated Amended Class Action Complaint and all previous Complaints filed in this action. Each Releasing Party hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the claims released herein.*

8

1    A representative plaintiff may have standing to assert one type of claim against a
2    defendant, yet lack standing to assert other types of claims against the same defendant.
3    *See, e.g., Ackerman v. Oryx Communications, Inc.,* 609 F. Supp. 363, 376
4    (S.D.N.Y.1984)

5    Therefore, if a plaintiff does not have standing to assert certain claims, he most
6    certainly does not have the right to extinguish said claims in which he lacks standing to
7    bring forth in the first place. *See National Super Spuds, Inc. v. N.Y. Mercantile Exch.,*
8    660 F.2d 9, 19 (2d Cir.1981)("National Super Spuds").

9    In National Super Spuds, the appellate court reversed and remanded the trial
10   court's decision to approve the settlement. It held that under *Fed. R. Civ. P. 23(a)(2),*
11   representative plaintiffs who held no unliquidated contracts could not represent class
12   members with respect to claims on unliquidated contracts. As a result, representative
13   plaintiffs had no authority to release claims based on unliquidated contracts. The court
14   held that the trial court's reason for approving the settlement, that it was fair to the class
15   as a whole, was unreasonable because it imposed an uncompensated sacrifice on
16   appellant.

17   In the Second Circuit ruling, the three-judge panel found *inter alia:*

18   *We likewise find no force in the court's first ground for approval. Lack of objection*
19   *by the great majority of claimants means little when the point of objection is limited to*
20   *a few whose interests [**19] are being sacrificed for the benefit of the majority. It*
21   *means even less when, as here, the notice of settlement did not adequately apprise*
22   *class members who also held claims in respect of unliquidated contracts that these too*
23   *were being placed on the block although these class members were to receive nothing*
24   *in return.*

25   *Plaintiffs were thus empowered to represent members of the class solely with*
26   *respect to the contracts in which all members of the class had a common interest:*
27   *contracts liquidated between April 13 and May 7. It is essential to understand the*
28

9

*consequences of this limitation. If the case   [\*18]   had proceeded to trial and a judgment had been entered in favor of the defendants, that judgment would have barred all members of the class who had not opted out from bringing any claim based on contracts they liquidated. Such a judgment would not have barred members of the class from bringing any other claim they might be able to assert against the defendants, including claims based on contracts unliquidated at the close of trading on May 7.*

*If a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either. It goes without saying that any claims based on the May 1976 contracts were, in the first instance, subject to the control of the individuals who owned the contracts. Under the circumstances here being considered, the named plaintiffs were authorized to represent [\*\*24] other members of the class solely with respect to liquidated contracts. They were never authorized to represent such members with respect to unliquidated contracts. Having received authority to represent class members solely with respect to liquidated contracts, plaintiffs had no power to release any claims based on any other contracts.ʲ We have not the slightest doubt that approval of the settlement would have been improper in these circumstances. The most fundamental principles underlying class actions limit the powers of the representative parties to the claims they possess in common with other members of the class.*

At the heart of the Second Circuit's ruling in *National Super Spuds* was the Court's concern that a class representative who does not share common interests with all other class members would "endeavor[] to obtain a better Proposed Settlement by sacrificing the claims of others at no cost" by throwing the others' claims "to the winds." *National Super Spuds*, 660 F.2d at 19 n.10 & 17 n.6.

The Court should reject the Proposed Settlement because the named Plaintiffs do not have standing to release shareholder claims nor did they litigate them. The Proposed Settlement should be rejected because the due process rights of absent plaintiffs have not been adequately protected.   Because the Proposed Settlement would impair the rights of **all** absent plaintiffs qua shareholders, including those who opt out of the class, <u>all absent plaintiffs have a right to object and be heard</u>. Instead, the settlement notice told recipients that they could not object to the Proposed Settlement if they requested exclusion.

## C. THE SETTLEMENT DOES NOT PROVIDE ANY CONSIDERATION TO SUPPORT THE RELEASE OF SHAREHOLDER CLAIMS

Shareholders have valuable claims, both Direct and Derivative. These claims involve many issues related to the merger between Sirius and XM. It would not be just for claims to be prejudiced or barred by this overly broad release. Shareholders are not the only potential class members that could be harmed by this settlement.   Sirius XM's own superstar Howard Stern is suing Sirius XM for breach of contract based on merger related issues. Shareholders or other class members are not receiving any consideration for claims beyond the consumer anti-trust claims addressed in this case.

## IV.   CONCLUSION:

For all of the reasons set forth herein, Michael Hartleib respectfully requests that the Court deny final approval of the Proposed Settlement and the request by class counsel for an award of attorneys' fees.


Dated: July 18, 2011                                Respectfully submitted,



_____

Michael Hartleib

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

3
4
5
6
7

CARL BLESSING, et al, on Behalf of
Themselves and All Others Similarly
Situated,
                    Plaintiffs,

        -against-

Master File No.:
09 Civ. 10035 (HB)(RLE)

8
9
10
11

SIRIUS XM RADIO INC.

                    Defendant.

12
13
14
15
16
17

**CONSUMER PLAINTIFF MICHAEL HARTLEIB'S NOTICE OF**
**INTENTION TO APPEAR AT THE FAIRNESS HEARING, AND**
**OBJECTIONS TO PROPOSED SETTLEMENT AND AWARD OF**
**ATTORNEYS' FEES**

18

<u>**PRELIMINARY STATEMENT**</u>

19
20
21
22
23
24

        Michael Hartleib, respectfully submits this Notice of Intention to Appear at the
Fairness Hearing and a Memorandum of Law in Opposition to the Motion for this
Court's Approval of the Settlement and for Plaintiffs' counsels request for an award of
attorneys' fees (the "Objection"). This memorandum constitutes an objection to the
Settlement on the grounds that: (1) the release, which the parties seek to have

25
26

        I am a **consumer** and member of the defined Class, in that I have been a
subscriber of Sirius Satellite Radio since October of 2003. I thus have standing to file

27
28

1   this objection.  I currently own multiple radios and have two active subscriptions. *(See*
2   *Copy of Mr. Hartleib's Sirius XM Account Statement attached herein as Exhibit "A").*

4           This case arises out of a merger between the nation's only two satellite radio
5   providers, Sirius Satellite Radio ("Sirius") and XM Satellite Radio ("XM"). In July of
6   2008, Sirius and XM completed the merger (resulting in Sirius XM) creating a
7   company which decreased competition and created a satellite radio monopoly. In
8   violation of federal and state anti-trust laws, the newly formed company used its
9   monopoly power to illegally raise prices for its services. Consumers paid higher prices
10  in multiple ways, including: a $2.00 per month increase for multiple radio service, a
11  $2.99 per month charge for streaming internet service and an increase in the Music
12  Royalty fees. By raising prices among other things, Sirius XM management used its
13  monopoly power to violate antitrust laws, costing the Corporation millions of dollars.
14  As a result of this Action, Sirius XM will not only be forced to pay monies because of
15  these violations, but will have to pay an additional $13 million dollars in attorneys'
16  fees and has had to pay the cost to notify the 22 million subscribers included in the
17  "class".

18          This is an antitrust class action brought on behalf of consumers who were
19  injured by the monopoly power wielded by Sirius XM.

20  **I.      SUMMARY OF OBJECTION:**

21  The value of the settlement to the class is not proportionate to benefit received by the
22  defendants with the proposed release, nor to the compensation for the law firms on
23  both sides. This settlement fails to require defendants to forfeit any of their ill-gotten
24  gains from their willful violations of antitrust laws.

26  The defendants would have this court believe that there is an $180,000,000 benefit to
27  the class. This class was subjected to improper increases in subscription fees for
28  approximately 2 years. This class paid for increases that should never have been

2

charged, and they will not be receiving a credit for the improper charges. The defendants not adding insult to injury by agreeing to not raising prices improperly a second time is not a benefit, it is expected.

I understand that this is a proposed settlement, and as such, compromises are made, but these compromises must be commensurate with the relief sought. That said this settlement is not fair or equitable. The proposed settlement offers no tangible benefit to the class, as the only real tangible benefit is the 13 million dollars paid to class counsel. In fact, one could argue that this so-called benefit to the class is nothing more than **smoke and mirrors**. A fair analogy would be like that of a bank robber. The bank robber repeatedly robs the bank thereby stealing millions of dollars until such time as he is caught. On the eve of trial he reaches a deal in which he agrees not to rob the bank for a mere 5 months, keeps all of the ill gotten gains and walks away Scott free.

Defendants have reaped benefits totaling hundreds of millions of dollars for their illicit acts, unjustly awarded themselves millions of dollars in compensation all at the expense of their consumers.

**ARGUMENT**

## II. THE COURT SHOULD NOT APPROVE THE SETTLEMENT

### The Release Is Over Broad:

This Court should not approve the Settlement because the Release is overly broad and may extinguish claims having nothing to do with this Action. Courts routinely deny approval of class action settlements where the language in the release is too broad. *See UniSuper Ltd. V. News Corporation, 2006 WL 1550809 (Del. Ch. May 31, 2006)"(UniSuper)"*. In *UniSuper* for instance, the Chancery Court required the

3

plaintiffs to modify a release that was too broad in connection with the settlement of a class action. The Chancery Court did so because the release extended to claims that were not part of the operative core facts; and the release purported to extend to future claims. The Court reasoned that the Release was overly broad and conflicted with the standard set forth by the Delaware Supreme Court.

The Proposed Settlement should be rejected because the due process rights of absent plaintiffs have not been adequately protected. Because the Proposed Settlement would impair the rights of *all* absent plaintiffs qua shareholders, including those who opt out of the class, <u>all absent plaintiffs have a right to object and be heard</u>. Instead, the settlement notice told recipients that they could not object to the Proposed Settlement if they requested exclusion.

## C. THE SETTLEMENT DOES NOT PROVIDE ANY TANGIBLE CONSIDERATION TO SUPPORT THE RELEASE OF CONSUMER CLAIMS

This settlement is not fair or equitable as there is not tangible consideration to the class for the release of their consumer claims. In fact, the proposed benefit to the class is nothing more than smoke and mirrors.

## IV. CONCLUSION:

For all of the reasons set forth herein, Michael Hartleib respectfully requests that the Court deny final approval of the Proposed Settlement and the request by class counsel for an award of attorneys' fees.

Dated: July 19, 2011                          Respectfully submitted,


Michael Hartleib

4

## Thank you for being a loyal SIRIUS listener

Dear Michael,

We appreciate loyal listeners like you, and we hope you're pleased with all the great programming on SIRIUS. With over 130 channels, we bring you more of what you love – the most commercial-free music, plus sports, news, talk and comedy. For the latest programming information, schedules and more, visit sirius.com/whatsonsirius.

To make sure you have the best listening experience and enjoy SIRIUS uninterrupted, you're automatically enrolled in our convenient *automatic renewal* program. The credit/debit card you provided will be charged the rates shown below, *or the then-current rates*, based on your Plans and billing dates. If you have more than one radio on your account on annual or longer-term plans, we'll send you a similar reminder before those renew too, and your credit/debit card will be charged for each subscription at *the then-current rate.* And as always, if you wish to cancel, you can do so at any time. Just call Listener Care at 1-866-635-2342. To view your complete SIRIUS Terms and Conditions, visit sirius.com. The details of your recurring subscriptions are:

ESN#: 000896897386
Plan: Annual
Bill Date: 12/27/10
Subscription Fee*:$98.89
Music Royalty Fee**: $10.68
Package: SIRIUS Everything

ESN#: 023118424386
Plan: Annual
Bill Date: 11/27/10
Subscription Fee*:$98.89
Music Royalty Fee**: $10.68
Package: SIRIUS Everything

Account # 1220192
Credit Card: Mastercard
Last 4 Digits: 0466

If there is anything we can do to enhance your experience with SIRIUS Satellite Radio, please do not hesitate to contact us at sirius.com or at 1-866-635-2342.

Thanks for listening.

The SIRIUS Team

* Other fees and taxes will apply, and details above may not reflect recent account activity.
** Packages with music channels are charged a "U.S. Music Royalty Fee" per paid month of the Plan term. The typical fee is $1.98/month on primary subscriptions and $.97/month if eligible for multiple radio discount. The fee will vary depending on the Package and Plan term. For additional details, see our online FAQs at sirius.com/usmusicroyalty.

## Make The Most Of Your SIRIUS

**Sirius.com has it all for you**
Make sirius.com your one-stop shop for all the programming and account information you need to get the most out of your SIRIUS subscription.

- **Get programming news custom-made for you!**
  Tell us your listening preferences at **sirius.com/whatilike**, and we'll send you timely updates about the SIRIUS music, sports, events and artist visits that you care about.

- **Channel news, lineups, schedules and more!**
  Visit **sirius.com/whatsonsirius**, and you'll find a world of information to help you locate the programming that matters to you. Game schedules, news about upcoming interviews and performances, channel lineups, even live clips - it's all here.

- **Special deals for SIRIUS subscribers**
  Need an additional radio to listen to SIRIUS in your car, home, office, backyard or on the go? Visit **sirius.com/suboffer** to see special deals, just for you!

- **Manage your account**
  Click the My Account tab at the top of sirius.com to sign in to our online e-care site. You can make a payment, change your programming package or update your billing information.

**Emergency Alert System.** SIRIUS Radio keeps its listeners informed about emergencies by providing nationwide alerts from the Emergency Alert System (EAS) on all of its 130 channels. State and local emergency alert messages and information specific to 20 major metropolitan markets are provided on SIRIUS' Instant Traffic, Weather & Alert channels (SIRIUS 148 - 158). SIRIUS does not provide state and local emergency alert messages on any of its other channels.

TwoESN - 12333

 **Ameritrade**

**Statement Reporting Period:**
06/01/11 - 06/30/11

800-669-3900
TD AMERITRADE
DIVISION OF TD AMERITRADE INC
PO BOX 2209
OMAHA, NE 68103-2209

**Statement for Account** 
MICHAEL J HARTLEIB

**Announcements:**
LEARN HOW TO MAKE MORE EDUCATED
INVESTING DECISIONS, WHATEVER
YOUR LEVEL OF EXPERIENCE:
ATTEND OUR FREE IN-DEPTH WORKSHOPS,
COMING TO YOUR AREA, SIGN UP NOW AT
TDAMERITRADE.COM/WORKSHOP.

## Portfolio Summary

| Investment | Current Value | Prior Value | Period Change | % Change | Estimated Income | Estimated Yield |
|---|---|---|---|---|---|---|
| Margin Loan | - | - | - | - | $ - | - |
| Insrd Dep Acct | - | - | - | - | | - |
| Money Market | - | - | - | - | | - |
| Short Balance | - | - | - | - | | - |
| Stocks | - | - | - | - | - | - |
| Short Stocks | - | - | - | - | | - |
| Fixed Income | - | - | - | - | | - |
| Options | - | - | - | - | | - |
| Short Options | - | - | - | - | | - |
| Mutual Funds | - | - | - | - | | - |
| Other | - | - | - | - | | - |
| **Total** | - | - | - | - | - | 0.0% |
| **Margin Equity** | | | | | | |

**Portfolio Allocation**

Options 15.6%

Margin Loan 21.5%

Stocks 62.9%

## Cash Activity Summary

| | Current | YTD |
|---|---|---|
| **Opening Balance** | - | - |
| Securities Purchased | - | - |
| Securities Sold | - | - |
| Funds Deposited | - | - |
| Funds Disbursed | - | - |
| Income | - | 10.00 |
| Expense | - | - |
| Other | - | - |
| **Closing Balance** | - | - |

## Income & Expense Summary

| | Reportable | Non Reportable | YTD |
|---|---|---|---|
| **Income** | | | |
| Dividends | - | $ - | - |
| Interest | - | - | - |
| Other | - | - | - |
| **Expense** | | | |
| Interest | - | - | - |
| Fees | - | - | - |
| Other | - | - | - |
| **Net** | - | $0.00 | - |

## Performance Summary

| | |
|---|---|
| **Cost Basis As Of - 06/30/11** | - |
| Unrealized Gains | - |
| Unrealized Losses | - |
| Funds Deposited/(Disbursed)^YTD | - |
| Income/(Expense)^YTD | - |
| Securities Received/(Delivered)^YTD | - |

Statement for Account █████████
06/01/11 – 06/30/11

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Account Positions** | | | | | | | | | | |
| Investment Description | Symbol/ CUSIP | Quantity | Current Price | Market Value | Purchase Date | Cost Basis | Average Cost | Unrealized Gain(Loss) | Estimated Income | Yield |
| **Stocks - Margin** | | | | | | | | | | |
| SIRIUS XM RADIO INC COM | SIRI | 30,000 | 2.19 | 65,700.00 | 07/23/08 | 199,621.65 | 6.65 | (133,921.65) | | |
| SPRINT NEXTEL CORP COM | S | 13,000 | 5.39 | 70,070.00 | | | | | | |

Statement for Account #▓▓▓▓▓
06/01/11 - 06/30/11

## Account Positions

| Investment Description | Symbol/ CUSIP | Quantity | Current Price | Market Value | Purchase Date | Cost Basis | Average Cost | Unrealized Gain(Loss) | Estimated Income | Yield |
|---|---|---|---|---|---|---|---|---|---|---|
| **Stocks - Margin** | | | | | | | | | | |
| ▓▓▓▓▓ | ▓▓▓ | ▓ | ▓▓ | ▓▓ | | | | - | | |
| **Total Stocks** | | | | ▓▓▓▓ | | ▓▓▓▓ | | ▓▓▓ | ▓▓▓ | |
| **Options - Margin** | | | | | | | | | | |
| ALCATEL LUCENT ALU Jan 21 12 5.0 C | | 50 | $ 1.18 | $5,900.00 | 03/02/11 | ▓▓▓▓▓ | | | | |
| SPRINT NEXTEL CORP S Jan 19 13 3.0 C | | 150 | 2.54 | 38,100.00 | 01/18/11 | ▓▓▓▓ | | | | |
| **Total Options** | | | | $44,000.00 | | $34,965.00 | | ▓▓▓ | ▓▓ | 0.0% |
| **Total Margin Account** | | | | ▓▓▓▓ | | $282,985.88 | | ▓▓▓ | ▓▓ | 0.0% |

## Account Activity

| Trade Date | Settle Date | Acct Type | Transaction/ Cash Activity* | Description | Symbol/ CUSIP | Quantity | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| **Opening Balance** | | | | | | | | | ▓▓▓▓ |
| 06/07/11 | 06/07/11 | Margin | Div/Int - Income | PFIZER INC COM Payable: 06/07/2011 | PFE | ▓▓▓ | ▓▓ | ▓▓ | ▓▓▓ |
| 06/30/11 | 06/30/11 | Margin | Div/Int - Expense | MARGIN INTEREST CHARGE Payable: 06/30/2011 | - | | ▓▓ | ▓▓ | ▓▓▓ |
| **Closing Balance** | | | | | | | | | ▓▓▓ |

*For Cash Activity totals, refer to the Cash Activity Summary on page one of your statement.

page 4 of 6

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ARL BLESSING, et al., on Behalf of Themselves and
All Others Similarly Situated

                     Plaintiffs,

    -against-


SIRIUS XM RADIO INC.

                 Defendant.

-------------------------------------------------------------------x

Civil Action

09 CV 10035 (HB)(RLE)


**MEMORANDUM OF LAW IN OPPOSITION TO THE PRELIMINARILY
APPROVED PROPOSED CLASS SETTLEMENT ON BEHALF OF
CLASS MEMBERS AND OBJECTORS JASON HAWKINS,
SHEILA MASSIE AND JOHN SULLIVAN**


ERLANGER LAW FIRM PLLC
Attorneys for Class Members and Objectors
Jason Hawkins, Sheila Massie, and John Sullivan
122 East 42 Street, Suite 518
New York, New York 10168

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      POINT I.

      THE PRELIMINARILY APPROVED CLASS SETTLEMENT
      MUST NOT BE GRANTED FINAL APPROVAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.    The Preliminarily Approved Settlement
           Provides A Huge Benefit to Sirius but
           No Monetary Benefit to the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.    The Proposed Settlement Includes Injunctive
           Despite This Court's Previously Declining
           to Certify an Injunctive Relief Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.    The Proposed Settlement Appears to
           Contain an Improper Negative Option. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      POINT II.

      A $13 MILLION ATTORNEYS' FEE BASED
      ON A DUBIOUS SELF-SERVING CLASS
      BENEFIT VALUATION IS GROSSLY EXCESSIVE. . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

i

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005).. . . . . . . . . . . . . . . . . . . 6


<u>FEDERAL RULES</u>

FRCP 23.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6


<u>OTHER AUTHORITIES</u>

*Managing Class Action Litigation: A Pocket Guide for Judges,* Rothstein, Barbara J., &
Willging, Thomas E., (3d ed., Federal Judicial Center 2010) .. . . . . . . . . . . . . . . . . . . . . . . . . . 2-5

## PRELIMINARY STATEMENT

This brief is submitted on behalf of class members and objectors Jason Hawkins, Sheila Massie, and John Sullivan ("the Objectors"). They object to the parties' application for final approval of the proposed class settlement, preliminarily approved by the Court by Order entered May 19, 2011. They also object to class counsel's application for attorneys' fees.

## STATEMENT OF FACTS

As set forth in the accompanying 7/19/11 Declaration of Robert K. Erlanger.

## LEGAL ARGUMENT

### POINT I.

### THE PRELIMINARILY APPROVED CLASS SETTLEMENT MUST NOT BE GRANTED FINAL APPROVAL

**A.    The Preliminarily Approved Settlement
Provides A Huge Benefit to Sirius but
No Monetary Benefit to the Class**

Most troublesome is that the value of plaintiffs' actual damages claims are not addressed by the proposed settlement. While the parties have valued the proposed settlement's benefit to the class of at least $200 million, 7/15/11 Lagenfeld Declaration, entirely missing from their expert's analysis is the actual cash benefit that Sirius pocketed over the last three years as the result of its illegal price increase. To fairly value the proposed settlement, the past and present cash benefit to Sirius must be weighed against the alleged future cash but non-monetary benefit to class members.

By its illegal conduct, Sirius received a massive three-year cash infusion of past and present dollars. In return, for keeping the case and not being subject to massive antitrust statute penalties, it only offers a non-monetary settlement to class by foregoing alleged future dollars

by: (1) not raising the base pricing for all subscribers for the next five months; (2) offering to

maintain the base pricing on the first go around of renewal subscriptions; and (3) offering

"expired" subscribers a free month of radio or internet service and waiver of the reactivation fee.

The non-monetary proposed settlement is nothing more than disguised discounting, which if

accepted by class members, would provide an even further benefit to Sirius by increasing its

revenue base.

The Class Action Pocket Guide for Judges advises the judiciary that non-monetary class

benefits, such as discounting and the like, must be valued on <u>objective</u> standards that go beyond

the purported face value of the benefits:

### B. Monetary results achieved for class

> [I]n cases in which the benefit to the class is non-monetary
> (coupons, discounts, warrants, injunctions and the like),
> determining the actual value to the class requires looking beyond
> the face value of nonmonetary or contingent benefits. Redemption
> data or other evidence of class use is essential.  In some cases,
> particularly settlements involving injunctive or declaratory relief,
> you might use expert valuations based on reliable, objective
> standards.  In other cases, perhaps a majority, the only reliable test
> of benefit to the class will be evidence of class members' use or
> redemption of the coupons, warrants, or other non-monetary scrip.

*Managing Class Action Litigation: A Pocket Guide for Judges,* Rothstein, Barbara J., &

Willging, Thomas E., (3d ed., Federal Judicial Center 2010) at 34 ("Pocket Guide").

To be clear, Sirius is not establishing a cash class settlement fund.  Nor is Sirius

separating itself from present cash in its pockets.  Sirius is allowing current subscribers to

continue at the current base price until December, <u>i.e.</u>, it is generously allowing its subscribers to

pay the illegal base price.  Sirius is also offering a non-monetary discount to subscribers who re-

subscribe by allowing them to pay the same illegal base price through the next subscription

2

period.  Finally, Sirius is attempting to lure in former subscribers by offering them a waiver of the reactivation fee and one month's free radio or internet service, in addition to paying the illegal base price through the new subscription period.

The last minute July 15, 2011 submissions by the parties supporting an alleged settlement value of at least $200 million, should be viewed with suspicion.  Sirius's allegations as to what it was "planning" to charge subscribers, is first, based on an alleged loss of future (not present) dollars.  Second, it is a subjective value based on hypothetical future charges.  And third, the subjective valuation was surely inflated to support the parties' application for final approval of the proposed settlement.

Finally, this Court should not be persuaded to approve the proposed settlement because of the low small percentage of opt-outs and objectors relative to the large class membership. Class counsel in class actions predictably and routinely cite to such disparity to support the dubious proposition that class members have approved a proposed settlement:

> The typical class action settlement notice will most likely yield an apathetic response, and few objectors or opt-outs. Two empirical studies in the past decade (including one conducted by the FJC) found that about one in a thousand (0.1%) class members opted out of a proposed settlement [citations omitted].
>
> Counsel may argue that a low percentage of opt-outs demonstrates class members' agreement with the settlement, but in some types of cases that argument seems misplaced. Opt-out rates vary according to the type of case and the amount of the individual recovery. Class members are considerably more likely to opt out of mass tort, employment, and commercial litigation, where individual recoveries are generally higher, and less likely to opt out of consumer cases, where individual recoveries are generally lower and individual litigation less viable.

Pocket Guide at 31.  Here, there is no individual subscriber recovery at all.

3

**B.     The Proposed Settlement Includes Injunctive
        Despite This Court's Previously Declining
        to Certify an Injunctive Relief Class**

Essentially, the proposed settlement as to base subscriber prices is a self-imposed

injunction.  In determining whether to approve a settlement involving injunctive relief, the Court

should ask how much is the injunction worth to the class, and what is the dollar value that the

relief might yield. Pocket Guide at 21-22.

Because of the limited scope of the injunctive relief, nothing prevents Sirius from raising

its rates at the beginning of 2012 to a level greater than that previously contemplated to make up

for any lost revenue over the five-month period.  Because the proposed settlement does nothing

to restrain Sirius from the conduct complained starting in 2012, there is no value of the

injunctive relief to the class.  By providing only injunctive relief for a short period of time, the

settlement offers no relief for the alleged overpayments that have already been made.  For these

reasons alone, the proposed settlement should be rejected.

On or about March 29, 2011 this Court specifically granted class certification for a

federal antitrust class for damages under FRCP 23(b)(3), but denied class certification for an

injunctive relief class under FRCP 23(b)(2).  In denying plaintiffs' motion with regard to the

injunctive relief class, this Court stated:

> Plaintiffs have not met their burden to show that the value of
> injunctive relief sought predominates over that of damages for
> purposes of class certification.  Plaintiffs seek restitution,
> compensatory damages, treble damages, punitive damages and
> interest, as well as injunctive relief.  It is reasonable to assume that
> all plaintiffs value damages as a remedy.  It is less clear whether
> all plaintiffs value injunctive relief.  Despite plaintiffs' assertion
> that a prohibition of future price increases or divestiture of the
> merged entity would be a meaningful remedy, plaintiffs have not
> demonstrated that the value of an injunction is the predominant
> relief sought.  At least one plaintiff has stated that he does not wish

4

> to seek divestiture if he is paid all damages to which he is entitled.
> Absent a greater showing, this Court will not presume that all
> plaintiffs seek divestiture of the merged entity or an injunctive
> prescription over future prices, let alone value such relief more
> than damages.

Opinion and Order dated March 29, 2011 at 6 (citations omitted).

Yet the only relief being offered in the present settlement is appropriate only to an FRCP

23(b)(2) action, and thus the settlement must be rejected.  Further, this Court has previously

ruled that there is no showing that injunctive relief is either the preferable or predominant relief

sought.  This Court should not allow the parties to frustrate the Court's previous Order by

approving this settlement.

**C.      The Proposed Settlement Appears to
          Contain an Improper Negative Option**

A "negative option" is another "hot button" indicator of a proposed settlement that may

indicate potential unfairness to class members. Pocket Guide at 17-18.  Judges are advised that

the negative option is another variant of the coupon settlement

> Watch out for a variant of the coupon settlement – the negative
> option, which is a gift or benefit that requires the recipient to take
> affirmative action to cancel it before a continuing obligation to pay
> arises.  The FTC has aptly termed the negative option a
> 'promotional gimmick.'

Pocket Guide at 18.

The proposed settlement offers former subscribers one month of basic satellite radio

service or streaming internet service at no cost. Class Notice at 6.  There are no provisions in the

proposed settlement, however, for the former subscribers to automatically cancel a subscription

after the free month, should they so desire.  This option thus appears to be a negative option,

forcing them to take affirmative action to keep from being further billed for Sirius radio services,

which they had already cancelled

As previously stated, the former subscriber deal, as well as the deal to subscription

renewals, clearly benefit Sirius by increasing its revenue base and provide no monetary benefit

to class members.  Absent a provision that specifically requires Sirius to affirmatively terminate

the subscriptions for those former subscribers who only wish a free month, the Court should not

approve this specific provision of the proposed settlement.

### POINT II.

### A $13 MILLION ATTORNEYS' FEE BASED ON A DUBIOUS SELF-SERVING CLASS BENEFIT VALUATION IS GROSSLY EXCESSIVE

First, FRCP 23(h)(1) requires notice of a motion for attorneys' fees "must be served on

all parties and, for motions by class counsel, directed to class members in a reasonable manner."

Class counsel did not file their papers in support of their attorneys' fees until Friday, July 15,

2011, at the beginning of a summer weekend.  This gave objectors only two days to respond; this

kind of notice and response time is not allowed under any court rule (short of an emergency

order to show cause) and therefore, cannot be deemed served in a reasonable manner.

Second, as previously noted, because there has been no valuation to Sirius's benefit from

its illegal conduct, the true benefit to the class has not been demonstrated, and therefore class

counsel's contributions cannot be properly evaluated.

Third, while class counsel is seeking a percentage of the value of the alleged benefit

conferred on the class, a method that has been approved by the Second Circuit, *Wal-Mart Stores,*

*Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005), it is based on a subjective self-serving

projection of a cash value savings, not an actual cash fund deposited in an account for the benefit

of class members.

6

The Objectors propose that an independent expert be appointed to evaluate the value of the non-monetary benefit.  Based on that evaluation, the Court will be in a superior position to approve attorneys' fees based on a percent of the proposed settlement's value.

Alternatively, in the case of non-monetary compensation, the Pocket Guide recommends that the court hold back the attorneys' fees linked with the discounts or other non-monetary benefits until after the benefits "can be established by calculating class members' actual use" Pocket Guide at 34.

The Court could order that one-half the requested attorneys' fee be placed in an escrow account until Sirius can report how class member subscribers actually renewed their subscriptions at the current base rate.  From that point, class counsel may revisit the issue to determine whether Sirius's predicted revenue "loss" is a reality.  If it is, class counsel will be entitled to the fee in escrow, and if not, only a portion of the fee; the fee balance could be distributed as a small credit to all Sirius subscribers.

## CONCLUSION

For the foregoing reasons, Class Members and Objectors Jason Hawkins, Sheila Massie, and John Sullivan respectfully request that the parties' request for final approval of the proposed settlement be denied, class counsel's request for attorneys' fees be denied, and that they be granted such other and further relief as may be deemed just and proper.

Dated: New York, New York
       July 19, 2011

        ERLANGER LAW FIRM PLLC
        Attorneys for Class Members and Objectors
        Jason Hawkins, Sheila Massie, and John Sullivan

        By: s/ Robert K. Erlanger
           Robert K. Erlanger (RE-0886)

        122 East 42 Street, Suite 518
        New York, New York 10168
        (212) 686-8045
        rke@erlangerlaw.com

# EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

CARL BLESSING, et al., on Behalf of      :      No. 09-CV-10035 (HB)(RLE)
Themselves and All Others Similarly      :
Situated,                                :
                          Plaintiffs,    :
                                         :
      -against-                          :
                                         :
SIRIUS XM RADIO INC.,                    :

————————————————————— x

## OBJECTION OF UNNAMED CLASS MEMBER JOHN IRELAND TO CLASS ACTION SETTLEMENT, SETTLEMENT AGREEMENT, AND ATTORNEY FEES AND NOTICE OF INTENT TO APEAR AT FAIRNESS HEARING

Class Member JOHN IRELAND (hereinafter, "Objector"), objects to the

proposed class action settlement and Motion for Fees in *Blessing v. Sirius XM Radio,*

*Inc.*, case number 09-cv-10035 HB, and gives notice of his intent to appear at the Final

Fairness Hearing at 10:00 a.m. on August 8, 2011, in Courtroom 23B at the United States

Courthouse for the Southern District of New York, 500 Pearl Street, New York, New

York 10007-1312.

### PROOF OF MEMBERSHIP IN THE CLASS

I was a subscriber to Sirius XM radio between July 29, 2008 and July 5, 2011.

For privacy purposes, my address and telephone number will not be listed here.  Upon

request, I will submit my personal information to the Court and Counsel.

/ / /

/ / /

# I.   LEGAL ARGUMENT

## A.   The Court Must Act As Fiduciary for the Class

The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003.

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable. Id. This rule has been read as a requirement for the court to " 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.' " In Re Cendant Corp. Litig., 264 F.3d 201, 231 (3rd 2001), citing In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 785 (3rd Cir. 1995). (emphasis added)

The Second Circuit concurs regarding the Court's unyielding, fiduciary duty. Grant v. Bethlehem Steel Corp., 823 F.2d 20 (2nd Cir. 1987.), citing Grunin v. International House of Pancakes, 513 F.2d 114, 123 (8th Cir.) (the district court "act[s] as a fiduciary who must serve as a guardian of the rights of absent class members"), cert.

1

denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975), quoted in *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir.1977) ( "Grinnell II" ).

The instant settlement cannot be approved without this Court's detailed review of the terms to determine whether it satisfies Rule 23(e).  From a review of the documents filed in this case, it is not clear that either this settlement or the requested fee amount are fair, reasonable, or adequate.

**B.     The Settlement Must Be Fair, Reasonable and Adequate**

**a.     This Settlement is a Coupon settlement and the Relief is Nebulous.**

The Class Action Fairness Act ("CAFA") denotes specific requirements with respect to approval of coupon settlements.  The statute requires that before a district court may approve a "coupon settlement," it must "determine whether, and mak[e] a written finding that, the settlement is fair, reasonable, and adequate for class members."  28 U.S.C. § 1712(e).  Although the "fair, reasonable, and adequate" language used in section 1712(e) is identical to the language relating to settlement approval contained in Rule 23(e)(2), several courts have read § 1712(e) as imposing a heightened level of scrutiny in reviewing such settlements.  See, e.g., *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006); Pub.L. 109–2 § 2(a)(3)(A) 119 Stat . 4 (February 18, 2005.); *Silberblatt v. Morgan Stanley*, 524 F.Supp.2d 425, 432 (S.D.N.Y., 2007.) (Stating, although "an item of non-monetary consideration may not fall within the statute's use of the term "coupon" does not make it any less worthy of close judicial scrutiny.")

Courts have primarily articulated three concerns with "coupon settlements": "they often do not provide meaningful compensation to class members; they often fail to

disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007.), citing Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action Litigation*, 18 GEO. J. LEGAL ETHICS 1395, 1396-97 (2005)). This settlement suffers from all three of these issues.

**First**, this Class Action settlement provides no monetary relief to Class Members. Class Members do not receive a compensatory check for Defendant's alleged antitrust transgressions.  They only receive "discounts" from Defendant, which come only with continued patronage to Defendant's satellite radio services. **Second**, although this Objector cannot hope to opine on the guilt or innocence of Defendant with respect to the claims against him, this settlement will certainly not disgorge any profits from Defendant, ill-gotten or otherwise.  Contrarily, Defendant stands to gain business from this Settlement while releasing potentially valuable claims that Plaintiffs may have against it regarding its 2008 merger. **Third**, the relief available to Class Members is only retrievable with renewed or continued subscriptions to Sirius XM radio.

This is, de facto, a coupon settlement and requires heightened scrutiny by this Court regarding its fairness and the fairness of the fees requested in conjunction with it.

     **b.**    **The Court must rely on credible evidence to support its findings, not on the opinion of Plaintiff's self-serving expert report.**

Nothing can sway the District Court's independent analysis as the fiduciary of the class in its fairness determination of the settlement and fee request. *Maywalt v. Parker & Parsley Petroleum Co.* 67 F.3d 1072 (2nd Cir 1995), citing *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983).  Although expert reports, like the one

3

at issue here, can often be helpful to the Court in understanding complicated issues, the

expert is compensated by Plaintiffs' and, as such, will naturally provide an analysis

certain to be favorable to Lead Counsels' Motion.  There is no other expert opinion

available here as there would be in a trial to dissect Plaintiff's expert report and opine on

its validity.  There is no defense expert to provide a different perspective, different

variables, or different calculations.  As such, the District Court's duty to carefully inspect

the settlement terms is all the more heightened in light of this self-serving and biased

expert declaration.

The expert opinions of James Langenfield in support of the value and overall

reasonableness of the settlement and fee request must be disregarded or, in the

alternative, he should be produced at the final approval hearing for examination by the

court, parties, and objectors.

>    **i.  *The Estimated Future Settlement Value by James Langenfield is
>         Speculative and, in Any Case, Subject to Analysis by the Court, an
>         Opposing Expert and Class Members at the Fairness Hearing.***

Mr. Langenfield's Expert Report purports to analyze the total future value of the

reward to which the Class will be entitled.  According to his report, the value to the Class

of these discounts, which only last through December 31, 2011, is more than $180

Million.  Lead Counsels' fee request is based on this hypothetical number.  Thus, this

Objector reviewed the calculation conducted by Mr. Langenfield and disagrees that the

result is certain or even remotely accurate.

Although an exhaustive review of this report will not be detailed here, some of the

following peculiarities are worth noting.  For example, in order to ascertain the future

value of the relief, Mr. Langenfield made some far-reaching assumptions regarding future

subscription rates. (Declaration James Langenfield, "Dec. Langenfield", ¶ 5.) It simply cannot be known how many current customers will continue their service in the future and/or renew their service early in order to take advantage of the Settlement. With respect to renewal rates, Mr. Langenfield made creative postulations regarding the historical growth rate of subscribers in order to predict future patterns of customer behavior. However, he only utilizes data from the previous year, April 2010 through April 2011. (Dec. Langenfield Exhibit 2.) Mr. Langenfield does not make clear how a one-year period is indicative of a pattern among millions of customers; he simply states that it is so. The expert report also makes sweeping estimates, not based on any pattern of activity among Sirius XM's customer base, such as assuming that 10% of customers that were not slated for renewal between August 1, 2011 and December 21, 2011 will renew early. (Dec. Langenfield, Exhibit 3, fn.1.)

Furthermore, although Mr. Langenfield does not include this number in the "aggregate value" of the settlement, he does attribute Defendant's reduction in fees from $1.98 to $1.40 on December 6, 2010 to this litigation; valued at $56 Million. (See Dec. Langenfield, Appendix.) This is improper, and cannot be attributed to Class Counsel's efforts. This was not a part of the Settlement negotiated by the parties. As such it should not be considered in the Court's analysis.

Lead Counsels' attempt to rely on this analysis of the future value of the relief is nebulous at best. Certainly, Lead Counsels' confidence in the value of $180 Million dollars seems misplaced and requires detailed scrutiny by the Court and probably an additional expert. This "relief" is all that the Class will receive in exchange for a release of all Claims arising out the merger of Sirius and XM Radio in 2008. Class Counsel hope

5

to be paid $14 Million for this "relief." Certainly, this estimate requires more scrutiny than that performed by an employee of Class Counsel.

<blockquote>

**c.     The Settlement Abandons Two Subsets of Deserving Class Members and Presents Questions of Collusion between Class and Defense Counsel.**
</blockquote>

This Settlement leaves out two groups of Class Members from any relief whatsoever – lifetime subscribers and former Sirius XM subscribers that choose not to sign up for a new subscription. These class members should be just as eligible as other Class Members since they were equally subject to Defendant's presumed unlawful practices and therefore suffered the same amount in damages. It is unclear the reasons for which they were not included but it raises the specter of collusion for the reasons explained below.

Plaintiffs' Second Amended Complaint states that Defendant's anticompetitive behavior resulted in higher rates for all of their customers. (Docket 46.) These allegations were made on behalf of all users of Defendant's services. It can only be assumed from the structure of the Settlement that Defendant refused to offer relief to those Class Members that would not re-commit to using their Satellite radio. In other words, it seems Defendant would not offer actual relief to those individuals from whom they did not stand to gain anything. While it is true those continuing and renewing users of Sirius XM will see a small reduction in their monthly subscription costs for a time, Defendant receives a windfall. This discount has the potential to woo back countless former subscribers and may entice current subscribers to remain customers. It is only those Class Members from whom Defendant will receive nothing monetarily that are left out of the Settlement.

Heightened scrutiny by the Court is necessary when even the slightest potential for collusion between Defendants and Plaintiffs is raised.  "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately." *Maywalt v. Parker & Parsley Petroleum Co.* 67 F.3d at 1078, citing *Walsh* 726 F.2d at 964.  The Court should strictly scrutinize the relief that is granted, and withheld, from Class Members as not all equally deserving Class Members were treated equally.

**C.      The Attorneys' Fee Request Must Be Fair, Reasonable, and Adequate.**

     **a.  The Requested Fee is Excessive Given the Uncertain Value of the Settlement.**

Although Class Counsel state that their Lodestar far exceeds their requested fee, this, alone, is not proof that their request is reasonable. There is a host of problems with Class Counsel's requested relief.   Their fee application is unjustified, unsupported, and excessive given the results in this case.  This is apparent upon utilizing the factors espoused within the Second Circuit for analysis of fee awards.

This Circuit utilizes a six-point assessment to determine an appropriate fee in common fund cases: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Resources, Inc.* 209 F.3d 43, 50 (2d. Cir. 2000), (Citing *City of Detroit v. Grinnell Corporation* (Grinnell I), 495 F.2d 448, 469 (2d Cir.1974), and *Grinnell II*, 560 F.2d 1093 (2nd Cir.1977).  Overlaying the facts of this case with the

foregoing *Goldberger* analysis, the requested amount does not appear to be fair or reasonable.

First, although the time and labor expended by Counsel appears to be significant, at 37,000 hours, there is no proof that this number of hours justifies the result. Spending this many attorney hours on a two-year case appears dramatic and, further, is unsubstantiated. Counsel has submitted no proof that these hours were reasonable or justified, instead only providing an unhelpful one-page summary listing the 37,000 hours spent. (See. Exhibits to James Sabella Declaration, Ex. 18.)

Second, the magnitude and the complexity of the litigation were only made so by Class Counsel's attempt to combine 50 state consumer law allegations with antitrust violations. The complexity of the case was really quite average; the allegations quite simple. However, through dalliance, it appears, this case nearly went to trial when it should have and could have settled long ago.

Third, the risks of the litigation also appear insignificant. Plaintiffs sued the only two providers of satellite radio services for antitrust and anticompetitive behavior upon their merger. The term "shooting fish in a barrel" never rang truer. Thus, the risk appears average, in comparison with other complex actions.

Fourth, the quality of the representation is in question given the overall settlement, involving only prospective relief, and their failure to provide any respite for lifetime subscribers and former subscribers that choose not to renew their satellite radio service.

/ / /

/ / /

8

Fifth, and most importantly, the relief to the Class is unclear and, thus, an evaluation of the fee in relation to the settlement cannot be made. Class Counsel's statement that this fee request constitutes 7 percent of the "common fund" created for the Class means nothing. It cannot be known what the percentage of the "fund" is, in fact. Importantly, Class Counsel has failed to provide relief for those individuals from whom Defendants will gain no new patronage. In sum, Class Counsel has reached a result that is both unclear and leaves certain Class Members with no relief, while waiving all future claims against Defendant (unless they opt out.) Their fee request has no rational relationship to the settlement and thus should be significantly reduced or, at the very least, postponed until the actual value of relief to the Class Members can be accounted for and realized.

### III.    JOINDER IN OTHER OBJECTIONS

This Objector adopts and joins in all other well taken - bona fide objections filed by other Class Members in this case, and incorporates them by reference as if they appeared in full herein.

### IV. CONCLUSION

For the foregoing reasons and all such others that are raised at oral argument, I respectfully submit the foregoing objections to the Court and requests the following relief:

A.    Upon proper hearing, sustain these Objections;

B.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement; AND

C.      Award an incentive fee for my service as a named representative of Class

Members in this litigation.

Respectfully submitted,

Dated: July 19, 2011

By: _____

John Ireland
603 N. Highwy 101, Suite A
Solana Beach, CA 92075
Phone: 858-792-5600
Fax: 858-792-5655

10