# EXHIBIT 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL BLESSING, et al., on Behalf of Themselves and All Others Similarly Situated, | No. 09-cv-10035 (HB)(RLE) |
| Plaintiffs, | |
| -against- | |
| SIRIUS XM RADIO INC., | |
| Defendant. | |

**OBJECTIONS REGARDING PROPOSED SETTLEMENT**

To The Hon. Harold Baer, U.S.D.J.:

Comes Now Linda Mrosko, ("Objector"), and files these Objections to the Proposed Settlement and Objections to Attorneys' Fees, and shows as follows:

## I.  Objector

Objector is a member of the settlement class, as shown by Objector's attached declaration.   Objector's address, telephone number and signature are included in the attached declaration, which is incorporated herein by reference.   The parties sent notice to Objector as a class member at ELMEROSKO@gmail.com.

## II. Objections to the Settlement

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).   The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, for the following reasons.

### A.  There is inadequate compensation to class members

A district court abuses its discretion if it approves a class action settlement that does not provide adequate consideration for the release of the class member claims:

> Under Rule 23(e), trial judges bear the important responsibility of protecting absent class members, "which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 349 (3rd Cir. 2010).   The settlement here is essentially a coupon settlement:  no money to class members for past

1

damages, but a price reduction for future sales (although referred to as "injunctive relief," the proposed final order does not contain an injunction against raising fees), and a hefty fee to the attorneys. In the Class Action Fairness Act of 2005, (CAFA), Congress highlighted the very abuse that this settlement presents:

> Congress finds the following: …
>
> **(3)** Class members often receive little or no benefit from class actions, and are sometimes harmed, such as where--
>
> > **(A)** counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value.

Pub.L. 109-2, § 2, Feb. 18, 2005, 119 Stat. 4. Similarly, the Federal Judiciary Center's MANUAL FOR COMPLEX LITIGATION 4th, found:

> There are a number of recurring potential abuses in class action litigation that judges should be wary of as they review proposed settlements: … releasing claims of parties who received no compensation in the settlement … .

*Id.* § 21.61, p 310-311. In fact, the Federal Judicial Center has identified that very outcome as a "hot button indicator" of an unfair settlement:

> At times parties have attempted to release a damages remedy without making any correlative payment to class members … .

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 20. A settlement where all of the monetary relief Defendants were willing to pay goes to Class Counsel, with no money to the class, should cause courts serious concern. Here the settling parties ensured that 100% of the money Defendants were willing to pay to end this litigation would go to the Class Counsel instead of the class members.

Courts routinely reject settlements that fail to provide compensation for the release of class members' claims. For instance, in *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007), the Plaintiffs had sought both injunctive and monetary relief. *Id.* at 380 ("Acosta sought actual damages … and an injunction."). Like here, the proposed settlement provided injunctive relief. *Id.* at 382. It also released all equitable and monetary claims. *Id.* at 383. While it provided for economic relief to some class members, the court there focused on the fact that most class members would lose their damages claims for no compensation:

> [O]ver two-thirds of the Settlement Class, and up to 10 million class members, will be completely ineligible for any economic relief under the Settlement. In order to avoid having their rights to recover under the FCRA extinguished in exchange for zero economic relief, the Settlement requires these class members to affirmatively opt out lest their claims be

> permanently relinquished under the Settlement's sweeping and
> indiscriminate release provisions. Moreover, those class members
> ineligible for economic relief are precisely those who are least likely to
> receive notice of the Settlement because the Settlement denies them its
> most effective notice mechanism, that of Mailed Notice.

*Id.* at 388. Here 100% of the class "will be completely ineligible for any economic relief under the Settlement."

As the *Acosta* court held, the injunctive relief does not compensate for the release of the economic damage claims for past statutory violations:

> The wholesale sacrifice of those class members [who receive no economic
> benefits] is especially egregious because as to these individuals "only
> damages matter, yet all the settlement does for (to?) them is cut them off
> at the knees. They gain nothing, yet lose the right to the benefits of
> aggregation in a class." *Crawford v. Equifax Payment Servs.*, 201 F.3d
> 877, 882 (7th Cir.2000).

*Id.* at 388. Just as the injunctive relief was not sufficient to support the waiver of past damages in *Acosta*, the injunctive relief in this case does not support the waiver of past damages here.

The Seventh Circuit in *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002) also rejected a settlement that released damage claims for no compensation, despite the existence of injunctive relief. There were two main Defendants in that case, Beneficial and H&R Block. The settlement there provided injunctive relief against both Defendants to address future conduct. *Id.* at 281 ("the defendants [ ] also agreed to injunctive relief in the form of certain required disclosures to future customers"). As in *Acosta*, however, the Seventh Circuit did not consider the injunctive relief for future conduct to be consideration to support the release of damage claims for past conduct:

> For this release of potentially substantial claims against H & R Block the
> settlement class received no consideration. In fact the settlement class
> received no consideration for the release of any claims against Block.

*Id.* at 283-284. Based on this Court's own certification order, it is clear that "injunctive prescription over future prices" – the alleged benefit in the settlement – is not an appropriate outcome for this case. Plaintiffs sought an injunctive class expressly for a prescription over future prices, and the Court ruled:

> Absent a greater showing, this Court will not presume that all plaintiffs
> seek divestiture of the merged entity or an injunctive prescription over
> future prices, ***let alone value such relief more than damages***.
> Furthermore, certifying this class for injunctive relief is not reasonably
> necessary because an injunction asserted by an individual plaintiff for a

> prohibition of future price increases or divestiture of the merged entity
> would have essentially the same impact on Defendant as an injunction
> asserted by a certified class, a concept more or less agreed to in oral
> argument.

Doc. 85, p. 6-7 (emphasis).  As the Court held, "It is reasonable to assume that all
plaintiffs value damages as a remedy." *Id.* at 6.  Thus, the Court held that certification is
appropriate for a damages class, but not an injunctive class. *Id.*

Despite the fact that the class has been certified expressly for the recovery of monetary
damages, not for an "injunctive prescription over future prices," the settlement provides
no economic damages to class members and merely provides an "injunctive prescription
over future prices." The proposed settlement is not fair, reasonable, or adequate because
it does not provide any damages to the class for past actions.

### B.  This is an unreasonable coupon settlement

This is the very type of coupon settlement that the public, commentators, and Congress
have criticized:

> Congress finds the following: ...
>
> **(3)** Class members often receive little or no benefit from class actions, and
> are sometimes harmed, such as where--
>
>> **(A)** counsel are awarded large fees, while leaving class members with
>> coupons or other awards of little or no value.

Pub.L. 109-2, § 2, Feb. 18, 2005, 119 Stat. 4.  Thus, Congress has set in law what
everyone else already knew:  coupons in class action settlements are "of little or no
value." The alleged reduction in price for future purchases is simply a coupon.

A coupon is a price reduction for a future purchase from the Defendant.  *See, True v.
American Honda Motor Co.*, 749 F.Supp.2d 1052, 1069 (C.D. Cal. 2010).  The sole relief
here is a price reduction for a future purchase from the Defendant.  These types of
settlements require extra scrutiny from the courts:

> "[C]ompensation in kind is worth less than cash of the same nominal
> value," since, as is typical with coupons, some percentage of the pre-paid
> envelopes claimed by class members will never be used and, as a result,
> will not constitute a cost to Airborne.  [C]ompensation in envelopes
> "require[s] the claimant to return to the Defendant to do business with
> him," something at least some class members likely would prefer not to
> do. ...[W]e note that in that statute Congress required heightened judicial
> scrutiny of coupon-based settlements based on its concern that in many
> cases "counsel are awarded large fees, while leaving class members with
> coupons or other awards of little or no value." Pub.L. 109-2, § 2(a)(3)(A),
> 119 Stat. 4, 4.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 654 (7th Cir. 2006).

This coupon settlement is ideally structured to benefit the Defendant and class counsel at the expense of class members. To the extent class members do not renew their contracts, Defendant benefits because it avoids liability on the waived claims without any compensation to the class member. To the extent class members renew their contracts, Defendant benefits from the extra sales. Class counsel benefits by shifting to themselves as fees a much larger portion of the cash Defendant is willing to pay to settle a claim.

### C. Changes to the settlement should require notice to the class, the right to object, and court approval

The proposed final order provides that Plaintiffs and Defendants can change the settlement after final approval without Court approval or notice to the class:

> Without further approval from the Court, Plaintiffs and Defendant are hereby authorized to agree to and adopt such amendments or modifications of the Agreement or any exhibits attached thereto to effectuate this Settlement that: (i) are not materially inconsistent with this Judgment; and (ii) do not materially limit the rights of Class Members in connection with the Settlement. Without further order of the Court, Plaintiffs and Defendant may agree to reasonable extensions of time to carry out any provisions of the Settlement.

Doc. 96-1, p. 54. That provision is in direct violation of FED. R. CIV. P. 23 (e), which requires both court approval and notice to the class of all settlement agreements. There is no exception for what the settling parties may claim to be "immaterial" changes.

### D. The settling parties have not met their burden of proof

Objector objects to the settlement because the parties have failed to meet their burden to prove that the amount of the settlement is fair, reasonable, and adequate. The burden of proof is on the settlement parties, not objectors:

> At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.' [979]
>
> 979. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995));

MANUAL FOR COMPLEX LITIGATION 4th, §21.634, p. 322.

### III. Objections to an Award of Attorneys' fees

When class counsel seeks to reduce the benefits to the class with a fee award, they become an adversary of the class and the district court becomes a fiduciary to protect the class:

> During the fee-setting stage of common fund class action suits such as this one, "[p]laintiffs' counsel, otherwise a fiduciary for the class, ... become[s] a claimant against the fund created for the benefit of the class." This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is.'"

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994-995 (9th Cir. 2010)(citations omitted).

#### A. Rule 23 and due process requires Class Counsel to file their motion for fees before the objection deadline

Rule 23 requires district courts to give class members a full and fair opportunity to contest class counsel's fee motion:

> In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, *for motions by class counsel, directed to class members in a reasonable manner*.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52 (a).

FED. R. CIV. P. 23 (h)(emphasis added). The Court did not direct class counsel's motion for fees to class members in a reasonable manner because it set an objection deadline *before* the due date for the fee request. Doc. 108 (preliminary approval order setting an objection deadline but no deadline for the filing of the fee motion).

A recent Ninth Circuit case reversed a district court for failing to give class members adequate time to review and object to class counsel's fee request:

> The plain text of the rule requires that any class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed.

*In re Mercury Interactive*, 618 F.3d at 993-994.  That Court went on to explain that the intent of the rule was to ensure that class members have sufficient time to review the motion and supporting documentation:

> The Advisory Committee Notes to the 2003 amendments to Rule 23(h) further support this reading of the rule. They elaborate that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, ¶ 68. The Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an "objector discovery relevant to the objections." *Id.* ¶ 69. Clearly, the rule's drafters envisioned a process much more thorough than what occurred in this case.

*Id.* at 994.  The Ninth Circuit noted that commentators agree that class members should be given sufficient opportunity to review and challenge class counsel's fee request:

Commentators also agree with this logical interpretation of the rule. For example, Moore's Federal Practice counsels that "[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request." 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009). Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee. *Id.*

Importantly, a district court is required to give class members a full and fair opportunity to contest class counsel's fee motion.

> Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests.  When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class.

*Id.* at 995.  The Ninth Circuit case is on point and reversed the district court for using the very procedure followed here:

> We hold that the district court abused its discretion when it erred as a
> matter of law by misapplying Rule 23(h) in setting the objection deadline
> for class members on a date before the deadline for lead counsel to file
> their fee motion. Moreover, the practice borders on a denial of due process
> because it deprives objecting class members of a full and fair opportunity
> to contest class counsel's fee motion

*Id. At 993.* The facts in this case are identical to the facts in *Mercury Interactive*. The
notice provided that "Class Counsel will ask the Court for attorneys' fees and expenses of up to
$13 million, plus interest." Doc. 110 p. 16. The Court set July 19, 2011 as the objection
deadline. Doc. 110 p. 3. Yet, the order did not set a deadline for filing the fee motion
itself and as of this writing no such motion has been filed. Thus, under *In re Mercury
Interactive Corp. Securities Litigation* approval of class counsel's fee request would
violate Rule 23 and class members' due process rights.

**B. The attorneys' fee award must be based on the coupons actually redeemed**

The Class Action Fairness Act provides:

> If a proposed settlement in a class action provides for a recovery of
> coupons to a class member, the portion of any attorney's fee award to class
> counsel that is attributable to the award of the coupons shall be based on
> the value to class members of the coupons that are redeemed.

28 U.S.C. § 1712 (a). By limiting fees to a percentage of discounts actually redeemed,
the class is protected because it is in Class Counsel's self-interest to maximize the
benefits actually received by the class. However, by not limiting class counsels' fees to
coupons actually redeemed, Class Counsels' self-interest is actually opposed to that of
the class. The Defendant is willing to settle a case for a certain sum, and it has little
economic interest in how that sum is divided between the class and counsel. Thus, it is to
the Class Counsel's advantage to shift more of the settlement money to themselves rather
than the class. Indeed, it is even in Class Counsel's interest to offer to settle the case for
a lower amount than the Defendant is willing to pay if the Defendant agrees to a
settlement that shifts more of the money to the attorneys.

Congress made the correct determination in forcing the Class Counsel to put the interests
of the class first by making the fee award a percentage of the coupons redeemed. Under
that scenario the class is protected. Without such a requirement Class Counsel can abuse
the class action device at the expense of the class members. Pursuant to § 1712, the
Court should not base the fees on estimates of the value of the agreed price reductions,
but should wait and set the fee based on the savings actually redeemed by class members
who renew their contracts.

### C. Notice failed to notify class members of the right to object to Class Counsel's fees

The notice to the class wholly fails to notify class members that they have a right to object to class counsel's fee request. Instead, the notice merely provided that class members could object to the settlement. Doc. 110 p. 16. Under FED. R. CIV. P. 23 (h) and due process the notice regarding the fee request must notify class members of their right to object to the request. Since the notice here failed to do so, the Court should deny the fee request.

### D. Class counsel have not met their burden of proof

Class Counsel have the burden to prove the reasonableness of their requested fees. They have failed to do so here.

## IV. Prayer

Regarding the proposed class settlement, the Court is limited to a single decision: approve or disapprove the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726-727 (1986). The Court may not amend the settlement. *Id.* Thus, Objector prays that the Court disapprove the settlement.

If the Court nevertheless approves the settlement, Objector prays that the Court deny the requested fees to Class Counsel.

Objector further prays that the Court grant Objector such other and further relief as to which Objector may be entitled

ROBERT E. MARGULIES, ESQ.
MARGULIES WIND
A Professional Corporation
Harborside Plaza 10
3 Second Street – Suite 1201
Jersey City, NJ 07311
201-333-0400
201-333-1110-fax

**ATTORNEYS FOR OBJECTOR**
**Linda Mrosko**

9

## Certificate of Service

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by electric mail by the Clerk of the Court via the CM/ECF system on July 18, 2011, including the following:

Clerk of the United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

James J. Sabella, Esq.        (additional copy being sent via US Mail)
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

_____
Robert E. Margulies

# EXHIBIT 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CARL BLESSING, ET AL., on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 09-cv-10035 (HB) (RLE) |
| -against- | ) ) ) | |
| SIRIUS XM RADIO, INC. | ) ) | |
| Defendant. | ) ) | |

## OBJECTON TO PROPOSED CLASS ACTION SETTLEMENT AND NOTICE OF APPEARANCE

Donald K. Nace ("Nace"), as a member of the class in the above-referenced suit against Sirius XM Radio, Inc. ("Sirius"), files this objection to the proposed class action settlement and notice of appearance.

Nace is a member of the class because he subscribed to both XM and Sirius services during the relevant time period.

Nace objects to the proposed class action settlement and respectfully requests the Court to reject it because it is unfair, unreasonable, and inadequate. Specifically, Nace objects to the proposed class action settlement on the following grounds:

### 1. "Sirius XM has abused its monopoly power"

According to class counsel, "since the merger, Sirius XM has abused its monopoly power by raising prices and sustaining such price increases, reducing the quantity and quality of programming, breaching subscriber contracts, and making false and misleading statements to subscribers and the public." Second Consolidated Amended Class Action Complaint

1

("Complaint") ¶ 3.  Specifically, prior to the merger, Sirius and XM were the *only* competitors in the satellite digital audio radio ("SDAR") marketplace in the United States.  In the over six-year period prior to the merger, Sirius never raised its monthly charge, and XM only raised its monthly charge once.  Complaint ¶ 2.  In representations to the Federal Communications Commission ("FCC") related to the merger, Sirius and XM represented that the merger would result in lower prices to consumers and increased programming choices.  As class counsel set forth in the Complaint, these representations could not be further from the truth.  Indeed, there is significant evidence of wrongdoing in this case, including, for example, the statements of Sirius' CEO bragging of the financial benefit arising from the lack of competition in the SDAR market; Sirius' CFO and Executive Vice President's statements to the same effect; Sirius' President of Sales and Operations touting the upside of price increases to Sirius' bottom line; Sirius' gross misrepresentations to consumers related to increases in royalty payment fees; and Sirius' ability to profitably sustain multiple price increases during a severe recessionary period.

This misconduct and possible criminal activity, which forms the basis of this class action lawsuit, warrants an award of significant actual and punitive damages against Sirius.  Apparently recognizing this fact, class counsel originally sought compensatory damages, threefold damages, attorney fees and costs, as well as significant injunctive relief. *See* Complaint, Prayer for Relief, at 95.  The serious allegations set forth in the Compliant are supported by, among other things, the FCC's previous recognition of the potential for severe misconduct as a result of the merger— misconduct that has now manifested.

Despite the grave allegations in the lawsuit, the substantial evidence supporting those allegations, and the significant damages originally sought, class counsel has now agreed to release the entire class' claims against Sirius effectively for a coupon or discount on future use of

2

Sirius' services, without even requiring Sirius to admit *any* liability. This is troubling at best. A settlement that awards class members so little in light of the allegations and facts originally pled raises serious suspicions about the appropriateness of the proposed settlement. Specifically, while class counsel is rewarded very handsomely in attorney fees to the tune of $13,000,000.00 for prosecuting this case,[1] it appears class members are the losers in this case. There is an abundance of evidence establishing Sirius' misconduct (and even possible criminal conduct), but now class counsel is willing to sell out the class for a pittance, or rather, a coupon. This is unjust, unfair, and presents a legitimate basis for this Court to reject the proposed settlement. The claims should either be settled for a reasonable amount or the case should be tried. This proposed coupon settlement is inappropriate.

The representation in the class notice that the value of the settlement is $180,000,000.00 is misleading. Sirius is not making any less revenue after this settlement than it made before this lawsuit. Sirius is in the exact same position as it was before the lawsuit; its additional fees remain intact, its revenue continues to sky rocket, it continues to charge misleading royalty fees, and there is nothing in the proposed settlement that alters this landscape. Instead, by way of the proposed settlement, Sirius merely promises to refrain from further increases for a short four-month period (between August 1, 2011 through December 31, 2011), after which time it can freely impose additional fees on unsuspecting consumers. This is the exact problem the FCC warned against in permitting the merger. This Court should not enable Sirius to continue its

---

[1] Because the class members receive so little benefit, if any, by way of the proposed coupon class action settlement, an award of $13,000,000.00 in attorney fees is unwarranted and unreasonable. Further, there is no indication of how many hours class counsel actually spent on the case, the hourly rate of class counsel, whether such rates are reasonable and customary, and what amount of costs and expenses have actually been incurred for which reimbursement is sought. This is important information to class members in evaluating the fairness, reasonableness, and adequacy of the proposed class action settlement.

To the extent the requested fees are deemed appropriate, class counsel should be compensated in like form to class members. Class counsel should be provided a coupon to Sirius' services in the amount requested for attorney fees.

misconduct. Approval of the proposed settlement provides no material relief to injured consumers. Instead, it serves more as a coupon marketing scheme for Sirius by enabling it to retain customers it has repeatedly ripped off. Thus, the proposed class action settlement agreement should be rejected.

**2.   <u>There is no injunctive relief against Sirius.</u>**

While the Complaint sets forth Sirius' serious anti-competitive conduct and its misrepresentations to consumers and the FCC regarding its services and price increases, the proposed settlement permits Sirius to continue its anti-competitive, monopolistic, and deceptive conduct after a brief four-month hiatus. After that period, Sirius is free to increase prices at its whim, thereby enabling it to raise prices sufficient to cover the profits lost from not being able to raise prices as a result of the proposed settlement. It is only reasonable then that class members should agree to waive their claims for that same four-month period; thereafter, class members should be able to hold Sirius liable for future misconduct.   However, under the proposed settlement, this is not the case.   Instead, while class members are asked to forever waive and release all claims, whether known or unknown, hidden or concealed, related to Sirius' anti-competitive conduct, Sirius is free to continue its unconscionable business practices after December 31, 2011.  This is unfair, unreasonable, and inadequate.  If, indeed, Sirius' conduct is illegal, it should be forever prohibited. Sirius is only precluded from participating in the anti-competitive misconduct for four months, class members should only be precluded for a four-month period from holding Sirius liable for its misconduct.  Because there is no such reciprocal provision, the proposed settlement should be rejected.

4

### 3.  Is there an incentive award in this case?

There appears to be 20 class representatives in this case.  Aside from the obvious question of why so many class representatives are necessary, there is no mention in the documents in this case, and certainly not in the class action notice, about whether class representatives will be paid an incentive award.  This is an important fact for class members to have in evaluating the fairness of the proposed settlement.  If class representatives will be paid an incentive award, class members should know the amount of the award, where the funds will come from, how the incentive amount was derived, and exactly what the representatives did in the case to deserve an award in excess of the rest of the class.  Because the class has not been provided any information in this regard, the notice if deficient, and the proposed class action settlement should be rejected.

### 4.  Conclusion

Donald Nace respectfully requests that the proposed class action agreement be rejected.

Dated:  July 15, 2011

Respectfully submitted,

Donald K. Nace
1000 Suffolk Court
Cedar Park, Texas 78613
(512) 569-3232

5

## **CERTIFICATE OF SERVICE**

This is to certify that this document was sent to the following counsel of record by certified mail:

James J. Sabella
Grant & Eisenhofer P.A.
485 Lexington Avenue
New York, New York 10017

Clerk of the United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Donald Nace

6

# EXHIBIT 15

# UNITED STATES DISTRICT COURT
## IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: SIRIUS XM RADIO INC.

**Case No.: 1:09-CV-10035-HB-RLE**

**PAGE NASH'S OBJECTION TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AND BE HEARD**

To The Honorable Judge Harold Baer:

Page Nash ("Objector"), objects to the proposed settlement In Re: Sirius XM Radio Inc., Cause No. 09-CV-10035, U.S. District Court , Southern District of New York.

I intent to appear at the fairness hearing  by counsel and request to speak on by objections to this settlement.

**Objector is a class member**

Objector declares that she is a class member.  I received by United States mail a notice of this settlement entitled Certificate of Registration 0001873312-1472699. A copy of the notice is attached.

Objector subscribed and is currently a subscriber to Sirius XM as described in the notice.  This objection is being deposited in the United States Mail as directed by the notice posted on the "Welcome to the Blessing v. Sirius XM Radio Settlement Site", on or prior to July 19, 2011 and have  provided copies as directed on the Settlement Site to the Court and Class Counsel.  I object to the settlement for the following reasons:

1

**Notice of Intention to Appear and Request to Speak at the Hearing**

5. Objector may appear at the hearing by and through her attorney or in person if she does not retain an attorney prior to the Fairness Hearing.  Objector requests that she be allowed to appear at the final approval hearing to talk about these

**Objections to the Settlement**

6. The settlement is not fair, reasonable, or adequate, and Objector objects to the proposed settlement, for the following reasons:

The Court owes a fiduciary duty in the settlement phase of a class action.  See *Reynolds v. Beneficial National Bank, 288 F.3d 277 (7th Cir. 2002)*.  Here in arguing for approval Class Counsel take the position that the rate represent real value to the Class Members, however this settlement constitutes little value to class members and is little more than sales promotion for Sirius by encouraging subscribers not to cancel.

7. The amount of the proposed fees in relation to the alleged benefits to the class renders the settlement unfair and unreasonable.  The amount of the proposed attorneys' fees is an integral element in determining whether the settlement is fair, reasonable, and adequate.

2

**Objections to the Fee Petition**

The request should be subject to a lodestar cross-check.

Objector objects to the request for fees to Class Counsel.  Objector reserves the right to file an amended objections to the fee petition at a later date because although the fee petition was filed on 7/15/2011 objections were due on 7/19/2011.

Objections directs the Court's attention to In Re: Memory  Interactive Corp. Securities Litigation 618 F 3d 988 (9th Cir 2010) which hold that fee petition be filed before the deadline for objection. Have giving objectors only four days to review the petition is unreasonable.


Wherefore, Objector prays that the Court deny the proposed settlement, deny the requested fees to Class Counsel and grant Objector such other and further relief as to which Objector may be entitled.



Thomas L. Cox, Jr.
4934 Tremont
Dallas, Texas 75214
469- 531-3313
Tcox009@yahoo.com

Dated: July 19, 2011.

3

1

### Certificate of Service

2

I hereby certify that a copy of the above and foregoing document has been served upon

3   the following by Federal Express delivery on July 19, 2011:

4   _____

5   Thomas L. Cox, Jr.

6   JAMES J SABELLA ESQ.

7   GRANT & EISENHOFER P.A.

8   485 LEXINGTON AVE

9   NY, NY 10017

10

11   CLERK OF THE UNITED STATES

12   DISTRICT COURT FOR THE

13   SOUTHERN DISTRICT OF NEW YORK

14   NEW YORK, NY 10007-1312

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

## If You Subscribed to Sirius, XM, or Sirius XM Radio
## You Could Get Benefits From a Class Action Settlement

Read this message carefully. Records show you subscribed to Sirius XM Radio. We are sending this notice to tell you about the proposed Settlement of a class action that may affect your legal rights. There is a class action lawsuit against Sirius XM concerning the July 29, 2008 merger that created Sirius XM. The lawsuit claims this merger violated federal antitrust laws and that Sirius XM raised its prices as a result of the merger. Sirius XM denies it did anything wrong.

**Who's Included?**  You are included in the Class if you were a Sirius, XM, or Sirius XM subscriber anytime from July 29, 2008 to July 5, 2011 and you paid: (1) the U.S. Music Royalty Fee; or (2) a monthly multi-radio charge of $8.99; or (3) a $2.99 monthly Internet access charge if you previously did not pay to access Sirius XM's content over the Internet.

**What Does the Settlement Provide?**  Under this proposed Settlement, Sirius XM has agreed it will not raise the price of its base subscription plan and certain other prices through the end of 2011. Additionally, subscribers with long term plans (excluding lifetime subscriptions) will be permitted to restart their plan at current rates before December 31, 2011. After approval of the Settlement, former subscribers will also be permitted to either (a) reconnect their satellite radio without paying a reactivation fee and receive one month of service at no cost; or (b) receive one month of Sirius XM Internet streaming service at no cost. The estimated value of the Settlement is $180 million. The Settlement does not provide for cash payments to the Class.

**How to Get Benefits?**  Current subscribers scheduled to renew before December 31, 2011 do not need to do anything. Current subscribers who are scheduled to renew after December 31, 2011 and who want to restart their long term plan at current rates as well as former subscribers who want to reconnect service or receive streaming service should go to www.siriusxm.com/blessingclassaction.

**Your Rights May Be Affected.**  If you do not want to be legally bound by the Settlement, you must exclude yourself from it. The deadline to exclude yourself is July 5, 2011. If you do not exclude yourself, you will release all claims against Sirius XM concerning any conduct arising out of, based on, or relating to the merger that created Sirius XM. If you stay in the Settlement Class, you may object to it by July 11, 2011. The detailed notice, available at the website or by calling the toll-free number, tells you how to exclude yourself or object. The Court will hold a hearing on August 8, 2011, to consider whether to approve the Settlement and a request by Class Counsel for attorneys' fees and costs up to $13 million, plus interest. You may appear at the hearing, but you don't have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing, but you don't have to.

| For more information about the Settlement: | www.SatelliteRadioSuit.com | 1-800-760-6247 |

American National Bank-Dallas    (FAX)2145206168    P.001/002

*Court-Ordered Legal Notice*

**CLAIMS ADMINISTRATOR**
**PO BOX 2486**
**FARIBAULT, MN 55021-9186**



0001873312 - 1472699

*Para una notificación en Español,*
*llamar 1-800-760-6247 o visitar*
*www.SatelliteRadioSuit.com*

**Do not call or write to**
**Judge Baer for information.**

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

Important Notice About Satellite Radio Settlement

PAIGE NASH
4134 HAWTHORNE AVE
DALLAS TX 75219-2231

# EXHIBIT 16

UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

CARL BLESSING, et al., on Behalf of
Themselves and All Others Similarly Situated,
                              Plaintiffs,

                  -against-

SIRUIS XM RADIO INC.,
                              Defendant.

Case No.: 1:09-CV-10035-HB-RLE

## OBJECTION OF GARY, WARREN AND SARA SIBLEY

To The Honorable Judge Harold Baer:

Under penalty of perjury, I declare that I have bee a customer of Defendant for five years and I am still a customer.

1.  I received no notice of the pending of this action until yesterday, July 18th, 2011.

    Notice was in the form of a client showing me the notice she received in the mail.

2.  Sara Sibley and Warren Sibley are and were customers during the relevant time

    period and received no notice of the pendency of this action.

## OBJECTIONS

The Settlement is not fair, reasonable or adequate and objector objects for the following reasons:

1)  Notice was insufficient because three of the objectors were never notified of

    the pendency of this action.

2)  Notice was insufficient because it failed to allow a reasonable time to review

    the Motion for Expenses, Attorneys Fees and determine whether or not to

1

opt out, object or do nothing. The opt out date predated the motion for Attorney Fees and Expenses. Only four days were allowed to review this voluminous case and make a decision on the action to be taken. It is an insufficient amount of time.

3)   The attorney fees are excessive when judged against the failure of class counsel. This is a case that should never have been brought. All class claims were dismissed except the anti-trust claim and success on it stood about 0 %. The Settlement is of illusory value used only to support attorneys fees.

4)   Objectors reserve the right to amend this objection after having time to review the case file.

5)   Objectors incorporate all objectors made by the other objectors in this matter.

6)   Objectors reserve the right to attend the fairness hearing and speak.

## CONCLUSION

Objector pray that the deadline for opting out and objecting be extended for two weeks.

In the alternative, that the court not approve the proposed settlement and for such other and further relief to which objectors may be entitled.

Gary Sibley
2414 North Akard Street
Suite 700
Dallas, Texas 75201
214-522-5222
Fax 214-855-7878
Email: g@juris.cc

2

1

**Certificate of Service**

2

I hereby certify that a copy of the above and foregoing document has been served upon

3

the following by Federal Express delivery on July 19, 2011:

4

5

Gary Sibley

6

7

JAMES J SABELLA ESQ.

GRANT & EISENHOFER P.A.

8

485 LEXINGTON AVE

9

NY, NY 10017

10

11

12

CLERK OF THE UNITED STATES

13

DISTRICT COURT FOR THE

14

SOUTHERN DISTRICT OF NEW YOR

15

NEW YORK, NY 10007-1312

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# EXHIBIT 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CARL BLESSING, et al., on Behalf of Themselves and All Others | ) ) ) | Case No.:    09-cv-10035 (HB) |
| Plaintiffs, | ) ) | Judge: Harold Baer, Jr. |
| vs. | ) ) ) | |
| SIRIUS XM RADIO, INC., | ) ) | |
| Defendant, | ) | |

**NOTICE OF OBJECTION TO CLASS ACTION SETTLEMENT
AND REQUEST FOR ATTORNEYS' FEES
AND NOTICE OF INTENTION NOT TO APPEAR
<u>MARVIN UNION, ADAM FALKNER, JILL PIAZZA, KEN WARD, RUTH
CANNATA, LEE CLANTON, CRAIG CANTRALL AND BEN AND KIM
FRAMPTON</u>**

Class members Marvin Union of 13530 Heath Road, Novelty Ohio, 44075,

telephone number (440) 338-8185, Adam Falkner of 4148 W. 217th St. Fairview Park,

Ohio 44125 telephone number  (216) 225-5679 (originally represented by Edward

Cochran),  Jill Piazza of 495 Jordan Drive Lumberton Texas 77657  telephone number

(409) 833-2352 (originally represented by Stuart Yoes), Ken Ward of 200 Evangeline

Drive Mandeville LA 70471 Telephone number (985) 778-0888 (originally represented

by Chris Trepagnier), Ruth Cannata of 12635 Chesterfield Lane, Chesterland Ohio 44026,

telephone number (440) 729-2219 (originally represented by Sam Cannata),  Lee Clanton

of 101 Azalea Rd. Birmingham AL 35213 (originally represented by Michael Lunsford),

Craig Cantrall of 25550 Letchworth Rd. Beachwood Ohio 44122 telephone number 216-

299-9169 (originally represented by Craig Adams) and M/M Ben and Kim Frampton of

4857 Perie Wood Lane Kent Ohio 44240 telephone number (502) 426-1058 (originally

represented by George Cochran (collectively referred to herein as "Objectors") by and

through the undersigned counsel, hereby object to the proposed settlement of this class

action and the request for attorneys' fees for the several reasons. The Objectors will

**NOT** appear at the Fairness Hearing presently scheduled for August 8, 2011 at 11:00

A.M. at Foley Square in New York City but will rest on their pleadings. The settlement

is not fair, reasonable and adequate for the following reasons:

### I. Class Counsel Has Failed to Direct Notice of Its Fee Motion to the Class Members in a Reasonable Manner.

The Summary of Notice that Objectors received ("Notice") fails to provide the

information required by Fed. R. Civ. P. 23(h). Fed. R. Civ. P. 23(h) provides:

> (1) *Motion for Award of Attorney Fees.* A claim for an award of attorney fees and nontaxable costs must be **made by motion** under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. **Notice of the motion** must be served on all parties and, for motions by class counsel, directed to class members in **a reasonable manner**.

> (2) *Objections to Motion.* **A class member**, or a party from whom payment is sought, **may object** to the motion. (emphasis supplied)

This rule sets forth three (3) requirements: 1) The request for fees must be

by MOTION; 2) Notice of the fee motion must be directed to the Class members

in a "reasonable manner;" and 3) Class Members must have an opportunity to

object. Although the pleadings filed on July 18, 2011 might be characterized as a

"motion" it has not been directed to all Class Members in a "reasonable manner"

as required by the Rule and the Class Members clearly do not have an opportunity

to object. The Notice states only that Class Counsel intends to request fees and

expenses in the amount of up to $13 million. The Notice does not provide the

basis for the requested fee award, such as Class Counsel's reasonable lodestar, the

composition of the lodestar, whether or not a fee was negotiated by Lead Plaintiffs

at the commencement of this case, how much risk was involved in the case, and all of the other relevant information that would permit class members to make an informed consideration of the fee request.     On July 18, 2011, *one day* before these Objections were due, Class Counsel filed voluminous pleadings in support of their fee request.  Clearly, one day is **NOT** sufficient time for class members to review, digest, contemplate, discuss and prepare any sort of response to the Fee Request (which was still not in the form of a motion).  Objectors reserve the right to file detailed objections to the Fee Request in a supplemental pleading.

The Notice requires that any objections to the settlement or to class counsel's fees must be postmarked by July 19, 2011.  The only information that any class member had prior to around noon on the 18th was  that "Class Counsel will ask the Court for Attorneys' fees and expenses of up to $13 million plus interest…" Notice, ¶ 16.  This is clearly inadequate under the plain meaning of Rule 23 (h).  The pleadings filed on July 18, 2011  clearly do not give anyone a reasonable opportunity to object to the substance of the request.   As the Ninth Circuit recently said, "The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date *after*  the motion and documents supporting it have been filed." *In re: Mercury Interactive Corp Securities Litigation,* 618 F. 3d 988 (Ninth Cir. 2010).   Here, the Court did not even set a date for the filing of the fee request.  Furthermore, is the filing of  the Fee request with the Court notifying the Class in a  "reasonable fashion?"  If it is not on the website, no class member other than those represented by counsel will even know of the filing.    It is hard to accept the argument that this is what Congress intended when it passed the amendment to Rule 23 in December 2003.  How can a class member intelligently

comment on the fee request, let alone object to it, when this Objector and the rest of the Class, do not even know what it contains?

## II.   $13 million Is An Excessive Attorneys' Fee.

Even though they have not had an opportunity to review the Fee Request in detail, Objectors assert that on its face, Class counsel's request for attorneys' fees of $13 million for the minimal benefits delivered to the Class members is excessive by any standard. When measured against recent precedents in this Circuit, the requested fees are clearly unreasonable and excessive.

The Second Circuit announced a preference for "moderation" in the awarding of common fund attorneys' fees in a class action context. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 57 (2d Cir. 2000).  Windfalls to class counsel are to be avoided. *Id.* at 49.  Lodestar cross-checks are "encouraged." *Id.* at 50. Percentage fees in securities and antitrust class actions post-*Goldberger* have been as low as 4%. *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 237 (S.D.N.Y. 2005)(awarding 4% fee out of $300 million settlement fund); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (awarding fee of 6.5%); *Klein ex rel SICOR Inc. v. Salvi*, 2004 US Dist LEXIS 4844 (S.D.N.Y. 2004)(awarding a fee of 8% of the settlement, representing 1.45 times lodestar).

"The first, and most important … factor is the risk in pursuing the case." *Bristol-Myers*, 361 F. Supp. 2d at 233 (*citing Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000).  "It is well-settled that the risk of the litigation must be measured as of when the case is filed." *Id.* at 234.  There has been no evidence submitted to the Class that would explain how much risk was involved in this case at its inception, or whether

4

there were any governmental investigations or other information that would allow the Class and the Court to determine a reasonable fee. There has also been no information directed to the Class in a "reasonable manner" of whether there was a fee agreement with Lead Plaintiff, when it was negotiated, or how the agreement (if any) was arrived at.

By not having access to Class Counsel's actual motion for an award of fees for more than a day before these objections were due, class members have been denied the opportunity to distinguish and rebut the cases and arguments that Class Counsel cited in their motion for fees. This creates a one-sided playing field – Class Counsel know all of Objectors' arguments at the time they file their fee motion, but Objectors are not privy to any of Class Counsel's arguments in support of their fees at the time they must file their objections. Again, this is a result of the procedural anomaly of requiring objections to be filed only a day after the "motion" was filed, contrary to what Rule 23(h) prescribes.

In 2007, the Second Circuit announced the general principle, albeit in a different context, that attorneys' fees should be set at "the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany*, 493 F.3d 110 (2d Cir. 2007). In *Arbor Hill* (a case on which retired Justice Sandra Day O'Connor sat by designation), the Second Circuit emphasized that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *id.* at 118, and that "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id.* at 112. The proposition – that a reasonable paying client wishes to pay the least amount necessary – is true whether the fees are paid by the defendant pursuant to a fee-shifting statute, or as agreed to by the parties, or by the plaintiff class pursuant to the common fund doctrine. Minimization of

attorney's fees is the goal of every client who has not been promised a share of the attorney's fees.

This Court should endeavor to set reasonable attorneys' fees without regard to the amount requested by Class Counsel. The Court should ascertain that the fee awarded is *the lowest one* that will adequately compensate Class Counsel. The burden is on Class Counsel to show that a fee award of less than $13 million is somehow unfair to them and an unjust windfall to the Class. Class Counsel has not and cannot do that. Therefore, this Court should award a fee that is reasonable, but not a windfall.

### III. THE RELEASE IS OVERLY BROAD AND/OR UNLAWFUL IN THAT IT PURPORTS TO RELEASE FUTURE ACTS OF MONOPOLISTIC PRICING.

The class-wide Release in this case is contained in paragraph 8(a) of the Stipulation of Settlement. The Release discharges from liability "future officers, directors, insurers, ... stockholders, agents, attorneys, etc." from "all manner of claims, ... damages whenever incurred", whether "known or unknown", that any releasing party now has or "hereafter can, shall or may have arising out of, based on or relating to the merger that formed SiriusXM Radio, Inc. ..." The combined effect of this language would seem to release the future unknown officers of the company who decide to price the services of SiriusXM Radio in a monopolistic way in violation of Section II of the Sherman Act. The Supreme Court has described the Sherman Act as "The Magna Carta of free enterprise." *U.S. v. Topco Associates, Inc.* 405 US 596, 610 (1972). Section 2 of the Sherman Act forbids unlawful monopolies, including monopolistic pricing. "Monopolistic pricing" occurs when an entity possesses monopolistic power and uses that monopolistic power to raise prices to a level which is considered an "abuse" of that monopoly. In this case, SiriusXM Radio, Inc. has arguably obtained monopoly power by

merging with its only effective competitor. In the future, there is a real danger that SiriusXM Radio will use its monopolistic power in an abusive way to raise the prices for its products and services. The effect of the proposed release is to grant immunity to the company and its officers and directors in advance for such abusive pricing in the future. Of course, it makes no sense to release SiriusXM Radio for raising prices, perhaps years in the future, that otherwise would be violative of Sherman Act Section 2. For example, two years from now, SiriusXM Radio could decide to double the prices of its basic services, knowing full well that its customers really have nowhere else to go to replace those products and services. The principal protection of consumers against that type of predatory pricing is private class actions on behalf of consumers under Section 2 of the Sherman Act. If that conduct is already subject to a binding release, then there is very little impediment to such conduct.

If, as hoped, this is not the purpose of the Release (notwithstanding the fact that it appears literally to be the case) then it would be a simple matter to change the language of the Release to make clear that future unknown increases in prices are not intended *in advance* to be subject to this Release. Accordingly, Objectors will continue to object to this Settlement until such time as the Release language is amended to make this clear. Class counsel are hereby invited to confer with Objectors' counsel to effect the needed changes.

Objectors hereby adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections.

The Class members have a legally protectable interest in this

litigation.  That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objector.  All of the legally required prerequisites material to these Objections have been met.

WHEREFORE, Objectors respectfully request that this Court:

a)     Upon proper hearing, sustain these objections;

b)     Upon proper hearing, continue the issue of attorney fees  until such time as the Court has allowed Class Members an adequate period of time in which to object to such Motion;

c)     Upon proper hearing, enter such orders as are necessary and just to address and adjudicate these objections, and to alleviate the inherent unfairness, inadequacy and unreasonableness of the proposed settlement as set out herein.


Respectfully submitted,


    Edward F. Siegel

Edward F. Siegel, Esq.
State Bar of Ohio No. 0012912
Edward F. Siegel Co. L.P.A.
27600 Chagrin Blvd., Ste. 340
Cleveland, OH 44122
(216) 831-3424 - phone
(216) 831-6584  - fax
efsiegel@efs-law.com
(pro hac vice applied for)

CERTIFICATE OF SERVICE

I certify that copies of the forgoing objections were filed with the Court through its electronic system, and were by such system served on other counsel of record .

<u>Edward F. Siegel</u>

# EXHIBIT 18

# NEXSEN|PRUET

Marguerite S. Willis
Member
Admitted in SC, FL, NC and Washington, D.C.

July 18, 2011

## VIA FIRST CLASS MAIL

James J. Sabella, Esquire
Grant & Eisenhofer, P.A.
485 Lexington Avenue
New York, NY 10017

Clerk of the United States District
Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Re:** *Objection to Inadequate Proposed Class Action Settlement and Notice of Intention to Appear in Blessing v. Sirius XM Radio, Inc., 1:09-cv-10035-HB-RLE*

Charleston

Charlotte

**Columbia**

Greensboro

Greenville

Hilton Head

Myrtle Beach

Raleigh

Dear Mr. Sabella:

The purpose of this letter is to object, on behalf of myself as a class member, to the terms of the proposed settlement of the above-captioned litigation. This proposed settlement provides no benefit to me—my satellite radio rates will not go down and, indeed, may increase as early as January 1, 2012. Because there is no ascertainable benefit to me specifically, or to the class generally, the proposed settlement is not "fair, reasonable, and adequate under Rule 23(e)." In re Katrina Canal Breaches Litig., 628 F.3d 185, 195 (5th Cir. 2010). As someone who has practiced antitrust law for over three decades, it disappoints me greatly to see a settlement that is structured solely for the benefit of class counsel at the apparent expense of the class.

In stark contrast to me, the attorneys tasked with representing my interests in this litigation stand to greatly benefit, as they are seeking $13 million in fees and costs plus interest. This creates a conflict of interest between the class and the attorneys purporting to represent it that is obvious and substantial. The settlement in this agreement contains a "clear sailing" clause, pursuant to which defendant agrees not to oppose class counsel's motion for attorneys'

1230 Main Street
Suite 700 (29201)
PO Drawer 2426
Columbia, SC 29202
www.nexsenpruet.com

T 803.253.8265
F 803.727.1435
E MWillis@nexsenpruet.com
Nexsen Pruet, LLC
**Attorneys and Counselors at Law**

James J. Sabella, Esquire
Clerk of the United States District
July 18, 2011
Page 2

fees. The danger of such a provision is that "plaintiffs' counsel, in obtaining the defendant's agreement not to challenge a fee request within a stated ceiling, will bargain away something of value to the plaintiff class." Hege v. Aegon USA, LLC, 2011 WL 206318 at * 15 (D.S.C. 2011). Here, that "something of value" was the potential for any monetary recovery to the class.

Please note that this letter also serves as notice of my intention to appear and to be heard at the August 8, 2011 Fairness Hearing.

Please direct any correspondence to the contact information on this letterhead (class notice was mailed to my home address: 1616 Hillside Avenue, Florence, SC 29501). Please do not hesitate to contact me with any questions or concerns.

Very truly yours,

Marguerite S. Willis

MSW/bn