UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL BLESSING, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br><br>　　-against-<br><br>SIRIUS XM RADIO INC.,<br><br>　　　　　Defendant. | No. 09-cv-10035 (HB) |

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is made and entered into as of this 12th day of May, 2011 by and between Plaintiffs Carl Blessing, Edward A. Scerbo, John Cronin, Brian Balaguera, Scott Byrd, Glenn Demott, James Hewitt, Todd Hill, Curtis Jones, Ronald William Kader, Edward Leyba, Greg Lucas, Joshua Nathan, James Sacchetta, David Salyer, Susie Stanaj, Janel and Kevin Stanfield, Paul Stasiukevicius, and Paola Tomassini ("Plaintiffs"), individually and on behalf of the Class defined below, by and through their Court-appointed Class Counsel Grant & Eisenhofer P.A., Milberg LLP, and Cook, Hall & Lampros, LLP ("Class Counsel"), and Defendant Sirius XM Radio Inc. ("Sirius XM"), by and through its counsel, Jones Day ("Defendant's Counsel").

WHEREAS, on December 7, 2009, the first of a series of putative class action complaints was filed in the United States District Court for the Southern District of New York against Sirius XM alleging claims for (1) alleged violations of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18, and Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, based on the July 28, 2008 merger of a subsidiary of Sirius Satellite Radio Inc. with XM Satellite Radio Holdings Inc. that

created Sirius XM, (2) alleged breach of contract, and (3) alleged violations of state consumer protection laws; and

WHEREAS, on December 30, 2009, certain Plaintiffs moved to consolidate the above-described series of cases against Sirius XM and appoint interim counsel for the putative class; and

WHEREAS, on March 17, 2010, the Court issued an Order consolidating the cases and appointing Grant & Eisenhofer P.A., Milberg LLP and Cook, Hall & Lampros, LLP as interim counsel for the putative class; and

WHEREAS, on February 25, 2010, Defendant moved to dismiss certain claims in the complaint in the first-filed action; and

WHEREAS, on March 22, 2010, Plaintiffs filed a Consolidated Amended Class Action Complaint; and

WHEREAS, on April 12, 2010, Defendant moved to dismiss certain claims in the Consolidated Amended Class Action Complaint; and

WHEREAS, on May 3, 2010, Plaintiffs filed a Second Consolidated Amended Class Action Complaint; and

WHEREAS, on May 18, 2010, Defendant moved to dismiss certain claims in the Second Consolidated Amended Class Action Complaint; and

WHEREAS, on June 11, 2010, Plaintiffs moved to bifurcate the federal antitrust claims and the state law claims; and

WHEREAS, on July 30, 2010, Plaintiffs moved to certify the consolidated action as a class action pursuant to Federal Rule of Civil Procedure 23; and

WHEREAS, on November 17, 2010, the Court issued an Opinion and Order
(1) dismissing Plaintiffs' claim for breach of contract and breach of an implied covenant of good faith and fair dealing, dismissing certain portions of Plaintiffs' misrepresentation claims under California law, and denying Defendant's motion to dismiss in all other respects, and (2) denying Plaintiffs' motion for bifurcation; and

WHEREAS, on December 12, 2010, Defendant filed an Answer to the Second Consolidated Amended Class Action Complaint; and

WHEREAS, on January 18, 2011, Defendant moved for summary judgment; and

WHEREAS, on March 29, 2011, the Court issued an Opinion and Order that (1) granted Plaintiffs' motion for class certification as to a federal antitrust damage class, and (2) denied Plaintiffs' motion for class certification as to all other classes for which plaintiffs sought certification; and

WHEREAS, on March 29, 2011, the Court issued an Opinion and Order (1) granting Defendant's motion for summary judgment as to the consumer protection claims, and (2) denying Defendant's motion for summary judgment in all other respects; and

WHEREAS, the parties have conducted extensive fact and expert discovery; and

WHEREAS, Defendant denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct, has not conceded or admitted any liability whatever, has asserted defenses, and denies that any conduct challenged by Plaintiffs caused any injury or damage whatever; and

WHEREAS, arm's-length settlement negotiations have taken place between Class Counsel and Defendant's Counsel over a lengthy period of time, and this Agreement, which embodies all of the terms and conditions of the settlement ("Settlement") between Defendant and

3

Plaintiffs, both individually and on behalf of the Class, has been reached, subject to final approval of the United States District Court for the Southern District of New York; and

WHEREAS, Class Counsel have concluded, after extensive discovery, motion practice, and trial preparation, and after carefully considering all of the circumstances of this action, that it would be in the best interests of the Class to enter into this Agreement in order to avoid the uncertainties of, and delays associated with the outcome of, the trial and any subsequent appeals, and to assure a benefit to the Class and, further, that Class Counsel consider the Settlement to be fair, reasonable, and adequate and in the best interests of the Class; and

WHEREAS, Defendant has concluded, despite its belief that it is not liable for the claims asserted in this action and that it has good defenses thereto, that it is in its best interests to enter into this Agreement to avoid further expense, inconvenience, and the distraction and uncertainty of burdensome and protracted litigation and thereby to resolve this controversy; and

WHEREAS, Plaintiffs and Defendant agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability, wrongdoing or injury by Defendant or of the truth of any claim or allegation or a waiver of any defenses thereto;

NOW THEREFORE, it is agreed by the undersigned, on behalf of Defendant, Plaintiffs and the Class, that the action be settled, compromised and dismissed with prejudice, and without the award of costs, subject to the approval of the Court, on the following terms and conditions:

1.    **Class**.  In accordance with the Court's March 29, 2011 Opinion and Order, the Class is defined as follows:

> FEDERAL ANTITRUST DAMAGE CLASS.  All persons or
> entities who reside in the United States and who contracted with
> Sirius Satellite Radio Inc., XM Satellite Radio Holdings Inc.,
> Sirius XM Radio Inc., or their affiliated entities, for the provision

4

of satellite digital audio radio services who, during the relevant period of July 29, 2008 through the deadline for requesting exclusion from the Class: (1) paid the U.S. Music Royalty Fee; (2) own and activated additional radios ("multi-radio subscribers") and paid the increased monthly charge of $8.99 per additional radio; or (3) did not pay to access the content available on the 32 bkps or 64 bkps connections on the Internet but are now paying the Internet access monthly charge of $2.99.

Excluded from the Class are: (1) all persons or entities that make a timely election to be excluded from the Class; (2) Sirius XM and its legal representatives, officers, directors, assignees and successors; (3) governmental entities; and (4) the judges to whom this case is assigned and any immediate family members thereof.

2. **Settlement Consideration**. In full and final settlement of the claims of the Class, and in consideration for the release of the Released Claims, as defined below, the Plaintiffs on behalf of the Class and Defendant agree to the following terms and conditions:

a. The base prices for monthly, quarterly, semi-annual, annual and other long-term subscriptions for "mostly music, "news, sports and talk", "a la carte" and what are now known as the "select" and "select family friendly" packages (but were formerly known as "everything", "everything family friendly" or "family friendly" packages) (but excluding lifetime subscriptions) will remain at or below their current rates through December 31, 2011. Defendant will provide support, through declarations or other evidence, that it has contemplated and made plans for raising the prices of its subscription plans and other charges, including the multi-receiver discount, by $2 per month (without an offsetting reduction in other fees) after the price restriction imposed upon it by the Federal Communications Commission expires on July 28, 2011. Defendant estimates that the value to the Class of not implementing such a rate increase between August 1, 2011 and December 31, 2011 is approximately $180 million.

b. The price for subscriptions (beyond the initial subscription) purchased by multi-radio subscribers will remain at or below the current rate through December 31, 2011.

c. The price for Internet streaming for subscribers with basic subscriptions will remain at or below $2.99 per month through December 31, 2011.

d. Defendant will not increase the subscription prices for its "Best of" packages (now known as the "premier" and "premier family friendly" packages) prior to December 31, 2011.

e.      The U.S. Music Royalty Fee will remain at or below its current rate through December 31, 2011.

f.      Subscribers will, irrespective of whether their subscription plans come up for renewal prior to December 31, 2011, be permitted to renew their subscriptions prior to December 31, 2011 at the rates currently in effect and be able to subscribe, at the rates existing through December 31, 2011, to a monthly, quarterly, semi-annual, annual or other then-existing long-term subscription plan (but excluding lifetime subscriptions) which will keep their rates at then-existing subscription levels through the entire period of their new subscription term.

g.      Defendant will permit former subscribers who terminated their Sirius XM service between July 29, 2009 through the deadline for requesting exclusion from the Class to either (a) reconnect their satellite radio without paying a reactivation fee and receive one month of basic satellite radio service at no cost; or (b) receive the Sirius XM Internet streaming service for one month at no cost.

**3.**     **<u>Reasonable Best Efforts to Effectuate This Settlement</u>**.  Counsel for all of the undersigned parties in this litigation agree to recommend approval of this Agreement by the Court and to undertake commercially reasonable efforts, including undertaking all steps and efforts contemplated by this Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement.

**4.**     **<u>Motion for Preliminary Approval of the Settlement</u>**.

a.      Promptly following each party's execution of this Agreement, but in all events no later than May 13, 2011, Plaintiffs shall file with the Court a motion for entry of an order substantially in the form annexed hereto as Exhibit A for preliminary approval of the Settlement as fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23; for approval of the forms of Class notice and the manner of providing same to the members of the Class; and to set a date for a hearing on final approval of the Settlement and on Class Counsel's application for an award of attorneys' fees and expenses.  No later than 48 hours prior to submission of such motion Class Counsel will provide Defendant's counsel with an advance draft copy of the papers.

b.      In the event that the Court preliminarily approves the Settlement, Defendant will provide notice to the Class of this Settlement as directed by the Court, and pay all costs associated with the giving of notice of this Settlement to the Class, and any other costs associated with administration of the Settlement notice.

5.      **Motion for Final Approval and Entry of Final Judgment**.

a.      If the Court preliminarily approves the Settlement, Plaintiffs shall submit a motion for final approval by the Court, and shall seek entry of an order and final judgment, substantially in the form of Exhibit B annexed hereto, within 49 days of commencement of notice to potential class members:

  (1) finding the Settlement fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

  (2) directing that the action be dismissed with prejudice and, except as provided for herein, without costs; and

  (3) reserving in the Court exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Settlement.

b.      Seven (7) days prior to submission of the motion for final approval of this Agreement, Class Counsel will provide Defendant's counsel with an advance draft copy of the papers.

c.      Defendant shall take all steps necessary to provide notice of this proposed settlement to appropriate state and federal officials pursuant to 28 U.S.C. 1715, and neither party shall request that an order giving final approval of the proposed settlement be issued prior to the expiration of the time set forth in 28 U.S.C. 1715(d).

6.      **Finality of Settlement.**  This Settlement shall become final upon the occurrence of all of the following:

a.      The Settlement is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

b.      An order and final judgment of dismissal with prejudice is entered against Plaintiffs and the members of the Class who have not timely excluded themselves; and

c.      The time for appeal from the order and final judgment as described in b. hereof has expired or, if appealed or the subject of a further petition, either such appeal or petition shall have been dismissed prior to resolution by, or the order and final judgment shall have been affirmed in its entirety by, the Court of last resort to which such appeal has been taken or petition submitted and such affirmance has become no longer subject to further appeal or review; *provided* that a modification or reversal on appeal or review of any amount of Class Counsel's fees and expenses awarded by the Court shall not prevent this Settlement from becoming final if all other aspects of the final judgment have been affirmed; and *provided further* that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining when the judgment becomes final.

7.      **Plaintiffs' Attorneys' Fees and Expenses.**

a.      Prior to the final approval hearing, Class Counsel intend to apply to the Court for an award of Plaintiffs' counsel's attorneys' fees and expenses.  Defendant will pay, subject to the Court's approval, up to $13,000,000, plus interest accrued at the rate of .050% from the date of entry of the Court's Preliminary Approval Order, to Class Counsel for attorneys' fees and expenses.  Defendant will take no position on an application by Plaintiffs' counsel for an award of fees and expenses that is equal to or less than this amount.  Defendant shall not be liable for any fees or expenses of any Plaintiffs or Class members beyond such amount.  Class Counsel shall allocate the attorneys' fees among all law firms representing Plaintiffs in this action in a manner which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the action.

b.      Within 10 days after the later of an order of final approval of the Settlement or an order awarding any fees and expenses pursuant to this Agreement, Defendant shall deposit $13,000,000 (or, if less, any amount awarded as fees and expenses), plus interest accrued at the rate of .050% from the date of entry of the Court's Preliminary Approval Order, as calculated pursuant to subsection 7a., above, in an acceptable interest-bearing, third-party escrow account designated by Plaintiffs which shall be drawn upon once the Settlement and the award of fees and expenses receive final, non-appealable and non-reviewable approval as provided in Section 6, above, or shall be returned to Defendant if the Settlement is terminated as provided in Section 9 below.  The escrow account shall be structured by Plaintiffs such that it will qualify as a "qualified settlement fund," as the term is defined in Treasury Regulation §1.468B-1, promulgated under Section 468B of the Internal Revenue Code of 1986, as amended.  Upon or after entry of the Order awarding such attorneys' fees and expenses, one or more of Class Counsel may elect to receive, and shall be paid from the escrow account, its share of any attorneys' fees and expenses as are awarded by the Court (its share being agreed upon by and between all of the Class Counsel), notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to the obligation of such Class Counsel receiving such payments to refund to Defendant all such attorneys' fees, plus interest at the same rate as was earned in the escrow account, within ten (10) days after receiving notice from counsel for Defendant or from any court that (a) as a result of any appeal, further proceeding on remand, successful collateral attack and/or otherwise the awarding of fees and expenses is reduced or reversed or the award order does not or cannot become final, or (b) the Settlement is terminated by any party as provided in Section 9 below.  As a condition of receiving such fees and expenses, any Class Counsel

9

receiving any payments pursuant to this subsection: (i) agree that they are responsible to make such refund, (ii) agree to provide a personal guarantee for such refund by principals of Plaintiffs' law firms, or at their choice to provide other collateral satisfactory to Defendant to secure repayment, and (iii) agree to be subject to the jurisdiction of the Court for the purposes of enforcing the provisions of this paragraph. Upon the Settlement and the award of fees and expenses receiving final, non-appealable and non-reviewable approval as provided in Section 6 above, the escrow account shall be closed and the amount awarded as fees and expenses, together with any interest earned thereon and less any advanced payments, shall be paid to Class Counsel, and any remaining amount shall be returned to Defendant.

c.     Class Counsel shall be solely responsible for filing or directing the filing of all informational and other tax returns required to report any taxable and/or net taxable income earned by the escrow account. Class Counsel shall be solely responsible for directing the escrow agent to make any tax payments, including interests and penalties due, if any, on income earned by the escrow account. Except for Defendant's obligation to provide to Class Counsel the statement described in Treasury Regulation § 1.468B-3(e), Defendant shall have no responsibility to make any tax filings relating to this Agreement or the escrow account, and shall have no responsibility to pay taxes on any income earned by the escrow account, or to pay any taxes with respect thereto unless the Settlement is not consummated and the amount in the escrow account is returned to Defendant. If for any reason, for any period of time, Defendant is required to pay taxes on income earned by the escrow account, the escrow agent shall, upon written instructions from Defendant with notice to Class Counsel, timely pay to Defendant sufficient funds to enable it to pay all taxes (state, federal, or other) that Defendant is required to pay on income earned by any amount in the escrow account.

d.      The parties to this Agreement and their counsel shall treat, and shall cause the escrow agent to treat, the escrow account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The parties, their counsel, and the escrow agent agree that they will not ask the Court to take any action inconsistent with the treatment of the escrow account in such manner.  The parties hereto agree that the escrow account shall be treated as a qualified settlement fund from the earliest date possible, and agree to any relation-back election required to treat the escrow account as a qualified settlement fund from the earliest date possible.  All provisions of this Agreement shall be interpreted in a manner that is consistent with the escrow account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

e.      Defendant shall not have any responsibility, financial obligation, or liability whatever with respect to the investment, distribution, use, or administration of the escrow account or any of the funds in the escrow account.

**8.      Releases**.

a.      In addition to the effect of any Order and Final Judgment entered in accordance with this Settlement, upon this Settlement becoming final, Plaintiffs and any Class Members who have not timely excluded themselves from this action (collectively, the "Releasing Parties"), whether or not they object to the Settlement, shall release and forever discharge Defendant, its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns (collectively, the "Released Parties") from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature

11

whatsoever, whether class, individual or otherwise in nature, including costs, expenses, penalties

and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any

Releasing Party ever had, now has or hereafter can, shall or may have, arising out of, based on or

relating to the merger that formed Sirius XM Radio Inc., including, without limitation, claims

which have been asserted or could have been asserted in this action which arise under, are based

on, or relate to any federal or state antitrust, unfair competition, unfair practices, consumer

protection, misrepresentation, or other law or regulation, or common law, including, without

limitation, the Sherman Antitrust Act, 15 U.S.C § 1 et seq., and the Clayton Antitrust Act, 15

U.S.C. § 12 et seq.  Plaintiffs shall further release the Released Parties from any claim arising out

of, based on, or related to all conduct alleged or that could have been alleged in the Second

Consolidated Amended Class Action Complaint and all previous Complaints filed in this action.

Each Releasing Party hereby covenants and agrees that it shall not, hereafter, seek to establish

liability against any of the Released Parties based, in whole or in part, upon any of the claims

released herein.

     b.     Upon the Settlement becoming final, all Class Members who have not timely

excluded themselves from this action shall be deemed to have waived any and all provisions,

rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  <u>General Release;</u> extent.  A general release does not
> extend to claims which the creditor does not know or suspect to
> exist in his or her favor at the time of executing the release, which
> if known by him or her must have materially affected his
> settlement with the debtor;

or by any law of any state or territory of the United States or any other principle of common law,

which is similar, comparable, or equivalent to § 1542 of the California Civil Code.  Each Class

member may hereafter discover facts other than or different from those which he, she, or it

knows or believes to be true with respect to the claims which are the subject matter of this

paragraph, but each Class member hereby expressly waives and fully, finally, and forever settles and releases, upon the Settlement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

c.      Upon the Settlement becoming final, Defendant, on behalf of itself and its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such, shall release Plaintiffs and their past, present or future agents, attorneys, employees, legal representatives, trustees, parents, heirs, executors, administrators, predecessors, successors and assigns, from all claims, demands, actions, suits, causes of action, or liabilities of any nature whatsoever, in law or in equity, that Defendant ever had, now has, or hereafter can, shall or may have, to the extent arising out of or relating to this action (the "Defendant's Released Claims").

d.      The Parties intend that there will be an entry of judgment respecting all claims that are or could have been brought regarding the claims in this action consistent with the broadest principles of res judicata.

**9.      Effect of Disapproval**.  If the Court declines to finally approve the Settlement, or if the Court does not enter the final judgment in substantially the form provided for herein, or if the Court enters the final judgment and appellate or other discretionary review is sought, and on such review, such final judgment is reversed, vacated or materially modified, or if the Settlement for any other reason does not become final in accordance with the terms herein, then the

Settlement shall be terminated upon the election of all of the Plaintiffs or the Defendant, each acting through their undersigned counsel; *provided* that any reversal, vacatur or modification on appeal or other form of review of any amount of Class Counsel's fees and expenses awarded by the Court, or any determination by the Court to award less than the amount requested in attorneys' fees or costs to Class Counsel, shall not give rise to any right of termination or otherwise serve as a basis for termination of this Settlement.

10. **Termination**.  In the event that the Settlement is terminated pursuant to the foregoing paragraph, then (a) this Agreement (other than the provision in subsection 7.5. above, requiring the return of fees and expenses to Defendant) shall be of no force or effect, and (b) any release contained herein shall be of no force or effect.

11. **Preservation of Rights**.  The parties hereto agree that this Agreement, whether or not it shall become final pursuant to its terms, and any and all negotiations, documents and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability, wrongdoing or injury by the Defendant, or of the truth of any of the claims or allegations contained in any complaint or any other pleading or document, and evidence thereof shall not be discoverable, admissible or otherwise used directly or indirectly, in any way by Plaintiffs or Defendant, whether in this action or in any other action or proceeding.  The parties expressly reserve all of their rights and defenses if the Settlement does not become final.

12. **Binding Effect**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto, including the members of the Class who do not timely request to be excluded, and of the Released Parties.  Without limiting the generality of

the foregoing, each and every covenant and agreement herein by the Plaintiffs and Class Counsel shall be binding upon all members of the Class.

13. **Integrated Agreement**. This Agreement (including all exhibits hereto and other documents explicitly referenced herein) contains the entire, complete, and integrated statement of each and every term and provision of the Settlement. This Agreement shall not be modified in any respect except by a writing executed by the undersigned in the representative capacities specified, or others who are authorized to act in such representative capacities.

14. **Headings**. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

15. **No Party is the Drafter**. Counsel to all parties hereto have materially participated in the drafting of this Agreement. None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

16. **Choice of Law**. All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

17. **Consent to Jurisdiction**. Defendant, Plaintiffs and each member of the Class hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions herein, except that this paragraph shall not prohibit (a) the assertion in the forum in which a claim is brought that the release herein is a defense, in whole or in part, to such

claim, or (b) in the event that such a defense is asserted in that forum, the determination of its merits in that forum.

18. **Enforcement of Settlement**.  Notwithstanding any other provision of this Agreement, this Agreement and the releases contained herein may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

19. **Authorization To Act On Behalf Of Plaintiffs And Class**.  The undersigned Class Counsel to Plaintiffs represent that they have been and are fully authorized to conduct settlement negotiations with Defendant's counsel on behalf of Plaintiffs and the Class and to enter into, and execute, this Agreement on behalf of Plaintiffs and the Class, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).

20. **No Admission**.  Nothing in this Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, by Defendant or Plaintiffs, or any of them, including without limitation that Defendant has engaged in any conduct or practices that violate any antitrust statute or other law.

21. **Execution in Counterparts**.  This Agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this agreement and filed with the Court.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Agreement of the date first herein above written.

**GRANT & EISENHOFER P.A.**

By: _____
    James J. Sabella
    485 Lexington Avenue
    New York, NY 10017
    646-722-8500

**MILBERG LLP**

By: _____
    Paul Novak
    One Pennsylvania Plaza
    New York, NY 10119
    212-594-5300

**COOK, HALL & LAMPROS, LLP**

By: _____
    Edward Cook
    Promenade Two, Suite 3700
    1230 Peachtree Street, N.E.
    Atlanta, GA 30309
    404 876-8100

*Class Counsel, and on behalf of Carl Blessing,*
*Edward A. Scerbo, John Cronin, Brian*
*Balaguera, Scott Byrd, Glenn Demott, James*
*Hewitt, Todd Hill, Curtis Jones, Ronald William*
*Kader, Edward Leyba, Greg Lucas, Joshua*
*Nathan, James Sacchetta, David Salyer, Susie*
*Stanaj, Janel and Kevin Stanfield, Paul*
*Stasiukevicius, and Paola Tomassini*

**JONES DAY**

By: _____
    John M. Majoras
    51 Louisiana Avenue, N.W.
    Washington, DC 2001-2113
    (202) 879-3939

*Counsel for Defendant, Sirius XM Radio Inc.*

17

**GRANT & EISENHOFER P.A.**

By: _____
      James J. Sabella
      485 Lexington Avenue
      New York, NY 10017
      646-722-8500

**MILBERG LLP**

By: _____
      Paul Novak
      One Pennsylvania Plaza
      New York, NY 10119
      212-594-5300

**COOK, HALL & LAMPROS, LLP**

By: _____
      Edward Cook
      Promenade Two, Suite 3700
      1230 Peachtree Street, N.E.
      Atlanta, GA 30309
      404 876-8100

*Class Counsel, and on behalf of Carl Blessing,
Edward A. Scerbo, John Cronin, Brian
Balaguera, Scott Byrd, Glenn Demott, James
Hewitt, Todd Hill, Curtis Jones, Ronald William
Kader, Edward Leyba, Greg Lucas, Joshua
Nathan, James Sacchetta, David Salyer, Susie
Stanaj, Janel and Kevin Stanfield, Paul
Stasiukevicius, and Paola Tomassini*

**JONES DAY**

By: _____
      John M. Majoras
      51 Louisiana Avenue, N.W.
      Washington, DC  2001-2113
      (202) 879-3939

*Counsel for Defendant, Sirius XM Radio Inc.*

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL BLESSING, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                 Plaintiffs,<br><br>    -against-<br><br>SIRIUS XM RADIO INC.,<br><br>                 Defendant. | No. 09-cv-10035 (HB)(RLE) |

**ORDER GRANTING PLAINTIFFS' MOTION (1) FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, (2) FOR APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS, AND (3) TO SCHEDULE A HEARING ON FINAL APPROVAL OF THE SETTLEMENT AND ON CLASS COUNSEL'S <u>APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES</u>**

WHEREAS, Plaintiffs Carl Blessing, Edward A. Scerbo, John Cronin, Brian Balaguera, Scott Byrd, Glenn Demott, James Hewitt, Todd Hill, Curtis Jones, Ronald William Kader, Edward Leyba, Greg Lucas, Joshua Nathan, James Sacchetta, David Salyer, Susie Stanaj, Janel and Kevin Stanfield, Paul Stasiukevicius, and Paola Tomassini ("Plaintiffs") have entered into a Settlement Agreement, dated May 12, 2011 (the "Agreement") with Defendant Sirius XM Radio Inc. ("Defendant") to settle this action (the "Action") on the terms and conditions set forth therein; and

WHEREAS, on March 29, 2011, the Court issued an Opinion and Order that certified the federal antitrust damage claims for class action adjudication on behalf of a class (the "Class") consisting of:

> All persons or entities who reside in the United States and who contracted with Sirius Satellite Radio, Inc., XM Satellite Radio Holdings, Inc., Sirius XM Radio Inc., or their affiliated entities, for the provision of satellite digital radio services

1

who during the relevant period of July 29, 2008 through the present: (1) paid the U.S. Music Royalty Fee; (2) own and activated additional radios ("multi-radio subscribers") and paid the increased monthly charge of $8.99 per additional radio; or (3) did not pay to access the content available on the 32 bkps or 64 bkps connections on the Internet but are now paying the Internet access monthly charge of $2.99;[1]

and

WHEREAS, the Court's March 29, 2011 Opinion and Order appointed Plaintiffs as Class representatives and appointed Grant & Eisenhofer P.A., Milberg LLP and Cook, Hall & Lampros, LLP as Class Counsel; and

WHEREAS, Plaintiffs have moved pursuant to Fed. R. Civ. P. 23 for (i) preliminary approval of the Settlement of this Action; (ii) approval of the form and manner of notice to Class Members; and (iii) the scheduling of a hearing on final approval of the Settlement and on Class Counsel's motion for attorneys' fees and reimbursement of litigation expenses (the "Motion"); and

WHEREAS, the Court has considered all of the papers and arguments of counsel in connection with the Motion; and

WHEREAS, the Court finds, upon a preliminary evaluation, that the Members of the Class should be apprised of the proposed Settlement, allowed to file objections thereto and to appear at the Settlement Hearing, or alternatively, be afforded a reasonable opportunity to exclude themselves from the Settlement; and

WHEREAS, the Court finds that the form and content of the notices attached as Exhibits 1-4 hereto, and the methods and schedule set forth herein for giving notice, are reasonable and

---

[1] Excluded from the Class are: (1) all persons or entities that make a timely election to be excluded from the proposed Class; (2) Sirius XM and its legal representatives, officers, directors, assignees and successors; (3) governmental entities; and (4) the judges to whom this case is assigned and any immediate family members thereof.

constitute due and sufficient notice to all persons entitled to it.  These forms and methods

constitute the best notice practicable under the circumstances, satisfy the requirements of due

process, and fully comply with the requirements of Federal Rule of Civil Procedure 23(c)(2); and

WHEREAS, unless otherwise stated herein, all defined terms contained herein shall have

the same meanings set forth in the Agreement;

NOW THEREFORE, IT IS HEREBY ORDERED:

1.     **Settlement Hearing** – A hearing (the "Settlement Hearing") shall be held on

August_____, 2011 at _____ before the Honorable Harold Baer, Jr. in the United

States District Court for the Southern District of New York, United States Courthouse, 500 Pearl

Street, New York, New York, 10007.  The purpose of the Settlement Hearing will be to

determine whether the proposed Settlement on the terms and conditions provided for in the

Agreement is fair, reasonable, and adequate to the Class and should be approved by the Court;

whether the Judgment as provided in the Agreement should be entered herein; and whether Class

Counsel's application for attorneys' fees and expenses should be granted.

2.     **Approval of Form and Content of Notice** – The Court approves the form,

content, and requirements of the Long Form Notice, the Postcard Notice, the E-Mail Notice, and

the Publication Notice attached hereto as Exhibits 1 – 4, respectively.

3.     **Retention of Notice Administrator** – The Court approves the appointment of

Rust Consulting, Inc. and its wholly owned subsidiary, Kinsella Media LLC, as the Notice

Administrator and finds that this Notice Administrator is competent and has no conflicts of

interest in serving as the Notice Administrator in this case.

3

4.  **Manner of Providing Notice** –

      a.      The Notice Administrator shall cause the E-Mail Notice in the forms annexed hereto to be sent via e-mail to all Class Members for whom Defendant has provided an e-mail address on a rolling basis and not later than nineteen (19) days from entry of this Order. With respect to those Class Members whose Class Notice by email is returned to the Notice Administrator as undeliverable, the Notice Administrator shall promptly verify that the email address used was that provided in the data provided by Defendant and resend the email at least two additional times. Alternatively, if a mailing address is available, the Notice Administrator shall send Class Notice by first class mail, postage prepaid, to any Class Member whose Class Notice by email is returned to the Notice Administrator as undeliverable.

      b.      The Notice Administrator shall cause the Postcard Notice, in the forms annexed hereto, to be mailed, by first class mail, postage prepaid, to all Class Members for whom Defendant has not provided an e-mail address but has provided a postal mailing address not later than ten (10) days from entry of this Order. An advertised version, in the form of the Publication Notice, shall also be published, not later than eighteen (18) days from entry of this Order, twice in *USA Today* and once in the *Wall Street Journal*.

      c.      Not later than three (3) days from entry of this Order, the Notice Administrator shall cause a copy of the Long Form Notice to be posted on a website for this lawsuit constructed and maintained by the Notice Administrator from which Class Members may print copies of the Notice. A version of the Long Form Notice translated into Spanish by a reputable translation service shall also be posted on the website in Spanish.

5.  **Exclusion From the Class** – A Class Member wishing to request exclusion from the Class shall mail the request in written form by first class mail to the address identified in the

Long Form Notice, postmarked no later than the Opt Out Exclusion Deadline, which shall be forty five (45) days after issuance of this Order. Such request for exclusion shall clearly indicate the name, address and telephone number of the person seeking exclusion, that the sender requests to be excluded from the Class in *Blessing v. Sirius XM Radio Inc.*, No. 09-CV-10035 HB (S.D.N.Y.), and be signed by such person. The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court.

6. **<u>Appearance and Objections at Fairness Hearing</u>** – Any Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice, in which case such counsel for any such Class Member must file with the Clerk of Court and deliver to Class Counsel and the Defendant's Counsel a notice of appearance such that it is received by _____, 2011, or as the Court may otherwise direct. Any Class Member who does not enter an appearance will be represented by Class Counsel. Any Class member may appear and show cause, if he, she or it has any such cause, why the proposed Settlement of the Action should or should not be approved as fair, reasonable and adequate, or why a Judgment should or should not be entered thereon; provided, however, that no Class Member or any other person or entity shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, or, if approved, the Final Judgment to be entered thereon approving the same, unless that person or entity has filed written objections and copies of any such papers and briefs with the Clerk of the Court for the United States District Court for the Southern District of New York, on or before _____, 2011, and unless copies of such written objection papers and briefs are received by each of the following:

Class Counsel:

James J. Sabella
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY  10017

Paul Novak
MILBERG LLP
One Pennsylvania Plaza
New York, NY  10019

Christopher B. Hall
COOK, HALL & LAMPROS, LLP
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, GA 30309

Defendant's Counsel:

Todd R. Geremia
JONES DAY
22 East 41st Street
New York, NY 10017

The objections and/or briefs filed by the objecting Class Member must contain a statement of his, her or its objection that the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of his, her or its objection.  Any Class Member who does not make his, her or its objection in the manner provided herein shall be deemed to have waived such objection and shall be forever barred and foreclosed from making any objection to the fairness, reasonableness or adequacy of the proposed Settlement, or to the approval of Class Counsel's application for attorneys' fees and expenses.

7.    **Report to the Court** – Class Counsel shall file with the Court proof of publication, e-mailing, and mailing of the Summary Notice promptly after the completion of such distribution and publication of the Summary Notice.  No later than three (3) days following

the Opt Out Exclusion Deadline, Class Counsel shall file with the Court a list of all persons who have requested exclusion from the Class. At the request of Defendant's counsel, Class Counsel shall provide, within two (2) business days following such request, interim reports identifying the number of requests for exclusion received from Class Members to date.

8.     **Expenses for Notice and Administration** – All costs incurred in identifying and notifying Class Members, as well as in administering the Settlement, shall be paid as set forth in the Agreement.

9.     **Attorneys' Fees and Expenses** – At or after the Settlement Hearing, the Court shall determine whether any application for reimbursement of Class Counsel's and other Plaintiffs' counsel's fees and expenses shall be approved. Any amount awarded by the Court shall be paid as set forth in the Agreement. Such matters will be considered separately from the fairness, reasonableness and adequacy of the Settlement.

10.     **Continuance of Hearing** – The Court reserves the right to adjourn the date of the Settlement Hearing without further notice to Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the parties to the Agreement, if appropriate, without further notice to the Class.

11.     **Termination of Settlement** – This Order shall become null and void, and be without prejudice to the rights of Plaintiffs, the Class Members, and the Defendant, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if: (i) the proposed Settlement is not finally approved by the Court; or (ii) the proposed Settlement is terminated pursuant to the terms of the Agreement. In such events, the Agreement shall become null and void and of no further force and effect.

7

12.    **Use of Order** – This Order shall not be construed or used as an admission, concession or declaration by or against the Defendant of any fault, wrongdoing, breach, or liability, nor shall the Order be construed or used as an admission, concession or declaration by or against Plaintiffs, or the Class Members, that their claims lack merit, that their damages are in any way limited, or that the relief requested in the Action is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have.

Dated:    _____        SO ORDERED:


_____
**HONORABLE HAROLD BAER, Jr.**
**UNITED STATES DISTRICT JUDGE**

Exhibit 1

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# If You Subscribed to Sirius, XM, or Sirius XM Radio at Anytime from July 28, 2008 to Month 00, 2011 [deadline for requesting exclusion from the Class], You Could Benefit From a Class Action Settlement.

*A court authorized this notice. This is not a solicitation from a lawyer.*

- There is a class action lawsuit (*Blessing v. Sirius XM Radio Inc.*) against Sirius XM concerning the July 29, 2008 merger that created Sirius XM. The lawsuit claims this merger violated federal antitrust laws and that Sirius XM raised its prices as a result of the merger. Sirius XM denies it did anything wrong.

- The Settlement includes individuals who subscribed to Sirius, XM, or Sirius XM satellite radio at any time between July 28, 2008 and **Month 00**, 2011 **[deadline for requesting exclusion from the Class]**.

- As part of the Settlement, Sirius XM has agreed not to raise prices through the end of 2011. Former subscribers can re-subscribe with a month's free service (see Questions 8 and 9).

**Your legal rights are affected even if you do nothing. Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **GET BENEFITS** | Current subscribers scheduled to renew their plans before December 31, 2011 do not need to do anything. Current subscribers scheduled to renew after December 31, 2011 and who want to restart their long term plan at current rates should go to www.siriusxm.com/Question. Former subscribers who want to reconnect their satellite radio and receive one month of basic service at no cost or receive one month of Internet streaming service at no cost should go to www.siriusxm.com/Question after approval of the Settlement. |
| **ASK TO BE EXCLUDED BY [INSERT DATE]** | If you ask to be excluded from this lawsuit, you won't share in benefits. But, you will keep any rights to sue Sirius XM on your own about the legal claims in this lawsuit, and you will not be bound by any orders or judgments entered by the Court in this case. *See* the answer to Question 14 below. |
| **OBJECT BY [INSERT DATE]** | Tell the Court if you do not like the Settlement. |
| **DO NOTHING** | Participate in the Settlement and get benefits as explained above. Give up your rights to sue Sirius XM concerning the merger that formed Sirius XM. |

- These rights and options--**and the deadlines to exercise them**--are explained in this notice.

- The Court presiding over this case still has to decide whether to approve the Settlement with Sirius XM.

**QUESTIONS? CALL TOLL-FREE 1-800-000-0000 OR VISIT WWW.SATELLITERADIOSUIT.COM**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ...............................................................**PAGE 3**
1. Why was this Notice issued?
2. What is this lawsuit about?
3. Why is this lawsuit a class action?
4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?** .................................................**PAGE 4**
5. How do I know if I am part of the Settlement?
6. Are there exceptions to being included in the Settlement?
7. What if I am not sure whether I am included in the Settlement?

**THE SETTLEMENT BENEFITS**......................................................**PAGE 5**
8. What does the Settlement provide to current subscribers?
9. What does the Settlement provide to former subscribers?

**HOW TO GET BENEFITS**.............................................................**PAGE 5**
10. How do I get benefits?
11. What am I giving up as part of the Settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .......................**PAGE 6**
11. If I exclude myself, can I benefit from this Settlement?
12. If I don't exclude myself, can I sue Sirius XM for the same thing later?
13. How do I exclude myself from the Settlement?

**THE LAWYERS REPRESENTING YOU** ...........................................**PAGE 7**
14. Do I have a lawyer in this case?
15. How will the lawyers be paid?

**OBJECTING TO OR COMMENTING ON THE SETTLEMENT** ..............**PAGE 7**
16. How do I tell the Court that I do not like the settlement with Sirius XM?
17. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** ............................................**PAGE 8**
18. When and where will the Court decide whether to approve the Settlement?
19. Do I have to come to the hearing?
20. May I speak at the fairness hearing?

**IF YOU DO NOTHING** ................................................................**PAGE 9**
21. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..................................................**PAGE 9**
22. How do I get more information about the Settlement?

# BASIC INFORMATION

| 1.  Why was this Notice issued? |
|---|

A Court authorized this notice because you have a right to know about the proposed Settlement in this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the Settlement.  This notice explains the legal rights and options that you may exercise before the Court decides whether to approve the Settlement with Sirius XM.

The Honorable Harold Baer, Jr., United States District Judge in the United States District Court for the Southern District of New York, is presiding over this case.  The case is known as *Blessing v. Sirius XM Radio Inc.*, No 09-CV-10035 HB (S.D.N.Y.).  The people who sued are called the Plaintiffs.  Sirius XM Radio Inc. ("Sirius XM") is the Defendant.

| 2.  What is this lawsuit about? |
|---|

The lawsuit claims that the July 28, 2008 merger of a subsidiary of Sirius Satellite Radio Inc. with XM Satellite Radio Holdings Inc. violated federal antitrust laws.  Specifically, the Class claims that, as a result of the merger, Sirius XM increased prices by: (1) charging a U.S. Music Royalty Fee for as much as $1.98 per month, (2) increasing the charge for additional radios from $6.99 to $8.99 per month, and (3) charging a $2.99 per month charge for Internet streaming.  The Class had asked the Court to award the Class damages (or money), plus interest, attorney's fees, and costs.

The Class claims that Sirius XM violated federal antitrust laws, specifically Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18, and Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.  These are called the "Class Claims" in this notice.

Sirius XM denies that it did anything wrong.  Sirius XM denies that the merger was anticompetitive and that the price increases that are the basis for Plaintiffs' claims violated the federal antitrust laws.

| 3.  Why is this lawsuit a class action? |
|---|

In a class action, one or more people called "Class Representatives" sue on behalf of all people who have similar claims.  Such people together are the "Class" or "Class Members."  In this case, the Class Representatives are Carl Blessing, Edward A. Scerbo, John Cronin, Brian Balaguera, Scott Byrd, Glenn Demott, James Hewitt, Todd Hill, Curtis Jones, Ronald William Kader, Edward Leyba, Greg Lucas, Joshua Nathan, James Sacchetta, David Salyer, Susie Stanaj, Janel and Kevin Stanfield, Paul Stasiukevicius, and Paola Tomassini. In a class action lawsuit, one action resolves the issues for everyone in the Class, except for those people who choose to exclude themselves from the Class, as described in the answer to Question 14 below.

**4.  Why is there a Settlement?**

The Court did not decide whether Sirius XM violated the federal antitrust laws.  Instead, both sides have agreed to a Settlement.  The Settlement does not mean that any law was broken or that Sirius XM did anything wrong.  The Class Representatives and their lawyers think the settlement is best for all Class members.

## WHO IS IN THE SETTLEMENT?

You need to decide whether you are included in the Settlement.

**5.  How do I know if I'm included in the Settlement?**

The Settlement includes:

> *All persons or entities who reside in the United States who contracted with Sirius Satellite Radio Inc., XM Satellite Radio Inc., XM Satellite Radio Holdings Inc., Sirius XM Radio Inc. or their affiliated entities for the provision of satellite digital audio radio services who, during the relevant period of July 29, 2008 through **Month 00**, 2011 [deadline for requesting exclusion from the class]: (1) paid the U.S. Music Royalty Fee; (2) own and activated additional radios ("multi-radio subscribers") and paid the increased monthly charge of $8.99 per additional radio; or (3) did not pay to access the content available on the 32 bkps or 64 bkps connections on the Internet but are now paying the Internet access monthly charge of $2.99.*

**6.  Who is not included in the Settlement?**

The Settlement does not include: (1) persons who exclude themselves from the Settlement (*see* answer to Question 14 below); (2) Sirius XM and its legal representatives, officers, directors, assignees, and successors; (3) governmental entities; and (4) the judges to whom this case is assigned and their immediate family members.

**7.  What if I am not sure whether I am included in the Settlement?**

If you are not sure whether you are included in the Settlement, you may get free help by calling or writing to the lawyers for the Class in this case at the telephone numbers or addresses listed in the answer to Question 15 below.

# THE SETTLEMENT BENEFITS

The estimated value to the Class of the Settlement is approximately $180 million. The Settlement does not provide for cash payments to Class members.

### 8. What does the Settlement provide to current subscribers?

Sirius XM had contemplated and made plans to raise the price of its subscription plans and other charges, including the multi-receiver discount, by $2 per month after July 28, 2011 (which is when the price restriction imposed upon Sirius XM by the Federal Communications Commission expires). However, as part of the Settlement, Sirius XM will agree to hold the base price at or below current rates through December 31, 2011 for monthly, quarterly, semi-annual, and other long-term subscriptions (but excluding lifetime subscriptions) for "mostly music," "news sports and talk," "a la carte," and what are now known as the "select" and "select family friendly" packages (but were formerly known as "everything," "everything family friendly" or "family friendly" packages).

Sirius XM has also agreed to keep the prices at or below current rates through December 31, 2011, for multi-radio subscriptions, Internet streaming, "Best of" plans (now known as the "premier" and "premier family friendly" packages), and the U.S. Music Royalty Fee.

Additionally, subscribers with long term plans (excluding lifetime subscriptions) will be permitted to lock in the current rates by renewing their subscriptions before December 31, 2011. This will keep rates at the existing subscription levels through the entire period of the new subscription term.

### 9. What does the Settlement provide to former subscribers?

Sirius XM has also agreed to allow former subscribers who cancelled their Sirius XM service between July 29, 2009 and **Month 00**, 2011 **[deadline for requesting exclusion from the Class]** to (a) reconnect their satellite radio without paying a reactivation fee and receive one month of basic satellite radio service at no cost; or (b) receive one month of Sirius XM Internet streaming service at no cost. To get these benefits former subscribers should go to www.siriusxm.com/Question after approval of the Settlement.

# HOW TO GET BENEFITS

### 10. How do I get benefits?

Current subscribers who are scheduled to renew their plans before December 31, 2011 do not need to do anything. Their plans will automatically renew at current prices. Current subscribers who are not scheduled to renew until after December 31, 2011 and who want to restart their long term plan before December 31, 2011 at current rates should go to www.siriusxm.com/Question. Former subscribers who want to reconnect their satellite radio and receive one month basic service at no

cost or receive one month of Internet streaming service at no cost should also go to www.siriusxm.com/Question after approval of the Settlement.

| 11.  What am I giving up as part of the Settlement? |
| --- |

If the Settlement becomes final, Class members will be releasing Sirius XM from all claims arising out of, based on, or relating to the merger that formed Sirius XM.  The released claims are described and identified in further detail in Section 8 of the Settlement Agreement.  The Settlement Agreement is available at www.SatelliteRadioSuit.com.  The Settlement Agreement describes the released claims in necessarily accurate legal terminology, so read it carefully.  You can talk to one of the lawyers listed in response to Question 15 as "Class Counsel" for free or you can, of course, talk to your own lawyer if you have questions about the released claims or what the release in the Settlement Agreement means.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to start your own lawsuit against Sirius XM over any claims arising out of, based on, or relating to the merger that formed Sirius XM, then you must take steps to get out of the Settlement.  This is called asking to be excluded from— also sometimes called "opting out" of—the Class.

| 12.  If I exclude myself, can I benefit from this Settlement? |
| --- |

If you ask to be excluded, you may not receive the pricing benefits being made available by the Settlement.  If you are a former subscriber, you will not receive the opportunity provided by the Settlement to reactivate your satellite radio and receive one month of basic service or one month of Internet streaming service at no cost.

| 13.  If I don't exclude myself, can I sue Sirius XM for the same thing later? |
| --- |

**No.**  Unless you exclude yourself, you will give up the right to sue Sirius XM yourself for the Class Claims and the released claims (*see* Question 11).  You must exclude yourself from *this* Class to start your own lawsuit against Sirius XM for the Class Claims or any claims arising out of, based on, or relating to the merger that formed Sirius XM.

If you exclude yourself so that you can start your own lawsuit against Sirius XM, you should talk to your own lawyer soon, because your claims are subject to a time limitation.

| 14.  How do I exclude myself from the Settlement? |
| --- |

To exclude yourself, send a letter that says you want to be excluded from the Settlement in *Blessing v. Sirius XM Radio Inc.* Include your name, address, and signature.  You must mail your Exclusion Request postmarked by **Month 00, 2011**, to:

Satellite Radio Exclusions

QUESTIONS? CALL TOLL-FREE 1-800-000-0000 OR VISIT WWW.SATELLITERADIOSUIT.COM

P.O. Box _____,
City, St 00000

**You cannot exclude yourself by telephone or e-mail**.  No request for exclusion will be considered valid unless it is made in a timely manner and in compliance with the procedure set out above.  The Court will automatically grant all timely requests for exclusion.

# THE LAWYERS REPRESENTING YOU

| **15.  Do I have a lawyer in this case?** |
|---|

Yes. The Court appointed the following law firms as "Class Counsel":

| GRANT & EISENHOFER, P.A. | MILBERG LLP | COOK, HALL, & LAMPROS, LLP |
|---|---|---|
| 485 Lexington Avenue<br>New York, NY 10017<br>Telephone: 646-722-8500<br>Fax: 646-722-8501 | One Penn Plaza<br>New York, NY 10119<br>Telephone: 212-594-5300<br>Fax: 212-868-1229 | Promenade Two, Suite 3700<br>1230 Peachtree Street, NE<br>Atlanta, GA 30309<br>Telephone: 404-876-8100<br>Fax: 404-876-3477 |

You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| **16.  How will the lawyers be paid?** |
|---|

Class Counsel will ask the Court for attorneys' fees and expenses of up to $13 million, plus interest, if the Settlement is approved.  If the Court grants Class Counsel's requests, the fees and expenses will be paid separately by Sirius XM.

# OBJECTING TO OR COMMENTING ON THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

| **17.  How do I tell the Court that I do not like the Settlement with Sirius XM?** |
|---|

If you are a Class Member (and have not excluded yourself), you can object to the Settlement if you do not like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.  To object, you must send a letter via First Class U.S. mail stating that you object to the proposed Settlement in *Blessing v. Sirius XM Radio Inc.*, Civil Action No 09-CV-10035 HB.  Be sure to include your name, address, telephone number, your signature, and the reasons you object to the Settlement (and any evidence in support of your objection).  Mail the objection to each of the following:

| CLASS COUNSEL | DEFENSE COUNSEL | COURT CLERK |
|---|---|---|
| James J. Sabella, Esq.<br>GRANT & EISENHOFER,<br>P.A.<br>485 Lexington Avenue<br>New York, NY 10017 | Todd Geremia, Esq.<br>JONES DAY<br>22 East 41 Street<br>New York, NY 10017-6702 | Clerk of the United States<br>District Court for the Southern<br>District of New York<br>500 Pearl Street<br>New York, NY 10007-1312 |

Your objection must be postmarked no later than **Month 00, 2011.**

**18. What is the difference between objecting and asking to be excluded?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you don't exclude yourself from the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement with Sirius XM. You may attend and you may ask to speak, but you do not have to.

**19. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at **time** on **Month 00, 2011**, in Courtroom 23B at the United States Courthouse for the Southern District of New York, 500 Pearl Street, New York, New York 10007-1312. At this hearing, the Court will consider whether the Settlement with Sirius XM is fair, reasonable, and adequate. If there are objections, the Court will consider them and will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**20. Do I have to attend the hearing?**

No. Class Counsel (*see* answer to Question 15 above) will answer any questions that the Court may have regarding the terms of the Settlement. But, you or your own lawyer are welcome to attend at your expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also have your own lawyer attend, but it is not necessary.

**21. May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter via First Class U.S. mail stating that it is your "Notice of Intention to Appear in *Blessing v. Sirius XM Radio Inc.*, Civil Action No 09-CV-10035 HB." Be sure to include your name,

address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than **Month 00, 2011**, and must be sent to the Clerk of the Court, Class Counsel, and Defense counsel at the addresses set forth in the response to Question 17. You cannot speak at the hearing if you excluded yourself as a Class Member.

# IF YOU DO NOTHING

**22. What happens if I do nothing at all?**

If you are a member of the Class as defined in the answer to Question 5 above and you do nothing, you will remain in the Class. You will keep the right to receive the benefits that will come from the proposed Settlement with Sirius XM. However, unless you exclude yourself, you won't be able to start a lawsuit, or be part of any other lawsuit against Sirius XM about the Class Claims or any claims arising out of, based on, or relating to the merger that formed Sirius XM.

# GETTING MORE INFORMATION

**23. How do I get more information?**

This notice summarizes the proposed Settlement. If you have any questions concerning the matters contained in this Notice, you can get more information at www.SatelliteRadioSuit.com, by calling toll free at 1-800-000-0000, or by writing to Satellite Radio Class Action, P.O. Box 0000, City, ST 00000.

**PLEASE DO NOT WRITE OR CALL THE COURT OR THE CLERK'S OFFICE FOR
INFORMATION ABOUT THIS LAWSUIT**

Dated: May ___, 2011

BY ORDER OF THE COURT
Honorable Harold Baer, Jr.
United States District Judge

Exhibit 2

# If You Subscribed to Sirius, XM, or Sirius XM Radio
## You Could Get Benefits From a Class Action Settlement

Read this message carefully. Records show you subscribed to Sirius XM Radio. We are sending this notice to tell you about the proposed Settlement of a class action that may affect your legal rights. There is a class action lawsuit (*Blessing v. Sirius XM Radio Inc*.) against Sirius XM concerning the July 29, 2008 merger that created Sirius XM. The lawsuit claims this merger violated federal antitrust laws and that Sirius XM raised its prices as a result of the merger. Sirius XM denies it did anything wrong.

**Who's Included?** You are included in the Class if you were a Sirius, XM, or Sirius XM subscriber anytime from **July 29, 2008 to Month 00, 2011** and you paid: (1) the U.S. Music Royalty Fee; or (2) a monthly multi-radio charge of $8.99; or (3) a $2.99 monthly Internet access charge if you previously did not pay to access Sirius XM's content over the Internet.

**What Does the Settlement Provide?** Under this proposed Settlement, Sirius XM has agreed it will not raise the price of its base subscription plan and certain other prices through the end of 2011. Additionally, subscribers with long term plans (excluding lifetime subscriptions) will be permitted to restart their plan at current rates before December 31, 2011. After approval of the Settlement, former subscribers will also be permitted to either (a) reconnect their satellite radio without paying a reactivation fee and receive one month of service at no cost; or (b) receive one month of Sirius XM Internet streaming service at no cost. The estimated value of the Settlement is $180 million. The Settlement does not provide for cash payments to the Class.

**How to Get Benefits?** Current subscribers scheduled to renew before December 31, 2011 do not need to do anything. Current subscribers who are scheduled to renew after December 31, 2011 and who want to restart their long term plan at current rates as well as former subscribers who want to reconnect service or receive streaming service should go to siriusxm.com/Question.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself from it. The deadline to exclude yourself is **Month 00, 2011**. If you do not exclude yourself, you will release all claims against Sirius XM concerning any conduct arising out of, based on, or relating to the merger that created Sirius XM. If you stay in the Settlement Class, you may object to it by **Month 00, 2011**. The detailed notice, available at the website or by calling the toll-free number, tells you how to exclude yourself or object. The Court will hold a hearing on **Month 00, 2011**, to consider whether to approve the Settlement and a request by Class Counsel for attorneys' fees and costs up to $13 million, plus interest. You may appear at the hearing, but you don't have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing, but you don't have to.

---

**For more information about the Settlement:** **www.SatelliteRadioSuit.com** **1-800-000-0000**

*Court-Ordered Legal Notice*

**CLAIMS ADMINISTRATOR**
**PO BOX 0000**
**MINNEAPOLIS, MN 00000-0000**

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

**Important Notice About Satellite Radio Settlement**

*Para una notificación en Español, llamar 1-800-000-0000 o visitar www.SatelliteRadioSuit.com*

NAME
ADDRESS
CITY STATE ZIP CODE

Exhibit 3

To:

From:  Satellite Radio Class Action Administrator

Subject: Satellite Radio Settlement - Notice to Current and Former Sirius XM Subscribers

If You Subscribed to Sirius, XM, or Sirius XM Radio
You Could Get Benefits From a Class Action Settlement

*Para una notificación en Español, llamar 1-800-000-0000 o visitar www.SatelliteRadioSuit.com*

Read this message carefully.  Records show you subscribed to Sirius XM Radio.  We are sending this e-mail to tell you about the proposed settlement of a class action that may affect your legal rights.  Go to www.SatelliteRadioSuit.com for a detailed notice about the proposed settlement.  There is a class action lawsuit (*Blessing v. Sirius XM Radio Inc.*) against Sirius XM concerning the July 29, 2008 merger that created Sirius XM.  The lawsuit claims this merger violated federal antitrust laws and that Sirius XM raised its prices as a result of the merger.  Sirius XM denies it did anything wrong.

**Who's Included?**  You are included in the Class if you were a Sirius, XM, or Sirius XM subscriber anytime from **July 29, 2008 to Month 00, 2011 [opt-out deadline]** and you paid: (1) the U.S. Music Royalty Fee; or (2) a monthly multi-radio charge of $8.99; or (3) a $2.99 monthly Internet access charge if you previously did not pay to access Sirius XM's content over the Internet.

**What Does the Settlement Provide?**  Under this proposed Settlement, Sirius XM has agreed it will not raise the price of its base subscription plan and certain other prices through the end of 2011. Additionally, subscribers with long term plans (excluding lifetime subscriptions) will be permitted to restart their plan at current rates before December 31, 2011.  After approval of the Settlement, former subscribers will also be permitted to either (a) reconnect their satellite radio without paying a reactivation fee and receive one month of service at no cost; or (b) receive one month of Sirius XM Internet streaming service at no cost.  The estimated value of the Settlement is $180 million.  The Settlement does not provide for cash payments to the Class.

**How to Get Benefits?**  Current subscribers scheduled to renew before December 31, 2011 do not need to do anything.  Current subscribers who are scheduled to renew after December 31, 2011 and who want to restart their long term plan at current rates as well as former subscribers who want to reconnect service or receive streaming service should go to www.siriusxm.com/Question.

**What Are Your Options?**  If you do not want to be legally bound by the Settlement, you must exclude yourself from it.  The deadline to exclude yourself is **Month 00, 2011**.  If you do not exclude yourself, you will release all claims against Sirius XM concerning any conduct arising out of, based on, or relating to the merger that created Sirius XM.  If you stay in the Settlement Class, you may object to it by **Month 00, 2011**.  The detailed notice, available at the website or by calling the toll-free number, tells you how to exclude yourself or object.  The Court will hold a hearing on **Month 00, 0000**, to consider whether to approve the Settlement and a request by Class Counsel for attorneys' fees and costs up to $13 million, plus interest.  You may appear at the hearing, but you don't have to.  You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing, but you don't have to.

**For more information about the Settlement:      www.SatelliteRadioSuit.com        1-800-000-0000**

Exhibit 4

# If You Subscribed to Sirius, XM, or Sirius XM Radio

## You Could Get Benefits From a Class Action Settlement

There is a class action lawsuit (*Blessing v. Sirius XM Radio Inc*.) against Sirius XM concerning the July 29, 2008 merger that created Sirius XM. The lawsuit claims this merger violated federal antitrust laws and that Sirius XM raised its prices as a result of the merger. Sirius XM denies it did anything wrong.

### Who's Included?

You are included in the Class if you were a Sirius, XM, or Sirius XM subscriber anytime from **July 29, 2008 to Month 00, 2011 [opt-out deadline]** and you paid: (1) the U.S. Music Royalty Fee; or (2) a monthly multi-radio charge of $8.99; or (3) a $2.99 monthly Internet access charge if you previously did not pay to access Sirius XM's content over the Internet.

### What Does the Settlement Provide?

Under this proposed Settlement, Sirius XM has agreed it will not raise the price of its base subscription plan and certain other prices through the end of 2011. Additionally, subscribers with long term plans (excluding lifetime subscriptions) will be permitted to restart their plan at current rates before December 31, 2011. After approval of the Settlement, former subscribers will also be permitted to either (a) reconnect their satellite radio without paying a reactivation fee and receive one month of service at no cost; or (b) receive one month of Sirius XM Internet streaming service at no cost. The estimated

value of the Settlement is $180 million. The Settlement does not provide for cash payments to the Class.

### How to Get Benefits?

Current subscribers scheduled to renew before December 31, 2011 do not need to do anything. Current subscribers who are scheduled to renew after December 31, 2011 and who want to restart their long term plan at current rates as well as former subscribers who want to reconnect service or receive streaming service should go to siriusxm.com/Question.

### Your Rights May Be Affected.

If you do not want to be legally bound by the Settlement, you must exclude yourself from it. The deadline to exclude yourself is **Month 00, 2011**. If you do not exclude yourself, you will release all claims against Sirius XM concerning any conduct arising out of, based on, or relating to the merger that created Sirius XM. If you stay in the Settlement Class, you may object to it by **Month 00, 2011**. The detailed notice, available at the website or by calling the toll-free number, tells you how to exclude yourself or object.

The Court will hold a hearing on **Month 00, 2011** to consider whether to approve the Settlement and a request for attorneys' fees, and costs up to $13 million, plus interest. You may appear at the hearing, but you don't have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing, but you don't have to.

**For more information about the Settlement:**
**www.SatelliteRadioSuit.com or 1-800-000-0000**

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL BLESSING, et al., on Behalf of Themselves and All
Others Similarly Situated,

                                        Plaintiffs,                    No. 09-cv-10035 (HB)(RLE)

        -against-

SIRIUS XM RADIO INC.,

                                        Defendant.

## [PROPOSED] FINAL ORDER AND JUDGMENT

WHEREAS, Plaintiffs Carl Blessing, Edward A. Scerbo, John Cronin, Brian Balaguera, Scott Byrd, Glenn Demott, James Hewitt, Todd Hill, Curtis Jones, Ronald William Kader, Edward Leyba, Greg Lucas, Joshua Nathan, James Sacchetta, David Salyer, Susie Stanaj, Janel and Kevin Stanfield, Paul Stasiukevicius, and Paola Tomassini ("Plaintiffs"), on behalf of themselves and the Class defined below, have entered into a Settlement Agreement, dated May 12, 2011 (the "Agreement") with Defendant Sirius XM Radio Inc. ("Defendant") to settle this action (the "Action") on the terms and conditions set forth therein; and

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Agreement; and

WHEREAS, by Order dated May____, 2011 (the "Preliminary Approval Order"), this Court (a) preliminarily approved the Settlement; (b) ordered that notice of the proposed Settlement be provided to Class Members; (c) provided Class Members with the opportunity either to exclude themselves from or to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement; and

WHEREAS, due and adequate notice has been given to the Class; and

WHEREAS, the Court conducted a hearing (the "Settlement Hearing") on August

_____ 2011 to consider, among other things, (i) whether the terms and conditions of the

Settlement are fair, reasonable and adequate and the Settlement should therefore be approved;

and (ii) whether a judgment should be entered dismissing the Action with prejudice; and

WHEREAS, the Court having reviewed and considered the Agreement, all papers filed

and proceedings held herein in connection with the Settlement, all oral and written comments

received regarding the proposed Settlement, and the record in the Action, and good cause

appearing therefore;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    **Jurisdiction:**  The Court has jurisdiction over the subject matter of the Action,

and all matters relating to the Settlement, as well as personal jurisdiction over the Parties and

each of the Class Members.

2.    **Class:**  As set forth in the Court's March 29, 2011 Opinion and Order, the Class is

as follows:

> FEDERAL ANTITRUST DAMAGE CLASS.  All persons or entities who reside
> in the United States and who contracted with Sirius Satellite Radio, Inc., XM
> Satellite Radio Holdings, Inc., Sirius XM Radio Inc., or their affiliated entities,
> for the provision of satellite digital radio services who during the relevant period
> of July 29, 2008 through [the deadline for requesting exclusion from the Class]:
> (1) paid the U.S. Music Royalty Fee; (2) own and activated additional radios
> ("multi-radio subscribers") and paid the increased monthly charge of $8.99 per
> additional radio; or (3) did not pay to access the content available on the 32 bkps
> or 64 bkps connections on the Internet but are now paying the Internet access
> monthly charge of $2.99;[1]

---

[1] Excluded from the Class are:  (1) all persons or entities that make a timely election to be excluded from the proposed Class; (2) Sirius XM and its legal representatives, officers, directors, assignees and successors; (3) governmental entities; and (4) the judges to whom this case is assigned and any immediate family members thereof.

3.    **Adequacy of Representation:**  Named Plaintiffs and Class Counsel have fully and adequately represented the Class for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g).

4.    **Notice:**  The Court finds that the distribution of the Notice and the publication of the Publication Notice:  (i) were implemented in accordance with the Preliminary Approval Order; (ii) constituted the best notice reasonably practicable under the circumstances; (iii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, of the effect of the Settlement (including the releases provided for therein), of Class Counsel's motion for attorneys' fees and reimbursement of litigation expenses incurred in connection with the prosecution of the Action, of their right to object to the Settlement and/or Class Counsel's motion for attorneys' fees and reimbursement of litigation expenses, of their right to exclude themselves from the Class, and of their right to appear at the Settlement Hearing; (iv) constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice of the proposed Settlement; and (v) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, Rule 23.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, and all other applicable law and rules.

5.    **Final Settlement Approval:**  Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement as set forth in the Agreement in all respects, and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and is in the best interests of the Class.

6. **Dismissal:** The Action is hereby dismissed on the merits and with prejudice, as of the Effective Date. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Agreement.

7. **Binding Effect:** The terms of the Agreement and of this Judgment shall be forever binding on Plaintiffs and all Class Members who have not excluded themselves, as well as all of their successors and assigns. The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Agreement.

8. **Releases:** The releases as set forth in the Agreement (the "Releases") are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that, as of the Effective Date:

(a) Upon the Settlement becoming final in accordance with Section 6 of the Agreement, Plaintiffs and any Class Members who have not timely excluded themselves from the Class Action (collectively, the "Releasing Parties"), whether or not they object to the Settlement, shall release and forever discharge Defendant, its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns (collectively, the "Released Parties") from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, whether class, individual or otherwise in nature, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasing Party ever had, now has or hereafter can, shall or may have, arising out of, based on or relating to the merger that formed

4

Sirius XM Radio Inc., including, without limitation, claims which have been asserted or could have been asserted in this litigation which arise under, are based on, or relate to any federal or state antitrust, unfair competition, unfair practices, consumer protection, misrepresentation, or other law or regulation, or common law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C § 1 et seq., and the Clayton Antitrust Act, 15 U.S.C. § 12 et seq. Plaintiffs shall further release the Released Parties from any claim arising out of, based on, or related to all conduct alleged or that could have been alleged in the Second Consolidated Amended Class Action Complaint and all previous Complaints filed in this action. Each Releasing Party hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the claims released herein.

(b)     Upon the Settlement becoming final, all Class Members who have not timely excluded themselves from the Class Action shall be deemed to have waived any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor;

or by any law of any state or territory of the United States or any other principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Class member may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph, but each Class member hereby expressly waives and fully, finally, and forever settles and releases, upon the Settlement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition

5

of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

(c)     Upon the Settlement becoming final, Defendant, on behalf of itself and its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such, shall release Plaintiffs and their past, present or future agents, attorneys, employees, legal representatives, trustees, parents, heirs, executors, administrators, predecessors, successors and assigns, from all claims, demands, actions, suits, causes of action, or liabilities of any nature whatsoever, in law or in equity, that Defendant ever had, now has, or hereafter can, shall or may have, to the extent arising out of or relating to the Action (the "Defendant's Released Claims").

(d)     The intent of the foregoing is to bar all claims that are or could have been brought regarding the claims in the Action consistent with the broadest principles of res judicata.

9.     **No Admissions:**  This Judgment, the Agreement, any of their terms and provisions, any of the negotiations, proceedings or agreements connected therewith, any matters arising in connection with settlement negotiations, proceedings, or agreements, and/or any of the documents or statements referred to therein:

(a)     shall not be admissible in any action or proceeding for any reason, other than in an action to enforce the terms of the Settlement or this Judgment, or to establish the preclusive effect of this Judgment and the releases contained herein and in the Agreement in any subsequent proceeding, or to rebut an allegation that there has been an admission of liability or an admission of the validity of any claim or defense on the part of any Party in any respect;

6

(b)      shall not be described as, construed as, offered or received against Defendant as evidence of and/or deemed to be evidence of any presumption, concession, or admission by Defendant of:  (i) the truth of any fact alleged by Plaintiffs; (ii) the validity of any claim that has been or could have been asserted in the Action or in any litigation or forum; (iii) the deficiency of any defense that has been or could have been asserted in the Action or in any litigation or forum; or (iv) the existence of personal or subject matter jurisdiction over, or concession thereto by, Defendant;

(c)      shall not be described as, construed as, offered or received against Plaintiffs or any Class Members as evidence of any infirmity in the claims of said Plaintiffs and the Class;

(d)      shall not be described as, construed as, offered or received against any of the Parties in any other civil, criminal or administrative action or proceeding, *provided*, however, that if it is necessary to refer to the Agreement or this Judgment to effectuate or enforce the provisions of the Agreement or this Judgment, it may be referred to in such proceedings; and

(e)      shall not be described as or construed against Defendant, Plaintiffs, or any Class Members as an admission or concession that the consideration to be given hereunder represents the relief, if any, that could be or would have been awarded to said Plaintiffs or any Class Member after trial of this Action.

10.      **Retention of Jurisdiction:**  Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over:  (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) any motion for an award of attorneys' fees and/or expenses by Class Counsel in the Action; and (c) the Class Members for all matters relating to the Action.

7

11.     **Attorneys' Fees and Expenses Not a Delay:**  Any order entered regarding any motion for attorneys' fees and expenses filed by Class Counsel shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

12.     **Modification of Settlement Agreement:**  Without further approval from the Court, Plaintiffs and Defendant are hereby authorized to agree to and adopt such amendments or modifications of the Agreement or any exhibits attached thereto to effectuate this Settlement that: (i) are not materially inconsistent with this Judgment; and (ii) do not materially limit the rights of Class Members in connection with the Settlement.  Without further order of the Court, Plaintiffs and Defendant may agree to reasonable extensions of time to carry out any provisions of the Settlement.

13.     **Termination:** If the Effective Date does not occur or the Agreement is terminated, then this Judgment (and any orders of the Court relating to the Settlement) shall be vacated, rendered null and void and be of no further force or effect, except as otherwise provided by the Agreement.

Dated:     _____          SO ORDERED:


_____
**HONORABLE HAROLD BAER, Jr.**
**UNITED STATES DISTRICT JUDGE**