UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL BLESSING ET AL.
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

- against -

SIRIUS XM INC.,
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2 3 SEP 2011

PRO SE OFFICE

09 ___ Civ. 10035 ___ (HB ) (RLE )

**NOTICE OF APPEAL
IN A CIVIL CASE**

Notice is hereby given that  MICHAEL HARTLEIB AND BRIAN DAVID GOE
_____
*(party)*

hereby  appeals to the United States Court of Appeals for the Second Circuit from the Judgment
SEE ATTACHED JOINT NOTICE OF APPEAL
_____
*(describe the judgment)*
_____
_____

entered in this action on the 24TH_____ day of AUGUST_____ , 2011_____ .
                             *(date)*            *(month)*        *(year)*

_____
**Signature**

PO BOX 7078
_____
*Address*

LAGUNA NIGUEL CA 92677
_____
*City, State & Zip Code*

DATED: SEPTEMBER_____ 20TH , 2011_____     ( 714 ) 927 - 5898
                                              _____
                                              *Telephone Number*

**NOTE:** To take an appeal, this form must be received by the *Pro Se* Office of the Southern District of New York within thirty
(30) days of the date on which the judgment was entered, or sixty (60) days if the United States or an officer or agency of the
United States is a party.

*Rev. 05/2007*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**CARL BLESSING ET AL.,**

    **Plaintiffs,**

    -against-

**SIRIUS XM RADIO INC.,**

    **Defendant.**

File No.

**09-cv-10035(HB)**

## JOINT NOTICE OF APPEAL

TO THE DISTRICT COURT AND ALL PARTIES, INTERESTED PERSONS, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Michael Hartleib and Brian David Goe, objectors in, Carl Blessing vs. Sirius XM *(Case no.* 09-cv-10035(HB) on their behalf, (collectively, "Appellants"),  file this joint notice of appeal, and hereby appeals to the United States Court of Appeals for the Second Circuit from the Final Settlement and Judgment , entered as Document 96-1 in 09 Civ. 10035 (HB) (the "Settlement"), and from all interim orders and other matters embraced by, or otherwise pertaining to, the Final Settlement and Judgment adversely affecting any of their interests.  Attached as Exhibit A hereto is a true and correct copy of the Final Settlement.

On July 19, 2011, Michael Hartleib filed an objection to the proposed Settlement. Mr. Hartleib attended the fairness hearing on August 8, 2011and testified as to why he believed the proposed release was overbroad and Plaintiffs lacked standing to release shareholder claims. On July 19, Brian David Goe filed an

objection to the proposed Settlement, on the grounds that the release was overbroad, there was no tangible benefit to the class and Plaintiffs lacked standing to release shareholder claims. Appellants file this joint notice of appeal from the Final Settlement and Judgment, and from all interim orders and other matters embraced by, or otherwise pertaining to, the Final Settlement and Judgment adversely affecting any of their interests, as Appellants are entitled to do pursuant to Federal Rule of Appellate Procedure 4(a)(2). Attached as Exhibit B hereto is a true and correct copy of the opinion and order.

Dated: September 20, 2011

By: /s/
MICHAEL HARTLEIB
P.O. BOX 7078 LAGUNA NIGUEL Ca.
(714) 927-5898


By: /s/
BRIAN DAVID GOE
P.O. BOX 7078 LAGUNA NIGUEL Ca.
(714) 927-5898

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARL BLESSING, et al., on Behalf of Themselves and All
Others Similarly Situated,

                                             Plaintiffs,                     No. 09-cv-10035 (HB)(RLE)

        -against-

SIRIUS XM RADIO INC.,

                                             Defendant.

---

### DECLARATION OF JAMES J. SABELLA IN SUPPORT OF MOTION (1) FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, (2) FOR APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS, AND (3) TO SCHEDULE A HEARING ON FINAL APPROVAL OF THE SETTLEMENT AND ON CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

JAMES J. SABELLA hereby declares under penalty of perjury as follows:

1.      I have been a member of the Bar of this Court for over 34 years and am a director of Grant & Eisenhofer P.A., Co-Lead Class Counsel. I make this declaration in support of Plaintiffs' motion (1) for preliminary approval of proposed settlement, (2) for approval of the form and manner of notice to the class, and (3) to schedule a hearing on final approval of the settlement and on class counsel's application for an award of attorneys' fees and expenses.

2.      Attached hereto as Exhibit 1 is a copy of the Settlement Stipulation.

Done at New York, New York this 13th day of May, 2011.

                                             _____/s/ James J. Sabella_____
                                             James J. Sabella

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CARL BLESSING ET AL.,                    :
                                         :
        Plaintiffs,                      :
                                         :
          - against -                    :          09 CV 10035 (HB)
                                         :
SIRIUS XM RADIO INC.,                    :          OPINION &
                                         :          ORDER
        Defendant.                       :
-----------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

        At the eve of trial, the parties in this class action antitrust litigation executed a settlement

agreement dated May 12, 2011 (the "Settlement" or "Settlement Agreement"). Class counsel now

moves for final approval of the Settlement Agreement and for an award of attorneys fees and costs. I

held a final approval hearing on August 8, 2011 at which class counsel, Defendant's counsel, and

numerous class members presented their views. I have considered their oral and written submissions

and for the reasons described below the motions are GRANTED.

## I.   The legal standard

        Class action settlements are subject to court approval. Fed. R. Civ. P. 23(e). Approval hinges

on whether the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Wal-*

*Mart Stores Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044. A

court must consider both the substantive and procedural aspects of the settlement, *i.e.* "the

settlement's terms and the negotiating process leading to settlement." *Id.* The analysis is framed by

the "strong judicial policy in favor of settlements, particularly in the class action context." *Id.*

## II.   A presumption of fairness is appropriate

        The Settlement merits a presumption of fairness where it was the culmination of a

complicated litigation over the course of several years between "experienced, capable counsel after

meaningful discovery." *Id.* As noted in a previous opinion, class counsel has experience in class

action antitrust litigation, and undeniably "engaged in the discovery necessary [for] effective

representation of the class's interests." *McReynolds v. Richards-Cantave*, 588 F3d 790, 804 (2d Cir.

2009) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). The discovery process

involved the exchange of literally millions of documents, several instances of court intervention to

resolve adversarial differences, numerous third-party subpoenas, depositions of 17 fact witnesses and

6 expert witnesses, and interrogatories. Sabella Decl. ¶ 22-31. The parties first began settlement

discussions in November 2010, but were unable to reach an accord. Sabella Decl. ¶ 50. They then, in concert with the pretrial schedule, went on to brief a number of substantive motions, and on the eve of trial, after substantial efforts towards trial preparation, finally settled. The Settlement is entitled to a presumption of fairness.

### III. The Settlement's terms favor approval

I have reviewed the Settlement's substantive terms and conclude that they demonstrate sufficient fairness, adequacy, and reasonableness. While each of the "*Grinnell*" factors considered by the Circuit as the path to fairness supports this conclusion,[1] I address only those factors that relate to the main objections raised in opposition to final approval.[2] I also note that all class members had the opportunity to opt out of the settlement.

### *The risk of establishing liability was significant*

One might conclude that class counsel did well to reach a settlement at all in view of the questionable liability in this case. More than one government agency assessed the merger and concluded that it did not have unlawful anti-competitive effects. The Department of Justice Antitrust Division closed its investigation by saying that "[a]fter a careful and thorough review of the proposed transaction, the Division concludes that the evidence does not demonstrate that the proposed merger of XM and Sirius is likely to substantially lessen competition, and that the transaction therefore is not likely to harm consumers." Sabella Decl. Ex. 9. The Federal Communications Commission (FCC) approved the merger – albeit with limited precautions such as the 3-year price cap. On July 27, 2011, however, the FCC concluded that it was *not* necessary to extend the price cap, in part because numerous competitive alternatives have arisen since 2008 which allayed any antitrust concerns that had previously justified the price-cap. *See* Sabella Reply Decl. Ex. 1. While these findings are not dispositive, Plaintiffs' case would have at least in part required convincing a jury that two federal agencies were wrong. Even had I concluded that the agencies' opinions were inadmissible, Defendant would doubtless have proffered the same underlying admissible evidence that led the agencies to conclude that there was no antitrust violation, or put another way, the merger did not lessen

---

[1] These include "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through trial; (7) the ability of defendants to withstand greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of the attendant risks of litigation." *Authors Guild v. Google, Inc.*, 770 F.Supp.2d 666, 674, (S.D.N.Y. 2011) (Chin, J.) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974)).

[2] The Court counted a total of 85 objectors (not all of whom properly submitted objections), which comprises less than 0.0005% of the class, a fact that favors approval. *See Banyai*, 2007 WL 927583, at *9 ("[A] small number of objections received when compared to the number of notices sent weighs in favor of approval.") (citing *D'Amato*, 236 F.3d at 86-7).

competition. Perhaps more important is whether the settlement was a fair one or whether it serves in large measure to do little for the class and a lot for counsel.

*The award is reasonable and not illusory*

Most of the objectors complain that the Settlement provides no meaningful relief. This assumes that they suffered a meaningful injury. "Such assumption cannot stand as a proper basis to evaluate the proposed settlement's fairness." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 66 (S.D.N.Y. 2003) (citing *Grinnell*, 495 F.2d at 458–59). As discussed above, it is far from certain that Plaintiffs would have prevailed on the merits. Even had they succeeded, there was a real risk that damages, split between over 15 million class members, would be so little that many members may not even have bothered to cash their checks.[3]

Many objectors argued that their award is similar to a disfavored "coupon" settlement. Unlike coupon settlements, however, it does not require class members to purchase something they might not otherwise purchase to enjoy its benefits; rather, the vast majority of class members will benefit in the course of their normal subscription payments, and former subscribers may benefit from a month of free radio or internet service. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 237 (E.D.N.Y. 2010) (approving settlement that awarded additional months on existing Costco memberships or temporary membership for those whose Costco membership had expired).

Some object that the award is illusory because Sirius XM would not have raised prices even without the Settlement. This theory fails because the evidence demonstrates that Sirius XM had every intention of raising prices beginning in August of this year, and had the go-ahead from the FCC to do so. In fact, the Settlement Agreement requires Sirius XM to forego some $180 million in fees. *See* Langenfeld Decl.; Brooker Decl. Speculation to the contrary is not grounds to reject the Settlement. The declarations and other material submitted to this Court strongly suggest that the $180 million calculation is not illusory, and represents, at a conservative estimate, 40% of the Plaintiffs' estimated best possible recovery – a result that is fair and reasonable in the antitrust context.[4] *See, e.g., In re Warfarin Sodium Anitrust Litig.*, 391 F.3d 561, 538 (3d Cir. 2004) (upholding approval of settlement equal to 33% of estimated damages).

---

[3] *See* Sabella Decl. ¶¶ 71-72; Potter Decl. ¶3-7. Plaintiffs calculate that, if they could have convinced Defendant to provide a $180 million cash settlement (the rough equivalent of the Settlement value), the average class member would have received $12, depending on their subscription plans. *See* Docket Entry 116 at 20.  Of course, this is not the most a verdict could have awarded.

[4] In antitrust cases, although plaintiffs would be entitled to treble damages, courts assess the value of the settlement as it compares to single, not treble, damages. *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800 (LMM), 2009 WL 4403185, at *5 n.3 (S.D.N.Y. Dec. 1, 2009) (citing *Grinnell*, 495 F.2d at 459).

Other objectors raised concerns about the adequacy of the award as compared to the requested $13 million in attorneys fees and costs. There appeared some suspicion that, once class counsel was assured that it would recover fees and costs, they lost their incentive to pursue the class claims. This theory overlooks the fact that our legal system relies upon attorneys to uphold their ethical obligations to do everything reasonable in support of their clients' cause, regardless of their compensation scheme. Nothing in the record supports the proposition that Class Counsel fell below that basic professional standard, nor that the attorneys relaxed their pursuit of class interests with the promise of payment. Indeed, the amount of attorneys fees was not negotiated and agreed upon until after the Settlement was finalized. Sabella Decl. ¶ 55. The Settlement here has been compared to a "shakedown" by more than one objector, and there appears some suspicion that class actions are mere vehicles for attorneys to seek large fee awards. However, nothing suggests that Class Counsel here went beyond what the law allows. Whatever abuse the objectors believe the class action scheme works or indeed has worked here, it is a legislative problem and not a ground which permits this Court to set aside the settlement.

### The Settlement's release is not overbroad

The Settlement Agreement releases Defendant from all claims by class members "arising out of, based on or relating to the merger that formed Sirius XM." Docket Entry 96 ¶ 8(a). It includes claims that class members did not or could not know were available at the time of the Settlement Agreement – the type of claim that some state laws preserve unless expressly waived (*i.e.* it cannot be released through a "general" release). *See* Docket Entry 96 ¶ 8(b). The scope of the release is consistent with the parameters established in this Circuit. A class action settlement may release "claims not presented and even those which could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct." *Wal-Mart*, 396 F.3d at 106.[5] The released claims here are limited to those claims that arise out of the merger that formed Sirius XM – a common factual predicate that defines the scope of the release with acceptable breadth.

The objectors also argue that "released claims" is referred to as a defined term, but nowhere is it defined. It is true that there is no official definition, but it is clear from the text – and both Defendant and Class Counsel agree – that "released claims" refers to those claims described in paragraph 8(a). I would be remiss to assume that other courts are unable to understand what is clear from the text of the release. This technical drafting oversight threatens no real risk to future litigants, and is insufficient to hold up the approval process.

---

[5] Indeed, "[b]road class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country." *Wal-Mart*, 396 F.3d at 106.

### IV. The request for attorneys fees and costs is reasonable

The motion for attorneys fees and costs provoked numerous and impassioned objections. The requested $13 million award understandably raised concerns, especially when compared to the very modest award provided to each class member. However, upon closer inspection, the award when compared to the Settlement as a whole is not unfair. I have reviewed the attorney expense sheets as well as the attorney time-keeping records, and found nothing to suggest exorbitant rates nor double billing nor padding of any kind. The award, as noted above, may well signal a defect in the system, but if so the Congress has to fix it. Perhaps they should, but for now, under the law as I read it, the settlement is reasonable under both the lodestar and percentage method of calculation, and appropriate in view of the criteria established in *Goldberger v. Gleason*, 160 F.3d 858 (2d Cir. 1998). Again, the fee is a separate obligation that will not come out of the Settlement amount, and was negotiated after the terms of the Settlement had been agreed upon. *See McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) (Lynch, J.) (where "money paid to the attorney is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members").

The Clerk of the Court is instructed to close this matter and remove it from my docket.

**SO ORDERED**

August 24, 2011
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

5

Court copy

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL BLESSING, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>   -against-<br><br>SIRIUS XM RADIO INC.,<br><br>       Defendant. | No. 09-cv-10035 (HB) |

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is made and entered into as of this 12th day of May, 2011 by and between Plaintiffs Carl Blessing, Edward A. Scerbo, John Cronin, Brian Balaguera, Scott Byrd, Glenn Demott, James Hewitt, Todd Hill, Curtis Jones, Ronald William Kader, Edward Leyba, Greg Lucas, Joshua Nathan, James Sacchetta, David Salyer, Susie Stanaj, Janel and Kevin Stanfield, Paul Stasiukevicius, and Paola Tomassini ("Plaintiffs"), individually and on behalf of the Class defined below, by and through their Court-appointed Class Counsel Grant & Eisenhofer P.A., Milberg LLP, and Cook, Hall & Lampros, LLP ("Class Counsel"), and Defendant Sirius XM Radio Inc. ("Sirius XM"), by and through its counsel, Jones Day ("Defendant's Counsel").

WHEREAS, on December 7, 2009, the first of a series of putative class action complaints was filed in the United States District Court for the Southern District of New York against Sirius XM alleging claims for (1) alleged violations of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18, and Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, based on the July 28, 2008 merger of a subsidiary of Sirius Satellite Radio Inc. with XM Satellite Radio Holdings Inc. that

created Sirius XM, (2) alleged breach of contract, and (3) alleged violations of state consumer protection laws; and

WHEREAS, on December 30, 2009, certain Plaintiffs moved to consolidate the above-described series of cases against Sirius XM and appoint interim counsel for the putative class; and

WHEREAS, on March 17, 2010, the Court issued an Order consolidating the cases and appointing Grant & Eisenhofer P.A., Milberg LLP and Cook, Hall & Lampros, LLP as interim counsel for the putative class; and

WHEREAS, on February 25, 2010, Defendant moved to dismiss certain claims in the complaint in the first-filed action; and

WHEREAS, on March 22, 2010, Plaintiffs filed a Consolidated Amended Class Action Complaint; and

WHEREAS, on April 12, 2010, Defendant moved to dismiss certain claims in the Consolidated Amended Class Action Complaint; and

WHEREAS, on May 3, 2010, Plaintiffs filed a Second Consolidated Amended Class Action Complaint; and

WHEREAS, on May 18, 2010, Defendant moved to dismiss certain claims in the Second Consolidated Amended Class Action Complaint; and

WHEREAS, on June 11, 2010, Plaintiffs moved to bifurcate the federal antitrust claims and the state law claims; and

WHEREAS, on July 30, 2010, Plaintiffs moved to certify the consolidated action as a class action pursuant to Federal Rule of Civil Procedure 23; and

WHEREAS, on November 17, 2010, the Court issued an Opinion and Order (1) dismissing Plaintiffs' claim for breach of contract and breach of an implied covenant of good faith and fair dealing, dismissing certain portions of Plaintiffs' misrepresentation claims under California law, and denying Defendant's motion to dismiss in all other respects, and (2) denying Plaintiffs' motion for bifurcation; and

WHEREAS, on December 12, 2010, Defendant filed an Answer to the Second Consolidated Amended Class Action Complaint; and

WHEREAS, on January 18, 2011, Defendant moved for summary judgment; and

WHEREAS, on March 29, 2011, the Court issued an Opinion and Order that (1) granted Plaintiffs' motion for class certification as to a federal antitrust damage class, and (2) denied Plaintiffs' motion for class certification as to all other classes for which plaintiffs sought certification; and

WHEREAS, on March 29, 2011, the Court issued an Opinion and Order (1) granting Defendant's motion for summary judgment as to the consumer protection claims, and (2) denying Defendant's motion for summary judgment in all other respects; and

WHEREAS, the parties have conducted extensive fact and expert discovery; and

WHEREAS, Defendant denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct, has not conceded or admitted any liability whatever, has asserted defenses, and denies that any conduct challenged by Plaintiffs caused any injury or damage whatever; and

WHEREAS, arm's-length settlement negotiations have taken place between Class Counsel and Defendant's Counsel over a lengthy period of time, and this Agreement, which embodies all of the terms and conditions of the settlement ("Settlement") between Defendant and

Plaintiffs, both individually and on behalf of the Class, has been reached, subject to final approval of the United States District Court for the Southern District of New York; and

WHEREAS, Class Counsel have concluded, after extensive discovery, motion practice, and trial preparation, and after carefully considering all of the circumstances of this action, that it would be in the best interests of the Class to enter into this Agreement in order to avoid the uncertainties of, and delays associated with the outcome of, the trial and any subsequent appeals, and to assure a benefit to the Class and, further, that Class Counsel consider the Settlement to be fair, reasonable, and adequate and in the best interests of the Class; and

WHEREAS, Defendant has concluded, despite its belief that it is not liable for the claims asserted in this action and that it has good defenses thereto, that it is in its best interests to enter into this Agreement to avoid further expense, inconvenience, and the distraction and uncertainty of burdensome and protracted litigation and thereby to resolve this controversy; and

WHEREAS, Plaintiffs and Defendant agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability, wrongdoing or injury by Defendant or of the truth of any claim or allegation or a waiver of any defenses thereto;

NOW THEREFORE, it is agreed by the undersigned, on behalf of Defendant, Plaintiffs and the Class, that the action be settled, compromised and dismissed with prejudice, and without the award of costs, subject to the approval of the Court, on the following terms and conditions:

1.     **Class**.  In accordance with the Court's March 29, 2011 Opinion and Order, the Class is defined as follows:

> FEDERAL ANTITRUST DAMAGE CLASS.  All persons or entities who reside in the United States and who contracted with Sirius Satellite Radio Inc., XM Satellite Radio Holdings Inc., Sirius XM Radio Inc., or their affiliated entities, for the provision

4

of satellite digital audio radio services who, during the relevant period of July 29, 2008 through the deadline for requesting exclusion from the Class: (1) paid the U.S. Music Royalty Fee; (2) own and activated additional radios ("multi-radio subscribers") and paid the increased monthly charge of $8.99 per additional radio; or (3) did not pay to access the content available on the 32 bkps or 64 bkps connections on the Internet but are now paying the Internet access monthly charge of $2.99.

Excluded from the Class are: (1) all persons or entities that make a timely election to be excluded from the Class; (2) Sirius XM and its legal representatives, officers, directors, assignees and successors; (3) governmental entities; and (4) the judges to whom this case is assigned and any immediate family members thereof.

2.   **Settlement Consideration**.  In full and final settlement of the claims of the Class, and in consideration for the release of the Released Claims, as defined below, the Plaintiffs on behalf of the Class and Defendant agree to the following terms and conditions:

a.   The base prices for monthly, quarterly, semi-annual, annual and other long-term subscriptions for "mostly music, "news, sports and talk", "a la carte" and what are now known as the "select" and "select family friendly" packages (but were formerly known as "everything", "everything family friendly" or "family friendly" packages) (but excluding lifetime subscriptions) will remain at or below their current rates through December 31, 2011.  Defendant will provide support, through declarations or other evidence, that it has contemplated and made plans for raising the prices of its subscription plans and other charges, including the multi-receiver discount, by $2 per month (without an offsetting reduction in other fees) after the price restriction imposed upon it by the Federal Communications Commission expires on July 28, 2011.  Defendant estimates that the value to the Class of not implementing such a rate increase between August 1, 2011 and December 31, 2011 is approximately $180 million.

b.   The price for subscriptions (beyond the initial subscription) purchased by multi-radio subscribers will remain at or below the current rate through December 31, 2011.

c.   The price for Internet streaming for subscribers with basic subscriptions will remain at or below $2.99 per month through December 31, 2011.

d.   Defendant will not increase the subscription prices for its "Best of" packages (now known as the "premier" and "premier family friendly" packages) prior to December 31, 2011.

e.   The U.S. Music Royalty Fee will remain at or below its current rate through December 31, 2011.

f.   Subscribers will, irrespective of whether their subscription plans come up for renewal prior to December 31, 2011, be permitted to renew their subscriptions prior to December 31, 2011 at the rates currently in effect and be able to subscribe, at the rates existing through December 31, 2011, to a monthly, quarterly, semi-annual, annual or other then-existing long-term subscription plan (but excluding lifetime subscriptions) which will keep their rates at then-existing subscription levels through the entire period of their new subscription term.

g.   Defendant will permit former subscribers who terminated their Sirius XM service between July 29, 2009 through the deadline for requesting exclusion from the Class to either (a) reconnect their satellite radio without paying a reactivation fee and receive one month of basic satellite radio service at no cost; or (b) receive the Sirius XM Internet streaming service for one month at no cost.

3.   **Reasonable Best Efforts to Effectuate This Settlement**. Counsel for all of the undersigned parties in this litigation agree to recommend approval of this Agreement by the Court and to undertake commercially reasonable efforts, including undertaking all steps and efforts contemplated by this Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement.

4.   **Motion for Preliminary Approval of the Settlement**.

a.   Promptly following each party's execution of this Agreement, but in all events no later than May 13, 2011, Plaintiffs shall file with the Court a motion for entry of an order substantially in the form annexed hereto as Exhibit A for preliminary approval of the Settlement as fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23; for approval of the forms of Class notice and the manner of providing same to the members of the Class; and to set a date for a hearing on final approval of the Settlement and on Class Counsel's application for an award of attorneys' fees and expenses. No later than 48 hours prior to submission of such motion Class Counsel will provide Defendant's counsel with an advance draft copy of the papers.

b.      In the event that the Court preliminarily approves the Settlement, Defendant will provide notice to the Class of this Settlement as directed by the Court, and pay all costs associated with the giving of notice of this Settlement to the Class, and any other costs associated with administration of the Settlement notice.

5.    **Motion for Final Approval and Entry of Final Judgment**.

a.      If the Court preliminarily approves the Settlement, Plaintiffs shall submit a motion for final approval by the Court, and shall seek entry of an order and final judgment, substantially in the form of Exhibit B annexed hereto, within 49 days of commencement of notice to potential class members:

(1)      finding the Settlement fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

(2)      directing that the action be dismissed with prejudice and, except as provided for herein, without costs; and

(3)      reserving in the Court exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Settlement.

b.      Seven (7) days prior to submission of the motion for final approval of this Agreement, Class Counsel will provide Defendant's counsel with an advance draft copy of the papers.

c.      Defendant shall take all steps necessary to provide notice of this proposed settlement to appropriate state and federal officials pursuant to 28 U.S.C. 1715, and neither party shall request that an order giving final approval of the proposed settlement be issued prior to the expiration of the time set forth in 28 U.S.C. 1715(d).

6.  **Finality of Settlement.**  This Settlement shall become final upon the occurrence of all of the following:

a.   The Settlement is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

b.   An order and final judgment of dismissal with prejudice is entered against Plaintiffs and the members of the Class who have not timely excluded themselves; and

c.   The time for appeal from the order and final judgment as described in b. hereof has expired or, if appealed or the subject of a further petition, either such appeal or petition shall have been dismissed prior to resolution by, or the order and final judgment shall have been affirmed in its entirety by, the Court of last resort to which such appeal has been taken or petition submitted and such affirmance has become no longer subject to further appeal or review; *provided* that a modification or reversal on appeal or review of any amount of Class Counsel's fees and expenses awarded by the Court shall not prevent this Settlement from becoming final if all other aspects of the final judgment have been affirmed; and *provided further* that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining when the judgment becomes final.

7.  **Plaintiffs' Attorneys' Fees and Expenses.**

a.   Prior to the final approval hearing, Class Counsel intend to apply to the Court for an award of Plaintiffs' counsel's attorneys' fees and expenses.  Defendant will pay, subject to the Court's approval, up to $13,000,000, plus interest accrued at the rate of .050% from the date of entry of the Court's Preliminary Approval Order, to Class Counsel for attorneys' fees and expenses.  Defendant will take no position on an application by Plaintiffs' counsel for an award of fees and expenses that is equal to or less than this amount.  Defendant shall not be liable for any fees or expenses of any Plaintiffs or Class members beyond such amount.  Class Counsel shall allocate the attorneys' fees among all law firms representing Plaintiffs in this action in a manner which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the action.

b.       Within 10 days after the later of an order of final approval of the Settlement or an order awarding any fees and expenses pursuant to this Agreement, Defendant shall deposit $13,000,000 (or, if less, any amount awarded as fees and expenses), plus interest accrued at the rate of .050% from the date of entry of the Court's Preliminary Approval Order, as calculated pursuant to subsection 7a., above, in an acceptable interest-bearing, third-party escrow account designated by Plaintiffs which shall be drawn upon once the Settlement and the award of fees and expenses receive final, non-appealable and non-reviewable approval as provided in Section 6, above, or shall be returned to Defendant if the Settlement is terminated as provided in Section 9 below.  The escrow account shall be structured by Plaintiffs such that it will qualify as a "qualified settlement fund," as the term is defined in Treasury Regulation §1.468B-1, promulgated under Section 468B of the Internal Revenue Code of 1986, as amended.  Upon or after entry of the Order awarding such attorneys' fees and expenses, one or more of Class Counsel may elect to receive, and shall be paid from the escrow account, its share of any attorneys' fees and expenses as are awarded by the Court (its share being agreed upon by and between all of the Class Counsel), notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to the obligation of such Class Counsel receiving such payments to refund to Defendant all such attorneys' fees, plus interest at the same rate as was earned in the escrow account, within ten (10) days after receiving notice from counsel for Defendant or from any court that (a) as a result of any appeal, further proceeding on remand, successful collateral attack and/or otherwise the awarding of fees and expenses is reduced or reversed or the award order does not or cannot become final, or (b) the Settlement is terminated by any party as provided in Section 9 below.  As a condition of receiving such fees and expenses, any Class Counsel

receiving any payments pursuant to this subsection: (i) agree that they are responsible to make such refund, (ii) agree to provide a personal guarantee for such refund by principals of Plaintiffs' law firms, or at their choice to provide other collateral satisfactory to Defendant to secure repayment, and (iii) agree to be subject to the jurisdiction of the Court for the purposes of enforcing the provisions of this paragraph. Upon the Settlement and the award of fees and expenses receiving final, non-appealable and non-reviewable approval as provided in Section 6 above, the escrow account shall be closed and the amount awarded as fees and expenses, together with any interest earned thereon and less any advanced payments, shall be paid to Class Counsel, and any remaining amount shall be returned to Defendant.

      c.     Class Counsel shall be solely responsible for filing or directing the filing of all informational and other tax returns required to report any taxable and/or net taxable income earned by the escrow account. Class Counsel shall be solely responsible for directing the escrow agent to make any tax payments, including interests and penalties due, if any, on income earned by the escrow account. Except for Defendant's obligation to provide to Class Counsel the statement described in Treasury Regulation § 1.468B-3(e), Defendant shall have no responsibility to make any tax filings relating to this Agreement or the escrow account, and shall have no responsibility to pay taxes on any income earned by the escrow account, or to pay any taxes with respect thereto unless the Settlement is not consummated and the amount in the escrow account is returned to Defendant. If for any reason, for any period of time, Defendant is required to pay taxes on income earned by the escrow account, the escrow agent shall, upon written instructions from Defendant with notice to Class Counsel, timely pay to Defendant sufficient funds to enable it to pay all taxes (state, federal, or other) that Defendant is required to pay on income earned by any amount in the escrow account.

d.     The parties to this Agreement and their counsel shall treat, and shall cause the escrow agent to treat, the escrow account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The parties, their counsel, and the escrow agent agree that they will not ask the Court to take any action inconsistent with the treatment of the escrow account in such manner. The parties hereto agree that the escrow account shall be treated as a qualified settlement fund from the earliest date possible, and agree to any relation-back election required to treat the escrow account as a qualified settlement fund from the earliest date possible. All provisions of this Agreement shall be interpreted in a manner that is consistent with the escrow account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

e.     Defendant shall not have any responsibility, financial obligation, or liability whatever with respect to the investment, distribution, use, or administration of the escrow account or any of the funds in the escrow account.

**8.     Releases.**

a.     In addition to the effect of any Order and Final Judgment entered in accordance with this Settlement, upon this Settlement becoming final, Plaintiffs and any Class Members who have not timely excluded themselves from this action (collectively, the "Releasing Parties"), whether or not they object to the Settlement, shall release and forever discharge Defendant, its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns (collectively, the "Released Parties") from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature

whatsoever, whether class, individual or otherwise in nature, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasing Party ever had, now has or hereafter can, shall or may have, arising out of, based on or relating to the merger that formed Sirius XM Radio Inc., including, without limitation, claims which have been asserted or could have been asserted in this action which arise under, are based on, or relate to any federal or state antitrust, unfair competition, unfair practices, consumer protection, misrepresentation, or other law or regulation, or common law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C § 1 et seq., and the Clayton Antitrust Act, 15 U.S.C. § 12 et seq. Plaintiffs shall further release the Released Parties from any claim arising out of, based on, or related to all conduct alleged or that could have been alleged in the Second Consolidated Amended Class Action Complaint and all previous Complaints filed in this action. Each Releasing Party hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the claims released herein.

b.     Upon the Settlement becoming final, all Class Members who have not timely excluded themselves from this action shall be deemed to have waived any and all provisions, rights and benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. <u>General Release:</u> extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor;

or by any law of any state or territory of the United States or any other principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Class member may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of this

paragraph, but each Class member hereby expressly waives and fully, finally, and forever settles and releases, upon the Settlement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

c.      Upon the Settlement becoming final, Defendant, on behalf of itself and its past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such, shall release Plaintiffs and their past, present or future agents, attorneys, employees, legal representatives, trustees, parents, heirs, executors, administrators, predecessors, successors and assigns, from all claims, demands, actions, suits, causes of action, or liabilities of any nature whatsoever, in law or in equity, that Defendant ever had, now has, or hereafter can, shall or may have, to the extent arising out of or relating to this action (the "Defendant's Released Claims").

d.      The Parties intend that there will be an entry of judgment respecting all claims that are or could have been brought regarding the claims in this action consistent with the broadest principles of res judicata.

9.      **Effect of Disapproval**.  If the Court declines to finally approve the Settlement, or if the Court does not enter the final judgment in substantially the form provided for herein, or if the Court enters the final judgment and appellate or other discretionary review is sought, and on such review, such final judgment is reversed, vacated or materially modified, or if the Settlement for any other reason does not become final in accordance with the terms herein, then the

Settlement shall be terminated upon the election of all of the Plaintiffs or the Defendant, each acting through their undersigned counsel; *provided* that any reversal, vacatur or modification on appeal or other form of review of any amount of Class Counsel's fees and expenses awarded by the Court, or any determination by the Court to award less than the amount requested in attorneys' fees or costs to Class Counsel, shall not give rise to any right of termination or otherwise serve as a basis for termination of this Settlement.

10.     **Termination**.  In the event that the Settlement is terminated pursuant to the foregoing paragraph, then (a) this Agreement (other than the provision in subsection 7.5. above, requiring the return of fees and expenses to Defendant) shall be of no force or effect, and (b) any release contained herein shall be of no force or effect.

11.     **Preservation of Rights**.  The parties hereto agree that this Agreement, whether or not it shall become final pursuant to its terms, and any and all negotiations, documents and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability, wrongdoing or injury by the Defendant, or of the truth of any of the claims or allegations contained in any complaint or any other pleading or document, and evidence thereof shall not be discoverable, admissible or otherwise used directly or indirectly, in any way by Plaintiffs or Defendant, whether in this action or in any other action or proceeding.  The parties expressly reserve all of their rights and defenses if the Settlement does not become final.

12.     **Binding Effect**.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto, including the members of the Class who do not timely request to be excluded, and of the Released Parties.  Without limiting the generality of

the foregoing, each and every covenant and agreement herein by the Plaintiffs and Class Counsel shall be binding upon all members of the Class.

13.    **Integrated Agreement**.  This Agreement (including all exhibits hereto and other documents explicitly referenced herein) contains the entire, complete, and integrated statement of each and every term and provision of the Settlement.  This Agreement shall not be modified in any respect except by a writing executed by the undersigned in the representative capacities specified, or others who are authorized to act in such representative capacities.

14.    **Headings**.  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

15.    **No Party is the Drafter**.  Counsel to all parties hereto have materially participated in the drafting of this Agreement.  None of the parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

16.    **Choice of Law**.  All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

17.    **Consent to Jurisdiction**.  Defendant, Plaintiffs and each member of the Class hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions herein, except that this paragraph shall not prohibit (a) the assertion in the forum in which a claim is brought that the release herein is a defense, in whole or in part, to such

claim, or (b) in the event that such a defense is asserted in that forum, the determination of its merits in that forum.

**18.**    <u>**Enforcement of Settlement**</u>.  Notwithstanding any other provision of this Agreement, this Agreement and the releases contained herein may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

**19.**    <u>**Authorization To Act On Behalf Of Plaintiffs And Class**</u>.  The undersigned Class Counsel to Plaintiffs represent that they have been and are fully authorized to conduct settlement negotiations with Defendant's counsel on behalf of Plaintiffs and the Class and to enter into, and execute, this Agreement on behalf of Plaintiffs and the Class, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).

**20.**    <u>**No Admission**</u>.  Nothing in this Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, by Defendant or Plaintiffs, or any of them, including without limitation that Defendant has engaged in any conduct or practices that violate any antitrust statute or other law.

**21.**    <u>**Execution in Counterparts**</u>.  This Agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this agreement and filed with the Court.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Agreement of the date first herein above written.

**GRANT & EISENHOFER P.A.**

By:

James J. Sabella
485 Lexington Avenue
New York, NY 10017
646-722-8500

**MILBERG LLP**

By:

Paul Novak
One Pennsylvania Plaza
New York, NY 10119
212-594-5300

**COOK, HALL & LAMPROS, LLP**

By:

Edward Cook
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, GA 30309.
404 876-8100

*Class Counsel, and on behalf of Carl Blessing,*
*Edward A. Scerbo, John Cronin, Brian*
*Balaguera, Scott Byrd, Glenn Demott, James*
*Hewitt, Todd Hill, Curtis Jones, Ronald William*
*Kader, Edward Leyba, Greg Lucas, Joshua*
*Nathan, James Sacchetta, David Salyer, Susie*
*Stanaj, Janel and Kevin Stanfield, Paul*
*Stasiukevicius, and Paola Tomassini*

**JONES DAY**

By:

John M. Majoras
51 Louisiana Avenue, N.W.
Washington, DC 2001-2113
(202) 879-3939

*Counsel for Defendant, Sirius XM Radio Inc.*

17

**GRANT & EISENHOFER P.A.**

**JONES DAY**

By: _____

By: _____

James J. Sabella
485 Lexington Avenue
New York, NY 10017
646-722-8500

John M. Majoras
51 Louisiana Avenue, N.W.
Washington, DC 2001-2113
(202) 879-3939

*Counsel for Defendant, Sirius XM Radio Inc.*

**MILBERG LLP**

By: _____

Paul Novak
One Pennsylvania Plaza
New York, NY 10119
212-594-5300

**COOK, HALL & LAMPROS, LLP**

By: _____

Edward Cook
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, GA 30309
404 876-8100

*Class Counsel, and on behalf of Carl Blessing,
Edward A. Scerbo, John Cronin, Brian
Balaguera, Scott Byrd, Glenn Demott, James
Hewitt, Todd Hill, Curtis Jones, Ronald William
Kader, Edward Leyba, Greg Lucas, Joshua
Nathan, James Sacchetta, David Salyer, Susie
Stanaj, Janel and Kevin Stanfield, Paul
Stasiukevicius, and Paola Tomassini*

# Exhibit A