UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARL BLESSING, et al., on Behalf of Themselves and All
Others Similarly Situated,

Plaintiffs,

-against-

SIRIUS XM RADIO INC.,

Defendant.

No. 09-cv-10035 (HB)(RLE)

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO REQUIRE APPELLANTS TO POST AN APPEAL BOND

**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: 646-722-8500
Fax: 646-722-8501

**MILBERG LLP**
One Penn Plaza
New York, NY 10119
Tel.: 212-594-5300
Fax: 212-868-1229

**COOK, HALL & LAMPROS, LLP**
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel.: 404-876-8100
Fax: 404-876-3477

*Class Counsel*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT ........................................................................................................................4

I.    THIS COURT HAS WIDE DISCRETION TO ORDER THE POSTING
      OF AN APPEAL BOND TO COVER COSTS AND ATTORNEYS' FEES....................4

II.   THE APPEAL IS FRIVOLOUS........................................................................................7

III.  THE APPROPRIATENESS OF A BOND IS UNDERSCORED BY
      THE FACT THAT MANY OF THE APPELLANTS' LAWYERS ARE
      PROFESSIONAL OBJECTORS................................................................................9

CONCLUSION...................................................................................................................12

# TABLE OF AUTHORITIES

Page

CASES

*Adsani v. Miller*,
139 F.3d 67 (2d Cir. 1998)................................................................................4, 5

*Allapattah Servs., Inc. v. Exxon Corp.*,
No. 91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006)................................6

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2004 U.S. Dist. LEXIS 29162 (E.D. Pa. Oct. 13, 2004)..............10

*Baker v. Urban Outfitters, Inc.*,
No. 01-cv-5440 (LAP), 2006 U.S. Dist. LEXIS 90120 (S.D.N.Y. Dec. 12, 2006)..................4

*Barnes v. FleetBoston Fin. Corp.*,
No. 01-cv-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006).......5, 6, 7, 10

*Blessing v. Sirius XM Radio Inc.*,
No. 09-cv-10035 (HB), 2011 U.S. Dist. LEXIS 94723 (S.D.N.Y. Aug. 24, 2011) .............1, 8

*Browning v. Yahoo! Inc.*,
No. 04-cv-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) .................................11

*In re Cardinal Health, Inc. Sec. Litig.*,
550 F. Supp. 2d 751 (S.D. Ohio 2008) .................................................................9

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
MDL No. 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003)................................5, 6

*Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*,
246 F.3d 142 (2d Cir. 2001)..................................................................................7

*In re Currency Conversion Fee Antitrust Litig.*,
MDL No. 1409 (WHP), 2010 U.S. Dist. LEXIS 27605 (S.D.N.Y. Mar. 5, 2010)..................4

*Davidson v. City of Culver City*,
No. 04-cv-2220 GAF , 2006 U.S. Dist. LEXIS 96617 (C.D. Cal. Aug. 30, 2006) .................7

*Dewey v. Volkswagen of Am.*,
728 F. Supp. 2d 546 (D.N.J. 2010) .....................................................................12

*In re Diet Drugs Prods. Liab. Litig.*,
MDL No. 1203, 2000 WL 1665134 (E.D. Pa. Nov. 6, 2000)..................................5

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    183 F.3d 1 (1st Cir. 1999) ............................................................................................10

*Gemelas v. Dannon Co.*,
    No. 08-cv-236, 2010 U.S. Dist. LEXIS 99503 (N.D. Ohio Aug. 31, 2010)............................6

*Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp.*,
    236 F.3d 214 (5th Cir. 2000) ......................................................................................7

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
    No. 05-cv-05437, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008) ....................................11

*Lincoln Benefit Life Co. v. Edwards*,
    160 F.3d 415 (8th Cir. 1998) ......................................................................................6

*Lonardo v. Travelers Indemnity Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010)..........................................................................12

*Marek v. Chesny*,
    473 U.S. 1 (1985)....................................................................................................5

*Martin v. Comm'r*,
    753 F.2d 1358 (6th Cir. 1985) .....................................................................................6

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 124 (S.D.N.Y. 1999) ..................................................................................7

*Newhouse v. McCormick & Co.*,
    130 F.3d 302 (8th Cir. 1997) ......................................................................................6

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003)...................................................................................9

*Pedraza v. United Guar. Corp.*,
    313 F.3d 1323 (11th Cir. 2002) ...................................................................................6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    520 F. Supp. 2d 274 (D. Mass. 2007) ...........................................................................5

*In re Rite Aid Corp. Sec. Litig.*,
    269 F. Supp. 2d 603 (E.D. Pa. 2003), *vacated*, 396 F.3d 294 (3d Cir. 2005)...........................9

*Sckolnick v. Harlow*,
    820 F.2d 13 (1st Cir. 1987)......................................................................................5, 6

*Shimman v. Int'l Union of Operating Eng'rs, Local 18*,
    785 F.2d 310 (6th Cir. 1986) ......................................................................................7

*Snell v. Allianz Life Ins. Co. of N. Am.*,
No. 97-cv-2784 RLE, 2000 WL 1336640 (D. Minn. Sept. 8, 2000) ......................................10

*Sullivan v. William A. Randolph, Inc.*,
504 F.3d 665 (7th Cir. 2007) ......................................................................................................7

*Thompson v. Metropolitan Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ...............................................................................................11

*Tri-Star Pictures, Inc. v. Unger*,
32 F. Supp. 2d 144 (S.D.N.Y.), *aff'd*, 198 F.3d 235 (2d Cir. 1999) ....................................4, 5

*UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.*,
No. 05-cv-01046-MSK-CBS, 2009 U.S. Dist. LEXIS 1687 (D. Colo. Jan. 6, 2009)...............7

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) ..................................................................................................11

*Vaughn v. Am. Honda Motor Co.*,
627 F. Supp. 2d 738 (E.D. Tex. 2007) ......................................................................................6

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ......................................11

*Watson v. Sutton*,
No. 02-cv-2739 (KMW), 2006 U.S. Dist. LEXIS 88415 (S.D.N.Y. Dec. 6, 2006) .................4

*World Trade Ctr. Props. LLC v. Certain Underwriters at Lloyd's of London*,
No. 10-2970-cv, 2011 U.S. App. LEXIS 7310 (2d Cir. Apr. 8, 2011) .....................................7

*Young v. New Process Steel, L.P.*,
427 F. Supp. 2d 1126 (N.D. Ala. 2006) ....................................................................................7

**STATUTES AND RULES**

Fed. R. App. P. 7...........................................................................................................1, 4, 5, 12

Fed. R. App. P. 38.....................................................................................................................5, 6

Fed. R. App. P. 39........................................................................................................................5

**OTHER AUTHORITIES**

5 William B. Rubenstein, Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS
ACTIONS § 15:37 (4th ed. 2009).......................................................................................... 9-10

Rebecca Meiser, *Edward Siegel is on a quest to either stop exorbitant lawyer payouts –
or score some easy money*, CLEVELAND SCENE, June 4, 2008 ................................................11

Plaintiffs respectfully submit this memorandum of law in support of their motion pursuant to Rule 7 of the Federal Rules of Appellate Procedure for an order requiring Appellants to post a bond in the amount of $200,000 or such other amount that the Court deems appropriate to cover the potential costs and attorneys' fees of Plaintiffs-Appellees which could result from Appellants' frivolous appeal from (a) this Court's Final Judgment and Order, and (b) the Order Awarding Attorneys' Fees and Expenses, both entered on August 25, 2011.

## PRELIMINARY STATEMENT

Appellants – Class members who objected to approval of the Settlement Agreement and the award of attorneys' fees and expenses to Class Counsel – have filed frivolous appeals from such approval and award.  Both the Settlement approval and the fee award will be reviewed on appeal for abuse of discretion, and the Court's Opinion[1] demonstrates that no such abuse could be found here.  To the contrary, the Opinion shows that there is ample support in the record for all of this Court's determinations.  The Court should, therefore, require Appellants to post a bond to secure Appellees for an award of costs and attorneys' fees on appeal.

In its Opinion approving the Settlement, the Court found that it was "far from certain" that Plaintiffs would have prevailed at trial and that there was a significant risk that the jury might determine that Defendant Sirius XM Radio Inc. ("Sirius XM") had no liability to Plaintiffs.  In that light, the Court appropriately concluded that the Settlement, which provides approximately 40% of the maximum damages Plaintiffs might have established at trial, was a fair and reasonable result for the Class.  The Court also correctly found that the Class release, which is limited to claims arising out of, based on or relating to the merger, is fully consistent with controlling Second Circuit caselaw.  The Court further appropriately concluded that the fee

---

[1] *See Blessing v. Sirius XM Radio Inc.*, No. 09-cv-10035 (HB), 2011 U.S. Dist. LEXIS 94723 (S.D.N.Y. Aug. 24, 2011) (the "Opinion").

award, which represents only a fraction of the lodestar of Plaintiffs' counsel, was fair and reasonable, especially given that the fee amount was determined only after the rest of the Settlement had been agreed to and that the fee does not come out of what the Class is receiving under the Settlement. *See* Point II *infra*.

Since the appeal is frivolous, it is appropriate for the Court to order Appellants to post a bond to cover costs and attorneys' fees that may be awarded to Appellees on the appeal – especially because nearly all of the Appellants here are individuals from who collection of such an award may be difficult. *See* Point I *infra*. This conclusion is only reinforced by the fact that most of the lawyers representing the Appellants here may appropriately be characterized as "professional objectors." Courts have recognized that such counsel often file objections and then frivolous appeals in order to hold settlements hostage in the hope of extracting a payment in exchange for dropping the appeal. *See* Point III *infra*. To place a check on this abusive practice, the Court should order a bond to protect Appellees in the event that the Second Circuit agrees that these appeals are frivolous and therefore awards them attorneys' fees on appeal.

## BACKGROUND

As the Court is fully familiar with the factual and procedural history that gave rise to the Settlement, a brief summary should suffice here.

On August 24, 2011, the Court approved a Settlement Agreement that concluded this class action against Sirius XM, after months of intensive discovery and motion practice. On the eve of trial – after nearly two years of intensive litigation, including the review by Class Counsel of approximately 1.3 million documents produced by defendant Sirius XM Radio, Inc. ("Sirius XM"), 18 fact depositions, 6 expert depositions, a motion to dismiss, a motion for summary judgment, a motion for class certification, and the preparation of the necessary trial documents –

Class Counsel and counsel for Sirius XM agreed on the Settlement.  The Settlement requires Sirius XM to maintain current prices through December 31, 2011, allowing subscribers to avoid the price increases that Sirius XM had contemplated and that it had made plans to impose after July 28, 2011.  Under the Settlement, Sirius XM also must permit Class members to renew long-term subscriptions (such as those paid on an annual basis) in advance, if such subscriptions would otherwise not be scheduled for renewal before the end of this year.  The parties submitted evidence, including expert reports, demonstrating that the value of the price freeze to the Class was approximately $180 million.

In addition, the Settlement provides that former subscribers may reactivate their subscriptions for a free month's service, without incurring the reconnection fee that would normally apply.  Alternatively, they may sign up for a month of free service via internet access. Sirius XM also paid all of the costs associated with providing notice to the Class.  Lastly, pursuant to the Settlement and subject to Court approval, the Settlement provides that Sirius XM additionally will pay up to $13 million in attorneys' fees and expenses – an amount that is only a fraction of the $20 million in time and expenses that Plaintiffs' counsel devoted to the case.

After extensive briefing, including submission by Appellees of expert and other declarations,[2] the Court held oral argument on August 8, 2011, at which time every objector who wished to address the Settlement was permitted to speak.  Seven objectors or their counsel took the opportunity to do so.  The Court thereafter issued its Opinion granting final approval to the Settlement and awarding $13 million in attorneys' fees and expenses to Class Counsel.

---

[2] *See* Declaration of James J. Sabella, filed July 15, 2011; Declaration of James Langenfeld, filed July 15, 2011; Declaration of Catherine Brooker, filed July 15, 2011; Declaration of Amy Lake, filed July 15, 2011; Declaration of Shannon Wheatman, filed July 15, 2011; Declaration of Shelly Friedland, filed July 15, 2011; Reply Declaration of James J. Sabella, filed Aug. 3, 2011; Reply Declaration of James Langenfeld, filed Aug. 3, 2011; and Reply Declaration of Shelly Friedland, filed Aug. 3, 2011.

Only 67 objections to the Settlement or the proposed fee award, submitted by a total of 85 objectors, were received – which amount to only about 0.0005% of the approximately 15.7 million Class members.  From that, only 12 notices of appeal have been filed which are now, in accordance with the Settlement Agreement's terms, delaying the date that the Settlement Agreement becomes final until after these appeals are resolved.

## ARGUMENT

## I.      THIS COURT HAS WIDE DISCRETION TO ORDER THE POSTING OF AN APPEAL BOND TO COVER COSTS AND ATTORNEYS' FEES

Rule 7 of the Federal Rules of Appellate Procedure provides that in "a civil case, the district court may require an appellant to file a bond ... to ensure payment of costs on appeal." The purpose of Rule 7 is to protect the rights of appellees brought into courts of appeals by appellants who pose a payment risk, *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409 (WHP), 2010 U.S. Dist. LEXIS 27605, at *2-3 (S.D.N.Y. Mar. 5, 2010), or who have engaged in a course of vexatious or bad faith conduct during the litigation.  *Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 148 (S.D.N.Y.), *aff'd*, 198 F.3d 235 (2d Cir. 1999).

The "power to impose an appeal bond … has been specifically given to the discretion of the district court."  *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998).  In evaluating whether to grant a motion for an appeal bond, the Court considers the following nonexclusive factors: "(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct."  *Baker v. Urban Outfitters, Inc.*, No. 01-cv-5440 (LAP), 2006 U.S. Dist. LEXIS 90120, at *1 (S.D.N.Y. Dec. 12, 2006); *see also Adsani*, 139 F.3d at 79; *Watson v. Sutton*, No. 02-cv-2739 (KMW), 2006 U.S. Dist. LEXIS 88415, at *6-7 (S.D.N.Y. Dec. 6, 2006).

As an appeal bond is intended in part to ensure the payment of costs incurred in litigating meritless appeals, a district court's "prejudging" of the merits of an appeal is an entirely appropriate and, indeed, necessary, by-product of the imposition of a bond.  *See Adsani*, 139 F.3d at 79 ("A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal."); *Tri-Star*, 32 F. Supp. 2d at 149 (courts may "formally assess the merits of an appeal when determining whether to impose a security bond").

In addition to covering all of the usual taxable costs and expenses of filing a brief,[3] "[t]he Second Circuit has ruled that when determining the amount of a security bond that is required pursuant to Rule 7, a district court may consider the cost of attorney's fees on appeal."  *Tri-Star*, 32 F. Supp. 2d at 150 (citing *Adsani*, 139 F.3d at 74-76).  *See, e.g.*, *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (affirming district court's order under Rule 7 for an appeal bond where defendants' motion requesting a bond sought security for the costs, including attorneys' fees, which may be awarded pursuant to Fed. R. App. P. 38 and 39); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 277 (D. Mass. 2007) ("[W]hen the district court determines that an appeal may be frivolous, it may require [a bond] for the costs, including appellate attorneys' fees that may be awarded on appeal pursuant to Fed. R. App. P. 38 and 39 as a sanction for a frivolous appeal); *Barnes v. FleetBoston Fin. Corp.*, No. 01-cv-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *2 (D. Mass. Aug. 22, 2006) (costs secured by appeal bond "include ... attorneys' fees, as well as double costs under Fed. R. App. P. 38, and other costs delineated in Fed. R. App. P. 39."); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003) (appeal bond "can cover damages

---

[3] *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2000 WL 1665134, at *3 (E.D. Pa. Nov. 6, 2000) (citing Fed. R. App. P. 39 and 28 U.S.C. § 1920); *see also Marek v. Chesny*, 473 U.S. 1, 9 (1985).

assessed under Fed. R. App. P. 38").[4]  The Court is well aware that the attorneys' fees to oppose the appeal can be quite substantial.

To justify a bond for a potential award of attorneys' fees, the party seeking the bond need not demonstrate with certainty that the appeal is frivolous and that, therefore, it will be awarded attorneys' fees on appeal.  It is sufficient that such an award represents "a real possibility," *Sckolnick*, 820 F.2d at 15, or a "significant possibility," *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 751 (E.D. Tex. 2007).  *See also Compact Disc*, 2003 WL 22417252, at *2.  Where district courts have concluded that an appeal may be frivolous, they have not hesitated to require the posting of a significant bond to protect appellees.  As stated in *Barnes*, 2006 U.S. Dist. LEXIS 71072 at *4:

> Under these circumstances, Fed. R. App. 7 makes perfect sense: by requiring objectors to post a bond that would cover the costs of losing the appeal, the burden of litigating frivolous appeals shifts to them instead of to the class. Posting a bond sufficient to ensure that the class can recoup the costs of appeal provides the class with an appropriate incentive to litigate the appeals and establish their lack of merit.

*Id*. at *4 (ordering objector to post bond of $645,111.60); *see also Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) ("Simply stated, an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond for anticipated attorneys' fees prior to bringing the appeal."); *Gemelas v. Dannon Co.*, No. 08-cv-236, 2010 U.S. Dist. LEXIS 99503 (N.D. Ohio Aug. 31, 2010) ($250,000 bond is appropriate with respect to frivolous appeal from settlement approval); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-0986, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006) (requiring appellant raising frivolous objections to post bond in amount of $13.5 million "to cover the damages, costs and interest that the entire class

---

[4] *See also Lincoln Benefit Life Co. v. Edwards*, 160 F.3d 415, 416 (8th Cir. 1998) (damages to the appellee under Rule 38 may include reasonable attorney's fees); *Newhouse v. McCormick & Co.*, 130 F.3d 302, 305 (8th Cir. 1997) (same); *Martin v. Comm'r*, 753 F.2d 1358 (6th Cir. 1985) (same).

will lose as a result of the appeal").[5]  And, of course, "if the appeal turns out not to be frivolous despite initially appearing so, the objectors will get almost the entirety of their bond back." *Barnes*, 2006 U.S. Dist. LEXIS 71072 at \*4.

## II.   THE APPEAL IS FRIVOLOUS

In trying to obtain reversal of this Court's approval of the Settlement and award of attorneys' fees, the Appellants face a daunting task.  A "district court's approval of a settlement agreement" is reviewed by the Court of Appeals under the deferential "abuse of discretion" standard.  *World Trade Ctr. Props. LLC v. Certain Underwriters at Lloyd's of London*, No. 10-2970-cv, 2011 U.S. App. LEXIS 7310, at \*9 (2d Cir. Apr. 8, 2011).  Similarly, the Court of Appeals' "review of an award of attorneys' fees is 'highly deferential to the district court.'" *Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 146 (2d Cir. 2001).  With respect to an award of attorneys' fees, the Second Circuit "will reverse on appeal only for an abuse of discretion."  *Id*.

This Court's Opinion approving the Settlement and awarding attorneys' fees, rendered after the Court carefully considered the oral and written presentations by the objectors, is more than sufficient to demonstrate that no abuse of discretion could possibly be found here.  The Opinion provides a reasoned, point-by-point analysis of the deficiencies in the various objections and, particularly in light of the deferential standard of review, makes plain that the appeal here is frivolous and has no hope of succeeding.

---

[5] For other examples of fees awarded for defending other appeals or included in appeal bonds, *see, e.g.*, *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 667-68 (7th Cir. 2007); *Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp.*, 236 F.3d 214, 220 (5th Cir. 2000); *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 785 F.2d 310 (6th Cir. 1986); *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.*, No. 05-cv-01046-MSK-CBS, 2009 U.S. Dist. LEXIS 1687 (D. Colo. Jan. 6, 2009); *Davidson v. City of Culver City*, No. 04-cv-2220 GAF (CWx), 2006 U.S. Dist. LEXIS 96617, at \*30 (C.D. Cal. Aug. 30, 2006); *Young v. New Process Steel, L.P.*, 427 F. Supp. 2d 1126, 1129 (N.D. Ala. 2006); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 129 (S.D.N.Y. 1999).

With respect to the objection that the relief provided by the Settlement is insufficient, the Opinion pointed out the several significant hurdles that Plaintiffs faced if the case had gone to trial, and observed that "it is far from certain that Plaintiffs would have prevailed on the merits." 2011 U.S. Dist. LEXIS 94723, at *11.  The Court further noted that "[e]ven had they succeeded, there was a real risk that damages, split between over 15 million class members, would be so little that many members may not even have bothered to cash their checks."  *Id*. at *11-12.

The Opinion also considered and rejected the objectors' contention that the Settlement is illusory because Sirius XM would not have raised prices even in the absence of the Settlement: "This theory fails because the evidence demonstrates that Sirius XM had every intention of raising prices beginning in August of this year, and had the go-ahead from the FCC to do so." *Id*. at *13.  Indeed, Sirius XM has in fact now announced that effective January 1, 2012, the monthly base subscription price will increase from $12.95 to $14.49 – an increase of $1.54 per month (which will also require an increase of at least 15 cents per month in the music royalty fee).[6]

With respect to the award of attorneys' fees, after reviewing the attorney time records, the Court concluded that there was "nothing to suggest exorbitant rates nor double billing nor padding of any kind," *id*. at *16-17, and that the award "is reasonable under both the lodestar and percentage method of calculation."  *Id*. at *17.  The Opinion also points out that the objections are undermined by the fact that "the amount of attorneys fees was not negotiated and agreed upon until after the Settlement was finalized."  *Id*. at *14.  And, the Opinion further rejected the objections to the fee because "the fee is a separate obligation that will not come out of the Settlement amount.  *Id*. at *17.

---

[6] *See* http://investor.siriusxm.com/releasedetail.cfm?ReleaseID=605526.  For convenience, a copy is attached as Exhibit 1 to the accompanying Declaration of James J. Sabella ("Sabella Decl.").

The appeal thus plainly lacks merit, as there is more than ample basis in the record for the Court's findings in connection with approving the Settlement Agreement and award of fees and expenses.  All of the Appellants save one[7] are individuals, however.  If Appellants' appeal is unsuccessful, the collectability of a judgment against them for costs and attorneys' fees is at best problematic.  Moreover, they reside in numerous states around the country.  These circumstances make very real the possibility that absent the posting of a bond, Appellees will be unable to collect from Appellants the costs and attorneys' fees that may be awarded.

## III.   THE APPROPRIATENESS OF A BOND IS UNDERSCORED BY THE FACT THAT MANY OF THE APPELLANTS' LAWYERS ARE PROFESSIONAL OBJECTORS

In considering the appeal, it is important for the Court to bear in mind that many of the Appellants' counsel may appropriately be deemed "professional objectors."

"Federal courts are increasingly weary of professional objectors."  *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).  As stated in *In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008):

> [C]lass actions also attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys.  These are the opportunistic objectors.  Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away.  Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors, which now seem to accompany every major securities litigation.

*See also In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 610 n.9 (E.D. Pa. 2003), *vacated on other grounds*, 396 F.3d 294 (3d Cir. 2005) (criticizing a "professional gadfly" who had "become a twelfth-hour squeaky wheel").  An increased level of skepticism is warranted when reviewing an objection submitted by a professional objector.  *See* 5 William B. Rubenstein, Alba

---

[7] Asset Strategies, Inc.

Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 15:37 (4th ed. 2009).

Courts have noted that often objections are routinely filed "to extort the parties … into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process."  *Snell v. Allianz Life Ins. Co. of N. Am.*, No. 97-cv-2784 RLE, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000).  "Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements ....  Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing."  *Barnes*, 2006 U.S. Dist. LEXIS 71072, at *3-4.  A "class member and his or her attorney conceivably could object to a proposed settlement solely to set up an appeal designed to obtain a nuisance value recovery and/or advantageous fee arrangement."  *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 6-7 (1st Cir. 1999).

Nearly all of the Appellants who are represented by counsel are represented by what may be characterized as "professional objectors."  Several Appellants – Marvin Union, Adam Falkner, Jill Piazza, Ken Ward, Ruth Cannata, Lee Clanton, Craig Cantrall and Ben and Kim Frampton – are represented by Edward F. Siegel, an attorney who specializes in filing objections.  Indeed, until recently he boasted on his website, www.efs-law.com, that "Class Action Objections" is one of his principal practice areas.[8]  Courts have recognized that Mr. Siegel is a professional objector,[9] and generally reject his objections on grounds that they give rise to "wasteful litigation" and represent simply "another attempt by objectors to dip into the attorneys'

---

[8] *See* Sabella Decl. Ex. 2.  Mr. Siegel has now edited his website to delete the word "Objections."
[9] *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *12-13 (E.D. Pa. Oct. 13, 2004).

fee trough."[10]

Other lawyers representing Appellants also fall into this category.  Tom Carder is
represented by Charles M. Thompson, a lawyer familiar to this Court by virtue of his
unsuccessful objection to a settlement in another case,[11] and who has even represented Mr.
Carder on objections in other cases.[12]  Jason Hawkins, Sheila Massie and John Sullivan are
represented by Robert Erlanger, whose objection in this case includes large portions apparently
copied from objections he filed in another case.[13]  Randy Lyons is represented by R. Stephen
Griffis, who also has been characterized as a professional objector.[14]  The Crutchfield Objectors
are represented by Weiss & Associates, a firm whose major area of practice appears to be
dealing with traffic tickets[15] but which also files class action settlement objections.[16]

Theodore H. Frank has filed objections on behalf of Nicolas Martin.  Mr. Frank's
principal occupation, as the website for the self-anointed "Class Action Fairness Center" plainly

---

[10] *See* Rebecca Meiser, *Edward Siegel is on a quest to either stop exorbitant lawyer payouts – or score some easy money*, CLEVELAND SCENE, June 4, 2008 (Sabella Decl. Ex. 3):

In the past two years, he's had a less-than-stellar success rate.  A judge in an AT&T suit in New Jersey called his objection "wasteful litigation."  In a Texas case against Allstate, his work was deemed "another attempt by objectors counsel to dip into the attorneys' fee trough."

Moreover, his objections in two recent cases contain eerily similar arguments, as if he simply cut and pasted his case together without bothering to change the language.

In the Ohio Savings case,[other lawyers] viewed Siegel's interference as "frivolous" and asked the court to impose economic sanctions.  Siegel withdrew his objection, and the penalty was dropped.

*See also Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-cv-05437, 2008 WL 1901988, at
*4-6 (W.D. Wash. Apr. 24, 2008); *see also Browning v. Yahoo! Inc.*, No. 04-cv-01463 HRL, 2007 WL
4105971, at *5-8 (N.D. Cal. Nov. 16, 2007).

[11] *See  Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003).

[12] *See* Sabella Decl. Ex. 4.

[13] *See* Sabella Decl. Ex. 5.

[14] *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 241 n.22 (D.N.J. 2005); *see also In re Warfarin
Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) (finding the
objections "without merit").

[15] *See* Sabella Decl. Ex. 6.

[16] *See* Sabella Decl. Ex. 7 at 2 n.1.

reveals, appears to be objecting to class action settlements.[17]  Courts have criticized Mr. Frank as a "professional objector"[18] whose briefs were "long on ideology and short on law."[19]  Mr. Frank sometimes seeks to distinguish his activities from those of other professional objectors, but his history merely demonstrates that he is a different kind of professional objector – a political objector.  The Center is part of a much larger entity called Donors Trust Inc., which provides funding to a range of political agenda-driven groups.[20]  The identity of the funders of Donors Trust is not made public.  Among the goals of Mr. Frank and his organization appears to be to make prosecuting class action litigation on behalf of injured consumers and shareholders so difficult and unrewarding that such class actions become extinct.  A meritless appeal from an approved class action settlement is not, Plaintiffs submit, the appropriate vehicle for pursuing this agenda.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an Order, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, requiring Appellants to post, within five business days, an appeal bond for at least $200,000 to cover Plaintiffs-Appellees'

---

[17] *See* www.centerforclassactionfairness.blogspot.com.  Among the numerous cases in which Mr. Frank has filed objections are *In re HP Inkjet Printer Litig.*, No. 05-cv-3580 (N.D. Cal.); *In re Grand Theft Auto Video Game Consumer Litig.*, No. 06-md-01739 (S.D.N.Y.); *Lonardo v. Travelers Indemnity Co.*, No. 06-cv-00962 (N.D. Ohio); *Draucker Dev. & True Commc'ns Inc. v. Yahoo! Inc.*, No. 06-cv-02737 (C.D. Cal.); *Bronster v. AOL, LLC*, No. 09-cv-03568 (C.D. Cal.); *Bachman v. A.G. Edwards, Inc.*, No. 09-cv-00057 (E.D. Mo.); *In re Apple Inc. Sec. Litig.*, No. 06-cv-05208 (N.D. Cal.); *In re Bluetooth Headset Prods. Liab. Litig.*, No. 07-md-01822 (C.D. Cal.); *In re TD Ameritrade Accountholder Litig.*, No. 07-cv-02852 (N.D. Cal.); *Robert F. Booth Trust v. Crowley*, No. 09-cv-05314 (N.D. Ill.); *True v. Am. Honda Motor Co.*, No. 07-cv-00287 (C.D. Cal.); *In re Classmates.com Consol. Litig.*, No. 09-cv-00045 (W.D. Wash.).

[18] *See Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 574-75 & n.17 (D.N.J. 2010) (rejecting Mr. Frank's objections and including him among a group of attorneys that "have been described as 'professional objectors'").

[19] *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) (internal quotations omitted).

[20] *See* Sabella Decl. Ex. 8.  The Chairman of Donors Trust is Kimberly O. Dennis, President of the Searle Freedom Trust, and the Vice Chairman is James Piereson, President of the William E. Simon Foundation.  Donors Trust Inc. also funds the Project on Fair Representation (*see* Sabella Decl. Ex. 8 Sch. O), which devotes its efforts to opposing affirmative action and trying to invalidate provisions of the Voting Rights Act.  *See* Sabella Decl. Ex. 9.  In this light, it is not surprising that  Mr. Frank's objection included an attack on this Court's decision on class certification to the extent that such decision encouraged lead counsel's staffing on the case to reflect race and gender diversity.

costs and attorneys' fees on the appeal; and granting such other and further relief to which the

Court believes Plaintiffs are entitled.[21]

---

[21] As noted above, 12 notices of appeal have been filed.  Plaintiffs are indifferent as to how Appellants may choose to allocate among themselves the cost of the bond.  However, because Plaintiffs' expenses and attorneys' fees on the appeal would not be materially reduced even if one or several of the Appellants drops out of the appeal, it is important for the full $200,000 bond to be posted regardless of how many of the Appellants remain in the appeal or participate in paying for the bond.

Dated:  October 5, 2011

**GRANT & EISENHOFER P.A.**

/s/ James J. Sabella
Jay W. Eisenhofer
Richard S. Schiffrin
James J. Sabella
Shelly L. Friedland
485 Lexington Avenue
New York, NY  10017
Tel.:  646-722-8500
Fax:  646-722-8501
    and
Mary S. Thomas
1201 N. Market Street
Wilmington, DE  19801
Tel.: 302-622-7000
    and
Reuben Guttman
1920 L Street, N.W., Suite 400
Washington, DC  20036
Tel.:  202-386-9500

Respectfully submitted,

**MILBERG LLP**

/s/ Paul F. Novak
Herman Cahn
Peter Safirstein
Anne Fornecker
One Penn Plaza
New York, NY  10119
Tel.:  212-594-5300
Fax:  212-868-1229
    and
Paul F. Novak
One Kennedy Square
777 Woodward Avenue, Suite 890
Detroit, MI  48826
Tel.:  313-309-1760
    and
Nicole Duckett
300 S. Grand Avenue, 39th Floor
Los Angeles, CA  90071
Tel.:  213-617-1200

**COOK, HALL & LAMPROS, LLP**

/s/ Christopher B. Hall
Edward S. Cook
Christopher B. Hall
P. Andrew Lampros
Promenade Two, Suite 3700
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel.:  404 876-8100
Fax:   404 876-3477

*Class Counsel*

14

**ABBEY SPANIER RODD & ABRAMS, LLP**
Jill Abrams
Natalie Marcus
212 East 39th Street
New York, NY  10016
Tel.:  212-889-3700

**SHAHEEN & GORDON, P.A.**
Christine Craig
140 Washington Street
Dover, NH  03821
Tel.:  603-749-5000

*Attorneys for Plaintiff John Cronin and Todd Hill*

**GARDY & NOTIS, LLP**
Mark C. Gardy
James S. Notis
560 Sylvan Avenue
Englewood Cliffs, NJ  07632
Tel.:  201-567-7377

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Shane T. Rowley
369 Lexington Avenue
New York, NY  10017
Tel.:  212-983-9330

*Attorneys for Plaintiff Edward A. Scerbo*

**SCOTT+SCOTT LLP**
Joseph P. Guglielmo
500 Fifth Avenue
New York, NY  10110
Tel.:  212-223-6444
        and
Christopher M. Burke
600 B Street, Suite 1500
San Diego, CA 92101
Tel.:  619-233-4565

**FREED & WEISS LLC**
Jeffrey A. Leon
Eric D. Freed
111 West Washington Street, Suite 1331
Chicago, IL  60602
Tel.:  312-220-0000

**CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN**
James E. Cecchi
Lindsey Taylor
5 Becker Farm Road
Roseland, NJ  07068
Tel.:  973-994-1700

**SEEGER WEISS LLP**
Stephen A. Weiss
James A. O'Brien, III
One William Street
New York, NY 1 0004
Tel.:  888-584-0411

**LAYTIN VERNER LLP**
Jeffrey L. Laytin
Richard B. Verner
One Pennsylvania Plaza, 48th Floor
New York, NY  10119
Tel.:  212-631-8695

*Additional Counsel for Plaintiffs*

**BLOOD HURST & O'REARDON LLP**
Timothy G. Blood
Thomas J. O'Reardon, II
600 B Street, Suite 1550
San Diego, CA  92101
Tel.:  619-338-1100

**THE WRIGHT LAW OFFICE, P.A.**
William C. Wright
301 Clematis Street, Suite 3000
West Palm Beach, FL  33401
Tel.:  561-514-0904

**ADEMI & O'REILLY, LLP**
Shpetim Ademi
Guri Ademi
David J. Syrios
3620 East Layton Avenue
Cudahy, WI  53110
Tel.:  866-264-3995

*Additional Counsel for Plaintiffs*

**BERGER & MONTAGUE, P.C.**
Merrill G. Davidoff
Michael Dell'Angelo
1622 Locust Street
Philadelphia, PA  19103
Tel.:  215-875-3000

**LEXINGTON LAW GROUP**
Howard Hirsch
503 Divisadero Street
San Francisco, CA  94117
Tel.:  415-913-7800

*Attorneys for Plaintiff James Hewitt*

*Attorneys for Plaintiff Brian Balaguera*